**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON WAYS AND MEANS,<br>UNITED STATES HOUSE OF REPRESENTATIVES,<br>1102 Longworth House Office Building<br>Washington, D.C. 20515,<br><br>       *Plaintiff*,<br><br>       v.<br><br>UNITED STATES DEPARTMENT OF<br>THE TREASURY,<br>1500 Pennsylvania Avenue N.W.<br>Washington, D.C. 20220, *et al.*,<br><br>       *Defendants*. | Case No. 1:19-cv-1974 |

# Exhibit F



3033 Wilson Boulevard
Suite 700
Arlington, VA 22201
703.243.9423
www.consovoymccarthy.com

April 15, 2019

Brent J. McIntosh
General Counsel
U.S. Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

Dear Mr. McIntosh:

I wrote you on April 5 to explain why Chairman Neal's request for my clients' confidential tax information is illegal. Since then, Chairman Neal has once again requested that information. In his April 13 letter to Commissioner Rettig, Chairman Neal asserts that "none" of the legal objections raised in my letter "can legitimately be used to deny the Committee's request." The Chairman is wrong.

Chairman Neal begins with a red herring. He stresses the mandatory language of section 6103(f): "Upon written request from the chairman of the Committee on Ways and Means … the Secretary *shall* furnish such committee with any return or return information." 26 U.S.C. §6103(f)(1) (emphasis added). But highlighting the word "shall" is a talking point, not a serious legal argument. "It is a proposition too plain to be contested" that no statute—not even one that uses mandatory language—can be used to violate the Constitution. *Marbury v. Madison*, 5 U.S. 137, 177 (1803). After all, it is "the Constitution" that Chairman Neal and his colleagues took an oath to "support and defend." 5 U.S.C. §3331. That is why the Congressional Research Service has acknowledged that, despite the "plain language of Section 6103(f)," requests for tax information "must further a 'legislative purpose' and not otherwise breach relevant constitutional rights or privileges." *Congressional Access to the President's Federal Tax Returns*, CRS (updated Apr. 4, 2019), bit.ly/2Z9ofj3. Chairman Neal's request does not do that, as my previous letter explains.

Chairman Neal weakly repeats his original explanation that the request is an effort to determine "the extent to which the IRS audits and enforces the Federal tax laws against a President." But no one actually believes this. To quote Senator Kennedy, Chairman Neal's request "is not in good faith" and "nobody believes he's in good faith." And to quote Senator Grassley, who chairs the Senate Finance Committee and has the same requesting authority as Chairman Neal, this invented justification for requesting the President's tax information "doesn't make sense when taken at face value because you can't take it at face value." Indeed, Chairman Neal's own committee has concluded that a request for the President's personal and business tax information would not further any legitimate legislative purpose, but instead "would be the first time the Committee exercised its authority to wade into the confidential tax information of an individual with no tie to any investigation within our jurisdiction." H. Rep. No. 115-309, at 3.

Yet instead of reassuring the Treasury Department that his request is not pretextual, Chairman Neal argues that his motives do not matter. The executive branch cannot "question or second guess the motivations" of Congress, he insists, and Treasury must afford his actions a "presumption of regularity." Of course, the Chairman is not willing to reciprocate; the entire premise of his request is that the executive branch cannot be trusted to faithfully apply the tax laws to a sitting President. But hypocrisy aside, Chairman Neal is wrong about the law.

Congress's motives do matter under the Constitution. Take the Constitution's ban on intentional racial discrimination, for example. What if, during the height of the civil-rights movement, the Democrat-controlled House tried to intimidate African-American leaders by requesting their tax returns? Surely no one would agree with Chairman Neal that the other branches could not "question or second guess the motivations" of Congress. The same is true for the First Amendment's ban on political retaliation. Because this constitutional prohibition is "motive-based," it would be "unprecedented" to "immunize all officials whose conduct is 'objectively valid,' regardless of improper intent." *Crawford-El v. Britton*, 523 U.S. 574, 592-94 (1998). Outside of special contexts like immigration and foreign affairs, "the government's *reason* for [acting] is what counts" under the First Amendment. *Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1418 (2016) (emphasis added). Tellingly, Chairman Neal does not cite a single case where Congress was accused of using investigatory tools to unlawfully retaliate against a political opponent—or even a case that was decided in the last forty years. That is because his radical view of unchecked congressional power has no support in law.

Further, as explained by Chairman Neal's own authorities, Congress must always "act[] in pursuance of its constitutional power." *Barenblatt v. United States*, 360 U.S. 109, 132 (1959). The "power to investigate, broad as it may be, is also subject to recognized limitations." *Quinn v. United States*, 349 U.S. 155, 161 (1955). Most notably, "the power to investigate must not be confused with any of the powers of law enforcement; those powers are assigned under our Constitution to the Executive and the Judiciary." *Id.* Congress has no constitutional authority to act like a junior-varsity IRS, rerunning individual examinations or flyspecking the agency's calculations. Congress especially has no constitutional authority to interfere with an ongoing examination, which would infringe "the Executive Branch's function of executing the law." 5 Op. O.L.C. 27, 31 (1981). Because the separation of powers restricts Congress no less than any other branch of government, the nature of Chairman Neal's request matters. That it is limited to a single President, seeks tax information from before the President took office, asks no questions about IRS policy, and does not even wait for the IRS to finish its ongoing examinations (and any resulting appeals) reveals that Chairman Neal's request is nothing more than an attempt to exercise constitutional authority that Congress does not possess.

I appreciate your thoughtful consideration of these important issues and the Treasury Department's prudent decision to consult "with the Department of Justice to ensure that [its] response is fully consistent with the law and the Constitution" given "the unprecedented nature of this request." As Secretary Mnuchin explained, "these are complicated legal issues" and it is "important to the American taxpayers that we get this right" because "this is a decision that has enormous precedence in terms of potentially weaponizing the IRS."

Sincerely,

William S. Consovoy

cc:     Steven T. Mnuchin
        Charles P. Rettig
        Sheri A. Dillon
        William F. Nelson