**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, 1102 Longworth House Office Building Washington, D.C. 20515, *Plaintiff,* v. UNITED STATES DEPARTMENT OF THE TREASURY, 1500 Pennsylvania Avenue N.W. Washington, D.C. 20220, *et al.*, *Defendants.* | Case No. 1:19-cv-1974 |

# Exhibit O



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

COMMISSIONER

May 17, 2019

The Honorable Richard E. Neal
Chairman
Committee on Ways and Means
U.S. House of Representatives
Washington, DC  20515

Dear Chairman Neal:

I write in response to your letter dated May 10, 2019, transmitting a subpoena for
returns and return information of specific individual and business taxpayers.  Based on
advice received from the Department of Justice, as explained in the Secretary's letter
sent to you earlier today, we are precluded by law from providing the requested returns
and return information.

Although we cannot provide the documents requested by the subpoena, we have
offered to provide additional information to accommodate the Committee's stated
interest in understanding how the IRS audits and enforces the tax laws against a
President, and we remain committed to providing such information if the Committee
requests it.

Your letter expresses a concern that IRS employees could be subject to undue
influence when conducting mandatory audits of a President's tax returns.  More
specifically, your letter references a concern that "employees who determine the scope
of the President's audit, or who determine whether to continue previously-initiated
audits, are protected in the course of their work."  That concern is unfounded for the
reasons described below.

The IRS strives to treat all taxpayers with the highest degree of impartiality.  Procedures
implemented by the IRS in 1977 strongly protect the integrity of the mandatory audit
process set forth in Internal Revenue Manual (IRM) 3.28.3 and 4.2.1.11.  These
procedures were implemented, and have been maintained in largely the same form for
over 40 years in order to insulate the IRS's examination process from any bias or
appearance of bias.  Under the procedures, within 10 days of receiving a copy of a
President or Vice President's return, a manager in one of the IRS's operating divisions
assigns the examination to a revenue agent who is instructed to follow the IRM's
general audit procedure guidelines.  IRM 4.2.1.11(5) and IRM 4.2.1.11(3)(d).  Under
those guidelines, the scope and depth of the examination is determined by the revenue

2

agent, based on established risk protocols. IRM 4.10.3.2. In accordance with normal examination procedures, where warranted, the mandatory examination of a President or Vice President's return can be expanded to include related or prior year returns. IRM 4.2.1.11(6).

From start to finish, all aspects of the processing and examination of a President or Vice President's returns are conducted by experienced, career IRS employees. As with any examination, if any IRS or Treasury official other than the career employees responsible for the examination attempts to influence its outcome or direction, procedures are in place to notify the Treasury Inspector General for Tax Administration. These procedures play a critical role in ensuring the integrity and impartiality of the examination process. No political appointee has to our knowledge had any involvement in any examination of a President or Vice President's tax returns at any time since the mandatory procedures were put in place in 1977.

If you would like additional information regarding the IRS's mandatory examination procedures, please contact me directly, or a member of your staff may contact Leonard Oursler, Director, Legislative Affairs, at (202) 317-6985.

Sincerely,

Charles P. Rettig