Duane Morley Cox, Pro Se
1199 Cliffside Dr.
Logan, Utah 84321
Ph: (801) 755-3578

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
+
Committee On Ways And Means       +   Civil Action No. 1:19-cv-1974
United States House Of Representatives +
1102 Longworth House Office Building +
Washington D.C. 20515             +
+
      Plaintiff                +
+   Answer in Intervention
United States Department Of The   +
Treasury et. al.                  +
1500 Pennsylvania Avenue, N.W.    +
Washington D.C. 20220             +
+
      Defendants               +
++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

**Now Comes** Duane Morley Cox, Pro Se, as Intervenor, providing his Answer

in Intervention.

### SUMMARY

Plaintiff Committee, knowing that President Trump's tax returns can't be

obtained directly have chosen to file this Complaint in order to compel the

Defendants to provide them to the Committee as has been typically done for persons

and companies other than the President pursuant to  26 U.S.C $ 1603(f).

Defendants IRS et al, have resisted production of these tax records on

grounds that the Plaintiff Committee has no valid Legislative Purpose.

Intervenor argues that pursuant to U.S. Supreme Court precedent that

Pg 1



Trump has absolute immunity from having his tax returns examined by Congress.

> "Although there is no blanket recognition of absolute immunity for all federal executive officials ... The President's absolute immunity is a functionally mandated incident of his unique office rooted in the constitutional tradition of the separation of powers and supported by the Nation's history.  Because of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government.  While the separation of powers doctrine does not bar every exercise of jurisdiction over the President, a court, before exercising jurisdiction, must balance the constitutional weight of the interest served against the dangers of intrusion on the authority and functions of the Executive Branch." **Nixon v. Fitzgerald, 457 U.S. 731 @ 732,** ( Opinion by Justice Powell)

And that when this court complies with the Jurisdictional analysis mandated by this precedent, that the results will be that the Constitutional Weight of the dangers of intrusion on the authority and functions of the President/Presidency will outweigh the Constitutional Weight of the Legislative Interest being served by the Complaint - thereby establishing that the President has Absolute Immunity from this Complaint and the Court therefore has no Jurisdiction to hear this complaint.

## **RELEVANT FACTS**

1.     The U.S. Constitution provides for a separation of powers between the Congress, Executive and Judicial Branches of government, each branch being a creature of the Constitution.

2.     Congress has the legislative power to create Departments within the Administrative Branch and Lower courts in the Judicial Branch.

3.     Congress has "Oversight" over Agencies that it creates and laws that it passes.

4.      The Constitution delegates the powers of taxation to the Congress.

5       Congress has routinely relied upon  26 U.S.C. 1603(f) to obtain tax records

from the IRS and Dept. of the Treasury pertaining to:

> "Individuals, estates, and other taxpayers owing over $100 million in taxes ...
> individuals with unpaid tax liabilities ... individuals and businesses
> contracting with the Federal Government ... nonprofit organizations whose
> applications for tax-exempt status were subject to heightened scrutiny ...
> foreign-owned distributors within the U.S.  of  automobiles, motorcycles, and
> electronics equipment ... more than 200 large, tax exempt organizations ...
> individuals who made cash payments of more than $10,000 to purchase
> automobile and consumer goods ... companies, including banks and
> automobile manufacturers, that received funds from the Treasury's Troubled
> Asset Relief Program ... individuals engaging in tax refund fraud ... small
> businesses, ... a municipal government ..." **Complaint, Pg 13-14**

6.      Plaintiff Committee made no effort or request to obtain President Trump's

tax returns directly from the President

7.      Plaintiff Committee, in its Complaint, rely upon 26 U.S.C. $6103(f) as the

basis for their right to obtain copies of the President's Tax Returns and Tax

Information.

8.      Plaintiff Committee states that: "The Committee is not aware of any instance

– other than its request for President Trump's tax return infirmation ... in which

either the Treasury or the IRS has failed to comply with the plain meaning of

Section 6103(f) and provide information requested by the Committee." **Complaint,

Pg 14**

9.      Plaintiff admits that "individual income tax returns for the President and

Vice President are subject to mandatory [audit] examinations." **Complaint, Pg 16**

10.     Although the Constitution gives Congress specific powers pertaining to the

Executive such as approving Emollients, confirming appointees to various offices, ratifying Treaties, Impeachment, and declaring war, the Constitution does not give Congress a specific power to review a President's tax returns .

