**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, | |
| *Plaintiff*, | Case No. 1:19-cv-01974-TNM |
| vs. | |
| UNITED STATES DEPARTMENT OF THE TREASURY, *et al.*, | |
| *Defendants*. | |

# Exhibit C



3033 Wilson Boulevard
Suite 700
Arlington, VA 22201
703.243.9423
www.consovoymccarthy.com

April 5, 2019

Brent J. McIntosh
General Counsel
U.S. Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

Dear Mr. McIntosh:

Two days ago, Chairman Richard Neal of the House Ways and Means Committee sent Commissioner Charles Rettig of the Internal Revenue Service a letter, which asked for confidential tax information about President Donald J. Trump, The Donald J. Trump Revocable Trust, and seven related businesses. I represent President Trump and these entities in connection with Chairman Neal's request. Sheri Dillon and Will Nelson represent President Trump and these entities in connection with the underlying IRS examinations referenced below. Secretary Mnuchin has stated that he will consult with your office about any congressional request for the President's private tax information. I write to explain why Chairman Neal cannot legally request—and the IRS cannot legally divulge—this information.

The Tax Code zealously guards taxpayer privacy. As Justice Ginsburg explained when she served on the D.C. Circuit, taxpayer privacy is "fundamental to a tax system that relies on self-reporting," since it "guarantees that the sometimes sensitive or otherwise personal information in a return will be guarded" from individuals outside the IRS. *Nat'l Treasury Employees Union v. FLRA*, 791 F.2d 183, 184 (D.C. Cir. 1986). The "general rule," accordingly, is that tax returns and return information "are confidential and not to be disclosed." *Church of Scientology of Calif. v. IRS*, 484 U.S. 9, 15 (1987). Section 6103 of the Tax Code declares that tax returns, audits, administrative files, and other related information "shall be confidential" and prohibits federal officials from disclosing them. Though section 6103 contains some exceptions, they are "limited" and "narrowly drawn." *EPIC v. IRS*, 910 F.3d 1232, 1235 (D.C. Cir. 2018). Federal officials who ignore these legal limitations are guilty of a crime and liable for damages. 18 U.S.C. §1905; 26 U.S.C. §§7213(a)(1), 7431(a).

One exception to the general rule prohibiting disclosure of tax returns and return information is the provision that Chairman Neal invokes, section 6103(f). While that section allows Ways and Means to obtain tax returns and return information under certain conditions, the committee's authority is subject to important constraints. These constraints "extend to the ordinary taxpayer and the President alike." *EPIC*, 910 F.3d at 1235.

For starters, requests for tax returns and return information must have a legitimate legislative purpose. All legislative investigations "must be related to, and in furtherance of, a legitimate task of the Congress." *Watkins v. United States*, 354 U.S. 178, 187 (1957). And that task must be squarely within the relevant committee's jurisdiction. *United States v. Patterson*, 206 F.2d 433, 434 (D.C. Cir. 1953). The Constitution does not grant Congress a standalone

"investigation" power; Congress can conduct investigations only to further some other legislative power enumerated in the Constitution. *Kilbourn v. Thompson*, 103 U.S. 168, 190 (1880). As the Supreme Court told the House Un-American Activities Committee decades ago, "there is no congressional power to expose for the sake of exposure"—especially not the "private affairs of individuals." *Watkins*, 354 U.S. at 200, 187. And Congress cannot use investigations to exercise "the functions of the executive" or to act like a "law enforcement or trial agency." *Id.* at 187.

Even when Ways and Means can identify some legitimate committee purpose, it cannot request tax returns and return information to punish taxpayers for their speech or politics. The "First Amendment freedoms" of "speech," "political belief," and "association" apply to congressional investigations. *Id.* at 188. And the First Amendment prohibits the government—including Congress—from harassing political opponents and retaliating against disfavored speech. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75 (1990); *Lozman v. City of Riviera Beach*, 138 S.Ct. 1945, 1949 (2018). The government commits illegal retaliation when the target's speech or politics motivated its actions "at least in part." *Cruise-Gulyas v. Minard*, 918 F.3d 494, 497 (6th Cir. 2019). That is because, even when the government could legitimately act "for any number of reasons, there are some reasons upon which the government may not rely"—including "constitutionally protected speech or associations." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

Chairman Neal's request flouts these fundamental constitutional constraints. Ways and Means has no legitimate committee purpose for requesting the President's tax returns or return information. While the committee has jurisdiction over taxes, it has no power to conduct its own examination of individual taxpayers. Enforcement of our nation's tax laws is entrusted to the IRS—an arm of the Executive Branch. Indeed, the IRS is already conducting its own examination. Congressional inquiries made "while the decisionmaking process is ongoing" impose the "greatest" intrusion on "the Executive Branch's function of executing the law." 5 Op. O.L.C. 27, 31 (1981).

