**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                                        )
COMMITTEE ON WAYS AND MEANS,            )
   UNITED STATES HOUSE OF               )
   REPRESENTATIVES,                     )
                                        )
                   Plaintiff,           )
                                        )
         v.                             )
                                        )   No. 1:19-cv-1974-TNM
UNITED STATES DEPARTMENT OF THE         )
   TREASURY, et al.,                    )
                                        )
                   Defendants,          )
                                        )
DONALD J. TRUMP, et al.,                )
                                        )
                   Defendant-Intervenors.)
_____)
```

**DEFENDANTS' AND DEFENDANT-INTERVENORS' CONSOLIDATED
MOTION TO HOLD PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
IN ABEYANCE PENDING RESOLUTION OF DEFENDANTS' AND
DEFENDANT-INTERVENORS' FORTHCOMING MOTION(S) TO DISMISS**

**AND**

**OPPOSITION TO PLAINTIFF'S MOTION FOR CONCURRENT BRIEFING**

**INTRODUCTION**

Defendants United States Department of the Treasury, *et al.*, and Defendant-Intervenors Donald J. Trump, *et al.*, respectfully submit this consolidated motion to hold in abeyance and stay further briefing on the motion for summary judgment filed by Plaintiff, the Committee on Ways and Means of the United States House of Representatives (the "Committee"), ECF No. 29, pending resolution of Defendants' and Defendant-Intervenors' forthcoming motion(s) to dismiss. Defendants and Defendant-Intervenors also respectfully request that the Court deny the Committee's motion for concurrent briefing and consideration of its summary-judgment motion with Defendants' and Defendant-Intervenors' motion(s), ECF No. 30.

As discussed in greater depth below, the merits of the Committee's legal claims raise weighty and complex constitutional issues of first impression that bear on inter-Branch relationships, the operations of the Executive Branch at its highest levels, and the individual rights of the Defendant-Intervenors.  Plaintiffs' claims, however, also raise equally serious threshold questions of jurisdiction, justiciability, and the proper role of the Judicial Branch in a system of government designed to supply each Branch with "the necessary constitutional means and personal motives to resist encroachments of the other[.]" *The Federalist* No. 51 (James Madison).  These substantial threshold issues should be heard, and resolved, before the Court and the parties expend the considerable time, effort, and resources that would be necessary to address the serious separation-of-powers issues, and questions of constitutional right, that would have to be decided to determine the merits of the Committee's claims.  Depending on how this Court resolves those threshold issues, it may not need to resolve the weighty constitutional questions the Committee's claims present on the merits.

The Committee's motion for summary judgment should also be held in abeyance for the independent reason that the Defendant-Intervenors contemplate that they may require discovery to prepare their opposition and cross-motion.  Neither the Defendant-Intervenors, nor, for that matter, the Defendants, should be required to respond to the merits of the Committee's claims until the record on which those claims are putatively to be decided is complete.  And the schedule the Committee contemplates would require just that, raising the prospect of supplemental briefing after discovery or other motions practice outside the Committee's proposed schedule that would unnecessarily complicate these proceedings.

Finally, the Committee's conduct thus far is inconsistent with its asserted need for expedition—a request it is lodging nearly two months after filing its Complaint in this matter and nearly four months after the Secretary of the Treasury declined to provide the Committee the

President's tax returns and other return information. Although any delay thus far is of the Committee's own creation, Defendants and Defendant-Intervenors are nonetheless willing to accommodate the Committee's desire for a prompt resolution of these proceedings, and would not object to a schedule providing for the completion of briefing and argument on their motion(s) to dismiss by the week of October 16, 2019, or to setting a comparably paced schedule for resolving any motions for summary judgment on the merits, should such resolution prove necessary.

For these reasons, Defendants' and Defendant-Intervenors' request to hold the Committee's summary-judgment motion in abeyance should be granted, and the Committee's request for concurrent briefing should be denied.

