**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COMMITTEE ON WAYS AND MEANS, UNITED
STATES HOUSE OF REPRESENTATIVES,

*Plaintiff*,

vs.

UNITED STATES DEPARTMENT OF THE
TREASURY *et al.*,

*Defendants*.

Case No. 19-cv-01974-TNM

**PLAINTIFF'S CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR ENTRY OF
BRIEFING SCHEDULE AND EXPEDITED CONSIDERATION OF THIS CASE
AND
OPPOSITION TO DEFENDANTS AND DEFENDANTS-INTERVENORS' MOTION TO
HOLD PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN ABEYANCE**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      Defendants and Defendant-Intervenors' Proposal Would Likely Neither
        Advance Judicial Economy Nor Lead to Prompt Resolution of This Case ........................1

II.     Defendants and Defendants-Intervenors' Criticisms Of The Committee's
        Efforts To Resolve This Matter Are Unfounded ................................................................8

# TABLE OF AUTHORITIES

## CASES

Page

*Air Alliance Houston v. U.S. Chemical & Safety Hazard Investigation Board*,
365 F. Supp. 3d 118 (D.D.C. 2019) .................................................................7

*American Hospital Ass'n v. Department of Health & Human Services*, 2018 WL
5777397 (D.D.C. Nov. 2, 2018).........................................................................6

*Angulo v. Gray*, 907 F. Supp. 2d 107 (D.D.C. 2012) .....................................................5

*Barenblatt v. United States*, 360 U.S. 109 (1959) ..........................................................7

*Campbell v. Clinton*, 52 F. Supp. 2d 34 (D.D.C. 1999)...................................................5

*Citizens for Responsibility & Ethics in Washington v. Cheney*, 593 F. Supp. 2d
194 (D.D.C. 2009) ...............................................................................................6

*Clean Water Action v. Pruitt*, 2017 WL 8292486 (D.D.C. Aug. 4, 2017) .....................6

*Committee on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d
53 (D.D.C. 2008) .................................................................................................4

*Committee on Oversight & Government Reform v. Holder*, 979 F. Supp. 2d 1
(D.D.C. 2013) ......................................................................................................4

*Daniels v. United States*, 947 F. Supp. 2d 11 (D.D.C. 2013) ..........................................5

*District of Columbia v. U.S. Department of Commerce*, 789 F. Supp. 1179
(D.D.C. 1992) ......................................................................................................7

*Douglass v. District of Columbia*, 750 F. Supp. 2d 54 (D.D.C. 2010)............................5

*Edwards v. Aurora Loan Services, LLC*, 791 F. Supp.2d 144 (D.D.C. 2011)................7

*Furniture Brands International Inc. v. U.S. International Trade Commission*,
2011 WL 10959877 (D.D.C. Apr. 8, 2011) ........................................................5

*Judicial Watch, Inc. v. U.S. Senate*, 340 F. Supp. 2d 26 (D.D.C. 2004) ........................5

*Kucinich v. Bush*, 236 F. Supp. 2d 1 (D.D.C. 2002).......................................................7

*Magritz v. Ozaukee County*, 894 F. Supp. 2d 34 (D.D.C. 2012) ....................................5

*McGrain v. Daugherty*, 273 U.S. 135 (1927) .................................................................4

*National Council for Industrial Defense, Inc. v. U.S. Department of Defense*,
1989 WL 46766 (D.D.C. Apr. 20, 1989)............................................................7

ii

*Sierra Club v. Perry*, 373 F. Supp. 3d 128 (D.D.C. 2019) ...............................................................5

*United States v. AT&T*, 551 F.2d 384 (D.C. Cir. 1976)....................................................................4

## DOCKETED CASES

*Trump v. Deutsche Bank AG*, No. 1:19-cv-03826-ER (S.D.N.Y.) .............................................3, 4

*Trump v. Deutsche Bank AG*, No. 19-1540-cv (2d Cir.).............................................................3, 4

*Trump v. Mazars USA, LLP*, No. 1:19-cv-01136-APM (D.D.C.) ...............................................3, 4

*Trump v. Mazars USA, LLP*, No. 19-5142 (D.C. Cir.) ...............................................................3, 4

## OTHER AUTHORITIES

*Hearing on The President's 2020 Budget Proposal: Hearing Before the House
      Committee on Ways & Means*, 116th Cong., 1st Sess. (Mar. 14, 2019),
      *available at* https://waysandmeans.house.gov/sites/democrats.
      waysandmeans.house.gov/files/documents/Transcript_1.pdf.............................................9

