DECLARATION OF SUNITA LOUGH

I, Sunita Lough, under penalty of perjury under the laws of the United States of America, including 28 U.S.C. § 1746, declare as follows:

## BACKGROUND

1.     I am employed by the Internal Revenue Service (IRS) as a Senior Advisor in the Office of the Deputy Commissioner for Services and Enforcement in Washington, DC.

2.     The statements made herein are based on information made available to me in the course of carrying out my duties and responsibilities for the IRS.

3.     I have worked for the IRS for more than 24 years, previously serving as the Commissioner of the Tax Exempt and Government Entities (TEGE) Division, the executive project lead for the Tax Reform Implementation Office, the Director of Pre-filing and Technical Guidance (PFTG) and Deputy Director of PFTG in the Large Business and International Division, the Director of Exempt Organizations Examinations, and the Director of Federal, State and Local Governments in TEGE.

4.     Effective October 1, 2019, I have been appointed the Deputy Commissioner for Services and Enforcement (DCSE) for the IRS.

5.     The DCSE is a career-executive position that oversees the four taxpayer-focused IRS operating divisions (Wage & Investment, Large Business & International, Small Business/Self-Employed and Tax Exempt and Government Entities). The DCSE also oversees the IRS Criminal Investigation Division, the Office of Professional Responsibility, Online Services, the Return Preparer Office and the IRS Whistleblower Office.

6.     I submit this declaration in support of the Defendants' motion to dismiss the above-captioned case.

## OVERVIEW OF MANDATORY AUDIT PROCESS FOR SITTING PRESIDENTS AND VICE PRESIDENTS

7.     Since 1977, the IRS has conducted mandatory examinations of the federal income tax returns filed by sitting Presidents and Vice Presidents of the United States (hereinafter, Officeholders).

8.     The mandatory examinations are conducted by experienced, career IRS revenue agents.

9.     Revenue agents are required to apply IRS examination procedures and applicable provisions of tax law objectively. See IRM 1.2.1.5.5, Policy Statement 4-7, Impartial Determination of Tax Liability.

10.     Efforts by certain Executive Branch employees to influence the examination process are prohibited by law and subject to mandatory disclosure to the Treasury Inspector General for Tax Administration (hereinafter, TIGTA), which was established in 1999 in accordance with the IRS Restructuring and Reform Act of 1998 (RRA 98) to provide independent oversight of IRS activities.

11.     In the remainder of this declaration, I describe the history and operation of the mandatory audit process.

## FORMATION OF THE MANDATORY AUDIT PROCESS

12.     In a memorandum dated June 6, 1977 (Exhibit A), the IRS set forth special procedures for processing the income tax returns of the sitting President and Vice President and for mandatory examinations of Officeholder returns.

13.     The special processing and mandatory examination procedures were incorporated into the Internal Revenue Manual (hereinafter, IRM) and are now set forth in IRM 3.28.3 (Special Processing Procedures) (Exhibit B) and IRM 4.2.1 (General Examination Procedures) (Exhibit C).

## IMPARTIALITY IN THE AUDIT PROCESS

14.     As noted above, the mandatory audit process for Officeholders is handled by career IRS employees and managers.

15.     Revenue agents are IRS employees with substantial accounting skills who are knowledgeable about tax issues, accounting systems, and tax compliance programs relevant to conducting federal tax examinations.

16.     If a revenue agent has any reason to believe that her impartiality and independence may be questioned, the agent is instructed to discuss the matter with her immediate supervisor for reassignment consideration.  See IRM 1.2.13.1.4, Policy Statement 4-6; IRM 4.10.2.2.3; IRM 6.735.1.6; and IRS Ethics Handbook, Chapter 5.

17.     External attempts to corrupt or threaten IRS employees in the performance of their duties, including examining returns, are required to be reported to and investigated by TIGTA, which is charged with providing independent oversight of IRS activities. See IRM 4.2.1.26; IRM 4.10.2.2.3(4); IRM 4.75.5.2; IRM 4.90.6.8; IRM 9.5.11.2.4; and IRM 11.3.1.9.3.

2

18.     Under IRS Policy Statement 4-7, it is the assigned revenue agent's "duty to determine the correct amount of the tax, with strict impartiality as between the taxpayer and the Government, and without favoritism or discrimination as between taxpayers."

19.     By statute, efforts by senior Executive Branch employees to influence the examination process are prohibited and subject to mandatory TIGTA disclosure requirements. See IRC § 7217.

20.     More specifically, with narrow exceptions inapplicable to mandatory Officeholder examinations, the President, Vice President, members of the Cabinet, members of the Executive Office of the President, and other senior Executive Branch officials are forbidden from requesting "directly or indirectly, any officer or employee of the Internal Revenue Service to conduct or terminate any audit or other investigation of any particular taxpayer with respect to the tax liability of such taxpayer." See IRC § 7217.

21.     All relevant IRM provisions, including those related to orderly and impartial administration of the audit process, apply to mandatory Officeholder examinations. See IRM 3.28.3.4.3(3)(d).

## INITIAL PROCESSING OF RETURNS UNDER THE PROGRAM

22.     The mandatory audit process for Officeholders begins with the filing of the Officeholder's tax return.

23.     *Tax returns filed in paper form*:

      a.   If the Officeholder submits a paper income tax return, it is filed with the IRS's Austin Submission Processing Campus, located in Austin, Texas. See IRM 3.28.3.2(3).

      b.   Once received, the Officeholder's return is initially processed by the Austin Campus. See IRM 3.28.3.4.1(1).

      c.   After the original return is processed, it is delivered to the Office of the Deputy Commissioner for Services and Enforcement, which is staffed entirely by career civil servants. See IRM 3.28.3.4.1(4).

      d.   The original return is secured and maintained by the Office of the Deputy Commissioner as a permanent record of the United States. See IRM 3.28.3.4.1(5).

24.     *Tax returns filed electronically:*

      a.  If the Officeholder submits his income tax return electronically, the return is processed in the same manner as all other electronically-filed individual income tax returns, including processing of payment or refund and capturing information from the return for the IRS's account records.

      b.  After the electronically-filed return is processed, a hard copy is printed from the electronic record and delivered to the Office of the Deputy Commissioner for Services and Enforcement.

      c.  The paper copy of the original return is secured and maintained by the Office of the Deputy Commissioner as a permanent record of the United States.

25.     Upon receipt, the Office of the Deputy Commissioner for Services and Enforcement, which acts on behalf of the Commissioner in establishing and enforcing tax administration policy, provides a copy of the Officeholder's return to the appropriate IRS business division – either Small Business/Self Employed (SBSE) or Large Business & International (LB&I) – for examination, based on the complexity of the return and whether the Officeholder's return (or a related return) is already under examination by one of the divisions for prior years. See IRM 4.2.1.15.

26.     Because they are subject to a mandatory examination, Officeholder returns are excluded from the IRS's normal Discriminant Index Function (DIF) selection procedures, which govern the selection of other taxpayer returns for examination. See IRM 3.28.3.4.3(3)(a); IRM 4.2.1.15(3)(a).

## IMMEDIATE POST-FILING ACTIVITIES

27.     The head of the examination function or equivalent executive within the business division to which the return is assigned determines the appropriate revenue agent group to conduct the mandatory examination. See IRM 4.2.1.15(3).

28.     Generally, the determination of the appropriate revenue agent group is determined by the location of the Officeholder's representative or the group that has a prior year or related return under examination.

4

29.     Once transmitted to a revenue agent group, the group manager must assign the Officeholder's return to a specific revenue agent for examination within 10 business days. See IRM 4.2.1.15(5).

## COMPONENTS AND SCOPE OF PROCESS

30.     There are four general components to the mandatory Officeholder examination process: (1) audit planning (including scope determinations, preliminary research, and whether special expertise may be required); (2) contact with the Officeholder's representative to begin the examination; (3) information gathering; and (4) exam determinations and response.

Audit Planning

31.     The scope and depth of the mandatory officeholder examination is determined by reference to established risk protocols, which are the same as are used in the examination of any taxpayer.

32.     A risk analysis of the return is undertaken by the examiner and issues are prioritized based on their potential for audit adjustment. See IRM 4.10.2.7.1.1.

33.     In analyzing the return, examiners must use their professional judgment to set the scope of the examination. Examiners should only work "issues of merit and conclude the examination when the issues no longer warrant examination." See IRM 4.10.2.7.1(1).

34.     "Examiners are expected to prioritize the issues with higher audit potential over those with lower potential. Issues with little or no audit potential should not be selected for examination." IRM 4.10.2.7.1.1(1).

35.     The goal of any examination is to determine the "substantially correct" tax liability. See IRM 4.10.2.7.1.1(2).

36.     The initial examination scope determinations are revisited throughout the course of the mandatory examination and, at a minimum, must be considered "[a]t the midpoint of the examination" and "[w]hen a significant event occurs." See IRM 4.10.2.7.1.1(5); IRM 4.10.3.2(2).

37.     When revisiting the initial scope determinations, "[t]he examiner must consider the facts and circumstances, evaluation of internal controls (in business examinations), and use professional judgment to determine whether the scope should be expanded or contracted." IRM 4.10.3.2.1.

38.     Examiners must document the reasons for expanding or contracting the scope of the examination. IRM 4.10.3.2.1(3).

39.     Based on risk protocols, the scope of the mandatory examination can be expanded to include prior year and related returns as well as other types of tax liabilities, such as gift tax liabilities and employment tax liabilities with respect to household employees. See IRM 4.2.1.15(6); IRM 4.10.2.7.1.5.

40.     After the Officeholder's return is assigned but prior to initial contact with the Officeholder's representative, the revenue agent will risk assess the return and review any large, unusual, or questionable items (hereinafter, LUQ items). IRM 4.10.2.3.

41.     The IRM contains a checklist of issues that the revenue agent should consider in the pre-contact analysis to determine whether an item on a return is an LUQ item. IRM 4.10.2.3.1(1).

42.     These issues include: the comparative size of the item; the absolute size of the item; the inherent character of the item; evidence of intent to mislead; the beneficial effect of the manner in which an item is reported; the relationship to other items; whipsaw issues (i.e., when there is a transaction between two parties and characteristics of the transaction will benefit one party and harm the other); and missing items. IRM 4.10.2.3.1(1).

43.     The revenue agent will conduct "preliminary research of the applicable IRC sections, treasury regulations, rulings, and court cases concerning the proper tax treatment of a particular issue" identified in the preliminary analysis of the Officeholder's return. IRM 4.10.2.7.4.

44.     This research assists the revenue agent in the development of specific interview questions, determining possible audit procedures, and determining what information should be requested from the Officeholder. IRM 4.10.2.7.4.

Contact with the Officeholder's Representative

45.     After completion of the planning phase, the Examination Area Director, or other appropriate manager, then arranges for preliminary contact with the Officeholder's authorized representative. IRM 3.28.3.4.3(3)(c); IRM 4.2.1.15(3)(c).

46.     Following this initial manager contact, the assigned revenue agent separately contacts the representative to initiate the mandatory examination, sending an initial contact letter. IRM 4.10.2.8.1.2. A copy of a sample initial contact letter is provided as Exhibit D.

47.     The initial contact letter must include IRS Publication 1 (Exhibit E), Your Rights as a Taxpayer, and Notice 609, Privacy Act and Paperwork Reduction Act. IRM 4.10.2.8.1(7).

48.     The letter will also provide contact information for the revenue agent's manager in the event that an issue needs to be elevated. IRM 4.10.1.2.2.2(2).

49.     Separate initial contact letters are sent to the Officeholder and the Officeholder's spouse in the case of a joint return filed under IRC § 6013. Section 3201(d) of RRA 98.

50.     The Officeholder, like any individual taxpayer, will have 14 days from the date of the initial contact letter to respond to the revenue agent and schedule an initial meeting. IRM 4.10.2.8.1.2(1).

51.     After sending the initial contact letter, the revenue agent will schedule an initial meeting with the Officeholder's representative "at an appropriate time that is agreeable to the taxpayer" and generally "within 28-35 calendar days of the mailing of the initial contact letter." IRM 4.10.2.8.1.2; IRM 4.10.2.8.2(1)(c); IRM 4.10.2.9.

Information Gathering

52.     As part of the mandatory audit review process, the revenue agent will request information (e.g., books and records) from the Officeholder's representative by issuing a Form 4564, Information Document Request. IRM 4.10.2.10.2.  A sample Information Document Request is provided as Exhibit F.

53.     The Information Document Request "will list the specific records, information, and documents the Officeholder should have available at the initial interview." IRM 4.10.2.10.2(2).

54.     If all information necessary to resolve the examination is not provided by the Officeholder in response to Information Document Requests, the revenue agent may issue an administrative summons, including a summons to a third party, such as a bank or other financial institution or the counterparty to a transaction involving the Officeholder. IRM 25.5.1.4.

55.     In addition to document requests, the information-gathering process may include interviews of the Officeholder, the person preparing the Officeholder's return, or third parties with knowledge of items reported on the return. See IRM 4.10.3.3; IRM 4.10.3.3.1.

Exam Determinations and Response

56.     In conducting the examination, the revenue agent "must exercise judgment in determining the depth required for the examination," i.e., "the degree of intensity and

thoroughness applied in order to make a determination as to the accuracy of a reported item."
IRM 4.10.2.7.3.

57.     Factors that the revenue agent should consider in making the depth determination
include the "type of evidence available or expected for the issue, complexity of the issue,
materiality of issue, and internal Controls." IRM 4.10.2.7.3(2).

58.     Throughout the process, the revenue agent may request advice or guidance from
career attorneys in the Office of Chief Counsel on any technical or procedural matter related to
the tax liability of the Officeholder. IRM 4.2.3.3.1; see also Chief Counsel Directives System
(CCDM) Part 33.1, *Legal Advice*.

59.     Area Counsel, the career field attorney assigned to advise the requesting revenue
agent on an examination, may provide advice through consultation or by memorandum. IRM
4.2.3.3.1.

60.     Area Counsel may provide advice on, for example: the meaning, enforceability,
and effect of legal terms in a contract; the application of State laws to the elements of a contract;
information regarding applicable State statutes that relate to corporate existence and the status of
transferee assets; review of a case to ascertain favorable points, factual weaknesses, and/or
adverse circumstances to the government's case; evaluation of primary or secondary evidence in
a case, which would be useful in litigation and documentation of evidence; review of proposed
statutory notices of deficiency; and advice related to the issuance and enforcement of a
summons. IRM 4.2.3.3.1.1.

61.     The revenue agent may also seek assistance from a specialist in developing and
resolving complex issues. IRM 4.10.2.7.5.1.

62.     Depending on the needs of a particular case, specialist assistance may take the
form of a referral (in which a specialist is formally assigned to the case), or informal advice by
the specialist to the revenue agent. IRM 4.10.2.7.5.1(5).

63.     Specialists in this context include computer audit specialists, economists,
engineers, and actuaries, among others. "When a specialist is involved in a case, the examiner
maintains control of the income tax return and its management." IRM 4.10.2.7.5.4.

64.     When a specialist provides assistance for a case, the specialist meets with the
revenue agent and the Officeholder's representative (if appropriate) to discuss the issue on which
the specialist is providing assistance, the information the specialist needs, when the specialist

needs that information, and an estimated completion date of the specialist's report. IRM 4.10.2.7.5.4(2).

## CONCLUSION OF THE EXAMINATION

65.     After all the facts have been gathered through examination of the books, records and supporting documents, and interviews, and the revenue agent has all the information to be considered in resolving the issues, the revenue agent applies her professional judgment to arrive at a conclusion regarding all items that were identified for examination. IRM 4.10.7.4(1).

66.     Revenue agents "are expected to arrive at a definite conclusion by a balanced and impartial evaluation of all of the evidence." IRM 4.10.7.4(2).

67.     The revenue agent is required to "employ independent and objective judgment in reaching conclusions on issues being examined and in all aspects of their duties," and to "decide all matters on their merits, free from bias and conflicts of interest." IRM 4.10.7.4(4).

68.     IRM 4.10.7.4(4) instructs that the fairness of the revenue agent's conclusions will be demonstrated by: making decisions impartially and objectively based on consistent application of procedures and the applicable tax law; treating individuals equitably; being open-minded and willing to seek out and consider all relevant information, including opposing perspectives; voluntarily correcting mistakes and improprieties made by the revenue agent or other IRS employees and refusing to take unfair advantage of mistakes or ignorance of taxpayers; and employing open, equitable, and impartial processes for gathering and evaluating information necessary to decisions.

69.     When the mandatory examination is complete, any proposed adjustments to the Officeholder's return are summarized and explained on IRS Form 4549, Income Tax Examination Changes, or IRS Form 5701, Notice of Proposed Adjustment. Copies of the Form 4549 and Form 5701 are provided as Exhibits G and H. The revenue agent should solicit agreement from the Officeholder (through the Officeholder's representative) to any proposed adjustments and attempt to secure agreement to the proposed tax liability. IRM 4.10.7.5.1(7)

## APPEALS

70.     The revenue agent must inform her group manager when the agent believes she will be unable to reach agreement with the Officeholder on any aspect of the examination. IRM 4.10.1.2.1.5(2); IRM 4.10.7.5.4(2).

71.     If there are unagreed issues, the revenue agent must issue a letter (see Exhibit I) which transmits the examination report to the Officeholder's representative and advises the Officeholder of the Officeholder's right to request consideration by the IRS Office of Appeals

(hereinafter, Appeals), a right which must be exercised within 30 days following receipt of the letter. IRM 4.10.1.2.1.5(2)(b); IRM 4.10.8.11; IRM 4.10.8.11.1.

72.     Appeals is an independent organization within the IRS that helps taxpayers, including Officeholders, resolve their tax disputes through an informal, administrative process. See generally IRM 8.1.

73.     Appeals's mission is to resolve tax controversies, without litigation, on a basis which is fair and impartial to both the Government and the taxpayer and in a manner that will enhance voluntary compliance and public confidence in the integrity and efficiency of the IRS. IRM 8.1.1.1(1).

74.     "Appeals holds conferences to provide a meaningful opportunity for taxpayers to present their position and to consider settlement proposals to resolve tax disputes." IRM 8.1.1.1(3). Like any taxpayer, Officeholders, through their representatives, can present their position to Appeals on an issue and have Appeals consider settlement proposals.

75.     If a basis for settlement is not reached, Appeals will issue a statutory notice of deficiency (90-day letter) (see Exhibit I) to the Officeholder. IRM 8.17.4.1(1).

76.     The Officeholder may thereafter petition the United States Tax Court for independent judicial review. See IRC §§ 6212 and 6213.

