Duane Morley Cox, Pro Se
1199 Cliffside Dr.
Logan, Utah 84321
Ph: (801) 755-3578



**RECEIVED**

SEP 09 2019

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

| | | |
|---|---|---|
| Committee On Ways And Means | + | Civil Action No. 1:19-cv-1974 (TNM) |
| United States House Of Representatives | + | |
| | + | |
| Plaintiff | + | |
| | + | Amicus Brief |
| United States Department Of The | + | |
| Treasury et. al. | + | |
| | + | |
| Defendants | + | |
| | + | |
| Donald J. Trump, et. al. | + | |
| | + | Judge: Trevor N. McFadden |
| Defendants | + | |

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

**Comes Now:** Duane Morley Cox, Pro Se, as allowed by the Order of this Court, files this Amicus Brief, certifying that his Brief is not known to duplicate arguments in Defendant's Brief(s).

### ARGUMENT

1. When the Ways and Means Committee filed its complaint, it omitted from its Jurisdictional Statement citation to the precedent of **Nixon v. Fitzgerald** which states in relevant part:

> "Although there is no blanket recognition of absolute immunity for all federal executive officials ... The President's absolute immunity is a functionally mandated incident of his unique office rooted in the constitutional tradition of the separation of powers and supported by the Nation's history. Because of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government. While the separation of powers doctrine does not bar every exercise of jurisdiction over the President, <u>a court, before exercising</u>

<u>jurisdiction, **must** balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch</u>." **Nixon v. Fitzgerald, 457 U.S. 731 @ 732 [Emphasis Added]**

2.   Although unusual, in this precedent, the U.S. Supreme Court makes clear that before a court accepts Jurisdiction that a "Constitutional Weight Of Interest" test must be performed, which Plaintiff's failed to do even though it is solely Plaintiff's burden.

3.   This Court has held:  The requirement that a federal court assure itself of its jurisdiction to hear a case before proceeding to the merits is "inflexible and without exception." Steel Co v. Citizens for a Better Env't, 523 U.S. 83, 95 (1998) (quotation omitted)" **Memorandum and Order, 29 Aug 2019, Pg 4**

## THE SUPREME COURT HOLDING IN <u>NIXON V. FITZGERALD</u> IS APPLICABLE

4.   Plainly, Plaintiff Committee, with this complaint seeks to achieve indirectly through third parties which it cannot do directly, obtain access to President Trump's tax returns and associated tax records.  But the result would be the same as if they had obtained the tax returns and tax information directly from the President himself.  The Committee would then subject these records to intense scrutiny.  But these returns are voluminous and are undoubtedly filled with complex loan arrangements, financing efforts, complex construction contracts, all performed under domestic and foreign statutes and rules, and complex accounting standards - which have already been audited by the IRS and other involved agencies.  Complexities which require expert accounting and legal analysis to

Pg 2

understand in the face of existing laws and regulations related there-to.

5.    And it is reasonable to conclude that the Plaintiff Committee and its members will have trouble "connecting the dots" between the returns of Trump and his many business entities which are involved and inter-connected. And thus it is reasonable to conclude that the Committee and its members will have hundreds if not thousands of questions about perfectly legal activities which have already been approved by the IRS through its audit of the President's returns.

6.    But even if the Plaintiff actually had a legitimate legislative purpose, the Constitutional weight of the benefits from obtaining President Trump's tax returns is insufficient to accept the risk of the dangers that may result from the intrusion of the evaluation of the tax returns on the authority and function of the President and Presidency.

7.    And **Nixon v. Fitzgerald** is applicable because no matter how the tax returns and related information comes into the possession of Plaintiff Committee, it will be the President who was at the center of his business activities which were taxed who must respond directly or indirectly to any and all questions propounded whether from the Committee itself, its members or the media following the Committee actions. Therefore this Complaint is in fact directed at the President and must be accorded the critical examination specified by the U.S. Supreme Court in **Nixon v. Fitzgerald**.

### THE CONSTITUTIONAL WEIGHT ANALYSIS

8.    This analysis must be conducted under the presumption that Plaintiff

committee has a valid legislative purpose, and is conducted on a relative scale of zero (0) to ten (10) with ten (10) being the highest Constitutional Weight.

