# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, *et al.*,<br><br>*Defendants,*<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendant-Intervenors.* | Case No. 1:19-cv-01974-TNM |

## BRIEF OF FORMER GENERAL COUNSELS AND ACTING GENERAL COUNSELS OF THE U.S. HOUSE OF REPRESENTATIVES AS *AMICI CURIAE*

ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP

Lawrence S. Robbins (D.C. Bar No. 420260)
Laurie Rubenstein (D.C. Bar No. 440165)
D. Hunter Smith (D.C. Bar No. 1035055)
Wendy Liu (D.C. Bar No. 1600942)
2000 K Street, N.W., 4th Floor
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
Email: lrobbins@robbinsrussell.com

*Counsel for* Amici Curiae

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTEREST OF *AMICI CURIAE* ........................................................................................... v

BACKGROUND .......................................................................................................................... 1

     A.     The House Ways and Means Committee's Investigation ....................................... 1

     B.     Congress's Power To Investigate ......................................................................... 3

LEGAL ARGUMENT ................................................................................................................. 7

I.     THE COMMITTEE HAS ARTICLE III STANDING TO ENFORCE ITS OWN
SUBPOENA ..................................................................................................................... 7

     A.     The Committee Has Suffered an Institutional Injury from the Defendants'
Failure to Comply with a Duly Authorized Subpoena .......................................... 7

     B.     Defendants Fail to Distinguish the Prior Subpoena Enforcement Cases or to
Establish That They Have Been Overruled ........................................................... 9

     C.     The House Has Properly Authorized This Lawsuit ............................................. 12

II.     THIS COURT SHOULD NOT DECLINE JURISDICTION IN FAVOR OF THE
NEGOTIATION AND ACCOMMODATION PROCESS............................................. 13

CONCLUSION........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n* (*"Arizona"*),
    135 S. Ct. 2652 (2015) ................................................................................7, 11, 12

*City of Waukesha v. EPA*,
    320 F.3d 228 (D.C. Cir. 2003) .................................................................................7

*Comm. on the Judiciary, U.S. House of Representatives v. Miers*,
    558 F. Supp. 2d 53 (D.D.C. 2008) ............................................................... *passim*

*Comm. on Oversight & Gov't Reform, U.S. House of Representatives v. Sessions*,
    344 F. Supp. 3d 1 (D.D.C. 2018) .............................................................................9

*Comm. on Oversight and Gov't Reform v. Holder*,
    979 F. Supp. 2d 1 (D.D.C. 2013) ................................................................. *passim*

*Cummings v. Murphy*,
    321 F. Supp. 3d 92 (D.D.C. 2018) ....................................................................10, 11

*Eastland v. U.S. Serviceman's Fund*,
    421 U.S. 491 (1975) ................................................................................................3

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ................................................................................................8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................7

*McGrain v. Daugherty*,
    273 U.S. 135 (1927) ................................................................................................3

*Raines v. Byrd*,
    521 U.S. 811 (1997) .......................................................................................9, 10, 11

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ................................................................................................12

*U.S. House of Representatives v. Mnuchin*,
    379 F. Supp. 3d 8 (D.D.C. 2019) .........................................................................6, 9

*U.S. House of Representatives v. U.S. Dep't of Commerce*,
    11 F. Supp. 2d 76 (D.D.C. 1998) ............................................................................9

# TABLE OF AUTHORITIES—CONTINUED

*United States v. Am. Tel. & Tel. Co.*,
  551 F.2d 384 (D.C. Cir. 1976) ...................................................................... *passim*

*Va. House of Delegates v. Bethune-Hill*,
  139 S. Ct. 1945 (2019) .............................................................................7, 10, 11

*Walker v. Cheney*,
  230 F. Supp. 2d 51 (D.D.C. 2002) .............................................................9, 10, 11

*Watkins v. United States*,
  354 U.S. 178 (1957)...........................................................................................3

**Constitutional Provisions, Statutes & Rules**

U.S Const. art 1, § 5, cl. 2 ..................................................................................12, 13

2 U.S.C. § 192 ........................................................................................................5

2 U.S.C. § 194 ........................................................................................................5

House Rule II(8)(b)................................................................................................12

