Leave to file GRANTED

*TREVOR N. MCFADDEN*
United States District Judge

10/3/19

Duane Morley Cox, Pro Se
1199 Cliffside Dr.
Logan, Utah 84321
Ph: (801) 755-3578

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

| | | |
|---|---|---|
| Committee On Ways And Means | + | Civil Action No. 1:19-cv-1974 (TNM) |
| United States House Of Representatives | + | |
| | + | Amicus Reply |
| Plaintiff | + | In Opposition To Plaintiff's |
| | + | Memorandum In Opposition To |
| United States Department Of The | + | Defendant's Motion To Dismiss |
| Treasury et. al. | + | And |
| | + | In Opposition To Amicus Brief's For |
| Defendants | + | Constitutional Scholars & Former |
| | + | Constitutional Scholars |
| Donald J. Trump, et. al. | + | |
| | + | |
| Defendants | + | Judge: Trevor N. McFadden |

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

**Now Comes** Duane Morley Cox, Pro Se, as Amicus, and files this Reply in

Opposition To Plaintiff's Memorandum in Opposition To Defendant's Motion To

Dismiss (**Docket 55**) and the Amicus Brief 's of Former Counsels et. al (**Docket 52**)

and Constitutional Scholars (**Docket 54**), none of which show Jurisdiction under

the Precedent of **Nixon v. Fitzgerald, 457 U.S. 731 (Nixon).**

### Federal Question Before This Court

1.   Whether or not the *"the constitutional weight of the interest to be*

*served"* if Plaintiff House Committee on Ways and Means obtained the tax returns

and related records for Donald J. Trump et. al. is greater than *"the dangers of*

*intrusion on the authority and functions of the Executive Branch"* which

RECEIVED

SEP 2 6 2019

would result from the President's "*diversion of energies*" as stated in **Nixon**.

> "The President's absolute immunity is a functionally mandated incident of
> his unique office, rooted in the constitutional tradition of the separation of
> powers and supported by the Nation's history. Because of the singular
> importance of the President's duties, *diversion of his energies* by concern
> with private lawsuits would raise unique risks to the effective functioning of
> government. While the separation of powers doctrine does not bar every
> exercise of jurisdiction over the President, *a court, before exercising
> jurisdiction, must balance the constitutional weight of the interest to
> be served by the dangers of intrusion on the authority and functions
> of the Executive Branch*. ... The President's absolute immunity extends to
> all acts within the "outer perimeter" of his duties of office. **Nixon, Pg 732-
> 733** *{Emphasis Added]*

### Background

2.      Amicus Cox attempted to raise a virtually identical question in the case of

Trump et. al, v. Mazars & House Oversight Committee (1:19-cv-01936) but was

unable to do so because of the expedited schedule, and so raised this question upon

appeal to the D.C. Court of Appeals (No. 19-5142) which accepted his Amicus Brief.

3.      Although the D.C. Court of Appeals held Oral Arguments on the merits as

scheduled, the acceptance of the Amicus Brief by the Court of Appeals requires it to

determine its own Jurisdiction before reaching a decision on the merits.

> ""Every federal appellate court has a special obligation to 'satisfy itself not
> only of its own jurisdiction, but also that of the lower courts in a cause under
> review,' even though the parties are prepared to concede it [Citations
> Omitted} 'And if the record discloses that the lower court was without
> jurisdiction this court will notice the defect, although the parties make no
> contention concerning it. [When the lower federal court] lack[s] jurisdiction,
> we have jurisdiction on appeal, not of the merits but merely for the purpose of
> correcting the error of the lower court in entertaining the suit.' *United
> States v. Corrick,* 298 U.S. 435 (/supct-cgi/get-us-cite?298+435), 440 (1936)
> (footnotes omitted)." *Arizonans for Official English v. Arizona*,
> 520 U.S. ___. (slip op., at 28) (1997), quoting from *Bender v. Williamsport
> Area School Dist.,* 475 U.S. 534 (/supct-cgi-cite?475+534), 541 (1986) (brackets
> in original)." **Steel Co. v. Citizens for Better Environment, 523 U.S. 83,
> (1998)**                                          Pg 2

4.     But, where there is no record from the District Court below to rely upon, the
D.C. Court of Appeals is most likely awaiting a decision by this Court on the
virtually identical Jurisdictional issues raised by Amicus Cox in this case.

