IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, | ) ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) No. 1:19-cv-1974 (TNM) |
| UNITED STATES DEPARTMENT OF THE TREASURY, *et al.* | ) ) ) |
| *Defendants*, | ) ) |
| DONALD J. TRUMP, *et al.*, | ) ) |
| *Defendant-Intervenors.* | ) ) |

**DEFENDANTS' AND DEFENDANT-INTERVENORS'
SUPPLEMENTAL MEMORANDUM**

Defendants and Defendant-Intervenors respectfully submit this memorandum in response to the Court's October 15, 2019, Order inviting the parties to file supplemental briefing concerning the D.C. Circuit's recent decision in *Trump v. Mazars USA, LLP*, No. 19-5142, 2019 WL 5089748 (D.C. Cir. Oct. 11, 2019).

In *Mazars*, President Trump and several affiliated organizations and entities filed suit against their accounting firm and the Committee on Oversight and Reform of the House of Representatives[1] ("Oversight Committee"[2]) challenging the validity of a subpoena that the

---

[1] In addition to Mazars, the complaint originally named as defendants then-Chairman of the Oversight Committee Elijah Cummings, as well as Peter Kenny, the Chief Investigative Counsel of the Oversight Committee. On agreement of the parties, the Oversight Committee intervened as a defendant and Chairman Cummings and Mr. Kenny were dismissed.

[2] To avoid confusion, Defendants refer to the Committee in *Mazars* as the "Oversight Committee" and refer to the Plaintiff in this case as "Plaintiff" or the "Committee."

1

Oversight Committee issued to Mazars for several categories of the plaintiffs' financial records. *See* 2019 WL 5089748, at *3. On October 11, a divided D.C. Circuit panel affirmed the district court's grant of summary judgment to the Oversight Committee, concluding that the subpoena was valid. *Id.* at *1.

The decision in *Mazars* focused solely on the merits of whether the Oversight Committee's subpoena to Mazars is valid and enforceable, 2019 WL 5089748, at *20-66, and is not directly relevant to Defendants' pending motion to dismiss, ECF No. 44 ("Mot."). Defendants' motion to dismiss raises exclusively threshold issues unrelated to the merits—none of which were addressed by the court in *Mazars*. These include (1) whether the Committee possesses Article III standing to enforce its informational inquiries against the Executive Branch; (2) whether there is a statutory basis for subject-matter jurisdiction over such an enforcement claim; (3) whether the parties have exhausted the constitutionally mandated accommodation process; (4) whether the Committee has a cause of action to enforce its subpoenas and requests under 26 U.S.C. § 6103(f); and (5) whether the Committee may invoke the Administrative Procedure Act ("APA"), the mandamus statute, or a non-statutory *ultra vires* theory. *See* Mot. at 13-59. The D.C. Circuit did not address any of these issues.

Unlike this case—in which a committee of the House has come to court to vindicate solely an asserted "institutional injury" at the hands of the Executive Branch—*Mazars* is an action brought by the President and several business entities seeking to clarify the legal obligations of Mazars (a private business) with respect to a congressional subpoena. *See Trump v. Committee on Oversight and Reform of U.S. House of Representatives*, 380 F. Supp. 3d 76, 88 (D.D.C. 2019). Because *Mazars* involves a determination of the legal obligations of a private party to disclose information pursuant to a congressional subpoena, the case involves the assertion and

"adjudication of individual rights" that is absent in the Committee's suit here. *See* Mot. at 33 (making similar point about *United States v. AT&T*, 551 F.2d 384 (D.C. Cir. 1976)). *Mazars* similarly did not involve an effort by a component of Congress to invoke the jurisdiction of the federal courts to vindicate an abstract injury to its legislative power.

