**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, *Plaintiff*, v. UNITED STATES DEPARTMENT OF THE TREASURY, *et al.*, *Defendants*, DONALD J. TRUMP, *et al.*, *Defendant-Intervenors*. | Case No. 19-cv-01974-TNM |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. ii

INTRODUCTION ................................................................................................................................ 1

I.   *Mazars*' Reasoning Establishes That No Separate Resolution Of The House Of Representatives Was Required To Authorize This Suit ........................................................ 1

II.  *Mazars*' Reasoning Confirms That Federal Courts Are Fully Empowered To Resolve This Controversy ................................................................................................................... 4

III. *Mazars* Does Not Support Defendants' Clear-Statement Argument .................................... 7

IV.  Defendants' Arguments On Mandamus And Non-Statutory Review Are Incorrect ......... 10

## TABLE OF AUTHORITIES

### CASES

*Am. Fed'n of Gov't Employees v. Pierce*,
　　697 F.2d 303 (D.C. Cir. 1982) ............................................................................................. 6

*Armstrong v. Bush*,
　　924 F.2d 282 (D.C. Cir. 1991) ............................................................................................. 9

*Bldg. & Const. Trades Dep't, AFL-CIO v. Reich*,
　　40 F.3d 1275 (D.C. Cir. 1994) ............................................................................................. 5

*INS v. Chadha*,
　　462 U.S. 919 (1983) ............................................................................................................. 2

*Chamber of Commerce v. Reich*,
　　74 F.3d 1322 (D.C. Cir. 1996) ........................................................................................ 9, 10

*Committee on the Judiciary v. Miers*,
　　558 F. Supp. 2d 53 (D.D.C. 2008) .................................................................................... 5, 7

*Committee on Oversight and Government Reform v. Holder*,
　　979 F. Supp. 2d 1 (D.D.C. 2013) ......................................................................................... 5

*Eastland v. U.S. Servicemen's Fund*,
　　421 U.S. 491 (1975) ............................................................................................................. 3

*Exxon Corp. v. FTC*,
　　589 F.2d 582 (D.C. Cir. 1978) ......................................................................................... 3, 4

*Franklin v. Massachusetts*,
　　505 U.S. 788 (1992) ............................................................................................................. 9

*Marshall Field & Co. v. Clark*,
　　143 U.S. 649 (1892) ............................................................................................................. 2

*Nixon v. Adm'r of Gen. Servs.*,
　　433 U.S. 425 (1977) ........................................................................................................... 10

*Public Citizen v. U.S. Dep't of Justice*,
　　491 U.S. 440 (1989) ............................................................................................................. 6

*Raines v. Byrd*,
　　521 U.S. 811 (1997) ......................................................................................................... 4, 7

*Reed v. Cty. Comm'rs of Del. Cty.*,
　　277 U.S. 376 (1928) ............................................................................................................. 4

*Senate Select Committee on Presidential Campaign Activities v. Nixon*,
    498 F.2d 725 (D.C. Cir. 1974) ...................................................................................5

*Trump v. Mazars USA, LLP*,
    No. 19-5142, 2019 WL 5089748 (D.C. Cir. Oct. 11, 2019) ...................................... passim

*United States v. American Tel. & Tel. Co.*,
    551 F.2d 384 (D.C. Cir. 1976) ...................................................................................8

*United States v. American Tel. & Tel. Co.*,
    567 F.2d 121 (D.C. Cir. 1977) ...................................................................................5

*United States v. Ballin*,
    144 U.S. 1 (1892) ......................................................................................................2

*Walker v. Cheney*,
    230 F. Supp. 2d 51 (D.D.C. 2002) .............................................................................4

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) ...............................................................................................9, 10

**CONSTITUTIONAL PROVISIONS AND FEDERAL STATUTES**

U.S. Constitution Article I ................................................................................1, 2, 3, 4, 7

U.S. Constitution Article II ................................................................................................10

U.S. Constitution Article III ...................................................................................3, 4, 5, 6

2 U.S.C. § 5571 ..................................................................................................................12

26 U.S.C. § 6103 ............................................................................................................6, 10

