## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMMITTEE ON WAYS AND MEANS, UNITED
STATES HOUSE OF REPRESENTATIVES,
     *Plaintiff,*

  v.

UNITED STATES DEPARTMENT OF THE
TREASURY, *et al.*,
     *Defendants,*

DONALD J. TRUMP, *et al.*,
     *Defendant-Intervenors.*

Case No. 19-cv-01974-TNM

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM FOLLOWING
## THE NOVEMBER 6, 2019 HEARING

The Committee respectfully submits this memorandum in response to questions raised by the Court at the November 6, 2019, hearing on Defendants' motion to dismiss.[1]

**1.**  The Court inquired whether the Committee would be willing to voluntarily dismiss some of its claims, or whether the Committee believes it is necessary for the Court to decide whether jurisdiction and a cause of action are present as to all of those claims in order to proceed.  Although the Committee is not dismissing any of its claims, it believes that it can obtain complete relief under fewer than all of its claims, without requiring the Court to decide whether subject-matter jurisdiction and a cause of action exist for all of those claims.

As explained in our opposition to Defendants' motion to dismiss (Dkt. 55, at 51-53), this Court may enforce the Committee's subpoena under the federal courts' historic equity powers. *See, e.g.*, *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of

---

[1] We refer to Defendants and Defendant-Intervenors collectively as "Defendants."

equity, and reflects a long history of judicial review of illegal executive action[.]"); *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010) (noting the "established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution" and rejecting the argument that "separation-of-powers claim should be treated differently than every other constitutional claim" with regard to the right to relief "directly under the Constitution" (quotation marks omitted)).  As explained in those decisions, the federal courts have authority to enforce the Constitution by ordering equitable relief to prevent and remedy unconstitutional action by Executive Branch officials, without the need for a specific statutory cause of action authorizing such relief or for an "implied" cause of action.  Those decisions additionally confirm that such equitable relief may be awarded pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201-2202.  *See Free Enterprise Fund*, 561 U.S. at 487, 513 (exercising jurisdiction in equity over claims brought by plaintiffs who sought a "declaratory judgment that the Board is unconstitutional").

Should the Court exercise its equitable authority to enforce the subpoena, that would afford the Committee complete relief, and it would be unnecessary for the Court to enforce Defendants' obligations to produce the same materials directly under 26 U.S.C. § 6103(f)(1). But should the Court reach that question, it should grant the Committee relief for the reasons explained in our brief.  *See, e.g.*, *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1327-28 (D.C. Cir. 1996) (discussing nonstatutory review of Executive Branch action).

The Court inquired whether it would be possible to conclude that this case can proceed on mandamus under 28 U.S.C. § 1361 without addressing other causes of action.  *See* Tr. at 115. As the Committee has explained, Section 6103(f)(1) clearly and unmistakably requires Defendants to produce the requested documents to the Committee.  Given the clarity of Section

6103(f)(1), the Court may order production of those documents under the mandamus statute, which vests the district courts with "original jurisdiction … to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  Mandamus is available under Section 1361 if "there is no other adequate remedy available to plaintiff."  *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) (quotation marks omitted); *see also Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 64 (D.C. Cir. 2010).  Accordingly, proceeding on mandamus would not necessarily avoid the need to rule on whether the Committee's other causes of action afforded adequate relief.

**2.**  At the hearing, the Court posed questions about reconciling 28 U.S.C. § 1331, the general federal-question jurisdiction statute, with 28 U.S.C. § 1365, which vests the district courts with jurisdiction over certain actions to enforce Senate subpoenas.  The Court specifically asked if counsel were aware of jurisdictional schemes involving provisions comparable to Section 1331 and Section 1365.  *See* Tr. at 60.  The Committee accordingly brings to the Court's attention the Supreme Court's decision in *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002), which rejected an argument much like the one Defendants press here regarding a similar jurisdictional scheme.

