**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, *et al.*<br><br>*Defendants*,<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendant-Intervenors.* | No. 1:19-cv-1974 (TNM) |

**DEFENDANTS' AND DEFENDANT-INTERVENORS' RESPONSE
TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM**

Defendants and Defendant-Intervenors respectfully submit the following response to Plaintiff's Supplemental Memorandum, *see* ECF No. 71 ("Supp. Mem."). For the reasons explained previously and below, the Court lacks jurisdiction and Plaintiff does not possess a cause of action. Before the Court resolves this sort of extraordinary inter-Branch dispute, it should, at a minimum, require that Congress create subject matter jurisdiction and provide a cause of action.

**I.    The Court Lacks Statutory Subject Matter Jurisdiction.**

The Court lacks statutory jurisdiction over this case. Congress has enacted a statute to govern subpoena-enforcement suits, but that provision purports to provide jurisdiction only for the Senate and expressly excludes suits that (like this one) are against executive branch officers asserting executive branch objections. *See* 28 U.S.C. § 1365. The Court is obligated to read provisions of the same title of the U.S. Code in harmony, *see, e.g., FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) ("subsequent acts can shape or focus" the "meaning[]"

of a provision), and it makes no textual or practical sense to read 28 U.S.C. § 1331's general language as both completely overlapping with the specific jurisdictional grant in § 1365 and, even worse, *overriding* the careful political compromise that § 1365 embodies by furnishing jurisdiction to hear the *very suits* that Congress carefully (and repeatedly) excluded from § 1365, as recently as 1996. *See generally* MTD (ECF No. 44) at 29-32; MTD Reply (ECF No. 59) at 15-19.

Plaintiff describes *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002), as "reject[ing] an argument much like the one Defendants press here." Supp. Mem. 3. That case did no such thing. There, the Supreme Court held that a provision of the Telecommunications Act of 1996 permitting aggrieved parties to challenge certain actions of State commissions, *see* 47 U.S.C. § 252(e)(6), did not mean that parties could not challenge other actions of such commissions pursuant to 28 U.S.C. § 1331. *Verizon Maryland* relied on two key features of the Telecommunications Act that are absent here.

First, the Court observed that the narrower provision, 47 U.S.C. § 252, "does not distinctively limit the substantive relief available," *Verizon Md.*, 535 U.S. at 644. That is in sharp contrast to § 1365(a), which expressly excludes cases where an executive officer's refusal to comply is "based on a governmental privilege or objection the assertion of which has been authorized by the executive branch of the Federal Government," 28 U.S.C. § 1365(a)—again, suits just like this one. This is therefore not a case where there is "nothing more than [the] mere fact" that "some acts" are affirmatively "made reviewable" by a more specific statute. *Verizon Md.*, 535 U.S. at 643-44. To the contrary, the more specific statute here expressly makes certain acts *not reviewable*; it is precisely that carve-out that the Committee seeks to override. And second, unlike 47 U.S.C. § 252, which "does not even mention subject-matter jurisdiction, but reads like the conferral of a private right of action," *Verizon Md.*, 535 U.S. at 644, 28 U.S.C. § 1365 is an explicit jurisdictional statute that must inform the correct construction of § 1331, which is its close statutory

neighbor in Title 28 of the U.S. Code. *See, e.g.*, *Brown & Williamson*, 529 U.S. at 133 ("[T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand."). Nothing in *Verizon Maryland* suggests otherwise.

Relatedly, Plaintiff contends that the canon of the specific controlling over the general applies only to irreconcilable conflicts. Supp. Mem. 5. But the Supreme Court has held that it also applies where an expansive reading of a general provision would render the specific conditions of a narrower one ineffective. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). *RadLAX* involved a Bankruptcy Code provision that in one clause permitted debtors' property to be sold "free and clear of [creditors'] liens" so long as creditors were allowed to bid on the property and offset the price by the amount of the debt owed (so-called "credit-bidding"), *see* 11 U.S.C. § 1129(b)(2)(A)(ii). An adjacent clause, § 1129(b)(2)(A)(iii), permitted conversion without credit-bidding where a bankruptcy plan provides the creditor "with the 'indubitable equivalent' of its claim." *RadLAX*, 566 U.S. at 644. The Supreme Court unanimously held that debtors could not invoke clause (iii) to achieve the result provided for by clause (ii), sale free and clear of liens, without complying with clause (ii)'s credit-bidding requirement, as such a reading was "hyperliteral and contrary to common sense." *Id.* at 645. The Court explained that, while "[t]he general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission," "the canon has full application as well to statutes . . . in which a general authorization and a more limited, specific authorization exist side-by-side." *Id.* "There the canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one, 'violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a

statute.'" *Id.* (alteration in original and citation omitted). The principles of statutory construction applied in *RadLAX* apply four-square to this case.[1]

