

Duane Morley Cox, Pro Se
1199 Cliffside Dr.
Logan, Utah 84321
Ph: (801) 755-3578

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

| | | |
|---|---|---|
| Committee On Ways And Means | + | Civil Action No. 1:19-cv-1974 (TNM) |
| United States House Of Representatives | + | |
| | + | |
| Plaintiff | + | Request For Reconsideration Of |
| | + | Order Denying Mr. Cox's [73] Motion |
| United States Department Of The | + | For Leave To File |
| Treasury et. al. | + | |
| | + | |
| Defendants | + | |
| | + | |
| Donald J. Trump, et. al. | + | |
| | + | |
| Defendants | + | Judge: Trevor N. McFadden |

+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

## Motion For Reconsideration

**Comes Now:** Mr. Cox respectfully requesting the Court to Reconsider its

Minute Order of 9/12/2019 pursuant to Rule 59(e) of the Federal Rules of Civil

Procedure.

1.      It is asserted and alleged that pursuant to ***Hohn, 524 U.S. 236 (S.Ct. 1998)***

that the filing of a Motion For Leave To File creates a separate "Case In

Controversy" that is subject to Appeal, and that it is error for the Court to deny Mr.

Cox the right to file his enclosed "Recommendations From Hearing".

2.      The summary of relevant filings and Court Action are as listed below.

2a.      Cox filed a Motion to Intervene [D. 10} which was opposed by DOJ Counsel

Pg 1

[D. 16] and which Cox defended against [D. 25], which Intervention was subsequently denied by the Court with allowance that Mr.Cox could file as an Amicus , but Mr Cox was allowed to file as an Amicus [Minute Order, D. 39, 9/6/2019].

2b.     Cox filed his Amicus Brief as allowed by the Order of this Court [D.45].

2c.     Leave to file Cox Memorandum granted [D. 60] in Opposition To The House Ways & Means filing [D. 55] as well as the filing of two Amicus Briefs in support of Ways & Means [D. 56 & 57]

2d.     In response to Minute Order of 10/15/2019 which invited the parties to file supplemental briefings on the Trump Motion to Dismiss discussing the "D.C. Circuit's recent decision in Trump v. Mazars USA, LLP", Mr. Cox filed a Motion For Leave To File his Brief On Why The Decision By U.S. Court of Appeals In The Case Of Trump v. Mazars Is Not Applicable To This Case [D. 64], which the Court granted by Minute Order on 10/23/2019 [D. 65].

2e.     After reviewing the Supplemental Memorandum by Charles P. Rettig et. al., Mr. Cox prepared and filed a Motion for Leave To File a Supplement to Amicus Pleadings dated 30 Oct 2019 [D. 68], which was also granted by this Court by Minute Order [D. 69].

2f.     But then, after flying to Washington for the scheduled Hearing on 6 November 2019 at which there was no questions involving or discussion of the Jurisdictional Test of **Nixon**, Cox prepared and filed a Motion For Leave To File Recommendations From Hearing [D. 73] which was denied by Minute Order on

9/12/2019 - which denial is the subject of this Motion To Reconsider.

3.      Cox argues that this denial is erroneous and a "Critical Mistake" because his

prior filings which were accepted by this Court create a separate "case in

controversy" which is rendered incomplete by the denial of Cox's Request For Leave

To File his ***Recommendations From Hearing.***   Further this denial operates to

exclude arguments important to President Trump's right to be free from

distractions in the performance of his Constitutional Duties while also denying the

Supreme Court and Chief Justice Roberts of possible arguments for or against the

applicability of their precedent of **Nixon v. Fitzgerald** as they try to figure out

how to handle these cases without prejudicing the possible future Impeachment

Trial.

### Memorandum of Law

4.      Mr. Cox appreciates the liberal conduct of this Court in this matter.

5.      However, where Mr. Cox initially filed seeking to Intervene, and the Court

denied Intervention but instead allowed his filing in the capacity of an Amicus, the

denial nevertheless creates a "case in controversy", as does the recent Minute Order

denying Mr. Cox's Motion for Leave to File his Response To Oral Arguments

[Docket 73] pursuant to the Supreme Court Precedent of ***Hohn, 524 U.S.236***

***(1998).***

> "We held the request for leave constituted a case in the district court over
> which the court of appeals could assert jurisdiction, even though the district
> court had denied the request.  We reasoned, "presentation of the petition for
> judicial action is the institution of a suit. Hence the denial by the district
> court of leave to file the petitions in these causes was the judicial

determination of a case or controversy, reviewable on appeal to the Court of Appeals."" (*Id., Citing Ex Parte Quinn, 317 U.S. at 24, 63 U. Ct. At 9*

