**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE TREASURY, ET AL., <br><br> *Defendants*, <br><br> DONALD J. TRUMP, ET AL., <br><br> *Defendant-Intervenors*. | Case No. 19-cv-01974-TNM |

**<u>MOTION TO LIFT STAY</u>**

Pursuant to Federal Rule of Civil Procedure 7(b) and Local Rule 7, plaintiff Committee on Ways and Means of the United States House of Representatives (Committee) respectfully submits this motion in response to the Court's January 14, 2020 order staying this case pending a decision from the D.C. Circuit in *Committee on the Judiciary v. McGahn*, No. 19-5331 (D.C. Cir. 2019).  In accordance with the Court's suggestion at the January 14 telephonic conference that it would consider lifting the stay if the D.C. Circuit did not rule expeditiously, *see* Conf. Tr. at 11:9-13, Dkt. No. 78, and in light of the fact that two more weeks have elapsed and the D.C. Circuit has not yet ruled, the Committee requests that this Court (i) lift the stay immediately, (ii) deny Defendants'[1] motion to dismiss (or, at a minimum, do so with respect to the issues in this case that are not presented in *McGahn*), and (iii) order the parties to expeditiously brief the merits.  Alternatively, the Committee requests that the Court partially lift the stay and order expeditious merits briefing, so that the Court is in a position to promptly resolve the entire case following the D.C. Circuit's ruling in *McGahn*.

This case has been stalled long enough.  The requested relief is necessary for the Committee to move forward with its pressing legislative and oversight inquiry, and to carry out its constitutional functions in the limited time remaining in this Congress.

**ARGUMENT**

This Court has the "inherent power and discretion" to lift its own stay order.  *Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C. 2003).  The Court should exercise that power here to lift the stay imposed following the January 14 conference.  The reason for the stay—that the D.C. Circuit was likely to rule imminently in *McGahn*—has proven to be incorrect, and any

---

[1] Unless otherwise specified, "Defendants" collectively refers to Defendants and Defendant-Intervenors.

circumstances that might have justified a stay on January 14 no longer warrant a stay, especially a complete stay of all proceedings.

*First*, following the January 14 conference, Defendants' position that the House is constitutionally barred from judicial enforcement of its subpoenas has now been disavowed by President Trump in the Senate impeachment trial. In the impeachment trial, President Trump has contended, in no uncertain terms, that the House was required to pursue judicial enforcement of its subpoenas to various Executive Branch officials and that the Article III courts are available for that purpose. That flatly contradicts the position President Trump and the Justice Department (DOJ) have advanced in this case.

In his answer to the Second Article of Impeachment, "Obstruction of Congress,"[2] President Trump criticized the House for not "seek[ing] to enforce" its "subpoenas in court." Answer of President Donald J. Trump to Articles of Impeachment, S. Doc. No. 116-12 pt. II, at 14 (2020). President Trump's attorneys likewise faulted various House committees for not litigating their subpoena disputes in court: "So take article III of the U.S. Constitution and remove it. We are acting as if the courts are an improper venue to determine constitutional issues of this magnitude? That is why we have courts. That is why we have a Federal judiciary." 166 Cong. Rec. S384 (daily ed. Jan. 21, 2020) (statement of Jay Sekulow); *see also id.* at S615 (statement of Alan Dershowitz) ("The courts were designated to resolve disputes between the executive and legislative branches[.]").

These statements to the Senate demonstrate both the meritlessness of the contrary arguments made by President Trump and by DOJ on behalf of the Treasury Department and the

---

[2] The Second Article charges that President Trump "directed the unprecedented, categorical, and indiscriminate defiance of subpoenas issued by the House of Representatives." H. Res. 755, at 2.

2

Internal Revenue Service in this case and the impropriety of their pressing those arguments to this Court. *See, e.g.*, Defs.' Mot. to Dismiss (Sept. 6, 2019), Dkt. No. 44.[3] The Justice Department is headed by the Attorney General, who reports directly to the President. It simply is not tenable for the President's counsel to argue repeatedly and vociferously on the Senate floor that House subpoenas against Executive Branch officials must be litigated in Article III courts, while the Justice Department—and the President's private lawyers—are telling this Court the opposite. This Court should not condone President Trump's maintaining these clearly inconsistent positions, where he is a party both in this case and in the Senate impeachment trial.

