# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMMITTEE ON WAYS AND )
MEANS, UNITED STATES HOUSE )
OF REPRESENTATIVES, )
      )
    *Plaintiff*, )
      )
    v. )
      )   No. 1:19-cv-1974 (TNM)
UNITED STATES DEPARTMENT )
OF THE TREASURY, *et al.* )
      )
    *Defendants*, )
      )
DONALD J. TRUMP, *et al.*, )
      )
    *Defendant-Intervenors.* )

## DEFENDANTS' AND DEFENDANT-INTERVENORS' OPPOSITION TO PLAINTIFF'S MOTION TO LIFT STAY

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

    I.       The Motion Should Be Denied for the Reasons the Court Has Already Given. .... 6

    II.     The Committee's New Arguments for Lifting the Stay Should Be Rejected. ........ 9

          A.     Courts in this Circuit Routinely Maintain Stays in Analogous
                Circumstances. ............................................................................................ 9

          B.     The Committee's Contrary Authority Is Inapposite. ................................... 11

          C.     The Committee's Own Actions Undermine Its Claims of Urgency. ............ 16

          D.     Defendants Have Not "Disavowed" Their Justiciability Arguments. ......... 18

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

CASES

*Air Line Pilots Ass'n v. Miller*,
   523 U.S. 866 (1998) ........................................................................................................... 5

*Al-Ghizzawi v. Bush*,
   No. 05-2378 (JDB), 2008 WL 948337 (D.D.C. Apr. 8, 2008) ................................................ 10

*Allina Health Servs. v. Sebelius*,
   756 F. Supp. 2d 61 (D.D.C. 2010) ......................................................................................... 10

*Al-Shareef v. Bush*,
   No. 05-2458 (RWR), 2006 WL 3544736 (D.D.C. Dec. 8, 2006) ............................................ 10

*Ass'n of Am. Physicians & Surgeons, Inc. v. Sebelius*,
   901 F. Supp. 2d 19 (D.D.C. 2012) ........................................................................................... 9

*Avocados Plus Inc. v. Johanns*,
   421 F. Supp. 2d 45 (D.D.C. 2006) ......................................................................................... 11

*Barcardi & Co. v. Empresa Cubana Exportadora De Alimentos & Productos Varios, Inc.*,
   No. 04-519 (EGS), 2007 WL 1541386 (D.D.C. May 24, 2007) ............................................... 9

*\*Blumenthal v. Trump*,
   No. 19-5237, 2020 WL 593891 (D.C. Cir. Feb. 7, 2020) ......................................................... 2

*Clinton v. Jones*,
   520 U.S. 681 (1997) ........................................................................................................... 5

*Committee on Oversight and Government Reform v. Holder*,
   979 F. Supp. 2d 1 (D.D.C. 2013) ........................................................................................... 15

*Dellinger v. Mitchell*,
   442 F.2d 782 (D.C. Cir. 1971) ................................................................................................. 9

*Dome Patent L.P. v. Kappos*,
   No. 07-1695 (PLF), 2011 WL 13247565 (D.D.C. June 29, 2011) ........................................... 9

*Duncan v. Wash. Metro. Area Transit Auth.*,
   425 F. Supp. 2d 121 (D.D.C. 2006) ....................................................................................... 10

*Eastland v. U.S. Servicemen's Fund*,
   421 U.S. 491 (1975) ..................................................................................................... 11, 13

*Exxon Corp. v. FTC*,
   589 F.2d 582 (D.C. Cir. 1978) ............................................................................................... 13

*Hisler v. Gallaudet Univ.*,
  344 F. Supp. 2d 29 (D.D.C. 2004) ............................................................... 9

*Hulley Enters. Ltd. v. Russian Fed'n*,
  211 F. Supp. 3d 269 (D.D.C. 2016) .............................................................. 7

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  208 F.R.D. 1 (D.D.C. 2002) ......................................................................... 10

*\*In re Trump*,
  781 Fed. App'x 1 (D.C. Cir. 2019) ......................................................... 10, 14

*\*Landis v. North Am. Co.*,
  299 U.S. 248 (1936) ........................................................................... 5, 6, 9, 10

*Lardner v. U.S. Dep't of Justice*,
  No. 03-0180 (JDB), 2005 WL 758267 (D.D.C. Mar. 31, 2005) .................... 10

*Packwood v. Senate Select Comm. on Ethics*,
  510 U.S. 1319 (1994) ...................................................................................... 8

*Senate Select Committee on Presidential Campaign Activities v. Nixon*,
  366 F. Supp. 51 (D.D.C. 1973) ...................................................................... 15

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ........................................................................................... 8

*Trump v. Mazars*,
  940 F.3d 710 (D.C. Cir. 2019),
  *cert. granted*, No. 19-715 (Dec. 13, 2019) ........................................... 11, 12

*\*United States v. AT&T*,
  551 F.2d 384 (D.C. Cir. 1976) ...................................................................... 12

*\*United States v. AT&T*,
  567 F.2d 121 (D.C. Cir. 1977) ...................................................................... 12

*Virginia House of Delegates v. Bethune Hill*,
  139 S. Ct. 1945 (2019) .................................................................................... 2

## STATUTES

26 U.S.C. § 6103(f) ............................................................................... 3, 7, 17

28 U.S.C. § 1331 .................................................................................................. 6

28 U.S.C. § 1657(a) ............................................................................................. 1

OTHER AUTHORITIES

166 Cong. Rec. S384 (daily ed. Jan. 21, 2020)...............................................................19

166 Cong. Rec. S593 (daily ed. Jan. 27, 2020)...............................................................19

166 Cong. Rec. S652 (daily ed. Jan. 29, 2020)...............................................................19

166 Cong. Rec. S731 (daily ed. Jan. 30, 2020) ..............................................................19

Trial Mem. of President Donald J. Trump (Jan. 20, 2020) ...........................................18

*The authorities upon which we chiefly rely are marked with asterisks.*

## INTRODUCTION

For the third time in six months, the Committee on Ways and Means ("the Committee") asks this Court to proceed immediately to briefing on the merits of this case without determining whether it has jurisdiction.  *See* Motion to Lift Stay, ECF No. 79 ("Mot.").  The Committee makes its latest request—via a motion to lift a stay the Court entered a mere two weeks earlier—even though Defendants' and Defendant-Intervenors' motion to dismiss on multiple threshold grounds remains pending, even though the Court has already decided to resolve those threshold issues before reaching the merits, *see* Mem. & Order at 4, ECF No. 38, and even though the D.C. Circuit is simultaneously considering nearly all of those issues on a highly expedited basis in *Committee on the Judiciary v. McGahn*.  The essence of the Committee's demand is that whenever the Executive Branch does not immediately comply with a congressional committee's subpoena for information, courts must immediately leap to the committee's aid—even where, as here, the Committee proceeded at a leisurely pace in preparing and pressing its request for expedition.  The Committee's demand is baseless.  As the Court has already observed:  "[M]ost plaintiffs want quick resolutions of their cases," but Congress "has left it to the courts to 'determine the order in which civil actions are heard and determined.'"  Mem. & Order at 2 (quoting 28 U.S.C. § 1657(a)).

