**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**COMMITTEE ON WAYS AND MEANS,**
**U.S. HOUSE OF REPRESENTATIVES**,

        Plaintiff,

        v.

**U.S. DEPARTMENT OF THE TREASURY,**
***et al.***,

        Defendants,

        and

**DONALD J. TRUMP, *et al.*,**

        Defendant-Intervenors.

---

Case No. 1:19-cv-01974 (TNM)

## <u>ORDER</u>

The Court previously stayed this action pending a decision in *Committee on the Judiciary, U.S. House of Representatives v. McGahn*, No. 19-5331 (D.C. Cir.).  As all parties admit, *McGahn* presents several threshold questions that bear heavily on the Executive's motion to dismiss here.  *See, e.g.*, Pl.'s Notice of Suppl. Authority at 1–2,[1] ECF No. 75.  A panel of the D.C. Circuit recently issued its opinion and judgment in *McGahn*.  *See Comm. on the Judiciary, U.S. House of Representatives v. McGahn*, --- F.3d ---, No. 19-5331, 2020 WL 1125837 (D.C. Cir. Feb. 28, 2020).  The panel held that the House's Judiciary Committee lacks Article III standing to enforce a subpoena against the former Counsel to the President.  Given this ruling, the Court lifted the stay and ordered the parties to advise how they wish to proceed.  The parties

---

[1]  All page citations are to the page numbers that the CM/ECF system generates.

did so, and the next day, the D.C. Circuit granted rehearing *en banc* in *McGahn*.  Order, *McGahn*, No. 19-5331 (D.C. Cir. Mar. 13, 2020).  Based on the parties' responses and the grant of rehearing in *McGahn*, the Court will stay this action pending further order of this Court.

Here, the Ways and Means Committee seeks "tax return information concerning President Donald J. Trump."  Compl. ¶ 1, ECF No. 1.  Before filing suit, the Committee requested this information from the Internal Revenue Service under 26 U.S.C. § 6103(f).  *Id.* ¶¶ 57, 65.  When the Treasury Secretary rebuffed that effort, the Committee issued subpoenas to the Treasury Department and the IRS.  *Id.* ¶¶ 71–72.  They did not comply.  *Id.* ¶ 75.

The Committee's Complaint raises eight causes of action, which divide into two categories.  Count I is a subpoena-enforcement claim grounded in Article I of the Constitution. *Id.* ¶ 102.  The other seven counts stem from the Committee's purported right to the tax return information under 26 U.S.C. § 6103(f).  *Id.* ¶ 107 (Count II), ¶ 114 (Count III), ¶ 119 (Count IV), ¶ 123 (Count V), ¶ 127 (Count VI), ¶ 134 (Count VII), ¶ 139 (Count VIII).  In short, a component of the Legislature has brought two sets of claims against the Executive: a subpoena-enforcement claim and claims under 26 U.S.C. § 6103(f).

From the outset, the Committee pressed the Court to reach the merits of this action quickly, despite the significant jurisdictional issues that the lawsuit raises.  *See, e.g.*, Pl.'s Mot. to Expedite at 2, ECF No. 30; Tr. of Telephone Conference (Jan. 17, 2020) at 4–5, ECF No. 78; Mot. to Lift Stay at 2, ECF No. 79.  Then came the panel decision in *McGahn*, which, as it turns out, calls into question whether the Court has jurisdiction over any of the Committee's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98 (1998) (recognizing "two centuries of jurisprudence affirming the necessity of determining jurisdiction before proceeding to the merits").

In *McGahn*, the Judiciary Committee brought a subpoena-enforcement claim against the Executive. It issued a subpoena to a former White House Counsel and then went to court to enforce the subpoena. The D.C. Circuit treated this as an attempt by the Legislature to enforce a subpoena against the Executive. *See McGahn*, 2020 WL 1125837, at *8.[2] But, the Circuit held, "Article III of the Constitution forbids federal courts from resolving this kind of interbranch information dispute." *Id.* at *1.

