UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


COMMITTEE ON WAYS AND MEANS, :
UNITED STATES HOUSE OF        :
REPRESENTATIVES,              :        Docket No. CV 19-1974
                              :
          Plaintiff,          :
                              :
     vs.                      :        Washington, D.C.
                              :        Thursday, March 5, 2020
UNITED STATES DEPARTMENT      :            11:00 a.m.
OF THE TREASURY ET AL.,       :
                              :
          Defendants.         :
----------------------------x



TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE TREVOR N. MCFADDEN
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiff:    JOSEPHINE T. MORSE, Esquire
                      DOUGLAS N. LETTER, Esquire
                      U.S. House of Representatives
                      Office of General Counsel
                      219 Cannon Building
                      Washington, D.C. 20515


For the Defendants:   DAVID M. MORRELL, Esquire
                      U.S. Department of Justice
                      950 Pennsylvania Ave., NW
                      Washington, DC  20530

                      SERENA M. ORLOFF, Esquire
                      STEVEN A. MYERS, Esquire
                      U.S. Department of Justice
                      1100 L Street, NW
                      Washington, DC  20005

1   Appearances continued:

2   For Defendant          CAMERON T. NORRIS, Esquire
    Intervenors:           1600 Wilson Boulevard
3                          Suite 700
                           Arlington, VA  22209
4

5   Court Reporter:        CRYSTAL M. PILGRIM, RPR
                           Official Court Reporter
6                          United States District Court
                           District of Columbia
7                          333 Constitution Avenue, NW
                           Washington, DC  20001
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                        P-R-O-C-E-E-D-I-N-G-S
2              THE DEPUTY CLERK:  This is civil case 19-1974
3   Committee on Ways and Means United States House of
4   Representatives versus United States Department of the Treasury
5   et al.  Counsel please come forward to identify yourselves for
6   the record.
7              MS. MORSE:  Josephine Morse for the Committee on Ways
8   and Means and with me at counsel table is General Counsel
9   Douglas Letter.
10             THE COURT:  Good morning folks.
11             MR. MORRELL:  Good morning, Your Honor, my name is
12  David Morrell on behalf of the United States.  With me at
13  counsel table is Betsy Shapiro, Steve Myers, Serena Orloff,
14  Cristen Handley, James Gilligan and counsel for Defendant
15  Intervenors is Cameron Norris.
16             MR. NORRIS:  Good morning, Your Honor.
17             THE COURT:  Good morning folks.
18        We're here on the Committee's motion to lift the stay.
19  The Committee has been urging me to move expeditiously all
20  along.  And now we have a ruling from the D.C. Circuit that
21  courts lack authority to resolve disputes between the
22  legislative and Executive Branches until their actions harm an
23  entity beyond the Federal Government.  Without such a harm, any
24  dispute remains an intramural disagreement about the operations
25  of government that we lack power to resolve.
```

1   In this case, the Committee's dispute with the Executive

2   Branch is unfit for judicial resolution because it has no

3   bearing on the rights of individuals or some entity beyond the

4   Federal Government.

5   I guess my question for you Ms. Morse is are you still

6   requesting that I lift the stay and proceed to decide the

7   motion to dismiss?

8   MS. MORSE:  Thank you very much, Your Honor, and

9   thank you for hearing from us on this.

10   Well, this is sort of how we see events at the last week

11   transpiring.  Your Honor had issued the stay and we understood

12   the stay to be conditioned on McGahn coming down.  McGahn has

13   now come down.  We think it's seriously flawed.  We're filing a

14   petition for rehearing en banc in part because we think it

15   conflicts with Circuit precedent AT&T.

16   We will be filing that petition. We're intending to file

17   it as soon as tomorrow.

18   Given what we think that the stay is no longer in place

19   based on your prior ruling, we would like to take the

20   opportunity to brief in writing the effect of McGahn on this

21   case.

22   We had discussed that a little bit at the telephonic

23   conference and we understood Your Honor to at least be open to

24   that possibility given the nature of the decision.  And we

25   certainly think that that is warranted here and so that's what

1   we're requesting of the Court today.