11.     Although the Plaintiff has sought access to President Trump's tax returns from the Treasury and/or IRS, Plaintiff made no effort or request to obtain President Trump's tax returns directly from the President.

12.     The 116th Congress has introduced multiple proposals relating to Presidential Tax Returns, including H.R.1 which would require the President to disclose their tax returns for the last 10 years to the Federal Election Commission (FEC) which would require the FEC Chairman to make such returns "Publicly Available"; H.R. 1489 requiring public disclosure of seven years of individual tax returns of the President; and H.R. 1028 requiring candidates for President to provide the Office of Government Ethics with individual tax return information for the previous 19 taxable years.  **Complaint, Pgs 21-22**

13.     Defendants have taken the following position regarding the Section 1603(f) request by Plaintiff for access to President Trump's tax returns.

> "In reliance on the advice of the Department of Justice, I have determined that the Committee's request lacks a legitimate legislative purpose, and pursuant to Section 6103, the Department is therefore not authorized to disclose the requested returns and return information." **Letter from Sec'y Mnuchin to Chairman Neal (May 16, 2019)** See **Complaint, Pgs 31-32**

14      In addition, the Office of Legal Counsel has asserted:

> "unlike the Judiciary, the Executive Branch has the authority to supervise Congress as it carries out investigations linked to legislative purposes. Although OLC recognized that Section 6103(f) "does not require a tax

committee to provide any purpose" for seeking tax return information [citation omitted], it contended that the Treasury must scrutinize the underlying basis for the Congressional request to "confirm" for itself whether that basis is legitimate, just as it supposedly must do with a subpoena [Citation Omitted].  According to OLC, Treasury's power to do stems from the Executive's claimed role in "implementing" Section 6103(f) and its constitutional obligation to faithfully execute the laws "to protect the Executive against legislative encroachments. [Citation Omitted]. **Complaint, Pg 38**

## ARGUMENT

15. The Facts at 1 - 14 above are incorporated here-in by reference.

16. **PLAINTIFF ENGAGES IN COLOURABILITY**

"The Doctrine Of Colourability is the idea that when a legislature wants to do something that it cannot do within the constraints of the government's constitution it colours the law with a substitute purpose, allowing it to accomplish the original goal." **Wikipedia, Doctrine of Colourability**

Clearly, the Constitution gives specific powers to Congress but it does not give Congress a specific power to review a President's tax returns **(F @ 10)** and where specific powers are given, it must be understood that other powers not expressed are excluded under the rule of *Expressio Unius Est Exclusio Alterius.*

And where the Complaint discloses that Congress has introduced new legislation requiring the President to disclose 10 years of tax returns to the Federal Election Commission which could then be made public, requiring public disclosure of seven years of tax returns of the President, and requiring 19 years of tax information of candidates be provided to the Office of Government Ethics **(F @ 12)**, it is made clear that Congress simply lacks the power to compel disclosure of the President tax returns and information.

And in truth, the passage of these initiatives by Congress probably won't result in Congress getting access to the President's tax returns and information because these legislative initiatives are undoubtedly unconstitutional on their face where the Constitution declares that there are to be only two requirements for the Presidency, citizenship and age.  And thus where two specific conditions for the Presidency are set by the Constitution all others are bared by the rule of *Expressio Unius Est Exclusio Alterius.*

And so lacking the direct power to obtain the President's tax returns and tax information, Plaintiff seeks to obtain this information from the Treasury and IRS under 26 U.S.C. $ 6106(f), which has never before been used to obtain a President's tax returns or tax information (**F 5-8**).

And the original Defendants including the IRS and Treasury have adopted the position that the Subpoena and Complaint are not for a legitimate legislative purpose (**F 13**).

Intervenor leaves the related argument and defense to the original Defendants, and instead argues that the Court has no Jurisdiction to hear this case.

15. **THE SUPREME COURT HOLDING IN <u>NIXON V. FITZGERALD</u> IS APPLICABLE**

Plainly, Plaintiff Committee, with this complaint seeks to achieve indirectly through third parties which it cannot do directly, obtain access to President Trump's tax returns and associated tax records.