Even if Ways and Means had a legitimate committee purpose for requesting the President's tax returns and return information, that purpose is not driving Chairman Neal's request. His request is a transparent effort by one political party to harass an official from the other party because they dislike his politics and speech. Chairman Neal wants the President's tax returns and return information because his party recently gained control of the House, the President is their political opponent, and they want to use the information to damage him politically. It is no secret that a vocal wing of the Chairman's party has been clamoring for the President's tax returns since before the 2016 election. And it is no coincidence that Chairman Neal made his request just days after prominent Democratic constituencies began publicly criticizing the House for its failure to go after the President.

While Chairman Neal now claims that he needs the President's tax returns and return information to assess how "the IRS audits and enforces the Federal tax laws against a President," that explanation is obviously pretextual. If Chairman Neal genuinely wants to review how the IRS audits Presidents, why is he seeking tax returns and return information covering the four years before President Trump took office? Why is he not requesting information about the audits of previous Presidents? And why can he not simply ask the IRS to explain its policy? The answer, of course, is that Chairman Neal's request is not about

examining IRS policy. It is about scoring political points against President Trump. As Chairman Neal explained to the partisan groups demanding the President's tax returns: He had to be "meticulous about [his] choice of words" because his request will "become the basis of a long and arduous court case." He stressed that Democrats had to "resist the emotion of the moment," not "step on [their] tongue[s]," and "approach this gingerly and make sure the rhetoric that is used does not become a footnote to the court case." Rep. Neal, *In the News* (Jan. 23, 2019), bit.ly/2TPe1k0; Rep. Neal, *In the News* (Jan. 24, 2019), bit.ly/2UfiYaT. In short, Chairman Neal promised to draft a request that concealed his party's motive: unconstitutional retaliation against the President.

If the IRS acquiesces to Chairman Neal's request, it would set a dangerous precedent. As Secretary Mnuchin recently told Congress, he is "not aware that there has ever been a request for an elected official's tax returns." For good reason. It would be a gross abuse of power for the majority party to use tax returns as a weapon to attack, harass, and intimidate their political opponents. Once this Pandora's box is opened, the ensuing tit-for-tat will do lasting damage to our nation. Can the Chairman request the returns of his primary opponents? His general-election opponents? Judges who are hearing his case? The potential abuses would not be limited to Congress, as the President has even greater authority than Congress to obtain individuals' tax returns. 26 U.S.C. §6103(g). Congressional Democrats would surely balk if the shoe was on the other foot and the President was requesting their tax returns. After all, nearly 90% of them have insisted on keeping their tax returns private, including Speaker Pelosi, Senator Schumer, Representative Nadler, Representative Schiff, and Representative Neal himself. *Members of Congress: Where Are Your Tax Returns?*, Roll Call (June 26, 2017), bit.ly/2VmhnN4.

Chairman Neal's request is especially inappropriate because, as noted above, he is asking for tax returns, administrative files, and other information regarding an ongoing IRS examination. IRS examinations are trial-like adjudications, and basic principles of due process require adjudications to be insulated from congressional interference. When a congressional investigation focuses on a "pending" adjudication, it violates "the right of private litigants to a fair trial and, equally important, with their right to the appearance of impartiality"—the "*sine qua non* of American judicial justice." *Pillsbury Co. v. FTC*, 354 F.2d 952, 964 (5th Cir. 1966). Even the most scrupulous IRS officials could not help but be influenced by the fact that Congressional partisans are scrutinizing their work in real time. *Id.*

Knowing this, Chairman Neal decided to make his request anyway. The IRS's ability to do its job fairly and impartially has already been undermined. But complying with the request, and turning over the requested files, would make matters far worse. The executive branch has long refused to "provide committees of Congress with access to, or copies of, open law enforcement files." 10 Op. O.L.C. 68, 76 (1986). Making Congress "a partner in the investigation," every administration since George Washington has recognized, would create "a substantial danger that congressional pressures will influence the course of the investigation." 8 Op. O.L.C. 252, 263 (1984).

Finally, given the unprecedented nature of Chairman Neal's request, the IRS should refrain from divulging the requested information until it receives a formal legal opinion from the Justice Department's Office of Legal Counsel. Caution and deliberation are essential to ensure that the Treasury Department does not erode the constitutional separation of powers

or the Tax Code's "core purpose of protecting taxpayer privacy," *Tax Analysts v. IRS*, 117 F.3d 607, 615 (D.C. Cir. 1997)—protections that safeguard not just the President, but all Americans.

       We would welcome an opportunity to meet and discuss these issues. We look forward to your response.

Sincerely,

William S. Consovoy

cc:    Steven T. Mnuchin
       Charles P. Rettig
       Sheri A. Dillon
       William F. Nelson