## BACKGROUND

Nearly two months after the Secretary of the Treasury first informed the Committee that Defendants could not provide the information the Committee desired, the Committee filed this action, on July 2, 2019, seeking an unprecedented order compelling Defendants to produce the federal income tax returns and related Internal Revenue Service ("IRS") administrative files ("tax-return information") of President Donald J. Trump and eight Trump Organization entities (collectively, the Defendant-Intervenors) for the years 2013-2018. Complaint for Declaratory and Injunctive Relief, ECF No. 1 ("Compl.") ¶¶ 1, 9, 57, 72 & Exhs. A, K; *see id.* at 48 (Prayer for Relief ¶ A(iii), (iv)). This information (like the return information of all taxpayers) is protected from disclosure by statute, 26 U.S.C. § 6103(a), which provides that no officers or employees of the United States shall disclose tax returns or tax-return information obtained by them in connection with their Government service except as disclosure is otherwise authorized by the Internal Revenue Code. Violation of this prohibition is a felony. 26 U.S.C. § 7213(a)(1).

Nevertheless, the Committee maintains that Defendants are legally obligated to disclose this highly confidential and statutorily protected information in response, first, to an April 3, 2019,

3

request by the Committee that purports to invoke the disclosure provisions of 26 U.S.C. § 6103(f), *see* Compl. ¶¶ 2, 24-29, 57, and, second, to a May 10, 2019, Committee subpoena, seeking essentially the same information, *see id.* ¶¶ 7, 72.  According to the Committee's original request, it requires access to six years' worth of the President's tax-return information (and the tax-return information of eight of his companies) to "consider[ ] legislative proposals and conduct[ ] oversight related to our Federal tax laws, including, but not limited to, the extent to which the IRS audits and enforces the Federal tax laws against a President." *Id.* Exh. A.

As the Secretary of the Treasury observed, however, in his response to the Committee's request, "the Committee's statutory authority [to request tax-return information] under section 6103(f)" is bounded by Congress's authority under the Constitution, including the requirement, as held by the Supreme Court, that Congressional demands for information must serve a "legitimate legislative purpose." *See* Compl. Exh. G (Letter from Sec'y Mnuchin to Chmn. Neal, at 2 & n.4 (Apr. 23, 2019) (citing *McGrain v. Daugherty*, 273 U.S. 135, 174, 178 (1927)).  An extensive public record of statements by the Committee Chairman, other Committee members, and other House officials reveals that the "animating purpose" of the Committee's request for the tax-return information of the President and his companies is "the public exposure of the President's private tax information." *See id.* Exh. G, at 3-4 & App. A.  The Supreme Court has made clear, however, that "'there is no congressional power … to expose for the sake of exposure.'" *See id.* Exh. G at 3 (quoting *Watkins v. United States,* 354 U.S. 178, 187, 200 (1957)).

Accordingly, the Secretary determined (after consultation with the Department of Justice Office of Legal Counsel) that the Committee's section 6103(f) request and its May 10 subpoena lack a legitimate legislative purpose, and that the Department of the Treasury, therefore, is not authorized to release the demanded tax-return information of the President and his companies under section 6103. *See id.* Exh. G, at 1 & App. A at 4-5, *see also id* Exhs. I, N; Congressional

4

Committee's Request for the President's Tax Returns Under 26 U.S.C. § 6103(f), Op. O.L.C., 2019 WL 2563046 (June 13, 2019).[1]  The Committee then filed this lawsuit to compel disclosure of the President's tax-return information, and his companies'.

## ARGUMENT

The Committee's motion for summary judgment seeks an immediate ruling on the merits of its claims without regard for the "nerve-center constitutional questions" raised by the inter-Branch dispute it has initiated, *United States v. AT&T*, 551 F.2d 384, 394 (D.C. Cir. 1976) ("*AT&T I*"), or the Defendant-Intervenors' entitlement, like that of any litigants, to seek discovery of relevant information before judgment on the claims presented is rendered, *see* Fed. R. Civ. P. 56(d).  The Committee's desire to make up for the time it delayed both in bringing this action and in moving for summary judgment cannot be indulged at the expense of sound judicial decisionmaking, or the rights of opposing parties.

## I.   POSITION OF THE DEFENDANTS

The Committee's summary-judgment motion should be held in abeyance, and the Committee's motion for concurrent briefing be denied, for at least two reasons.