Fox, L., et al., CNN, *House committee cancels shutdown hearing after Mnuchin
      declines to appear*, https://www.cnn.com/2019/01/23/politics/ways-and-
      means-cancels-hearing-mnuchin/index.html .......................................................................9

*Response to Congressional Requests for Information Regarding Decisions Made
      Under the Independent Counsel Act*, 10 Op. O.L.C. 68 (1986)...........................................5

Defendants and Defendants-Intervenors ask this Court to hold Plaintiff's motion for summary judgment in abeyance and instead undertake two rounds of briefing and argument, beginning with a motion or motions to dismiss they intend to file two weeks from now. Defendants and Defendants-Intervenors contend that their proposal—which would involve as many as ten briefs instead of four, and two rounds of argument rather than one—will advance judicial economy and the prompt and efficient resolution of this matter.  As explained below, their proposal would do nothing of the sort.  Defendants and Defendants-Intervenors' proposal would most likely increase burdens considerably on the Court and the parties.  At the same time, it would give Defendants and Defendants-Intervenors an unwarranted advantage by giving them more time and more pages to respond to Plaintiff's claims and arguments, and it could prolong this litigation considerably.  Plaintiff therefore respectfully requests that the Court deny Defendants and Defendants-Intervenors' motion and instead enter the scheduling order proposed by Plaintiff.

I.      **Defendants and Defendant-Intervenors' Proposal Would Likely Neither Advance Judicial Economy Nor Lead to Prompt Resolution of This Case**

Several considerations show that Defendants and Defendants-Intervenors' proposal would likely burden the Court and Plaintiff while slowing resolution of this case.

*First*, Defendants and Defendants-Intervenors argue that their proposal would reduce the burdens on the Court by enabling it to address only threshold questions of standing and justiciability at this time.  The Court could do so just as easily under Plaintiff's proposal. Plaintiff has already addressed, in its summary judgment briefing, some of the questions of standing and justiciability that Defendants and Defendants-Intervenors say they intend to raise, including Plaintiff's standing to bring its claims and the causes of action upon which these claims rely.  Defendants and Defendants-Intervenors can readily address those threshold legal

1

issues through the briefing schedule Plaintiff has proposed.  The Court can then first take up questions of subject matter jurisdiction, as Defendants and Defendants-Intervenors urge.

Plaintiff's briefing schedule is thus fully consistent with the familiar principle, emphasized by Defendants and Defendants-Intervenors, that a "court [should] assure itself of its jurisdiction to hear a case before proceeding to the merits."[1]  That principle does not require the Court to address justiciability and merits issues in two separate rounds of briefing.  If the Court, after reviewing the parties' submissions on justiciability, concludes that it has jurisdiction over this case, the merits issues will already have been presented to it, and the Court can rule on those questions without the need for further briefing or more time.  To the extent the Court determines that any of the arguments or record evidence relevant to the merits may also help inform its consideration of non-merits issues, Plaintiff's proposal has the added virtue of ensuring that the Court has those materials in front of it when it rules on the justiciability questions.

*Second*, Defendants and Defendants-Intervenors complain that following Plaintiff's proposal would burden them by requiring them to brief the merits as well as the non-merits issues before the Court rules on the non-merits issues.  Defendants and Defendants-Intervenors exaggerate the burdens they would face under Plaintiff's proposal and disregard the burdens their proposal would impose on Plaintiff—the injured party—and the Court.

Requiring Defendants and Defendants-Intervenors to brief the merits issues as well as questions of justiciability in summary judgment briefs will not unfairly burden Defendants or Defendants-Intervenors.  Defendants delayed more than a month before responding to Plaintiff's

---

[1] Defendants' and Defendants-Intervenors' Consolidated Motion to Hold Plaintiff's Motion for Summary Judgment in Abeyance Pending Resolution of Defendants' and Defendants-Intervenors' Forthcoming Motion(s) to Dismiss and Opposition to Plaintiff's Motion for Concurrent Briefing ("Mot. & Opp.") at 9.