77.     Officeholders may also pay the amount due, file a claim for refund, wait for the claim to be acted on, or passage of time (six months after the filing of a claim for refund), and file suit in United States District Court or the United States Court of Federal Claims. See IRC § 7422.

78.     The foregoing facts are known by me to be true to the best of my knowledge and belief based on information made available to me in the course of carrying out my duties and responsibilities for the IRS. I am competent to testify to such facts, and would so testify if I appeared in court as a witness on this matter.

I declare under penalty of perjury that the foregoing is true and correct.

9/5/2019
_____
Date

Sunita Lough
_____
Sunita Lough
Senior Advisor
Office of the Deputy Commissioner for
Services and Enforcement
Internal Revenue Service

# EXHIBIT A

# Internal Revenue Service

# memorandum

date: JUN 6 1977

to: All Regional Commissioners

from: Deputy Commissioner

subject: Processing Returns and Accounts of the President and Vice President

For some time, we have centralized the procedures for processing returns and accounts of the President and Vice President. These procedures have been in effect since the unauthorized disclosure of tax return information relating to then President Nixon. They were intended to protect the confidentiality of tax data for these officials by severely limiting access to their returns and tax accounts. Because of the high costs involved and the strong possibility that the purpose of centralized procedures would be misunderstood, the decision has been made to discontinue them.

For your information, the following processing guidelines replace the former special procedures. All prior memoranda on this subject no longer have effect.

1. All tax returns for the President and Vice President will receive normal pipeline processing through the service center. In the case of individual income tax returns, however, the whereabouts of the return will be monitored at all times during processing. After completion of processing, the income tax returns will be forwarded (in double sealed envelopes) to the Deputy Commissioner.

2. Account data will be carried on the appropriate master file and the accounts will not be subjected to restricted access procedures.

3. Individual income tax returns for the President and Vice President will be subject to mandatory audit examination. The district responsible for the examination will be determined by the Deputy Commissioner after consultation with the respective Regional Commissioner and the Assistant Commissioner (Compliance). After a determination is made as to the district having jurisdiction, copies of returns will be transmitted for the necessary examination. The transmittal memorandum will point out that:

Any line marked with a #
is for Official Use Only

-2-

All Regional Commissioners

     a. Regardless of DIF score, the return will be examined. #

     b. Personnel should be assigned to the examination as necessary, including specialists, to conduct the audit. #

     c. The District Director, or designee, should arrange for contact with the authorized representative for the beginning of the audit. #

     d. All current prescribed Internal Revenue Manual procedures, i.e., requesting technical assistance, information from other agencies, etc., will apply in these as in all other cases. #

     e. The return copies and any related returns examined concurrently, as well as the relevant workpapers and examination reports, will be subject to regular filing and retention procedures. #

     4. Gift (and/or Estate) tax returns will be examined in accordance with procedures relating to all taxpayers. #

W. E. Williams
(6-6-77)

These instructions will be reissued in the IR Manual and Law Enforcement Manual in accordance with IRM 1254.

Any line marked with a #
is for Official Use Only

# EXHIBIT B

# MANUAL
# TRANSMITTAL                                              3.28.3

Department of the Treasury
**Internal Revenue Service**                        OCTOBER 31, 2018

**EFFECTIVE DATE**

   (01-01-2019)

**PURPOSE**

   (1)    This transmits revised IRM 3.28.3, Special Processing Procedures - Individual Income Tax Returns.

**MATERIAL CHANGES**

   (1)    Minor editorial changes throughout.

   (2)    IRM 3.28.3.1 Added new Program Scope and Objectives

   (3)    IRM 3.28.3.2 Updated Introduction to place the President and Vice President returns are placed as permanent records by the National Archives.

   (4)    IRM 3.28.3 Added new Acronyms Chart

   (5)    IRM 3.28.3.4.1 Updated to forward the original income tax return in double sealed envelopes

   (6)    IRM 3.28.3.5.1 Corrected from Appendix to Title 5 to Appendix 4 to Title 5 in several sections

   (7)    IRM 3.28.3.5.2.1 Deleted alpha list and created numeric listing

   (8)    IRM 3.28.3.5.2.2 Added Code and Edit should review Form 2848 for completeness

**EFFECT ON OTHER DOCUMENTS**

   IRM 3.28.3, dated November 02, 2017 effective January 1, 2018 is superseded.

**AUDIENCE**

   Wage and Investment Submission Processing Campus personnel

                         Linda J. Brown
                         Director, Submission Processing
                         Wage and Investment Division

3.28.3
Individual Income Tax Returns

# Table of Contents

3.28.3.1    Program Scope and Objectives

3.28.3.2    Introduction

3.28.3.3    Deviations From This Internal Revenue Manual (IRM)

  3.28.3.3.1    Acronyms

3.28.3.4    Processing Returns and Accounts of the President and Vice President

  3.28.3.4.1    Individual and Gift Tax Return Processing

  3.28.3.4.2    Account Data Storage and Access

  3.28.3.4.3    Mandatory Examination

3.28.3.5    Blind Trust Form 1040 Returns

  3.28.3.5.1    General Information and Instructions

  3.28.3.5.2    Blind Trust Tax Return Processing

    3.28.3.5.2.1    Document Perfection Procedures

    3.28.3.5.2.2    Accounts Management Centralized Authorization File (CAF) Procedures - Processing the
               Power of Attorney (POA)

# Individual Income Tax Returns   3.28.3

**3.28.3.1**
**(01-01-2019)**
**Program Scope and**
**Objectives**

(1) **Purpose:** This Internal Revenue Manual (IRM) provides instructions for processing returns and the accounts of the President and Vice President of the United States of America.

(2) **Audience:** This IRM is used by tax examiners and clerks in Austin Submission Processing site.

(3) **Policy Owner:** The Director of Submission Processing (SP)

(4) **Program Owner:** Wage and Investment (W&I)

(5) **Primary Stakeholders:** Other areas that may be affected by these procedures include (but not limited to):

- Information Technology (IT) Programmers
- Chief Counsel
- Submission Processing

(6) **Program Goals:** The goal of this IRM is to provide instructions to process the tax returns and accounts of the President and Vice President of the United States of America.

(7) **Annual Clearance of IRM:** This IRM is updated and published annually after review and concurrence by affected offices according to the clearance process established in IRM 1.11.9 *Internal Management Documents, Clearing and Approving Internal Management Documents*

**3.28.3.2**
**(01-01-2019)**
**Introduction**

(1) This section of the Internal Revenue Manual (IRM) provides instructions for processing:

- The tax returns and accounts of the President and Vice President of the United States of America.
- The tax returns of political appointees who have their assets placed in a qualified blind trust as defined by section 102(f)(3) of the Appendix to Title 5 of the United States Code (or any successor provision of the United States Code).

(2) These procedures apply to all functions within the campuses.

(3) The tax returns of the President and Vice President will be mailed to the Field Director, Austin Submission Processing Campus.

(4) The Field Director of Austin can designate the **walk- through** processing of the President and Vice President's returns to a subordinate. This person must make sure that the original returns are not unnecessarily folded or bent, and the edit marks and stamps are neatly placed on the returns, since they are deemed permanent records by the National Archives.

(5) When filing a political appointee's tax return, the trustees of to a qualified blind trust as defined by section 102(f)(3) of the Appendix 4 to Title 5 of the United States Code ("blind trust") are to follow the "Where to File" Instructions for Form 1040 and file the tax return at the appropriate campus based on the appointee's address.

(6) The President, Vice President, or any political appointee who has placed his/her assets in a blind trust must request permission for the trustee to prepare and file their individual tax return. The request for permission must be in

writing and be submitted with the tax return and a properly executed Form 2848, Power of Attorney and Declaration of Representative. Permission for the trustee to prepare and file the return will be granted automatically on receipt of the required documents. The IRS does not send an approval letter to the President, Vice President, political appointee or trustee.

**3.28.3.3**
**(01-01-2019)**
**Deviations From This**
**Internal Revenue Manual**
**(IRM)**

(1)  Service Center Directors, Headquarter Branch Chiefs, and Headquarter Analysts do not have the authority to approve deviations from IRM procedures. Any request for an exception or deviation to an IRM procedure must be elevated through appropriate channels for executive approval. This will ensure that other functional areas are not adversely affected by the changes and that it does not result in disparate treatment of taxpayers.

(2)  See guidelines in IRM **1.11.2**, Internal Management Documents System, **Internal Revenue Manual(IRM) Process**. Request for an IRM deviation must be submitted in writing and signed by the Field Director, following instructions from IRM **1.11.2.2.4**.

(3)  Any disclosure issues will be coordinated by the Program Owner. No deviations can begin until they are reviewed by the Program Owner and approved at the Executive Level. All requests must be submitted to the Submission Processing Headquarters IRM Coordinator.

**3.28.3.3.1**
**(01-01-2019)**
**Acronyms**

(1)  An acronym is an abbreviated word formed from the initial letter or letters of each major part of a compound term, such as IDRS for Integrated Data Retrieval System.

(2)  A list of some of the acronyms and definitions used in this IRM are listed in the chart below.

| ACRONYM | DEFINITION |
| --- | --- |
| CAF | Centralized Authorization File |
| DIF | Discriminant Index Function |
| IDRS | Integrated Data Retrieval System |
| IRM | Internal Revenue Manual |
| IT | Information Technology |
| POA | Power of Attorney |
| SB/SE | Small Business/Self-Employed |
| SP | Submission Processing |
| W&I | Wage & Investment |

| | | |
|---|---|---|
| **3.28.3.4**<br>(01-01-2019)<br>**Processing Returns and Accounts of the President and Vice President** | (1) | Follow the instructions in this subsection of the manual when processing the individual tax returns and accounts of the President and Vice President of the United States in office at the time of filing. |
| | (2) | This IRM provides procedures for: |

- Individual and Gift Tax Returns Processing
- Account Data Storage and Access
- Mandatory Examination

| | | |
|---|---|---|
| **3.28.3.4.1**<br>(01-01-2019)<br>**Individual and Gift Tax Return Processing** | (1) | Follow the normal return-processing procedures for all tax returns of the President and Vice President of the United States. |
| | (2) | Maintain the privacy of the tax return of the President and Vice-President **at all times** during processing. |

- Ensure that other employees in the immediate area cannot view the returns.
- Keep the returns locked in a secure drawer or cabinet while you are away from your work area and the returns are still under your control.

(3) Once the individual income tax return has posted, make a photocopy of the return and stamp "COPY" in the top margin of the copy. Route the copy to Files.

(4) Forward the **original** processed individual income tax return in double-sealed envelopes to prevent any damage to the return to:

Internal Revenue Service
Deputy Commissioner for Services and Enforcement
1111 Constitution Ave NW, Room 3000 IR
Washington, DC 20224

(5) The tax returns of both the President and Vice President are permanent records under the Records Control Schedules Document 12990, RCS 8, Item 12, since they are deemed permanent records by the National Archives.

(6) Process gift tax returns in accordance with the same procedures relating to all taxpayers.

| | | |
|---|---|---|
| **3.28.3.4.2**<br>(01-01-2019)<br>**Account Data Storage and Access** | (1) | Carry the account data of the President and Vice President on the appropriate Master File. |
| | (2) | Do not subject the accounts to restricted access procedures. |

| | | |
|---|---|---|
| **3.28.3.4.3**<br>(01-01-2019)<br>**Mandatory Examination** | (1) | Individual income tax returns for the President and Vice President are subject to mandatory examinations. See IRM 4.2.1.11, *Processing Returns and Accounts of the President and Vice President.* |
| | (2) | The Small Business/Self-Employed (SB/SE) Director of Examination will determine the area office responsible for the examination of the return. |

(3)   Copies of the returns to be examined will be transmitted after the examining office with jurisdiction is selected. Copies of returns must bear the word **Copy** in the top right margin. The transmittal memorandum will contain the following directions:

   a.   Regardless of the Discriminant Index Function (DIF) score, the returns will be examined.
   b.   IRS personnel, including specialists, will be assigned to the examination as appropriate.
   c.   The Examination Area Director, or his/her designee, will arrange for contact with the authorized representatives of the President and Vice President for the beginning of the examination.
   d.   All relevant IRM procedures will apply to these return examinations.
   e.   The examination papers of the President and Vice President are subject to regular retention procedures Document 12990, RCS 23, Item 43a.

**3.28.3.5**
**(01-01-2019)**
**Blind Trust Form 1040**
**Returns**

(1)   Follow the instructions in this subsection of the IRM when processing blind trust individual income tax returns.

(2)   The instructions include the following procedures:

   •    General Information and Instructions
   •    Blind Trust Tax Return Processing
   •    Document Perfection Procedures
   •    Accounts Management Centralized Authorization File (CAF) Procedures - Processing the Form 2848

**3.28.3.5.1**
**(01-01-2019)**
**General Information and**
**Instructions**

(1)   The President, Vice President, or a political appointee will be considered to have shown good cause for receiving permission and will **automatically be granted permission** to have their return filed by a trustee when both of the following conditions are met:

   a.   The President, Vice President, or political appointee has an interest in a blind trust that meets the requirements of Section 102(f)(3) of the Appendix 4 to Title 5 of the United States Code (USC) or any successor provision of the USC.
   b.   The President, Vice President, or political appointee in accordance with Rev. Proc. 2010–11 submits with the income tax return both a letter requesting permission for the trustee to prepare and file the income tax return on behalf of the eligible individual and a power of attorney.

*Note:*  A separate request must be made for each tax year (tax period).

(2)   The trustee must attach both of the following to their filed return:

   •    A letter requesting permission for the trustee to prepare and file the President's, Vice President's, or political appointee's return.
   •    A valid power of attorney authorizing the trustee to represent the taxpayer that includes a statement specifically authorizing the trustee to prepare and file the taxpayer's return on behalf of the taxpayer.

(3)   The IRS must use extreme caution not to violate a blind trust.

    a.    Address all correspondence and refunds concerning the blind trust tax return to the authorized trustee.

    b.    Do not disclose any information regarding the source(s) or nature of the blind trust income to the taxpayer.

(4)    Generally, the taxpayer's name will be in the Entity, but the address will belong to the trustee to ensure that any correspondence and/or refund is mailed only to the trustee. Any attached Power of Attorney (POA) should be reviewed for completeness using the criteria in IRM 3.28.3.5.2.1, *Document Perfection Procedures* by the Code and Edit tax examiner, then faxed to the Ogden CAF Unit to be posted.

(5)    **Do not** disclose information regarding the source of the blind trust income if contact with the taxpayer is ever required.

**3.28.3.5.2**
**(01-01-2019)**
**Blind Trust Tax Return Processing**

(1)    Blind Trust returns can generally be identified by the presence of any of the following:

- The notation "Blind Trust" in the signature area
- An income statement or schedule indicating "Income from Blind Trust"
- A trust agreement which specifies "Blind Trust"
- A POA attached indicating "Blind Trust," or posted to the CAF with a Blind Trust Authorization Indicator or
- A letter requesting permission for the trustee to prepare and file the President's, Vice President's or political appointee's return

(2)    The letter requesting permission and the POA must be attached to the return. It is the responsibility of the Code and Edit tax examiner to determine that the POA is complete before routing it to the Ogden CAF Unit. If the POA is already posted, the Code and Edit tax examiner should ensure that the Blind Trust Authorization Indicator is posted on the account. See IRM 3.28.3.5.2.1, *Document Perfection Procedures*.

(3)    If the Form 2848 is an original, or the CAF needs to be updated with the Blind Trust Authorization Indicator, the Code and Edit tax examiner will:

    a.    Perfect the Form 2848. See IRM 3.28.3.5.2.1(3) for specific procedures

    b.    Call the Ogden CAF Unit Manager to alert him/her that they are faxing a POA for a "Blind Trust" to the unit

    c.    Edit "Blind Trust" in the top margin of the Form 2848

    d.    Fax the original Form 2848 to the Ogden CAF Unit

    e.    Staple the Form 2848 to the back of the return

(4)    If the request letter is attached and the POA is posted correctly, continue processing the return. Leave the request letter (and any POA) attached to the return.

(5)    If the POA is posted to the CAF, but the Blind Trust Authorization Indicator needs updating, refer to IRM 3.28.3.5.2.1(6) for instructions on how to contact the Ogden CAF Unit to update that field.

**3.28.3.5.2.1**
**(01-01-2019)**
**Document Perfection Procedures**

(1)    Determine that the letter requesting permission for the trustee to prepare and file the President's, Vice President's, or political appointee's return is present and the POA is attached when "blind trust" is indicated on the return.

***Note:*** The POA authorization may be contained in the trust agreement when a blind trust agreement is attached. If **all** of the items required to be included in a valid POA authorization, including the specific acts, are listed in the blind trust agreement, then it is acceptable. Edit the taxpayer's name and social security number (SSN), and "See Attached" on a Form 2848. Then, fax the "Form 2848" package to the Ogden CAF Unit for processing.

(2)   If a Form 2848 is attached, check Command Code (CC) CFINK to determine if it is an **original** or **copy** of the POA. If the CAF is up to date (including the blind trust Authorization Indicator), then continue processing the return and leave the **copy** of the Form 2848 attached to the return.

(3)   If an **original** Form 2848 is attached to the return, the Code and Edit tax examiner will edit **"BLIND TRUST"** in the top-center margin of the Form 2848 and ensure that the following applicable parts of the Form 2848 are completed.

  a.   **Line 1 - Taxpayer information**: Taxpayer name(s) and address, SSN(s).
  b.   **Line 2 - Representative(s)**: Representative(s) name(s) and address, CAF number, telephone number.
  c.   **Line 3 - Acts authorized**: Description of matter (type of tax form number (e.g., Form 1040), tax period (must be only ONE tax period)
  d.   **Line 4 - Specific use not recorded on Centralized Authorization File (CAF)**: Box should be checked.
  e.   **Line 5a - Additional acts authorized** - Sign a return box should be checked. A statement should be included granting the trustee permission to sign the tax return. "This power of attorney is being filed pursuant to Treasury Regulation section 1.6012-1(a)(5), which requires a power of attorney to be attached to a return if a return is signed by an agent by reason of **specific permission granted by IRS**" **Line 5a** may also include the following authorizations:

  •     Waiver of restriction on assessment or collection
  •     Waiver of notice of disallowance
  •     Consent to extend the period for assessment or collection
  •     Closing agreement

  f.   **Line 5b - Specific acts not authorized -** Should be blank.
  g.   **Line 6 - Retention/revocation of prior power(s) of attorney**: If the box is checked, research CC CFINK to determine if it should have been checked.
  h.   **Line 7 - Signature of taxpayer(s) and date**: The signature of the taxpayer(s) and the date is required.
  i.   **Part II - Declaration of Representative**: Designation, jurisdiction, signature, and date of agent is required. Correspond with the agent if this is missing.