8a. **Estimating The Constitutional Weight Of The Legislative Benefit Of The Examination Of The Presidents Tax Returns**

**First**, what seems to be driving the quest to examine Trump's tax returns are criticisms by third parties as summarized in **Complaint, Pgs 18-20**, such as "taking a questionable $916 million deduction" **Id., Pg 18.** But such matters are not for the Congress to investigate.

> "Congress's investigatory power is not unbounded. The Constitution's very structure puts limits on it. For instance, the power to investigate may not "extend to an area in which Congress is forbidden to legislate." *Quinn,* 349 U.S. at 161. Nor may Congress "trench upon Executive or judicial prerogatives." *McSurley v. McClellan,* 521 F.2d 1024, 1038 (D.C. Cir 1976). A prime example of such overreach is exercising the powers of law enforcement; those powers are assigned under our constitution to the Executive and the Judiciary." *Quinn,* 349 U.S. at 161" **Opinion, Trump v. Mazars, , Pg 17**

Further, Congress has enacted **18 USC Section 4 which states:**

> "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States shall be fined under this title or imprisoned not more than three years, or both." **18 USC, Section 4**

By enacting this statute, Congress made it a federal crime for an individual knowing of the commission of a felony to fail to inform the proper authority, which by exclusion certainly is not Congress. This because Congress is not authorized to "Investigate Crimes". And members of Congress are bound to comply with this statute:

> "Legislators ought not to stand above the law they create but ought generally to be bound by it as are ordinary persons. T. Jefferson, Manual of Parliamentary Practice, S. Doc. No. 92-1, P. 437 (1971)" **Gravel v. United States, 408 U.S. 606, 615**

So the proper action for the members of the Ways and Means Committee who have seen the evidence about the concerns which drive this Complaint and believe that crimes may have been committed is to give notice to the appropriate entity, in this case being the IRS, not to conduct its own investigation. And the IRS encourages such conduct should individuals file a Form 211 regarding their concerns by providing rewards of up to I think it is 25% of the taxes collected.

Thus, it appears to Amicus that there is little if any Legislative benefit for Plaintiff to conduct its own investigation.

**Second**, it is appropriate to examine the two categories of returns which Plaintiff seeks.

The first category are returns from before Trump was President, and the second category are returns filed after he became President which should be benign because the President gave up management of his business and companies when he became President - which serves to make sure he cannot profit from his administrative affairs while also assuring that he will devote his full time and efforts to his Presidential duties.

So Amicus argues it is "over-reach" for the Plaintiff to demand multiple years of tax returns from before Trump became President for the purposes of judging if the Taxation system is working properly. He was a private citizen at that

time, and the IRS regulations applied to him and his business entities just like millions of other individuals and companies.  Thus where Plaintiff has no problems obtaining tax returns frm the IRS and Treasury Department for individuals and businesses pursuant to Section 6103(f), bit it is encountering issues relating to obtaining the President's returns, why not simply obtain returns from other owners of complex business empires.  Seems kind of simple to Amicas especially when there are Constitutional overtones to investigating Trump's returns when he is precluded at this time from participating in his business and business entities which are now being run by others.

But of course, "over-reach" seems to be a common affliction of Congress and this Committee.  Take for instance the new legislation the Plaintiff described, especially H.R. 1028 which would require all Presidential Candidates to provide the Office of Government Ethics with individual tax return information for 19 years.  Imagine if you can get your mind around it.  Today there are 24 Democratic Candidates and 2 Republican Candidates.  Really!  Really!  Plaintiff thinks it appropriate to require 26 candidates to provide the Ethics Office with 19 years of tax returns and related information.  What in the world for???  How many new employees would be required to examine such a pile of records???  Think of poor Candidate Buttigieg producing tax records from when he was in High School.

And Plaintiff makes no effort to explain what is to be learned from Trump's tax returns filed during his Presidency.  He manages nothing about his business interests as they are no longer under his control, so nothing can be imputed against

him, and they certainly don't represent returns of any meaningful value to the taxation of the general population.

Again there is little to no meaningful Legislative benefit to examine the tax returns for either period before or after Trump became President.

**Third**, it is meaningful to contemplate and contrast the importance of this legislative action as compared to other legislative tasks which we all know need to be addressed, but which aren't being addressed by Congress.  Many comparisons could be made, but it is sufficient to cite the following in order to make the necessary point.