House Rule XI(2)(m)(1) ..........................................................................................3

House Rule XI(2)(m)(3) ..........................................................................................3

Rules of the House Committee on Ways and Means, Rule 15 .......................................3

**Other Authorities**

165 Cong. Rec. H30 (daily ed. Jan. 3, 2019) (Statement of Chairman McGovern)......................13

Colby Itkowitz, *Justice Department Said It Will Not Prosecute Barr, Ross After
  Contempt Vote*, The Washington Post (July 24, 2019).............................................6

*Cong. Comm.'s Request for the President's Tax Returns Under 26 U.S.C. §
  6103(f)*, 2019 WL 2563046 (O.L.C. June 13, 2019)...............................................2

*Congress's Contempt Power and the Enforcement of Congressional Subpoenas:
  Law, History, Practice, and Procedure*, Congressional Research Service (May
  12, 2017) ........................................................................................................6

*Congressional Subpoenas: Enforcing Executive Branch Compliance*,
  Congressional Research Service (Mar. 27, 2019)....................................................4

Neal Devins, *Congressional-Executive Information Access Disputes: A Modest Proposal—Do Nothing*, 48 Admin. L. Rev. 109, 116 (1996) .................................................... 4

*Prosecution for Contempt of Cong. of an Exec. Branch Official Who Has Asserted a Claim of Exec. Privilege*, 8 Op. O.L.C. 101 (1984) ................................................................................................ 4, 5

*Response to Cong. Requests for Info. Regarding Decisions Made Under the Indep. Counsel Act*, 10 Op. O.L.C. 68 (1986) ................................................................................................ 5

# INTEREST OF *AMICI CURIAE*

*Amici* are former General Counsels and former Acting General Counsels of the U.S. House of Representatives. They served during the past four decades under both Republican and Democratic Speakers of the House.

*Geraldine R. Gennet* served in the Office of General Counsel between 1995 and 2007; she was Acting General Counsel between 1996 and 1997 and General Counsel between 1997 and 2007 under Speakers Nancy Pelosi, J. Dennis Hastert, and Newt Gingrich.

*Kerry W. Kircher* served in the Office of General Counsel between 1995 and 2016; he was General Counsel between 2011 and 2016 under Speakers Paul D. Ryan and John A. Boehner.

*Irvin B. Nathan* served as General Counsel between 2007 and 2010 under Speaker Pelosi.

*William Pittard* served in the Office of General Counsel between 2011 and 2016; he was Acting General Counsel in 2016 under Speaker Ryan.

*Thomas J. Spulak* served as General Counsel between 1994 and 1995 under Speaker Thomas S. Foley.

*Charles Tiefer* served in the Office of General Counsel between 1984 and 1995; he was Acting General Counsel in 1994 under Speaker Foley.

Each of the *Amici* advised the U.S. House of Representatives on its institutional interests in connection with litigation before Article III courts and provided legal advice to the House leadership regarding the enforcement of subpoenas to Executive-branch officials. Individually as well as collectively, the *Amici* have developed substantial knowledge and practical experience relevant to the issues of the House's standing in this case, and they seek to assist the Court by presenting legal argument that bears on this question.

Pursuant to this Court's September 4 and 12, 2019, Minute Orders, *Amici* certify that they have attempted not to duplicate arguments presented in a party's brief. *Amici* further certify that this brief is no longer than 15 pages.

Furthermore, pursuant to Local Civil Rule 7(o)(5) and Federal Rule of Appellate Procedure 29(a)(4)(E), *Amici* certify that (1) this brief was authored entirely by counsel for *Amici* and not by counsel for any party, in whole or part; (2) no party or counsel for any party contributed money to fund the preparation or submission of this brief; and (3) apart from *Amici* and their counsel, no other person contributed money to fund the preparation or submission of this brief.