### Status Of This Case

5.     It is reasonable to conclude that Plaintiff had knowledge of the Amicus Brief
filed by Mr. Cox in the D.C. Court of Appeals, yet failed its duty to cite and argue
this Court's Jurisdiction under the Precedent of **Nixon** in this case.

6.     Nor did Plaintiff amend its Complaint to consider the Jurisdictional Test
after the Court allowed Trump to Intervene or when Mr. Cox filed his Motion for
Leave to Intervene with his Answer In Intervention which was based upon **Nixon**.

7.     Instead, Plaintiff filed Motions to Expedite and for Summary Judgement in
an obvious attempt to avoid the Motion to Dismiss Phase normally followed, and
when this Court issued its Memorandum and Order denying Petitioner's Motions
to Expedite and for Summary Judgement, plainly stating its intent to follow the
normal judicial sequence including the Motion to Dismiss Phase, Plaintiff again
failed to amend its Complaint to address the Jurisdictional mandate of **Nixon**.

8.     On 6 September 2019, Defendants filed their 60 page Motion To Dismiss and
Amicus filed and served a 15 page Amicus Brief pursuant to an Order of the Court,
which Brief argued for Dismissal For Lack of Jurisdiction pursuant to **Nixon**.

9.     On 20 September 2019, an Amicus Brief was filed for "Former Counsels and
Acting Attorney Counsels" (**Docket 52**) and another for "Constitutional Scholars"
(**Docket 54**), both in support of Plaintiff. And on 23 September 2019, Plaintiff filed

its 65 page Memorandum in Opposition to Defendant's Motion to Dismiss (**Docket 55**).

## Legal Ramifications

10.    The Jurisdictional test mandated by **<u>Nixon</u>**, as applied in this case, is based upon the reality that both the Legislature and the Executive Branch or President have separate powers.  And that before this Court can have Jurisdiction in this lawsuit filed by the Legislative Branch against the President, it must be shown that the *"legislative benefit"* that will result for the House Committee on Ways and Ways having access to the personal tax returns of the President and his eight business entities is greater than the *"dangers of intrusion on the authority and functions of the Executive Branch"* which result form the *"diversion of the energies"* of the President in personally defending "the hundreds to thousands of questions" (**<u>Amicus Brief, Hereafter AB, Pg 9, 1ˢᵗ Para</u>**.) which will surely be asked by the Plaintiff Committee Members and the Media, even though "the President is bared from participating in his companies while President" (**<u>Id.</u>**).

11    From the filings we understand the various arguments and defenses raised by Plaintiff in its Response to Defendants Motion To Dismiss (**Docket 55**), the Amicus Brief Of Former General Counsels And Acting Attorney General Counsels (**Docket 42**) and the Amicus Brief Of Constitutional Scholars (**Docket 44**) - include but are not limited to:

> *"the Congressional power to obtain information"; protecting "the House's constitutional authority"; may "vindicate their rights and powers to obtain information by bring suit"; "section 6103(f) vests the committee with the right to obtain information"; lawsuit is consistent with separation of powers": "the*

Pg 4

*court has statutory subject matter jurisdiction"; "there is no basis for abstention ... to promote compromise"; "Plaintiff has several causes of action"; "concern about the Audit Program"; "the court has subject matter jurisdiction"; "Defendants Arguments ... Are Meritless"; Committee's injuries are concrete and particularized"; "case presents issues amenable to judicial review"; "Adjudication will not violate separation of powers"; "Committee is authorized to bring suit"; "court has subject matter jurisdiction"; "Congress can sue to enforce its subpoenas under section 1331"; "accommodation is impossible"; "Committee can seek relief under Article I"; "Committee can invoke ... traditional equity powers"; "Committee can obtain declaratory relief"; "APA review is not precluded"; "Committee is a "person aggrieved"" ; "Mandamus is available"; "Non-statutory review" is available;  "Article III Standing" to maintain its subpoena enforcement action;  the "Power of Inquiry" of the House of Representatives;  the "process to enforce it [the Subpoena]; "whether the entity that issued the subpoena has standing to enforce it";  whether "judicial abstention would not just hand the Executive a victory in its effort to resist this subpoena but also disturb the functioning of Congressional oversight more generally"; the "scope" of Congress's investigative power; the power to issue subpoenas; that Congress may seek judicial enforcement of its subpoenas; the power to "certify a contempt citation for criminal prosecution"; even the admittedly unlikely "dispatch [of] its sergeant-at-arms to arrest a non-compliant subpoenaed official"; coercion such as "refusing to provide funding for the Executive's preferred programs"; that Congress suffers a judicially cognizable injury when the Executive refuses to comply with a duly authorized subpoena" etc. etc.*