Although *Mazars* does not directly involve or address the threshold issues raised by Defendants' motion to dismiss, the decision nevertheless provides support for Defendants' threshold arguments. *Mazars* made clear that, under settled Supreme Court precedent, Congress's power of inquiry is "subject to several key restraints." 2019 WL 5089784, at *7. Specifically, a committee of Congress may compel access to information if and only if (1) the information is sought for a legitimate legislative objective; (2) the committee "is investigating a subject on which constitutional legislation 'could be had'"; and (3) the information sought is "sufficiently relevant to the [c]ommittee's legislative inquiry." *Id.* at *8 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 177 (1927)). These conclusions support Defendants' threshold arguments in at least three respects.

First, *Mazars* undermines the Committee's attempted assertion of informational injury to support standing. The panel affirmed that a congressional request for information is valid only to the extent it furthers a legitimate legislative purpose. *See, e.g.*, 2019 WL 5089748, at *14 ("Because Congress may only investigate into those areas in which it may potentially legislate or appropriate, a congressional committee may issue only those subpoenas that are intended to gather information about a subject on which legislation may be had." (cleaned up)). That principle confirms that the Committee has no legally cognizable interest in confidential tax information for its own sake and thus cannot rely on a theory of standing under which its injury is defined solely in informational terms; rather, the Committee's asserted injury is necessarily institutional in nature and thus insufficient to establish Article III standing under *Raines v. Byrd*, 521 U.S. 811 (1997).

*See* Mot. at 20-23.  The potential exception for "nullification" described in *Raines* does not apply to federal legislators and is inapplicable even on its own terms.  Mot. at 20-23.

Second, *Mazars* emphasized that, "particularly in separation-of-powers disputes, we put significant weight upon historical practice."  2019 WL 5089748, at *18 (quoting *Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2091 (2015)).  As Defendants have explained, longstanding historical practice demonstrates that the injury the Committee asserts in this action is not one traditionally deemed capable of redress through the judicial process.  *See* Mot. at 15-18; *Walker v. Cheney*, 230 F. Supp. 2d 51, 73-74 (D.D.C. 2002) ("In the end, given that the Article I and Article II Branches have been involved in disputes over documents for more than two hundred years, what is most striking about the historical record is the paucity of evidence that the instant lawsuit is of the sort traditionally amenable to, and resolved by, the judicial process." (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000))).  *Mazars* reaffirmed the "significant weight" that history should receive.

Third, by affirming that a congressional request for information is not valid unless, at a minimum, (1) it serves a legitimate legislative purpose, (2) relates to a topic on which constitutional legislation may be had, and (3) is reasonably relevant to that purpose, the *Mazars* opinion underscores why counts VI and VII of the Complaint in this case (for mandamus and non-statutory review) fail to state a claim.  As Defendants have shown, the Committee cannot make out a claim for mandamus unless, among other requirements, Defendants' obligation to provide the President's tax-return information to the Committee was "clear and indisputable," Mot. at 57, and it cannot make out a non-statutory review claim unless Defendants, in refusing to disclose that information, acted "without any authority whatever," *id.* at 58 (citation omitted).  The majority in *Mazars* engaged in more than 40 pages of analysis before determining that the subpoena to Mazars

satisfied the relevant legal requirements to be valid and enforceable. That fact alone—not to mention the equally lengthy analysis in Judge Rao's dissent—demonstrates that any duty to disclose the President's personal tax information in response to an inquiry from the Committee is not so clear and "free from doubt" as to support a claim in mandamus. *Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 366 F. Supp. 51, 57 (D.D.C. 1973). Nor does the *Mazars* decision itself resolve the many questions regarding the validity of the subpoenas and section 6103(f) request at issue in *this* case, which have been propounded by a different committee (Ways and Means) with a different legislative jurisdiction (revenue legislation) for an entirely different stated purpose (the purported desire to understand the Presidential audit process), thus necessitating an entirely different factual analysis than the one performed in *Mazars*. And here, moreover, Defendants are required by statute to preserve the confidentiality of tax return information absent a valid exception codified under section 6103. Mot. at 6-7. Thus, to fulfill Defendants' obligation to faithfully execute section 6103 and the Constitution in response to the subpoenas and the section 6103(f) request, before releasing any tax return information to the Committee, Defendants needed to address the "thorny" issues the majority and dissent collectively spent more than 100 pages analyzing. *See* 2019 WL 5089748, at *8-54.[3] These distinctions are fatal to the Committee's non-statutory review claims as well. *See* Mot. at 58-59.