28 U.S.C. § 1331 ............................................................................................................7, 8

28 U.S.C. § 1361 ..............................................................................................................10

**LEGISLATIVE MATERIALS**

H. Res. 6, 116th Cong. (Jan. 9, 2019) ..................................................................................1

H. Res. 430, 116th Cong. (June 11, 2019) ..........................................................................1

**INTRODUCTION**

Plaintiff respectfully submits this brief in response to the Court's October 15, 2019 Order inviting the parties to file supplemental briefs on Defendants and Defendant-Intervenors' motion to dismiss (Dkt. 44) in light of the D.C. Circuit's recent decision in *Trump v. Mazars USA, LLP*, No. 19-5142, 2019 WL 5089748 (D.C. Cir. Oct. 11, 2019).[1]

*Mazars* principally addresses issues related to the merits of this dispute rather than the threshold questions of justiciability raised in Defendants' motion to dismiss. The reasoning in *Mazars* does, however, compel the rejection of one argument advanced in the motion to dismiss: the contention that a separate resolution of the House of Representatives was required to authorize the filing of this lawsuit.

Despite acknowledging that the *Mazars* decision does not address the threshold questions in the motion to dismiss (Dkt. 63, at 2), Defendants attempt to draw from *Mazars* implications favorable to their arguments on standing, on statutory subject-matter jurisdiction, and on mandamus and non-statutory review. Their arguments on each of those points are faulty.

**I.   *Mazars'* Reasoning Establishes That No Separate Resolution Of The House Of Representatives Was Required To Authorize This Suit**

In their motion to dismiss, Defendants argue that "the House of Representatives cannot authorize a lawsuit without specifically voting to do so." Dkt. No. 44, at 26 (heading). They contend that even though the full House, by resolution, adopted a House Rule expressly empowering the Bipartisan Legal Advisory Group (BLAG) to determine whether House committees may initiate litigation, that exercise by the full House of its constitutionally granted power to "determine the Rules of its Proceedings," U.S. Const. Art. I, § 5, cl. 2, is insufficient.[2]

---

[1] We will refer to Defendants and Defendant-Intervenors collectively as "Defendants."
[2] *See also* H. Res. 6, 116th Cong. (Jan. 9, 2019) (adopting Rules of 116th Congress); H. Res. 430, 116th Cong. (June 11, 2019) (reaffirming that the "chair of each standing and

Relying on *INS v. Chadha*, 462 U.S. 919 (1983), they insist that "[j]ust as the House could not by resolution delegate to a subset of its members the authority to pass legislation, it cannot provide the BLAG blanket, pre-emptive authority to file whatever legislation it might devise." Dkt. 44, at 27 (citation to *Chadha* omitted).

As explained in Plaintiff's opposition brief, *Chadha* has no application here. *See* Dkt. 55, at 32-36. In *Chadha*, the Supreme Court held the one-house veto unconstitutional because it conflicted with specific provisions in Article I—the bicameralism and presentment requirements, the Presidential veto, and the Congressional veto override. By contrast, the Constitution mandates no specific procedure the Houses of Congress must follow in authorizing participation in litigation. That constitutional silence leaves the matter within each chamber's exclusive control. Absent such express constitutional limitations, the House's and Senate's exercises of their rulemaking authority are "matters of method" that "are open to the determination of the house." *United States v. Ballin*, 144 U.S. 1, 5 (1892); *cf. Marshall Field & Co. v. Clark*, 143 U.S. 649, 671 (1892) (when constitutional clause does not address how each House should exercise a power, the manner of exercise is "left to the discretion of the respective houses of congress").

The decision in *Mazars* fully endorsed those principles in a context that cannot meaningfully be distinguished from the one here. *See* 2019 WL 5089748, at *24-25. The Trump Plaintiffs in *Mazars* made the same argument about a purported full-House authorization requirement that Defendants advance here, based on the same purported separation-of-powers principles, albeit with respect to the method by which subpoenas may be authorized rather than the method by which litigation to enforce a subpoena may be authorized. *See id.* at *24. The

---

permanent select committee, when authorized by the Bipartisan Legal Advisory Group, retains the ability to initiate or intervene in any judicial proceeding before a Federal court on behalf of such committee").