The plaintiffs in *Verizon Maryland* brought suit claiming that the determination of a state public service commission violated federal law—a claim that presented a federal question under Section 1331.  *See* 535 U.S. at 640.  The court below had nevertheless held that a separate statute—a provision of the Telecommunications Act of 1996—"strip[ped] this jurisdiction" by "mak[ing] *some other* actions by state commissions reviewable in federal court."  *Id.* at 642-43.  The Supreme Court reversed, explaining that "[t]he mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others."  *Id.* (quoting

*Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967)).  The Court reviewed the

Telecommunications Act and observed that "none of [its] other provisions … evince[d] any

intent to preclude federal review of a commission determination."  *Id.* at 644.  To the contrary,

the Court explained, these other provisions "reinforce the conclusion that [the statute's] silence

on the subject leaves the jurisdictional grant of § 1331 untouched," because "where otherwise

applicable jurisdiction was meant to be excluded, it was excluded expressly."  *Id.*

The same is true here.  The Committee's claim presents a federal question under Section

1331, and as explained above, nothing in Section 1365—which "merely makes *some other*

[subpoena enforcement] actions … reviewable in federal court," *id.* at 643—"displays any intent

to withdraw federal jurisdiction under § 1331," *id.* at 644.  Moreover, as in *Verizon Maryland*,

other provisions of the relevant jurisdictional scheme "reinforce the conclusion that [Section

1365's] silence on the subject leaves the jurisdictional grant of § 1331 untouched."  *Id.*; *see also*

28 U.S.C. § 1366 (expressly excluding challenges to certain laws from the scope of Section

1331).  This Court should "not presume that [Section 1365] means what it neither says nor fairly

implies."  *Verizon Maryland*, 535 U.S. at 644.

The enactment of Section 1365 cannot reasonably be understood to have revoked federal-

question jurisdiction over suits to enforce House subpoenas.  Section 1365 was enacted in

1978—*after* the D.C. Circuit had held that the courts had jurisdiction under Section 1331 to

resolve a dispute between the House of Representatives and the Executive Branch over

enforcement of a House subpoena.  *See United States v. American Tel. & Tel. Co.*, 551 F.2d 384

(D.C. Cir. 1976).  Defendants argue, in essence, that Section 1365 effectively disapproved that

decision and implicitly repealed Section 1331 in this context—and not just for Senate subpoenas,

to which Section 1365 is expressly directed, but also for House subpoenas, which Section 1365

does not address.  But as the Supreme Court has explained many times, such implied repeals are heavily disfavored, and "[i]n the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Morton v. Mancari*, 417 U.S. 535, 550 (1974); *see Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012) ("[J]urisdiction conferred by 28 U.S.C. § 1331 should hold firm against 'mere implication flowing from subsequent legislation.'" (quotation marks omitted)).

Defendants invoke the canon of a specific statute controlling over a more general one, but as the D.C. Circuit has explained, "[t]he canon is impotent …  unless the compared statutes are 'irreconcilably conflicting,'" and "[a]bsent clearly expressed congressional intent to the contrary, it is [the courts'] duty to harmonize the provisions and render each effective." *Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 698-99 (D.C. Cir. 2014).  For one jurisdictional statute to displace another, there "must be a positive repugnancy between the provisions of the new law and those of the old." *United States v. Borden Co.*, 308 U.S. 188, 198 (1939) (quotation marks omitted). Here, whatever might be the case for Senate subpoenas, there is no "positive repugnancy" between Section 1331 and Section 1365 as to enforcement of House subpoenas, over which this Court has jurisdiction under Section 1331.

November 12, 2019

Respectfully submitted,

/s/ Douglas N. Letter
Douglas N. Letter (D.C. Bar No. 253492)
   *General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
   *Deputy General Counsel*
Megan Barbero (MA Bar No. 668854)
   *Associate General Counsel*
Josephine Morse (D.C. Bar No. 1531317)
   *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
douglas.letter@mail.house.gov

*Counsel for Plaintiff Committee on Ways and
Means, United States House of Representatives*