Defendants and Defendant-Intervenors are thus not "asking [the Court] to overrule" the finding of jurisdiction under § 1331 in *United States v. AT&T*, 551 F.2d 384 (D.C. Cir. 1976) ("*AT&T I*"), *see* MTD Hr'g Tr. (ECF No. 70) 81. First, *contra* Supp. Mem. 4, that case did not involve a lawsuit *initiated by a house of Congress to enforce its subpoena*—the class of suits addressed by 28 U.S.C. § 1365. And second, that case predated the 1978 enactment of § 1365, *see* Pub. L. No. 95-521, 92 Stat. 1824 (Oct. 26, 1978), as well as the 1996 amendments to that statute, *see* Pub. L. No. 104-292, § 4, 110 Stat. 3459 (Oct. 11, 1996). That decision was thus addressing a statutory framework—§ 1331 standing without § 1365—that does not exist today. Today, this Court must read the provisions of Title 28 together and must thus construe a statutory scheme that *AT&T I* never considered. *See, e.g.*, *Brown & Williamson*, 529 U.S. at 143 ("At the time a statute is enacted, it may have a range of plausible meanings. Over time, however, subsequent acts can shape or focus those meanings."); *United States v. Fausto*, 484 U.S. 439, 453 (1988) ("This classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the

---

[1] Even Plaintiff appears to acknowledge that a committee of the *Senate* might not be able to bring a lawsuit like this one, since it is specifically carved out from 28 U.S.C. § 1365's jurisdictional grant. *See* Supp. Mem. 5; MTD Hr'g Tr. 53. Yet it would be extraordinarily odd to conclude that the Senate is *less* able than the House to enforce its subpoenas in court when Congress deliberately chose to "confer" jurisdiction on the courts only with respect to *Senate* subpoenas. *See* H.R. Rep. 95-1756, at 80 (1978) (Conf. Rep.) ("The appropriate committees in the House also have not considered the Senate's proposal to confer jurisdiction on the courts to enforce subp[o]enas of House and Senate committees. The Senate has twice voted to confer such jurisdiction on the courts and desires at this time to confer jurisdiction on the courts to enforce Senate subp[o]enas."). The far better conclusion from the statutory text, its legislative history, and the historical absence of suits of this kind is that Congress meant what it said—that the courts would receive limited jurisdiction to enforce the Senate's subpoenas and no jurisdiction at all to enforce the House's.

implications of a later statute."). Plaintiff's reading of § 1331 and § 1365 does not "make sense," nor is it compelled by *AT&T I*. The Court should reject it.

## II. Plaintiff Lacks A Cause Of Action.

Even if the Court had jurisdiction, Plaintiff lacks a cause of action. We discuss below the two causes of action that are addressed in Plaintiff's supplemental memorandum.

### A. Plaintiff Cannot Invoke This Court's Equitable Powers.

Plaintiff contends that the Court may enforce its demands "under the federal courts' historic equity powers." Supp. Mem. 1. That is wrong, for there is no history of federal courts (or the English courts of equity) enforcing legislative subpoenas. While there is a "long history of judicial review of illegal executive action," *id.* at 1-2 (quoting *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015)), as a general matter, the Supreme Court has cautioned that the creation of a "judge-made remedy" of an implied cause of action in equity is available only in "some circumstances" that present "a proper case." *Armstrong*, 135 S. Ct. at 1384; *see also Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 (1999) (federal equity jurisdiction is limited to historic practices of the English Court of Chancery).

The classic example of such a "proper case" is a suit to "permit potential defendants in legal actions to raise in equity a defense available at law." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014) (Sutton, J.). Such suits typically do not pose separation-of-powers concerns because they merely shift the timing and posture of litigation over a legal question that Congress has already authorized to be adjudicated in federal court. *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010) (cited in Supp. Mem. 2) was an example of such a case, insofar as in that case a formal investigation had been threatened against one of the plaintiffs' private businesses. *See id.* at 487.

Here, there is no threatened proceeding as to which Plaintiff is preemptively asserting a defense. Nor is there any other analogous harm to a plaintiff's property or other rights warranting invocation of equitable remedies. *See, e.g., Armstrong*, 135 S. Ct. at 1384 (citing *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902)). Plaintiff is instead assertedly seeking to remedy an abstract injury to its institutional interest in informed legislating concerning the presidential audit program. Even if that interest satisfied Article III—and it does not—the courts' "traditionally cautious approach to equitable powers . . . leaves any substantial expansion of past practice to Congress." *Grupo Mexicano*, 527 U.S. at 322, 329.