"We reached a similar conclusion in Nixon v. Fitzgerald.  There President Nixon sought to appeal an interlocutory District Court order rejecting his claim of absolute immunity.  The Court of Appeals summarily dismissed the appeal because, in its view, the order failed to present a "serious and unsettled question" of law sufficient to bring the case within the collateral order doctrine announced in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 54 1... (1949).  Because the Court of Appeals had dismissed for failure to satisfy this threshold requirement, respondent Fitzgerald argued, "the District Court's order was not an appealable "case" properly "in the Court of Appeals within the meaning of $ 1254." 457 U.S., at 742, 102 S.Ct., at 2697.  Turning aside this argument, we ruled "petitioner did present a "serious and unsettled" case and therefore appealable question to the Court of Appeals.  It followed that the case was "in the Court of Appeals under $ 1254 and properly within our certiorari jurisdiction." Id., at 743, 102 S.Ct., at 2698.  We elaborated: "There can be no serious doubt concerning our power to review a court of appeals' decision to dismiss for lack of jurisdiction ... If we lacked authority to do so, decisions to dismiss for want of jurisdiction would be insulated entirely from review by this Court." Id., at 743, n. 23, 102 S.Ct. At 2698; se also United States v. Nixon, 418 U.S. 683, 692, 94 S.Ct. 3090, 3099-3100, 41 L.Ed2d 1039 (1974) (holding appeal of District court's denial of motion to quash subpoena duces tecum was in the Court of Appeals for purposes of $ 1254(1))." *Id.* [And further:] "We have also held that $ 1254(1) permits us to review denials of motions for leave to intervene in the court of Appeals in proceedings to review the decision of an administrative agency. Automobile Workers v. Schofield, 382 U.S. 205, 208-209, 86 S.Ct. 373, 376-377, 15 L.Ed2d 272 (1965), see also Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Phillips Corp., 510 U.S. 27, 30, 114 S.Ct. 425, 426, 126 L.Ed2d 396 (1993) (per curiam)." *Id.*

"It would have made no difference had the Government declined to oppose Hohn's application for a certificate of appealability.  In Schofield, we held that $1254(1) gave us jurisdiction to review the Court of Appeals' denial of a motion for leave to intervene despite the fact that neither the agency nor any of the other parties opposed intervention. 382 U.S., at 207, 86 S.Ct., at 375-376.  In the same manner, petitions for certiorari are often met with silence or even acquiescence; yet no one would suggest this deprives the petitions of the adversity needed to constitute  a case." *Id.*

6.    Here, Mr. Cox presents a very "**serious and apparently unsettled**"

question of law.  "**Serious**" because it relates to the Balance of Power between the

President (Presidency) and the House of Representatives, and "**Apparently Unsettled**" because although the U.S. Supreme Court precedent of *Nixon v. Fitzgerald* mandates that:

> "a court, before exercising Jurisdiction, **must** balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch." ***Amicus Brief* filed in this case by Mr. Cox on 6 Sept 2019, citing Nixon v. Fitzgerald, 457 U.S. 731 @ 732 (Emphasis Added)**

it is "**Apparently Unsettled**" because although the Jurisdictional Test of the precedent of **Nixon** was part of the deliberation process in *Knight First Amendment Institute v. Trump, 302 F. Supp. 3d 541 @ 579 (U.S. Dist Ct. S.D. New York 2018); Centro Presente v. U.S. Dept. Of Homeland Security., 332 F. Supp. 3d 393, 419 U.S. Dist. Ct., Mass. 2018;* and *In re Request for Access to Grand Jury (Records)., 833 F.2d 1438 (11th Cir. 1987)* (as cited in Cox's Amicus Reply filed with and accepted by this Court), this **Mandatory** Jurisdictional Test of **Nixon** was ignored and not even mentioned in the **Mazars** decision by this Circuit's Court of Appeals (even though it was presented in an Amicus Brief by Mr. Cox which was accepted per curium by the Court of Appeals).  It was apparently ignored on grounds that it had not been plead by the parties which is totally inconsistent with the Supreme Court decision in *Whole Womans Health v. Hellerstedt, 579 U.S. _____ (2016)*), and this Jurisdictional Test was not an issue in the Decision regarding the State of New York's lawsuit to obtain Trump's tax returns as now on appeal to the U.S. Supreme Court.

7.     And where every Federal Judge must be reasonably presumed to have pledged during their Senate Confirmation Hearings to follow Supreme Court (and Appellate Court) precedents (or explain why not in their decisions), the failure of the Federal Courts in their recent decisions to have required that this Jurisdictional Test be conducted before accepting Jurisdiction frankly "dumbfounds" Mr. Cox as a citizen who believes that precedents are supposed to be followed by all courts or justified as to why not (***See Attached decision in <u>Apker</u>, 101 F.3d 75 (8th cir. 1996***) where the recommendation by Senior Circuit Judge Henley who concurred with the result, but only because he was following 8th Court Precedent, stated his objections there-to, which ultimately led to the U.S. Supreme Court decision in ***<u>Hohn</u>, 524 U.S. 236*** which Cox relies upon here-in).

8.     Further, the failure of the lower Federal Courts to follow the **Mandated** Jurisdictional test in **<u>Nixon</u>** works to create a very precarious and perhaps dangerous Constitutional situation for the Supreme Court and particularly for Chief Justice Roberts - where it is arguable that the Court and particularly the Chief Justice may be reluctant to decide the Mazars and New York tax cases because such decisions may prejudice the outcome of what appears to be a forthcoming Impeachment Trial, which of course would undoubtedly appear to prejudice any forth coming Impeachment decision by Chief Justice Roberts.