For this reason alone, and for the reasons the Committee has set forth in its pleadings, the stay should be lifted and DOJ's threshold arguments rejected.

*Second*, and in any event, as this Court is aware, the Committee has sought President Trump's tax returns and related administrative files not only via subpoenas but also under 26 U.S.C. § 6103. Thus, only some of the threshold issues presented in the pending motion to dismiss in this case are likely to be addressed by the D.C. Circuit in *McGahn*, a subpoena-enforcement case. Whatever the D.C. Circuit may hold with respect to the issues pertaining to enforcement of Congressional subpoenas that are common to this case and *McGahn*, its decision will leave unresolved the Section 6103–related issues unique to this case, such as whether the Committee has Article III standing to assert, and has stated claims to vindicate, its mandatory

---

[3] To the extent that President Trump and DOJ attempt to rely on a confusing footnote in the President's Senate trial brief to suggest that the President's position in the impeachment trial and his position in this litigation are consistent, that argument is wrong. *See* Trial Mem. of President Donald J. Trump, S. Doc. No. 116-12 pt. III, at 193 n.336 (Jan. 20, 2020). The footnote contradicts statements made by President Trump's attorneys on the Senate floor, as well as other statements in the trial brief itself. *Compare, e.g.*, *id. with id.* at 197. At most, the footnote appears cynically to contend that the House must file subpoena-enforcement suits in court so that DOJ may then seek dismissal on Article III and other threshold grounds, without any ruling on the merits. *See id.* at 193 n.336. That is plainly a further attempt to impose delay and avoid accountability in any forum.

statutory entitlement to the information it seeks under Section 6103.  As to these distinct issues, there is no justification for holding this case in place.

*Third*, the Committee filed this case more than six months ago, and Defendants' motion to dismiss has been pending for more than four months.  Any further delay would violate the Supreme Court's directive that motions having the effect of delaying enforcement of Congressional subpoenas "be given the most expeditious treatment by district courts because one branch of Government is being asked to halt the functions of a coordinate branch."  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 511 n.17 (1975).

Indeed, just yesterday, former D.C. Circuit Judge Kenneth Starr told the Senate on behalf of President Trump that a House subpoena-enforcement action could have been fully litigated even through the Supreme Court in a very short time, as was done in the Pentagon Papers case. 166 Cong. Rec. S583 (daily ed. Jan. 27, 2020) (statement of Kenneth Starr) (referring to *New York Times Co. v. United States*, 403 U.S. 713 (1971)).  Former Judge Starr urged the House to "[g]o to court," making clear that President Trump understands that the Judges of this Court stand ready to decide *expeditiously* the House's subpoena-enforcement cases:  "The House of Representatives could have followed that well-trodden path.  It could have sought expedition.  The E. Barrett Prettyman Courthouse is 6 blocks down.  The judges are there.  They are all very able.  They are hardworking people of integrity.  Follow the path.  Follow the path of the law.  Go to court."[4]  *Id.*  President Trump is telling the Senate that cases like this one can and should be litigated in a highly expedited way, while here he argues that the Court should delay.

---

[4] Former Judge Starr's preceding remarks leave no doubt that the House's subpoena-enforcement cases should be resolved expeditiously:

> We have heard concerns about the length of time that the litigation might take.  Those of us who have litigated know that sometimes

In *Trump v. Mazars*, the D.C. Circuit recently noted "the Supreme Court's direction" in *Eastland* to "'give[] the most expeditious treatment' to suits seeking to enjoin congressional subpoenas," and commended the district court for "work[ing] quickly to provide the parties with an answer."  940 F.3d 710, 718 (D.C. Cir. 2019), *cert. granted*, No. 19-715 (Dec. 13, 2019) (quoting *Eastland*, 421 U.S. at 511 n.17).  *Mazars*, like this case, involved issues that were entirely legal rather than factual, so the district court "consolidated its hearing on the preliminary injunction with a resolution of the merits by treating the parties' briefing … as cross-motions for summary judgment."  *Id.* (quotation marks and alterations omitted); *see also McSurely v. McClellan*, 553 F.2d 1277, 1336-37 (D.C. Cir. 1976) (en banc) (Danaher, J., separate opinion) (multiyear delay of a Congressional inquiry "illustrates vividly the harm that judicial interference may cause" (quoting *Eastland*, 421 U.S. at 511 n.17)).