This Court's discretionary decision to stay proceedings pending the D.C. Circuit's resolution of *McGahn* could not have been more reasonable.  *McGahn* is fully briefed and argued, and the House has repeatedly—before, during, and after oral argument—asked the D.C. Circuit to rule immediately.  *See, e.g.*, Supp. Br. of the Comm. on the Judiciary at 1, 10-12, *Comm. on the Judiciary v. McGahn*, No. 19-5331 (D.C. Cir. Dec. 23, 2019).  If the D.C. Circuit rules in favor of Defendants on the threshold issues in *McGahn*, this case will be over.  And if the D.C. Circuit rules in favor of the committee plaintiff, this Court will not need to independently resolve the complex Article III, statutory jurisdiction, and cause-of-action issues raised in Defendants' and

Defendant-Intervenors' motion to dismiss in this case.  Either way, there is no need for this Court to adjudicate these complex issues when the D.C. Circuit's resolution of them is imminent.  While the Committee is apparently frustrated that the D.C. Circuit has not provided the "immediate" ruling it has demanded—though only thirty-nine days have passed since that case was argued following merits briefing over just ten days—the D.C. Circuit's careful consideration of these extraordinarily important issues only underscores that they warrant serious examination and that this Court should decline the Committee's request to get ahead of the Circuit.  Indeed, as the D.C. Circuit recently reiterated, "[t]he cardinal principle of judicial restraint is if it is not necessary to decide more, it is necessary not to decide more."  *Blumenthal v. Trump*, No. 19-5237, 2020 WL 593891, at \*3 (D.C. Cir. Feb. 7, 2020) (cleaned up).

Nor is there anything about the Committee's demands for the President's tax-return information that could overcome these compelling grounds for a stay.  The Committee's only stated concern is that whatever political support may presently exist for its oversight and legislative agenda might wane if the Court permits this litigation process to unfold in due course.  But the ebb-and-flow of the political process does not inflict a "legally cognizable injury" at all, *see Virginia House of Delegates v. Bethune Hill*, 139 S. Ct. 1945, 1955 & n.6 (2019), much less supply a basis to upend the careful, deliberative process by which the independent and apolitical Judiciary does its work.  If the Committee did not want to take the time to litigate, it should not have filed a lawsuit.  It should have instead deployed the legislative and political tools that congressional committees have deployed since the Washington Administration when they have informational disputes with the Executive Branch.  But having opted to become a litigant, the Committee should be fairly treated as one—abiding by the same rules as other litigants, including "the typical staged approach to litigation" contemplated by the Federal Rules of Civil Procedure.  Mem. & Order at 2. The Committee has no basis to bring this suit at all, but it *certainly* has no basis to invoke this

Court's jurisdiction and then demand that the Court cast aside the commonsense principles of judicial economy and modesty that have already led it twice to reject the Committee's demand for instantaneous judicial intervention on its side of this clash between the political branches.

## BACKGROUND

On April 3, 2019, the Chairman of the Committee sent a letter to the Commissioner of the Internal Revenue Service ("IRS") invoking 26 U.S.C. § 6103(f) to request that the IRS produce tax returns and audit information for the President and eight related business entities for tax years 2013-2018. *See* Compl. Ex. A, ECF No. 1-1. The Chairman stated that the information was necessary for the Committee to determine the "scope" of examinations of Presidential tax returns under the IRS policy mandating audits of Presidential and Vice Presidential income-tax returns, as set forth in the Internal Revenue Manual (the "Presidential audit program"). *Id.* at 1. On May 6, 2019, after further correspondence with the Committee and consultations with the Department of Justice, Defendants denied the Committee's request, explaining its unprecedented nature, the constitutional limitations on the Committee's authority under section 6103(f), and the lasting ramifications for all taxpayers if Defendants were to comply with the request. Compl. Exs. I & J, ECF Nos. 1-9, 1-10.

On July 2, 2019, the Committee filed suit to compel Defendants to produce the President's tax-return information. On August 20, 2019, approximately two weeks before Defendants' deadline to respond to the complaint, the Committee filed a motion for summary judgment and simultaneously moved for an expedited briefing schedule. *See* ECF Nos. 29, 30, 33, 35, 38. On August 29, 2019, the Court denied the Committee's motion for expedited treatment and denied without prejudice the Committee's motion for summary judgment, explaining that "this is no ordinary case" and that the "weighty constitutional issues and political ramifications it presents militate in favor of caution and deliberation, not haste." Mem. & Order at 3. The Court determined

that it was therefore appropriate to "adhere to the traditional litigation sequence" set forth in the Federal Rules of Civil Procedure, which contemplates a "complaint; answer or motion to dismiss; discovery, if appropriate; and only then, summary judgment[,]" a process that "allows the Court to assure itself of jurisdiction and address threshold matters before burdening the parties with the costs of discovery and briefing on the merits." *Id.* at 4.

Following that approach, Defendants filed their motion to dismiss on the scheduled date of September 6, 2019. ECF No. 44. The Committee chose not to expedite its opposition to that motion but instead generally conformed to the deadline established by Local Rule 7(b) and filed its opposition on September 23, 2019.[1] Defendants filed their reply seven days later, and the Court heard argument approximately five weeks later, on November 6, 2019.

In the meantime, on August 7, 2019, the House Committee on the Judiciary filed a separate lawsuit seeking to compel the former Counsel to the President, Donald F. McGahn II, to testify pursuant to congressional subpoena. *See Comm. on the Judiciary, U.S. House of Reps. v. McGahn*, No. 19-2379 (KBJ) (D.D.C.). The Department of Justice entered an appearance on behalf of Mr. McGahn in his capacity as former Counsel to the President, and on August 26, 2019, the Judiciary Committee moved for a preliminary injunction or, in the alternative, expedited summary judgment. *Id.*, ECF No. 22. The parties then negotiated a schedule for briefing and argument on cross-motions for summary judgment, which the court entered on the docket. *Id.*, ECF No. 28 and minute order dated September 3, 2019. In the course of that briefing and argument, the Department of Justice raised nearly every threshold issue raised in this case. On November 25, 2019, the district court granted summary judgment for the Judiciary Committee. *Id.*, ECF Nos. 46, 47. The Department of Justice appealed to the D.C. Circuit the next day, *id.*, ECF No. 48, which

---

[1] The Committee ultimately sought a one-day extension of its deadline under Local Rule 7(b) to evaluate a supplemental, corrective declaration submitted by Defendants. *See* ECF No. 46.

administratively stayed the district court's decision, ordered expedited briefing over a ten-day period in December, and heard argument on January 3, 2020. *See* Per Curiam Order at 1-2, *Comm. on the Judiciary, U.S. House of Reps. v. McGahn*, No. 19-5331 (D.C. Cir. Nov. 27, 2019). A decision in that case is pending.

On January 14, 2020, the Court held a telephone conference in this case and informed the parties that it had reviewed the briefing in *McGahn* and, in light of the significant overlap between the threshold arguments presented in the two cases and the fact that *McGahn* "is on an expedited track with the Circuit," indicated that the Court's "strong inclination" was "not to get out in front of [its] superiors." Tel. Conf. Tr., ECF No. 78 ("Tr.") at 3:6-13. The Court announced, therefore, that it would stay the case pending a decision in *McGahn*. In so doing, the Court specifically rejected the Committee's suggestion that the Court order merits briefing during the pendency of the stay but observed that there seemed to be "plenty of room for [an] accommodation process to take place" and encouraged the parties to be "in communication about ways to potentially narrow the scope of the disagreement here and possibly resolve it." *Id.* at 12:11-13:17. Defendants were preparing their second response to Committee correspondence regarding accommodation when this motion followed just two weeks later.

## LEGAL STANDARD

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936)). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* (quoting *Landis*, 299 U.S. at 244-55); *see also Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own

5

docket.").  A stay is especially appropriate "in cases of extraordinary public moment" where the "public welfare or convenience will thereby be promoted" so long as the delay is "not immoderate in extent and not oppressive in its consequences." *Landis*, 299 U.S. at 256.