According to the panel, judicial resolution of an interbranch information dispute is not "consistent with a system of separated powers," and this sort of dispute is not "traditionally thought to be capable of resolution through the judicial process." *Id.* at *3 (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)). Separation of powers means that a court "lack[s] authority to resolve disputes between the Legislative and Executive Branches until their actions harm an entity beyond the Federal Government." *Id.* (cleaned up). For "[w]ithout such a harm, any dispute remains an intramural disagreement about the 'operations of government' that [federal courts] lack power to resolve." *Id.* And when it comes to history, "[n]either interbranch disputes (in general) nor interbranch information disputes (in particular) have traditionally been resolved by federal courts." *Id.* at *6. In sum, "separation-of-powers principles and historical practice" compelled the panel "to dismiss for lack of jurisdiction the Committee's suit to enforce a congressional subpoena against the Executive Branch." *Id.* at *8.

---

[2] The district court also treated the lawsuit as an interbranch dispute. *See Comm. on the Judiciary, U.S. House of Representatives v. McGahn*, 415 F. Supp. 3d 148, 154 (D.D.C. 2019). So too did the parties in *McGahn*. *See, e.g.*, Br. of the Comm. on the Judiciary of the U.S. House of Representatives at 23, *McGahn*, No. 19-5331 (D.C. Cir. Dec. 16, 2019). Ditto with the parties here. *See, e.g.*, Pl.'s Notice of Suppl. Authority at 2, ECF No. 75 (describing *McGahn* as "a subpoena-enforcement action against [a] federal official[]").

It appears that under this reasoning, the Court lacks jurisdiction over the Committee's subpoena-enforcement claim here (Count I).  The Court so observed at the recent hearing, and the Committee did not seriously dispute this.  *See* Tr. of Mot. Hr'g (Mar. 5, 2020) at 5.  The Court acknowledged, however, that *McGahn* was a moving target, since the Judiciary Committee was seeking rehearing *en banc*.  *Id.* at 8, 20.  Meanwhile, the Ways and Means Committee highlighted its claims under 26 U.S.C. § 6103(f) (Counts II through VIII).  *Id.* at 5.  In its view, even if the *McGahn* panel opinion remains binding precedent, the Court is "still situated" to conclude that it has jurisdiction over the § 6103(f) claims.  *Id.* at 6–10.  So the Committee proposed moving forward with these claims and leaving aside its subpoena-enforcement claim for now.  *Id.* at 5–6.

The Court rejected this proposal, explaining that it will not handle this litigation piecemeal.  *Id.* at 5, 19.  As the Court noted, moving forward on the § 6103(f) claims and hoping the subpoena-enforcement claim eventually "catches up" would not be an efficient use of resources for the Court, the Legislature, the Executive, or taxpayers.  *Id.* at 10.  The import of these comments was clear: if the Committee wished to keep its subpoena-enforcement claim, the Court would stay the action.

The Court suggested another way.  If it wished to move forward immediately, the Committee could amend its Complaint to drop the subpoena-enforcement claim.  *Id.*  It could then argue that the *McGahn* litigation has "nothing to do" with whether the Court has jurisdiction over the § 6103(f) claims.  *Id.*  If the Court agreed—and if the Court also agreed that it does have jurisdiction over the § 6103(f) claims—then the litigation would proceed from there.  To be sure, the Court expressed skepticism that the *McGahn* litigation does not bear on jurisdiction for the § 6103(f) claims.  *Id.* at 6, 8, 20.  After all, the Committee's own statements suggest otherwise.

*See id.* at 4–5, 9–10; Pl.'s Mot. to Vacate Hr'g at 2, ECF No. 86.  Still, though, the Court was willing to hear more from the parties before deciding how to proceed.  Tr. of Mot. Hr'g at 20.  So it gave the parties one week to provide an update on their positions.