2          THE COURT:  I'm trying to figure out how you would

3   see this going though.

4     I think what you're saying is that if this panel decision

5   remains, I think you would admit that your subpoena argument is

6   gone here, correct?

7          MS. MORSE:  We'd still like an opportunity to brief

8   that, Your Honor.  And certainly I would focus the Court on 7

9   of the 8 claims in this case which arise out of Section 6103

10  which has always proceeded on a different standing theory,

11  informational standing.

12         THE COURT:  Right, so I'll tell you, I'm not inclined

13  to do this piecemeal. If your inclination is to dismiss the

14  subpoena count and go forward on 6103 on the basis of the

15  current case law, I think I'd be open to doing that.

16    I guess I'm not sure that I understand how you would see

17  this going though.  You all brief it up, you're suggesting we

18  do this in the next couple of weeks.  What am I going to do?

19         MS. MORSE:  To respond to a couple of things.  First,

20  I'm certainly not suggesting that we would withdraw our

21  subpoena enforcement claim.

22    I do think that we are hopeful to have some additional

23  information from the D.C. Circuit very soon.  They put us on an

24  incredibly expedited schedule for the rehearing en banc

25  petition, cutting into the fraction of the time which it's

1    normally due.  We're trying to beat that by a few days by

2    getting our petition on file.

3        In the meantime we do -- I understand the urge not to do

4    this piecemeal.  But in the meantime we still think that we at

5    a minimum the case could continue as to the Section 6103

6    claims, which we don't believe are addressed by McGahn.  We

7    certainly don't agree with what the government put in its paper

8    yesterday that we think McGahn requires dismissal of those

9    claims at this juncture.

10       THE COURT:  So let's say I agree with you on the 6103

11   and I rule next month, but the Circuit is still doing what its

12   doing maybe.  And assuming they agree with you that it's worth

13   rehearing en banc, I mean we're back to the same situation

14   again, right, where we don't know what the state of the case

15   law is.  Maybe it would be helpful for you on both sides.

16   Maybe it would be -- it would certainly clarify things.  I just

17   am trying to see how you think this would play out.

18       MS. MORSE:  I mean, I certainly want a chance to

19   confer and confer with our clients about the scenario you just

20   posed of proceeding only on the Section 6103 claims if the

21   Court would be inclined to do that at this juncture and let us

22   proceed to the merits on those claims.  I think we would need

23   to discuss that and could be something that we would be open

24   to.  But with respect to what to do now, all that we can say

25   today is that we do think it would very much benefit from an

1  opportunity to brief the effect of McGahn on this case at an

2  absolute minimum and certainly after our rehearing petition

3  goes in so that all of our institutional arguments are fleshed

4  out which hopefully will be as soon as tomorrow.  And that

5  would at least take a couple of weeks.  We're open to seriatim

6  briefing, what the government suggest we don't oppose that.

7  And I would think we would have some additional information

8  from the D.C. Circuit at that point, hopefully.

9          THE COURT:  Right, so the information we would have

10  from them is either they agree to hear it en banc in which case

11  I think this panel opinion would be automatically vacated and

12  we then are waiting for them in that or they refuse to hear it

13  en banc, then I don't know if you'd have an opportunity to seek

14  cert.

15          MS. MORSE:  Just one clarification.

16          THE COURT:  Sure.

17          MS. MORSE:  Under the D.C. Circuit rule and I am not

18  an appellate expert although I sit at the table with one.

19          THE COURT:  I hear Mr. Letter was in the Supreme

20  Court earlier this week.

21          MS. MORSE:  When rehearing en banc is granted, the

22  panels's judgment, but not ordinarily its opinion will be

23  vacated.  My understanding is rehearing on en banc is not a

24  super regular occurrence here and the panel could do what it

25  wants at a time if it grants rehearing en banc at such time we

1  would probably have more guidance from the order granting

2  rehearing en banc about the status of the underlying opinion.