But the result would be the same as if they had obtained the tax returns and

tax information directly from the President himself.  The Committee would then subject these records to intense scrutiny.  But these returns are voluminous and are undoubtedly filled with complex loan arrangements, financing efforts, complex construction contracts, all performed under domestic and foreign statutes and rules, and complex accounting standards - which have already been audited by the IRS and other involved agencies.  Complexities which require expert accounting and legal analysis to understand in the face of existing laws and regulations related there-to.

And it is reasonable to conclude that the Plaintiff Committee and its members will have trouble "connecting the dots" between the returns of Trump and his six business entities which are involved and inter-connected.  And thus it is reasonable to conclude that the Committee and its members will have hundreds if not thousands of questions about perfectly legal activities which have already been approved by the IRS through its audit of the President's returns.

But even if the Plaintiff actually had a legitimate legislative purpose, the Constitutional weight of the benefits from obtaining President Trump's tax returns is insufficient to accept  the  risk of the dangers that may result from the intrusion of the evaluation of the tax returns on the authority and function of the President and Presidency.

And **Nixon v. Fitzgerald** is applicable because no matter how the tax returns and related information comes into the possession of Plaintiff Committee, it will be the President who was at the center of his business activities which were

taxed who must respond directly or indirectly  to any and all questions propounded whether from the Committee itself, its members or the media following the Committee actions.  Therefore this Complaint is in fact directed at the President and must be accorded the critical examination specified by the U.S. Supreme Court in **Nixon v. Fitzgerald**.

## 16.    THE CONSTITUTIONAL WEIGHT ANALYSIS

This analysis must be conducted under the presumption that Plaintiff committee has a valid legislative purpose, and is conducted on a relative scale of zero (0) to ten (10) with ten (10) being the highest Constitutional Weight.

### 16a.   **Estimating The Constitutional Weight Of The Legislative  Benefit Of The Examination Of The Presidents Tax Returns**

**First**, what seems to be driving the quest to examine Trump's tax returns are criticisms by third parties as summarized in **Complaint, Pgs  18-20**, such as "taking a questionable $916 million deduction" **Id., Pg 18.**  But such matters are not for the Congress to investigate.

> "Congress's investigatory power is not unbounded.  The Constitution's very structure puts limits on it.  For instance, the power to investigate may not "extend to an area in which Congress is forbidden to legislate." *Quinn,* 349 U.S. at 161.  Nor may Congress "trench upon Executive or judicial prerogatives." *McSurley v. McClellan,* 521 F.2d 1024, 1038 (D.C. Cir 1976). A prime example of such overreach is exercising the powers of law enforcement; those powers are assigned under our constitution to the Executive and the Judiciary." *Quinn*, 349 U.S. at 161" **Opinion, Trump v. Mazars, ,  Pg 17**

> Further, Congress has enacted **18 USC Section 4 which states:**

> "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible

Pg 8

make known the same to some judge or other person in civil or military authority under the United States shall be fined under this title or imprisoned not more than three years, or both." **18 USC, Section 4**

By enacting this statute, Congress made it a federal crime for an individual knowing of the commission of a felony to fail to inform the proper authority, which by exclusion certainly is not Congress.   This because Congress is not authorized to "Investigate Crimes".  And members of Congress are bound to comply with this statute:

> "Legislators ought not to stand above the law they create but ought generally to be bound by it as are ordinary persons.  T. Jefferson, Manual of Parliamentary Practice, S. Doc. No. 92-1, P. 437 (1971)" **Gravel v. United States, 408 U.S. 606, 615**

So the proper action for the members of the Ways and Means Committee who have seen the evidence about the concerns which drive this Complaint and believe that crimes may have been committed is to give notice to the appropriate entity, in this case being the IRS, not to conduct its own investigation.  And the IRS encourages such conduct should individuals file a Form 211 regarding their concerns by providing rewards of up to I think it is 25% of the taxes collected.

Thus, it appears to Intervenor that there is little if any Legislative benefit for Plaintiff to conduct its own investigation.

**Second**, it is appropriate to examine the two categories of returns which Plaintiff seeks.

The first category are returns from before Trump was President, and the second category are returns filed after he became President which should be benign

because the President gave up management of his business and companies when he became President - which serves to make sure he cannot profit from his administrative affairs while also assuring that he will devote his full time and efforts to his Presidential duties.