**1.**  First, Defendants and Defendant-Intervenors will file motions to dismiss (or, in accord with this Court's order of July 18, 2019, ECF No. 14, a consolidated motion) by September 6, 2019.[2]  The motion(s) will raise a number of substantial threshold issues, including, most

---

[1]  The Secretary also emphasized that the concerns raised by the Committee's request "extend far beyond its particulars." Compl. Exh. G at 5.  If "[G]overnment officials could obtain the tax returns of any person they dislike solely for the sake of exposure," then the public trust in taxpayer confidentiality that "is the linchpin of our tax system of self-assessment and voluntary compliance" "would be eroded." *Id.*

[2]  The Committee effected service of its complaint on the Office of the United States Attorney for the District of Columbia on July 8, 2019.  *See* Return of Service, ECF No. 4.  Under the terms of Federal Rule of Civil Procedure 12(a)(3) & (b), Defendants must answer or respond by motion by September 6, 2019.

fundamentally, whether political conflicts between the elected Branches fall within the sphere of authority that the Constitution assigns to the Federal courts. The motion(s) will also present the questions whether Congress itself clearly and unmistakably has conferred the statutory jurisdiction required, or created the cause of action needed, before the Federal courts could hear an extraordinary inter-Branch dispute of this kind, even if it were justiciable under Article III.

In contrast, adjudicating the merits of the Committee's claims will require the Court to consider entirely distinct though equally serious and difficult issues—including whether the Committee's demand for the tax-return information of the President and his companies has a legitimate legislative purpose; whether Defendants were required to disregard, and the Court must now also ignore, the abundant public evidence that the Committee's stated purpose in seeking that information is pretextual; whether the Committee's demand for this information represents an impermissible incursion on the independence of the Executive Branch; and whether it violates Defendant-Intervenors' individual constitutional rights. These are weighty constitutional questions. While the Federal Rules of Civil Procedure do permit the Committee to move for summary judgment at this time, the Court should exercise its discretion to do what it traditionally does in this procedural posture: defer briefing and argument on summary judgment until the threshold issues raised in the motion(s) to dismiss have been resolved.

Even in run-of-the-mill cases, this Court routinely stays summary-judgment briefing so it can first decide a motion to dismiss, and does so, in particular, in cases involving Congress, the President, and other high-ranking officials. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Senate*, 340 F. Supp. 2d 26, 28 n.1 (D.D.C. 2004); *Campbell v. Clinton*, 52 F. Supp. 2d 34, 39 (D.D.C. 1999); *see also Sierra Club v. Perry*, 373 F. Supp. 3d 128, 134 n.4 (D.D.C. 2019); *Daniels v. United States*, 947 F. Supp. 2d 11, 15 (D.D.C. 2013); *Angulo v. Gray*, 907 F. Supp. 2d 107, 109 (D.D.C. 2012); *Magritz v. Ozaukee Cty.*, 894 F. Supp. 2d 34, 37 (D.D.C. 2012); *Furniture Brands Int'l Inc. v. U.S.*

6

*Int'l Trade Comm'n*, 2011 WL 10959877, at *1 (D.D.C. Apr. 8, 2011); *Douglass v. Dist. of Columbia*, 750 F. Supp. 2d 54, 58 (D.D.C. 2010); *Ticor Title Ins. Co. v. FTC*, 625 F. Supp. 747, 749 n.2 (D.D.C. 1986).

This standard practice makes sense. "[S]taying further briefing of [a] plaintiff's summary judgment motion [allows] the parties to avoid the unnecessary expense, the undue burden, and the expenditure of time to brief a motion that the Court may not decide." *Furniture Brands*, 2011 WL 10959877, at *1. A stay is especially appropriate when a motion to dismiss raises "threshold questions of jurisdiction and justiciability." *Ticor Title*, 625 F. Supp. at 749 n.2; *see also e.g.*, *Campbell*, 52 F. Supp. 2d at 39 (staying summary-judgment briefing because the "President has filed a motion to dismiss arguing ... that this case [alleging War Powers Act violations] presents a non-justiciable political question"). As Congress itself has argued in the past, when "a motion to dismiss rais[es] serious challenges to the Court's jurisdiction," the Court "should exercise its discretion to stay proceedings on the merits until it determines whether it has the authority to hear th[e] case at all." Defs.' Mot. to Hold in Abeyance at 5, ECF No. 25, *Judicial Watch, Inc. v. U.S. Senate*, No. 1:03-cv-1066 (D.D.C. Oct. 29, 2003). Because "a favorable ruling [on a] motion to dismiss would obviate any need to address the issues raised in [a] plaintiff's motion for summary judgment, any resources expended by defendants or the Court in addressing [such a] motion prior to resolving the serious antecedent questions regarding the Court's authority to hear th[e] case could be needlessly wasted." *Id.* at 7.