Section 6103 request, they claim, because of their need to consult with the Department of Justice about the legal issues raised by the request.  Secretary Mnuchin laid out the basis for his refusal to comply with the request in a letter that, with two appendices, spans more than 50 single-spaced pages.  He stated that his decision not to comply was made in reliance on the advice of the Department of Justice's Office of Legal Counsel (OLC), which published an opinion of more than 30 single-spaced pages.  Thus, in preparing their briefs in opposition to Plaintiff's motion for summary judgment and in support of judgment in their favor, Defendants will hardly be starting from scratch in addressing the merits of this dispute.

Defendants and Defendants-Intervenors have also addressed versions of many of these issues at length in district courts and courts of appeals in the *Trump v. Mazars* and *Trump v. Deutsche Bank* cases in which other Congressional committees have sought financial records of President Donald J. Trump in his individual capacity.  In those cases, Defendants and/or Defendants-Intervenors have likewise argued: (1) that courts may disregard a facially legitimate purpose and conduct a wide-ranging inquiry into whether that purpose is a pretext for illegitimate motives, Mot. & Opp. at 8[2]; (2) that the committees' investigative requests constitute "impermissible harassment" of the President or would interfere with the President's performance of his constitutional duties, Mot. & Opp. at 9[3]; and (3) that, in light of purported separation-of-

---

[2] *See, e.g.*, Reply 11-12, *Trump v. Mazars USA, LLP* ("D.D.C. *Mazars* Reply"), No. 1:19-cv-01136-APM (D.D.C. May 8, 2019); Appellants Br. 29-30, *Trump v. Mazars USA, LLP* ("D.C. Cir. *Mazars* Br."), No. 19-5142 (D.C. Cir. June 10, 2019); Appellants Reply 11-17, 19-20, *Trump v. Mazars USA, LLP* ("D.C. Cir. *Mazars* Reply"), No. 19-5142 (D.C. Cir. July 9, 2019); Reply 5, *Trump v. Deutsche Bank AG* ("S.D.N.Y. *Deutsche Bank* Reply"), No. 1:19-cv-03826-ER (S.D.N.Y. May 15, 2019); Appellants Br. 25-27, *Trump v. Deutsche Bank AG* ("2d Cir. *Deutsche Bank* Br."), No. 19-1540-cv (2d Cir. June 28, 2019); Appellants Reply 10-12, *Trump v. Deutsche Bank AG* ("2d Cir. *Deutsche Bank* Reply"), No. 19-1540-cv (2d Cir. July 18, 2019).

[3] *See, e.g.*, U.S. Br. 11, *Trump v. Mazars USA, LLP* ("*Mazars* U.S. Br."), No. 19-5142 (D.C. Cir. Aug. 6, 2019); U.S. Br. 7, 12, *Trump v. Deutsche Bank AG* ("*Deutsche Bank* U.S. Br."), No. 19-1540-cv (2d Cir. Aug. 19, 2019).

powers concerns, the committee has not justified its requests with sufficient particularity to allow a court to evaluate whether the information sought is "necessary to the formulation of contemplated legislation." Mot. & Opp. 9.[4]  For all of these reasons, proceeding by cross-motions for summary judgment will impose a relatively minor briefing burden on Defendants and Defendants-Intervenors.

Following Defendants and Defendants-Intervenors' proposal will, however, likely burden both Plaintiff and the Court because there is a good chance that it will require two rounds of briefing and argument rather than one, involve ten briefs instead of four, and almost certainly prolong this matter.[5]  In addition, although Defendants and Defendants-Intervenors list six issues they characterize as threshold questions of justiciability, many of their positions on those questions—such as the Committee's standing, the applicability of the political question doctrine to subpoena enforcement, and the availability of a cause of action for subpoena enforcement—are foreclosed by precedent.[6]  Congressional committees have been engaging in oversight investigations of Executive Branch officials since 1792, and have regularly sought the assistance of the federal courts in enforcement of the compulsory process that the Supreme Court has repeatedly held is essential to the effective exercise of Congress's Article I powers.  *See McGrain v. Daugherty*, 273 U.S. 135, 175 (1927) ("Experience has taught that mere requests for

---

[4] *See, e.g.*, D.D.C. *Mazars* Reply 12-15; D.C. Cir. *Mazars* Br. 31-32; D.C. Cir. *Mazars* Reply 16-17; *Mazars* U.S. Br. 9-14, 21-22; Appellants Amicus Resp. 8-10, *Trump v. Mazars USA, LLP*, No. 19-5142 (D.C. Cir. Aug. 20, 2019); S.D.N.Y. *Deutsche Bank* Reply 6; 2d Cir. *Deutsche Bank* Br. 27-30; 2d Cir. *Deutsche Bank* Reply 4-6; *Deutsche Bank* U.S. Br. 10-11, 13-15; Appellants Amicus Resp. 8, No. 19-1540-cv (2d Cir. Aug. 21, 2019).