(4)   If the Form 2848 is complete:

  1.   Detach the Form 2848 from the return and call the Ogden CAF Unit Manager to notify him/her that you are faxing a blind trust POA for **expedite** processing
  2.   Fax the original Form 2848 to the Ogden CAF unit.
  3.   Upon acknowledgement of receipt from the Ogden CAF Unit Manager that the POA was input correctly to the CAF, staple the Form 2848 to the back of the return and continue processing.

(5) Correspond with the political appointee for the missing items or authorizations when the POA does not grant the trustee authority to perform all of the specific acts (Line 5 on Form 2848) on behalf of the political appointee, or any other required items are missing, except Part II. If Part II is incomplete, correspond with the trustee.

(6) The request letter and POA **must be** present. If either one is missing or incomplete, use the table below to determine the proper action:

| If a POA is: | and request letter is: | Then: |
|---|---|---|
| 1) **Attached**, or already correctly posted on the CAF with the Blind Trust Authorization Indicator | **Attached** | Continue processing. |
| 2) On the CAF, but the Blind Trust Authorization **Indicator is not** present | **Attached** | Contact the Ogden CAF Unit Manager. Fax the request letter to them for verification to allow the update to the CAF with the Blind Trust Authorization Indicator. |
| 3) **Not** found on the CAF, or attached to the return | **Attached** | Correspond with the trustee for the missing POA. **Suspend** the return while corresponding for the missing POA. |
| 4) **Attached**, or already posted on the CAF | **Not** attached | Correspond with the trustee for a copy of the request letter. **Suspend** the return while corresponding for the missing request letter. |
| 5) **Not** found on the CAF, or attached to the return | **Not** attached | There is an indication of a ″blind trust.″ Code and Edit should correspond with the ″trustee″ for the missing documents. **Suspend** the return while corresponding for the missing documents. |

(7) If the request letter is attached, a valid POA has posted, and other correspondence conditions are present on the return, **suspend** the return and correspond with the trustee.

3.28.3.5.2.2
(01-01-2019)
**Accounts Management Centralized Authorization File (CAF) Procedures - Processing the Power of Attorney (POA)**

(1) The Form 2848 (POA) for the "blind trust" can be **mailed or faxed** directly to any CAF unit by the agent or taxpayer. If any CAF Unit, other than Ogden, receives a Form 2848 (POA) with indication of "blind trust", they should contact the Ogden CAF Unit Manager, and fax the Form 2848 directly to him/her for processing.

3.28   Special Processing Procedures

(2)   When the Form 2848 (POA) is **attached** to a blind trust tax return, the Code
      and Edit tax examiner should review the Form 2848 for completeness, then
      phone the Ogden CAF Unit Manager and immediately fax the Form 2848 to
      him/her for input to the CAF. The CAF Unit Manager will acknowledge receipt
      and input the Form 2848. After input to the CAF, the Code and Edit tax
      examiner will continue processing the return.

(3)   **Ogden CAF Unit Only** – Process the blind trust POA according to instructions.
      in IRM 21.3.7.8.10, *Blind Trust Authorizations*.

# EXHIBIT C

# MANUAL TRANSMITTAL

**4.2.1**

Department of the Treasury
**Internal Revenue Service**

**MAY 29, 2019**

## EFFECTIVE DATE

(05-29-2019)

## PURPOSE

(1)     This transmits revised IRM 4.2.1, General Examining Procedures, General Examination Information.

## MATERIAL CHANGES

(1)     Significant changes to this IRM are listed in the table below.

| Prior Reference | New Reference | Description of Change |
|---|---|---|
| N/A | IRM 4.2.1.1 through IRM 4.2.1.1.6 | Added and moved content to provide background information, legal authorities that govern the actions covered in this IRM, roles and responsibilities, terms, acronyms, and related resources available to assist examiners when conducting examinations. In addition, content from IRM 4.2.1.13.1, Definitions, has been moved to IRM 4.2.1.1.4, Terms. |
| N/A | IRM 4.2.1.6 | Guidance for "reopening of closed cases" has been added as it was not moved to another section when IRM 4023 was obsoleted. |
| IRM 4.2.2.1 through IRM 4.2.2.1.2 | IRM 4.2.1.7 through IRM 4.2.1.7.2 | Content from IRM 4.2.2.1, Collateral Examinations, was moved from IRM 4.2.2.1 through IRM 4.2.2.1.2 to IRM 4.2.1.7 through IRM 4.2.1.7.2. |
| N/A | IRM 4.2.1.11 | Moved guidance on "Assistance to Chief Counsel" from IRM 4.10.1.4.8 to IRM 4.2.1.11. |
| IRM 4.2.1.16 | N/A | Content has been removed. See IRM 25.24.5, Return Preparer Misconduct Field Examination. |
| IRM 4.2.1.19 | IRM 4.2.1.22 | Renumbered and added a "Note" providing guidance for when the taxpayer's problem involves an Appeals' agreed resolution not being implemented or there was an error involving the implementation. |

Manual Transmittal Cont. (1)

| Prior Reference | New Reference | Description of Change |
|---|---|---|
| IRM 4.2.2.3 through IRM 4.2.2.3.1 | IRM 4.2.1.23 | Moved and revised content from IRM 4.2.2.3, Extensions of the Replacement Period of Involuntary Converted Property. IRM 4.2.2.3.1, Involuntary Converted Property Extension Procedures, has been replaced by a reference to IRM 4.8.8.6, Involuntary Converted Property. |
| IRM 4.2.2.4 | IRM 4.2.1.24 | Moved and revised content from IRM 4.2.2.4, Identification of Bad Payer Information. |
| IRM 4.2.2.5 | IRM 4.2.1.25 | Moved and revised content from IRM 4.2.2.5, Awards Received by Informants. |
| Throughout IRM 4.2.1 | | Minor editorial changes have been made throughout this IRM. Website addresses, legal references, and IRM references were reviewed and updated as necessary. |

**EFFECT ON OTHER DOCUMENTS**

This material supersedes IRM 4.2.1, dated November 23, 2016 and incorporates content from IRM 4.2.2, General Examining Procedures.

**AUDIENCE**

Small Business and Self-Employed (SB/SE), Large Business and International (LB&I), and Wage and Investment (W&I) examiners.

Maha H. Williams
Director, Examination-Field and Campus Policy
Small Business/Self-Employed

4.2.1
General Examination Information

# Table of Contents

4.2.1.1     Program Scope and Objectives

   4.2.1.1.1     Background

   4.2.1.1.2     Authority

   4.2.1.1.3     Responsibilities

   4.2.1.1.4     Terms

   4.2.1.1.5     Acronym

   4.2.1.1.6     Related Resources

4.2.1.2     Identification and Control Numbers

4.2.1.3     Potentially Dangerous Taxpayer (PDT) and Caution Upon Contact (CAU) Indicators

4.2.1.4     Request for Armed Escort

4.2.1.5     1254 Suspense

4.2.1.6     Reopening of Closed Cases

4.2.1.7     Collateral Examinations

   4.2.1.7.1     Collateral Examination Procedures: Initiating Area

   4.2.1.7.2     Collateral Examinations: Receiving Area

4.2.1.8     General Appeals Guidelines

   4.2.1.8.1     Cases Not Fully Developed

   4.2.1.8.2     New or Reopened Issues

   4.2.1.8.3     Disagreements With Appeals Determinations

   4.2.1.8.4     Docketed Case Examination Assistance

   4.2.1.8.4.1     New Information Received in Appeals

   4.2.1.8.4.2     Examination Assistance Request Package

   4.2.1.8.4.3     Examination Assistance Point of Contact Actions

   4.2.1.8.4.4     Examiner Secures New Information and Related Case File

     4.2.1.8.4.4.1     Examiner Responsibilities

     4.2.1.8.4.4.2     Examiner Returns New Information and Related Case File

   4.2.1.8.4.5     Examination Assistance Point of Contact

4.2.1.9     New Issues Raised by Counsel

4.2.1.10     Litigation Affecting the IRS

   4.2.1.10.1     Notification to Area Counsel in State Court Suits

   4.2.1.10.2     Suits for Recovery of Erroneous Refunds

4.2.1.11     Assistance to Chief Counsel or U.S. Attorney

   4.2.1.11.1     Chief Counsel or U.S. Attorney Requests for Civil Suit Data

4.2.1.12     Awards of Litigation and Administrative Costs in Tax Cases

4.2.1.13     Statute Expiration Reports

4.2.1.14    Taxpayer Notification of Assessment Statute Expiration and Acceptance of Voluntary Payments on
            Expired Statute Returns When Taxpayer Was Contacted for Examination

4.2.1.14.1    Guidelines for Cases with Expired Statutes Where the Deficiency Cannot Be Determined

4.2.1.14.2    Guidelines for Cases with Expired Statutes Where the Deficiency Can Be Determined or there is
              No Change to Tax

4.2.1.14.3    Guidelines for Cases with Expired Statutes Where the Taxpayer Makes a Voluntary Payment

4.2.1.15    Processing Returns and Accounts of the President and Vice President

4.2.1.16    Blind Trust Income Tax Returns Filed by Presidential Appointees

4.2.1.17    Reporting Allegations of Tax Violations Involving Senior Treasury Officials

4.2.1.17.1    Compliance Examination Procedures

4.2.1.18    Reporting Misconduct of IRS Employees or Officials

4.2.1.19    Income Tax Bonds Under IRC 332(b) and IRC 905(c)

4.2.1.20    Property Blocked by Foreign Funds Control or Vested by Office of Foreign Assets Control

4.2.1.20.1    Office of Foreign Assets Control (OFAC) Information

4.2.1.20.2    Investigation and Disposition

4.2.1.20.3    Payor Failure to Withhold Tax at Source

4.2.1.21    Witness Security Program

4.2.1.22    Taxpayer Advocate Program

4.2.1.23    Extensions of the Replacement Period of Involuntarily Converted Property

4.2.1.24    Identification of Bad Payer Information

4.2.1.25    Awards Received by Informants

4.2.1.26    Restructuring and Reform Act of 1998

# General Examination Information   4.2.1

**4.2.1.1**
**(05-29-2019)**
**Program Scope and**
**Objectives**

(1) Purpose. This IRM section provides information on various topics as shown in the table of contents. References to other resources, such as related IRMs and websites are included when applicable and provide additional guidance as needed to ensure a thorough understanding of the topic.

(2) Audience. These procedures apply to examiners in Small Business and Self-Employed (SB/SE) Field Examination, SB/SE Speciality Examination, Large Business and International (LB&I), and W&I.

(3) Policy Owner. The Director, Examination - Field and Campus Policy, who is under the Director, Headquarters Examination, owns the policy in this IRM.

(4) Contact Information. To recommend changes or make any other suggestions related to this IRM section, see IRM 1.11.6.6, Providing Feedback About an IRM Section - Outside of Clearance.

**4.2.1.1.1**
**(05-29-2019)**
**Background**

(1) This IRM provides information for general examination procedures that examiners should understand and apply in the performance of their duties.

**4.2.1.1.2**
**(05-29-2019)**
**Authority**

(1) By law, the Service has the authority to conduct examinations under Title 26, Internal Revenue Code, Subtitle F – Procedure and Administration, Chapter 78, Discovery of Liability and Enforcement of Title, Subchapter A, Examination and Inspection.

(2) The following IRC sections, Rev. Procs, and Delegation Orders provide the authority for various topics as referenced within this IRM:

- IRC 332(b) - Complete liquidations of subsidiaries
- IRC 905(c) - Applicable rules
- IRC 6501(a) - Limitations on assessment and collection
- IRC 6532(b) - Periods of limitation on suits
- IRC 7121 - Closing agreements
- IRC 7405 - Action for recovery of erroneous refunds
- IRC 7430 - Awarding of costs and certain fees
- IRC 7605(b) -Time and place of examination
- Rev. Proc. 64-22, Statement of some principles of Internal Revenue tax administration.
- Rev. Proc. 2005-32, Examination of returns and claims for refund, credit, or abatement; determination of correct tax liability.
- Rev. Proc. 2010-11, Forms and Instructions.
- Rev. Proc. 2012-18, Ex Parte communications between appeals and other Internal Revenue Service employees.
- Rev. Proc. 2016-22, Appeals Functions.
- Delegation Order 4-7(formerly DO-57, Rev. 9) - IRM 1.2.43.8, Delegation Order 4-7 (formerly DO-57, Rev. 9).
- Delegation Order 4-47(New) - IRM 1.2.43.37, Delegation Order 4-47 (New).
- SBSE Delegation Order 1-23-33, Authority to Grant Extensions of Time to Replace Involuntarily Converted Property Under Section 1033 of the Internal Revenue Code - IRM 1.2.65.4.11.

# 4.2   General Examining Procedures

**4.2.1.1.3**
**(05-29-2019)**
**Responsibilities**

(1) The Director, Headquarters Examination, is the executive responsible for providing policy and guidance for SB/SE Examination employees and ensuring consistent application of policy, procedures and tax law to effect tax administration while protecting taxpayers' rights. See IRM 1.1.16.3.5, Headquarters Examination, for additional information.

(2) The Director, Examination - Field and Campus Policy, reports to the Director, Headquarters Examination, and is responsible for the delivery of policy and guidance that impacts the field examination process. See IRM 1.1.16.3.5.1, Field and Campus Policy, for additional information.

(3) Field Examination General Processes (FEGP), which is under the Director, Examination - Field and Campus Policy, is the group responsible for providing policy and procedural guidance on standard examination processes to field employees. See IRM 1.1.16.3.5.1.1, Field Exam General Processes, for additional information.

(4) All examiners must perform their professional responsibilities in a way that supports the *IRS Mission*. This requires examiners to provide top quality service and to apply the law with integrity and fairness to all.

(5) Income tax examiners and their managers should thoroughly acquaint themselves with the examination procedures and information contained in this IRM, as well as other resources, such as those listed in IRM 4.2.1.1.6, Related Resources, below.

**4.2.1.1.4**
**(04-23-2014)**
**Terms**

(1) The following table lists terms and their definitions that are used in this IRM:

| Term | Definition |
|------|-----------|
| Senior Treasury Official | For purposes of this IRM is defined as:<br>• All individuals within the Treasury Department serving in Executive Levels I through V.<br>• All individuals within the Treasury Department serving in the Senior Executive Service or positions classified above grade general schedule (GS)-15 (or comparable pay band).<br>• All individuals within the IRS in grade GS-15 (or comparable pay band) serving in positions centralized in the IRS Executive Resources Board.<br>• All individuals within the Treasury Department (other than IRS) in grade GS-15 (or comparable pay band), which the Deputy Secretary may designate. |
| Treasury Department | The Office of the Secretary and all agencies, bureaus, and other organizational elements within the Department of the Treasury. |

4.2.1.1.5
(05-29-2019)
**Acronym**

(1)   The following table lists commonly used acronyms and their definitions used throughout this IRM:

| Acronym | Definition |
|---------|------------|
| AARS | Appeals Account Resolution Specialists |
| ADP | Automated Data Processing |
| ATE | Appeals Technical Employee |
| AUR | Automated Underreporter |
| CAU | Caution Upon Contact |
| CI | Criminal Investigation |
| DOJ | Department of Justice |
| EA | Examination Assistance |
| IRP | Information Reporting Program |
| LB&I | Large Business & International |
| LTA | Local Taxpayer Advocate |
| OEP | Office of Employee Protection |
| PDT | Potentially Dangerous Taxpayer |
| RRA | Restructuring and Reform Act |
| SAC | Special Agent in Charge |
| TAS | Taxpayer Advocate Service |
| TC | Transaction Code |
| TIGTA | Treasury Inspector General for Tax Administration |
| TS | Technical Services |
| WSC | Witness Security Coordinator |

4.2.1.1.6
(05-29-2019)
**Related Resources**

(1)   Helpful information can be found on websites, including, but not limited to the following:

- *AUR HQ Payer Agent Coordinator*
- *EA Routing Instructions*
- *Office of Employee Protection*
- *Office of Foreign Assets Control*
- *http://www.treasury.gov/tigta/contact_report.shtml*

4.2.1.2
(04-23-2014)
**Identification and Control Numbers**

(1)   The similarity of taxpayers' names and the voluminous flow of documents require the use of permanent identifying numbers coupled with taxpayers' names. These numbers are necessary for automated data processing (ADP) purposes to ensure positive control of each tax account and all related transactions. Some standard titles and abbreviations used are as follows:

a.  Social security number (SSN)—the number assigned to an individual for social security purposes, tax account purposes, or both.

b.  Employer identification number (EIN)—the number assigned for any tax purpose to a person other than an individual. Also means the identification number which is assigned to an individual who is required to file a return with respect to their liability for any tax other than income, estate, or gift taxes.

c.  Document locator number (DLN)—the number assigned to each return or other document introduced into processing for control and file reference purposes.

d.  Individual taxpayer identification number (ITIN)—the number assigned to individuals who are required for U.S. tax purposes to have a U.S. taxpayer identification number but who do not have, and are not eligible to obtain a SSN issued by the Social Security Administration.

e.  Internal revenue service number (IRSN)—the number used in place of a required TIN during processing.

(2)  The spacing of the digits in identifying numbers is an integral part of the number. The proper spacing must be observed in all instances. The spaces may be indicated by using hyphens, blank spaces, etc. For example, EIN as 00-0000000; and, SSN as 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.

(3)  The foregoing identification and control numbers do not preclude the use of reference or control numbers such as Tax Court docket numbers, Criminal Investigation (CI) case numbers, reference numbers used in connection with the collection of delinquent accounts, or other numbers or codes used for control or reference purposes.

**4.2.1.3**
**(04-23-2014)**
**Potentially Dangerous**
**Taxpayer (PDT) and**
**Caution Upon Contact**
**(CAU) Indicators**

(1)  The IRS has two servicewide employee safety programs designed to warn employees of taxpayers who have been designated as potentially dangerous and or should be approached with caution:

•    Potentially Dangerous Taxpayer (PDT) Program
•    Caution Upon Contact (CAU) Taxpayer Program

(2)  The Office of Employee Protection (OEP) has sole responsibility for administering the PDT and CAU programs. The OEP enhances the safety of IRS employees by taking the following actions:

a.  Making PDT and CAU determinations.
b.  Maintaining the PDT and CAU indicator databases.
c.  Providing information and feedback to employees, managers, and executives.