In the instant case, Plaintiff is spending valuable resources to obtain access to the President's tax returns even through the IRS/Treasury system seems to be working just fine.  It has been developed over the last 100 years at least.  Rules, regulations, depreciation guidelines, donation limitations, Tax Court dispute resolutions - all have combined to create a robust system which seems to work just fine.  And the Plaintiff Committee seems to be spending a great deal of time trying to enact new laws pertaining to Presidential tax returns which appear to be Unconstitutional on their face.  All while seemingly ignoring more important issues under their jurisdiction including but not limited to helping Trump use Tariff's in negotiating trade deals, approving the reciprocal trade agreements that President Trump has already negotiated, and working to reduce the bonded debt of the United States - which are all tasks under the jurisdiction of Plaintiff Committee.

And on a more global scale, the issue of the Presidents taxes and the

legislative benefit to be derived therefrom pales in comparison to the border crisis which the House does nothing about, the pending approval of the trade agreements which Trump has negotiated that await Plaintiff Committee action, the growing debt and bonded debt that our future generations must face, badly needed infrastructure legislation, the growing national homeless problem, and so much more. All while Congress clogs the Courts with litigation to get Trump's financial records by the Oversight Committee, to get financial bank records from various banking institutions, and now to get Trump's tax returns by Plaintiff Committee. Not to mention the growing list of lawsuits related to Trump's efforts to improve the immigration system with whatever administrative tools he can find while Congress refuses to provide the necessary funding or statutory changes.

Again the legislative benefit from obtaining and examining Trump's tax returns as compared to more pressing issues is negligible.

**Fourth**, so in Summary, it seems to Amicus that the overall Constitutional weight that should be given to legislative interest to be served by the Subpoena and this Complaint by Plaintiff Committee is somewhere between de-minimis and zero.

8b.     **Estimating The Constitutional Weight Of The Dangers Of Intrusion On The Authority And Functions Of The Executive Branch (President/Presidency) Resulting From The Examination Of The Presidents Tax Returns**

**First**, it is important to contemplate the position this Complaint puts the President in. He has given up control of his companies and foundation, in order to be the President of the United States.

During the tax years before he was sworn in, Trump the workaholic juggled the demands of his individual entities, getting financing for domestic and foreign projects, locating and purchasing property, contracting multi-million dollar projects, working with a large in-house staff and outside specialists, CPA's and Attorney's as they devised and executed plans involving foreign and domestic suppliers, currency exchanges, different local rules depending upon location and country, occasionally a Bankruptcy, charitable donations, conservation projects, personal financial issues and a myriad of other issues. Thus the question would be, who provides the response to the hundreds to thousands of questions and issues which will surely be raised by Plaintiff and its members and staff? **Not the President for by law he is bared from participating in his companies while President. Not Mnuchin or Rettig for they are simply the ones being sued to obtain the tax returns and information. But if President Trump, who was the center of all business transactions associated with these returns, can't respond, how does he obtain due process? News Flash - He Can't!**

Amicus his wife and millions of other voters elected President Trump to be a full time President who would keep his promises made to the electorate, not to spend his time trying to explain past tax returns to Committee members who may not be able to grasp the connectivity of the activities involved with his projects, and complex financing and accounting activities and decisions which have for the most part already been audited and accepted by the IRS and the Department of the Treasury.

Members of the Plaintiff Committee enjoy immunity from similar lawsuits which intrude on their precious duties as elected Representatives of the people.

> "The court also was cognizant of the fact that the Constitution's Speech or Debate Clause forecloses Plaintiff's from compelling discovery form the Oversight Committee, its Members, or staff. See *Eastland,* 421 U.S. at 503 (stating that "a private civil action, whether for injunction or damages, creates a distribution and forces Members to divert their time, energy and attention from their legislative tasks to defend the litigation"); *see also Gravel v. United States,* 408 U.S. 606, 616-22 (1972)" **Opinion, Trump v. Oversight Committee, Pg 13-14**

In reality, the intent of this clause in the Constitution was to help maintain a proper separation of powers:

> "To prevent a President or other officials of the Executive Branch from having members [of Congress] arrested on a pretext to prevent them from voting a certain way or otherwise taking actions with which the President might disagree." **Wikipedia**