"[T]his lawsuit involves a basic judicial task—subpoena enforcement—with which federal courts are very familiar." *Comm. on the Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53, 56 (D.D.C. 2008). The primary question that this brief addresses—whether the entity that issued the subpoena has standing to enforce it—is equally basic. *Of course it does.* How could it not? As the D.C. Circuit has held in a subpoena-enforcement case, "[i]t is clear that the House as a whole has standing to assert its investigatory power." *United States v. Am. Tel. & Tel. Co.* ("*AT&T I*"), 551 F.2d 384, 391 (D.C. Cir. 1976). It is equally clear that the House can, and has, delegated that power to its Committee on Ways and Means (the "Plaintiff" or "Committee") to assert it on its behalf. Defendants' only substantive standing arguments are those that this Court has rejected before in its prior subpoena enforcement cases. *See Miers*, 558 F. Supp. 2d 53; *Comm. on Oversight and Gov't Reform v. Holder*, 979 F. Supp. 2d 1 (D.D.C. 2013). Those arguments have not gotten any better with time. This Court should reject them now, just as other courts in this District have done before.

This brief also addresses Defendants' contention that the Court should stay out of this inter-Branch dispute and defer to the accommodation process. In these circumstances, judicial abstention would not just hand the Executive a victory in its effort to resist this subpoena, but also disturb the functioning of Congressional oversight more generally.

## BACKGROUND

### A.     The House Ways and Means Committee's Investigation

After an investigation by the Joint Committee on Internal Revenue Taxation concluded that President Nixon had filed erroneous tax returns while in office, the IRS adopted guidelines specifying that the individual returns of the President and Vice President are subject to mandatory audit. Compl. ¶ 42. That policy, however, has never been codified in legislation or regulation. *Id.* ¶¶ 42-43.

The Committee on Ways and Means of the U.S. House of Representatives is now investigating whether to legislate on the subject. *Id.* ¶ 46; *see also id.* ¶¶ 51-52 (detailing five bills under consideration concerning presidential tax compliance). To that end, the Committee requested on April 3, 2019, and again on April 13, 2019, that the IRS provide tax returns and related return information for President Trump and eight related entities. *Id.* ¶¶ 57-59, 65. Four days later, acting White House Chief of Staff Mick Mulvaney stated on *Fox News Sunday* that the Committee would "never" receive President Trump's tax returns. *Id.* ¶ 63. Private counsel for President Trump and the entities also repeatedly expressed the view that the Committee's request was "illegal" and that the IRS should not comply with it. *Id.* ¶¶ 62, 66. On May 6, 2019, Treasury Secretary Steven Mnuchin and IRS Commissioner Charles Rettig informed the Committee by letter that they would not provide the requested information. *Id.* ¶ 71.

On May 10, 2019, Committee Chairman Richard Neal authorized, issued, and served subpoenas to Secretary Mnuchin and Commissioner Rettig for the tax returns and related information. *Id.* ¶ 72 & n.100. Mnuchin and Rettig informed the Committee by letter that neither the Treasury Department nor the IRS would comply with the subpoenas. *Id.* ¶¶ 75-77. Weeks later, the Department of Justice's Office of Legal Counsel issued an opinion stating that the Committee's requests "did not serve a legitimate legislative purpose" and that the Treasury Department therefore was barred from disclosing the tax-return information in response to the Committee's letter requests and subpoenas for that information. *Cong. Comm.'s Request for the President's Tax Returns Under 26 U.S.C. § 6103(f)*, 2019 WL 2563046, at *22 (O.L.C. June 13, 2019).

This lawsuit followed.

## B.    Congress's Power To Investigate

"[T]he power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function." *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927); *accord Watkins v. United States*, 354 U.S. 178, 187 (1957). "A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change. . . ." *McGrain*, 273 U.S. at 175. For that reason, Congress's investigative power is "broad" and its "scope . . . is as penetrating and far-reaching as the potential power to enact and appropriate under the Constitution." *Eastland v. U.S. Serviceman's Fund*, 421 U.S. 491, 504 n.15 (1975).

"Issuance of subpoenas . . . has long been held to be a legitimate use by Congress of [this] power to investigate." *Id.* at 504-05. The Founders were well aware that "mere requests for . . . information often are unavailing, and also that information which is volunteered is not always accurate or complete; so some means of compulsion are essential to obtain what is needed." *McGrain*, 273 U.S. at 175. Congress's subpoena power rests therefore "on a firm constitutional basis." *AT&T I*, 551 F.2d at 393.