### But no argument that Jurisdiction is proper under <u>Nixon v. Fitzgerald</u>.

12.    The plain and simple result or effect of the comparison **Mandated** by the

Judicial Test in **<u>Nixon</u>** does not turn on any of the defenses or arguments presented

by Plaintiff and supporting Amicus Brief's.  It turns solely upon the expected

resultant ***Benefit***" to be gained if the Legislative issued Subpoena is honored as

compared to the "***[D]angers of intrusion on the authority and functions of the***

***Executive Branch***" from the "***diversion of his [President Trump's] energies***".

In this manner **<u>Nixon</u>** operates to provide a range of outcomes depending upon

whether or not the object of the lawsuit or subpoena filed against the President

involves purely ministerial functions or discretionary functions which oft times

require innovative or novel actions such as the President's duty to protect the

Nation from attack by an adversary, to protect citizens from the smuggling of drugs

into the country, his efforts to negotiate treaties, or even to identify and implement

methods to assure that nuclear weapons are not smuggled into the U.S. or other

countries by a foreign enemies, or even defend against attacks on the American

citizens or infrastructure by disaffected individuals living amongst America's

citizenry.

### Applicable Case Law

13.     There exists a number of circumstances where individuals enjoy immunity.

> "The list of those entitled to absolute immunity from civil liability includes
> the President of the United States for his official acts, *Nixon v. Fitzgerald*,
> 457 U.S. 731, 756 (citations omitted); members of Congress for their
> legislative acts, regardless of motive, under the Speech and Debate Clause,
> U.S. Const. Art. 1, Section(s) 6 (citations omitted); judges in courts of general
> jurisdiction for judicial acts, *Stump v. Sparkman*, 435 U.S. 349, 359-60
> (citations omitted); prosecutors for prosecutorial functions, *Imbler v.
> Pachtman*, 424 U.S. 409, 427; and, certain executive officials performing
> certain judicial and prosecutorial functions in their official capacities,
> *Butz*,438 U.S. at 514-15 (citations omitted).  In addition, witnesses are
> entitled to absolute immunity from civil suit for testimony given in judicial
> proceedings, *Briscoe v. LaHue*, 460 U.S. 325, 334. ..." **Jones v. Clinton, 72
> F.3d  1354 (8th Cir. 1996)**,

14.     Clearly, the President is faced with a myriad of Presidential situations,

ranging from ministerial duties to those which require great deliberation and

discretion affecting National interests affecting thousands to millions of citizens.

Although **Nixon** clarifies that there is no Presidential immunity to lawsuits for

damages resulting from unofficial acts of a President or acts committed by before he

was elected to be President, it arguably provides a "Jurisdictional Test" which

**"must"** be performed before a Court accepts Jurisdiction over cases involving

the President or Executive Branch (**Amicus Brief, @ 2, Pg 2**). For example:

> "However, "a court, before exerting jurisdiction, must balance the
> constitutional weight of the interest to be served against the dangers of
> intrusion on the authority and functions of the Executive Branch."  Nixon v.
> Fitzgerald, 457 U.S. at 754, 102 S.Ct. 2690.  A four justice plurality of the
> Supreme Court has explained that while "in general this court has no
> jurisdiction of a bill to enjoin the President in the performance of his official
> duties," Mississippi v. Johnson, 71 U.S. (4 Wall) 475, 499, 18 S.Ct. 437 (1866)
> "left open the question whether the President might be subject to judicial
> injunction requiring the performance of a purely 'ministerial' duty." Franklin,
> 505 U.S. at 802-03, 1122 S.Ct. 2767 (Plurality opinion) (quoting Mississippi
> v. Johnson" **Knight First Amendment Institute v. Trump, 302 F. Supp.
> 3d 541 @ 579 (U.S. Dist. Ct., S.D. New York 2018)**