Notwithstanding these points, the Committee may argue that the discussion in *Mazars* about whether the subpoena was properly "authorized" supports its ability to bring suit here. Defendants anticipate that the Committee may advance two variants of such an argument, both of which would be wrong.

---

[3] The Westlaw pagination differs from the slip opinion, which is 134 pages.

First, the Committee may contend that *Mazars* supports its contention that a vote of the Bipartisan Legal Advisory Group is sufficient to authorize this lawsuit, such that a vote of the full House was not required.  To be sure, *Mazars* held that given the delegation of subpoena power to the Oversight Committee in the House Rules, the full House did not need to authorize *issuance* of the subpoena in that case.  See *Mazars*, 2019 WL 5089748, at *24 ("[C]ourts lack the power to invalidate a duly authorized congressional subpoena merely because it might have been better if the full House had specifically authorized or issued it." (cleaned up)).  That holding is not relevant to the pending motion to dismiss, which does not contend that the entire House needed to authorize the issuance of the subpoena, or the section 6103(f) request, that are the subjects of this litigation.

What Defendants and Defendant-Intervenors have instead argued is that Article III, as interpreted by *Raines v. Byrd*, 521 U.S. 811 (1997), requires that, at a minimum, the House as a whole authorize a *lawsuit* against the Executive Branch to enforce the subpoena.  See Mot. at 26-29; *Reed v. Cty. Comm'rs of Del. Cty., Pa.*, 277 U.S. 376, 389 (1928) ("Authority to exert the powers of the Senate to compel production of evidence differs widely from authority to invoke judicial power for that purpose.").  The reasoning of *Mazars* with respect to authorization to *issue* subpoenas (with which Defendants respectfully disagree), simply does not extend to that issue.  Indeed, notwithstanding the court's recognition that the House has wide latitude to set the rules of its *own* proceedings, 2019 WL 5089748, at *24, *Mazars* expressly recognized that such latitude is not boundless:  Congress cannot "adopt[] a rule that offends the Constitution." *Id.*  Permitting the House to conscript the courts into a weighty inter-branch conflict absent assurances that the entire House wants the Court to resolve such a conflict would offend the Constitution, which is presumably why, prior to 2019, the House always held votes on specific lawsuits before filing them.  See Mot. at 28 n.16; Reply at 14 n.4, ECF No. 59.  If there were any doubt, it is answered

by *Walker v. Cheney*, which held that a prospective delegation of authority to sue was insufficient even where set out in a federal *statute*.  *See* 230 F. Supp. 2d at 69-75.  As interpreted by *Raines*, the Constitution requires that, at a minimum, the House authorize litigation against the Executive Branch; the House may no more delegate that function to a subset of its members than it may delegate the approval of legislation.  In any case, even if this requirement did not flow from Article III, given the weighty questions presented by inter-branch litigation of this kind, it would remain appropriate for this Court to decline to hear this lawsuit unless and until the House as a whole confirms that it wishes the courts to confront and resolve the separation-of-powers issues raised by such a suit.  *See generally* Mot. at 38-44.