2

*Mazars* court rejected the full-House-authorization argument in no uncertain terms. The federal courts, the D.C. Circuit explained, "have no authority to impose such a requirement on the House," *id.*:

> The Constitution gives "[e]ach House" of Congress authority to "determine the Rules of its Proceedings," U.S. Const. art. I, § 5, cl. 2, meaning that courts lack the power to invalidate a duly authorized congressional subpoena merely because it might have been "better [if] ... the full House" had specifically authorized or issued it, Oral Arg. Tr. 130. *See Eastland* [*v. U.S. Servicemen's Fund*, 421 U.S. 491, 509 (1975)] ("The wisdom of congressional approach or methodology is not open to judicial veto."). To be sure, "the courts will intervene to protect constitutional rights from infringement by Congress, including its committees and members." *Exxon Corp.* [*v. FTC*, 589 F.2d 582, 590 (D.C. Cir. 1978)]. But unless and until Congress adopts a rule that offends the Constitution, the courts get no vote in how each chamber chooses to run its internal affairs. *See id.* ("[W]here constitutional rights are not violated, there is no warrant for the judiciary to interfere with the internal procedures of Congress.").

*Mazars*, 2019 WL 5089748, at *24.

Defendants' efforts to distinguish this portion of the *Mazars* decision are unavailing. Defendants contend that the constitutional principle they invoke—Article III's case-or-controversy requirement—is different from the one that the Trump Plaintiffs in *Mazars* emphasized—the separation-of-powers principle that the branches are co-equal. Dkt. 63, at 6-7. But Defendants never explain why such a distinction should matter. Just as in *Mazars*, Defendants here are asking the Court to impose a full-House-authorization requirement based on an appeal to a general constitutional doctrine that says nothing about the methods by which the House delegates authority to its committees or other components—matters that fall within the authority of each chamber to "determine the Rules of its Proceedings," U.S. Const. Art. I, § 5, cl. 2. Unlike the bicameralism-and-presentment requirements that compelled invalidation of the one-house veto in *Chadha*, no separate provision of the Constitution limits how the House may authorize litigation any more than any constitutional provision limits the House's method for

3

authorizing committees to issue subpoenas. "[W]here constitutional rights are not violated, there is no warrant for the judiciary to interfere with the internal procedures of Congress." *Exxon Corp.*, 589 F.2d at 590 (quoted in *Mazars*, 2019 WL 5089748, at *24).[3]

## II. *Mazars'* Reasoning Confirms That Federal Courts Are Fully Empowered To Resolve This Controversy

In their motion to dismiss, Defendants raise a raft of arguments, based on standing and statutory subject-matter jurisdiction, all directed to the proposition that federal courts have no competence to resolve a separation-of-powers controversy between a House of Congress and the Executive Branch. The decision in *Mazars* confirms, however, that the issues raised by this case—the validity of Congressional subpoenas and requests for information under Article I—lie squarely within the federal courts' authority to decide. That is hardly surprising, because the federal courts, including the Supreme Court, have adjudicated the validity of Congressional subpoenas under Article I several times. *See* Dkt. 55, at 26-28.

Defendants attempt to distinguish *Mazars* as a case about "individual rights," on the purported ground that the rights and obligations of Mazars, the nominal respondent of the subpoena, rather than President Trump, whose financial records were sought by the subpoena, were at issue. Dkt. 63, at 3. That argument is flawed in several respects.

First, Defendants disregard cases in which the D.C. Circuit and this District Court have adjudicated the validity of Congressional subpoenas directed to the Executive Branch, including *Senate Select Committee on Presidential Campaign Activities v. Nixon*, 498 F.2d 725 (D.C. Cir.

---

[3] As Plaintiff explained in its opposition brief, the authorities Defendants cite to establish the Article III principle they hypothesize—*Raines v. Byrd*, 521 U.S. 811 (1997); *Reed v. Cty. Comm'rs of Del. Cty.*, 277 U.S. 376, 389 (1928); and *Walker v. Cheney*, 230 F. Supp. 2d 51 (D.D.C. 2002)—are off point. They involved suits brought by individual legislators or the Comptroller General, all of whom lacked authorization pursuant to House Rules that Plaintiff, as a standing committee acting pursuant to BLAG approval, possesses. *See* Dkt. 55, at 35.