*Grupo Mexicano* demonstrates the point. There, the Court held that a "creditor's bill" that restrains a debtor's assets was traditionally sought only by a "creditor who had already obtained a judgment establishing the debt," and thus could not now be sought by a "general creditor . . . without a judgment," as the authorization of suits by pre-judgment creditors would represent "a wrenching departure from past practice" that "Congress [was] in a much better position" to address. *Id.* at 319, 322. It follows *a fortiori* that Congress also must decide whether to erase the historic distinction between (1) suits by private parties (or sovereign governments) to enforce their rights and (2) suits by governmental sub-components to enforce institutional prerogatives, such as committees of Congress asserting informational demands. The debate "should be conducted and resolved where such issues belong in our democracy: in the Congress." *Id.* at 333; *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (similar).

Finally, even if recourse to the Court's inherent equitable powers were theoretically available, Plaintiff cannot "invoke[e] [a court's] equitable powers [to] circumvent Congress's exclusion" of particular remedies. *Armstrong*, 135 S. Ct. at 1385. As the Court explained in *Armstrong*, the "'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Id.* (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290

6

(2001)).  Here, by adopting an elaborate scheme for enforcing congressional informational demands that provides numerous avenues for enforcing such demands but conspicuously omits civil suits by the House, *see, e.g.*, 2 U.S.C. §§ 192, 194 (criminal contempt); 2 U.S.C. § 288d (civil suits by Senate); 31 U.S.C. § 716 (civil suits by Comptroller General), Congress made clear that the House could not enforce its informational demands through civil lawsuits invoking causes of action available to the general public.  *See* MTD at 48-52 (making this argument as to the APA); MTD Reply at 30-32 (same).[2]

### B. Plaintiff Cannot Proceed In Mandamus.

Finally, Plaintiff contends that the Court may order relief pursuant to the mandamus statute, 28 U.S.C. § 1361.  *See* Supp. Mem. 2.  That is again wrong; indeed, Congress has never successfully invoked the mandamus statute to enforce an informational demand against the Executive Branch.  Here, for all the reasons set out in the Office of Legal Counsel's opinion, *see Congressional Committee's Request for the President's Tax Returns Under 26 U.S.C. § 6103(f)*, https://www.justice.gov/olc/file/1173756/download, it is beyond serious dispute that—whatever the Court might ultimately rule if it reached the merits—Plaintiff's right to relief is far from "clear

---

[2] Plaintiff further contends that "equitable relief may be awarded pursuant to the Declaratory Judgment Act." Supp. Mem. 2.  Under *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950), however, a party seeking a declaratory judgment must show that the defendant in such a suit could have brought a coercive action against it.  Respectfully, that is not "what's happening here," MTD Hr'g Tr. 87; Defendants are not "going to have to sue seeking a motion to quash," *id.*, but have instead declined to comply with informational demands that the Office of Legal Counsel has determined are a legal nullity.  Moreover, the House's apparent position is that such a suit would be barred by the Speech and Debate Clause.  *See, e.g.*, *Trump v. Comm. on Ways & Means, U.S. House of Representatives*, No. 1:19-cv-2173-CJN, ECF No. 14, at 3 (D.D.C. July 25, 2019). "[T]he availability of . . . relief" under the Declaratory Judgment Act "presupposes the existence of a *judicially remediable* right," *C & E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (emphasis added) (internal quotation marks and citation omitted), and so the House cannot contend that it is seeking anticipatory review of a claim that it does not believe would be judicially remediable.

and indisputable," as required for mandamus relief.  *See, e.g.*, *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