9.     Cox has had a recent experience which justifies this grave Constitutional concern where on 1 October 2019 he filed a ***<u>Petition For Extraordinary Writ</u>*** against Speaker Pelosi (***Copy Enclosed***) asserting a violation of his Constitutional

Right to Representation where the Speaker had unilaterally decided that the Impeachment Inquiry was to go forward without concurrence by the full membership of the House.  The Clerk quickly rejected his filing on grounds that pursuant to Rule 20, the Supreme Court only accepted Writs of Prohibition, Mandamus and Habeas Corpus.  Mr. Cox responded the next day with a Motion challenging the rejection because Rule 20 allowed for any type of Writ pursuant to 28 U.S.C. 4 1651(a), the All Writs Act,  while refiling directly to Chief Justice Roberts pursuant to Rule 27.  This time there was a longer delay, prompting Cox to twice check his checking account to see if his $300 filing fee had been cashed.  It hadn't.  But then on the day that Speaker Pelosi suddenly and without warning or explanation announced that she would have a vote on the Impeachment Inquiry by the whole House membership which would moot his Petition, Cox also received via mail his second filing under Rule 27 from the clerk.

10.     Co-incidence?  Well, not in the mind of Cox.

11.     But now, an even more complex issue is before the Supreme Court and Chief Justice Roberts:

> **How to rule on the Tax and Financial law suits now before the Court without biasing the highly probable Impeachment Trial over which Chief Justice Roberts must preside?**

For if the Court does not Rule - Trump loses by default where the plain, simple and **Mandatory** Jurisdictional test of **Nixon v. Fitzgerald** was not even discussed by the lower Courts.  And if the Supreme Court does rule, then it will create the impression that the Court or the Chief Justice who would probably be the

deciding vote, has already picked the winner of an Impeachment Trial.

9.     But of course, Cox argues these tax and financial issues should not even be before the Supreme Court had the lower Federal Courts followed the binding legal precedent of **Nixon v. Fitzgerald** which **Mandates** that before a Court accepts jurisdiction of a lawsuit affecting the President (Presidency), it **"MUST"** perform (or have performed) the Jurisdictional Test as specified there-in.  And Cox asserts that his undisputed analysis of the circumstance related to the shoot down of our drone by the Iranians (**Amicus Brief, Pg 12-13** adequately illustrates the dangers to our Nation and others around the globe which will exist if the President's attention to his Constitutional duties is diverted by the need to defend his prior business and personal financial operations from the hundreds to thousands of questions which Ways & Means Committee will undoubtedly raise, even though Trump's returns have already been audited and accepted by the IRS.

### Relief Sought

Cox is simply trying to assure that the Jurisdictional Test **Mandated** by **Nixon v. Fitzgerald** is recognized and accepted by this Court, or if rejected by this Court that the rationale for not following this Supreme Court precedent is presented in this Courts decision so that the U.S. Supreme Court has the benefit of such logic in its future deliberations.  Therefore Cox respectively requests that this Court reconsider its Minute Order of 9/12/2019 and accept Mr. Cox's final filing in this matter where his earlier filings were all accepted.

_Duane Morley Cox_

Duane Morley Cox, Pro Se                     Pg 8                     Date

25 Nov 2019

Certificate Of Service

I, Duane Morley Cox, Pro Se, does hereby swear that on 25 November 2019 that I did serve a true and correct copy of the attached ***Request For Reconsideration Of Order Denying Mr. Cox's [73] Motion For Leave To File*** to the below listed parties by first class mail, postage prepaid.

Clerk's Office (Original)
U.S. District Court
District of Columbia
Room 1225
333 Constitution Avenue, NW
Washington D.C. 20001

Office Of General Counsel
U.S. House of Representatives
291 Cannon House Office Building
Washington, D.C. 20515

Steven A. Myers et., al.
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044

William S. Consovoy, et. al.
Consovoy McCarthy Park PLLC
3033 Wilson Blvd., Ste 700
Arlington, Va. 22201

_____
Duane Morley Cox, Pro Se

25 Nov 2019
Date



RECEIVED

DEC 0 2 2019

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia



# United States of America, Appellee, v. Gary Apker, Appellant, 101 F.3d 75 (8th Cir. 1996)

**U.S. Court of Appeals for the Eighth Circuit - 101 F.3d 75 (8th Cir. 1996)**

**Submitted Sept. 20, 1996. Decided Dec. 6, 1996. Rehearing and Suggestion for Rehearing En Banc Denied March4, 1997. ***

Michael T. Levy, Omaha, NE, for appellant.

Daniel Alan Morris and Michael G. Heavican, U.S. Attorneys, Omaha, NE, for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

A certificate of appealability is not available to the petitioner in this case because petitioner is not asserting the denial of a constitutional right. See Hohn v. United States, 99 F.3d 892 (8th Cir. 1996) (per curiam) . We are therefore obligated to deny the certificate.

HENLEY, Senior Circuit Judge, concurring in the result.

I join in the decision of the panel to deny Apker's request for a certificate of appealability because I believe we are obliged to do so under Hohn v. United States, 99 F.3d 892 (8th Cir. 1996), which represents the law of this circuit. I disagree, however, with the reasoning of the Hohn decision and therefore concur only in the result. Because of the importance of the issue raised by both Hohn and Apker, the court may wish to take one of these cases for en banc review.