In this regard, *Mazars* was simply following D.C. Circuit precedent.  Decades ago, in *Exxon Corp. v. FTC*, 589 F.2d 582 (D.C. Cir. 1978), the D.C. Circuit emphasized the constitutional dimensions of the importance of speed in cases involving Congressional inquiries, even when delays would be measured in days, not months.  *See id.* at 587-88.  The D.C. Circuit refused "to mandate an enforced delay [of ten days] on the legitimate investigations of Congress

---

> litigation does take longer than we would like.  Justice delayed is justice denied.  We could all agree with that.
>
> But our history—Churchill's maxim, study history—our history tells us that is not necessarily so.  Take by way of example the Pentagon Papers case—orders issued preventing and sanctioning a gross violation of the First Amendment's guarantee of freedom of the press, an order issued out of the district court June 15, 1971.  That order was reversed in an opinion by the Supreme Court of the United States 2 weeks later.  June 15.
>
> The House of Representatives could have followed that well-trodden path.

166 Cong. Rec. S583.

whenever these inquiries touched on trade secrets[, because delay] could seriously impede the vital investigatory powers of Congress and would be of highly questionable constitutionality." *Id.* at 588.

In *Trump v. Deutsche Bank AG*, the Second Circuit similarly cited *Eastland*'s admonition when it held that a Congressional subpoena was enforceable, refused to remand for further fact development, and established a procedure for an extremely limited remand to ensure nondisclosure of sensitive personal information and to address related concerns. *See* 943 F.3d 627, 662, 668 (2d Cir. 2019), *cert. granted*, No. 19-760 (Dec. 13, 2019). These procedures were justified, the Second Circuit wrote, because "further delay [in] production of documents in response to subpoenas that were issued seven months ago … would run directly counter to the Supreme Court's instruction" in *Eastland*. *Id*. at 662. Indeed, writing in December, the Second Circuit noted that "the Committees have already been delayed in the receipt of the subpoenaed material since April 11 when the subpoenas were issued"—a "loss of time to consider and act upon the material disclosed" that that Court found to be "irreparable." *Id.* at 674.

Even before *Eastland*, in the Nixon-era subpoena cases, the courts moved more swiftly. In *Senate Select Committee on Presidential Campaign Activities v. Nixon*, the plaintiff committee filed its complaint on August 9, 1973, and filed a motion for summary judgment on the same day that the defendant filed his answer, August 29, 1973. *See* J.A. at 2, 498 F.2d 725 (D.C. Cir. Feb. 25, 1974). The court heard oral argument on October 4, 1973, and issued its ruling just 13 days later, on October 17. *See Senate Select Comm.*, 366 F. Supp. 51, 54 (D.D.C. 1973). Thus, the ruling was issued less than two weeks after argument on the dispositive motion and just over two months after the complaint was filed.

In *United States v. Mitchell*, the court ordered the issuance of the subpoena for the President's records on April 18, 1974, held an *in camera* hearing on May 13, 1974 (following the President's motion to quash), and then ruled a week later, on May 20, 1974. *See* 377 F. Supp. 1326, 1328-29 (D.D.C. 1974).

Shortly after *Eastland*, the courts acted with similar dispatch in resolving *United States v. American Telephone & Telegraph Co.*, 551 F.2d 384 (D.C. Cir. 1976) (*AT&T*). The complaint was filed on July 22, 1976, and the United States moved for a preliminary injunction and summary judgment on July 27, 1976, five days later. *See id.* at 387; J.A. at 14, 551 F.2d 384 (D.C. Cir. Oct. 15, 1976). The district court held a hearing on the motions on July 28, 1976, and ruled just two days later, on July 30, 1976. *See United States v. Am. Telephone & Telegraph Co.*, 419 F. Supp. 454, 456 (D.D.C. 1976). The D.C. Circuit then moved quickly, resolving the case on December 30, 1976. *See AT&T*, 551 F.2d 384. From start to finish, the district court and court of appeals litigation was resolved in just over five months.

In more recent cases as well, courts have heeded *Eastland*'s instruction to advance cases involving Congressional demands for information with expedition, often having the parties brief justiciability and merits issues simultaneously and issuing prompt rulings.