## ARGUMENT

### I.      The Motion Should Be Denied for the Reasons the Court Has Already Given.

The Court should maintain the stay entered just four weeks ago (two weeks before the Committee filed its motion) for the reasons the Court has already laid out.  The "weighty constitutional issues and political ramifications" of this case "militate in favor of caution and deliberation, not haste."  Mem & Order at 3.  After expedited briefing and argument in *McGahn*, the D.C. Circuit is poised to issue authoritative guidance on almost all of those issues, including whether the Committee has Article III standing to seek judicial resolution of its informational disputes with the Executive Branch; whether 28 U.S.C. § 1331 supplies statutory subject-matter jurisdiction over suits by House committees seeking to enforce their subpoenas against the Executive Branch; and whether the Committee has a cause of action to bring such claims.  Given the gravity of those issues, the substantial overlap with arguments raised in this case, and the imminence of the D.C. Circuit's decision, the Court's "strong inclination . . . not to get out in front of [its] superiors" is highly appropriate.  Tr. at 3:7-9.   Indeed, it is not clear that lifting the stay would even expedite resolution of this case in any meaningful regard.  The D.C. Circuit heard argument in *McGahn* less than one month after the Court heard argument in this case.  And if the Court tries to predict how the D.C. Circuit will rule in *McGahn* and winds up getting it wrong, then lifting the stay is likely to have no effect on how quickly this case is resolved.  In any event, Defendants' and Defendant-Intervenors' motion to dismiss has now been fully submitted for only about ninety days.  (That is the same amount of time that elapsed between Treasury denying the Committee's request and the Committee filing its summary judgment brief.)   Ninety days to

resolve multiple weighty constitutional and statutory questions hardly amounts to a "case [that] has been beset by delay." Mot. at 10.  Rather, as the Court observed at the January 14 conference, "this is . . . still a pretty young case."  Tr. at 11:2-3.

The Committee suggests that lifting the stay might expedite this case because, after doing so, the Court could decide the few threshold issues that are not directly presented in *McGahn*: whether the Administrative Procedure Act ("APA") or 26 U.S.C. § 6103(f) creates a cause of action in favor of the Committee and whether a vote by the full House was necessary to authorize this lawsuit.  But even though these issues are not directly presented in *McGahn*, the D.C. Circuit's decision is likely to substantially clarify how they should be decided.  If the D.C. Circuit concludes that a House committee lacks standing or subject-matter jurisdiction to bring informational claims in federal court, that determination will control this case and the Court will not need to reach whether the Committee has a cause of action.  Conversely, if the D.C. Circuit concludes that there is jurisdiction and a cause of action under other theories the Committee has advanced, the Court also would not need to reach the Committee's APA or section 6103(f) theories.  And even if the *McGahn* decision does not eliminate the need to decide those issues, it may provide guidance on how the Court should assess them, in which case maintaining the stay will "avoid potentially 'fractured and disorderly' and unnecessary litigation and best preserve judicial and parties' resources."  *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 285 (D.D.C. 2016) (citation omitted); *see also id.* at 281-84 (explaining that a stay was appropriate because "even if the Dutch proceedings do not resolve every jurisdictional and merits issue presented in the instant case, . . . the Dutch Courts' reasoning may be persuasive as to certain [relevant] issues" which "would likely prompt the parties to seek reconsideration" of any earlier decision).

The Committee also proposes that the Court could "partially lift the stay and order expeditious merits briefing, so that the Court is in a position to promptly resolve the entire case

following the D.C. Circuit's ruling in *McGahn*." Mot. at 1. This is the third time the Committee has asked the Court to entertain merits briefing during the pendency of Defendants' and Defendant-Intervenors' motion to dismiss. *See* ECF No. 30 (Mot. to Expedite) at 2-4; Tr. at 11-12. Yet despite repeating its request again (and again), the Committee continues to ignore what this Court (and the Supreme Court) have already held: "[t]he requirement that a federal court assure itself of jurisdiction to hear a case before proceeding to the merits is 'inflexible and without exception.'" Mem. & Order at 3-4 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998)). Congress *itself* has argued that when "a motion to dismiss raises serious challenges to the Court's power to hear [a] case," the court should "stay proceedings on the merits until it determined whether it has authority to hear th[e] case at all." Defs.' Mot. to Hold in Abeyance at 4-5, ECF No. 25, *Judicial Watch, Inc. v. U.S. Senate*, No. 1:03-cv-1066 (D.D.C. Oct. 29, 2003). That is all the more so given the "novel and complex questions about the privileges and authority of all three branches of the federal government" presented by this case. Mem. & Order at 3.

The Committee's suggestion that the parties brief the merits while awaiting rulings on threshold issues also overlooks that the Court's resolution of the motion to dismiss will dramatically affect *how* the parties brief the merits. The Committee has brought a panoply of claims: some arise directly under Article I, some invoke the APA, some allege *ultra vires* agency action, and some sound in mandamus. Until the D.C. Circuit rules in *McGahn* and this Court rules on Defendants' and Defendants-Intervenors' motion to dismiss, the parties will not know which of those claims survive, if any. And because the legal standards applicable to such claims vary widely—a party that it is entitled to relief under the APA, for example, might not be entitled to the extraordinary remedy of mandamus—the parties would not know what standard to apply in briefing the merits.

The Committee's request that the parties proceed straight to merits briefing also overlooks Defendant-Intervenors' intent to seek discovery. *See* Tr. at 12:13-15; Defs.' Mot. to Hold in Abeyance at 12-14, ECF No. 33. *Cf. Packwood v. Senate Select Comm. on Ethics*, 510 U.S. 1319, 1320-21 (1994) (noting that resolution of a challenge to a congressional subpoena "would entail a factbound determination of the nature and scope of [the committee's] investigation" because "relevancy and adequacy or excess in the breadth of [a] subpoena are matters variable in relation to the nature, purposes, and scope of the inquiry"). Although the Committee may oppose discovery, and although the federal Defendants have not yet taken a position on this question, the Court cannot proceed to the merits without resolving whether discovery is appropriate and, if so, permitting that discovery to take place. *See* Mem. & Order at 5; Tr. at 12:16-19. Again, the D.C. Circuit's decision in *McGahn* may eliminate the need to decide the issue, a point that further counsels in favor of awaiting that guidance before proceeding here.

## II. The Committee's New Arguments for Lifting the Stay Should Be Rejected.

### A. Courts in this Circuit Routinely Maintain Stays in Analogous Circumstances.

The Committee's newly presented arguments for lifting the stay and expediting this case are similarly unpersuasive. As a preliminary matter, the Committee errs in suggesting that there is anything atypical or improper about the limited and eminently reasonable stay the Court has entered. Courts in this District have routinely exercised their inherent power to stay litigation "'pending resolution of independent proceedings which bear upon the case.'" *Bacardi & Co. v. Empresa Cubana Exportadora De Alimentos & Productos Varios, Inc.*, No. 04-519 EGS, 2007 WL 1541386, at *1 (D.D.C. May 24, 2007) (quoting *Hisler v. Gallaudet Univ.,* 344 F. Supp. 2d 29, 35 (D.D.C. 2004)); *see also Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971) (stay "pending . . . determination in the other suit" was justified "in view of the complex facts, and novel legal problems 'of far-reaching importance to the parties and the public.'" (quoting *Landis*, 299

U.S. at 256).  That is especially true where a case presents questions simultaneously pending before a higher court.  *See, e.g.*, *Ass'n of Am. Physicians & Surgeons, Inc. v. Sebelius*, 901 F. Supp. 2d 19, 27 (D.D.C. 2012) (court granted motion "to stay this case pending decisions in two cases before the D.C. Circuit, and later, one case before the United States Supreme Court"); *Dome Patent L.P. v. Kappos*, No. 07-1695 (PLF), 2011 WL 13247565, at *2 (D.D.C. June 29, 2011) (staying case where a "question now before the Supreme Court is directly relevant to a central issue before this Court"); *Allina Health Servs. v. Sebelius*, 756 F. Supp. 2d 61, 71 (D.D.C. 2010) (finding good cause to stay where "the resolution of [related case] by the D.C. Circuit will be dispositive of the Plaintiffs' arguments here"); *see also, e.g.*, *Al-Shareef v. Bush*, No. 05-2458 RWR, 2006 WL 3544736, at *1 (D.D.C. Dec. 8, 2006) (staying on similar grounds); *Lardner v. U.S. Dep't of Justice*, No. 03-0180 (JDB), 2005 WL 758267, at *2 (D.D.C. Mar. 31, 2005) (same); *In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 6 (D.D.C. 2002) (same).