The Committee rejected the expeditious approach.  It acknowledged that if the D.C. Circuit were to grant rehearing *en banc* in *McGahn*, an eventual ruling would "inform" whether the Court has jurisdiction over the subpoena-enforcement claim.  Joint Status Report at 2, ECF No. 88.  But "[r]egardless of whether the D.C. Circuit grants or denies rehearing en banc," the Committee intended "to press forward with its subpoena-enforcement claim and its Section 6103 claims."  *Id.*  The Executive for its part, urged the Court to "dismiss this action in its entirety without further briefing."  *Id.*  In the alternative, it requested a stay "pending the completion of further proceedings in *McGahn* . . . [including] any Supreme Court proceedings."  *Id.*

As explained, the Court's inclination at the recent hearing was that it would stay this action if the Committee intended to keep its subpoena-enforcement claim.  The Joint Status Report makes clear that the Committee intends to keep this claim.

More, the D.C. Circuit granted rehearing *en banc* in *McGahn*, so all the reasons for a stay still hold.  The subpoena-enforcement issue is unsettled for now.  And piecemeal litigation would be an inefficient use of resources.  These reasons alone favor a stay.  *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").  Thus, the Court will await further proceedings in *McGahn* before it acts on either the subpoena-enforcement claim or the § 6103(f) claims.

Another factor supports a stay.  As the Executive has argued and as the Court has observed, the ultimate outcome in *McGahn* will likely bear on whether the Court has jurisdiction over the Committee's § 6103(f) claims.  Tr. of Mot. Hr'g at 6, 8, 17, 20.  Indeed, the Committee

itself acknowledges as much.  When it proposed the Court move forward, the Committee stated it would like the opportunity to brief "the effect of *McGahn*" on the § 6103(f) claims.  *Id.* at 4–5. It appears the Committee would rely on *McGahn*'s *dictum* that "[a] statute could mitigate the separation-of-powers considerations that counsel against adjudicating interbranch disputes." Pl.'s Mot. to Vacate Hr'g at 2; *see McGahn*, 2020 WL 1125837, at *12.  The *en banc* court could reiterate this *dictum*, but it could also disagree with the *McGahn* panel entirely, in which case the reasoning of the panel will no longer serve as a baseline for analyzing jurisdiction over the § 6103(f) claims.  So even for these claims, it would be an inefficient use of resources for the parties to brief—and for the Court to decide—the "effect" of a panel opinion that will not be the final word.

Relatedly, a question arose at the recent hearing on whether the panel opinion remains binding on this Court during *en banc* proceedings.  Both parties suggested the answer was likely yes.  Tr. of Mot. Hr'g at 7, 11.  That accords with the plain language of the D.C. Circuit's rule. *See* D.C. Cir. R. 35(d) ("If rehearing en banc is granted, the panel's judgment, *but ordinarily not its opinion*, will be vacated[.]" (emphasis added)).  The order granting rehearing *en banc* in *McGahn* vacated the panel's "judgment," but did not say anything about the "opinion."  Order, *McGahn*, No. 19-5331 (D.C. Cir. Mar. 13, 2020).  This suggests that the panel opinion has not in fact been vacated, which in turns suggests that it remains binding precedent.  The Solicitor General has taken this view of Rule 35(d).  *See* Reply Br. for the Pet'r at 2–3 & n.2, *SEC v. Bandimere*, No. 17-475 (U.S. Oct. 25, 2017).

Either way, though, a stay here is appropriate.  If the *McGahn* panel opinion is not currently binding, that just reinforces why briefing on the "effect" of this opinion would be of

little use.  If the opinion is currently binding, as a practical matter it will not be the D.C. Circuit's

final word.  And the *en banc* court may not be the final word either.

Accordingly, it is hereby

**ORDERED** that this matter is STAYED pending further order of the Court.

**SO ORDERED**.

Dated: March 20, 2020                                         _____

                                                             TREVOR N. McFADDEN, U.S.D.J.