3  But that's what the Circuit rule says.

4       THE COURT:  Yes, so obviously you all are very busy.

5  I know the Justice Department is very busy.  I'm very busy.

6  I'm wondering about the utility in briefing 6103 right now.  It

7  just feels like a moving target given that you're also seeking

8  rehearing en banc.

9       MS. MORSE:  I think as the Committee has made clear

10  all along, we have a pressing investigation and the clock is

11  running out on this Congress.  We would like to move forward

12  with that aspect of the case because we don't think that it's

13  covered by this decision as we've said in our motion to lift

14  the stay and arguing the motion the other day.

15       THE COURT:  So what do you suggest that do I with the

16  rest of your complaint?

17       MS. MORSE:  I think I would need to, we would

18  certainly need to confer about that if Your Honor was inclined

19  to bifurcate and move forward with this part of the case.

20       THE COURT:  I'm not inclined to bifurcate, but that's

21  -- yes, that's what I'm saying.  If you want, it sounds like

22  you want to bifurcate.

23       MS. MORSE:  No, I'm saying that part of the case can

24  be decided now.  And I also think that we will have some, I

25  hope that we will have some more information from the D.C.

1   Circuit soon.  And at a minimum we would like the opportunity

2   to brief the effect of this decision on this case, including

3   questions such as the effect of the opinion that's been issued;

4   the precedential value of it and our brief could include

5   questions like that, answers to questions like that.

6           THE COURT:  I guess we're talking past each other a

7   little bit Ms. Morse.

8       I don't know what -- I don't understand.  It sounds to me

9   like you do want me to wait to decide on the subpoena part; is

10  that correct?

11          MS. MORSE:  Can we confer please?

12          THE COURT:  Sure.

13          MS. MORSE:  Thank you.

14          (Pause.)

15          MS. MORSE:  Thank you and I'm sorry for talking in

16  circles around you.

17          So I think we would like you to, we withdraw our motion

18  to lift the stay because McGahn has come down.  We would still

19  seek the opportunity, have additional briefing.  And in that

20  briefing we would like, we would be able to have time to confer

21  with our clients and give an answer with respect to what we

22  would be doing at this stage with the subpoena enforcement

23  claim.

24      We do think the Court is still situated to deny the motion

25  to dismiss with respect to the Section 6103 claims because for

1   reasons we explain, you would be extending McGahn to cover

2   those claims and we could explain that more fully in our

3   briefing.

4            THE COURT:  Okay.

5            MS. MORSE:  We would need to confer more to let the

6   Court know about what to do with the subpoena enforcement claim

7   at this juncture.

8            THE COURT:  Okay, I think I'm with you now.

9   Obviously, I want to hear from the Executive Branch.

10       I'll tell you my instinct is that if you come back to me

11   and say maybe you're filing an amended complaint or something

12   in light of McGahn and we just want to go forward on the 6103

13   and you have an argument that what's happening in McGahn has

14   nothing to do with your 6103 claim. I'd be interested in that.

15       What I'm reluctant to do though is to keep moving on 6103,

16   and then hope that the subpoena enforcement part catches up and

17   continue.  You all continue briefing and me continue writing

18   opinions for the next year or so.  That just doesn't feel like

19   a good use of taxpayer money.

20            MS. MORSE:  Understood, Your Honor.

21            THE COURT:  That's my instinct.  Mr. Morrell I'll

22   hear from you.

23            MR. MORRELL:  Thank you, Your Honor, good morning.

24       The government doesn't necessarily oppose waiting to see

25   what happens in the en banc proceedings in the McGahn case at

1   the D.C. Circuit.  We think a short delay to see whether they

2   grant en banc and whether or not they vacate the panel opinion.