So Intervenor argues it is "over-reach" for the Plaintiff to demand multiple years of tax returns from before Trump became President for the purposes of judging if the Taxation system is working properly.  He was a private citizen at that time, and the IRS regulations applied to him and his business entities just like millions of other individuals and companies.  Thus where Plaintiff has no problems obtaining tax returns frm the IRS and Treasury Department for individuals and businesses pursuant to Section 6103(f) (**F 5**) , but is encountering issues relating to obtaining the President's returns (**F 13-14**), why not simply obtain returns from other owners of complex business empires.  Seems kind of simple to Intervenor, especially when there are Constitutional overtones to investigating Trump's returns when he is precluded at this time from participating in his business and business entities which are now being run by others.

But of course, "over-reach" seems to be a common affliction of Congress and this Committee.  Take for instance the new legislation the Plaintiff described (**F 12**) especially H.R. 1028 which would require all Presidential Candidates to provide the Office of Government Ethics with individual tax return information for 19 years (**F 12**).  Imagine if you can get your mind around it.  Today there are 24 Democratic Candidates and 2 Republican Candidates.  Really!  Really!  Plaintiff thinks it

appropriate to require 26 candidates to provide the Ethics Office with 19 years of tax returns and related information (**F-12**).  What in the world for???  How many new employees would be required to examine such a pile of records???  And think of poor Candidate Buttigieg having to produce tax records from when he was in High School.

And Plaintiff makes no effort to explain what is to be learned from Trump's tax returns filed during his Presidency.  He manages nothing about his business interests as they are no longer under his control, so nothing can be imputed against him, and they certainly don't represent returns of any meaningful value to the taxation of the general population.

Again there is little to no meaningful Legislative benefit to examine the tax returns for either period before or after Trump became President.

**Third**, it is meaningful to contemplate and contrast the importance of this legislative action as compared to other legislative tasks which we all know need to be addressed, but which aren't being addressed by Congress.  Many comparisons could be made, but it is sufficient to cite the following in order to make the necessary point.

In the instant case, Plaintiff is spending valuable resources to obtain access to the President's tax returns even through the IRS/Treasury system seems to be working just fine.  It has been developed over the last 100 years at least.  Rules, regulations, depreciation guidelines, donation limitations, Tax Court dispute resolutions - all have combined to create a robust system which seems to work just

Pg 11

fine.  And the Plaintiff Committee seems to be spending a great deal of time trying to enact new laws pertaining to Presidential tax returns which appear to be Unconstitutional on their face.  All while seemingly ignoring more important issues under their jurisdiction including but not limited to helping Trump use Tariff's in negotiating trade deals, approving the reciprocal trade agreements that President Trump has already negotiated, and working to reduce the bonded debt of the United States - which are all tasks under the jurisdiction of Plaintiff Committee.

And on a more global scale, the issue of the Presidents taxes and the legislative benefit to be derived therefrom pales in comparison to the border crisis which the House does nothing about, the pending approval of the trade agreements which Trump has negotiated that await Plaintiff Committee action, the growing debt and bonded debt that our future generations must face, badly needed infrastructure legislation, the growing national homeless problem, and so much more.  All while Congress clogs the Courts with litigation to get Trump's financial records by the Oversight Committee, to get financial bank records from various banking institutions, and now to get Trump's tax returns by Plaintiff Committee.  Not to mention the growing list of lawsuits related to Trump's efforts to improve the immigration system with whatever administrative tools he can find while Congress refuses to provide the necessary funding or statutory changes.

Again the legislative benefit from obtaining and examining Trump's tax returns as compared to more pressing issues is negligible.

**Fourth**, so in Summary, it seems to Intervenor that the overall

Constitutional weight that should be given to legislative interest to be served by the Subpoena and this Complaint by Plaintiff Committee is somewhere between de minimis and zero.

**16b.  Estimating The Constitutional Weight Of The Dangers Of Intrusion On The Authority And Functions Of The Executive Branch (President/Presidency) Resulting From The Examination Of The Presidents Tax Returns**

**First**, it is important to contemplate the position this Complaint puts the President in.  He has given up control of his companies and foundation, in order to be the President of the United States.