The reasons for holding summary-judgment proceedings in abeyance are all the more compelling in the extraordinary case presented here. As explained, the forthcoming motion(s) to dismiss from Defendants and the Defendant-Intervenors will raise numerous threshold issues, among them foundational questions regarding the power of the Federal courts to enter the fray of "political turf war[s]" between the elected Branches. *See U.S. House of Representatives v.*

*Mnuchin*, 379 F. Supp. 3d 8, 10 (D.D.C. 2019), *appeal pending,* No. 19-05176 (D.C. Cir.).  These questions will include, but are not necessarily limited to:

- Whether this dispute is one "traditionally thought to be capable of resolution through the judicial process," *Raines v. Byrd*, 521 U.S. 811, 818-19 (1997), and capable of decision consistent with the separation of powers, *see U.S. House of Representatives*, 379 F. Supp. 3d at 22;

- Whether the Court may entertain this suit given that the House of Representatives has not voted specifically to authorize the Committee to file suit to compel disclosure of the President's (and his companies') tax information;

- Whether the Court should exercise its equitable discretion to decline to hear this suit until the two Branches have fulfilled the "implicit constitutional mandate to seek optimal accommodation" of each other's needs through negotiation and compromise, *see United States v. AT&T Co.*, 567 F.2d 121, 130 (D.C. Cir. 1977) ("*AT&T II*");

- Whether the general federal-question statute, 28 U.S.C. § 1331, can be understood to confer subject-matter jurisdiction over suits by the House of Representatives (or its committees) to enforce demands for information, in light of the highly circumscribed grant of statutory jurisdiction to hear subpoena-enforcement actions by the Senate, 28 U.S.C. § 1365(a);

- Whether, by the same token, the Committee has a viable cause of action to enforce its demands for information under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02; and

- Whether the Committee is a "person," within the meaning of 5 U.S.C. § 702, entitled to seek judicial review under the Administrative Procedure Act.

The questions implicated by the merits of the Committee's summary-judgment motion are entirely distinct, but just as profound.  They include:

- Whether Defendants, charged by Article II of the Constitution with responsibility to "take Care that the Laws be faithfully executed," including the taxpayer confidentiality requirements of section 6103(a), were required to accept the Committee's stated purpose for its requests at face value, and to disregard the extensive public record indicating that the Committee's true purpose was the constitutionally unauthorized objective of publicly exposing individual tax-return information for exposure's sake;

- Whether this Court, in determining whether the Committee's requests fall within the scope of Congress's implicit power of inquiry in furtherance of legitimate legislative tasks, also must accept the Committee's stated purpose at face value, and ignore the plentiful public evidence that the Committee's stated purpose is pretextual;

8

- Whether the Committee's requests constitute impermissible harassment of the Head of the Executive Branch, or interference with the performance of his Constitutional duties;

- Whether the Committee, in light of the acute separation-of-powers concerns raised by its demands for the President's individual tax information, has justified its requests for this information with sufficient particularity to allow a court to evaluate concretely whether the information is pertinent and necessary to the formulation of contemplated legislation; and

- Whether the Committee's stated need for the President's tax-return information, even if not pretextual, can overcome the constitutional protections asserted by the Defendant-Intervenors.

The requirement that a Federal court assure itself of its jurisdiction to hear a case before proceeding to the merits is "inflexible and without exception," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (quotation omitted), but that imperative is at its apex in a case such as this, where *both* the questions surrounding the court's jurisdiction *and* the merits of the claims the plaintiff has lain before the court for decision are so freighted with constitutional import. Requiring the parties to prepare and submit hundreds of pages of summary-judgment briefing, and the Court to labor over them, before the Court decides the complex question of whether it even has jurisdiction to hear this case—is a recipe for wasting time and resources. The far better course is to address and resolve these difficult issues in the ordinary order and only to the extent necessary.