[5] Plaintiff refers to ten briefs because the title of Defendants and Defendants-Intervenors' Motion and Opposition refers to "Motion(s) to Dismiss," indicating that Defendants and Defendants-Intervenors each intend to file their own motion to dismiss.

[6] *See United States v. AT&T*, 551 F.2d 384 (D.C. Cir. 1976); *Committee on Oversight & Gov't Reform v. Holder*, 979 F. Supp. 2d 1 (D.D.C. 2013); *Committee on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53 (D.D.C. 2008).

such information often are unavailing, and also that information which is volunteered is not always accurate or complete; so some means of compulsion are essential to obtain what is needed."). Indeed, OLC has acknowledged those established principles. *See Response to Congressional Requests for Information Regarding Decisions Made Under the Independent Counsel Act*, 10 Op. O.L.C. 68, 83 (1986) (opinion of Assistant Attorney General Charles J. Cooper) (House may file a civil suit "seeking declaratory enforcement of [a] subpoena"). Whatever arguments Defendants and Defendants-Intervenors want to make on questions of justiciability can surely be presented in the briefing schedule Plaintiff has proposed.

*Third*, and consistent with the prior two considerations, the decisions cited by Defendants and Defendants-Intervenors in characterizing their proposal as merely following "standard practice," Mot. & Opp. 7, do not in fact support their position. In nearly all of those cases, unlike this one, the summary judgment motion the court held in abeyance was filed only *after* the defendant had filed a motion to dismiss.[7] Thus, in the circumstances presented here, there is no

---

[7] *See Judicial Watch, Inc. v. U.S. Senate*, 340 F. Supp. 2d 26, 28 n.1 (D.D.C. 2004) (plaintiff filed summary judgment motion at the same time as its opposition to defendant's motion to dismiss), *aff'd on other grounds*, 432 F.3d 359 (D.C. Cir. 2005); *Sierra Club v. Perry*, 373 F. Supp. 3d 128, 134 n.4 (D.D.C. 2019) (plaintiff filed summary judgment motion after motion to dismiss prior complaint had been nearly completed and on the same day as motion to dismiss amended complaint); *Daniels v. United States*, 947 F. Supp. 2d 11, 15 (D.D.C. 2013) (defendant filed motion to dismiss or in the alternative for summary judgment; court dismissed motion to dismiss as moot when plaintiff filed amended complaint; and held summary judgment motion in abeyance pending resolution of motion to dismiss amended complaint); *Angulo v. Gray*, 907 F. Supp. 2d 107, 109 (D.D.C. 2012) (plaintiff filed summary judgment motion after defendant filed motion to dismiss), *aff'd*, 203 F.3d 19 (D.C. Cir. 2000); *Magritz v. Ozaukee C'ty*, 894 F. Supp. 2d 34, 37 (D.D.C. 2012) (same); *Furniture Brands Int'l Inc. v. U.S. Int'l Trade Comm'n*, 2011 WL 10959877, at *1 (D.D.C. Apr. 8, 2011) (plaintiff filed summary judgment motion at the same time that it filed its opposition to defendants' motions to dismiss).

In *Campbell v. Clinton*, 52 F. Supp. 2d 34, 39 (D.D.C. 1999), a group of Members of Congress sought a declaratory judgment that President Clinton had violated the War Powers Clause of the Constitution and the War Powers Resolution. The defendant filed its motion to dismiss one day after the plaintiffs filed their summary judgment motion. In *Douglass v. District of Columbia*, 750 F. Supp. 2d 54, 58 (D.D.C. 2010), following an answer and discovery, the

standard practice of holding a plaintiff's motion for summary judgment in abeyance pending resolution of a motion to dismiss.