(3)  OEP maintains two IRMs that provide guidance and information:

a.  IRM 25.4.1, Potentially Dangerous Taxpayer, provides procedures and guidelines for referring and designating taxpayers under the PDT program. See IRM Exhibit 25.4.1-1, Display of PDT Indicator, for a listing of documents and systems that display the PDT indicator.

b.  IRM 25.4.2, Caution Upon Contact Taxpayer, provides procedures and guidelines for referring and designating taxpayers under the CAU program. See IRM Exhibit 25.4.2-1, Display of CAU Indicator, for a listing of documents and systems that display the CAU indicator.

(4)   The OEP performs PDT and CAU five-year reviews, which consist of reviewing the taxpayer against established five-year renewal criteria. See IRM 25.4.1.8, Five-Year Review of PDT Records and IRM 25.4.2.7, Five-Year Review of CAU Records, for additional information.

(5)   The OEP *Office of Employee Protection* website provides additional guidance and information such as the following:

- Definition of assaults, threats, and intimidation
- Process of reporting assaults, threats, and intimidation
- Criteria for PDT
- Criteria for CAU
- Explanation of relationship between the TIGTA and the OEP
- "A Guide to the Office of Employee Protection Programs" desk guide
- Spotlight on Safety brochure
- Spotlight on Safety newsletter
- Frequently asked questions

**4.2.1.4**
**(04-23-2014)**
**Request for Armed Escort**

(1)   The TIGTA Office of Investigations (OI) has primary responsibility to provide armed escorts for IRS personnel who in the course of their official duties have been threatened with bodily harm indicating the need for such protection. See IRM 9.5.11.10, Armed Escort Assignment.

**Exception:**   CI has primary responsibility for the protection of the Commissioner of Internal Revenue.

(2)   When an examiner feels they need an armed escort, they will immediately report the facts causing the need to their group manager. Armed escorts may be requested by IRS employees when they intend to meet with taxpayers who have been designated by the OEP as PDT or CAU, or in other circumstances where the examiner and the group manager believe any interaction during the performance of duties may pose a risk of injury to the employee.

(3)   If the group manager determines that an armed escort is necessary, they will request such protection in writing via a memorandum, not to exceed two pages, to the TIGTA-OI special agent in charge (SAC) of the appropriate TIGTA-OI field division. To ensure the safety of IRS and TIGTA-OI personnel, as well as guarantee the operational integrity of the armed escort, a request must be submitted at a minimum one week prior to the scheduled appointment date. If a request is submitted with less than a one week notification, it may require a postponement of the appointment or an alternate meeting location.

(4)   All armed escort requests will be reviewed by the respective TIGTA-OI SAC. Armed escorts will be provided on a case-by-case basis. If the TIGTA-OI SAC determines that an armed escort is not warranted, IRS management may seek a reconsideration of the denied request by contacting the TIGTA-OI SAC who rendered the decision. If a resolution cannot be reached and the requesting IRS management official still believes an armed escort is warranted, the IRS management official can request a final reconsideration from the TIGTA-OI, Deputy Assistant Inspector General for Investigations (DAIGI)-Field Operations.

(5)   Since TIGTA-OI has primary responsibility for providing armed escorts, IRS management may not request and or alternatively seek assistance from CI if the request for an armed escort has been denied. If CI receives a request for

an armed escort from an IRS employee or management official, CI will refer the IRS employee or management official to the nearest TIGTA-OI office.

**Note:** Unless specifically asked for assistance by TIGTA-OI, CI will no longer be responsible for providing armed escorts to IRS employees except as noted in paragraph (1) above. If CI assistance is needed, the TIGTA SAC will forward the request in writing to the appropriate CI Director, Field Operations, for concurrence.

(6) If an armed escort is being considered for a taxpayer designated a PDT, contact TIGTA-OI directly. The memorandum should contain the following information:

    a.   Taxpayer name.
    b.   Taxpayer social security number.
    c.   Taxpayer contact number(s).
    d.   Taxpayer home address.
    e.   Assigned IRS employee name, position, and contact information.
    f.   Supervisor name, position, and contact information.
    g.   Description of the tax issue.
    h.   Description of activity to take place.
    i.   Phone number of IRS employees or others who will attend.
    j.   Location of activity.
    k.   Any contacts or statements related to the taxpayer that caused concern.
    l.   Any other information related to the subject that would indicate an armed escort is warranted.

(7) If an armed escort is being considered for a taxpayer designated as CAU, the requesting employee or management official must contact the OEP and obtain the basis for the OEP's designation. IRS management must evaluate this information and if it is decided an armed escort is still needed, proceed with the memorandum. The memorandum should contain the following information:

    a.   Taxpayer name.
    b.   Taxpayer social security number.
    c.   Taxpayer contact number(s).
    d.   Taxpayer home address.
    e.   Assigned IRS employee name, position, and contact information.
    f.   Supervisor name, position, and contact information.
    g.   Basis for the OEP CAU designation.
    h.   Description of the tax issue.
    i.   Description of activity to take place.
    j.   Number of IRS employees or others who will attend.
    k.   Location of activity.
    l.   Any contacts or statements related to the taxpayer that caused concern.
    m.   Any other information related to the subject that would indicate an armed escort is warranted.

(8) If an employee is requesting an armed escort for reasons other than PDT and CAU, IRS management must evaluate the situation. If IRS management concurs with requesting an armed escort, prepare a memorandum. The memorandum should contain the following information:

    a.   Taxpayer name.
    b.   Taxpayer social security number.
    c.   Taxpayer contact number(s).

Case 1:19-cv-01974-TNM  Document 44-4  Filed 09/06/19  Page 38 of 82

    d.   Taxpayer home address.
    e.   Position, grade, function, and POD information, if the taxpayer is an IRS employee or contractor.
    f.   Assigned IRS employee name, position, and contact information.
    g.   Supervisor name, position, and contact information.
    h.   Background information concerning the taxpayer.
    i.   Description of activity to take place.
    j.   Number of IRS employees, management officials, and or others who will attend.
    k.   Location of activity.
    l.   Any contacts or statements related to the taxpayer that caused concern.
    m.   Any other information related to the subject that would indicate an armed escort is warranted.

(9)   When an actual threat or assault has been made, TIGTA has primary jurisdiction and must be contacted. For contact information, refer to the *TIGTA-OI* website.

| | |
|---|---|
| 4.2.1.5<br>(04-23-2014)<br>**1254 Suspense** | (1)   Examination Technical Services holds cases pending a court decision or business unit guidance. Cases may be held in 1254 suspense under the following circumstances: |

    a.   The facts in the case to be suspended are the same or similar to an issue pending in a federal court.
    b.   The issue is similar to one that is under consideration in District Court in another jurisdiction, but only if a Form 906, Closing Agreement on Final Determination Covering Specific Matters, has been secured, usually by Appeals.
    c.   Chief Counsel or another business unit has identified the issue as a suspense issue.

(2)   For cases held in 1254 suspense pending a court decision, the facts in the case to be suspended must be so similar to those in the pending case that a decision in one will ultimately decide the other.

(3)   The examiner must discuss any case being considered for 1254 suspense with the group manager. The group manager must contact the area Examination Technical Services function to determine whether the case meets the criteria for 1254 suspense.

(4)   Prior to forwarding a case to Examination Technical Services for 1254 suspense, the examiner must:

    a.   Develop the case to the fullest extent possible.
    b.   Ensure a partial agreement is assessed if a case has other issue(s) that do not meet 1254 suspense criteria. See instructions for preparing partially agreed reports in IRM 4.10.8.5, Partially Agreed Cases. The only issues that may be placed in 1254 suspense are unagreed issues meeting the 1254 suspense criteria.

    *Note:*  If a partial agreement cannot be secured, the case should not be sent to 1254 suspense. Prepare an unagreed report for **all** issues pursuant to the instructions in IRM 4.10.8.11, Unagreed Case Procedures (SB/SE Field and Office Examiners only). If the taxpayer fails to file a protest, close the case for issuance of a statutory notice of deficiency.

c.  Ensure an examination report addressing the unagreed issue(s) being suspended is shared with the taxpayer and a copy is retained in the case file, for purposes of IRC 6404(g).

d.  Ensure a claim disallowance that addresses the unagreed issue(s) being suspended is in the case file, if applicable. A claim allowance must also be included in the case file should the taxpayer's position prevail.

e.  Ensure there are at least 24 months remaining on the statute of limitations. If not, secure an extension prior to sending the case to Examination Technical Services for 1254 suspense.

f.  Complete Form 1254, Examination Suspense Report, and ensure the key case is identified.

(5)  See IRM 4.8.2.11, Suspense Cases, for additional guidance.

**4.2.1.6**
**(05-29-2019)**
**Reopening of Closed Cases**

(1)  There may be times when an examiner should consider reopening a tax year that was previously examined and closed. IRC 7605(b) provides that "No taxpayer shall be subjected to unnecessary examination or investigation, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

**Note:**  Reopening procedures do not apply when the taxpayer requests the reopening, such as an audit reconsideration or claim for refund.

(2)  Rev. Proc. 2005-32 provides information on reopening closed cases. The following sections provide information the examiner must consider prior to the reopening of a closed case:

- Rev. Proc. 2005-32, Section 4.01 - Closed Case - provides definitions of a closed case.
- Rev. Proc. 2005-32, Section 4.02 - Reopening - defines what constitutes a "reopening."
- Rev. Proc. 2005-32, Section 4.03 - Taxpayer contacts and other actions that are not examinations, inspections or reopenings - provides a list of four categories of contacts the Service makes with taxpayers and certain other actions taken by the Service that are not examinations, inspections, or reopenings.

**Note:**  A prior examination is indicated by a Transaction Code (TC) 300. A TC 290 is **not** a prior examination.

(3)  The Service will not reopen any case closed after examination by an area office or campus to make an adjustment unfavorable to a taxpayer unless one of the three following criteria is met (see Rev. Proc. 2005-32, Section 5.01 and Policy Statement 4-3 (IRM 1.2.13.1.1 for additional guidance):

- There is evidence of fraud, malfeasance, collusion, concealment or misrepresentation of a material fact,
- The prior closing involved a clearly defined substantial error based on an established Service position existing at the time of the previous examination, or

- Other circumstances exist which indicate failure to reopen would be a serious administrative omission. See Rev. Proc. 2005-32, Section section 5.02 - Other circumstances permitting reopening, for additional information.

(4) All Service initiated reopenings to make adjustments unfavorable to a taxpayer must be approved by the territory manager. See IRM 1.2.43.8, Delegation Order 4-7 (formerly DO-57, Rev. 9). Prior approval must be obtained using Form 4505, Reopening Memorandum, before starting the examination.

(5) When a reexamination of the taxpayer's books and records is necessary, Letter 939 (DO), Reopening Letter, must be prepared by the examiner and sent with Form 4505 to the territory manager for signature. The examiner must issue Letter 939 to the taxpayer at the time the reexamination is started.

**Note:** When a reopening does not require the reexamination of the books and records, Letter 939 is not needed.

(6) Once the approval has been obtained to reopen a closed case and Letter 939 issued (if required), the examiner should contact the taxpayer using the appropriate initial contact letter. See IRM 4.10.2.8.1, Making Initial Contact. For guidance on report writing procedures, see IRM 4.10.8.8, Reports For Cases Reopened By Examination.

4.2.1.7
(10-01-2003)
**Collateral Examinations**

(1) A collateral examination is requested when an exchange of information between areas is essential to resolve an issue of material consequence. Collateral examinations are used only when the information cannot be obtained from the taxpayer, the taxpayer's representative, or third parties. Every reasonable effort must be made to secure the information rather than to routinely request a collateral examination.

(2) Collateral activity is the performance of work of short duration, work that does not require the examination of books and records, and work that calls for little independent judgment or conclusions. For example, a collateral examination would be justified where:

    a. An interview is required to get specific information for the examiner;
    b. A document is to be obtained;
    c. A transcript of an account or a listing f invoices is needed; or
    d. A summons needs to be served.

(3) All collateral requests must receive priority treatment. If the collateral examination results in a finding of nationwide interest, the receiving area will furnish the information to Technical Services who will share it with Headquarters using Technical Coordination Report procedures. See IRM 4.8.8.12.3, Technical Coordination Report, for additional information.

(4) Collateral examination requests involving tax shelter cases will be identified as such on the top of Form 6229, Collateral Examination. The receiving area will acknowledge receipt of the collateral request and provide a status report to the requesting office within 45 days and provide status reports to the initiating area every 30 days.

## 4.2   General Examining Procedures

**4.2.1.7.1**
**(10-01-2003)**
**Collateral Examination Procedures: Initiating Area**

(1)   Form 6229, Collateral Examination, is used by all areas to request or exchange information between areas to resolve an issue(s) of material consequence. Form 6229 is prepared as early as possible in each examination when a collateral examination is needed from another area.

(2)   The examiner assigned the return will prepare the original Form 6229. Part 2 of the form is retained in the case file. The original Form 6229 and three copies are forwarded.

    a.   The narrative section of Form 6229 must include sufficient background information to clearly state the issue(s). Additional schedules and attachments are included as needed. A copy of the out-of-area return is also included, if available.

    b.   Information requested must be specific to the issue(s).

    c.   The examiner's name and telephone number must be included so the receiving area has the correct examiner to contact for clarification of the issue, if needed.

    d.   The completed Form 6229 is submitted to the group manager for review. After approval, the group manager will forward Form 6229. If Campus action is required (i.e., the return), Form 6229 is forwarded to the Campus servicing the receiving area. If no Campus action is required, the initiating area will submit the request to the applicable territory manager of the receiving area. The initiating area will photocopy the retained Part 2 and put an "X" next to the "Follow-up" line when furnishing information to the receiving area.

**4.2.1.7.2**
**(10-01-2003)**
**Collateral Examinations: Receiving Area**

(1)   The receiving area must acknowledge receipt of the request by completing Part 3 of Form 6229 and return it to the initiating area.

    a.   The receiving examiner must include his/her name, address, telephone number and date received. If the case is reassigned, the new examiner must notify the initiating area of the change.

    b.   Photocopies of Part 4 of Form 6229 are used for subsequent communication with the initiating area.

    c.   The receiving examiner must provide a clear, concise response to each question raised.

(2)   If the receiving area believes the results of the collateral examination would not justify the time and cost involved, a memorandum explaining that decision is attached to Form 6229 and forwarded to the initiating area. The territory manager will approve any declination memorandum. The group manager will forward a copy of the Form 6229 with a copy of the declination memorandum attached to the respective Planning and Special Programs (PSP) section for information purposes. Territory managers should resolve disagreements between the initiating and receiving areas concerning the need for a collateral examination. Area Directors will resolve any disagreement between the respective territory managers.

**4.2.1.8**
**(04-23-2014)**
**General Appeals Guidelines**

(1)   This section provides general information related to how Appeals works an examination case and the formal procedures for Examination staff to voice concerns about a case settled by Appeals.

## General Examination Information   4.2.1

4.2.1.8.1
(04-23-2014)
**Cases Not Fully
Developed**

(1) Appeals will not return cases to Examination when the case is not fully developed and the taxpayer has not presented new information or evidence. Instead, Appeals will attempt to settle the case on factual hazards.

4.2.1.8.2
(04-23-2014)
**New or Reopened Issues**

(1) The appeal process is not a continuation or an extension of the examination process. Appeals will not raise new issues and will focus dispute resolution efforts on resolving the points of disagreement identified by the parties.

    a.    A new issue is a matter not raised during an examination.

    b.    In resolving disputes, Appeals may consider new theories and or alternative legal arguments that support the parties' positions when evaluating the hazards of litigation in a case. However, the appeals officer will not develop evidence that is not in the case file to support the new theory or argument.

    c.    The discussion of new or additional cases or other authorities (e.g., revenue rulings or revenue procedures) that supports a theory or argument previously presented does not constitute consideration of a new issue.

    d.    A change in computation is not a new issue.

(2) Appeals will not reopen an issue on which the taxpayer and the IRS are in agreement.

**Exception:**  See IRC 7121.

(3) The restrictions on raising a new issue **do not apply** to new issues raised by taxpayers. For this purpose, the term "new issue" means issues identified by Appeals in non-docketed cases.

(4) Appeals will not raise a new issue in a docketed case. A new issue in a docketed case is any adjustment to or change to an item that affects the petitioner's tax liability that was not included in the notice of deficiency and is raised or discussed during consideration of the case. However, Appeals will consider any new issue the government raises in its pleadings and may consider any new evidence developed by Examination or Counsel to support the government's position.

4.2.1.8.3
(04-23-2014)
**Disagreements With
Appeals Determinations**

(1) This section provides formal procedures for Examination to voice concerns about a case settled in Appeals. These procedures are not intended to replace any informal procedures currently in use at the area level. Management in Examination and Appeals can continue to address and resolve disagreements over case resolution at the lowest possible level. These formal procedures are used when the informal process results in Examination still having unresolved significant concerns about the disposition by Appeals of an issue.

(2) Formal disagreement is expressed by written dissent. The written dissent must clearly state the reason(s) for dissent, the rationale supporting the reason(s) for the dissent, and whether Examination requests a conference with the appropriate Appeals executive (Director, Examination Appeals; Director, Collection Appeals or Director, Specialized Examination Programs and Referrals). The rationale for the dissent should include the following:

    a.  Citation of the specific facts that were not considered, or given enough weight, if Examination believes Appeals did not properly consider the facts.

    b.  Citation of the applicable law (e.g., IRCs, Treas. Regs., Rev. Ruls., court cases, etc.) that was not considered and or accorded different weight if Examination believes there was unsound application of the law by Appeals.

**Note:**  Formal dissents by Examination are not appropriate in a case settled by Appeals where "hazards of litigation" were considered in the settlement of the case. Appeals clearly identifies within the Appeals Case Memorandum (ACM) those cases resolved by considering the "hazards of litigation."

**Note:**  The decision to hold a conference is at the discretion of the appropriate Appeals executive. If a conference is held, the parties must follow the ex parte communication guidelines set forth in Rev. Proc. 2012-18, Section 2.03(11).

(3)  Dissents should be forwarded to the appropriate Appeals Director (Examination Appeals, Collection Appeals, or Specialized Examination Programs and Referrals) via the *AP Formal Dissents* centralized mailbox within 90 days (extensions may be mutually agreed upon) of receipt of an ACM by Examination. The appropriate Director will retrieve the formal dissent from the centralized mailbox and send Examination an acknowledgment of receipt.