So, where Congress is protected from improper conduct by the Executive Branch, where is the protection of the Executive Branch from abusive conduct by Congress and/or Congressmen? The answer - in the U.S. Supreme Court decision of **Nixon v. Fitzgerald** as cited below:

> "Although there is no blanket recognition of absolute immunity for all federal executive officials from liability for civil damages resulting from constitutional violations, certain officials – such as judges and prosecutors – because of the special nature of their responsibilities, require absolute exemption from liability. *Cf. Butz v. Economou,* 438 U. S. 478. Determination of the immunity of particular officials is guided by the Constitution, federal statutes, history, and public policy. ... The President's absolute immunity is a functionally mandated incident of his unique office, rooted in the constitutional tradition of the separation of powers and supported by the Nation's history. Because of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government. While the separation of powers doctrine does not bar every exercise of jurisdiction

Pg 10

over the President, ***a court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served by the dangers of intrusion on the authority and functions of the Executive Branch***. ... The President's absolute immunity extends to all acts within the "outer perimeter" of his duties of office. **Nixon v. Fitzgerald, Pg 732-733** {*Emphasis Added*]

**Second**, Amicus argues that if this Court rules in favor of Plaintiff in this case that the investigation, hearings, publicity, and media hype which is sure to result will diminish the power of the President and Presidency forever, while distracting the President from his vital duties. Examples are as listed next.

The Presidential Power to negotiate to resolve current problems like the nuclear issues in Korea, the growing threat from Iran, and the growing military power of China will be diminished, and foreign countries will wonder if they should actually be negotiating with Congress.

Current trade talks with China and other countries will be placed in jeopardy at the expense of our Nation's economy.

The Constitutionally mandated balanced separation of powers will be forever tilted in favor of the Congress.

The President and Presidency will be denied and lose any Immunity protections which the Supreme Court has previously determined exists, thereby making the Presidency inferior to Congress instead of being a co-equal branch of government.

No President can then avoid being harassed by the opposing party which controls the House or Senate in order to extract concessions desired by Congress

from the President - it's called blackmail.

Qualified candidates for the Presidency will be dissuaded from running for the office.

The image of the President as the leader of the Free World will be diminished or lost, and our enemies abroad will no longer respect our power as a Nation bringing great peril to our citizens abroad and out Nation at home.

Talented individuals needed to run the various Executive Agencies will be less inclined to answer the call of future Presidents and give up their personal lives to serve.

Foreign powers will realize that they need to work with Congress, most probably the Speaker of the House, not the President, because the Presidency will be subordinate to the Congress, even though the Congress has no real authority to negotiate with foreign powers.

America will no longer be America!

Amicas asserts that the holding in **Nixon v. Fitzgerald** is directly applicable to this case where the diversion of the President's attention from the duties of the Presidency to focus on years and years of Tax Returns and their complicated business affairs could lead to disastrous consequences which could severely damage our economy or even cost American lives.  Amicas cites two examples:

**First,** After the Iranians shot down our unmanned drone operating over International waters, the President properly met with his advisors and approved a

plan to use military assets to retaliate against Iranian military targets. But on further reflection, the President changed his mind cancelling the attacks on Iranian targets. But, if the Plaintiff Committee already had possession of the President's tax returns, and was questioning the tax decisions embodied in his returns, Trump's attention might have been diverted from the Iranian issue, and he might have been distracted such that he might not have changed his mind on the proper course of action. Which would have resulted in the attack being implemented as initially planned, with an estimated loss of Iranian life of 150 or so military or civilian individuals. But then the Iranians might have escalated matters, and we could today be in a military situation which affected oil deliveries throughout the world, and resulting military consequences with their attendant negative impact upon the economies of many nations, including that of the United States.

**Second**, where the President is involved in difficult negotiations with North Korea and China, the Nation cannot afford to have him distracted such that North Korea might smuggle a nuclear weapon into Korea or Japan to use as a negotiation tool or worse yet to detonate it for evil purposes, and the Nation can ill afford a mistake at the negotiating table with China about out future trade position or difficulties in the South China seas where China seeks to take control of international waterways.