This "subpoena power may be exercised by a committee acting . . . on behalf of one of the Houses." *Eastland*, 421 U.S. at 505. Here, the House of Representatives has delegated authority to each of its committees (including Plaintiff) the power "to require, by subpoena or otherwise, . . . the production of such books, records, correspondence, memoranda, papers, and documents as it considers necessary" for the purpose of carrying out its functions and duties. House Rule XI(2)(m)(1). And each House committee may (as Plaintiff has here) delegate to its Chairman the power to issue such subpoenas. *See* House Rule XI(2)(m)(3); Rules of the House Committee on Ways and Means, Rule 15.

"The information that Congress seeks, whether to inform itself for lawmaking purposes or to conduct oversight, often lies in the executive branch's possession." *Congressional Subpoenas: Enforcing Executive Branch Compliance*, Congressional Research Service (Mar. 27, 2019) at 1, https://fas.org/sgp/crs/misc/R45653.pdf. Traditionally, "[c]ooperation dominates most congressional requests for information, with the executive turning over the requested information as a matter of routine." Neal Devins, *Congressional-Executive Information Access Disputes: A Modest Proposal—Do Nothing*, 48 Admin. L. Rev. 109, 116 (1996). During the decades that *Amici* served in the House's Office of General Counsel, House committees made thousands of requests for information and documents to Executive-branch officials, and those Executive-branch officials in turn provided, in thousands of instances, the requested information (although sometimes after negotiations with the requesting committee). Only in relatively rare cases did committees have to resort to subpoenas, but the knowledge that the compulsory process route was available to the committees undoubtedly provided Executive agencies with powerful incentives to comply voluntarily.

In the rare cases where cooperation fails, Congress has "two predominant methods" to compel compliance with a subpoena—both of which "rely on the authority and participation of another branch of government." *Congressional Subpoenas*, *supra*, at 2. *First*, a house of Congress may file a civil suit in federal court to seek an order declaring that the subpoenaed official is required to comply with the subpoena. Even the Executive Branch's Office of Legal Counsel has concluded—twice—that Congress may seek judicial enforcement of its subpoenas. *See Prosecution for Contempt of Cong. of an Exec. Branch Official Who Has Asserted a Claim of Exec. Privilege* ("Olson Op."), 8 Op. O.L.C. 101, 137 (1984) ("Congress could . . . vindicate its asserted right to obtain any documents by a civil action for enforcement of a congressional

subpoena."); *Response to Cong. Requests for Info. Regarding Decisions Made Under the Indep. Counsel Act* ("Cooper Op."), 10 Op. O.L.C. 68, 83 (1986) (House may pursue "a civil suit seeking declaratory enforcement of the subpoena" to enforce the subpoena). OLC has not issued an opinion articulating a different position in the years since.

In *Amici*'s tenure in the House's Office of General Counsel, a house of Congress or Congressional committee filed suit only twice to enforce compliance with a Congressional subpoena against an Executive-branch official. The first suit was in 2008, to enforce the House Judiciary Committee's subpoenas against former White House Counsel Harriet Miers and White House Chief of Staff Joshua Bolten for documents relating to the resignations of U.S. Attorneys during the George W. Bush Administration. *See Committee on the Judiciary v. Miers*, 558 F. Supp. 2d 53 (D.D.C. 2008). The second suit, in 2012, was to enforce the House Oversight and Government Reform Committee's subpoena against Attorney General Eric H. Holder, Jr. for documents relating to the committee's investigation into a Bureau of Alcohol, Tobacco, Firearms, and Explosives firearms-trafficking operation known as "Fast and Furious." *See Committee on Oversight and Government Reform v. Holder*, 979 F. Supp. 2d 1 (D.D.C. 2013). Both times, this court held that the House committee had standing to file suit.