15.     And, in Centro Presente v. U.S. Dept. Of Homeland Sec., President Trump

was Dismissed as a Defendant pursuant to **Nixon** stating that:

> "a court, before exerting jurisdiction, must balance the constitutional weight
> of the interest to be served against the dangers of intrusion on the authority
> and functions of the Executive Branch.") **Centro Presente v. U.S. Dept. Of
> Homeland Sec., 332 F. Supp. 3d 393, 419 (U.S. Dist. Ct., Mass. 2018)**

16.     Amicus argues that the precedent of **In re Request for Access to Grand**

**Jury (Records), 833 F.2d 1438 (11th Cir. 1987)** is perhaps the most directly

on point where the Committee on the Judiciary of the U.S. House of Representative

sought "immediate access to all the confidential records of Grand Jury No. 81-1-GJ

(MIA) for use in connection with the Committee's impeachment inquiry concerning

United States District Judge Alcee L. Hastings."   In this case, the Court stated:

> "The decisive question before us is whether the Committee on the Judiciary

has made a showing of particularized need to warrant disclosure of the grand jury materials requested. (**Id., Pg 1142**)

17.     And then the Court adopted the Jurisdictional Test of **Nixon** ascribing the test to be against the "Judicial Branch" instead of the "Executive Branch" .

> "Under proper separation of powers analysis, we "must balance the constitutional weight of the interest to be served against the danger of intrusion on the authority and functions of the [Judicial] Branch." *Nixon v. Fitzgerald,* 457 U.S. 731, 754. 102 S.Ct. 2690, 2703, 73 L.Ed2d 349 (1982). ..." (**Id., Pg 1144**

18.     Then expressing the logic behind the court's Jurisdictional considerations, which would be parallel in content to the logic used in disputes concerning the Executive Branch instead of the Judicial Branch, stating in relevant parts:

> "The issue is whether action by the legislative branch in pursuance of its lawful authority has the potential to prevent the judicial branch from "accomplishing its constitutionally assigned functions" of protecting grand jury secrecy. *Nixon v. Administrator of General Services,* 433 U.S. 425 (citations omitted) (1977). Where the potential for disruption of the judicial function is present, we must decide whether the impact is justified by an overriding need to promote objectives within the constitutional authority of Congress." *Id.* ... we hold, taking into account the doctrine of separation of powers that a merely generalized assertion of secrecy in grand jury materials must yield to a demonstrated specific need for evidence in a pending impeachment investigation." **Id, Pg 1444-45**

19.     From these examples, we know for certain that other Jurisdictions are following the mandated Jurisdictional Test presented in the Precedent of **Nixon** in making their judicial decisions. And the use of this precedent by the 11th Circuit is the most similar to the circumstance of this case where the House Ways & Means Committee is requesting records from Executive Branch but in **In re Request for Access to Grand Jury, (Records) 833 F.2d 1438,** the House Judiciary

Committee is requesting Grand Jury records from the Judicial Branch.

20.     And other principles are also important:

> "Under the checks and balances provided for in the Constitution, all branches have the capacity to intrude in some way upon the province of the other branches.  But under the Constitution, and because of those same checks and balances, ***no one branch may intrude upon another to such an extent that the threatened branch is rendered incapable of performing its constitutionally assigned duties***."  **Jones v. Clinton, 72 F.3d 1354, 1362 (8th Cir. 1996)** [Emphasis Added]

> "... whatever immunity the President enjoys flows by implication from the separation of powers doctrine, which itself is not mentioned in the Constitution, but is reflected in the division of powers among the three branches.  See US. Const. Arts. I, II, III"  **Jones v. Clinton, 72 F.3d 1354,1360  (8th Cir. 1996)**

21.     In contrast to Mr. Clinton, Amicus in his Amicus Brief devoted pages 3-14 to

the actual presentation of the Jurisdictional test of **Nixon** including the specific

responsibilities which Amicus argues would be intruded upon in order to

demonstrate that the President and/or Executive Branch are entitled to Dismissal

for Lack of Jurisdiction.