Second, the Committee may argue that the majority's rejection in *Mazars* of a "clear statement rule" in the context of determining whether the subpoena was authorized by the full House, 2019 WL 5089748, at *23, supports the Committee's ability to invoke generally applicable jurisdictional statutes and causes of action here, including 28 U.S.C. § 1331 and the APA.  Any such argument would be misguided.  The *Mazars* panel considered whether the House should be required to provide a committee with an "unequivocal" grant of authority to subpoena the personal financial records of a sitting President before the committee may seek such records.  *Id.*  In concluding that no such requirement is warranted, the majority reasoned that a clear-statement rule is required where a statute, depending on how it were interpreted, might affect the constitutional balance of powers between the elected branches.  *Id.*  But in the majority's view, such a requirement was unnecessary when it comes to interpreting the House rules authorizing the Mazars subpoena, because, as the majority saw it, those rules "have no effect whatsoever on 'the balance of power *between* Congress and the President.'"  *Id.* (emphasis in *Mazars*, quoting *Armstrong v Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991)).  That is to say, the panel's determination was that the

House rules did not affect whether Congress itself possessed the power to issue the subpoena but merely whether that power had been delegated to the Oversight Committee and appropriately exercised under the House rules. *Id.*[4]

In so holding, however, the majority specifically reaffirmed that there *are* compelling reasons to require a clear statement before interpreting "'*statutes* [in a way] that significantly alter[s] the balance [of power] between Congress and the President.'" 2019 WL 5089748, at *23 (emphasis added, quoting *Armstrong*, 924 F.2d at 289). Those considerations are clearly present here. Interpreting generally applicable statutes like the APA and 28 U.S.C. § 1331 to permit the type of lawsuit the Committee brings here would unquestionably discourage Congress from using its own powers under Article I to resolve disputes with the Executive Branch over access to information. For example, as Defendants have previously explained, such an interpretation would reduce Congress's incentive to engage in the constitutionally mandated accommodations process and encourage Congress to legislate new rights for itself. *See* Mot. at 18 n.10, 23-26; Reply at 10-11. That outcome would also transform the Judiciary into a referee of disputes between the political branches. *See* Mot. at 23-25. It would also permit a potential end-run around the requirements of bicameralism and presentment—the bare minimum the courts should require before wading into direct conflicts between the political branches. Thus, the discussion in *Mazars* about why a clear statement-rule was not warranted there (because the House rule authorizing the subpoena did not affect the balance of powers) merely serves to highlight why a clear-statement

---

[4] The majority also stated that to "interpret[] a congressional rule differently than would the Congress itself" is not warranted because "'the Rulemaking Clause reserves to each House alone'" the power to make rules. 2019 WL 5089748, at *25 (quoting *Barker v. Conroy*, 921 F.3d 1118, 1130 (D.C. Cir. 2019)). That rationale, of course, does not apply to statutes, which are subject to bicameralism and presentment, and thus must speak clearly if intended to dramatically depart from historical practice and significantly alter the relationship between the political branches.

rule *is* appropriate in the context of the statutory jurisdiction and cause-of-action questions presented here, which carry far-reaching implications for the separation of powers among the branches.

## CONCLUSION

Defendants and Defendant-Intervenors respectfully request that the Court grant their motion to dismiss.

Dated:  October 22, 2019          Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

JAMES J. GILLIGAN
Special Litigation Counsel

   /s/  *Andrew M. Bernie*
STEVEN A. MYERS (NY Bar No. 4823043)
SERENA M. ORLOFF (CA Bar No. 260888)
ANDREW BERNIE (DC Bar No. 995376)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O.  Box 883
Washington, D.C.  20044
Tel: (202) 616-8488
Fax: (202) 305-8470
Email: Andrew.M.Bernie@usdoj.gov

*Attorneys for Defendants*



  */s/ William S. Consovoy*
William S. Consovoy (D.C. Bar #493423)
Cameron T. Norris
Steven C. Begakis

                                            Consovoy McCarthy PLLC
                                            1600 Wilson Boulevard, Suite 700
                                            Arlington, VA 22209
                                            (703) 243-9423
                                            will@consovoymccarthy.com

                                            Patrick Strawbridge
                                            Consovoy McCarthy PLLC
                                            Ten Post Office Square, 8th Floor
                                            South PMB #706
                                            Boston, Massachusetts 02109
                                            (617) 227-0548

                                            *Attorneys for Defendant-Intervenors*