1974), *Committee on the Judiciary v. Miers*, 558 F. Supp. 2d 53 (D.D.C. 2008), and *Committee on Oversight and Government Reform v. Holder*, 979 F. Supp. 2d 1 (D.D.C. 2013).

Defendants liken *Mazars* to *United States v. AT&T*, in which the nominal respondent to a Congressional subpoena was a private party, even though the Congressional committee was seeking information about the activity of the Executive Branch. Dkt. 63, at 2-3. But in *AT&T*, the D.C. Circuit expressly recognized that the Congressional intervenor was "the real party in interest," since the real issue before the D.C. Circuit was the enforceability of a Congressional subpoena in the face of Executive Branch resistance. *United States v. American Tel. & Tel. Co.*, 567 F.2d 121, 123 (D.C. Cir. 1977).

Second, Defendants are wrong in asserting that "*Mazars* … did not involve an effort by a component of Congress to invoke the jurisdiction of the federal courts." Dkt. 63, at 3. Although *Mazars* does not feature a Congressional plaintiff, the House Committee on Oversight and Reform did intervene, and "an intervener … must satisfy the same Article III standing requirements as original parties." *Bldg. & Const. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994). That the *Mazars* court did not question the Oversight Committee's standing to litigate "on equal footing with the original parties" reflects the settled D.C. Circuit law that a Congressional committee has standing to assert its subpoenas' enforceability before the federal courts. *Id.*[4]

Third, *Mazars* lends no support to Defendants' argument that the Committee lacks standing to assert an informational injury caused by Defendants' refusal to comply with the

---

[4] In *Mazars*, the Trump Plaintiffs consented to the Committee on Oversight and Reform's intervention. *See* Consent Mot. of the Comm. on Oversight and Reform of the U.S. House of Representatives to Intervene and Mem. of P. & A. in Supp., *Trump v. Committee on Oversight and Reform*, No. 1:19-cv-01136 (D.D.C. Apr. 26, 2019), ECF No. 12. But that did not relieve the court of its obligation to make an independent determination concerning standing.

Committee's request for tax return information under 26 U.S.C. § 6103 (distinct from the injury caused by Defendants' refusal to comply with the Committee's subpoenas). *See* Dkt. 63, at 3-4. Defendants assert that the Committee lacks a "legally cognizable interest in confidential tax information for its own sake," *id.* at 3, but that argument goes to the *merits* of whether Section 6103(f)(1) requires the Committee to articulate a legislative purpose and, if so, whether it has done so here—not to the Committee's standing.

"For purposes of the standing issue, [the court must] accept as valid [the plaintiff's] pleaded legal theory." *Am. Fed'n of Gov't Emps., AFL-CIO v. Pierce*, 697 F.2d 303, 305 (D.C. Cir. 1982). As the Committee has pleaded its legal theory for relief under Section 6103(f), Defendants are obligated to provide it with the requested tax return information under Section 6103(f), but have refused to do so. That refusal has caused the Committee injury under its legal theory. Defendants are free to disagree with the Committee's reading of Section 6103(f), but those arguments are not standing arguments and should be deferred to the parties' summary judgment motions. Decisions on informational injury clearly hold that a plaintiff has standing when it is denied information that a statute entitles it to receive; the plaintiff's purpose for requesting the information is irrelevant to Article III standing. *See Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989). *Mazars* alters nothing on that score.