Most significantly, the language of 26 U.S.C. § 6103(f) must be read consistently with the House's limited Article I powers. *See Watkins v. United States*, 354 U.S. 178, 187 (1957) ("No inquiry is an end in itself; it must be related to, and in furtherance of, a legitimate task of the Congress."). Thus, to consider whether Plaintiff's § 6103(f) request was valid, the Court must "consider whether the . . . Committee is pursuing a legislative, as opposed to a law-enforcement, objective; whether the Committee is investigating a subject on which constitutional legislation 'could be had,'; and whether the [request] seeks information sufficiently relevant to the Committee's legislative inquiry." *Trump v. Mazars USA, LLP*, 940 F.3d 710, 724 (D.C. Cir. 2019) (citation omitted). In other words, because "Congress cannot grant to an officer under its control what it does not possess," *Bowsher v. Synar*, 478 U.S. 714, 726 (1986), and because the Constitution is supreme to any statute, the meaning of § 6103(f) depends on *both* its text *and* any constitutional constraints on the text. Moreover, the general disclosure exemption in § 6103(f)(1) that is at issue here is restricted to a narrow set of congressional committee officers with jurisdiction over matters of tax administration, thereby restricting its availability to requests grounded in the legitimate concerns of those committees. Whether Plaintiff's request in this case meets these standards is a complicated question of fact and law, as evidenced by the D.C. Circuit's having spent more than one hundred pages addressing similar questions in *Mazars*, 940 F.3d 710; *see also Trump v. Mazars USA, LLP*, --- F. 3d ---, 2019 WL 5991603, at *1-3 (D.C. Cir. 2019) (Henderson, Katsas, and Rao, JJ., dissenting from denial of rehearing en banc).[3] As this Court has

---

[3] Should this Court reach the merits, Defendant-Intervenors further anticipate contending that the Committee's request violates their constitutional rights and the separation of powers, further underscoring that this case does not involve the kind of clear and indisputable right for which mandamus is proper.

8

itself recognized, this "case presents novel and complex questions about the privileges and authority of all three branches of the federal government." Order, ECF No. 38, at 3.

This is thus obviously not the rare case presenting the "most transparent violation[]" of a legal duty, *see In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000)—the threshold requirement for mandamus. The Court thus ought not defer the motion to dismiss Plaintiff's mandamus claim to a later stage in the case. *See* MTD Hr'g Tr. 107 ("[M]aybe this is something you fight about on the merits, whether it's so clear that they're entitled to it under mandamus. But can I really kick this now?"). Indeed, the fact that a "fight" on the merits is even necessary *itself* demonstrates that mandamus could never be appropriate here. As the D.C. Circuit recently put it: "We do not resolve these open questions today. What matters for Nashiri's petition is that they are just that—open. Legal aporias are the antithesis of the 'clear and indisputable' right needed for mandamus relief." *In re Al-Nashiri*, 791 F.3d 71, 86 (D.C. Cir. 2015); *see also, e.g.*, *CREW v. Trump*, 924 F.3d 602, 608 (D.C. Cir. 2019) (affirming Rule 12 dismissal because "these types of open questions . . . are the antithesis of the clear and indisputable right needed for mandamus relief." (internal quotation marks omitted)). Thus, as the D.C. Circuit further explained in *Al-Nashiri*, "*even if* [*it*] *ultimately agreed with Nashiri on the merits*, mandamus would not lie because the answer was hardly 'clear' *ex ante*." 791 F.3d at 86 (first emphasis added).

As this Court has observed, the purpose of a Rule 12 motion is to "address threshold matters before burdening the parties with the costs of discovery and briefing on the merits." Order, ECF No. 38 at 6. Because it is not "clear and indisputable" "ex ante"—now—that the Department is obligated to turn over the President's tax return information, *see Al-Nashiri*, 791 F.3d at 86, the proper result is to dismiss Plaintiff's mandamus claim. *See In re Cheney*, 406 F.3d 723, 729 (D.C.

Cir. 2005) ("[I]f there is no clear and compelling duty under the statute as interpreted, the district court must dismiss the action.").[4]

## CONCLUSION

The Court should grant Defendants' and Defendant-Intervenors' motion to dismiss.

Dated:  November 19, 2019             Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

JAMES J. GILLIGAN
Special Litigation Counsel

/s/     Steven A. Myers
STEVEN A. MYERS (NY Bar No. 4823043)
SERENA M. ORLOFF (CA Bar No. 260888)
ANDREW BERNIE (DC Bar No. 995376)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O.  Box 883
Washington, D.C.  20044
Tel: (202) 305-0648
Fax: (202) 305-8470
Email: Steven.A.Myers@usdoj.gov

*Attorneys for Defendants*


 /s/ William S. Consovoy

William S. Consovoy (D.C. Bar #493423)
Cameron T. Norris

---

[4] In addition, mandamus review is unavailable because Congress has never suggested, whether by statute or otherwise, that it intended legislative demands for information from the Executive Branch to be enforceable by mandamus.  Instead, as set out in the main text, Congress has enacted an elaborate scheme for the enforcement of its informational demands that does not include mandamus suits.

Steven C. Begakis
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square, 8th Floor
South PMB #706
Boston, Massachusetts 02109
(617) 227-0548

*Attorneys for Defendant-Intervenors*