There are at least two reasons why Apker's claim that he was convicted and sentenced in violation of the Supreme Court's decision in Bailey v. United States, --- U.S. ----, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995),

should be considered on the merits. First, it is doubtful Congress intended in its 1996 habeas revisions to bar appeals of claims that a conviction violates federal law. 18 U.S.C. § 2255 states that inmates may challenge their confinement on grounds that it violates either "the Constitution or laws of the United States." Thus, to me it makes little sense to limit appeals from denials of habeas relief to violations of the Constitution only and to hold that claims resting on interpretation of federal law are not appealable.

Second, even if Congress did intend to so limit appeals from denials of Section 2255 relief, Apker's appeal states a constitutional claim. For the reasons set forth in the dissent by Judge McMillian in Hohn, the unlawful application of the federal statute here--convicting and punishing Apker for conduct which does not fall within the terms of the weapons statute as construed by the Supreme Court in Bailey--denies Apker due process of law. Apker should be allowed to raise this issue on appeal.

For the stated reasons I respectfully concur in the result.

Judge McMillian would grant the suggestion

No. _____

In The

Supreme Court of the United States

++++++++++++++++++++++++++++++++++++++++++++

In re Duane Morley Cox,

++++++++++++++++++++++++++++++++++++++++++++

On Petition For Extra Ordinary Writ

Seeking Declaratory Judgement

++++++++++++++++++++++++++++++++++++++++++++

Duane Morley Cox, Pro Se
1199 Cliffisde Dr.
Logan, Utah 84321
Ph: 801-755-3578

Now Comes, Petitioner, seeking an Extra

Ordinary Writ and Declaratory Relief through Chief

Justice, John Roberts, who would preside at any

formal Impeachment Proceedings in the Senate.

Constitutional Question Presented

1.     Did Respondent, as Speaker of the House of

Representatives, violate Art. I, Sec. 2, Clause 5 of the

U.S. Constitution when Respondent initiated an

Impeachment Inquiry on President Trump without a

vote of the House Members, thus depriving Petitioner

Pg i

his right to representation and violating the
fundamental principle "that the people should choose
whom they please to govern them" <u>Powell</u>, 395 U.S.
486,  2nd from last para. (1969)

## Justification Of Writ

This petition is deemed necessary to vindicate
the Constitutional rights of Mr. Cox, which rights are
the right to be represented in Congress by his duly
elected Representative from the 1st District of the
State of Utah.  And which rights were unjustly denied
when the Speaker of the House of Representatives
usurped the Constitutional Power of the House under
Art. I, Sec. 2, Clause 5 of the U.S. Constitution to
Initiate an Impeachment Inquiry (Proceeding), by
unilaterally announcing the initiation of such an
inquiry without allowing the members of the House to
vote on that issue, thus denying Mr. Cox's
Constitutional right to be represented on this most
Pg ii

important of all issues.

This Writ is important to this court's appellate jurisdiction where in all previous instances of Impeachment of a President the full House (all members) participated in this important decision.  And this Court has the important duty of interpreting the Constitution to assure that injustice to all, including the People who delegated powers to the three branches of the government, is avoided.

Exceptional circumstances exist where the House Committees are already issuing subpoenas and planning on an expedited schedule to proceed with the inquiry, even though the planned Inquiry process benefits only the Democratic members of Congress, the Democratic Presidential Candidates, and the Speaker herself, while trampling upon the Constitutional rights of the millions of voters including Mr. Cox whose elected representatives were illegally and

Pg iii

unconstitutionally denied their rights to
representation in the decision making process.

Because this issue is clearly an Issue of First
Impression, and is alleged to violate the Constitutional
rights of millions of voters who would oppose the
Inquiry, including Mr. Cox, this issue cannot afford to
be litigated through the lower Courts.  Further, the
House Committees are already issuing what may be
invalid or unconstitutional subpoenas which will
undoubtedly be contested, perhaps unnecessarily
clogging the lower courts with litigation and causing
unnecessary expense and inconvenience to many
individuals, as well as unconstitutionally diverting the
attention of the President from his duties in
contradiction to the principles articulated by this
Court in Nixon v. Fitzgerald, 457 U.S. 731.

Adequate relief cannot be obtained without
expedited consideration by the U.S. Supreme Court.

Pg iv

# Table Of Contents

| Topic | Page |
|---|---|
| Constitutional Question Presented | i |
| Justification Of Writ | ii |
| Table Of Contents | v |
| Table of Authorities | v |
| Parties To The Case | 1 |
| Jurisdiction And Venue | 1 |
| Standing | 1 |
| Facts Relevant | 2 |
| Arguments | 12 |
| Conclusions | 20 |
| Relief Sought | 21 |

## Table Of Authorities

| Referemce | Page(s) |
|---|---|
| In re Request for Access to Grand Jury (Records), 833 F.2d 1438 (11th Cir.) | 15 |
| Nixon v. Fitzgerald, 457 U.S. 731 | iv, 3, 4, 5, 15 |

Pg v

<u>Referemce</u>                                                        <u>Page(s)</u>

Nixon v. United States, 506 U.S. 224 m .............   13

Powell, 395 U.S. 486 (1969) .................................   ii, 2

Appeal in Trump v. Mazars, U.S. Ct. App.
(No. 1:19-5142) .......................................................   3, 4

Declassified Memorandum Of Telephone
Conversation Dated 24 Sept 2019 .....   7, 8, 10, 11, 12