In *McGahn* itself, for example, the Committee on the Judiciary (Judiciary Committee) sued former White House Counsel Donald McGahn to compel his compliance with a subpoena that required him to appear and give testimony. *Comm. on the Judiciary v. McGahn*, — F.3d —, No. 19-cv-2379, 2019 WL 6312011, at *2 (D.D.C. Nov. 25, 2019). The Judiciary Committee filed its complaint in district court on August 7, 2019 and brought a motion for a preliminary injunction or, in the alternative, for partial summary judgment on August 26, 2019. *See id.* at *8-9. The parties briefed the threshold justiciability questions and merits issues simultaneously and

7

on a compressed schedule, completing briefing on both sets of issues just 79 days after the complaint was filed. *See* Min. Order, *McGahn*, 2019 WL 6312011 (D.D.C. Sept. 3, 2019). The district court (Judge Brown Jackson) held a hearing six days after the close of briefing and issued an opinion granting partial summary judgment to the Judiciary Committee only 25 days after oral argument. *See McGahn*, 2019 WL 6312011, at *10. From beginning to end, the district court litigation was resolved in 110 days—less than four months.[5]

Likewise, in *Kupperman v. U.S. House of Representatives*, the district court (Judge Leon) sought to quickly resolve a case in which Dr. Charles Kupperman, a former Deputy National Security Advisor, sought a declaratory judgment regarding his obligation to comply with a subpoena issued and then withdrawn by the House Permanent Select Committee on Intelligence. No. 19-3224, 2019 WL 7293589, at *1 (D.D.C. Dec. 30, 2019). Noting the importance of quickly resolving a case of such nature, the district court set an "aggressive briefing schedule combining both justiciability and merits arguments, with a hearing to follow shortly thereafter." *Id.* Under the district court's order, briefing on both justiciability and merits questions was completed just 40 days after the complaint was filed and oral argument was held only six days later. Order, *Kupperman*, 2019 WL 7293589 (D.D.C. Nov. 4, 2019), Dkt. No. 19. Although the district court ultimately dismissed the case as moot in an opinion issued 20 days after argument,

---

[5] After McGahn appealed, the D.C. Circuit also fast-tracked the appeal, underscoring the importance of ensuring quick resolution in cases such as this one. On November 27, 2019, the Justice Department filed a motion for a stay pending appeal and for an administrative stay pending disposition of the stay motion. The D.C. Circuit granted an administrative stay the same day and set a highly expedited briefing schedule, but it did not rule on the stay pending appeal. *See* Order at 1, *McGahn*, No. 19-5331 (D.C. Cir. Nov. 27, 2019). After that briefing, which was completed in under four weeks, the court ordered that the parties appear for oral argument on January 3, 2020. *Id.* at 2. It has now been twenty-five days since the argument and, notwithstanding the Judiciary Committee's request for highly expedited treatment, the Court has not issued a decision in the case. In light of this, there is no way to predict accurately when the D.C. Circuit will rule.

8

the district court's handling of the case reflected its recognition of the need for dispatch. *See* 2019 WL 7293589, at *1-2.

Perhaps even more relevant here, in *Committee on Oversight & Reform v. Barr*, a subpoena-enforcement action brought by the House Committee on Oversight and Reform (Oversight Committee) against Attorney General William P. Barr and Secretary of Commerce Wilbur L. Ross, Jr., the district court (Judge Moss) recently rejected a request by defendants to delay briefing pending the D.C. Circuit's ruling in *McGahn*. The Oversight Committee filed suit on November 26, 2019. On December 12, 2019, DOJ moved to hold the case in abeyance, arguing that the D.C. Circuit would soon resolve many of the threshold issues in the case. Defs.' Mot. to Hold Briefing in Abeyance at 2, *Barr*, No. 19-3557 (D.D.C. Dec. 12, 2019), Dkt. 10. The district court rejected that request and ordered the parties to brief the justiciability and merits issues together on a compressed schedule. *See* Min. Entry, *Barr*, No. 19-3557 (D.D.C. Dec. 12, 2019). Pursuant to the district court's order, briefing was completed just 61 days after the complaint was filed and oral argument on both sets of issues is scheduled for just 64 days after the complaint was filed.[6] Min. Scheduling Order, *Barr*, No. 19-3557 (D.D.C. Dec. 12, 2019).