A stay is all the more appropriate in this case given the extraordinary and weighty justiciability issues it presents.  Indeed, the D.C. Circuit recently held that it was an abuse of discretion for a district court *to proceed* with discovery and expedited merits briefing in an interbranch dispute where "unsettled" but potentially dispositive threshold questions were presented.  *See In re Trump*, 781 Fed. App'x 1, 2 (D.C. Cir. 2019) (holding that "[i]n an inter-branch dispute like this, . . . important and open threshold questions of pure law are best resolved conclusively through an expedited interlocutory appeal").

The Committee fails to identify anything "immoderate" or "oppressive," *Landis*, 299 U.S. at 256, that could possibly overcome the compelling grounds for maintaining the stay.  The D.C. Circuit will decide *McGahn* any day, and courts in this Circuit have frequently entered stays for far longer durations in analogous circumstances.  *See Al-Ghizzawi v. Bush*, No. 05-2378(JDB), 2008 WL 948337, at *1 (D.D.C. Apr. 8, 2008) (explaining that, in a July 19, 2005 order, "[t]his

Court previously ordered a stay in this case pending resolution of related appeals in the D.C. Circuit" and (nearly three years later) "the Court is now awaiting the Supreme Court's decision in *Boumediene v. Bush*"); *Duncan v. Wash. Metro. Area Transit Auth.*, 425 F. Supp. 2d 121, 125 (D.D.C. 2006) (explaining that "[o]n April 15, 2003, the Court stayed all proceedings pending the D.C. Circuit's resolution of" a related case and "lifted its stay on March 9, 2005," roughly two years later); *Avocados Plus Inc. v. Johanns*, 421 F. Supp. 2d 45, 49 (D.D.C. 2006) (court granted motion "for a stay of all proceedings pending the Supreme Court's resolution of . . . a case that Defendants argued would 'provide this Court with guidance as to the issues presented here'" and kept that stay in place until the Supreme Court issued its decision more than six months later).

> ### B.     The Committee's Contrary Authority Is Inapposite.

The Committee contends that its case deserves special treatment because "[i]n *Trump v. Mazars*, [940 F.3d 710, 718 (D.C. Cir. 2019), *cert. granted*, No. 19-715 (Dec. 13, 2019)] the D.C. Circuit recently noted 'the Supreme Court's direction' in *Eastland* [*v. U.S. Servicemen's Fund*, 421 U.S. 491, 511 n.17 (1975)] to 'give[] the most expeditious treatment to suits seeking to enjoin congressional subpoenas[.]'" Mot. at 5.  That argument fails for at least four reasons.

*First*, *Eastland* was a case brought *against* the chairman of a Senate subcommittee and nine other senators (among others) to enjoin them from trying to enforce a congressional subpoena, 421 U.S. at 495, and every facet of the Supreme Court's analysis, including its discussion of expeditious treatment, was grounded in the senators' immunity from suit under the Speech or Debate clause.  *Id.* at 501, 503, 511.  As the Court explained, prompt treatment was necessary because the senators were being hauled into court against their will and the Judiciary "was being asked to *halt*" or "interfere[]" with the functions of the subcommittee in contravention of the Speech or Debate clause.  *Id.* at 511 & n.17 (emphasis added); *see also id.* at 501, 503, 511 (repeatedly framing the issue as one of judicial "interference" barred by Speech or Debate

immunity).  Here, the Committee is not a defendant, and Treasury and the IRS have not asked the

Court to "halt" or "interfere" with its functions; rather, the Committee has brought this case.  Thus,

as the Committee has already conceded, the Speech or Debate clause "has no application" because

"by . . . agreeing to avail itself of the jurisdiction of the court, the Committee is opting not to assert

the immunity that it would otherwise have[.]"  *Trump v. Committee on Ways and Means, U.S.*

*House of Representatives*, No. 19-2173 (TNM) (July 25, 2019), Hr'g Tr. at 15:4-8; *see also id.* at

15:23-16:2 (explaining that when "we come forward to the Court and say we, Court, are asking

you to do something, enforce our subpoena[,] . . . *there is no Speech or Debate implication there*"

(emphasis added)); *see also United States v. AT&T*, 567 F.2d 121, 130 (D.C. Cir. 1977) ("*AT&T*

*II*") ("Where [members of Congress] are not harassed by personal suit *against* them, the [Speech

or Debate] clause cannot be invoked" (emphasis added)).  The cited portion of *Eastland* is thus

irrelevant.

   *Second*, the basic posture of this case—which involves "not one but two 'coordinate

branch[es] of our government,'" *Mazars*, 940 F.3d at 725—presents "nerve-center constitutional

questions" that were not present in *Eastland*.  *United States v. AT&T*, 551 F.2d 384, 394 (D.C. Cir.

1976) ("*AT&T I*").  When the D.C. Circuit confronted a similarly fraught confrontation between

the political branches in *United States v. AT&T*, it did not, as the Committee contends—"move[]

quickly" to "resolve[] [the case] in just over five months."  Mot. at 7.  Instead, the Circuit

concluded that a multi-month "*pause*" was warranted so that the parties could "attempt to negotiate

a settlement" before the court "mov[ed] on to a decision o[n] such" significant questions.  *AT&T*

*I*, 551 F.2d at 394-95.  And when the dispute returned to the D.C. Circuit nearly ten months later,

it fashioned a compromise between the Branches, explaining that incrementalism and caution, not

rigidity and haste, were in order:

   We are aware that from the legislative viewpoint, any alternative to outright
   enforcement of the subpoena entails delay. . . .  But even assuming that there will

be some delay while the executive and the judicial branches conduct their respective review, this is an inherent corollary of the existence of coordinate branches. The Separation of Powers often impairs efficiency, in terms of dispatch and the immediate functioning of government. It is the long-term staying power of government that is enhanced by the mutual accommodation required by the Separation of Powers.

*AT&T II*, 567 F.2d at 133.