3   As opposing counsel noted, the usual course of the D.C. Circuit

4   at least according to Rule 35, Circuit Rule 35 is not to vacate

5   the panel opinion.

6       And so we think as long as that panel opinion is not

7   vacated that it's binding on this Court whether or not the

8   mandate has issued it has binding precedential effect on the

9   lower courts in the Circuit.

10      So we do think that if they either grant en banc, if they

11  don't grant en banc or they grant en banc and don't vacate the

12  opinion.  I think we would like to move forward because we

13  think that McGahn actually does square the control of both

14  their subpoena claims and the 6103 claims and I think that's

15  true for a few very straightforward reasons that I'm happy to

16  explain briefly.

17      Although we don't oppose further supplemental briefing, so

18  long as it's seriatim and it sounds like the House agrees that

19  they would go first and we would have an opportunity to

20  respond.

21      If I may talk, just touch on briefly the sort of merits

22  question why we think the ruling in McGahn controls

23  everything in this case.  So first of all, look at the holding

24  itself in McGahn.  It's quite categorical.  It says that it

25  agreed with the government's arguments by the way; that

1  lawsuits to resolve interbranch informational disputes do not

2  present Article 3 cases of controversies.  The plain terms of

3  that holding applies to this case.

4      Now there's two sources of authority or legal right that

5  the House has identified.  The subpoena claim which I think we

6  absolutely agree with you is obviously controlled by, is

7  abundantly clear that's controlled by the McGahn panel opinion.

8  So then the only other right they have is 6103 and the various

9  causes of action that they cite to enforce that right.  But I

10 think again, there's three reasons that I submit to Your Honor

11 as to why McGahn easily resolves this case.

12     The first is that Section 6103 the only other right that's

13 at issue here, itself evidence is a clear intent to exclude the

14 possibility of judicial review.

15     So in our motion to dismiss briefing, we specifically

16 noted that it's a highly articulated scheme that creates rights

17 and obligations and also corresponding remedies so taxpayers

18 have certain rights to sue other people, other persons other

19 than taxpayers have certain rights to sue.  There's criminal

20 penalties, but no where is there any evidence that Congress

21 intended to make Subsection (f) of 6103 which is the source of

22 their claimed right judicially enforceable.

23     So I think under the Block case; for example, and this is

24 just well established, black letter law that when you have a

25 highly articulated scheme with rights and remedies and certain

1  people are allowed to sue over certain issues that evidence is

2  a clear intent to preclude judicial review under any scheme.

3  So I think that's one point that it's very clear that there's

4  no other possible cause of action that would give them standing

5  in this case.

6       But even if you think 6103 by its own terms left a little

7  wiggle room, I think what the House would be forced to do is

8  try to mix and match a very specific statutory right in 6103

9  with a highly generic cause of action statute like the APA or

10 like the mandamus.

11      I think the McGahn panel opinion makes it very clear that

12 that's not sufficient to confer standing on the House.  I'll

13 read from page 356 of the Court's opinion where it says that

14 the hypothetical statute in question would quote, "Reflect

15 Congress's and perhaps the President's view that judicial

16 resolution of interbranch disputes is consistent with the

17 system of separated powers."

18      And then on page 28, the Court actually gives an example.

19 It's page 28 cross references section page 35.  And it gives an

20 example of the kind of statute that the McGahn panel sort of

21 reserved on whether or not it would confer Article III

22 standing.  And it cites to the 1973 statute that specifically

23 authorized the Senate Select Committee to sue.

24      So regardless of how, where you draw the line as to how

25 clear a statute or how specific a statute needs to be to confer

1    standing.   There's no doubt that this statute that they're

2    identifying the APA are a thousand miles on the wrong side of

3    that line.   So I think it's very clear that they just aren't

4    going to come up with a cause of action that would allow them

5    to kind of shoehorn themselves into this reservation that the

6    McGahn panel made on page 35.

7         And I would --

8         THE COURT:   So Mr. Morrell you're not expecting to

9    fight that reservation there in the majority opinion?   You

10   disagree with Judge Rogers that the constitutional holding

11   there is such that really Congress could never give a

12   constitutional holding.   Congress could never write a statute

13   that would give itself a cause of action.