During the tax years before he was sworn in, Trump the workaholic juggled the demands of six individual entities, getting financing for domestic and foreign projects, locating and purchasing property, contracting multi-million dollar projects, working with a large in-house staff and outside specialists, CPA's and Attorney's as they devised and executed plans involving foreign and domestic suppliers, currency exchanges, different local rules depending upon location and country, occasionally a Bankruptcy, charitable donations, conservation projects, personal financial issues and a myriad of other issues.  Thus the question would be, who provides the response to the hundreds to thousands of questions and issues which will surely be raised by Plaintiff and its members and staff?  **Not the President for by law he is bared from participating in his companies while President.  Not Mnuchin or Rettig for they are simply the ones being sued to obtain the tax returns and information.  But if President Trump, who was the center**

Pg 13

**of all business transactions associated with these returns, can't**

**participate in responding, how does he obtain due process?  News Flash -**

**He Can't!**

Intervenor, his wife and millions of other voters elected President Trump to

be a full time President who would keep his promises made to the electorate, not to

spend his time trying to explain past tax returns to Committee members who may

not be able to grasp the connectivity of the activities involved with his projects, and

complex financing and accounting activities and decisions which have for the most

part already been audited and accepted by the IRS and the Department of the

Treasury.

Members of the Plaintiff Committee enjoy immunity from similar lawsuits

which intrude on their precious duties as elected Representatives of the people.

> "The court also was cognizant of the fact that the constitution's Speech or
> Debate Clause forecloses Plaintiff's from compelling discovery form the
> Oversight Committee, its Members, or staff.  See *Eastland,* 421 U.S. at 503
> (stating that "a private civil action, whether for injunction or damages,
> creates a distribution and forces Members to divert their time, energy and
> attention from their legislative tasks to defend the litigation"); *see also Gravel
> v. United States,* 408 U.S. 606, 616-22 (1972)" **Opinion, <u>Trump v.
> Oversight Committee</u>, Pg 13-14**

In reality, the intent of this clause in the Constitution was to help maintain a

proper separation of powers:

> "To prevent a President or other officials of the Executive Branch from
> having members [of Congress] arrested on a pretext to prevent them from
> voting a certain way or otherwise taking actions with which the President
> might disagree." **<u>Wikipedia</u>**

So, where Congress is protected from improper conduct by the

Executive Branch, where is the protection of the Executive Branch from abusive

conduct by Congress and/or Congressmen?

The answer - in the U.S. Supreme Court decision of **Nixon v. Fitzgerald** as

cited below:

> "Although there is no blanket recognition of absolute immunity for all federal
> executive officials from liability for civil damages resulting from
> constitutional  violations, certain officials – such as judges and prosecutors –
> because of the special nature of their responsibilities, require absolute
> exemption from liability. *Cf. Butz v. Economou,* 438 U. S. 478.
> Determination of the immunity of particular officials is guided by the
> Constitution, federal statutes, history, and public policy. ... The President's
> absolute immunity is a functionally mandated incident of his unique office,
> rooted in the constitutional tradition of the separation of powers and
> supported by the Nation's history.  Because of the singular importance of the
> President's duties, diversion of his energies by concern with private lawsuits
> would raise unique risks to the effective functioning of government.  While
> the separation of powers doctrine does not bar every exercise of jurisdiction
> over the President, *a court, before exercising jurisdiction, must balance
> the constitutional weight of the interest to be served by the dangers of
> intrusion on the authority and functions of the Executive Branch*. ...
> The President's absolute immunity extends to all acts within the "outer
> perimeter" of his duties of office.  **Nixon v. Fitzgerald,** Pg 732-733
> [*Emphasis Added*]

**Second**, Intervenor argues that if this Court rules in favor of Plaintiff in this

case that the investigation, hearings, publicity, and media hype which is sure to

result will diminish the power of the President and Presidency forever, while

distracting the President from his vital duties.  Examples are as listed next.

The Presidential Power to negotiate to resolve current problems like the

nuclear issues in Korea, the growing threat from Iran, and the growing military

power of China will be diminished, and foreign countries will wonder if they should

actually be negotiating with Congress.

Current trade talks with China and other countries will be placed in jeopardy at the expense of our Nation's economy.