**2.** Second, in addition to the potential waste of time and resources (both the Court's and the parties'), embarking on summary-judgment proceedings at this time would be premature, and could complicate and prolong, rather than streamline, the resolution of the case.

As discussed in greater detail below, *infra* § II, the Defendant-Intervenors are planning to ask this Court to deny or postpone ruling on the Committee's motion for summary judgment because no discovery has taken place yet. *See* Fed. R. Civ. P. 56(d). The Defendants take no position on the necessity or appropriateness of any discovery that the Defendant-Intervenors may pursue; but Defendants should not be required to respond to the Committee's summary-judgment

9

motion, any more than the Defendant-Intervenors, if the factual record on which the merits of the Committee's claims are to be decided will be enhanced by discovery the Defendant-Intervenors plan to conduct. Defendants should not be compelled to formulate their arguments on the basis of anything less than the complete record. And it would lead only to duplication of effort and delay if Defendants had to file an opposition to the Committee's motion before discovery is taken, only to require supplementation and recapitulation of their arguments once the record has been augmented by evidence obtained by the Defendant-Intervenors in discovery. That sort of seriatim briefing—atop the substantial increase in complexity the Committee's proposal would entail—would not lend itself to orderly judicial decision-making.

**3.** The Committee offers no persuasive reason to depart in these circumstances from the traditional sequence of motion to dismiss, then discovery, then summary judgment. In inter-Branch disputes like this one, the Committee's appeals to expedition do not carry the day:

> We are aware that from the legislative viewpoint, any alternative to outright enforcement of the subpoena entails delay.… But … this is an inherent corollary of the existence of coordinate branches. The Separation of Powers often impairs efficiency, in terms of dispatch and the immediate functioning of government. It is the long-term staying power of government that is enhanced by the mutual accommodation required by the Separation of Powers.

*AT&T II*, 567 F.2d at 133; *accord Comm. on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008).

The Committee's concern about delay, moreover, rings hollow. The 116th Congress commenced on January 3, 2019. Although Speaker Pelosi promised that obtaining the President's tax returns was "one of the first things" the new Congress would accomplish, *see* Compl., Exh. G, App. A at 4, the Committee waited 90 days, until April 3, 2019, before even requesting them. *Id.*, Exh. A. After the Secretary first informed the Committee that Defendants could not comply with the Committee's request on May 6, 2019, *id.*, Exh. I, the Committee waited nearly another two months before filing this lawsuit, until July 2, 2019. Even after filing suit, the Committee showed

no urgency and waited yet another month and a half before seeking summary judgment, and asking this Court suddenly to expedite this proceeding. All told, it took the Committee 180 days to bring this suit (and still another 49 days after that before moving for summary judgment), with little to no explanation for its leisurely pace. The Committee's purported desire to consider legislation regarding the Presidential audit process does not require that the Court suddenly bring these proceedings to a gallop.

In short, having failed itself to act in an expeditious manner, the Committee cannot now complain about the "delays" inherent in ordinary civil practice, or the investment of time required for careful presentation and consideration of the issues implicated by this case. The complexity of the questions the Committee has brought to this Court, and their import for the inter-relationships of all three Branches within the Constitutional framework, call for deliberation, not haste. That is particularly true given the Supreme Court's recent admonition in *Virginia House of Delegates v. Bethune Hill* that a "legislative chamber as an institution … suffers no legally cognizable injury from changes to the content of legislation its future members may elect to enact" because that chamber "is a representative body composed of members chosen by the people." 139 S. Ct. 1945, 1955 (2019). The House's institutional interest in legislation will persist indefinitely and suffers "no cognizable injury" regardless of any "changes to its membership brought about by the voting public." *Id.* at 1955 n.6.