On the contrary, ample precedent supports proceeding as Plaintiff has proposed.  Courts regularly consider threshold issues of justiciability on motions for summary judgment or, at the very least, on consolidated motions to dismiss and for summary judgment.  *See, e.g.*, *American Hosp. Ass'n v. Dep't of Health & Human Servs.*, 2018 WL 5777397, at *2 (D.D.C. Nov. 2, 2018) (denying motion to stay briefing of summary judgment until defendants raised threshold justiciability issues in a forthcoming motion to dismiss because the "entire case on review [was] a question of law, and only a question of law," and postponing summary judgment briefing "would not serve the orderly disposition of this case") (citation omitted); *Clean Water Action v. Pruitt*, 2017 WL 8292486 (D.D.C. Aug. 4, 2017) (describing court's denial of defendant's motion to dismiss without prejudice and permitting defendant to press his arguments in responding to plaintiff's motion for summary judgment, filed one day after defendant's motion to dismiss); *Citizens for Responsibility & Ethics in Wash. v. Cheney*, 593 F. Supp. 2d 194, 199 (D.D.C. 2009) (court ordered a "final round of consolidated briefing" and considered motion to dismiss and for summary judgment concurrently).  And the Department of Justice often files

---

court set a schedule for summary judgment briefing and then permitted defendant to choose between responding to plaintiff's summary judgment motion with either a cross-motion for summary judgment or a motion for judgment on the pleadings.

motions for summary judgment alone or in conjunction with motions to dismiss raising these same justiciability issues.[8]

*Fourth*, Defendants-Intervenors indicate that, if the Court adopts Plaintiff's proposal, they will seek discovery pursuant to Federal Rule of Civil Procedure 56(d).  If they do so, Plaintiff will oppose their effort because the Supreme Court has repeatedly made clear that such discovery is impermissible as a matter of law.  *See, e.g.*, *Barenblatt v. United States*, 360 U.S. 109, 132 (1959) ("So long as Congress acts in pursuance of its constitutional power, the judiciary lacks authority to intervene on the basis of the motives which spurred the exercise of that power.").[9]  The Court can readily resolve that issue in due course.

---

[8] *See, e.g.*, *Air Alliance Houston v. U.S. Chem. & Safety Hazard Investigation Bd.*, 365 F. Supp. 3d 118, 123 (D.D.C. 2019), *appeal docketed* No. 19-5089 (D.C. Cir. Apr. 8, 2019) (defendants filed cross-motion for summary judgment challenging standing after plaintiff filed motion for summary judgment); *Kucinich v. Bush*, 236 F. Supp. 2d 1, 2 (D.D.C. 2002) (considering justiciability issues on "cross-motions for summary judgment"); *Edwards v. Aurora Loan Servs., LLC*, 791 F. Supp.2d 144, 147-48 (D.D.C. 2011) (Treasury Department Defendants moved to dismiss for lack of standing and moved, in the alternative, for summary judgment); *Dist. of Columbia v. U.S. Dep't of Commerce*, 789 F. Supp. 1179, 1180 (D.D.C. 1992) (court considered defendant's motion to dismiss or, in the alternative, for summary judgment, which argued in part that the claims presented non-justiciable political questions); *National Council for Indus. Defense, Inc. v. U.S. Dep't of Defense*, 1989 WL 46766, at *1 (D.D.C. Apr. 20, 1989) (noting that defendants filed motion to dismiss and for summary judgment arguing that plaintiffs lacked standing and that complaint presents political questions, and that defendants "assert that the record in this case is sufficiently complete to permit a decision on the motion for summary judgment.").

[9] Defendants-Intervenors suggest both that "the [Speech or Debate] Clause does not apply here because the Committee is a *plaintiff*," and that the Committee "agrees," citing oral argument statements made in a different context and in a separate matter where the Committee is a defendant.  Mot. & Opp. 13-14 (emphasis in original).  Plaintiff does not agree with the categorical statement that the Speech or Debate Clause has no application in this case, and certainly does not concede that the Clause has no application with respect to potential discovery requests by Defendants or Defendants-Intervenors.  Because no such discovery requests have yet been served, the Committee reserves its rights to assert any and all applicable privileges, including potentially the absolute privilege afforded by the Speech or Debate Clause, as well as any other arguments it, or other Congressional parties, may have in opposition to discovery requests.