(4)  Upon receipt of the dissent, the Appeals Director will determine whether a reply to the dissent is appropriate, and guided by IRM 1.2.17.4, Policy Statement 8-3 (Formerly P-8-50), and existing regulations and statutes, whether the case should be reopened.

(5)  The above procedures do not preclude the exchange of non-case specific information that occurs through advisory boards or between analysts in Examination and Appeals.

**4.2.1.8.4**
**(11-23-2016)**
**Docketed Case**
**Examination Assistance**

(1)  Rev. Proc. 2016-22 describes the practices for the administrative appeals process in cases docketed in the United States Tax Court (Tax Court). See IRM 8.4.1, Procedures for Processing and Settling Docketed Cases, for additional information. These procedures do not apply to cases docketed in United States District Court or the United States Court of Federal Claims.

(2)  Jurisdiction of a **docketed** case must remain with the Office of Chief Counsel (Counsel) or the Office of Appeals (Appeals). Therefore, when Appeals receives **"new information"** (see IRM 4.2.1.8.4.1) from a taxpayer, representative or counsel of record for a docketed case that merits analysis by Examination, Appeals can request examination assistance (EA). Appeals retains jurisdiction of the case while the new information is under review by Examination.

**Note:**  When Appeals receives new information in a **non-docketed** case, Appeals generally releases jurisdiction of the case and returns it to the originating function to examine the new information and make an audit determination. See IRM 8.2.1.7.2, Verification of New Material or Request for Further Development - ATE.

**Note:** In docketed Tax Court cases, a power of attorney is not required from the counsel of record. An attorney who is admitted to practice before the court becomes the counsel of record by filing a petition or entering an appearance in the case. A counsel of record is authorized to act on behalf of the taxpayer in the court proceedings, access the tax information of the person they represent and represent the taxpayer before the Internal Revenue Service. In a case docketed in the Tax Court, anyone other than the counsel of record must be eligible to practice before the IRS and, in order to be recognized, must present a Form 2848, Power of Attorney and Declaration of Representative, or other power of attorney.

(3)   Standardized docketed case EA procedures ensure:

   a.   Examination is able to provide EA to Appeals by analyzing new information provided by petitioning taxpayers, consistent with its mission, and
   b.   All petitioning taxpayers receive consistent treatment when they provide new information not previously made available to Examination.

(4)   **Examination Assistance Exception.** If the docketed case is IRS Campus-sourced and meets the exception in paragraph (2) of IRM 8.6.1.6.5, Taxpayer Provides New Information, Appeals will review the new information and proceed with normal consideration. If the case does not meet the exception, Appeals will generally request EA.

4.2.1.8.4.1
(11-23-2016)
**New Information
Received in Appeals**

(1)   **"New information"** is information received in Appeals from the taxpayer, representative or counsel of record not previously made available to Examination for consideration prior to issuance of the IRS Notice, relating to issues:

   •   Previously examined,
   •   Raised in the petition, or
   •   Raised by the Government in its pleadings.

**Note:** For this purpose, an IRS Notice includes a Notice of Deficiency, a Notice of Final Determination, Final Partnership Administrative Adjustment (FPAA), a Notice of Determination of Worker Classification or any similar document that outlines the Service's position on the particular tax matter and provides Tax Court rights.

(2)   New information includes:

   •   New information, evidence or documentation.
   •   A relevant new issue for which Counsel has provided advice indicating that the issue does not require a formal amendment to the Tax Court petition.
   •   A new theory or alternative legal argument presented by the taxpayer that warrants analysis by Examination before Appeals can fully evaluate the hazards of litigation.

**Note:** Appeals must physically secure the new information and review it to determine if it merits analysis by Examination. **Analysis** may include categorizing, sorting or reviewing taxpayer records, or requiring additional steps or reasoning to reach a conclusion.

# 4.2   General Examining Procedures

| | |
|---|---|
| **4.2.1.8.4.2**<br>(11-23-2016)<br>**Examination Assistance**<br>**Request Package** | (1)   Appeals will prepare an EA request package and forward it via encrypted email to the EA Point of Contact (EA POC) within the appropriate originating function. The EA request package will include the following electronic files: |

      a.   Form 14361, Docketed Examination Assistance Request – Jurisdiction Not Released, completed by Appeals.

      b.   Form 14362, Docketed Examination Assistance Issues and Results, partially completed by Appeals and used by Examination to approve or deny the EA request, and provide EA results to Appeals.

      c.   IRS Notice and relevant attachments to the IRS Notice, if available.

***Note:*** There must be at least 60 calendar days remaining before the Tax Court calendar date on the date Appeals sends the EA request package.

(2)   Appeals will use the *EA_Routing_Instructions* posted on the Appeals website to determine the correct EA POC based on guidance in IRM 4.2.1.8.4.5.

**4.2.1.8.4.3**
(11-23-2016)
**Examination Assistance**
**Point of Contact Actions**

(1)   Generally, within five (5) business days of receiving the EA request package from Appeals, the EA POC will review Form 14361 and Form 14362 to ensure:

      a.   There are at least 45 calendar days from the date Appeals sent the request to the due date shown on Form 14361, Part F, Explanation.

      b.   There are at least 60 calendar days from the date Appeals sent the request to the Tax Court calendar date shown on Form 14361, Part F.

      c.   The issues to consider are identified on Form 14362, Part C, Issues and Results.

(2)   The EA POC must communicate the decision to approve or deny the EA request to the Appeals Team Manager (ATM) within 30 calendar days or less.

- If the EA request is **approved**, the EA POC completes Form 14362, Part B, Examination Assistance Approved/Denied, indicating approval and sends the digitally signed form to the ATM via encrypted email. The EA POC will personally provide the EA or assign and forward the EA request package to the examiner, via encrypted email. See IRM 4.2.1.8.4.5.
- If the EA request is **denied**, the EA POC completes Form 14362, Part B, by using the drop-down menu to indicate the reason the request was denied, and sends the digitally signed form to the ATM via encrypted email.

***Note:*** If the EA POC denies an EA request, Appeals (concerned that a significant risk to taxpayer compliance exists) can elevate the EA request to the Appeals Area Director for discussion with the EA POC's manager.

**4.2.1.8.4.4**
(11-23-2016)
**Examiner Secures New**
**Information and Related**
**Case File**

(1)   After the Appeals Technical Employee (ATE) is notified of the examiner assignment, they will promptly contact the examiner using available means (e.g., phone, email, Skype, etc.) to arrange for timely and efficient delivery of the new information and relevant administrative file information.

(2)   The ATE and examiner will coordinate and agree upon a method of delivery of the new information and related administrative file information. The method of delivery may include, but is not limited to:

- • Providing workspace in the Appeals office for the examiner to perform EA.
- • Mailing/shipping using standard procedures, including Form 3210, Document Transmittal.
- • Using available electronic means of transmitting information, such as encrypted email, Enterprise e-Fax (EEFax), etc.

**Note:** The ATE will maintain physical possession of original tax returns, executed statute extensions, and required Tax Court-related documents. If the examiner needs any of these documents to perform the requested EA, the ATE will provide copies. If the examiner is providing EA in Appeals workspace, the ATE may provide the entire original administrative file to the examiner and secure the file from the examiner at the end of the business day.

4.2.1.8.4.4.1
(11-23-2016)
**Examiner
Responsibilities**

(1) The examiner **will**:

a. Appropriately charge time for EA activities. LB&I and SB/SE field examiners will charge time to activity code 822, Details out of Industry or Area to: Appeals Division. Campus correspondence examiners will charge time and volume to Organization Function Program (OFP) code 91969. Campus AUR examiners will charge time to the applicable OFP code.

b. Complete the assigned EA by the due date specified on Form 14361, Part F.

   **Note:** Examiners can request additional time to complete the EA, but Appeals can deny the request and require the immediate return of the EA package based on the needs of the case (e.g., Tax Court calendar date, Counsel requests return of case for trial preparation, etc.)

c. Review and analyze the EA issues using the information received from Appeals.

   **Caution:** The examiner **must not** contact the taxpayer, representative or counsel of record without the written concurrence (i.e., email) of the assigned Counsel attorney; see IRM 4.2.1.8.4.4.1 (3).

   **Note:** If the new information affects a related FBAR case, consult with an Operating Division FBAR Coordinator.

d. Prepare workpapers to support the EA findings (as applicable).

e. Record the findings and EA time charged on Form 14362, Part C.

   **Note:** The ATE will have entered the issues to be addressed on Part C of Form 14362, including the issue name, year/period, and per return amount. The examiner will enter the corrected amount, adjustment and explanation.

f. Complete Form 14362, Part D, Examiner's Information.

g. Obtain manager's approval, if required, on Form 14362, Part E, Manager's Approval.

h. Send the approved Form 14362 and any related electronic workpapers to the ATE via encrypted email or other electronic method agreed upon by the ATE and examiner.

i. Return applicable items to the ATE. See IRM 4.2.1.8.4.4.2.

j.  Conduct any communications with Appeals in accordance with the ex parte rules. Appeals will invite the taxpayer, representative or counsel of record to participate in any substantive discussion of the disputed issues between Exam and Appeals. See IRM 4.2.7, Ex Parte Communication Procedures.

> *Note:*  Appeals will issue Letter 4642, Docketed Case Examination Assistance, to inform the taxpayer, representative or counsel of record that Appeals requested EA from Examination and will share any information provided by Examination with the taxpayer, representative or counsel of record for review and comment.

(2)  The examiner **will not:**

a.  Prepare tax computations or create an examination report.
b.  Issue an IDR. See IRM 4.2.1.8.4.4.1 (3).
c.  Provide a summary of the results to the taxpayer, representative or counsel of record.
d.  Provide any assurances as to the final tax impact of the EA to the taxpayer, representative or counsel of record, as Appeals may base final settlement on additional factors, such as the hazards of litigation.
e.  Pursue the development of any issues not currently before the Tax Court for the specific case without written concurrence (i.e., email) of the assigned Counsel attorney.

(3)  **Although not required**, the examiner has the **discretion to**:

a.  Contact the assigned Counsel attorney at any time during the EA process.

> *Note:*  Appeals will identify the assigned Counsel attorney on Form 14361 Part E, Area Counsel Contact Information. If the assigned Counsel attorney is not identified on Form 14361, the examiner should contact the ATE for the identity of the assigned Counsel attorney.

b.  Verbally ask questions or request additional information from the taxpayer, representative or counsel of record to clarify the new information received from Appeals **but only after receiving the written concurrence (i.e., email) of the assigned Counsel attorney**. To avoid potential Tax Court discovery issues, the examiner **must not** issue an information document request (IDR). The examiner must document the conversation as well as information requested, date requested, date due, and requested method of delivery on Form 9984, Examining Officer's Activity Record, or a workpaper.

> *Caution:*  If the examiner opts to interact with the taxpayer, representative or counsel of record as outlined above, the examiner must first contact the assigned Counsel attorney to secure the name of the appropriate party for such interaction in writing (i.e., email).

> *Note:*  Prior to requesting EA, the ATE will inform the taxpayer, representative or counsel of record of the critical importance of providing all information in support of their position to the ATE at the beginning of the Appeals process. Appeals will only request EA once on a case; therefore, the taxpayer, representative or counsel of record should have provided all necessary information to the ATE prior to the examiner receiving the EA request.

4.2.1.8.4.4.2
(11-23-2016)
**Examiner Returns New Information and Related Case File**

(1) All administrative case file information including original documents and electronic files (e.g., CD-ROM, flash drive, etc.) provided by the taxpayer, representative or counsel of record through the ATE to the examiner will be returned to the ATE in the manner they were received.

*Note:* Information provided to the examiner electronically (e.g., email, Skype, etc.) does not need to be returned to the ATE since the ATE has the original documents.

(2) The examiner will provide Appeals with any new information received and retained by the examiner from the taxpayer, representative or counsel of record during the EA.

(3) The examiner will use Form 3210 to track and acknowledge receipt of information returned to the ATE.

4.2.1.8.4.5
(11-23-2016)
**Examination Assistance Point of Contact**

(1) Appeals will use the *EA_Routing_Instructions* posted on the Appeals website to determine the correct EA POC. The following table provides the general business rules for determining the EA POC by Primary Business Code (PBC).

| Primary Business Code | Originating Function and EA POC Information |
|---|---|
| 190—195 | **W&I Campus Cases**—Forward EA requests to the appropriate, designated Campus Liaison (CL). Depending on the specific Campus (by PBC) there may be different CL EA POCs for the following programs:<br>• ASFR—Automated Substitute for Return<br>• CORR—Campus Correspondence Examination<br>• EITC—Earned Income Tax Credit<br>The CL will review and approve/deny the initial request. If approved, the CL may personally provide the EA or assign the EA work to another examiner. |
| 201—207 | **SB/SE Field Examination Cases**—Forward to the appropriate, designated EA POC as follows (based upon information in the case file and AIMS/IDRS):<br>• If the Exam group is known, the EA POC will be the current Exam group manager. If approved, the EA POC may assign the EA to the original examiner or another examiner.<br>• If the Exam group no longer exists or cannot be determined, the EA POC will be the Territory Manager.<br>• If the Territory no longer exists or cannot be determined, Appeals will contact the Area PSP office for assistance in determining where to route the EA request. The Area PSP will not decide whether to approve or deny the EA request. |
| 212 | **SB/SE Field Employment Tax Cases**—Forward to the appropriate, designated EA POC as follows (based upon information in the case file and AIMS/IDRS):<br>• If the Exam group is known, the EA POC will be the current Exam group manager.<br>• If the Exam group no longer exists or cannot be determined, the EA POC will be the Territory Manager.<br>• If the Territory no longer exists or cannot be determined, the EA POC will be the Chief Employment Tax. |

# 4.2   General Examining Procedures

| Primary Business Code | Originating Function and EA POC Information |
|---|---|
| 213 | **SB/SE Field Estate & Gift Tax Cases**—Forward to the appropriate, designated EA POC as follows (based upon information in the case file and AIMS/IDRS):<br>• If the Exam group is known, the EA POC will be the current Exam group manager.<br>• If the Exam group no longer exists or cannot be determined, the EA POC will be the Territory Manager.<br>• If the Territory no longer exists or cannot be determined, the EA POC will be the Chief, Estate and Gift. |
| 214 | **SB/SE Field Excise Tax Cases**—Forward EA requests to the appropriate, designated PBC 214 (Excise Tax) EA POC.<br>• If the Exam group is known, the EA POC will be the current Exam group manager.<br>• If the Exam group no longer exists or cannot be determined, the EA POC will be the Territory Manager.<br>• If the Territory no longer exists or cannot be determined, the EA POC will be the Chief Excise Tax. |
| 295—299 | **SB/SE Campus Cases** —Forward EA requests to the appropriate, designated CL. Depending on the specific Campus (by PBC) there may be different CL EA POCs for the following programs:<br>• ASFR—Automated Substitute for Return<br>• AUR—Automated Underreporter<br>• CORR—Campus Correspondence Examination<br>• EITC—Earned Income Tax Credit<br>The CL will review and approve/deny the initial request. If approved, the CL may personally provide the EA or assign the EA work to another examiner. |
| 3XX | **LB&I Examination Cases**—Forward EA requests to the appropriate, designated EA POC as follows (based upon the PBC):<br>• If the Examination Group Code is known, the EA POC point will be the current Examination/Compliance Manager (Group/Team Manager).<br>• If the Examination group no longer exists or cannot be determined, the EA POC will be the Compliance Territory Manager.<br>• If the Territory no longer exists or cannot be determined, Appeals will contact the Compliance Function Director Field Operations (DFO) for assistance in determining where to route the EA request. The DFO will not decide whether to approve or deny the EA request. |

**4.2.1.9**
**(04-23-2014)**
**New Issues Raised by Counsel**

(1) In general, Counsel will not raise new issues, unless the grounds are substantial and the potential effect on tax liability is material. See *Chief Counsel Directives Manual (CCDM) 35.4.1.2*, Raising New Issues in Tax Court Cases.

**4.2.1.10**
**(04-23-2014)**
**Litigation Affecting the IRS**

(1) The legal work of the IRS is performed by the Office of Chief Counsel. Referrals to the Associate Area Counsel office should be considered in unrelated tax issue matters.

4.2.1.10.1
(04-23-2014)
**Notification to Area
Counsel in State Court
Suits**

(1) The IRS ordinarily will not intervene in litigation in state courts between private litigants even though the purpose of the parties is to obtain a decree or judgment affecting the federal tax liability of one or the other of the parties to the litigation. In those cases arising in state courts between private litigants, to which officials of the IRS have not been made a party but which may have a direct bearing upon the construction of an internal revenue code, or upon the government's title or right to possession to property which has been seized, the IRS may intervene or take other appropriate steps in connection with the proceeding. See IRM 1.2.13.1.8, Policy Statement 4–10 and *CCDM 34.6.2.6*, Intervention.

(2) When pending proceedings come to the attention of examiners, a memorandum report of the proceeding should be made to the Associate Area Counsel office. Area Counsel will determine whether the IRS should intervene or take any steps in connection with the proceeding.

4.2.1.10.2
(04-23-2014)
**Suits for Recovery of
Erroneous Refunds**

(1) Examiners may determine a taxpayer erroneously received a payment of money in the form of a tax refund. IRC 7405 provides that any portion of tax which has been erroneously refunded may be recovered by civil action. IRC 6532(b) provides that a general suit under IRC 7405 may be brought within two years. Begin computing the two-year period from the day after issuance of the refund check or the date the direct deposit cleared. Examiners should contact Chief Counsel, Procedure and Administration, if there is a potential statute problem. If any part of the refund was induced by fraud or misrepresentation of a material fact, suit may be brought at any time within five years from the day after issuance of the refund check or the date the direct deposit cleared. See IRM 5.1.8.7.1.1.2, Unassessable Erroneous Refunds, and IRM 21.4.5.15, Collection Methods for Category D Erroneous Refunds, for additional information.

(2) Assessable erroneous refunds may also be recovered by administrative action within the applicable period of limitation upon assessment and collection. The type of tax involved is determinative of the type of administrative action available. Ordinarily, recovery by suit is utilized because administrative recovery is barred by the statute of limitations on assessment. Any contemplated collection activity based on administrative recovery should be coordinated with Counsel.

(3) The erroneous refund suit is limited to erroneously refunded amounts that exceed the litigating threshold established by the Department of Justice (DOJ).