Thus, in summary, Amicas simply argues that the "Constitutional weight" of the dangers of intrusion on the authority and functions of the President and Presidency" which can be expected if the President is required to defend against

Congressional scrutiny of his tax returns will be enormous. So on a scale of 0 to 10 with ten (10) being the highest Constitutional Weight and the worst danger of intrusion on the authority and functions of the Executive Branch and Presidency, Amicus would score the Constitutional Weight of the Complaint and associated Subpoena as being at least a twenty (20).

## CONCLUSIONS

9.   It is concluded that any benefit associated with the 'interest to be served' if the Committee was allowed to obtain access to the President's tax returns and related records is de-minimis as compared to the "dangers" to the Nation and World if the President is distracted from his Constitutional duties which he was elected to perform.

10   Further, it is concluded that the Jurisdictional Test simply gives to the President and the Executive Branch the equivalent immunity protections that the Constitution gives to Congress via the Speach and Debate Clause of the Constitution, which it appears the Committee still intends to rely upon if this matter were to proceed to the merits as indicated at Footnote 9, Pg 7 of plaintiff's consolidated Reply In Support Of Motion For Entry Of Briefing Schedule And Expedited Consideration Of The Case And Opposition To Defendant's And Defendants-Intervenor's Motion To Hold Plaintiff's Motion For Summary Judgement In Abeyance.

## RELIEF TO BE GRANTED IN THIS CASE

11.   A finding that the precedent of **Nixon v. Fitzgerald** applies;

12. A finding that Plaintiff's did not properly respond to the requirements of **Nixon v. Fitzgerald** when they filed their Complaint;

13. A finding that the "dangers of the intrusion on the authority and functions of the Executive Branch" is substantially greater than any benefit from the "interest served" by the Committee on Ways and Means from having access to President Trump's tax returns and related financial records;

14. A finding that President Trump has absolute immunity from having his tax returns and related records obtained for review by the Committee on the Ways and means or any other Committee of Congress;

15. An Order that the subpoena issued by the House Ways and Means is to be Quashed,

16. An Order that the Case is to be dismissed with Prejudice for lack of Jurisdiction;

17. An Order that Defendants are entitled to other relief and/or remedies as determined by this Court.

Sincerely Yours;

_____
Duane Morley Cox, Pro Se

6 Sept 2019
Date

Note: There are a few changes here-in including a second example pertaining to the intrusion on the President's time.

Note: Amicus plans to attend as a spectator any public Hearings on the issue of Jurisdiction.

## Certificate Of Service

I, Duane Morley Cox, Pro Se, does hereby swear that on 6 September 2019 that I did serve a true and correct copy of the attached Amicus Brief pursuant to court Order to the below listed parties by first class mail, postage prepaid.

Clerk's Office (Original)
U.S. District Court
District of Columbia
Room 1225
333 Constitution Avenue, NW
Washington D.C. 20001

Office Of General Counsel
U.S. House of Representatives
291 Cannon House Office Building
Washington, D.C. 20515

Steven A. Myers et., al.
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044

William S. Consovoy, et. al.
Consovoy McCarthy Park PLLC
3033 Wilson Blvd., Ste 700
Arlington, Va. 22201

*[Signature: Duane Morley Cox]*        *6 Sept 2019*

PRIORITY MAIL
FLAT RATE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

FROM:

Morley and Jeanne Cox
1199 Cliffside Drive
Logan, UT 84321

TO:

CLERK
US DISTRICT COURT
DISTRICT OF COLUMBIA
ROOM 1225
333 CONSTITUTION AVE, NW
WASHINGTON D.C.
20001

UNITED STATES POSTAL SERVICE

Retail

US POSTAGE PAID
$7.35
Origin: 84321
09/06/19
4950660210-10

PRIORITY MAIL 2-DAY®

0 Lb 4.00 Oz
1004

C003

EXPECTED DELIVERY DAY: 09/09/19

SHIP TO:
333 CONSTITUTION AVE NW
WASHINGTON DC 20001-2802

USPS TRACKING NUMBER

9505 5131 7447 9249 4201 15

PS00001000014    EP14F Oct 2018
                 OD: 12 1/2 x 9 1/2

To schedule free
Package Pickup,
scan the QR code.

USPS.COM/PICKUP

* Domestic only.   * For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.