A house of Congress's other primary avenue to compel compliance with a subpoena is to certify a contempt citation for the criminal prosecution of an individual who has willfully refused to comply. *See* 2 U.S.C. §§ 192, 194. The Executive branch asserts that it has discretion whether to pursue prosecution for criminal contempt. *See* Olson Op. at 102; *see also Congressional Subpoenas*, *supra*, at 2 ("Once the contempt citation is received, any later prosecution lies within the control of the executive branch.") Between 2008 and the advent of the current Congress in January 2019, the House issued four such contempt citations to current or former executive

officials, and each time the Executive branch declined to bring the matter before a grand jury. *Id.* at 3. That reality appears to have continued during the current Congress, with this Administration apparently failing to bring such contempt matters before a grand jury.[1]

True, Congress has self-help options: Each house of Congress has the power of inherent contempt, where a house can dispatch its sergeant-at-arms to arrest a non-compliant subpoenaed official. But, in *Amici*'s view, that power exists today more in theory, than in reality. It has not been used since 1935,[2] and, as this court has observed, it is "most unlikely that Congress could dispatch the Sergeant at-Arms to arrest and imprison an Executive Branch official . . . ." *Miers*, 558 F. Supp. 2d at 76 (quoting Cooper Op. at 86). Congress also could employ informal measures, such as refusing to provide funding for the Executive's preferred programs. But Congress has only finite leverage in appropriations disputes, and Congress is often reluctant to use that leverage for non-appropriations ends (such as subpoena enforcement); in any event, Congress's threats to refuse certain appropriations may be toothless if Congress does not have standing to enforce its appropriations decisions. *See, e.g.*, *U.S. House of Representatives v. Mnuchin*, 379 F. Supp. 3d 8 (D.D.C. 2019).

---

[1] *See, e.g.*, Colby Itkowitz, *Justice Department Said It Will Not Prosecute Barr, Ross After Contempt Vote*, The Washington Post (July 24, 2019), https://www.washingtonpost.com/politics/justice-department-said-it-will-not-prosecute-barr-ross-after-contempt-vote/2019/07/24/701d8f9c-ae52-11e9-a0c9-6d2d7818f3da_story.html.

[2] *Congress's Contempt Power and the Enforcement of Congressional Subpoenas: Law, History, Practice, and Procedure*, Congressional Research Service (May 12, 2017) at 12, https://fas.org/sgp/crs/misc/RL34097.pdf.

**LEGAL ARGUMENT**

**I.** **THE COMMITTEE HAS ARTICLE III STANDING TO ENFORCE ITS OWN SUBPOENA**

The standing inquiry is "[t]rained on 'whether the plaintiff is a proper party to bring a particular lawsuit.'" *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n* (*"Arizona"*), 135 S. Ct. 2652, 2663 (2015) (internal marks omitted) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Plainly, the Committee is the right party to sue to enforce its own subpoena.

To have standing, a plaintiff must have suffered an injury in fact—i.e., an "invasion of a legally protected interest that is concrete and particularized and actual or imminent," *id.* (internal quotation marks omitted), not "conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). The "injury must be 'legally and judicially cognizable.'" *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1953 (2019) (quoting *Raines*, 521 U.S. at 819).[3] When assessing standing, the court must "assume that on the merits the plaintiffs would be successful in their claims." *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003) (per curiam).

**A.** **The Committee Has Suffered an Institutional Injury from the Defendants' Failure to Comply with a Duly Authorized Subpoena.**

A house or committee of Congress suffers a judicially cognizable injury when the Executive refuses to comply with a duly authorized subpoena. The court expressly so held in *AT&T I*, where the Justice Department sued to enjoin AT&T from complying with a subpoena issued by a House subcommittee. The House authorized the chairman of the subcommittee to intervene in the lawsuit on behalf of the committee and the House. When the Chairman appealed

---

[3] The injury-in-fact must also be traceable to the defendant's actions and redressable by the judicial relief sought. *See Lujan*, 504 U.S. at 560-61. Because Defendants do not challenge the Committee's satisfaction of these additional requirements, we do not address them here.

the district court's ruling, the Court of Appeals ruled he had standing as an agent of the House: "It is clear that the House as a whole has standing to assert its investigatory power, and can designate a member to act on its behalf." 551 F.2d 384, 391 (D.C. Cir. 1976). *See also Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) (Article III standing's requirement must be met by appellants, "just as it must be met by persons appearing in courts of first instance.").