> "... Mr. Clinton's sweeping claim that this suit will allow the judiciary to interfere with the constitutionality assigned duties of the Executive Branch, and thus will violate the constitutional separation of powers doctrine if immunity is not granted, ***without detailing any specific responsibilities or explaining how or the degree to which they are affected by the suit*** ... is insufficient ground for granting presidential immunity, even temporarily.  See *Butz*, 438 U.S. at 506, 98 S.Ct. at 2910.  ("[F]ederal officials who seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope"): *cf.* United States v. Nixon 418 U.S. 683 (Citations Omitted).  **Jones v. Clinton, 72 F.3d 1354, 1362 (8th Cir. 1996)** [Emphasis added]

22.     The Cox Amicus Brief satisfies the "burden of showing that public policy

requires an exemption", that immunity is therefore justified from the Plaintiff's

attempts to obtain Trump's tax returns and related documents/records, and that

this case must be Dismissed for Lack of Jurisdiction pursuant to the Jurisdictional

Test of **Nixon.**   And the Amicus Brief and the arguments there-in contained two

specific, reasonable examples, which demonstrate the unacceptable risk and

### *"dangers of intrusion on the authority and functions of the Executive*

*Branch"* which will result if Plaintiff obtains access to the voluminous tax returns

and associated records.  And even though the rationale there-in is based upon

"threatened breaches of Presidential prerogatives" and powers from the distraction

of the President from his duties, this Court must accept this analysis in the interest

of preserving the balance of power between the Legislative and Executive Branches

where **Nixon** provides a common sense Jurisdictional Test which assures that the

Legislative powers and immunity under the Speech and Debate Clause do not

infringe upon these Presidential/Executive powers and prerogatives.

> "There is a "special solicitude due to claims alleging a threatened breach of essential Presidential prerogatives under the separation of powers."" **Jones v. Clinton, 72 F.3d 1354, 1360 (8th Cir. 1996)**

23.     As Justice Scalia has stated:

> ""Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 7 Wall, 506, 514 (1869).  "On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first of this court, and then of the court from which the record comes.  This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." *Great Southern Fire Proof Hotel Co. V. Jones,* 177 U.S., supra, at 453.  The

Pg 10

requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Mansfield, C. & L. M. R. Co v. Swan*, <u>111 U.S. 379 (/supct-cgi/get-us-cite?111+379)</u> 382 (1884)." **Steel Co. v. Citizens for Better Environment, 523 U.S. 83 (1998)** [Scalia Opinion]

### Conclusions

24.     Plaintiff had the burden in its Complaint of demonstrating that this Court had Jurisdiction pursuant to **Nixon**.  And Plaintiff had multiple opportunities to Amend its Complaint to do so, but failed to meet its burden.  Which alone may be grounds for Dismissal where Paintiff on at least 3 occasions failed to meet its burden to demonstrate Jurisdiction pursuant to **Nixon**.

> "Grace Drilling was given two opportunities to present the results and lay appropriate foundation for receiving them into evidence.  Grace declined on both occasions. ... we do not believe granting parties 'three bites at the apple' is consonant with efficient administrative procedure.  Grace Drilling had ample opportunity to present its case and failed to meet its burden." **Grace Drilling v. Ind. Comm., 776 P.2d 63 (Ut. Ct. App. 1989)**

25.     Further, the case law presented here-in clearly demonstrates the genius of the Precedent of **Nixon** where we are instructed to understand that in disputes between the Legislative Branch and the Executive Branch the application of the mandated (**Must**) Jurisdictional Test of **Nixon** will militate in favor of the Legislature on issues that are ministerial Executive Duties, but in cases like this one and Trump v. Mazars & Oversight Committee where the benefit to be derived from the Congressional Subpoenas and resulting "Investigation" is and will be de-minimus (**A.B., Pg 4-8**) but the distraction and  the intrusion upon the Presidency (**A.D., Pg 8-14**) and the discretionary decision making function of the President in

responding to the dynamic  real time problems like the shoot down of our drone by