Fourth, Defendants mischaracterize Plaintiff's argument when they suggest that the Committee's second, institutional injury relates to "nullification" of the House's legislative power in the sense that the Supreme Court rejected in *Raines v. Byrd*, 521 U.S. 811 (1997). The federal courts have recognized that a House committee seeking subpoena enforcement may plead an injury from "the institutional diminution of its subpoena power." *Miers*, 558 F. Supp. 2d at 71. Indeed, as the Committee has explained, under Defendants' theory, no Congressional

6

subpoena directed to anyone—perhaps no subpoena at all—could be enforced by the federal courts. *See* Dkt. 55, at 22, 25-26. This Court should not endorse such a startling proposition. Here, the Committee has alleged that it had a valid legislative purpose in issuing the subpoenas to Defendants, and at this stage of the case, the Court is obligated to accept that allegation as true. Defendants' refusal to comply with those presumptively valid subpoenas, therefore, is sufficient to vest the Committee with standing.[5]

### III.     *Mazars* Does Not Support Defendants' Clear-Statement Argument

Defendants contend that the *Mazars* court's *rejection* of President Trump's argument for a clear-statement rule requiring explicit authorization by the House for a subpoena directed to records implicating the President somehow supports their arguments that this Court has no jurisdiction under 28 U.S.C. § 1331 and that the Administrative Procedure Act (APA) provides no cause of action to the Committee. *See* Dkt. 63, at 8-9. *Mazars* does no such thing.

As to Section 1331, Defendants advanced no clear-statement argument in their earlier briefing, and so it is too late for them to raise such an argument now. With respect to the APA, Defendants did argue that the term "person" in the APA should not be read to include Congressional committees in the absence of an express statement to that effect. *See* Dkt. 44, at 56. But that contention was tied to a particular statute, the APA, and, unlike the argument advanced by Defendants, would not impose a clear-statement requirement for the Congress, let alone the President, across the entire U.S. Code.

---

[5] Defendants also argue (Dkt. 63, at 4) that the *Mazars* opinion's discussion of historical practice supports their contention that Congressional committees may not act on their own—*i.e.*, without the assistance of the Executive Branch—to enforce a Congressional subpoena. But as Plaintiff has explained, there is a long history of the Houses of Congress acting separately, and not through the Executive Branch, to enforce compliance with their subpoenas through the exercise of their inherent contempt powers. Dkt. 55, at 29-31. Cases like the current one are, if anything, a more modest effort to vindicate the House of Representative's separate Article I power to investigate through the use of compulsory process.

In any event, Defendants' contention finds no support in *Mazars*, for two distinct reasons. First, the portion of *Mazars* Defendants cite relates to whether a clear reference to the President is required for Congressional authorization of a subpoena when the House Rules delegated authority to issue subpoenas to a standing committee. The D.C. Circuit rejected that assertion, stressing that the issue did not implicate "the balance *between* Congress and the President" and dealt "exclusively with the allocation of authority *within* the legislative branch." *Mazars*, 2019 WL 5089748, at *23. The same is true here: Whether the Committee may sue without formal authorization from the full House of Representatives had nothing to do with the separation of powers between the Legislative and Executive Branches, but solely implicates matters of internal House procedure. Indeed, as the *Mazars* court noted, "Congress already possesses—in fact has previously exercised … the authority to subpoena Presidents and their information." *Id*. And the D.C. Circuit already held decades ago in *AT&T* that Section 1331 provides jurisdiction for district courts to hear subpoena enforcement disputes between the Congress and Executive Branch officials, including the President. *See United States v. American Tel. & Tel. Co.*, 551 F.2d 384, 389-90 (D.C. Cir. 1976).

Second, and in any event, the separation-of-powers concerns that Defendants say compel a clear-statement rule are not present here because the Committee's subpoenas were not served on the President, and the Committee did not sue the President. Because the subpoenas name other Executive Branch officials, for instance, their enforcement does not create the possibility of a future contempt action against the President. Nor do these subpoenas threaten to distract the President with gathering responsive records, since that work will be conducted entirely by the Internal Revenue Service.

To the extent the *Mazars* court briefly summarized two earlier decisions, *Armstrong v. Bush*, 924 F.2d 282 (D.C. Cir. 1991), and *Franklin v. Massachusetts*, 505 U.S. 788 (1992), its characterization of those decisions lends no support to Defendants' statutory clear-statement argument. As the *Mazars* panel explained, *Armstrong* and *Franklin* held that "the President is not an 'agency' subject to judicial review under the" APA. *Mazars*, 2019 WL 5089748, at *23. *Armstrong* did so, the court explained, in part because treating the President as an agency under the APA would "significantly alter the balance between Congress and the President." *Id.* (quoting *Armstrong*, 924 F.2d at 289).