Trump v. Mazars et. al. (1:19-cv-01136) .................   3

Ways & Means v. Treasury & Donald J.
Trump (1:19-cv-01974) .........................................   3,4

Whistleblower Letter To Richard Burr & Adam
Schiff Dated 12 August 2019 .............   7, 8, 9, 10, 12

Art. I, Sect 2, U.S. Constitution ............................   13

Art. I, Sec. 2, Clause 2, U.S. Constitution ....   i, ii, 12

Art. I, Sec 6, Clause 1, U.S. Constitution ............   14

## Parties To The Case

2.     Plaintiff is Duane Morley Cox of 1199 Cliffside

Dr., Logan, Utah 84321 - who is a supporter of

President Donald J. Trump, who voted for him in

2016, and lives in Utah's 1st Congressional District

which is Represented in the House of Representatives

by Republican Rob Bishop.

3.     Respondent is Nancy Pelosi in her official

capacity as Speaker of the House of Representatives.

## Jurisdiction and Venue

4.     The venue is correct, and the U.S. Supreme

Court has subject matter jurisdiction because this

Court has the duty to Interpret the Constitution.

## Standing

5.     Plaintiff, has standing as an aggrieved voter

where Respondent  unilaterally decided to initiate an

Impeachment Inquiry on President Trump without

Pg 1

allowing the full house to vote on whether or not to initiate an Impeachment Inquiry, thus denying Petitioner his right to representation (FN-1).

## Facts Relevant

6.    From the day that Donald J. Trump was sworn in as President, the opposition party has called for his impeachment.

7.    Congresswoman Maxine Waters has repeatedly stated that President Trump should be impeached.

8.    Various Congresspersons have expressed their belief that the Mueller Report would provide grounds for impeachment.  But the report found no "Collusion with the Russians", and the DOJ held that there had been no "Obstruction".

9.    Democratic Congressman Elijah Cummings thru the House Oversight Committee filed a subpoena

FN-1:  In *Powell*, 395 U.S. 486 13 voters in the 18th Congressional District of New York were granted standing on similar grounds.

Pg 2

against Mazars in attempt to "investigate" President

Trump's personal financial affairs and those of his

various business entities in an effort to identify some

impeachable conduct.

9a.    President Trump filed a lawsuit to block the

Committee's efforts (1:19-cv-01136).

9b.    Petitioner in this case filed a Motion for Leave

To File An Amicus Brief challenging the District

Courts Jurisdiction pursuant to the precedent of

Nixon v. Fitzgerald, 457 U.S. 731, but instead of

accepting Petitioner's Brief, the District court erred by

expediting the case and dismissing the lawsuit by

President Trump without ruling on the Jurisdictional

issue which Petitioner sought to raise.

9c.    After Trump appealed to the D.C. Court of

Appeals (No. 19-5142), Petitioner filed a Motion For

Leave To File An Amicus Brief on the Jurisdictional

Grounds pursuant to the precedent of <u>Nixon v. Fitzgerald</u>, 457 U.S. 731, which Brief was accepted.

9d.     Oral arguments on the merits was held on 12 July 2019, but no decision has been rendered.

9e.     It is on information and belief that no decision has yet been rendered because the Court of Appeals has no record before it from the District Court concerning the Jurisdictional issue raised by Petitioner, which Court is awaiting a decision on this same Jurisdictional issue from the case of Ways & Means Committee v. Treasury & Donald J. Trump (1:19-cv-01974).

10.     In parallel, the House Financial Services Committee, Chaired by Democrat Maxine Watters served subpoenas on Deutsche Bank et. al. seeking access to the bank records of Donald J. Trump, family members and related business entities for the purpose

Pg 4

of trying to find reasons for Impeachment of President Trump.  This matter is now on Appeal in the Second Circuit.

11.     Also in parallel, the House Ways and Means Committee, chaired by Democrat Richard Neal, filed a lawsuit against the Treasury et. al. seeking access to the tax returns and related records of President Trump and his business entities for the same purpose of trying to identify impeachable offenses.

11a     President Trump and his business entities were allowed to Intervene, and Petitioner was allowed to file an Amicus Brief arguing for Dismissal for lack of Jurisdiction pursuant to the precedent of  Nixon v. Fitzgerald, 457 U.S. 731.

12.     But when these subpoena initiatives got bogged down in the courts, the restless Democrat House members cried out that the act of challenging

Pg 5

subpoenas was "Obstruction of Congress" and grounds

for Impeachment.

13.     Many of the Democratic Presidential candidates

have also gone on the record in favor of Impeaching

the President.

14.     There are approximately 10 Democratic

Representatives which were elected in 2016 in

Districts won by President Trump in 2016.

15.     If these 10 vulnerable seats now held by

Democrats are won by Republicans in 2020, the

Respondent, Nancy Pelosi would be in danger of losing

her position as Speaker of the House.

16.     Then in late September 2019, it became known

that an alleged "Whistle blower" had formally reported

an "urgent concern" pertaining to a telephone call

between the President of Ukraine and President

Trump.

17.     It is on information and belief that the three

prior Impeachment Proceedings against Presidents

were initiated by vote of the full House of

Representatives.