At the January 14, 2020 conference, this Court noted that the district court in *Committee on Oversight and Government Reform v. Holder*, 979 F. Supp. 2d 1 (D.D.C. 2013), ruled on the motion to dismiss over a year after the complaint was filed. But *Holder* is an inapt guide. In that case, there was no request for expedition. To the contrary, the parties filed a consent motion to establish a briefing schedule that would have allowed plaintiff two months to file an opposition

---

[6] In *Trump v. Mazars*, 940 F.3d 710, the district court issued a final opinion and judgment on May 20, 2019, less than a month after the suit was filed. The D.C. Circuit and the Supreme Court also have fast-tracked the appeals. In *Trump v. Deutsche Bank AG*, 943 F.3d 627, the district court issued a ruling on May 22, 2019, less than a month after the suit was filed. The Second Circuit and the Supreme Court have likewise expedited the appeals from that case.

9

to the defendant's motion to dismiss and a motion for partial summary judgment, and another two months for defendant's reply and opposition. *See* Joint Mot. for Order Establishing Briefing Schedule, *Holder*, No. 12-1332 (D.D.C. Oct. 23, 2012), Dkt. No. 14. Judge Jackson denied the consent motion, in part, because the "parties [had] not set forth grounds that would support the establishment of a schedule that is as expansive as this one." Min. Order, *Holder*, No. 12-1332 (D.D.C. Oct. 24, 2012). Additionally, after the motion to dismiss was fully briefed and the Congress expired, but before the court issued its decision, the plaintiff filed an amended complaint. First Am. Compl., *Holder*, No. 12-1332 (Jan. 15, 2013), Dkt. No. 35. The Court therefore should not use *Holder* as a benchmark when the parties in that case themselves took steps that expanded the timeframe of the litigation.

In contrast to the cases discussed above in which courts moved with the expedition *Eastland* demands, this case has been beset by delay. The Committee filed this suit on July 2, 2019—over six months ago.[7] The Committee then filed a motion for summary judgment on both the justiciability of the case and the merits on August 20, 2019. Dkt. No. 29. The same day, the Committee filed a motion to enter a briefing schedule and expedite consideration of the case. Dkt. No. 30. The Court subsequently rejected the Committee's request for expedited consideration and denied its summary judgment motion as premature. Mem. & Order at 6-7 (Aug. 29, 2019), Dkt. No. 38. The Court then directed the parties to sequentially brief the threshold justiciability and merits questions. The parties completed briefing on the justiciability

---

[7] The Committee filed the complaint after providing the Administration ample time to comply with both its April 3, 2019 request and its May 10, 2019 subpoenas. Additionally, the Committee allowed the Administration time to provide the briefing that it had offered on multiple occasions. That briefing, however, proved to be a fruitless effort to resolve this dispute without resorting to litigation. *See* Pl.'s Consolidated Reply in Supp. of Mot. for Entry of Briefing Schedule at 8-11 (Aug. 26, 2019), Dkt. No. 35.

questions on September 30, 2019 and the Court held a hearing on November 6, 2019. Almost three months later, the Committee has yet to receive a ruling on any of the threshold issues raised by that briefing and argument. And more than six months after the Committee filed suit, the parties have yet to even brief the merits issues.

*   *   *

Heeding the Court's suggestions at the November 6, 2019 hearing and the January 14, 2020 conference, the Committee has corresponded with Defendants to determine whether any accommodation could resolve this matter. The parties, however, remain at the same complete impasse they have been in since the Committee issued its Section 6103 request and subpoenas. Defendants persist in the absolutist position previously expressed by the President, his Acting Chief of Staff, and the Office of Legal Counsel, that they are barred by law from making any of the President's returns and related administrative files available to the Committee. *See* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 43-47 (Sept. 23, 2019), Dkt. 55.

As the Committee has explained from the outset of its investigation, it requires the President's returns and related administrative files not simply to assess the mandatory audit program in general, but to understand and evaluate the thoroughness of the audit of the President's returns, whether and how the publicly available materials on the mandatory audit program diverge from current practices, whether the auditing of this President's returns has been subject to improper political influence, and whether codification of the audit program or other revisions to the tax code are needed. *See, e.g.*, Exs. A, E, K, P, QQ; Compl. ¶¶ 58-61, 79. As the Committee has made clear, there is no substitute for these materials that will satisfy the Committee's urgent legislative and oversight prerogatives. *See, e.g.*, Ex. P. at 2. The impasse remains, with no avenue for resolution.