*Third*, even in *Eastland*, which is not controlling for the reasons already discussed, the Supreme Court was careful to observe that "the Speech or Debate Clause has never been read so broadly that legislators are 'absolved of the responsibility'" of proceeding through the standard steps of civil litigation. 421 U.S. at 511 n.17 (citation omitted). Rather, it was a *five-year* delay in the resolution of that case with which the Court was concerned. *Id.* And in *Exxon Corp. v. FTC*, 589 F.2d 582 (D.C. Cir. 1978), on which the Committee also relies, the D.C. Circuit noted without any hint of disapproval that judicial proceedings had been stayed for several months while related issues were resolved in a separate lawsuit also pending before the D.C. Circuit. *Id.* at 586-87 & n.6 & n.7 (explaining that the informational request had issued in April 1976, the district court stayed proceedings in March 1977, and the stay was lifted in May 1977).[2]

There is no indication that this case—which had been stayed for just two weeks before the Committee filed its motion—will replicate the five-year trajectory that was at issue in *Eastland*, or even the two-year path that did not trouble the D.C. Circuit in *Exxon Corp.* Indeed, the House has asked the D.C. Circuit multiple times in *McGahn*—in briefs, at argument, and in letters—to

---

[2] The D.C. Circuit's independent discussion in *Exxon Corp.* about "enforced delay on legitimate investigations of Congress" addressed a separate issue not presented here—namely, whether it was appropriate, in light of *Eastland*, for the courts to grant a permanent *injunction* requiring advance notice to affected parties "before the FTC can disclose confidential data pursuant to congressional request" where the "authority of the subcommittee to make a proper request for information of th[at] nature . . . is not questioned." *Exxon Corp.*, 589 F.2d at 588. The Circuit never suggested that similar expedition would be required where a committee's authority *is* questioned, and the *committee itself* has brought suit against the Executive Branch to enforce its demands.

13

rule "immediate[ly]," to move "expeditious[ly]," and even to issue an order with opinion to follow. *See* Br. of the Comm. on the Judiciary at 3, *Comm. on the Judiciary v. McGahn*, No. 19-5331 (D.C. Cir. Dec. 16, 2019) (asking the Circuit to affirm "without delay" and proposing that "the Court could issue an immediate order vacating the stay and affirming the decision below, with opinion to follow"); Supp. Br. of the Comm. on the Judiciary at 1, *Comm. on the Judiciary v. McGahn*, No. 19-5331 (D.C. Cir. Dec. 23, 2019) (requesting "expeditious resolution"); *id.* at 11 ("'the loss of time' . . . 'is irreparable'") (citation omitted); *id.* at 12 ("The Committee should not be required to wait any longer."); Rule 28(j) Ltr. of the Comm. on the Judiciary, at 2 *Comm. on the Judiciary v. McGahn*, No. 19-5331 (D.C. Cir. Jan. 23, 2019) ("Mr. McGahn's testimony is now more urgent than ever.  We respectfully urge the Court to rule expeditiously.").  The Circuit is quite aware of the Judiciary Committee's desire for expedition.  To the extent that the D.C. Circuit is taking longer to issue its decision than the House might have liked, that simply underscores that the issues presented there and here are weighty, serious, and deserving of deliberate consideration.

*Fourth*, although the Committee relies on the agreement of the District Court and the D.C. Circuit to conduct expedited proceedings in the *McGahn* case, the Committee's case for expedition in that proceeding hinged on the House's invocation of its *impeachment* authority.  *See* Mot. for Prelim. Inj. or Mot. for Partial Summ. J. at 1, *Comm. on the Judiciary, U.S. House of Representatives v. McGahn*, No. 19-2379, (D.D.C. Aug. 26, 2019), ECF No. 22-1 (asserting that McGahn's testimony was "necessary to [the committee's] consideration of whether to recommend articles of impeachment against the President"); *see also id.*, ECF No. 51 at 1 (opposing stay of district court decision because "the delay from such a stay would impair the House's ongoing impeachment inquiry").  After the House backtracked on that assertion by passing articles of impeachment wholly unrelated to the testimony sought from Mr. McGahn, the D.C. Circuit requested supplemental briefing to understand "whether the articles of impeachment render this

14

case moot *and whether expedited consideration remains necessary*."   Order, *Comm. on the Judiciary, U.S. House of Representatives v. McGahn*, No. 19-5331 (D.C. Cir. Dec. 18, 2019) (emphasis added).  And at the January 3, 2020, argument before the D.C. Circuit, the panel asked a series of questions seeking to understand whether the House still considered McGahn's testimony to be relevant to impeachment, remarking that "[i]f you were only here on legislative oversight, *we wouldn't have spent the holidays expediting this [case]*.   You're here because of impeachment."[3]   *McGahn* and the Committee's other impeachment examples are therefore inapposite.   *See* Mot. at 4-5 n.4, 8 (statements of Kenneth Starr on the floor of the Senate impeachment trial & *Kupperman v. U.S. House of Representatives*, No. 19-3224 (RJL)).[4]

The Committee also relies on *Senate Select Committee on Presidential Campaign Activities v. Nixon*, 366 F. Supp. 51 (D.D.C. 1973), where the court denied the Senate committee's motion for summary judgment and dismissed the case for lack of jurisdiction approximately six weeks after President Nixon answered the complaint.   That decision, however, says nothing about expedition, and it is not clear from the face of the opinion why the case moved so quickly other than the obvious fact that notwithstanding the "battery" of jurisdiction, justiciability, and other issues raised in the case, the court "found it necessary to consider only one question": whether it had statutory jurisdiction.   *Id.* at 54-55.

---

[3]  Recording of oral arg. at 30:58-40:10, *HJC v. McGahn*, No. 19-5331 (D.C. Cir. Jan. 3, 2020), https://www.cadc.uscourts.gov/recordings/recordings2019.nsf/6E2288243B32D70E852584E400 66ECD7/$file/19-5331.mp3.

[4]  Even aside from this distinction, *Kupperman*—where the House committee was a defendant—is at odds with the Committee's motion here, because the House committee in that case *opposed* merits briefing before resolution of jurisdictional matters and resisted the expedited schedule set by the court.   *See* Exhibit A, Tr. of Status Conf. at 15:7-10, 17:25-19:18, *Kupperman v. U.S. House of Representatives*, No. 19-3224 (RJL) (D.D.C. Oct. 31, 2019) & *Kupperman* Mot. to Vacate at 3, ECF No. 22 (requesting that "the Court vacate the expedited briefing schedule currently in place" or hold "a status conference to discuss an alternative briefing schedule at the Court's earliest convenience" after committee withdrew its subpoena).

Because the Committee here invoked only Congress's legislative powers, not its powers of impeachment, and because the Committee has not sought a preliminary injunction and this case raises a battery of issues beyond statutory jurisdiction, the best guidepost is *Committee on Oversight & Government Reform v. Holder*, 979 F. Supp. 2d 1 (D.D.C. 2013), where—as the Committee concedes—the court did not rule on the motion to dismiss until more than a year after the complaint was filed. Mot. at 9. The Committee's response—that *Holder* is "inapt" because "[i]n that case there was no request for expedition," Mot. at 9—simply confirms that the Committee claims the power to dictate how this Court prioritizes its work, and underscores why these cases do not belong in federal court.

## C.      The Committee's Own Actions Undermine Its Claims of Urgency.

The Committee's actions in waiting to seek expedited judicial relief—and in subsequently refusing genuinely to engage in the accommodation process—are further reason to deny its motion. The Committee did not seek expedition of this case until six weeks after filing it, ECF No. 30, waiting more than three and a half months from the time Defendants issued their final decision on May 6, 2019, ECF No. 1-9, until urging the Court to proceed on an accelerated track. And the Committee then filed this motion barely two and a half months after the Court heard argument in November, meaning that the Court has thus far taken *less* time to consider the complex issues presented than the House took to even request expedited judicial review of its claims.