14        MR. MORRELL:   Your Honor, I think we would fight the

15   reservation that to be clear the panel did not address whether

16   such statute would be constitutional.   But I actually think, so

17   that comes on page 35.   But I think the first 34 pages of that

18   opinion provide the explanation or the basis why such a statute

19   would not be constitutional.   And I would direct Your Honor to

20   three particular points the panel makes as the basis for its

21   constitutional holding.   The first is that Article III courts

22   exist to adjudicate the rights of individuals.

23        Second, arbitrating or adjudicating interbranch disputes

24   precisely like this one undermine the credibility of the

25   judiciary in the public's eyes.

1          And third, there's no history or tradition of the courts

2    adjudicating either interbranch disputes in general or

3    interbranch informational disputes in particular.  If you look

4    at those three points that serve as the bases of the Court's

5    decision, they're all triggered or all of those trick wires are

6    hid by a statute that purports to authorize the House to sue

7    the Executive Branch in the context like this.

8          In other words, all of the reasons that the panel gave for

9    finding no judicable controversy flowed from the identify of

10   the parties.  So each one of those again arises because of who

11   the parties are and a statute isn't going to fix that.  So even

12   if a statute was clear as day authorizing a particular suit.  I

13   think the 34 pages of analysis explain why it's still no good

14   because it hits all of those trick wires because you can't

15   change the identity of the parties which is the source of those

16   problems that the panel identified.

17              THE COURT:  Okay.

18              MR. MORRELL:  For those reasons, we think that both

19   just as a matter of 6103 and the statutes that they identified,

20   they can't even bring themselves within that reservation.  But

21   even if they could, I think the panel itself explains why it

22   actually even though it reserved out of judicial modesty, I

23   think it's quite clear that the logic of that opinion provides

24   an answer.

25          The last point I would also make is our motion for

1  summary, to dismiss briefing articulate reasons kind of why as

2  to the particular language of the APA and why they can't avail

3  themselves of that, that's the person argument the agency

4  action argument.

5      Even if you thought those arguments were no good or the

6  arguments aren't as persuasive.  I think given what McGahn is

7  clearly contemplating about the kind of statute that might tee

8  up this issue, there's no doubt that the APA and the mandamus

9  statute will come no where close.

10     So with all of that said, we're happy to set forth our

11  reasoning as to why McGahn controls in response to a filing by

12  the House.  But we do think that this idea of bifurcating is

13  not necessary just because of the clear upshot of McGahn is

14  that it disposes of all of the claims here.

15         THE COURT:  Right.  Let's say I disagreed with you

16  though and agreed with the House that 6103 could at least go

17  through past summary or past dismissal stage.

18     Does it make sense to continue that and to wait and see

19  what's happening on the subpoena side?

20         MR. MORRELL:  I think that would be, that probably

21  would be fine I think to or sorry, what's the --

22         THE COURT:  I'm asking, you're suggesting that

23  bifurcation won't be necessary because you win under McGahn on

24  both.

25         MR. MORRELL:  Right.

1          THE COURT:  I'm saying I don't even think, I don't

2    think the Committee is seriously disagreeing with you that

3    under the panel opinion their subpoena is dead.

4       But let's say I agree with them that 6103 can survive

5    12(b)(6).  Should we wait to see what happens with the full

6    Court and perhaps the Supreme Court on the McGahn case or do we

7    proceed with 6103 and let the subpoena catch up?

8          MR. MORRELL:  I understand.  I appreciate the

9    clarification.

10      I think it would make most sense to wait obviously how the

11   Court, the rationale of the Court and any ultimate holding

12   would obviously bear on the 6103 point or at least there's a

13   significant possibility that it would bear on that issue.