The Constitutionally mandated balanced separation of powers will be forever tilted in favor of the Congress.

The President and Presidency will be denied and lose any Immunity protections which the Supreme Court has previously determined exists, thereby making the Presidency inferior to Congress instead of being a co-equal branch of government.

No President can then avoid being harassed by the opposing party which controls the House or Senate in order to extract concessions desired by Congress from the President - it's called blackmail.

Qualified candidates for the Presidency will be dissuaded from running for the office.

The image of the President as the leader of the Free World will be diminished or lost, and our enemies abroad will no longer respect our power as a Nation bringing great peril to our citizens abroad and out Nation at home.

Talented individuals needed to run the various Executive Agencies will be less inclined to answer the call of future Presidents and give up their personal lives to serve.

Foreign powers will realize that they need to work with Congress, most probably the Speaker of the House, not the President, because the Presidency will be subordinate to the Congress, even though the Congress has no real authority to

negotiate with foreign powers.

America will no longer be America!

Intervenor  asserts that the holding in **Nixon v. Fitzgerald** is directly applicable to this case where the diversion of the President's attention from the duties of the Presidency to focus on years and years of Tax Returns and their complicated business affairs could lead to disastrous consequences which could severely damage our economy or even cost American lives.  A recent example exists.

After the Iranians shot down our unmanned drone operating over International waters, the President properly met with his advisors and approved a plan to use military assets to retaliate against Iranian military targets.  But on further reflection, the President changed his mind cancelling the attacks on Iranian targets.

But, if the Plaintiff Committee already had possession of the President's tax returns, and was questioning the tax decisions embodied in his returns, Trump's attention might have been diverted from the Iranian issue, and he might have been distracted such that he might not have changed his mind on the proper course of action.  Which would have resulted in the attack being implemented as initially planned, with an estimated loss of Iranian life of 150 or so military/civilian individuals.  But then the Iranians might have escalated matters, and we could today be in a military situation which affected oil deliveries throughout the world, and resulting military consequences with their attendant negative impact upon the economies of many nations, including that of the United

States.

Intervenor simply argues that the "Constitutional weight" of the dangers of intrusion on the authority and functions of the President and Presidency" which can be expected if the President is required to defend against Congressional scrutiny of his tax returns will be enormous. So on a scale of 0 to 10 with ten being the highest Constitutional Weight and the worst danger of intrusion on the authority and functions of the Executive Branch and Presidency, Intervenor would score the Constitutional Weight of the Complaint and associated Subpoena as being at least a twenty (20).

17.    **CONCLUSION**

Where it is estimated that the Constitutional Weight of the Legislative Interest of the Complaint and Subpoena is between de minimis and zero (0), and the estimated Constitutional Weight of the dangers of intrusion on the authority and function of the Executive (President/Presidency) is twenty (20), this Court must find that President Trump has Absolute Immunity, that the related Subpoena must be quashed, and the case must be dismissed with prejudice for lack of Jurisdiction pursuant to **Nixon v. Fitzgerald**.

Respectively Submitted:


_Duane Morley Cox_

Duane Morley Cox, Pro Se

_8 July 2019_

Date

Pg 18

Certificate Of Service

I, Duane Morley Cox, do hereby swear that on _8_ July 2019, that I provided

a true and correct copy of the attached Answer In Intervention to the below listed

parties by first class mail, postage prepaid.

Clerks Office (Original)
U.S. District Court
District of Columbia
Room 1225
333 Constitution Avenue N.W.
Washington D.C. 20001

Office Of General Counsel
U.S. House of Representatives
291 Cannon House Office Building
Washington D.C. 20515

United States Department Of The Treasury
1500 Pennsylvania Avenue, N.W.
Washington D.C. 20224

Internal Revenue Service
1111 Constitution Avenue, N.W.
Washington D.C. 20224

Steven T. Mnuchin
In his Official Capacity As
Secretary Of The U.S. Dept. Of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington D.C. 20220

Charles P. Rettig
In His Official Capacity As
Commissioner Of The Internal Revenue
1111 Constitution Avenue N.W.
Washington D.C. 20220

_Duane Morley Cox_

Duane Morley Cox, Pro Se

_8 July 2019_

Date