All that said, for the sake of accommodation, Defendants (and Defendant-Intervenors, *see infra* § II) are willing to agree to an expeditious schedule for their motion(s) to dismiss and (if necessary) motions for summary judgment that will provide more than enough time to conclude these proceedings long before "the current Congress will end on January 3, 2021." ECF No. 30 at 3. To that end, Defendants and Defendant-Intervenors propose that their motion(s) to dismiss be filed by September 6, the Committee's opposition be filed by September 30, any reply(ies) be

filed by October 11, and oral argument be held the week of October 16 or as soon thereafter as the Court desires. If this Court denies the motion to dismiss, Defendants and Defendant-Intervenors would agree to a similarly expedited schedule at summary judgment. But the Committee's proposal to combine the two schedules risks wasting substantial time and resources with no corresponding benefit.

## II.   DEFENDANT-INTERVENORS' POSITION

Defendant-Intervenors fully agree with Defendants on the best way to proceed. Courts almost always stay summary-judgment briefing when faced with a motion to dismiss that raises threshold questions, and the Committee offers no persuasive reason why this significant separation-of-powers dispute should be any different, especially after the Committee's many unexplained and self-imposed delays. Further, summary-judgment briefing will require the parties to brief hundreds of pages of difficult merits issues that are entirely unrelated to the threshold questions presented in the motion to dismiss; in addition to the difficult questions surrounding 26 U.S.C. §6103, Article I of the Constitution, and the separation of powers, Defendant-Intervenors' summary-judgment brief will raise record-intensive claims involving due process, First Amendment retaliation, and informational privacy. If these persuasive reasons for denying the Committee's proposal are not enough, Defendant-Intervenors would add one more: they are entitled to discovery. *See* Fed. R. Civ. P. 56(d).

Absent a stay, Defendant-Intervenors will file, and this Court should grant, a Rule 56(d) motion to postpone summary-judgment briefing until Defendant-Intervenors can take discovery. "Because pre-discovery summary judgment is disfavored, the D.C. Circuit has directed trial courts to grant Rule 56(d) requests 'almost as a matter of course.'" *SoundExchange, Inc. v. Muzak, LLC*, 322 F. Supp. 3d 72, 78 (D.D.C. 2018); *see also Tabb v. Dist. of Columbia*, 477 F. Supp. 2d 185, 188 n.1 (D.D.C. 2007) ("[Seeking] summary judgment very early in th[e] lawsuit[,] before any

12

discovery[,] … is a disfavored practice. As the D.C. Circuit has stated on several occasions, 'summary judgment ordinarily "is proper only after the plaintiff has been given adequate time for discovery."'"). This case requires discovery. Under Article I and the First Amendment, Defendant-Intervenors are entitled to discover the Committee's "real object" and "motive" for requesting the President's tax returns—whether it is about passing legislation on presidential audits or about exposing the President's private information for political gain. *McGrain v. Daugherty*, 273 U.S. 135, 178 (1927); *Crawford-El v. Britton*, 523 U.S. 574, 592-94 (1998). Thus, among other things, Defendant-Intervenors will request

- Communications between the Committee and any employees of the executive branch, state governments, the DNC, the DCCC, other political organizations, interest groups, journalists, or private individuals concerning the President's tax returns;
- Communications among the House, Committee members, and/or Committee staff concerning the President's tax returns;
- Documents reflecting the Committee's intent or ability to publicize the President's tax information;
- Drafts of all letters, subpoenas, and other documents requesting production of taxpayer information concerning the President; and
- Documents concerning any inquiry by the Committee into the presidential audit process.

Under the Due Process Clause, moreover, Defendant-Intervenors are entitled to discover whether and how the Committee has attempted to interfere with the President's audits. *Pillsbury Co. v. FTC*, 354 F.2d 952, 964 (5th Cir. 1966). Defendant-Intervenors will request, among other things, the Committee's and others' communications with the IRS or Treasury concerning presidential audits.