## II.     Defendants and Defendants-Intervenors' Criticisms Of The Committee's Efforts To Resolve This Matter Are Unfounded

Defendants and Defendants-Intervenors contend that the Committee is not entitled to urge expedition because the Committee has moved too slowly to bring and advance this suit. Mot. & Opp. 10-11.  Yet at the same time, they contend that Plaintiff has moved too quickly and not allowed adequate time for inter-branch accommodation and compromise.  *Id*. at 8, 10.  Those arguments are inherently contradictory, and are meritless in any event.  The Committee made many efforts to resolve this dispute without resort to litigation, and once litigation ensued, made sure that its filings were thorough and complete.  But in Defendants and Defendants-Intervenors' view, no good deed should go unpunished.  And Defendants are in large part responsible for the time that passed before the Committee instituted this suit, because of their unwarranted delays in responding to the Committee's request and subpoenas and their unwillingness to reach any accommodation of the Committee's legitimate requests for information.[10]

Counting from the beginning of the Congressional session on January 3, 2019, until the issuance of the Section 6103 request on April 3, Defendants and Defendants-Intervenors characterize Plaintiff as "wait[ing] 90 days" to take action.  Mot. & Opp. 10.  The relevant period is a little under ten weeks, and the Committee was doing much more than waiting.

When the Congressional session began on January 3, 2019, substantial parts of the government (including much of the Treasury Department and the IRS) had been shut down by President Trump because of a budget impasse and would remain closed until January 25.  On January 24, the Committee held its organizational meeting for the session, and Secretary Mnuchin declined Chairman Neal's invitation to appear before the Committee until after the

---

[10] Plaintiff would also note, as it did in its motion, that its proposed schedule would give Defendants and Defendants-Intervenors *more* time to respond to Plaintiff's motion for summary judgment than the Federal and Local Rules would entitle them to.

President's fiscal year 2020 budget had been released, despite urgent concerns about the impact of the shutdown on the IRS's ability to handle the impending tax season.[11]  No hearings could be held before the Committee organized itself and adopted rules.  On January 31, pursuant to House and Committee Rules, Oversight Subcommittee Chairman Lewis announced a hearing for February 7 on legislative proposals and tax administration related to Presidents' and Vice Presidents' tax returns.  The hearing was held on February 7.  On March 14, Secretary Mnuchin finally appeared before the Committee, principally to discuss the President's budget proposals, but he was also questioned about other subjects, including the process for responding to requests under Section 6103.[12]  Thus, in the initial time between the Committee's organizational meeting and the issuance of the Section 6103 request, the Committee organized, gave Secretary Mnuchin an opportunity to appear before it, and, through its Oversight Subcommittee, held a hearing on the precise subject of the Section 6103 request.[13]

On April 3, Chairman Neal issued the Committee's Section 6103 request, setting a response date of April 10.  Despite the clear and mandatory nature of Defendants' obligations

---

[11] *See* L. Fox et al., CNN, *House committee cancels shutdown hearing after Mnuchin declines to appear*, https://www.cnn.com/2019/01/23/politics/ways-and-means-cancels-hearing-mnuchin/index.html.

[12] *Hearing on The President's 2020 Budget Proposal: Hearing before the H. Comm. on Ways & Means*, 116th Cong., 1st Sess. (Mar. 14, 2019) at 21-24, 40-41, 87-88, *available at* https://waysandmeans.house.gov/sites/democrats.waysandmeans.house.gov/files/documents/Transcript_1.pdf.

[13] In addition, as noted in Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment, the beginning of the Congressional session also saw the introduction of numerous bills addressing tax law issues, including Presidents' and Vice Presidents' returns, which were referred to the Committee for its consideration.  Notably, H.R. 1, Title X of which was drafted by the Committee and includes provisions that would require the President, the Vice President, and certain major party candidates to disclose their tax returns for the last ten years to the Federal Election Commission (FEC), and would amend Section 6103 to provide for Treasury disclosure of those returns to the FEC, which would then make them publicly available (with redactions), was introduced in January and referred to the Committee, which discharged it on March 4.  The House passed the bill on March 8.

under Section 6103(f)(1), Defendants then took more than a month to respond to the request, twice going beyond the Committee's deadlines.  Secretary Mnuchin finally denied the request on May 6.  The Committee issued its subpoenas on May 10, just four days later, and, despite raising no new arguments, Defendants took a full week just to state their refusal to comply, on May 17.

Still, the Committee sought to resolve this dispute without resorting to litigation.  On May 22, Committee staff emailed Treasury expressing a willingness to meet that week (on May 23 or 24) for the briefing on the mandatory audit process that Secretary Mnuchin had offered in his May 17 letter to Chairman Neal.  Due to the unavailability of the agency officials needed for the briefing, it did not take place until June 10, 17 days after Committee staff initially emailed Treasury about the briefing.[14]  Having found its efforts to obtain further cooperation and answers from the Defendants fruitless, the Committee filed its complaint in court on July 2.