(4) A recommendation for an erroneous refund suit to the Associate Area Counsel should be accompanied by the administrative file, a copy of any request made to the taxpayer for voluntary payment, a copy of the taxpayer's refusal to make voluntary payment, transcript of account, and a narrative report containing the following information:

   a. The type of tax involved and the amount of money expected to be recovered.
   b. The date the period of limitations on collection will expire.
   c. A brief statement that administrative remedies are impractical or have been exhausted, including the reasons that administrative actions have not been effective.
   d. Facts, evidence, and other matters necessary for development of the case.

e.   Brief personal history of the taxpayer or other facts that might have a bearing on the suit.

f.   Location of the principal executive office, date of incorporation, state of incorporation, and the name and address of the statutory agent for service if the taxpayer is a corporation.

g.   A statement of the exact legal premise for recovery of the erroneous refund.

(5)   After the narrative report and other related documents are prepared, the examiner will submit the entire case file to the group manager for review. If the manager agrees, the case will be referred to Area Counsel using locally established procedures. For example, the manager may request Technical Services (TS) conduct a further technical review and prepare the advisory request, or an area may have an agreement with its Area Counsel and TS to send requests for technical assistance directly to Area Counsel (TS should receive a copy of the request if bypassed).

4.2.1.11
(08-24-2017)
**Assistance to Chief Counsel or U.S. Attorney**

(1)   When examiners are needed to assist Area Counsel or the Office of the United States Attorney, the Area Director will honor requests and assign an examiner to provide the services needed in the litigation of cases.

(2)   Examiners will not discuss the merits of the case with the taxpayer or the taxpayer's attorney when consulting with them or examining pertinent books and records.

(3)   Every effort will be made to comply with a request by the date specified. If is not possible to comply with the request for assistance, the party who initiated the request will be notified.

4.2.1.11.1
(04-23-2014)
**Chief Counsel or U.S. Attorney Requests for Civil Suit Data**

(1)   In suits initiated by or against the IRS, the Disclosure Office or Field Collection-Advisory receives and processes requests from U.S. Attorneys or Chief Counsel for data or documents. Basic data in refund suits, other than suits involving Trust Fund Recovery Penalty assessments, is requested directly from the campus. For additional information, see IRM 25.3.6.1, Types of Litigation Controlled by Advisory.

(2)   A DOJ attorney may request assistance prior to or during a trial resulting in Counsel requesting a supplemental investigation by an examiner. See *CCDM 34.7.1.2.2*, When Supplemental Investigation Is Warranted. The request may be formal or informal. If formal, Counsel will request a supplemental investigation by preparing a memorandum to the Area Director (or comparable level of management) for the area in which the case arose. See *CCDM 34.7.1.2.3*, Procedure for Supplemental Investigation.

(3)   Electronically stored information (ESI) is subject to discovery in litigation if it is relevant to the case. ESI includes, but is not limited to, email and other electronic communications, word processing documents, spreadsheets, electronic calendars, telephone logs, Internet usage files, metadata, voice mail, text messages, and network access information. For additional information regarding ESI, see IRM 25.3.1.7, Preserving Electronically Stored Information in Litigation Cases.

4.2.1.12
(04-23-2014)
**Awards of Litigation and
Administrative Costs in
Tax Cases**

(1)   IRC 7430 provides for the award of costs, attorneys' fees and other expenses to a "prevailing party" in any civil tax action brought in a federal court of the United States, if the taxpayer has met the requirements of IRC 7430(b) and the IRS does not establish that its position was "substantially justified". The position of the IRS will be "substantially justified" if it had a reasonable basis both in law and in fact. A party who meets the requirements of IRC 7430(b) may also qualify as a "prevailing party" if the liability of the taxpayer as determined by a judgment in the proceeding is equal to or less than the liability of the taxpayer which would have been determined if the United States had accepted a qualified offer of the party under IRC 7430(g) and none of the exceptions of IRC 7430(c)(4)(E)(ii) apply. If the qualified offer rule applies, a showing of substantial justification by the United States does not preclude the taxpayer from receiving an award under IRC 7430. This paragraph is not applicable to litigation in state courts.

(2)   The law also applies to taxpayer suits for refunds as well as a wide variety of litigation such as suits to reduce a tax claim to judgment, to enforce a levy, to foreclose a tax lien, to recover an erroneous refund, to establish transferee liability, or to enforce a summons.

(3)   The law provides that an award may be made only if the taxpayer has exhausted all available administrative remedies within the IRS, did not unreasonably protract the proceeding, has substantially prevailed with respect to the amount in controversy or has substantially prevailed with respect to the most significant issue or set of issues presented, and satisfies the net worth requirements. Even if the taxpayer satisfies all of the above requirements, the taxpayer will not be treated as the prevailing party if the United States establishes that the position of the United States in the proceeding was substantially justified, unless the qualified offer rule of IRC 7430(c)(4)(E) applies.

(4)   IRC 7430 also allows a taxpayer who prevails before the IRS in an administrative proceeding to request reimbursement of reasonable administrative costs incurred in defending the taxpayer's position.

    a.   Taxpayers must file their requests with the IRS personnel who have jurisdiction over the tax matter underlying the claim for costs. If the taxpayer does not know who has jurisdiction over the tax matter, the taxpayer may send the request to the IRS office that considered the underlying matter. See Treas. Reg. 301.7430-2(c)(2).

    b.   Administrative cost awards under IRC 7430 are considered by Appeals in non-docketed cases. Therefore, requests for IRC 7430 administrative cost awards in non-docketed cases should be routed to the Appeals office personnel who considered the taxpayer's matter.

    c.   Administrative cost awards under IRC 7430 are considered by Counsel in docketed cases. Therefore, requests for IRC 7430 administrative cost awards in docketed cases should be routed to Counsel.

    d.   Regardless of whether the case is docketed or non-docketed, all requests for IRC 7430 administrative cost awards with respect to an administrative proceeding related to requests for damages for Bankruptcy Code violations should be routed pursuant to the instructions in Treas. Reg. 301.7430-2(c)(2).

(5)   There is no IRS form for requesting an IRC 7430 administrative cost award. Taxpayers and their representatives may file a request for an IRC 7430 administrative cost award by mailing a letter or Form 843, Claim for Refund and

Request for Abatement, to the IRS. If the examiner is unsure if a Form 843 is requesting an IRC 7430 administrative cost award, they should consult with the lead or group manager.

**Note:** Taxpayers must file a motion with the Tax Court consistent with Tax Court Rule 231 for reimbursement of litigation costs.

4.2.1.13
(04-23-2014)
**Statute Expiration Reports**

(1) A statute expiration report is required when the period for assessment or the assessment period that was extended by consent has expired. See IRM 25.6.1.13, Barred Assessments/Barred Statute Cases, for guidance and a list of exceptions to the reporting requirement.

(2) SB/SE area office employees should refer to IRM 25.6.1.13.2.8, Statute Expiration Reporting Responsibilities and Procedures for SB/SE Area Office Involved Directly With or Providing Support for Tax Return Examinations, for guidance.

(3) LB&I field operations and campus employees should refer to IRM 25.6.1.13.2.9, Statute Expiration Reporting Responsibilities and Procedures for LB&I Field Operations and LB&I Campus Employees, for guidance.

(4) W&I campus examination employees should refer to IRM 25.6.1.13.2.7.2, Responsibilities of W&I Examination Operations at Campuses, for guidance.

4.2.1.14
(04-23-2014)
**Taxpayer Notification of Assessment Statute Expiration and Acceptance of Voluntary Payments on Expired Statute Returns When Taxpayer Was Contacted for Examination**

(1) IRM 1.2.13.1.20, Policy Statement 4-65, provides that the IRS shall not make any effort, real or implied, to solicit voluntary payments of a deficiency or taxpayer delinquent account barred by statute. However, payments made by the taxpayer completely of their free will shall be accepted.

(2) Taxpayers must be notified in writing of assessment statute expiration if they were contacted for examination. The appropriate notification letter depends on whether a deficiency can be determined. See IRM 4.2.1.14.1 and IRM 4.2.1.14.2 for additional guidance. The responsibilities for preparing the notification letter, mailing and routing are the following:

    a. The undated notification letter is prepared and signed by the immediate manager of the party responsible for the statute expiration. The notification letter, along with the completed Form 3999, Statute Expiration Report, are forwarded to the Area Director (or comparable level of management) via second-level management.

    b. The Area Director (or comparable level of management) signs the Form 3999 and the letter is date-stamped and mailed by his or her secretary or staff assistant. The date of taxpayer notification is entered in Box 7 of Form 3999.

    c. A copy of the notification letter and the Form 3999 are forwarded back to the manager via second-level management.

    d. The Area Director (or comparable level of management) retains a copy of the Form 3999 and the applicable taxpayer notification letter. The final Form 3999 and a copy of the taxpayer notification letter are sent forward to the Examination Director (or comparable level of management).

(3) In multi-year and related examinations, it is not necessary to separately process the year in which the statute expired. The return can follow the case file through the normal examination process. However, a copy of the final approved Form 3999 must be in the case file.

General Examination Information   4.2.1                              page 23

**4.2.1.14.1**
(04-23-2014)
**Guidelines for Cases
with Expired Statutes
Where the Deficiency
Cannot Be Determined**

(1)   If the examination has not reached the point where the deficiency can be determined, prepare Letter 5318, Deficiency Case Discontinued Due to Statute Expiration-Deficiency Undetermined. Letter 5318 explains that the examination has been discontinued because the statutory period in which the IRS can legally issue a refund or assess a deficiency has expired.

**4.2.1.14.2**
(04-23-2014)
**Guidelines for Cases
with Expired Statutes
Where the Deficiency
Can Be Determined or
there is No Change to
Tax**

(1)   If the deficiency can be determined or the case is a no-change, prepare Letter 5321, Deficiency Case Discontinued Due to Statute Expiration-Deficiency Determined, and an unagreed or no-change examination report.

a.   The report can be a copy of a report previously furnished to the taxpayer, a revision of that report or an initial report prepared after statute expiration. However, adjustments that give the taxpayer a beneficial "double deduction" are prohibited as discussed in 26 CFR 1.161-1, e.g., capitalizing an item previously expensed and allowing a depreciation deduction in subsequent years. IRC 6401(a) provides that the term overpayment includes any payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation applicable. It will generally be possible for the taxpayer to file a timely claim within two years and have any payment refunded. This permits a double deduction if a report includes issues that involve subsequent returns. See IRM 4.10.8.9.6, Unagreed Cases: Reports, for guidance on unagreed reports.

b.   The report should reflect the deficiency or no change to tax resulting from issues that have been developed to a point where the IRS's position is reasonably sound. Letter 5321 advises the taxpayer "... you have no legal obligation to pay the amount shown on the enclosed report."

*Note:*   In order to show the statute has expired and the taxpayer is under no legal obligation to pay the deficiency, include the following statement in the "Other Information" section of the report: "You will not be assessed a deficiency for (year) and are under no obligation to pay the deficiency shown on this examination report."

c.   The purpose of the report is to help the taxpayer in filing subsequent returns and to furnish the amount of the deficiency if the taxpayer elects to make a voluntary payment.

**4.2.1.14.3**
(04-23-2014)
**Guidelines for Cases
with Expired Statutes
Where the Taxpayer
Makes a Voluntary
Payment**

(1)   If the taxpayer inquires about making a voluntary payment, they should be informed the payment will be accepted and can be mailed to the office contacted. The subject of voluntary payments should not be discussed unless the taxpayer inquires about voluntary payments. If the taxpayer makes a voluntary payment:

a.   Prepare and process Form 3244-A, Payment Posting Voucher-Examination, treating the payment as an advance payment. See IRM 4.4.24.2, Form 3244-A, and IRM 4.4.24.6.4, Completion of Form 3244-A for IRC 6603 Deposits.

b.   Prepare Form 3198, Special Handling Notice for Examination Case Processing, following the instructions in IRM 25.6.1.13.2.8.3 (1), Closing Cases Involving Expired Statute Returns, and submit the case for normal processing. Voluntary payments are sent to Excess Collection File.

c.   Prepare and issue Letter 5319, Deficiency Case-Voluntary Payment Received After Statute Expiration, acknowledging receipt of the payment.

**4.2.1.15**
**(04-23-2014)**
**Processing Returns and**
**Accounts of the**
**President and Vice**
**President**

(1) The individual income tax returns for the President and Vice President are subject to mandatory examinations and cannot be surveyed. See IRM 3.28.3.4.3, Mandatory Examination.

(2) Copies of the returns to be examined will be transmitted by the Office of the Deputy Commissioner for Services and Enforcement to the SB/SE, Director, Examination.

(3) The area responsible for the examination will be determined by the SB/SE, Director, Examination or their designee. After a determination is made as to the area having jurisdiction, copies of the returns will be transmitted to the area planning and special programs (PSP) territory manager for control and assignment to the appropriate field group. The transmittal memorandum will contain the following instructions:

    a.   Regardless of discriminant index function (DIF) score, the returns will be examined.
    b.   IRS personnel, including specialists, will be assigned to the examination as appropriate.
    c.   The Examination Area Director, or their designee, will arrange for contact with the authorized representative of the President and or Vice President for the examination.
    d.   All relevant IRM procedures will apply to these returns.

(4) Upon receipt, the group should ensure Project Code 0207, Treasury Mandates, and Source Code 46, have been input for the primary and any prior or subsequent year returns.

(5) The returns must be assigned within 10 business days of receipt in the group. The returns require expeditious handling at all levels to ensure prompt completion of the examinations.

(6) Related returns, including estate and gift tax returns, will be handled in accordance with procedures relating to all taxpayers.

(7) The location of the returns of the President and Vice President will be monitored at all times throughout the examination process.

    a.   The returns should be kept in an orange folder at all times.
    b.   The returns should not be exposed to viewing by other employees.
    c.   The returns should be locked in a secure drawer or cabinet when the examiner is away from the work area.

(8) The returns should be processed similar to the examination of an employee return per IRM 4.2.6, Examination of Employee Returns, with the exception of the following:

    a.   The returns of the President and Vice President are mandatory examinations and cannot be surveyed.
    b.   The returns are subject to mandatory review and must be closed directly to the Employee Audit Reviewer in *Baltimore Technical Services*. The "Other" box in the "Forward to Technical Services" section of Form 3198 must be checked and the examiner should notate "President (or Vice President) Examination; Forward to Baltimore Technical Services." The examining area will notify Baltimore Technical Services when the return is being forwarded.

c.   Baltimore Technical Services will provide Centralized Case Processing (CCP) with advance notice when the return is being closed.

**4.2.1.16**
**(04-23-2014)**
**Blind Trust Income Tax Returns Filed by Presidential Appointees**

(1) Taxpayers who are presidential appointees are permitted to file their individual income tax returns through a trustee of a blind trust. IRM 4.11.55.1.6, Terms, defines a blind trust as a device used to give management of one's investments to an outside person over whom the beneficiary has no control.

(2) Extreme caution should be exercised not to violate a blind trust. All correspondence, inquiries, etc., should be directed to the authorized trustee unless the power of attorney indicates otherwise. No information regarding the source or nature of a blind trust can be disclosed. See IRM 3.28.3.4.1, General Information and Instructions, and Rev. Proc. 2010-11, for additional information.

**4.2.1.17**
**(04-23-2014)**
**Reporting Allegations of Tax Violations Involving Senior Treasury Officials**

(1) Allegations of income tax evasion or allegations concerning the willful failure to file any tax return by a senior Treasury official where prosecution is recommended, where the fraud penalty under IRC 6663 is asserted, or the fraudulent failure to file penalty under IRC 6651(f) is asserted when prosecution is not recommended, will be reported to the Commissioner of Internal Revenue. The Commissioner of Internal Revenue will immediately report the allegations to the Deputy Secretary of Treasury or to the Secretary of Treasury.

**Note:** For a definition of "Treasury Department" or "Senior Treasury Official" see IRM 4.2.1.1.4.

**4.2.1.17.1**
**(04-23-2014)**
**Compliance Examination Procedures**

(1) Upon recommending the assertion of the fraud penalty under IRC 6663 or the fraudulent failure to file penalty under IRC 6651(f) (for a "senior Treasury official") where prosecution has not been recommended by the CI function, the territory manager will provide the Area Director (or comparable level of management) with a memorandum, for forwarding through channels, to the Commissioner of Internal Revenue. The memorandum will contain the following information:

a.   Taxpayer name, residence address, and social security number.
b.   Taxpayer position, now held, which qualifies him or her as a "senior Treasury official."
c.   Brief summary of the findings and the tax years involved.
d.   Additional civil taxes and penalties.

**4.2.1.18**
**(04-23-2014)**
**Reporting Misconduct of IRS Employees or Officials**

(1) All information received concerning misconduct of IRS employees or officials will be reported to TIGTA via the local TIGTA office or by a report to the TIGTA hotline using one of the following methods:

•   Online—complete and submit the online form on TIGTA's web page at: *http://www.treasury.gov/tigta/contact_report.shtml*
•   Email—send a secure email message to the TIGTA Hotline Complaints Unit at *Complaints@tigta.treas.gov*
•   Telephone—1-800-366-4484
•   Fax—202-927-7018
•   Mail—

Treasury Inspector General for Tax Administration

Hotline

PO Box 589

Ben Franklin Station

Washington, DC 20044-0589

**4.2.1.19**
**(04-23-2014)**
**Income Tax Bonds**
**Under IRC 332(b) and**
**IRC 905(c)**

(1)   A bond for the purpose of securing payment of internal revenue taxes is collat-
eral security offered by the taxpayer, representative or a third party, which
satisfies the provisions of IRC 7101 and 26 CFR 301.7101–1.

(2)   If an IRC 332(b) liquidation is not completed within a single year, the recipient
corporation must sign a waiver of the statute of limitations on assessment and
may be required to file a bond.

   a.   The recipient corporation must waive the statute of limitations on assess-
ment for each year that falls wholly or partly in the liquidation period.
Form 952, Consent to Fix Period of Limitation on Assessment of Income
Taxes, is used to extend the period of assessment of all income taxes of
the receiving corporation on the complete liquidation of a subsidiary
under IRC 332. See 26 CFR 1.332-4.
   b.   Under a three year corporate liquidation plan, the recipient corporation
may be required to file a bond in case nonrecognition treatment is later
lost. See 26 CFR 1.332-4(a)(3).

(3)   Under IRC 905(c), in the case of any credit sought for a foreign tax accrued
but not paid, the Area Director or Director of Field Operations, as a condition
precedent to the allowance of a credit, may require a bond from the taxpayer.

   a.   A bond under IRC 905(c) is filed using Form 1117, Income Tax Surety
Bond. Form 1117 will be executed by the taxpayer or representative and
approved by the Area Director (or comparable level of management) on
behalf of the Commissioner of Internal Revenue.
   b.   No period of limitations is established under either IRC 905(c) or IRC
6501(a) for the furnishing of a bond requested pursuant to IRC 905(c) for
a foreign tax credit based on an accrual of a foreign tax. Such bond may
be required from a taxpayer at any time and the foreign tax credit may be
disallowed without regard to any period of limitations if a taxpayer refuses
to furnish the bond. See Rev. Rul. 73-573.