Since *AT&T I*, this court has twice addressed the issue of whether a Congressional committee has Article III standing to enforce its subpoenas against the Executive branch. Both times it reached the obvious answer: Yes. In *Miers*, 558 F. Supp. 2d 53, the House Committee on the Judiciary filed a civil suit to enforce a subpoena against former White House Counsel Harriet Miers and White House Chief of Staff Joshua Bolten. The defendants in that case, like the Defendants here, argued that the committee lacked standing because there was no injury-in-fact. *See Miers*, 558 F. Supp. 2d at 66-67. The court held that the House committee "ha[d] standing to enforce its duly issued subpoena through a civil suit." *Id.* at 68. The court explained that the lawsuit redressed both the committee's "right to the information that is the subject of the subpoena and its institutional prerogative to compel compliance with its subpoenas." *Id.* at 78. "A harm to either interest satisfies the injury-in-fact standing requirement." *Id.*

In *Holder*, 979 F. Supp. 2d 1, the court reached the same conclusion. In that case, the House Committee on Oversight and Government Reform issued a subpoena for documents to Attorney General Eric H. Holder, Jr., who refused to comply. 979 F. Supp. 2d at 2-3. Following *Miers*, the court held that the House committee had standing to enforce compliance with the subpoena. *See id.* at 10.[4]

---

[4] "[T]he concordance between [*Miers* and *Holder*]—written by different judges, at times when different political parties were in control of the House and were running the Department of Justice—is a powerful illustration of the fact that under the Constitution, the rule of law endures

Courts considering other types legislative standing have consistently recognized subpoena enforcement as an easy case. For example, in *United States House of Representatives v. U.S. Department of Commerce*, this court observed:

> [I]t [is] well established that a legislative body suffers a redressable injury when that body cannot receive information necessary to carry out its constitutional responsibilities. This right to receive information arises primarily in subpoena enforcement cases, where a house of Congress or a congressional committee seeks to compel information in aid of its legislative function.

11 F. Supp. 2d 76, 86 (D.D.C. 1998). And indeed, just this summer, this Court (McFadden, J.) recognized that "informational injuries to Congress arise primarily in subpoena enforcement cases." *Mnuchin*, 379 F. Supp. 3d at 17-18 (internal quotation marks omitted). In *Mnuchin*, this Court also observed that there is a "history of judicial and executive recognition of the House's investigatory power." *Id.* at 17.

**B.** **Defendants Fail to Distinguish the Prior Subpoena Enforcement Cases or to Establish That They Have Been Overruled.**

Defendants contend that *AT&T I* is not good law and that *Miers* and *Holder* were wrongly decided. But they do not cite a single case so much as *hinting* at, much less adopting, their aggressive and revisionist reading of the case law. Indeed, Defendants all but concede that *every* court to address the issue has held that houses of Congress, and their committees, have standing to enforce subpoenas. Their efforts to persuade this Court to become the first to hold the contrary are without merit.

1. Defendants' primary argument is that the Committee does not have standing in light of *Raines v. Byrd*, 521 U.S. 811 (1997), and other cases following *Raines* (*Walker v. Cheney*, 230

---

even when power changes hands, and no matter which party's interests are affected by its application." *Comm. on Oversight & Gov't Reform, U.S. House of Representatives v. Sessions*, 344 F. Supp. 3d 1, 15 (D.D.C. 2018).

F. Supp. 2d 51 (D.D.C. 2002), and *Cummings v. Murphy*, 321 F. Supp. 3d 92 (D.D.C. 2018)). *See* Defs. Mem. at 32-38. But *Raines* and its progeny do not control here: Those cases all considered whether *individual* members of Congress had standing to sue over an *institutional* injury. And none of those cases concerned a dispute over a Congressional subpoena.

In *Raines*, six individual members of Congress sought a declaratory judgment that the Line Item Veto Act was unconstitutional. *Raines* held that the six members lacked standing because they "alleged no injury to themselves as individuals," but rather alleged a "type of institutional injury" that was "wholly abstract and widely dispersed." 521 U.S. at 821, 829. The teaching of *Raines*, as the Supreme Court later explained, is that "individual members lack standing to assert the institutional interests of a legislature." *Bethune-Hill*, 139 S. Ct. at 1953 n.4.