Iran and the risks associated with North Korea and its use of a nuclear bomb (**A.B.,**

**Pg 8 & 12-13**), or now the destructive attack on the Saudi oil distribution system

which happened this last week, by the President and Executive Branch would be

enormous, the Test of **Nixon** militates in favor of the President and Executive

Branch.  This because it has been held that *"no one branch may intrude upon*

*another to such an extent that the threatened branch is rendered incapable*

*of performing its constitutionally assigned duties*." **Jones v. Clinton, 72**

**F.3d 1354, 1362 (8ᵗʰ Cir. 1996)** [Emphasis Added].  America simply cannot afford

to have a "distracted" President.

26.     Said another way, the precedent of **Nixon** operates in all legal disputes to

give the Executive Branch the same level of immunity that the Legislative Branch

has under the Speech and Debate Clause whenever there exists a threat to the

Executive Branch which rises to the level that the Executive Branch may not be

able to perform its Constitutional duties. (**A.D., Pg 10-11**)

27.     The Jurisdictional Test included in the Cox Amicus Brief (**A.B., Pgs 3-14**)

demonstrates that the benefit to the legislative process would be de-minimus while

the "dangers of intruding on the authority and functions of the Executive Branch

and/or President would be unacceptably enormous.

28.     And one only had to sit through the recent Lewandowski Judiciary Hearing

convened by Congressman Nadler to have a **very small taste** of the disruption to

the Presidency and Executive Branch which would result should any of the House

Committees ever obtain access to the tax returns and related financial records of President Trump and his many (eight or so) business entities as sought in this case.

29.    Thus Amicus argues that this Court must apply the Jurisdictional Test as Amicus has done in his Amicus Brief, which result will be a decision in favor of the President and Executive Branch pursuant to Rule 54c, Fed. Rule Civ. Proc. <u>even though President Trump has not argued pursuant to **Nixon** in his pleadings</u>.

30.  For the above reasons, this Case must be Dismissed for Lack of Jurisdiction and the associated Subpoena quashed.

Duane Morley Cox, Amicus/Pro Se

Date 29 Sept 2019 2:10 AM

Certificate Of Service

I, Duane Morley Cox, Pro Se, does hereby swear that on 24 September 2019 that I did serve a true and correct copy of the attached Amicus Brief pursuant to court Order to the below listed parties by first class mail, postage prepaid.

Clerk's Office (Original)
U.S. District Court
District of Columbia
Room 1225
333 Constitution Avenue, NW
Washington D.C. 20001

Steven A. Myers et., al.
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044

Lawrence S. Robbins, et. al
2000 K. Street, N. W., 4th Floor
Washington D.C. 20006

Office Of General Counsel
U.S. House of Representatives
291 Cannon House Office Building
Washington, D.C. 20515

Joshua Matz
Kaplan Hecker & Fink LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118

Laurence H. Tribe
Hauser Hall 420
1575 Massachusetts Ave.
Cambridge, MA 02138

Duane Morley Cox, Amicus, Pro Se

24 Sept 2019
Date @ 2:10 Am

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

**UNITED STATES POSTAL SERVICE**®

*Retail*

**P**

US POSTAGE PAID

**$7.35**

Origin: 84199
09/24/19
4978050007-19

PRIORITY MAIL 2-DAY®

0 Lb 3.70 Oz

1004

EXPECTED DELIVERY DAY: 09/26/19

C003

SHIP
TO:
333 CONSTITUTION AVE NW
WASHINGTON DC 20001-2802

USPS TRACKING NUMBER

9505 5100 2089 9267 3580 68

To schedule free
Package Pickup,
scan the QR code.

USPS.COM/PICKUP

FROM:

Morley and Jeanne Cox
1199 Cliffside Drive
Logan, UT 84321

PRIORITY MAIL
FLAT RATE
POSTAGE REQUIRED

TO:

Clerks Office
US District Court
District of Columbia
Room 1225
333 Constitution Avenue
Washington D.C. 20001

* Domestic only.   ✕ For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.