But *Armstrong* and *Franklin* certainly did not hold that a clear statement is necessary for a lawsuit brought against an *Executive Branch agency*, even when the lawsuit may implicate the powers and interests of the President. To the contrary, a lawsuit may be brought against an Executive Branch agency even to test the validity of orders of the President. *See, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952); *Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996); *see also Franklin*, 505 U.S. at 801 ("the President's actions may still be reviewed for constitutionality"); *id.* at 828 (Scalia, J., concurring in part and concurring in the judgment) ("None of these conclusions, of course, in any way suggests that Presidential action is *unreviewable*. Review of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive[.]").

Finally, unlike the records at issue in *Armstrong* and the actions at issue in *Franklin*, the tax return materials of the President and his business entities sought here do not concern the exercise of his constitutional duties. For that reason, Defendants have never, nor could they, raise any objection to Plaintiff's subpoenas (or Section 6103 request) based on Executive privilege. As the *Mazars* court explained, "in determining whether [a statute] disrupts the proper

9

balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents the Executive Branch from accomplishing its constitutionally assigned functions." *Mazars*, 2019 WL 5089748, at *15 (quoting *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 443 (1977)). Recognizing jurisdiction over Plaintiff's suit to compel compliance with its subpoenas threatens no such obstruction of the President's ability to carry out his constitutionally assigned functions. *Cf. Mazars*, 2019 WL 5089748, at *14-18 (explaining clear constitutional permissibility of statutes requiring disclosure of information concerning President's financial affairs).

**IV.     Defendants' Arguments On Mandamus And Non-Statutory Review Are Incorrect**

Defendants also argue that, because the Court of Appeals found the legal issues in *Mazars* "thorny" and weighty, that fact precludes this Court's exercise of jurisdiction under either the mandamus statute, 28 U.S.C. § 1361, or non-statutory review of executive action. Dkt. 63, at 4-5. But the federal courts do not lack jurisdiction in such instances merely because the case before them is difficult. *Chamber of Commerce v. Reich*, for example, raised complex and difficult questions about the authority of the President, under both Article II and federal statutes, to bar government contractors from hiring workers to permanently replace strikers, as well as the authority of Congress to regulate in that area, but the D.C. Circuit found it clear that it could review the President's actions as a matter of non-statutory review. 74 F.3d at 1325-1332; *see also Youngstown*, 343 U.S. at 634-60 (Jackson, J., concurring in judgment) (agreeing that injunction against seizure of steel mills by government under President's emergency powers should be enjoined, despite difficulty of question, absence of clear authority on point, and need for flexible approach to questions of Presidential power).

Moreover, the principal issue that divided the judges on the *Mazars* panel—whether the House Committee on Oversight and Reform was precluded from investigating illegal conduct by the President unless the House of Representatives initiated an impeachment inquiry, *compare Mazars*, 2019 WL 5089748, at *18-20 (majority), *with id.* at *30 (dissent)—is not implicated in this case, and Defendants have not raised any such argument here.  Rather, this case involves "a familiar tale.  A Congressional committee, as committees have done repeatedly over the past two centuries, issued an investigative subpoena, and the target of that subpoena, questioning the committee's legislative purpose has asked a court to invalidate it.  The fact that the subpoena in this case seeks information that concerns the President adds a twist, but not a surprising one." *Id.* at *26.  *Mazars* firmly establishes that federal courts can and may resolve disputes exactly like the present one, and this Court should proceed to do so.

October 29, 2019

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (DC Bar No. 253492)
   *General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
   *Deputy General Counsel*
Megan Barbero (MA Bar No. 668854)
   *Associate General Counsel*
Josephine Morse (DC Bar No. 1531317)
   *Associate General Counsel*
Brooks M. Hanner (DC Bar No. 1005346)
   *Assistant General Counsel*
Sarah E. Clouse (MA Bar No. 688187)
   *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700
douglas.letter@mail.house.gov

*Counsel for Plaintiff Committee on Ways and Means, United States House of Representatives*