18.     Without waiting for the release of the actual

text of the alleged "Whistle blower" letter of concern or

the transcription of the Telephone Conversation,

between the President and the President of Ukraine,

Respondent, and without taking a vote by the full

House of Representatives, Respondent held a news

conference to declare that the House was undertaking

an Impeachment Inquiry against the President to

investigate the substance of the "Whistle blower's"

concerns.

19.     Later that same day, the alleged "Whistle

blower's" letter of concern to Chairmen Richard Burr

and Chairman Shiff dated 12 August 2019 (Letter)

Pg 7

was made public, as was a declassified copy of the

Memorandum Of Telephone Conversation between

President Trump and the President of the Ukraine

(Telephone Call).

20.    The alleged "Whistle blower's" letter states in

relevant parts:

> "I was not a direct witness to most of the events
> described" Letter, Pg 1; I found my colleagues
> accounts of these events to be credible" Letter,
> Pg 1,  ... a variety of information ... has been
> reported publicly."  Letter, Pg 1; "Multiple
> White House officials with direct knowledge of
> the call informed me" Letter, Pg 2; "According
> to the White House officials who had direct
> knowledge of the call" Letter, Pg 2; "I do not
> know which side initiated the call" Letter, Pg
> 2; "The White House officials who told me this
> information" Letter, Pg 3; "They told me that
> there was a "discussion ongoing"" Letter, Pg
> 3"I was told by White House Officials" Letter,
> Pg 3; "Based upon my understanding" Letter,
> Pg 3; "The officials I spoke with told me"
> Letter, Pg 3; "I do not know whether anyone
> was physically present with the President
> during the call." Letter, Pg 3; "I learned from
> multiple U.S. Officials" Letter, Pg 3;  "White
> House officials told me" Letter, Pg 3; "one
> White House official described this act" Letter,
> Pg 8

Pg 4 "I do not know whether similar measures
were taken" Letter, Pg 4; "Based upon multiple
readouts of these meetings recounted to me"
Letter, Pg 4 "I also learned from multiple
officials that" Letter, Pg 4; "The U.S. officials
characterized this meeting" Letter, Pg 4;
"Separately, multiple officials told me" Letter,
Pg 4; "I do not know whether those officials met
or spoke with" Letter, Pg 4: "but I was told
separately by multiple U.S. officials" Letter, Pg
4; "a series of articles appeared in an online
publication called *The Hill*" Letter, Pg 4; "I do
not know the extent to which, if at all, Mr.
Giuliani is directly coordinating his efforts on
Ukraine with Attorney General Barr or Mr.
Duram." Letter, Pg 5;  "On or about 29 April, I
learned from U.S. officials that" Letter, Pg 6;
"Around the same time, I also learned from a
U.S. official that" Letter, Pg 6; "However,
several U.S. Officials told me that" Letter, Pg
6; "On 9 May, *The New York Times* reported"
Letter, Pg 6; "I do not know" Letter, Pg 6,
Footnote 11; "Starting in mid-May, I learned
from multiple U.S. officials that they were"
Letter, Pg 7; "These officials told me" Letter,
Pg 7; "During this same time frame, multiple
U.S. officials told me" Letter, Pg 7; "This was
the general understanding of the state of affairs
as conveyed to me by U.S. officials from late
May into early June." Letter, Pg 7; "I do not
know who delivered this message" Letter, Pg 7;
"According to multiple White House officials I
spoke with" Letter, Classified Appendix,
Section II; "According to information I received
Pg 9

from White House officials, some officials voiced concerns" Letter, Classified Appendix, Section II; "According to White House officials I spoke with" Letter, Classified Appendix, Section II; "As I do not know definitively whether the below mentioned decisions are connected" Letter, Classified Appendix, Section IV; "I learned from U.S. officials that" Letter, Classified Appendix, Section IV; "I also do not know whether this action was connected with the broader understanding" Letter, Classified Appendix, Section IV;  "I heard from U.S. Officials that some Ukraine officials were aware" Letter, Classified Appendix, Section IV; and "I do not know how or when they learned of it" Letter, Classified Appendix, Section IV.

21.     The Transcript of the Telephone Call between President Trump and President Zelenskyy states in relevant parts:

"(President Zelenskyy) ... to tell you the truth, we are trying to work hard because we wanted to drain the swamp. ... (President Trump) I would like you to do us a favor though because our country has been through a lot, and Ukraine knows a lot about it.  I would like you to find out what happened with this whole situation with Ukraine ... that whole nonsense ended with a very poor performance by a man named Robert Mueller, an incompetent performance, but they

Pg 10

say a lot of it started with Ukraine.  Whatever you can do, it's very important that you do it if that's possible.  (President Zelenskyy)  Yes it is very important for me and everything that you just mentioned earlier. ... I also plan to surround myself with great people and in addition to that investigation, I guarantee as President of Ukraine that all the investigations will be done quickly and candidly.  That I can assure you.  (President Trump) Good because I heard you had a prosecutor who was very good and he was shut down and that's really unfair.  A lot of people are talking about that, the way they shut your very good prosecutor down and you had some very bad people involved. ... The former ambassador ... the woman, was bad news so I just want you let you know that.  The other thing, there's a lot of talk about Biden's son, that Biden stopped the prosecution and a lot of people want to find out about that so whatever you can do ... would be great.  Biden went around bragging that he stopped the prosecution so if you can look into it... It sounds horrible to me.  (President Zelenskyy) I wanted to tell you about, the prosecutor.  First of all I understand and I'm knowledgeable about the situation. Since we won the absolute majority in our Parliament, the next prosecutor general will be 100% my person, my candidate ... He or she will look into the situation ... The issue of the investigation of the case is actually the issue of making sure to restore the honesty so we will take care of that and will work on the investigation of the case.  On top of that, I