Nor is the prospect of discovery a reason to keep this case from moving forward expeditiously. The Court can, and should, resolve the merits of this case without discovery. But to the extent Defendants make a motion under Federal Rule of Civil Procedure 56(d), the Committee notes that it will vigorously oppose any such effort because the Supreme Court has repeatedly made clear that such discovery is impermissible as a matter of law. *See, e.g.*, *Barenblatt v. United States*, 360 U.S. 109, 132 (1959) ("So long as Congress acts in pursuance of its constitutional [investigative] power, the judiciary lacks authority to intervene on the basis of the motives which spurred the exercise of that power."). If such a motion is made, the Committee will assert any and all applicable privileges, including the absolute immunity afforded by the Speech or Debate Clause. *See Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1086-87 (D.C. Cir. 2017) (holding, in subpoena-enforcement action, that Speech or Debate Clause immunity barred court from "ordering a congressional committee to return, destroy, or refrain from publishing" documents it obtained via subpoena and rejecting contention that the committee "necessarily accepted an implicit restriction on the Speech or Debate Clause by seeking to enlist the judiciary's assistance in enforcing [the] subpoena").

With no accommodation possible and discovery impermissible in this case, the Committee urges the Court to lift the stay immediately, deny the motion to dismiss, and direct the parties to brief the merits expeditiously. In the alternative, the Committee requests that the Court partially lift the stay and require expeditious merits briefing. Failure to take these steps could seriously jeopardize the Committee's ability to secure compliance with its demands for

information and take whatever legislative and oversight steps it deems appropriate once it receives the material, before the end of this Congress.[8]

                Respectfully submitted,

                /s/ Douglas N. Letter
                Douglas N. Letter (D.C. Bar No. 253492)
                  *General Counsel*
                Todd B. Tatelman (VA Bar No. 66008)
                  *Principal Deputy General Counsel*
                Megan Barbero (MA Bar No. 668854)
                  *Deputy General Counsel*
                Josephine Morse (D.C. Bar No. 1531317)
                  *Deputy General Counsel*
                Brooks M. Hanner (D.C. Bar No. 1005346)
                  *Associate General Counsel*

                Office of General Counsel
                U.S. House of Representatives
                219 Cannon House Office Building
                Washington, D.C. 20515
                (202) 225-9700
                douglas.letter@mail.house.gov

                *Counsel for Plaintiff Committee on Ways and Means, United States House of Representatives*

January 28, 2020

---

[8] Pursuant to Local Rule 7(m), Plaintiff conferred with Defendants and Defendant-Intervenors about this motion. Defendant-Intervenors stated: "Defendant-Intervenors oppose lifting the stay. In the event the stay is lifted, Defendant-Intervenors intend to pursue discovery in accordance with Federal Rule of Civil Procedure 26. Accordingly, Defendant-Intervenors oppose commencement of merits briefing for that additional reason." Defendants stated: "Defendants oppose Plaintiff's motion to lift the stay and proceed to immediate merits briefing, which contravenes both this Court's two-week-old order staying this case pending the D.C Circuit's decision in *McGahn*, *see* Minute Order dated January 14, 2020, as well as the Court's August 29, 2019, order holding that the Court would decide threshold issues before reaching the merits, *see* ECF No. 38, and which would cut short dialogue between the parties as part of the accommodations process. The Court should deny the motion *sua sponte*, but if it does not, Defendants will file an opposition in compliance with the rules or as otherwise directed by the Court."

13

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES,

        Plaintiff,

        v.

UNITED STATES DEPARTMENT OF THE TREASURY, *et al.*,

        Defendants,

DONALD J. TRUMP, *et al.*,

        Defendant-Intervenors.

Case No. 1:19-cv-01974 (TNM)

**[PROPOSED] ORDER**

UPON CONSIDERATION OF the Motion to Lift Stay of the Committee on Ways and Means of the U.S. House of Representatives and any opposition thereto, it is

ORDERED that Plaintiff's Motion to Lift Stay is GRANTED.

IT IS FURTHER ORDERED that the parties are directed to brief the merits on a schedule to be set by the Court.

SO ORDERED.

Dated:

                                                               HON. TREVOR N. MCFADDEN
                                                               United States District Judge