Moreover, rather than make productive use of the time in which Defendants' and Defendant-Intervenors' motion has been pending to explore the possibility of an accommodation, the House has again declared an impasse and forged ahead with zero-sum litigation. That is so notwithstanding the Court's admonition at the January 14 status conference that "I would be inclined to think that[] [an appropriate accommodation process] needs to happen at some point," Tr. at 12:22, 24-25, and that "to the extent that the Committee is looking to move things along, I'd

hope that you all are in communication about ways to potentially narrow the scope of the disagreement here and possibly resolve it." *Id.* at 13:6-9. Yet after that conference, the Committee made no genuine effort to narrow the disagreement. Instead, counsel for the Committee emailed counsel for Defendants three days later stating that "if none of the [President's] tax returns and audit files that the Committee has sought can, in your view, legally be turned over, then it would seem that the parties remain at an impasse. We would very much like to convey that information to Judge McFadden as soon as possible." Exhibit B (email correspondence of counsel). In response, Defendants' counsel expressed that although Defendants continued to believe "the specific tax records sought by the Committee" could not be provided consistent with 26 U.S.C. § 6103(a), they stood ready to "work with the Committee to explore other steps that would accommodate the Committee's stated interest" in the Presidential audit program. *Id.* The Committee's counsel followed up with a further email four days later (on a Saturday), in which it again declared an impasse. *Id.* Defendants' counsel were preparing their response to that latest message from the Committee, and in particular, exploring whether they could provide certain information identified by the Committee in a way that would not implicate individual taxpayer information, when the Committee filed this motion two business days later.[5] The Committee's choice again to cut off discussions that had not even left the starting gate and that could have

---

[5] As Defendants have repeatedly explained, "[t]o the extent the Committee wishes to understand, for genuine oversight purposes, how the IRS audits and enforces the Federal tax laws against a President, we would be happy to accommodate that interest by providing additional information on the mandatory audit process." Decl. of Frederick W. Vaughan ¶ 18, ECF No. 44-3 (citing Mnuchin Letter of April 23, 2019); *see also id.* ¶¶ 21, 28, 29, 49 (expressing similar sentiments). The Committee too has stated that it seeks "to understand exactly what happens from the moment the returns enter the mail to the IRS through the time that [an] audit is completed." *Id.* ¶ 34 (quoting McAfee Email of May 24, 2019). The Committee's insistence that accommodation is not possible is therefore implausible, especially in the absence of any serious effort in that regard.

yielded information relevant to at least portions of its stated inquiry undermines its claims of urgency and is reason alone to deny this motion.

### D.    Defendants Have Not "Disavowed" Their Justiciability Arguments.

Finally, the Committee argues that "Defendants' position that the House is constitutionally barred from judicial enforcement of its subpoenas has now been disavowed by President Trump in the Senate impeachment trial." Mot. at 2.  Incorrect.  As the President's counsel have repeatedly made clear, their position is simply that the House cannot have it both ways:  *If*, as the House contends, disputes like this are justiciable, *then* Congress was obligated to exhaust that process before accusing the President of obstructing Congress.  That is not a concession that disputes like this are justiciable or a "disavowal" of the longstanding view of the Executive Branch that House committees cannot file suits.  Rather, the President's trial memorandum clearly affirms that: "[t]he Trump Administration, like the Obama Administration, has taken the position that a suit by a congressional committee attempting to enforce a subpoena against an Executive Branch official is not a justiciable controversy in an Article III court."  Trial Mem. of President Donald J. Trump 49 n.336 (Jan. 20, 2020).[6]  The President's trial memorandum also reiterates Defendants' position that the political branches must use an "accommodation process in an effort to resolve the disagreement" between themselves.  *Id.* at 48.  But recognizing that the House "has taken the opposite view," the President responded: "the House cannot simultaneously (i) insist that the courts may decide whether any particular refusal to comply with a congressional committee's demand for information was legally proper and (ii) claim that the House can treat resistance to any demand for information from Congress as a 'high crime and misdemeanor' justifying impeachment without

---

[6]  https://www.whitehouse.gov/wp-content/uploads/2020/01/Trial-Memorandum-of-President-Donald-J.-Trump.pdf.

securing any judicial determination that the Executive Branch's action was improper." *Id.* at 49 n.336 (emphasis omitted).

Nor is this clear only from the trial memorandum—the President's lawyers repeatedly made the same arguments on the floor of the Senate. As one of his counsel explained: It "is the view of the Trump administration" that cases like this "are not justiciable in article III courts," but "the House cannot claim that they have a mechanism for going to court . . . [and] simultaneously say[] that, well, they don't have to bother with that mechanism." 166 Cong. Rec. S593 (daily ed. Jan. 27, 2020). Or a few days later: "The position of the Trump administration, like the Obama administration, is that when Congress sues in an article III court to try to enforce a subpoena against an executive branch official, that is not a justiciable controversy, and there is not jurisdiction over it. The House managers in the House, though, take the position that they have that avenue open to them." 166 Cong. Rec. S731 (daily ed. Jan. 30, 2020); *see also, e.g.*, 166 Cong. Rec. S652 (daily ed. Jan. 29, 2020) (nonjusticiability "is our position, and we would argue that in court" but that the "House managers can't have it both ways").[7] That is plainly not a "disavowal."

In any case, statements made by counsel for the President in the course of the now concluded Senate impeachment proceeding have nothing to do with whether this Court should exercise its discretion to lift the stay order that it entered a mere two weeks before the Committee precipitously filed this motion.

## CONCLUSION

The Court should deny the Committee's motion to lift the stay.

Dated: February 11, 2020                    Respectfully submitted,

---

[7] Indeed, as one of the President's attorneys explained during the portion of the January 21 presentation cited by the Committee, Pl.'s Mot. at 2, the House has been telling the courts that judicial review is necessary to enforce its subpoenas while simultaneously telling the Senate that judicially recognized privileges "have no place in [its] proceedings" and "'*[w]e cannot be at the mercy of the courts*.'" 166 Cong. Rec. S384 (daily ed. Jan. 21, 2020) (emphasis added).

JOSEPH H. HUNT
Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

JAMES J. GILLIGAN
Special Litigation Counsel

/s/ Serena M. Orloff
STEVEN A. MYERS (NY Bar No. 4823043)
SERENA M. ORLOFF (CA Bar No. 260888)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O.  Box 883
Washington, D.C.  20044
Tel: (202) 305-0167
Fax: (202) 305-8470
Email: serena.m.orloff@usdoj.gov

*Attorneys for Defendants*


  /s/ William S. Consovoy

William S. Consovoy (D.C. Bar #493423)
Cameron T. Norris
Steven C. Begakis
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square, 8th Floor
South PMB #706
Boston, Massachusetts 02109
(617) 227-0548

*Attorneys for Defendant-Intervenors*

20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, | ) ) ) ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) ) No. 1:19-cv-1974 (TNM) |
| UNITED STATES DEPARTMENT OF THE TREASURY, *et al.* | ) ) ) |
| *Defendants*, | ) ) |
| DONALD J. TRUMP, *et al.*, | ) ) ) |
| *Defendant-Intervenors.* | ) ) |

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

CHARLES M. KUPPERMAN,                    )
                                         )
          Plaintiff,                     )
                                         )
     vs.                                 )     CV NO. 19-3224
                                         )     Washington, D.C.
HOUSE OF REPRESENTATIVES                 )     October 31, 2019
OF THE U.S.A., ET AL.,                   )     4:00 p.m.
                                         )
          Defendants.                    )
_____)


TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES SENIOR DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:              Michael W. Kirk
                                Charles J. Cooper
                                COOPER & KIRK, PLLC
                                1523 New Hampshire Avenue, NW
                                Washington, D.C. 20036
                                (202) 220-9600
                                mkirk@cooperkirk.com
                                ccooper@cooperkirk.com

1    here that this particular situation runs directly afoul to

2    both binding Supreme Court precedent and this Court's own

3    decision several years ago in the case of *Porteous versus*

4    *Baron*, where you held and the Supreme Court supports, that

5    there is no jurisdiction with respect to House defendants

6    pursuant to the Constitution Speech or Debate Clause.