14      And as I noted before, they may clarify and make the point

15   explicit that I just made or not reserve the issue that McGahn

16   did. So I think there would be, it would make sense that if you

17   disagree with us as to the controlling nature of McGahn on the

18   6103 to wait and at least see what D.C. Circuit does.  And it's

19   certainly the case that the rationale that the Court reaches

20   may bear and likely it will bear on the justiciability of that

21   claim.

22          THE COURT:  Okay.

23      Ms. Norris, do you wish to be heard on this?

24          MR. NORRIS:  Thank you, Your Honor, not much to add.

25   We agree with the government's position on how to move forward.

1   Our first preference would be total dismissal under McGahn.  If

2   that's not in the cards then we think waiting and see what D.C.

3   Circuit en banc does with the decision is perfect.

4          THE COURT:  Okay, Ms. Morse, sorry.  Go ahead

5   Ms. Morse.

6          MS. MORSE:  Just briefly, Your Honor. I do think that

7   the colloquy that you just had does illustrate why permitting

8   us to have a short briefing schedule could be useful here.  In

9   addition, obviously we need to get back to you about the

10  question that you posed about the subpoena enforcement.

11      I wasn't planning to respond in depth to the 6103 points

12  if we're going to be permitted the chance to brief.

13      I would just note that Judge Henderson signed onto the

14  majority to a much narrower holding which doesn't cover all

15  interbranch disputes.  So the actual holding here does pertain

16  to subpoena enforcement suits in our view and that will be one

17  of the things that we can discuss for the Court thus carving

18  out the Section 6103 claims.  And I will leave it at that, if

19  you're willing to grant us an opportunity to brief further.

20         THE COURT:  Yes, I'm mostly trying to figure out

21  timing here.  Given you said you're hoping to seek en banc

22  review tomorrow?

23         MS. MORSE:  We're intending to file our petition

24  tomorrow.

25         THE COURT:  Right.

1        MS. MORSE:  It's due Monday.

2        THE COURT:  I guess we don't know when the Circuit

3   would decide and including this point that you raised whether

4   or not they're vacating the panel opinion.

5      Again, I am interested here in saving us all needless

6   briefing and review on work that gets outdated a few days

7   later.  So I'm just, I'm wondering --

8        MS. MORSE:  May I confer with Mr. Letter please?

9        THE COURT:  Sure, yes.

10        (Pause.)

11        MS. MORSE:  One thing we could do is say a week from

12   today we could get back to you at least about the subpoena

13   enforcement part of your question.  What we're planning to do

14   with that claim.  But we would also still like the opportunity

15   to brief the 6103 claim.  So I don't know if we would do that

16   the same day as filing a brief that was when we had suggested

17   March 13th.

18        THE COURT:  So I'm not going to dismiss your 6103

19   claims without giving you a chance brief it.  That's not

20   happening.

21        MS. MORSE:  Thank you very much.

22        THE COURT:  But I'm also not inclined to, as I said,

23   to do this piecemeal.  So given that, if you want to a week to

24   come back, maybe it makes sense for you all to give a joint

25   status report or something in a week.  You can indicate how

1   your, what your client wants to do regarding the subpoena

2   enforcement part and then you all can recommend ideally,

3   together recommend a briefing schedule here on this.

4        I'll just be honest.  It seems to me we very much have a

5   moving ball over there on McGahn I don't know especially if you

6   want to keep the whole case here how we do much until we know

7   how things have ended up with McGahn.  But I'm happy to hear

8   from you all once you've had an opportunity to discuss with

9   your clients what makes sense.

10        MS. MORSE:  Thank you and thank you for giving us

11   your thoughts because that's helpful for us on our end.

12        THE COURT:  Mr. Morrell one week, does that make

13   sense?