Although the Speech or Debate Clause often insulates congressional *defendants* from discovery, the Clause does not apply here because the Committee is a *plaintiff*. The Committee agrees. *See* 7/25/19 Transcript at 15, *Trump v. Cmte. on Ways & Means*, No. 19-cv-2173 (D.D.C.) ("[T]he clause has no application where the Committee is a plaintiff, because the Committee is,

by taking that action and agreeing to avail itself of the jurisdiction of the court, the Committee is opting not to assert the immunity that it would otherwise have"); *id.* at 15-16 ("[W]hen we are a plaintiff …, there is no Speech or Debate implication there."); *id.* at 18-19 ("Speech or Debate is not an issue when we are talking about … affirmative uses of the House coming to court to enforce its subpoenas."). So does the Supreme Court. *See Tenney v. Brandhove*, 341 U.S. 367, 378 (1951). Indeed, the Committee's just-filed motion for summary judgment does not even invoke the Speech or Debate Clause, and it engages in an extended discussion of its true purpose for requiring the President's tax returns.  Therefore, it is likely that a decision on the Committee's summary-judgment motion will be postponed anyway in order to allow Defendant-Intervenors to take the discovery they are entitled to under the Federal Rules—another reason why the Court should stay briefing on that motion now.

## CONCLUSION

For the foregoing reasons, the Committee's motion for summary judgment should be held in abeyance pending resolution of Defendants' and Defendant-Intervenors' motion(s) to dismiss, and the Committee's motion for concurrent briefing should be denied.

Dated:  August 19, 2019

                                            Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

|  |  |
|---|---|
| */s/ James J. Gilligan* | s/ William S. Consovoy |
| JAMES J. GILLIGAN | William S. Consovoy (D.C. Bar #493423) |
| Special Litigation Counsel | Thomas R. McCarthy (D.C. Bar #489651) |
|  | Cameron T. Norris |
| SERENA M. ORLOFF | CONSOVOY MCCARTHY PLLC |
| STEVEN A. MYERS | 1600 Wilson Blvd., Ste. 700 |
| CRISTEN HANDLEY | Arlington, VA 22209 |
| ANDREW M. BERNIE | (703) 243-9423 |
| Trial Attorneys | will@consovoymccarthy.com |
|  | tom@consovoymccarthy.com |
|  | cam@consovoymccarthy.com |
| U.S. Department of Justice |  |
| Civil Division, Federal Programs Branch | Patrick Strawbridge |
| P.O. Box 883 | CONSOVOY MCCARTHY PLLC |
| Washington, D.C.  20044 | Ten Post Office Square |
| Telephone:    (202) 514-3358 | 8th Floor South PMB #706 |
| Fax:               (202) 616-8470 | Boston, MA 02109 |
| E-mail:          james.gilligan@usdoj.gov | patrick@consovoymccarthy.com |
| *Counsel for Defendants* | *Counsel for Defendant-Intervenors* |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, | ) ) ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) ) | No. 1:19-cv-1974-TNM |
| UNITED STATES DEPARTMENT OF THE TREASURY, *et al.*, | ) ) ) | |
| *Defendants*, | ) ) | |
| DONALD J. TRUMP, *et al.*, | ) ) | |
| *Defendant-Intervenors.* | ) ) | |

**[PROPOSED] ORDER**

This matter is before the Court on Plaintiff's Motion for Entry of Briefing Schedule and Expedited Consideration of this Case, and the Defendants' and Defendant-Intervenors' Consolidated Motion to Hold Plaintiff's Motion for Summary Judgment in Abeyance Pending Resolution of Defendants' and Defendant-Intervenors' Forthcoming Motion(s) to Dismiss. The Court having considered the parties' respective submissions in support of and in opposition to these motions,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for Entry of Briefing Schedule and Expedited Consideration of this Case is hereby DENIED;

2. Defendant-Intervenors' Consolidated Motion to Hold Plaintiff's Motion for Summary Judgment in Abeyance Pending Resolution of Defendants' and Defendant-Intervenors' Forthcoming Motion(s) to Dismiss is hereby GRANTED;

3.       Defendants and Defendant-Intervenors shall file their motion(s) to dismiss by September 6, 2019;

4.       Plaintiff shall file its opposition to Defendants' and Defendant-Intervenors' motion(s) to dismiss by September 30, 2019; and

5.       Defendants and Defendant-Intervenors shall file their reply(ies) in support of their motion(s) to dismiss by October 11, 2019.

So ORDERED this _____ day of August, 2019.

 

HON. TREVOR N. MCFADDEN
UNITED STATES DISTRICT JUDGE