Thus, as described above, of the 90 days between the issuance of the Section 6103 request and the filing of the complaint, a substantial portion of those days are attributable to Defendants' inaction or delay.

Given the numerous "profound" issues Defendants and Defendants-Intervenors identify as being raised by this case, Mot. & Opp. 10, it is hardly surprising that Plaintiff took

---

[14] None of the Treasury and IRS officials who attended the briefing had ever been involved in a mandatory Presidential audit.  They declined to answer all questions relating to the actual audits of any Presidents, including basic questions such as how long those audits generally take or whether there have ever been any assessments made to Presidential returns.

During that same period, other Members of Congress pursued related inquiries.  Senator Wyden, Ranking Member of the Senate Finance Committee, sent letters to Secretary Mnuchin and Commissioner Rettig seeking information about possible political interference in the handling of the Committee's Section 6103 request (May 14); Senator Van Hollen sent Questions for the Record to Secretary Mnuchin and Commissioner Rettig relating to their May 15 testimony before a Senate Appropriations Subcommittee (May 24); and Senator Wyden sent a letter to Commissioner Rettig regarding an internal IRS memo concluding that the IRS must comply with the Committee's Section 6103 request (June 4).

approximately seven weeks to file its motion for summary judgment, accompanied by a statement of material facts not in dispute and 50 exhibits.  During that time, Plaintiff consented to the motion to intervene and sought to reach an agreement with Defendants and Defendants-Intervenors on a mutually agreeable process and schedule for proceeding.  Also during that period—on July 29—the Committee received an unsolicited communication from a federal employee setting forth credible allegations of "evidence of possible misconduct"—specifically, potential "inappropriate efforts to influence" the mandatory audit program, which, from the start, has been a core concern driving the Committee's investigation.  *See, e.g.*, Tatelman Decl. Exs. L at 2 and P at 2; Compl. ¶ 79.  In response, Chairman Neal sent a further Section 6103 request to Secretary Mnuchin on August 8, to which the Secretary responded, providing essentially no information, on August 13.

In sum, the Committee has acted appropriately, with both promptness and deliberation, in "considering legislative proposals and conducting oversight related to our Federal tax laws, including, but not limited to, the extent to which the IRS audits and enforces the Federal tax laws against a President."  Tatelman Decl. Exs. K and L at 1-2.  It has repeatedly accommodated Defendants by extending deadlines at Defendants' request and providing multiple opportunities to comply, and it has sought to inform itself through other means, including through the briefing offered by Defendants, even though that briefing failed to provide any useful information and only heightened the Committee's concerns about the IRS's mandatory audit process.  Having been forced to resort to compulsory process and then to litigation, Plaintiff Committee has sought to advance this matter expeditiously, consistent with the importance of the issues presented, the lack of cooperation by Defendants, and the recent receipt of a whistleblower complaint.

For the reasons set forth above and in its Motion to Enter a Briefing Schedule and Expedite Consideration of This Case, Plaintiff respectfully urges the Court to grant Plaintiff's Motion and to deny Defendants and Defendants-Intervenors' Motion to Hold Plaintiff's Motion for Summary Judgment in Abeyance.

August 26, 2019                              Respectfully submitted,

                                       */s/ Douglas N. Letter*
                                       Douglas N. Letter (D.C. Bar No. 253492),
                                           *General Counsel*
                                       Todd B. Tatelman (VA Bar No. 66008),
                                           *Deputy General Counsel*
                                       Megan Barbero (MA Bar No. 668854),
                                           *Associate General Counsel*
                                       Josephine Morse (D.C. Bar No. 1531317),
                                           *Associate General Counsel*
                                       Brooks M. Hanner (D.C. Bar No. 1005346),
                                           *Assistant General Counsel*
                                       Sarah E. Clouse (MA Bar No. 688187)
                                           *Attorney*

                                       OFFICE OF GENERAL COUNSEL
                                       U.S. HOUSE OF REPRESENTATIVES
                                       219 Cannon House Office Building
                                       Washington, D.C. 20515
                                       Telephone: (202) 225-9700
                                       douglas.letter@mail.house.gov

                                       *Counsel for Plaintiff Committee on Ways and*
                                           *Means, United States House of Representatives*