(4)   If IRC 332(b) or IRC 905(c) issues are present, examiners should contact their
Area Counsel for help in determining whether to secure a bond and what the
terms should be. Any bonds secured will be held by Collection Advisory. See
IRM 5.6.1, Collateral Agreements and Security Type Collateral, and IRM 5.6.2,
Maintenance, for additional information.

4.2.1.20
(04-23-2014)
**Property Blocked by
Foreign Funds Control
or Vested by Office of
Foreign Assets Control**

(1)   The Office of Foreign Assets Control (OFAC) of the Department of Treasury administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy, or economy of the United States. OFAC acts under Presidential national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze foreign assets under U.S. jurisdiction.

(2)   On September 24, 2001, the President of the United States issued an executive order that immediately froze U.S. financial assets of and prohibited U.S. transactions with 27 different entities. These entities include terrorist organizations, individual terrorist leaders, a corporation that serves as a front for terrorism, and several nonprofit organizations.

(3)   Treasury Directive (TD) 15-43 (May 3, 2007, reaffirmed September 8, 2011) delegates to the Commissioner of Internal Revenue the authority of the OFAC to investigate and review for compliance with economic sanctions programs persons that the IRS has the authority to examine for compliance with the Bank Secrecy Act provisions in Title 31 (31 U.S.C. 5311 et seq.). The authority to investigate and review includes, but is not limited to, the authority to compel the production of documents and information and otherwise to examine a person's compliance with OFAC-administered economic sanctions. IRM 1.2.43.37, Delegation Order 4-47 (New), addresses the Commissioner of Internal Revenue's authorization under TD 15-43 with respect to conducting reviews for compliance with economic sanctions programs.

(4)   Information regarding blocked property of aliens and foreign corporations may be obtained from records located in OFAC. When such information is requested by area offices, a request detailing the desired information will be forwarded to the SB/SE Area Director.

(5)   Requests should contain clear instructions on what is requested and why. OFAC collects the information for bank regulatory purposes and needs to know who will be the end user of the information and how the information will be used; e.g., by a revenue agent to conduct an examination. Make the request in a letter sent to the address listed on the contacts page of the *Office of Foreign Assets Control* website and include the subject line "Records Request from Federal Agency".

4.2.1.20.1
(04-23-2014)
**Office of Foreign Assets
Control (OFAC)
Information**

(1)   Information obtained from the records of OFAC with respect to blocked accounts will be considered to be of a confidential nature and the source thereof will not be disclosed to taxpayers or their representatives, nor will such information be used in any legal proceeding without written authorization from headquarters.

(2)   OFAC will pay all taxes legally assessed against a former owner whose property has been vested by that office if the tax is attributable to taxable income accruing prior to the date of vesting. This is conditional upon a proper determination of the taxes, where there is no non-vested property from which the taxes may be realized, and there are vested funds available for payment of the taxes.

## 4.2   General Examining Procedures

4.2.1.20.2
(04-23-2014)
**Investigation and
Disposition**

(1) Investigation of returns will be made under the general procedure prescribed for investigation of income tax returns. If the owner has property vested by OFAC, any deficiency in tax liability arising from income realized prior to vesting or from income earned on non-vested property will be asserted under the general prescribed procedures. Preliminary (30-day) letters or statutory notices of deficiency in cases where communication cannot be had with the owner or representative, should be addressed in care of the party or agency having custody of the property. Under war conditions, such address may be treated as the taxpayer's last known address.

(2) If all the property of the owner has been vested, the preliminary (30-day) letter, as well as the statutory notice of deficiency, should be addressed to the owner, in care of Justice Dept., Civil Division, Office of Foreign Assets Control. Visit the *Office of Foreign Assets Control* website for additional information on the OFAC.

(3) If the owner of the property or the party having custody of the property (in situations in which the property has not been vested by OFAC) does not agree to any proposed deficiencies, the parties will have the right to a protest. Any reasonable request for an extension to the 30-day letter should be given favorable consideration, provided the interests of the government are adequately protected.

(4) If Appeals consideration is not requested, the case file will be forwarded to the LB&I, International, PSP program manager. The file will include the audit report and a statement of reasons why an agreement was not reached. In cases where agreements were concluded in vested cases, the file will be noted to assess in the name of the OFAC, for the former owner. Likewise, agreed assessments in non-vested cases will be made in the name of the owner in care of the person, party, or agency having custody of the property.

4.2.1.20.3
(04-23-2014)
**Payor Failure to
Withhold Tax at Source**

(1) In cases of blocked or vested property, where it is determined the payor failed to withhold tax at the source on income, the amount required by statute to be withheld will be asserted against the payor agent. In cases where it is determined that income arising, but not paid, prior to blocking or vesting was turned over to OFAC without withholding, the liability of the payor agent for withholding will be promptly reported to the LB&I, International, PSP program manager for adjustment.

4.2.1.21
(04-23-2014)
**Witness Security
Program**

(1) Federal agencies have always recognized a duty to protect informants and witnesses from threats or possible danger resulting from their assistance to the government by furnishing information or by testifying on behalf of the government in the prosecution of individuals. See IRM 9.5.11.11, Protection and Maintenance of Informants and Witnesses.

(2) The IRS has the authority to temporarily protect an informant or witness until a determination is made by the DOJ that the person qualifies for protection under its Witness Security Program.

(3) The IRS has the authority to approve all confidential expenditures for other protective arrangements undertaken by the IRS for an informant or witness who does not qualify for or is refused protection under the DOJ's Witness Security Program, in an investigation which is not under jurisdiction of the U.S. Attorney's Office.

(4)  Examination personnel who become aware of or have indications that the
     taxpayer assigned may be a person in the Witness Security Program will im-
     mediately suspend the examination. No subsequent attempts by examination
     employees will be made to contact a protected witness. Any necessary contact
     will be coordinated through the special agent in charge (SAC) to the Deputy
     Chief, CI, Attn: Witness Security Coordinator (WSC). A memorandum will be
     prepared for signature of the area director (or comparable level of manage-
     ment) containing the following:

     a.  Any examination action taken to date.
     b.  Facts indicating that the taxpayer is enrolled in the Witness Security
         Program.
     c.  Relevant facts involved in the tax matter, e.g., year under examination,
         information needed, etc.

(5)  Upon receipt by an IRS employee of information alleging a threat or possible
     danger to a past or present government informant or witness or family
     member, as a result of furnishing information or otherwise cooperating with the
     government, the employee will forward the information immediately to the SAC.

4.2.1.22          (1)  The Taxpayer Advocate Service (TAS) helps taxpayers resolve problems with
(05-29-2019)           the IRS and recommends changes to prevent problems through two types of
**Taxpayer Advocate**  advocacy—case-related and systemic. See IRM 13.1.1.2(5), Philosophy of
**Program**            Advocacy. TAS has identified criteria that qualify taxpayers for TAS assistance.
                       TAS Criteria 1-9 reflect situations requiring acceptance of taxpayer cases to be
                       worked by TAS.

                  (2)  TAS refers to Criteria 1-4 as "Economic Burden" cases, Criteria 5-7 as
                       "Systemic Burden" cases, Criteria 8 as "Best Interest of the Taxpayer" cases,
                       and Criteria 9 as "Public Policy" cases. See IRM 13.1.7.2, TAS Case Criteria.

                  (3)  All inquiries meeting TAS criteria should be documented on Form 911, Request
                       for Taxpayer Advocate Service Assistance (And Application for Taxpayer Assis-
                       tance Order), and forwarded to TAS by the most expeditious method available.

                  **Note:** If the taxpayer specifically requests TAS assistance, the case should be
                       referred to the Local Taxpayer Advocate (LTA).

                  (4)  Problems that meet TAS criteria do not necessarily need to be sent to TAS if
                       they can be immediately resolved by the function. All IRS employees should
                       handle potential TAS cases with the taxpayer's best interest in mind. For other
                       taxpayer problem resolutions, see IRM 4.10.1.4.6, Problem Solving.

                  **Note:** If the taxpayer's problem involves an Appeals agreed resolution not being
                       implemented or there was an error involving the implementation, refer the
                       taxpayer to the Appeals customer service number, see IRM 8.1.9.2, AARS
                       Closed Case Referrals, for additional information. An Appeals Account Reso-
                       lution Specialist (AARS) will be able to provide assistance (AARS will not
                       change case decisions or determinations).

                  (5)  If TAS accepts a Form 911 that is related to a taxpayer under examination, it
                       will be forwarded to Examination for review by the responsible group. The

group manager will refer to the *Service Level Agreement* between the National Taxpayer Advocate and the Commissioner of their respective division for procedural guidance.

    a.   Examiners should charge time expended on TAS activities to miscellaneous examination Activity Code 671, Taxpayer Advocate, per IRM 4.9, Examination Technical Time Reporting System. Time charged to this code should only include actual time spent on TAS activities. Examination time should be charged to the case in the usual manner.

    b.   The statute of limitations on assessment may be extended by IRC 7811(d) and should be confirmed in writing with TAS.

**4.2.1.23**
**(05-29-2019)**
**Extensions of the**
**Replacement Period of**
**Involuntarily Converted**
**Property**

(1)  The provisions of IRC 1033, Involuntary Conversions, allow for the deferral of gains realized on the disposition of compulsorily or involuntarily converted property when a taxpayer purchases similar property within the specified replacement period. When the taxpayer is unable to replace the property within the normal replacement period, they can request an extension of the replacement period by writing to the Area Director. The Area Director will forward the taxpayer's request for an extension of time to Technical Services (TS) for consideration. TS will take final action to approve or deny the request as delegated by IRM 1.2.65.4.11, Delegation Order SBSE 1-23-33, Authority to Grant Extensions of Time to Replace Involuntarily Converted Property Under Section 1033 of the Internal Revenue Code. See IRM 4.8.8.6, Involuntarily Converted Property, for additional information.

**Note:** The request is most likely to be received by the Commissioner's Representative in miscellaneous mail forwarded by the Campus.

(2)  If the converted property is owned by several taxpayers under the jurisdiction of different Area Directors' offices, the *TS national coordinator* will conduct the investigation to determine whether reasonable cause exists for not replacing the converted property within the required time period.

**4.2.1.24**
**(05-29-2019)**
**Identification of Bad**
**Payer Information**

(1)  During the preliminary review of IRP data, examiners may determine that information provided by the payer is incorrect.

(2)  Bad payer data is defined as any situation where the payer made an error on the information return of a type that could occur on other information returns. When errors have occurred on **ten or more** of these documents filed by one payer or transmitter, bad payer data exists. Examples of bad payer data include but are not limited to:

- Duplicate filing of Forms W-2 or 1099;
- Corrected Forms W-2 or 1099 not identified as a corrected, thus appearing to duplicate the original filing;
- Misplaced decimals;
- Additional digits added to amounts;
- Nontaxable income reported as taxable; and
- Income reported on the wrong form.

(3)  When examiners determine that bad payer data exists, they will briefly explain the identified error on a copy of the IRP and email it to the *AUR HQ Payer Agent Coordinator*, by selecting the coordinator from the AUR Coordinator Site - "Ogden".

4.2.1.25
(05-29-2019)
**Awards Received by
Informants**

(1)  Informant awards for confidential services are often received from the Bureau of Customs, Federal Bureau of Investigation, Central Intelligence Agency, Secret Service, local Police Departments, Whistleblower program, and other similar sources. It is imperative that the source of income not be revealed in the examiner's report and that the identify of the informant be protected. See IRM 25.2.2.9, Confidentiality of the Whistleblower, for additional guidance on confidentiality.

(2)  If during the examination, unidentified income reported on the return or unreported income is discovered, the taxpayer may explain that the income was received for services of a confidential nature.

- If verification of the source of income is necessary, then verification should be secured through inquiry of the official in charge of making the payment
- If the official is in the same locality as the examiner, then the official will be interviewed personally without any written communication or other report. If a personal interview is not possible, the examiner will prepare for the personal signature of the Area Director, a letter to the official marked "Confidential - To be opened by addressee only" requesting verification of the payment for confidential services.

(3)  If the taxpayer states that the unidentified or unreported income was received for services of a confidential nature, the case will be processed in the usual manner without disclosing the source of the payment.

- In the case file, the description of the income will state "miscellaneous income -source verified."
- Correspondence used to verify the source of income will not remain in the case file but will be maintained in special file, confidential in nature, under the personal control of the Area Director.

4.2.1.26
(04-23-2014)
**Restructuring and
Reform Act of 1998**

(1)  All employees should be familiar with the provisions of the *Restructuring and Reform Act of 1998 (RRA 98)*, including the following:

a.  Section 1105, Prohibition on Executive Branch Influence Over Taxpayer Audits and Other Investigations, superseded by IRC 7217.
b.  Section 1203, Termination of Employment for Misconduct. See Document 11043, RRA '98 Section 1203 All Employee Guide, for additional information.
c.  Section 3466, Application of Certain Fair Debt Collection Procedures, superseded by IRC 6304.

(2)  In addition, the Service has a long-standing commitment to the fair and equitable treatment of all taxpayers set forth in Rev. Proc. 64-22. The pertinent part of Rev. Proc. 64-22 states the law will be administered in a reasonable, practical manner. Issues should be raised by examiners when they have merit and never arbitrarily or for trading purposes.

EXHIBIT D



**Department of the Treasury**
**Internal Revenue Service**
**[Operating Division / Program Name]**

Date:
06/05/2019
Taxpayer ID number (last 4 digits):

Form:

Tax periods:

Person to contact:

Contact telephone number:

Contact fax number:

Employee ID number:

Dear [enter Name]:

Your federal return for the period(s) shown above was selected for examination.

**What you need to do**
Please call me on or before [date]        . You may contact me from [time]        to [time]        at the telephone number provided above.

During our telephone conversation, we'll talk about the items I'll be examining on your return, the types of documents I'll ask you to provide, the examination process, and any concerns or questions you may have. We'll also set the date, time, and agenda for our first meeting.

**Someone may represent you**
You may have someone represent you during any part of this examination. If you decide you want representation, the representative you authorize will need a completed Form(s) 2848, *Power of Attorney and Declaration of Representative,* before we can discuss any of your tax matters.

If you choose to have someone represent you, please provide a completed Form 2848 by our first appointment. You can mail or fax the form to me or have your representative provide it at the first appointment, if you won't be present. You can obtain Form 2848 from our office, from our web site, www.irs.gov or by calling (800) 829-3676.

If you filed a joint return, you and your spouse may attend the examination. If you and/or your spouse choose not to attend with your representative, you must provide completed Form(s) 2848. You should provide a separate Form 2848 for each spouse if you filed jointly even if you use the same representative.

**Your rights as a taxpayer**
We have enclosed Publication 1, *Your Rights as a Taxpayer* and Notice 609, *Privacy Act Notice*. The Declaration of Taxpayer Rights found in Publication 1 discusses general rules and procedures we follow in examinations. It explains what happens before, during, and after an examination, and provides additional sources of information.

**Letter 2205 (Rev. 1-2017)**
Catalog Number 63744P

A video presentation, "Your Guide to an IRS Audit," is available at http://www.irsvideos.gov/audit. The video explains the examination process and will assist you in preparing for your audit.

Thank you for your cooperation and I look forward to hearing from you by [date]                    .

Sincerely,


[Name]
Internal Revenue Agent

Enclosures:
Publication 1
Notice 609

**Letter 2205 (Rev. 1-2017)**
Catalog Number 63744P

# EXHIBIT E



# Your Rights as a Taxpayer

**Publication 1**

This publication explains your rights as a taxpayer and the processes for examination, appeal, collection, and refunds. Also available in Spanish.

## The Taxpayer Bill of Rights

### 1. The Right to Be Informed

Taxpayers have the right to know what they need to do to comply with the tax laws. They are entitled to clear explanations of the laws and IRS procedures in all tax forms, instructions, publications, notices, and correspondence. They have the right to be informed of IRS decisions about their tax accounts and to receive clear explanations of the outcomes.

### 2. The Right to Quality Service

Taxpayers have the right to receive prompt, courteous, and professional assistance in their dealings with the IRS, to be spoken to in a way they can easily understand, to receive clear and easily understandable communications from the IRS, and to speak to a supervisor about inadequate service.

### 3. The Right to Pay No More than the Correct Amount of Tax

Taxpayers have the right to pay only the amount of tax legally due, including interest and penalties, and to have the IRS apply all tax payments properly.

### 4. The Right to Challenge the IRS's Position and Be Heard

Taxpayers have the right to raise objections and provide additional documentation in response to formal IRS actions or proposed actions, to expect that the IRS will consider their timely objections and documentation promptly and fairly, and to receive a response if the IRS does not agree with their position.

### 5. The Right to Appeal an IRS Decision in an Independent Forum

Taxpayers are entitled to a fair and impartial administrative appeal of most IRS decisions, including many penalties, and have the right to receive a written response regarding the Office of Appeals' decision. Taxpayers generally have the right to take their cases to court.

### 6. The Right to Finality

Taxpayers have the right to know the maximum amount of time they have to challenge the IRS's position as well as the maximum amount of time the IRS has to audit a particular tax year or collect a tax debt. Taxpayers have the right to know when the IRS has finished an audit.

### 7. The Right to Privacy

Taxpayers have the right to expect that any IRS inquiry, examination, or enforcement action will comply with the law and be no more intrusive than necessary, and will respect all due process rights, including search and seizure protections, and will provide, where applicable, a collection due process hearing.

### 8. The Right to Confidentiality

Taxpayers have the right to expect that any information they provide to the IRS will not be disclosed unless authorized by the taxpayer or by law. Taxpayers have the right to expect appropriate action will be taken against employees, return preparers, and others who wrongfully use or disclose taxpayer return information.

### 9. The Right to Retain Representation

Taxpayers have the right to retain an authorized representative of their choice to represent them in their dealings with the IRS. Taxpayers have the right to seek assistance from a Low Income Taxpayer Clinic if they cannot afford representation.

### 10. The Right to a Fair and Just Tax System

Taxpayers have the right to expect the tax system to consider facts and circumstances that might affect their underlying liabilities, ability to pay, or ability to provide information timely. Taxpayers have the right to receive assistance from the Taxpayer Advocate Service if they are experiencing financial difficulty or if the IRS has not resolved their tax issues properly and timely through its normal channels.