*Cummings* and *Walker* are of a piece. Both cases relied on *Raines* to conclude that individual legislators lacked standing to vindicate an institutional right. In *Cummings*, minority members of the House Oversight Committee sought Executive-branch records. *Cummings*, 321 F. Supp. 3d at 95. *Cummings* held that the minority members lacked standing, for their "injury ar[ose] not in any private capacity, but solely because they are Members of Congress," yet they lacked authorization from their institution (the House) to sue. *Id.* at 108, 116 (internal quotation marks omitted). Likewise, in *Walker*, the Comptroller General sought records from the Vice President, but neither the full Congress nor any of its Houses or its committees had requested the documents at issue—much less authorized the Comptroller General's suit. *Walker*, 230 F. Supp. 2d at 67-68. *Walker* held that there was no standing in such circumstances:

> [T]he Comptroller General has suffered no personal injury as a private citizen, and any institutional injury exists only in his capacity as an agent of Congress—an entity that itself has issued no subpoena to obtain the information and given no expression of support for the pursuit of this action.

*Id.* at 74. Stated differently, in *Raines*, *Cummings*, and *Walker*, there was a "mismatch between the body seeking to litigate" and the body whose constitutional authority had been injured. *Bethune-Hill*, 139 S. Ct. at 1953.

No such mismatch exists here. Unlike the plaintiffs in *Raines*, *Cummings*, and *Walker*, Plaintiff here is a House committee—the very institution that is seeking to vindicate its institutional rights. The Supreme Court has distinguished *Raines* on that very basis: In *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 135 S. Ct. 2652 (2015), the Court held that the Arizona legislature had standing because it was "an institutional plaintiff asserting an institutional injury," and the institution (the Arizona legislature) had authorized the suit. *Arizona*, 135 S. Ct. at 2664. "That different circumstance," the Court observed, "was not *sub judice* in *Raines*." *Id.* (internal marks omitted); *see also Miers*, 558 F. Supp. 2d at 68 (holding, for this reason, that "*Raines* and subsequent cases have not undercut either the precedential value of *AT&T I* or the force of its reasoning"). Likewise, *Cummings* and *Walker* expressly acknowledged that the result would have been different if a House or Congressional committee had sued. *Cummings*, 321 F. Supp. 3d at 116; *Walker*, 230 F. Supp. 2d at 68.

2.     Defendants' efforts to distinguish *AT&T I* fare no better. *See* Defs. Mem. at 33. Although *AT&T I* involved subpoena compliance by a "private entity" (AT&T), not a branch of government, that makes no difference to standing: No matter who is refusing to comply, the House suffers an injury in fact when its subpoenas are disregarded and information is withheld. And, in any event, as this court has held before, "the *AT&T I* case is not distinguishable on the grounds that it involved a private party's compliance with a request for production" because "it was the Department of Justice that brought the suit, and the opinion specifically notes that 'the District

Court correctly treated the case as a clash of the powers of the legislative and executive branches of the United States.'" *Holder*, 979 F. Supp. 2d at 12 (quoting *AT&T I*, 551 F.2d at 389).

Nor is Defendants' effort to characterize *AT&T I* as a "drive-by jurisdictional ruling[]" any more successful. *See* Defs. Mem. at 32-33. *AT&T I* devoted an entire section of its opinion to Article III standing. *See AT&T I*, 551 F.2d at 391 (concluding that "the House as a whole has standing," citing *Kennedy v. Sampson*, 511 F.2d 430 (D.C. Cir. 1974) (discussing Article III standing)). That is quite far from a drive-by ruling: the jurisdictional issue was *not* "assumed without discussion by the Court," it had *not* "been assumed by the parties," and it *did* make a "substantive difference" to the case's outcome. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998).

Here, an institutional plaintiff (the Committee) seeks to vindicate an institutional right. The Committee is clearly the "proper party" to bring this suit. *See Arizona*, 135 S. Ct. at 2663.

## C.     The House Has Properly Authorized This Lawsuit.

Defendants contend that the Committee lacks standing because the Bipartisan Legal Advisory Group (BLAG)—the formal name for the group composed of the Speaker of the House, and the House Majority and Minority Leaders and Whips—and not the full House of Representatives, voted to authorize this suit. *See* Defs. Mem. at 26-29. The Court should reject this argument.