Pg 11

would kindly ask you if you have any additional information that you can provide to us, it would be very helpful for the investigation to make sure that we administer justice in our country with regard to the Ambassador to the United States from Ukraine. Declassified Transcript of Telephone Call dated 24 September 2019

22.     It is on information and belief that both the "Letter" and the Transcript of the Telephone Call were provided to the Justice Department for investigation.

23.     President Trump's response to the Pelosi announcement that the House would begin an Impeachment Inquiry was something like: "This is War".

## Arguments

24.     The facts included at Indentures 1-13 are included by reference here-in.

25.     Respondent violated Art. I, Sec. 2, Clause 5 of the U.S. Constitution

Art. I, Sec. 2, Clause 5 of the U.S. Constitution declares that:

Pg 12

"The House of Representatives ... shall have the sole Power of Impeachment."

This Court has held that:

"We think that the word "sole" is of considerable significance. ... The dictionary definition bears this out. "Sole" is defined as "having no companion," "solitary," "being the only one," and "functioning . . . independently and without assistance or interference." Webster's Third New International Dictionary 2168 (1971)." Nixon v. United States, 506 U.S. 224

But who is the House?  Art. I, Sec. 2 states:

"The House of Representatives shall be composed of Members chosen every second Year by the People of the several States."

Petitioner argues that the plain language of the Constitution declares that the House is comprised of Representatives chosen by the "People", therefore, it is the collective duty of all the Representatives acting in unison as the House, and not just the Speaker, to control or vote upon the initiation of an Impeachment including whether or not an Impeachment Inquiry is

Pg 13

to be initiated and which committee(s) are to be involved.

And where Respondent, as Speaker, unilaterally decided, without a vote by all of the Representatives of the "People" as to whether or not an Impeachment Inquiry is to go forward, that the "People" including Petitioner, are disenfranchised in violation of the U.S. Constitution, and the conduct of Respondent is in violation of the Constitution.

26. Respondent has no immunity under the Speech and Debate Clause of the U.S. Constitution for her Personal Conduct

The Speech and Debate Clause (Article I, Section 6, Clause 1) states:

"Members of both Houses of Congress ... shall in all cases, except Treason, Felony, and Breach of the Peace, be privileged from Arrest during their attendance at the Session of their Respective Houses, and in going to and from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place."

Pg 14

It is argued that Respondent was not engaged in Legislative Speech or Debate when she announced her unilateral decision to proceed with an Impeachment Inquiry <u>because such a declaration is reserved by the Constitution to the House and not to the Speaker of the House</u>.   Thus, Respondent was acting outside of her Constitutional Legislative prerogatives, and No one is above the Constitution, thus the protections of the Speech and Debate Clause are inoperative because her conduct was in fact "personal".  Petitioner argues that the Respondent Speaker has no immunity from legal actions for her personal conduct as held by this Court in the Precedent of <u>Nixon v. Fitzgerald</u>, which was later adopted by the Judiciary in its Precedent of <u>In re Request for Access to Grand Jury</u> (Records), 833 F.2d 1438 (11th Cir. 1987).

27.   Respondent has no immunity under the Speech and Debate Clause of the U.S. Constitution where her conduct to

Pg 15

unilaterally initiate an Impeachment
Inquiry was and is a Breach of the Peace

The Democratic House leadership has been

seeking grounds for Impeachment since the day that

President Trump was Inaugurated (F @6). Maxine

Waters in particular has repeatedly called for Trump's

impeachment (F @7). They pinned their hopes on the

Mueller Report, to no avail (F @8). So the various

House Committee Members sought to subpoena years

and years of Trump's financial records and tax returns

so they could "examine" them hoping to find something

they could use for Impeachment purposes (F @9 thru

11a), but these actions are now bogged down in the

Federal Courts, so Congress House members and

sympathetic media clamor that the President is guilty

of "Obstructing" the Congress in its investigations (F

@ 12). But this is nonsense because by the very fact

that the House Committee have initiated legal process

Pg 16

in the Courts, the right to resist subpoenas is standard procedure, not an "Obstruction of Congress".

So, beset with the inability to "find" a reason to Impeach, and pressured by the Dem. Presidential candidates who wanted and demanded Impeachment (F @13), apparently because they knew that they couldn't defeat Trump in 2020, and faced with the concern for the 10 or so Democrat members elected from Districts won by President Trump in 2016 (F @14) which seats could be lost if they were required to vote on Impeachment (F @15), and knowing that the Respondent might lose her position as Speaker of the House (F @15) , Respondent jumped at the knowledge of the existence of a reputed "Whistleblower" report had been filed alleging improper conduct by President Trump (F @ 16), Respondent unilaterally decided to initiate an Impeachment inquiry (F @18-19) without

Pg 17

having the members of the House vote on the issue (F

@18) even before the "Whistleblower" Letter, and the

related declassified  Telephone Call between Trump

and the President of Ukraine were made publicly

available (F @19).