7           House defendants would also like to make it very

8    clear to this Court right now at the outset that there are

9    other threshold deficiencies that we see with the position

10   that the plaintiffs are attempting to put both parties in.

11          We believe very strongly that this complaint

12   serves no other purpose than to attempt to delay the House's

13   constitutionally prescribed impeachment inquiry.  Allowing

14   it to continue would constitute, in the House's view, a

15   fundamental miscarriage of justice and a breach of

16   constitutional norms.

17          The House's subpoena --

18          THE COURT:  So that's why you're going to file a

19   motion to dismiss?

20          MR. TATELMAN:  Yes, Your Honor.

21          The House believes that its subpoena is completely

22   valid.  It is 100 percent enforceable.  Dr. Kupperman --

23          THE COURT:  Let me just stop you there for a

24   second, sir.

25          In light of today's resolution being passed, are

1   you going to reissue the subpoenas consistent with the

2   resolution now?  Or are you going to keep the subpoenas that

3   were issued previously extant and, thereby, leave open the

4   question of whether or not they were appropriately issued in

5   the first place?  What's your plan or do you have a plan?

6           MR. TATELMAN:  Well, Your Honor, at this point,

7   I don't have an answer to that question.  I would need to

8   consult with the committee.

9           I would say, though --

10          THE COURT:  That's a pretty substantial question.

11          MR. TATELMAN:  With respect to Your Honor, yes,

12  it's an important question for the committee to consider.

13  And I believe they will.

14          We don't believe that there is any deficiency with

15  the existing subpoenas.

16          THE COURT:  Okay.

17          MR. TATELMAN:  We don't believe -- we believe that

18  they are valid.  We believe that they are enforceable.

19  We believe Dr. Kupperman has to comply with it and that

20  attempting to bring this claim here is inappropriate.

21          Let me just say very briefly, Your Honor, that the

22  interpleader stance that my friend, the plaintiffs,

23  Mr. Cooper, was attempting to put forward here, is not the

24  traditional way that civil litigation ought to operate.

25          Their position that they would raise these

1    jurisdictional questions and then step aside from the merits

2    seems antithetical to the notion of a traditional case or

3    controversy that would allow this Court to decide the

4    question.

5              There are two avenues I think Your Honor's well

6    aware of to which Mr. Kupperman can put his dispute properly

7    before this Court.

8              He can fail to appear, and the committee can

9    decide of its own volition whether or not it wants to

10   enforce the subpoena, which is, ironically, the argument

11   going on just down the hall with respect to former

12   White House Counsel Don McGhan.

13             Or if Mr. Kupperman wishes to comply with the

14   subpoena and the Department and the White House decide that

15   is an unacceptable position for them, they can come to court

16   and seek an injunction from Your Honor preventing him from

17   testifying.

18             And the House and the committees, if they choose

19   to, of their own volition and free will, can choose to avail

20   themselves of jurisdiction, seek to intervene to defend

21   their position.

22             Neither of those are here, Your Honor.

23             THE COURT:  But wouldn't either one of those

24   routes effectively extend this process even further?

25             This is a potentially, potentially more-efficient

1    and quicker way to resolve this case.

2         If this Court sets a briefing schedule or oral

3    argument will be held the first or second week in December

4    and the Court issues an opinion by the end of December or

5    early January, that's going to be a lot faster resolution of

6    this issue than going through the process you just

7    elaborated because of all the votes that would have to be

8    taken and the subsequent litigation that would occur.

9         That's just prolonging things, isn't it?

10        MR. TATELMAN:  Not necessarily, Your Honor.

11        The committee, if it wanted to, could make these

12   decisions relatively quickly.

13        I will submit to Your Honor that that --

14        THE COURT:  It's not just one committee.  It's

15   three.

16        MR. TATELMAN:  With due respect, Your Honor, it

17   was -- the subpoena was actually only issued by a single

18   committee.  There are three committees involved in the

19   investigative process.

20        THE COURT:  Right.

21        MR. TATELMAN:  But the subpoena was issued only by

22   the Permanent Select Committee on Intelligence.  They're the

23   only committee that would need to act to pursue any of those

24   avenues.

25        THE COURT:  But there's a possibility that one or

1   both of the other two committees could just make its own

2   decision.

3          MR. TATELMAN:  That is always possible,

4   Your Honor, yes.

5          But I will say in terms of looking forward to a

6   schedule and your concerns about moving this as quickly as

7   possible, I've been instructed to represent to the Court,

8   Your Honor, this afternoon that the House is prepared to

9   make a motion to dismiss.  We will be prepared to file that

10  as early as next Tuesday.

11         We are prepared to move with all due speed.  We

12  think this case is not justiciable.  We think Your Honor

13  will come to that conclusion very, very quickly.

14         We don't think it will even take you until the

15  middle of December to reach that conclusion, and we would

16  like the opportunity to brief it very, very quickly with

17  respect to the House defendants.  And we're prepared to do

18  so.

19         THE COURT:  All right.  Thank you very much.

20         Ms. Shapiro.

21         MS. SHAPIRO:  Yes, Your Honor.

22         We don't think there's a real emergency or need to

23  be that quick with the briefing from the Executive Branch.

24  I think it makes sense if there's going to be a

25  jurisdictional speech-and-debate argument made and that gets

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, | ) ) ) ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) ) |
| UNITED STATES DEPARTMENT OF THE TREASURY, *et al.* | ) ) ) ) |
| *Defendants*, | ) ) |
| DONALD J.  TRUMP, *et al.*, | ) ) ) |
| *Defendant-Intervenors.* | ) ) |

No. 1:19-cv-1974 (TNM)

# EXHIBIT B

| | |
|---|---|
| **From:** | Myers, Steven A. (CIV) |
| **To:** | Letter, Douglas; Burnham, James M. (CIV); Handley, Cristen (CIV); Gilligan, Jim (CIV); Orloff, Serena M (CIV) |
| **Cc:** | Morse, Jodie; Barbero, Megan; Grogg, Adam; Tatelman, Todd; Havemann, Will |
| **Subject:** | RE: Possible accommodations in tax returns litigation |
| **Date:** | Wednesday, January 22, 2020 2:35:38 PM |

Doug,

Thank you for your email of January 17.

As set out in Secretary's Mnuchin's letters of April 23 and May 6, 2019, as well as the Office of Legal Counsel's opinion, Treasury is prohibited by Section 6103 from providing the specific tax records sought by the Committee in this lawsuit.  Treasury, however, has repeatedly offered to work with the Committee to accommodate its purported legislative interest in the mandatory audit process in a manner consistent with the Department's statutory and constitutional responsibilities.  Treasury has given the Committee an extensive body of written materials concerning the mandatory audit process, including those most pertinent to the Committee's asserted interest in it.  Significant documentation about the presidential audit program is also included in the declaration of Sunita Lough attached to Defendants' motion to dismiss.   And Treasury provided a lengthy briefing for the Committee, which was attended by Committee staff.  Treasury remains willing to work with the Committee to explore other steps that would accommodate the Committee's stated interest.

Because Treasury's response is subject to the strict confidentiality provisions of Section 6103 and must take account of the constitutional limits on the Committee's legislative authority, in order to assist us in proceeding with the accommodation process, we would ask that the Committee identify any additional specific records it wishes to request that would not contain or reveal Section 6103 information.  Please let us know and we'll pass the inquiries on to our clients for consideration right away. In contrast, if the only records in which the Committee has any remaining interest are the records pertaining to the President that are sought in this lawsuit, it would help clarify the parties' positions for the Court if you could confirm as much.