14        MR. MORRELL:  I think we would probably make a

15   request something closer to two weeks just because if their

16   brief is due on Monday we'll get a response.  So I'm not sure

17   we're really going to know anything more in a week.  Maybe a

18   couple of weeks for a status.

19        THE COURT:  The brief to McGahn you mean?

20        MR. MORRELL:  Their brief at the D.C. Circuit is due

21   they said on Monday.  We'll obviously have an opportunity to

22   respond to that petition for rehearing.  So I'm not sure it's

23   highly unlikely the D.C. Circuit would act on the petition for

24   rehearing in a week.  So it might make sense to do something

25   closer to two weeks to propose a schedule.

1          If I could make two points.

2          THE COURT:  Sorry, remind me when did you say your

3     brief is due to the D.C. Circuit?

4          MR. MORRELL:  So their -- I'm reacting to their

5     statement that their due date is Monday.  I'm actually not sure

6     do we know?  Right, so they would, the D.C. Circuit would have

7     to call for a response, then they would set some sort of

8     response deadline.

9          THE COURT:  Okay.

10         MR. MORRELL:  So I just think it's highly unlikely

11    that all of that would happen within the span of a week from

12    today.  So I think we --

13         THE COURT:  Agreed.  But I think a week would give

14    the Committee an opportunity to decide whether they want to

15    proceed in this case with the subpoena part of it.  If they're

16    just going forward with 6103, I can imagine that it might make

17    sense to continue briefing just on 6103 as is.

18         MR. MORRELL:  Your Honor, I think we would agree with

19    what I took to be your statement a minute ago.  Your sense

20    against bifurcation.  I do think these cases are closely, the

21    claims are closely related in the analysis on the

22    constitutional points.  They're going to bear on both of them.

23    So I do think it makes sense to treat them together and not

24    bifurcate.

25         The other thing I would say, the House has asked for a

1  stay.  If the Court is inclined to grant that which it sounds

2  like it is, we would request --

3          THE COURT:  I don't think a stay in this case.

4          MR. MORRELL:  I thought -- yes.

5          THE COURT:  They have been very much pushing the

6  opposite way most of the time.

7          MR. MORRELL:  I'm sorry, I thought opposing counsel

8  had said that they are fine keeping things stayed.  But I just

9  wanted to say if the Court is going to stay or hold us in

10 abeyance pending the D.C. Circuit proceedings.

11     I think we would also ask if we're going to do that we

12 might as well hold in abeyance pending any Supreme Court

13 reviews just because it shouldn't be the case that when they're

14 winning the case moves quickly and when they're losing

15 everything gets ground to a halt.  So we would make that

16 request as well to continue or stay the case through the

17 Supreme Court proceedings.

18          THE COURT:  Okay, so I'll ask the parties to provide

19 a joint status report in a week, primarily to give the

20 Committee an opportunity to decide what they want to do on

21 their complaint.  And in light of that, if you think you can

22 come up with a briefing schedule that makes sense now I'm happy

23 to see that.

24     If you think it makes sense to wait to see where things

25 are on McGahn, I could certainly understand how that would make

 1   sense as well.  But why don't we go from there and at least

 2   figure out what you all want to do on the complaint.

 3        Ms. Morse, anything further from the Committee?

 4           MS. MORSE:  No, thank you.  Thank you very much.

 5           THE COURT:  Mr. Morrell?

 6           MR. MORRELL:  No.

 7           THE COURT:  Mr. Norris?

 8           MR. NORRIS:  No, Your Honor.

 9           THE COURT:  So I'll deny the motion to lift the stay

10   as moot.  I think the stay is lifted at least for now and I'll

11   hear from you all in a week.  Thanks folks.

12               (Proceedings adjourned at 11:33 a.m.)

13                        -oOo-

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the stenographic notes provided to me by the United States District Court, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____          _____
/s/ Crystal M. Pilgrim, RPR, FCRR       Date: March 12, 2020