**The IRS Mission** | Provide America's taxpayers top-quality service by helping them understand and meet their tax responsibilities and enforce the law with integrity and fairness to all.

Publication 1  (Rev. 9-2017)  Catalog Number 64731W  Department of the Treasury  **Internal Revenue Service**  www.irs.gov

# Examinations, Appeals, Collections, and Refunds

## Examinations (Audits)

We accept most taxpayers' returns as filed. If we inquire about your return or select it for examination, it does not suggest that you are dishonest. The inquiry or examination may or may not result in more tax. We may close your case without change; or, you may receive a refund.

The process of selecting a return for examination usually begins in one of two ways. First, we use computer programs to identify returns that may have incorrect amounts. These programs may be based on information returns, such as Forms 1099 and W-2, on studies of past examinations, or on certain issues identified by compliance projects. Second, we use information from outside sources that indicates that a return may have incorrect amounts. These sources may include newspapers, public records, and individuals. If we determine that the information is accurate and reliable, we may use it to select a return for examination.

Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund, explains the rules and procedures that we follow in examinations. The following sections give an overview of how we conduct examinations.

## By Mail

We handle many examinations and inquiries by mail. We will send you a letter with either a request for more information or a reason why we believe a change to your return may be needed. You can respond by mail or you can request a personal interview with an examiner. If you mail us the requested information or provide an explanation, we may or may not agree with you, and we will explain the reasons for any changes. Please do not hesitate to write to us about anything you do not understand.

## By Interview

If we notify you that we will conduct your examination through a personal interview, or you request such an interview, you have the right to ask that the examination take place at a reasonable time and place that is convenient for both you and the IRS. If our examiner proposes any changes to your return, he or she will explain the reasons for the changes. If you do not agree with these changes, you can meet with the examiner's supervisor.

## Repeat Examinations

If we examined your return for the same items in either of the 2 previous years and proposed no change to your tax liability, please contact us as soon as possible so we can see if we should discontinue the examination.

## Appeals

If you do not agree with the examiner's proposed changes, you can appeal them to the Appeals Office of the IRS. Most differences can be settled without expensive and time-consuming court trials. Your appeal rights are explained in detail in both Publication 5, Your Appeal Rights and How To Prepare a Protest If You Don't Agree, and Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund.

If you do not wish to use the Appeals Office or disagree with its findings, you may be able to take your case to the U.S. Tax Court, U.S. Court of Federal Claims, or the U.S. District Court where you live. If you take your case to court, the IRS will have the burden of proving certain facts if you kept adequate records to show your tax liability, cooperated with the IRS, and meet certain other conditions. If the court agrees with you on most issues in your case and finds that our position was largely unjustified, you may be able to recover some of your administrative and litigation costs. You will not be eligible to recover these costs unless you tried to resolve your case administratively, including going through the appeals system, and you gave us the information necessary to resolve the case.

## Collections

Publication 594, The IRS Collection Process, explains your rights and responsibilities regarding payment of federal taxes. It describes:

- What to do when you owe taxes. It describes what to do if you get a tax bill and what to do if you think your bill is wrong. It also covers making installment payments, delaying collection action, and submitting an offer in compromise.
- IRS collection actions. It covers liens, releasing a lien, levies, releasing a levy, seizures and sales, and release of property.
- IRS certification to the State Department of a seriously delinquent tax debt, which will generally result in denial of a passport application and may lead to revocation of a passport.

Your collection appeal rights are explained in detail in Publication 1660, Collection Appeal Rights.

## Innocent Spouse Relief

Generally, both you and your spouse are each responsible for paying the full amount of tax, interest, and penalties due on your joint return. However, if you qualify for innocent spouse relief, you may be relieved of part or all of the joint liability. To request relief, you must file Form 8857, Request for Innocent Spouse Relief. For more information on innocent spouse relief, see Publication 971, Innocent Spouse Relief, and Form 8857.

## Potential Third Party Contacts

Generally, the IRS will deal directly with you or your duly authorized representative. However, we sometimes talk with other persons if we need information that you have been unable to provide, or to verify information we have received. If we do contact other persons, such as a neighbor, bank, employer, or employees, we will generally need to tell them limited information, such as your name. The law prohibits us from disclosing any more information than is necessary to obtain or verify the information we are seeking. Our need to contact other persons may continue as long as there is activity in your case. If we do contact other persons, you have a right to request a list of those contacted. Your request can be made by telephone, in writing, or during a personal interview.

## Refunds

You may file a claim for refund if you think you paid too much tax. You must generally file the claim within 3 years from the date you filed your original return or 2 years from the date you paid the tax, whichever is later. The law generally provides for interest on your refund if it is not paid within 45 days of the date you filed your return or claim for refund. Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund, has more information on refunds.

If you were due a refund but you did not file a return, you generally must file your return within 3 years from the date the return was due (including extensions) to get that refund.

## Taxpayer Advocate Service

TAS is an *independent* organization within the IRS that can help protect your taxpayer rights. We can offer you help if your tax problem is causing a hardship, or you've tried but haven't been able to resolve your problem with the IRS. If you qualify for our assistance, which is always free, we will do everything possible to help you. Visit *www.taxpayeradvocate.irs.gov* or call 1-877-777-4778.

## Tax Information

The IRS provides the following sources for forms, publications, and additional information.

- *Tax Questions:* 1-800-829-1040 (1-800-829-4059 for TTY/TDD)
- *Forms and Publications:* 1-800-829-3676 (1-800-829-4059 for TTY/TDD)
- *Internet: www.irs.gov*
- *Small Business Ombudsman:* A small business entity can participate in the regulatory process and comment on enforcement actions of the IRS by calling 1-888-REG-FAIR.
- *Treasury Inspector General for Tax Administration:* You can confidentially report misconduct, waste, fraud, or abuse by an IRS employee by calling 1-800-366-4484 (1-800-877-8339 for TTY/TDD). You can remain anonymous.

EXHIBIT F

| Form **4564**<br>(Rev. September 2006) | Department of the Treasury — Internal Revenue Service<br>## Information Document Request | Request Number |
|---|---|---|

| To: *(Name of Taxpayer and Company Division or Branch)* | Subject | |
|---|---|---|
| | SAIN number | Submitted to: |
| | Dates of Previous Requests *(mmddyyyy)* | |
| *Please return Part 2 with listed documents to requester identified below* | | |

Description of documents requested

Information Due By _____   At Next Appointment ☐   Mail in ☐

| **From:** | Name and Title of Requester | Employee ID number | Date *(mmddyyyy)* |
|---|---|---|---|
| | Office Location | | Telephone Number<br>(    ) |

| Form **4564**<br>(Rev. September 2006) | Department of the Treasury — Internal Revenue Service<br>## Information Document Request | Request Number |
|---|---|---|

| To: *(Name of Taxpayer and Company Division or Branch)* | Subject |
|---|---|
| | SAIN number | Submitted to: |
| *Please return Part 2 with listed documents to requester identified below* | Dates of Previous Requests *(mmddyyyy)* |

Description of documents requested

Information Due By _____   At Next Appointment ☐   Mail in ☐

| **From:** | Name and Title of Requester | Employee ID number | Date *(mmddyyyy)* |
|---|---|---|---|
| | Office Location | | Telephone Number<br>(   ) |

| Form **4564**<br>(Rev. September 2006) | Department of the Treasury — Internal Revenue Service<br># Information Document Request | Request Number |
|---|---|---|

| To: *(Name of Taxpayer and Company Division or Branch)* | Subject |
|---|---|
| | SAIN number | Submitted to: |
| *Please return Part 2 with listed documents to requester identified below* | Dates of Previous Requests *(mmddyyyy)* |

Description of documents requested

Information Due By_____   At Next Appointment ☐   Mail in ☐

**From:**

Name and Title of Requester | Employee ID number | Date *(mmddyyyy)*

Office Location | Telephone Number<br>(    )

EXHIBIT G

Page _____ of _____

| Form **4549** (January 2019) | Department of the Treasury - Internal Revenue Service **Report of Income Tax Examination Changes** |
|---|---|

| Name and address of taxpayer | | Taxpayer identification number | Return form number |
|---|---|---|---|
| | | Person with whom examination changes were discussed. | Name and title |

| | Period Ended | Period Ended | Period Ended |
|---|---|---|---|
| 1. **Adjustments to income** | | | |
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| 2. **Total adjustments** | | | |
| 3. Taxable income per return or as previously adjusted | | | |
| 4. **Corrected taxable income** | | | |
|     Tax method | | | |
|     Filing status | | | |
| 5. **Tax** | | | |
| 6. **Additional taxes/Alternative minimum tax** | | | |
| 7. Corrected tax liability | | | |
| 8. **Less**    a. | | | |
|    **credits**   b. | | | |
|          c. | | | |
|          d. | | | |
| 9. **Balance** *(line 7 less lines 8a through 8d)* | | | |
| 10. Plus    a. | | | |
|    other    b. | | | |
|    taxes    c. | | | |
|          d. | | | |
| 11. Total corrected tax liability *(line 9 plus lines 10a through 10d)* | | | |
| 12. Total tax shown on return or as previously adjusted | | | |
| 13. Adjustments to:   a. | | | |
|               b. | | | |
|               c. | | | |
| 14. Deficiency-Increase in tax or *(overassessment-decrease in tax) (line 11 less line 12 adjusted by lines 13a through 13c)* | | | |
| 15. Adjustments to prepayment credits - increase *(decrease)* | | | |
| 16. **Balance due or** *(overpayment)* - *(line 14 adjusted by line 15) (excluding interest and penalties)* | | | |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the required tax. The IRS may order backup withholding (withholding of a percentage of your dividend and/or interest payments) if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

Page _____ of _____

| Name of taxpayer | | Taxpayer identification number | Return form number |
|---|---|---|---|
| | | Period Ended | Period Ended | Period Ended |

| | Period Ended | Period Ended | Period Ended |
|---|---|---|---|
| 17.  **Penalties, additions to tax, and additional amounts -- IRC sections** | | | |
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| 18.  **Total penalties, additions to tax, and additional amounts** | | | |
| 19.  **Summary of taxes, penalties and interest** | | | |
| a.  Balance due or *(overpayment)* taxes - *(line 16, page 1)* | | | |
| b.  Penalties and additions *(line 18)* - computed to | | | |
| c.  Interest* *(IRC § 6601)* - estimated and computed to | | | |
| d.  Amount due or *(refund) - (sum of lines a, b, and c)* | | | |

*Interest, as provided by law, will be charged on any unpaid amount until it is paid in full.

Other information

| Examiner's name | Employee ID | Office |
|---|---|---|

| Examiner's signature | | Date |
|---|---|---|

Consent to Assessment and Collection- I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law. It is understood that this report is subject to acceptance by the Area Director, Area Manager, Specialty Tax Program Chief, or Director of Field Operations.

**Note: If a joint return was filed, BOTH taxpayers must sign**

| Signature of taxpayer | Date | Signature of taxpayer | Date |
|---|---|---|---|

| By | Title | Date |
|---|---|---|

EXHIBIT H

| Form **5701** (April 2019) | Department of the Treasury - Internal Revenue Service **Notice of Proposed Adjustment** |
|---|---|

| Name of taxpayer | Issue number |
|---|---|

| Name and title of person to whom delivered | Date |
|---|---|

| Entity for this proposed adjustment | Response due |
|---|---|

Based on the information we now have available and our discussions with you, we believe the proposed adjustment listed below should be included in the revenue agent's report. However, if you have additional information that would alter or reverse this proposal, please furnish this information as soon as possible.

| Years | Amount | Account or Return Line | SAIN Number | UIL Code |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Reasons for proposed adjustment *(If the explanation of the adjustment will be longer than the space provided below, the entire explanation should begin on Form 886-A (explanation of items)*

Taxpayer's/Representative's action

☐ Agreed   ☐ Agreed in part   ☐ Disagreed   ☐ Have additional information; will submit by _____

| Taxpayer's/Representative's signature | Date |
|---|---|

If disagreed in part or in full - check here for consideration of Fast Track Settlement

☐ Taxpayer   ☐ IRS

| Team Manager | Date |
|---|---|

# EXHIBIT I



**Department of the Treasury**
**Internal Revenue Service**
**[Operating Division / Program Name]**

Date:
 09/05/2019

Taxpayer ID number:

Form:

Person to contact:

Employee ID number:

Contact telephone number:

Contact fax number:

Last day to file petition with US tax court:

**Certified Mail**    [Certified Mailing Number]

Dear [Name]:

### Notice of Deficiency

Tax Year Ended:

Deficiency:
Increase in tax

**Why we are sending you this letter**
We determined that you owe additional tax or other amounts, or both, for the tax years above. This letter is your
**Notice of Deficiency** as we're required by law to send you. The enclosed Form 4549-A, Income Tax
Examination Changes (Unagreed and Excepted Agreed), or Form 5278, Statement - Income Tax Changes,
shows how we figured the deficiency.

**If you agree with the Notice of Deficiency**
If you agree with our determination, sign the enclosed Form 4089-B, Notice of Deficiency  - Waiver, and return
it to us at the address on the top of the first page of this letter. Sending this now can help limit the accumulation
of interest.

**If you disagree with the Notice of Deficiency**
If you want to contest our final determination, you have 90 days from the date of this letter (150 days if
addressed to you outside of the United States) to file a petition with the United States Tax Court.

**Letter 531 (Rev. 1-2019)**
Catalog Number 40223L

**How to file your petition**

You can get a petition form and the rules for filing from the Tax Court's website at www.ustaxcourt.gov, by contacting the Office of the Clerk at the address below, or by calling 202-521-0700. Send your completed petition form, a copy of this letter, and copies of all statements and schedules you received with this letter to the address below.

United States Tax Court
400 Second Street, NW
Washington, DC 20217

If this notice shows more than one tax year, you can file one petition form showing all of the years you disagree with.

The Tax Court has a simplified procedure for small tax cases. If you plan to file a petition for multiple tax years and the amount in dispute for any one or more of the tax years exceeds $50,000 (including penalties), you can't use this simplified procedure. If you use this simplified procedure, you can't appeal the Tax Court's decision. You can get information about the simplified procedure from www.ustaxcourt.gov or by writing to the court at the address above.

If you recently sought bankruptcy relief by filing a petition in bankruptcy court, see enclosed Notice 1421, How Bankruptcy Affects Your Right to File a Petition in Tax Court in Response to a Notice of Deficiency.

You can represent yourself before the Tax Court, or anyone allowed to practice before the Tax Court can represent you.

**Time limits on filing a petition**
**The court can't consider your case if you file the petition late.**

- A petition is considered timely filed if the Tax Court receives it within
  - 90 days from the date this letter was mailed to you, or
  - 150 days from the date this letter was mailed to you if this letter is addressed to you outside of the United States.
- A petition is also generally considered timely if the United States Postal Service postmark date is within the 90 or 150-day period and the envelope containing the petition is properly addressed with the correct postage. The postmark rule doesn't apply if mailed from a foreign country.
- A petition is also generally considered timely if the date marked by a designated private delivery service is within the 90 or 150-day period. Not all services offered by private delivery companies are designated delivery services. For a list of designated delivery services available for domestic and international mailings, see Notice 2016-30, which is available on the IRS website at www.irs.gov/irb/2016-18_IRB/ar07.html. Please note that the list of approved delivery companies may be subject to change.
- The time you have to file a petition with the Tax Court is set by law and can't be extended or suspended, even for reasonable cause. We can't change the allowable time for filing a petition with the Tax Court.

**If you are married**

We're required to send a notice to each spouse. If both want to petition the Tax Court, **both** must sign and file the petition or **each** must file a separate, signed petition. If only one spouse timely petitions the Tax Court, the deficiency may be assessed against the non-petitioning spouse. If only one spouse is in bankruptcy at the time we issued this letter or files a bankruptcy petition after the date of this letter, the bankruptcy automatic stay does not prevent the spouse who is not in bankruptcy from filing a petition with the Tax Court. The bankruptcy automatic stay of the spouse seeking bankruptcy relief doesn't extend the time for filing a petition in Tax Court for the spouse who is not in bankruptcy.

**If we don't hear from you**
If you decide not to sign and return Form 4089-B, and you don't file a timely petition with the Tax Court, we'll assess and bill you for the deficiency (and applicable penalties and interest) after 90 days from the date of this letter (150 days if this letter is addressed to you outside the United States).

**Note:** If you are a C corporation, we're required by Internal Revenue Code Section 6621(c) to charge an interest rate two percent higher than the normal rate on corporate underpayments in excess of $100,000.

**If you need more assistance**
If you have questions, you can contact the person at the top of this letter. If you write, include a copy of this letter, your telephone number, and the best hours to reach you. Keep the original letter for your records.

**Information about the IRS Taxpayer Advocate Service**
The IRS office whose phone number appears at the top of the notice can best address and access your tax information and help get you answers. However, you may be eligible for free help from the Taxpayer Advocate Service (TAS) if you can't resolve your tax problem with the IRS, or you believe an IRS procedure just isn't working as it should. TAS is an independent organization within the IRS that helps taxpayers and protects taxpayer rights. Contact your local Taxpayer Advocate Office at:


Or call TAS at 877-777-4778. For more information about TAS and your rights under the Taxpayer Bill of Rights, go to taxpayeradvocate.irs.gov. Do not send your Tax Court petition to the TAS address listed above. Use the Tax Court address provided earlier in the letter. Contacting TAS does not extend the time to file a petition.

**Information about Low Income Taxpayer Clinics and other resources**
Assistance can be obtained from individuals and organizations that are independent from the IRS. The Directory of Federal Tax Return Preparers with credentials recognized by the IRS can be found at http://irs.treasury.gov/rpo/rpo.jsf. IRS Publication 4134 provides a listing of Low Income Taxpayer Clinics (LITCs) and is available at www.irs.gov. Also, see the LITC page at www.taxpayeradvocate.irs.gov/litcmap. Assistance may also be available from a referral system operated by a state bar association, a state or local society of accountants or enrolled agents or another nonprofit tax professional organization. The decision to obtain assistance from any of these individuals and organizations will not result in the IRS giving preferential treatment in the handling of the issue, dispute or problem. You don't need to seek assistance to contact us. We will be pleased to deal with you directly and help you resolve your situation.

Sincerely,


[Name]
Commissioner
By


[Name]
[Title]


Enclosures:
[Form 4549-A or Form 5278]
Form 4089-B
Notice 1421

**Letter 531 (Rev. 1-2019)**
Catalog Number 40223L