Article I, Section 5, Clause 2 of the Constitution resolves this matter when it declares: "Each House may determine the Rules of its Proceedings . . . ." The House of Representatives in House Rule II(8)(b) has determined that "[u]nless otherwise provided by the House, the Bipartisan Legal Advisory Group speaks for, and articulates the institutional position of, the House in all litigation matters." As explained by House Rules Committee Chairman James P. McGovern:

The BLAG has been delegated this authority for all litigation matters, and I want to be clear that this includes litigation related to the civil enforcement of a Committee subpoena. If a Committee determines that one or more of its duly issued subpoenas has not been complied with and that civil enforcement is necessary, the BLAG, pursuant to House Rule II(8)(b), may authorize the House Office of General Counsel to initiate civil litigation on behalf of this Committee to enforce the Committee's subpoena(s) in federal district court.

165 Cong. Rec. H30 (daily ed. Jan. 3, 2019) (Statement of Chairman McGovern).

The Committee's authorization to sue here is on solid footing. As discussed above, it is well-settled "that the House as a whole has standing to assert its investigatory power and *can designate a member to act on its behalf.*" *AT&T I*, 551 F.2d at 391 (emphasis added). In *AT&T I*, the House had passed a resolution authorizing the Chairman to intervene on behalf of the Committee and the House; the court found that there was standing. *Id.* That is legally indistinguishable from the circumstances here, where the House passed a resolution authorizing its committees to initiate suit upon a vote by the BLAG. Defendants' second-guessing of the internal procedures that House has used to authorize this suit is inconsistent with Article I, Section 5, Clause 2 and has nothing to do with whether the House has suffered an injury-in-fact, in any event.

## II. THIS COURT SHOULD NOT DECLINE JURISDICTION IN FAVOR OF THE NEGOTIATION AND ACCOMMODATION PROCESS

Defendants contend that the Court should decline to exercise its jurisdiction so that the parties can continue the negotiation and accommodation process. *See* Defs. Mem. at 38-43. This argument has nothing to do with Article III standing. To the extent that Defendants mean to argue that the Court should stay its hand for prudential reasons, Defendants are wrong.

Notably, the subpoenaed documents have no bearing on national security, nor do they implicate deliberative process or otherwise constitute privileged material. Instead, they are documents that past Presidents have routinely made public, *see* Compl. ¶ 91, and which the Ways

and Means Committee has had a statutory right to review since 1924, *see id.* ¶ 2. Yet, the Defendants made clear from the get-go that they would never comply with the Committee's request; indeed, only four days after the Committee first asked for the information, the Administration declared that the Committee would "never" receive it. *Id.* ¶ 63.

Declining to exercise jurisdiction under these circumstances would upset, rather than restore, the balance of power among co-equal branches. "While the defense presents its motion as a request that the court remain neutral while the other two bodies work out their difficulties, dismissing the case without hearing it would in effect place the court's finger on the scale, designating the executive as the victor. . . ." *Holder*, 979 F. Supp. 2d at 24. If the Executive can unilaterally declare that it is not required to produce essential oversight documents, and its assertions cannot even be tested in court, then checks and balances cease to be much of either.

The stakes here are not just the Executive's failure to comply with a single Congressional subpoena, but the much broader calibration of inter-Branch relations. The availability of judicial enforcement of Congressional subpoenas enables routine oversight by promoting the Executive's voluntary compliance with future information requests and subpoenas. It also deters potential Executive misconduct more broadly by establishing the baseline that Executive officials cannot shield their misdeeds from oversight simply by ignoring subpoenas. Far from respecting the Constitution's carefully crafted separation of powers, declining to enforce the Committee's subpoena would grant the Executive the unbridled authority to evade Congressional oversight.

## CONCLUSION

For the foregoing reasons, the Court should recognize the Committee's standing and proceed to adjudicate this case on its merits.

Dated: September 20, 2019

Respectfully submitted,

/s/ Lawrence S. Robbins
Lawrence S. Robbins (D.C. Bar No. 420260)
Laurie Rubenstein (D.C. Bar. No. 440165)
D. Hunter Smith (D.C. Bar No. 1035055)
Wendy Liu (D.C. Bar No. 1600942)
2000 K Street, N.W., 4th Floor
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
Email: lrobbins@robbinsrussell.com

*Counsel for* Amici Curiae