And then when the Letter and declassified

Transcript of the Telephone Call became available,

and it became apparent that the Telephone Call was

a perfectly legal call between two Presidents, both of

whom were concerned about possible corrupt conduct

by some to each Countries citizens (F @ 21), that

President Trump was simply fulfilling his

Constitutional Duty to see that the laws of the United

States were being faithfully executed, and that the

reputed "Whistleblower" admitted some 42 times in

his Letter (F @20) that he (or she) did not know what

was going on, or relied upon second or third hand

Pg 18

information - the Respondent doubled down on her

violation of the Constitution and her trampling on the

rights of voters whom she realized she was

disenfranchising, and continued down the path of an

Impeachment Inquiry designed to among many things

to assure that she would personally benefit by

retaining her position as Speaker of the House while

causing an instantaneous Breach of the Peace

throughout the electorate and between duly elected

members of Congress and between Congress and the

President who has stated that "this is war" (F @23)

which will now continue and grow more rancorous as

the months weeks and months go by.  All because the

Democratic members of Congress, the Democratic

Candidates and the Speaker herself seek personnel

gain by tarnishing the reputation of the President and

perhaps removing him from office so that no

Pg 19

Democratic Candidate would have to face him in the

2020 election and Respondent could hold onto her

Speakership,  shutting down the productive channels

of government thereby depriving the electorate of

badly needed legislative actions on drugs, control of

the debt, immigration, etc. etc.,  while illegally and

unconstitutionally depriving approximately half of the

electorate of their right to representation by their

elected members of the House of Representatives.

## Conclusions

28.    It was indeed a sad day for America and the

Constitution to have Respondent usurp the powers of

the House to herself and disenfranchise approximately

half of the electorate in a clear power grab designed to

destroy our duly elected President,  forever damage

the separation of powers doctrine established by "We

the people", all for the personal gain of the

Pg 20

Respondent, the Democratic Party, and the 2020

Democratic Candidates.

## Relief Sought

29.    Petitioner respectfully prays that:

A.    This Court will Declare that the unilateral

initiation of the Impeachment Inquiry without a vote

of the duly elected Representatives of the House is a

violation of the U.S. Constitution,

B.    That this Court will Declare that the Act of

Respondent to unilaterally initiate an Impeachment

Inquiry without a vote by the members of the House

was not a valid legal act, and was in fact

Unconstitutional, such that the immunities of the

Speech and Debate Clause are not operative,

C.    That this Court will Declare that Respondent

Unconstitutionally and illegally sought personal gain

by her unilateral declaration of an Impeachment

Inquiry, and                    Pg 21

D.    That this Court will Declare that the

Impeachment Inquiry now in process is null and void

until the House itself exercises its Constitutionally

mandated authority as determined by a vote of the

whole membership to initiate Impeachment

proceedings of any kind against a sitting President of

the United States.

E.    That this Court immediately issue a temporary

Stay to any and all Impeachment related activities

against President Trump by the House of

Representatives pending the litigation of this Petition

or until the House convenes and the members of the

House are allowed to determine by vote of its whole

membership if Impeachment Proceedings are to be

initiated.

F.    That this Court declare that no one, not even

the Speaker of the House is above the Constitution.

Pg 22

Respectively Submitted:

_Duane Morley Cox_          _10 Oct 2019_

Duane Morley Cox, Pro Se        Date

## Certification Statement

I, Duane Morley Cox, Pro Se, do hereby swear that to the best of my knowledge, that I am in compliance with the requirements to file my Petition for Extra Ordinary Writ, and that by manual word count, my Petition, pages 1-23 contains 3120 words,

_____     _____
Duane Morley Cox, Pro Se                Date

Notary:

   County of Cache:

   State Of Utah:

That on 1 October 2019, Duane Morley Cox, did appear before me, provided proper identification, and did swear that this Certification Statement is to the best of his knowledge true and correct.

_____
Notary

ASHLEY BEDKE
NOTARY PUBLIC • STATE OF UTAH
COMMISSION NO. 697569
COMM. EXP. 09/27/2021

## Certificate of Service

I, Duane Morley Cox, Pro Se does hereby swear that on 1 October 2019, that I have filed and served upon the below listed parties true and correct copies of the attached Petition For Extra Ordinary Writ Seeking Declaratory Judgement in 8 ½ by 11 format by first class mail postage prepaid, and that 40 copies in booklet format will be provided to the Court as soon as they are published.

Chief Justice, John Roberts
C/O Clerk of the U.S. Supreme Court (Original +10
    Copies)
1 First Street, NE
Washington D.C. 20543
Ph: 202-479-3000

Nancy Pelosi, Speaker of The House
U.S. House of Representatives
Washington D.C. 20515
Ph: 202-225-1904


Duane Morley Cox, Pro Se                    Date

Morley and Jeanne Cox
1199 Cliffside Drive
Logan, UT 84321

U S DISTRICT COURT
DISTRICT OF COLUMBIA
CLERK
Room 1225
333 Constitution Ave. NW
Washington D.C. 20001





U.S. POSTAGE PAID
LOGAN, UT
NOV 25, 19
AMOUNT
$1.60
R2304M112533-03