Steve

**Steven A. Myers**
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L St. NW, Washington DC 20005
Tel: (202) 305-8648  Fax: (202) 616-8470

**From:** Letter, Douglas <Douglas.Letter@mail.house.gov>
**Sent:** Friday, January 17, 2020 4:31 PM
**To:** Burnham, James M. (CIV) <jburnham@CIV.USDOJ.GOV>; Handley, Cristen (CIV) <chandley@CIV.USDOJ.GOV>; Gilligan, Jim (CIV) <JGilliga@CIV.USDOJ.GOV>; Myers, Steven A. (CIV) <stmyers@CIV.USDOJ.GOV>; Orloff, Serena M (CIV) <sorloff@CIV.USDOJ.GOV>
**Cc:** Morse, Jodie <Jodie.Morse@mail.house.gov>; Barbero, Megan <Megan.Barbero@mail.house.gov>; Grogg, Adam <Adam.Grogg@mail.house.gov>; Tatelman, Todd <Todd.Tatelman@mail.house.gov>; Havemann, Will <Will.Havemann@mail.house.gov>
**Subject:** Possible accommodations in tax returns litigation

James, et al:

We are following up on Judge McFadden's statements at the end of Tuesday's hearing regarding the possibility of the parties reaching an accommodation in this case, and his strong urging that we should work with you to try to reach an accommodation.

The Committee has understood, based on statements of the Treasury Secretary, President, his Chief of Staff, and the Office of Legal Counsel, that Defendants believe they cannot, as a matter of law, provide the Committee with the returns and audit files of President Trump and several Trump entities that the Committee needs to fulfill its oversight and legislative purposes.  If our understanding is incorrect (i.e., it is actually NOT Defendants' view that providing the requested records would violate Section 6103 and the Constitution, and possibly give rise to a criminal violation), please let us know.

As a starting point for further negotiations, we would need to know the scope of records Treasury would be amenable to providing the Committee.  If Treasury intends to offer the Committee a subset of the returns and audit files requested, please specify the tax years.  If none of the returns and audit files that the Committee has sought can, in your view, legally be turned over, then it would seem that the parties remain at an impasse.  We would very much like to convey that information to Judge McFadden as soon as possible.

Given that this subject is obviously on Judge McFadden's mind, we look forward to hearing from you soon.

*Douglas N. Letter*
*General Counsel*
*Office of General Counsel*
*U.S. House of Representatives*
*219 Cannon House Office Building*
*Washington, DC  20515*
*Douglas.Letter@mail.house.gov*
*(202) 225-9700*

| | |
|---|---|
| **From:** | Letter, Douglas |
| **To:** | Handley, Cristen (CIV); Orloff, Serena M (CIV); Myers, Steven A. (CIV); Gilligan, Jim (CIV); Burnham, James M. (CIV); Shapiro, Elizabeth (CIV) |
| **Cc:** | Barbero, Megan; Morse, Jodie; Havemann, Will; Grogg, Adam; Tatelman, Todd |
| **Subject:** | Tax returns case |
| **Date:** | Saturday, January 25, 2020 4:40:23 PM |

Steve:

Thank you for your email, which restates your clients' belief that they are prohibited by law from providing any of the information requested by the Committee pursuant to Section 6103(f). Given your clients' absolutist position regarding their asserted lack of authority to disclose the material sought by the Committee, no accommodation is possible here and the parties therefore remain at an impasse.  As the Committee has explained from the date of its initial Section 6103 request, it has a specific need for the President's returns and related administrative files pursuant to its legitimate legislative and oversight interests.

The Committee has made clear that it is seeking the President's returns and related administrative files not simply to assess the mandatory audit program in general, but to understand and evaluate the thoroughness of the audit of the President's returns, whether and how the publicly available materials on the mandatory audit program (which Treasury staff admitted at the briefing were outdated) diverge from current practices, whether the auditing of this President's returns has been subject to improper political influence, and whether codification of the audit program or other revisions to the tax code are needed.  *See, e.g.*, Exs. A, E, K, P, QQ; Compl. ¶¶ 58-61, 79.

Neither the briefing that you referenced nor the publicly-available IRM provisions that your clients provided at the briefing are a substitute for the actual returns and related administrative files.  As Chairman Neal wrote in his June 28, 2019 letter, generalized information is "not a replacement for the actual return and return information that the Committee requested under section 6103(f) and now has subpoenaed" because "[w]ithout studying the returns and the documentation of the agent's decisions that were requested, the Committee cannot evaluate the accuracy of the President's claims about the audit system, assess the fairness and effectiveness of the audit program and the scope of the audits being performed on the President's returns, or understand how particular provisions of the Code are being enforced as part of the IRS's review." Ex. P.

Furthermore, the briefing "only reinforced the Committee's need to review the actual return information as part of our oversight duties."  *Id.*  That is because the information communicated at the briefing "rais[ed] serious concerns about the absence of safeguards protecting both the individual auditor as well as the entire audit process from improper influence" and "also raised concerns uniquely and directly relevant to the thoroughness of the Presidential audit process as applied to this President."  *Id.*

Also, the briefing highlighted the fact that, without 6103 authorization, the Committee cannot obtain any useful information about the actual operations of the mandatory audit program— past or present.  Because Treasury officials at the briefing refused to recognize the Chairman's Section 6103 authority, they "declined to answer *any* questions asked by Committee staff related to the actual audits of multiple prior Presidents across both political parties, including basic questions about whether Presidential returns have ever been filed electronically, how long Presidential audits generally take, whether there ever have been any assessments made to Presidential returns, or whether any President-taxpayers have ever gone to IRS Appeals from a mandatory audit."  *Id.* The notion that the Committee could satisfy its legislative and oversight interests with records that, in

your words, "would not contain or reveal Section 6103 information" is wrong.

Nothing has changed from the Committee's standpoint.  The Committee's concerns over the administration of the audit program have only been exacerbated by the long delay and refusal to turn over the requested materials despite Section 6103's clear and unambiguous mandate and the legally binding subpoenas.  In addition, your email confirms the Administration's position that it will make **none** of the requested Section 6103 materials available to the Committee.  This defiance of the statutory mandate and further departure from nearly a century of practice raises even deeper concerns about the Administration's approach to the Committee's investigation.

Given that, on the one hand, the Committee needs, and is by statute entitled to, President Trump's tax returns and related administrative files (which are obviously covered by Section 6103), and that, on the other hand, DOJ asserts that it is barred by law from providing any information to the Committee covered by Section 6103, it is clear that no accommodation is possible.

*Douglas N. Letter*
*General Counsel*
*Office of General Counsel*
*U.S. House of Representatives*
*219 Cannon House Office Building*
*Washington, DC  20515*
*Douglas.Letter@mail.house.gov*
*(202) 225-9700*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, | ) ) ) ) |
|  | ) |
| *Plaintiff,* | ) ) |
| v. | ) ) |
|  | )   No. 1:19-cv-1974 (TNM) |
| UNITED STATES DEPARTMENT OF THE TREASURY, *et al.* | ) ) |
|  | ) |
| *Defendants,* | ) ) |
| DONALD J. TRUMP, *et al.,* | ) ) |
|  | ) |
| *Defendant-Intervenors.* | ) ) |

_____

**[PROPOSED] ORDER**

Upon consideration of Plaintiff's Motion to Lift Stay, Defendants' and Defendant-Intervenors' opposition to that motion, and the entire record herein, it is hereby:

ORDERED that the motion is DENIED.  This case shall continue to be stayed pending a decision in *Comm. on the Judiciary, U.S. House of Reps. v. McGahn*, No. 19-5331 (D.C. Cir.).

**SO ORDERED.**

Date: _____                                _____
                                                                    HON. TREVOR N. MCFADDEN
                                                                    United States District Judge