**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, | ) ) ) ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) ) No. 1:19-cv-1974 (TNM) |
| UNITED STATES DEPARTMENT OF THE TREASURY, *et al.* | ) ) ) |
| *Defendants*, | ) ) |
| DONALD J. TRUMP, *et al.*, | ) ) ) |
| *Defendant-Intervenors.* | ) ) ) |

**DEFENDANTS' AND DEFENDANT-INTERVENORS' OPPOSITION**
**TO PLAINTIFF'S MOTION TO LIFT STAY**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD......................................................................................................... 8

ARGUMENT ..................................................................................................................... 8

I.      The Court Should Maintain the Stay Pending Further Proceedings in *McGahn*................ 9

II.     Even if the Court Lifts the Stay, There Is No Basis to Proceed Directly to
        Summary  Judgment. ..................................................................................................... 14

CONCLUSION................................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Air Line Pilots Ass'n v. Miller*,
  523 U.S. 866 (1998) ............................................................................................................... 8

*Al-Ghizzawi v. Bush*,
  No. 05-2378 (JDB), 2008 WL 948337 (D.D.C. Apr. 8, 2008) ................................................. 11

*Allina Health Servs. v. Sebelius*,
  756 F. Supp. 2d 61 (D.D.C. 2010) ......................................................................................... 11

*Al-Shareef v. Bush*,
  No. 05-2458 RWR, 2006 WL 3544736 (D.D.C. Dec. 8, 2006) ............................................... 11

*Ass'n of Am. Physicians & Surgeons, Inc. v. Sebelius*,
  901 F. Supp. 2d 19 (D.D.C. 2012) ......................................................................................... 11

*Bacardi & Co. v. Empresa Cubana Exportadora De Alimentos & Productos Varios, Inc.*,
  No. 04-519 EGS, 2007 WL 1541386 (D.D.C. May 24, 2007) ................................................. 11

*Clinton v. Jones*,
  520 U.S. 681 (1997) ............................................................................................................... 8

*Comm. on Oversight and Gov't Reform, U.S. House of Reps. v. Sessions*,
  344 F. Supp. 3d 1 (D.D.C. 2018) ........................................................................................... 13

*Comm. on the Judiciary of the U.S. House of Reps. v. Miers*,
  542 F.3d 909 (D.C. Cir. 2008) ............................................................................................... 13

*Comm. on the Judiciary v. McGahn*,
  951 F.3d 510 (D.C. Cir. 2020) ................................................................................. 1, 6, 9, 12

*Comm. Oversight & Gov't Reform v. Lynch*,
  156 F. Supp. 3d 101 (D.D.C. 2016) ....................................................................................... 13

*Committee on the Judiciary v. McGahn*,
  --- F.3d ----, 2020 WL 4556761 (D.C. Cir. Aug. 7, 2020) ........................................... 1, 8, 9, 13

*Dellinger v. Mitchell*,
  442 F.2d 782 (D.C. Cir. 1971) ............................................................................................... 11

*Dome Patent L.P. v. Kappos*,
  No. 07-1695 (PLF), 2011 WL 13247565 (D.D.C. June 29, 2011) ........................................... 11

*Duncan v. Wash. Metro. Area Transit Auth.*,
  425 F. Supp. 2d 121 (D.D.C. 2006) ....................................................................................... 11

*Hisler v. Gallaudet Univ.*,
  344 F. Supp. 2d 29 (D.D.C. 2004) ...................................................................................... 11

*Hulley Enters. Ltd. v. Russian Fed'n*,
  211 F. Supp. 3d 269 (D.D.C. 2016) .................................................................................... 10

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  208 F.R.D. 1 (D.D.C. 2002) ................................................................................................ 11

*Landis v. North Am. Co.*,
  299 U.S. 248 (1936) ........................................................................................................ 8, 11

*Lardner v. U.S. Dep't of Justice*,
  No. 03-0180 (JDB), 2005 WL 758267 (D.D.C. Mar. 31, 2005) .......................................... 11

*Packwood v. Senate Select Comm. on Ethics*,
  510 U.S. 1319 (1994) .......................................................................................................... 14

**Trump v. Mazars USA*, LLP*,
  140 S. Ct. 2019 (2020) ................................................................................................ *passim*

## STATUTES

26 U.S.C. § 6103 ...................................................................................................... 3, 7, 10

## RULES

Fed. R. Civ. P. 12 ................................................................................................................ 14

Local R. 7 .............................................................................................................................. 5

## INTRODUCTION

Defendants and Defendant-Intervenors respectfully oppose the Committee's Motion to Lift Stay, ECF No. 93.  Simply put, the Committee is incorrect that "the basis for the stay has vanished."  *Id.* at 4.  In *Committee on the Judiciary v. McGahn*, --- F.3d ----, 2020 WL 4556761 (D.C. Cir. Aug. 7, 2020) (*en banc*), the D.C. Circuit held that informational disputes between the House of Representatives and the Executive Branch may constitute Article III cases or controversies.  While that opinion presently controls the Article III question in this case, the limits of Article III are not the only reason why this case is not justiciable.  As this Court observed in its stay order, "McGahn presents *several* threshold questions that bear heavily on the Executive's motion to dismiss here."  ECF No. 91 at 1 (emphasis added).  Specifically, in addition to the Article III issue, Defendants and Defendant-Intervenors have argued that Congress neither conferred statutory subject matter jurisdiction nor created a cause of action permitting a committee of the House of Representatives to enforce its demands for information against the Executive Branch in federal court.  *See* Defs.' & Def-Intervenors' Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 44, at 29-32, 44-56.  Both of these arguments were also presented in *McGahn*, and the *en banc* court did not reach them.  Instead, it remanded them to the panel to address in the first instance.  *See McGahn*, 2020 WL 4556761, at *15.  And the vacated panel opinion in *McGahn*, while grounding its ruling under Article III, left little doubt that the panel took Defendants' arguments on these additional points quite seriously.  *See Comm. on the Judiciary v. McGahn*, 951 F.3d 510, 522 (2020) ("The current statutory regime for enforcement of congressional subpoenas reflects Congress's judgment that information disputes between the political branches do not belong in federal court.").  Given the importance of these issues and their posture before the D.C. Circuit, this Court should continue to await definitive resolution in *McGahn* as a matter of basic judicial efficiency.

Even if the Court did decide to lift the stay without awaiting further guidance in *McGahn*, there is no basis to move directly to expedited summary judgment proceedings, as the Committee requests.  Doing so would be inconsistent with the Court's stated intention "to adhere to the traditional litigation sequence of complaint; answer or motion to dismiss; discovery, if appropriate; *and only then* summary judgment," a process that "allows the Court to assure itself of jurisdiction and address threshold matters before burdening the parties with the costs of discovery and briefing on the merits."  ECF No. 38 at 4 (emphasis added).  The parties have conformed to that process, and the Court has before it a motion to dismiss raising the two remaining threshold questions also presented in *McGahn*, as well as additional questions not presented in *McGahn*, such as whether the House of Representatives can authorize a lawsuit without specifically voting to do so (as it purported to do here), and whether the Court should entertain this lawsuit at all when the Committee has not meaningfully engaged in the accommodation process.  Mot. to Dismiss at 26-29, 38-43, ECF No. 44.  The Committee's suggestion that those issues should be tabled and presented again in a new round of briefing on summary judgment makes no sense as a matter of judicial efficiency, would do nothing to advance the accommodation process, and overlooks (again) the fact that the Court's disposition of the motion to dismiss will affect how the parties brief the merits on summary judgment, and potentially the record on which those arguments are based.

Finally, the premise of the Committee's request for expedition—that the current House of Representatives will end on January 3, 2021—has been repeatedly urged by the Committee from the outset of this case but is not a basis to grant the Committee's motion.  It is the Committee that made the decision to pursue its objectives through litigation rather than accommodation. The Court is not required to overhaul the basic trajectory of civil litigation, or disregard efficiencies to be gained by awaiting guidance from the Circuit, to accommodate the Committee's choice.  Nor do

the Committee's arguments on this point find any support in the careful and incremental approach recently adopted by the D.C. Circuit in *McGahn* and the Supreme Court in *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2034 (2020). Indeed, if courts were routinely to entertain this argument from committees of the House of Representatives, "[i]nstead of negotiating over information requests" as Congress has done for two centuries, the House would "simply walk away from the bargaining table [in an effort to] compel compliance in court" before the expiration of its term, as the Committee has done here. *Mazars*, 140 S. Ct. at 2034. That, in turn, would upend the traditional "give-and-take of the political process between the legislative and the executive," *id.* at 2029, which the House has made no genuine effort to explore here. Moreover, regardless of whether the Court grants the Committee's request, there is zero chance that a decision could be reached and all avenues of appeal exhausted in time to compel production of the President's personal tax return information before the current Congress expires on January 3, 2021. There is thus no basis to disregard the efficiencies of continuing the stay pending further proceedings in *McGahn* or to abandon the orderly framework the Court established at the outset of this case.

## BACKGROUND

On April 3, 2019, the Chairman of the Committee sent a letter to the Commissioner of the Internal Revenue Service ("IRS") invoking 26 U.S.C. § 6103(f) to request that the IRS produce tax returns and audit information for the President and eight related business entities for tax years 2013-2018. *See* Compl. Ex. A, ECF No. 1-1. The Chairman stated that the information was necessary for the Committee to determine the "scope" of examinations of Presidential tax returns under the IRS policy mandating audits of Presidential and Vice Presidential income-tax returns, as set forth in the Internal Revenue Manual (the "Presidential audit program"). *Id.* at 1. On May 6, 2019, after further correspondence with the Committee and consultations with the Department of Justice, Defendants denied the Committee's request, explaining the unprecedented nature of the

Committee's invocation of section 6103(f), the constitutional limitations on the Committee's authority under that provision, and the lasting ramifications for all taxpayers if Defendants were to comply with the request.  Compl. Exs. I & J, ECF Nos. 1-9, 1-10.

On July 2, 2019, the Committee filed suit to compel Defendants to produce the President's tax-return information.  On August 20, 2019, approximately two weeks before Defendants' deadline to respond to the complaint, the Committee filed a motion for summary judgment and simultaneously moved for an expedited briefing schedule.  *See* ECF Nos. 29, 30, 33, 35.  On August 29, 2019, the Court denied the Committee's motion for expedited treatment and denied without prejudice the Committee's motion for summary judgment, explaining that "this is no ordinary case" and that the "weighty constitutional issues and political ramifications it presents militate in favor of caution and deliberation, not haste."  Mem. & Order of Aug. 29, 2019 ("Aug. 29 Order") at 3, ECF No. 38.  The Court further noted that the fact "that related issues are percolating in other courts, particularly before the D.C. Circuit, suggests that a rush to judgment here would be unwise" because "the Court—and the parties—may benefit from guidance from the Circuit about issues-in-common with the matters on appeal."  *Id.* at 4.

Consistent with the Court's August 29 Order, Defendants filed their motion to dismiss on the scheduled date of September 6, 2019.  ECF No. 44.  The motion to dismiss identified several bases for dismissal, including lack of standing, the House's failure to properly authorize this lawsuit, lack of statutory subject matter jurisdiction, and the absence of a cause of action permitting the Committee to enforce its demands for tax return information in federal court.  *See* Mot. to Dismiss at 13-34, 44-58.  Defendants and Defendant-Intervenors also argued that the Court should refrain from adjudicating the dispute so that the parties could undertake the process of negotiation and mutual accommodation through which the elected branched have traditionally resolved their informational disputes.  *Id.* at 38-43.  The Committee chose not to expedite its opposition to that

motion but instead generally conformed to the deadline established by Local Rule 7(b) and filed its opposition on September 23, 2019.[1]  ECF No. 55.  Defendants filed their reply seven days later, ECF No. 59, and the Court heard argument approximately five weeks later, on November 6, 2019.

In the meantime, on August 7, 2019, the House Committee on the Judiciary filed a separate lawsuit seeking to compel the former Counsel to the President, Donald F. McGahn II, to testify pursuant to congressional subpoena.  *See Comm. on the Judiciary, U.S. House of Reps. v. McGahn*, No. 19-2379 (KBJ) (D.D.C.).  The Department of Justice represented Mr. McGahn in his capacity as former Counsel to the President, and on August 26, 2019, the Judiciary Committee moved for a preliminary injunction or, in the alternative, expedited summary judgment.  *Id.*, ECF No. 22. The parties then negotiated a schedule for briefing and argument on cross-motions for summary judgment, which the court entered on the docket.  *Id.*, ECF No. 28 and minute order dated September 3, 2019.  In the course of that briefing and argument, the Department of Justice raised three of the threshold issues raised in this case, namely: lack of standing, lack of subject matter jurisdiction, and the absence of a cause of action.  On November 25, 2019, the district court granted summary judgment for the Judiciary Committee.  *Id.*, ECF Nos. 46, 47.  The Department of Justice appealed to the D.C. Circuit the next day, *id.*, ECF No. 48, and the D.C. Circuit administratively stayed the district court's decision pending further review.  *See* Per Curiam Order at 1-2, Doc. No. 1818063, *Comm. on the Judiciary, U.S. House of Reps. v. McGahn*, No. 19-5331 (D.C. Cir. Nov. 27, 2019).

On January 14, 2020, the Court held a telephone conference in this case and informed the parties that it had reviewed the briefing in *McGahn* and, in light of the significant overlap between the threshold arguments presented in the two cases and the fact that *McGahn* "is on an expedited

---

[1] The Committee ultimately sought a one-day extension of its deadline under Local Rule 7(b) to evaluate a supplemental, corrective declaration submitted by Defendants.  *See* ECF No. 46.

track with the Circuit," indicated that the Court's "strong inclination" was "not to get out in front of [its] superiors."  Tel. Conf. Tr., ECF No. 78 ("Jan. 14 Tr.") at 3:6-13.  The Court stated that it would therefore stay the case pending a decision in *McGahn*.  In so doing, the Court again rejected the Committee's suggestion that the Court entertain expedited summary judgment briefing without first resolving the threshold issues presented in the pending Motion to Dismiss, but observed that there seemed to be "plenty of room for [an] accommodation process to take place" and encouraged the parties to be "in communication about ways to potentially narrow the scope of the disagreement here and possibly resolve it."  *Id.* at 12:11-13:17.

On February 28, 2020, the D.C. Circuit issued a decision in *McGahn*, holding that "[l]awsuits to resolve interbranch informational disputes" do not constitute Article III cases or controversies.  *Comm. on Judiciary v. McGahn*, 951 F.3d 510, 521 (D.C. Cir. 2020).

On March 5, 2020, this Court lifted the January 14 stay and directed the parties to file a status report indicating how they wished to proceed in this case in light of the decision in *McGahn*, the House's intent to seek *en banc* review of that decision, and the Court's admonition, expressed at a hearing held the same day, that the Court was "not inclined to [litigate this case] piecemeal" but was open to moving forward if the Committee's "inclination [was] to dismiss the subpoena count and go forward on [the section] 6103" claims only.  Mot. Hr'g Tr. (Mar. 5, 2020) ("Mar. 5 Tr.") at 5:12-15, ECF No. 92.  On March 12, 2020, the parties filed a Joint Status Report, in which the House made clear that it "intends to press forward with its subpoena-enforcement claim" in addition to its claim under section 6103.  ECF No. 88 at 2.  Defendants requested that the Court dismiss the case in light of the panel's holding *McGahn* or, in the alternative, stay the case pending further proceedings in *McGahn*, provided that "any such stay extend through the completion of any Supreme Court proceedings, and not merely the completion of proceedings in the D.C. Circuit."  *Id.*

On March 13, 2020, the D.C. Circuit granted the House's petition for rehearing *en banc*. *See* Per Curiam Order, Doc. No. 1833513, *Comm. on the Judiciary, U.S. House of Reps. v. McGahn*, No. 19-5331.  On March 20, 2020, the Court entered an order staying the case pending further order of the Court.  ECF No. 91 ("March 20 Stay Order").  The Court again observed that *McGahn* presents "several threshold questions that bear heavily on the Executive's motion to dismiss here."  *Id.* at 1.  The Court acknowledged that the Committee asserts "two sets of claims against the Executive: a subpoena-enforcement claim and [statutory] claims under 26 U.S.C. § 6103(f)," *id.* at 2, and that it would theoretically be possible to move forward on the section 6103 claims while awaiting final word from the D.C. Circuit in *McGahn* on the subpoena claim.  But, the Court explained, even if the final outcome in *McGahn* does not fully resolve the statutory claims, that outcome would likely at least "bear on whether the Court has jurisdiction over [them]." *Id.* at 5.  The Court also observed that "piecemeal litigation"—that is, proceeding on the statutory claims while awaiting dispositive guidance on the subpoena enforcement claim—"would be an inefficient use of resources."  *Id.*

While *en banc* review in *McGahn* was pending, the Supreme Court issued a decision in *Mazars*, a case that—like this one—involves congressional requests for the financial information of the President and his business entities.  Like the panel in *McGahn*, the Supreme Court observed that historically, "disputes over congressional demands for presidential documents have not ended up in court" but instead have "been hashed out in the 'hurly-burly, the give-and-take of the political process between the legislative and the executive.'"  *Mazars*, 140 S. Ct. at 2029-31.  The Court emphasized that although the parties agreed "that [that] particular controversy is justiciable," "related disputes involving congressional efforts to seek Executive Branch information recur on a regular basis" and yet "Congress and the Executive have nonetheless managed for over two centuries to resolve such disputes among themselves."  *Id.* at 2031. The Court deemed this a

"consideration of great weight" that imposed upon the Court "a duty of care to ensure that [it] not needlessly disturb" the tradition of negotiation and mutual accommodation.  *Id.* (citation omitted).

On August 7, 2020, the D.C. Circuit issued its *en banc* decision in *McGahn*, reversing the panel's decision and holding that a committee of the House of Representatives has "Article III standing to seek enforcement of its duly issued subpoena in the performance of its constitutional duties."  2020 WL 4556761, at \*15.  The *en banc* court did not, however, reach the remaining issues presented in *McGahn* and instead remanded "[c]onsideration of McGahn's other contentions—including threshold pre-merits objections that there is no subject matter jurisdiction and no applicable cause of action[—] . . . to the panel to address in the first instance."  *Id.*   The Committee filed its motion to lift the stay in this case a week later, on August 14, 2020.  ECF No. 93.

## LEGAL STANDARD

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936)).  "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  *Id.* (quoting *Landis*, 299 U.S. at 244-55); *see also Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").  A stay is especially appropriate "in cases of extraordinary public moment."  *Landis*, 299 U.S. at 256.

## ARGUMENT

**I.     The Court Should Maintain the Stay Pending Further Proceedings in *McGahn*.**

The Committee argues that the stay should be lifted because "the basis for [it] has vanished" in light of the *en banc* decision in *McGahn*.  Pl.'s Mot. at 4.  That is incorrect.  The *en banc* decision addressed only one of the "several threshold questions" presented in both cases "that bear heavily on the Executive's motion dismiss here."  March 20 Stay Order at 1.  The *en banc* court remanded the case to the panel to address the Executive Branch's remaining "pre-merits objections that there is no subject matter jurisdiction and no applicable cause of action," *McGahn*, 2020 WL 4556761, at *15, both of which are also presented here.  *See* Mot. to Dismiss at 29-32, 44-56.  Furthermore, the now-vacated panel opinion in *McGahn* made clear that the panel took these arguments seriously.  As it observed, "[t]he current statutory regime for enforcement of congressional subpoenas reflects *Congress's judgment that information disputes between the political branches do not belong in federal court*."  *McGahn*, 951 F.3d at 522 (emphasis added); *see also id.* ("the absence of congressional authorization is the third strike against the Committee's case.").

Given the importance of the issues remaining to be decided by the D.C. Circuit, this Court should, at a minimum, continue to await definitive resolution by the D.C. Circuit as a matter of basic judicial efficiency.  This approach is consistent with what the House Committee on Oversight and Reform told another member of this Court after the D.C. Circuit agreed to hear *McGahn en banc*: "this Court should not proceed in a way . . . that pays no heed to the D.C. Circuit's order granting rehearing *en banc* in *McGahn*"; instead, "the Court should await the *en banc* D.C. Circuit's decision in *McGahn* before adjudicating the parties' cross-motions in this case."  *Committee on Oversight and Reform, U.S. House of Reps. v. Barr*, No. 19-3557 (RDM), March 20, 2020 Joint Status Report, ECF No. 39 at 2.  The same logic applies here; the Court should, at

a minimum, wait for definitive guidance from the D.C. Circuit on the remaining dispositive threshold issues before proceeding further.[2]

Defendants acknowledge that this case presents certain threshold issues that are not presented in *McGahn*, such as whether the Administrative Procedure Act ("APA") or 26 U.S.C. § 6103(f) creates a cause of action that the Committee may invoke and, if not, whether the writ of mandamus or other doctrines are available to fill the gap. But even though those theories are not presented in *McGahn*, they are, at bottom, simply additional ways of trying to enforce the Committee's asserted right to information from the Executive Branch, just as the House is purporting to do in *McGahn*. Their resolution is thus likely to be substantially affected by the D.C. Circuit's decision. Most obviously, if the D.C. Circuit concludes that there is jurisdiction and a cause of action under the Committee's subpoena enforcement theory, the Court would not need to reach the Committee's separate theories under the APA and section 6103(f). But even if the *McGahn* decision does not eliminate the need to decide those issues, it is almost certain to provide guidance on how the Court should assess them in light of their conceptual overlap with the subpoena enforcement matters at issue in *McGahn*, in which case maintaining the stay will "avoid potentially 'fractured and disorderly' and unnecessary litigation and best preserve judicial and parties' resources." *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 285 (D.D.C. 2016) (citation omitted); *see also id.* at 281-84 (explaining that a stay was appropriate because "even if the Dutch proceedings do not resolve every jurisdictional and merits issue presented in the instant case, . . . the Dutch Courts' reasoning may be persuasive as to certain [relevant] issues" which "would likely prompt the parties to seek reconsideration" of any earlier decision).

---

[2] Moreover, while the *en banc* opinion in *McGahn* is presently binding on this Court as to the Article III issue, it is not necessarily the last word on even that issue. *See* Mar. 20 Stay Order at 7 ("the *en banc* court may not be the final word"); Pl.'s Mot. to Lift Stay at 5 (acknowledging same).

Courts in this District have routinely maintained stays in analogous circumstances. *See Bacardi & Co. v. Empresa Cubana Exportadora De Alimentos & Productos Varios, Inc.*, No. 04-519 EGS, 2007 WL 1541386, at *1 (D.D.C. May 24, 2007) (staying case "'pending resolution of independent proceedings which bear upon the case'" (quoting *Hisler v. Gallaudet Univ.,* 344 F. Supp. 2d 29, 35 (D.D.C. 2004)); *Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971) (stay "pending . . . determination in the other suit" was justified "in view of the complex facts, and novel legal problems 'of far-reaching importance to the parties and the public.'" (quoting *Landis*, 299 U.S. at 256).[3]  Courts in this Circuit also have frequently maintained such stays for far longer than the roughly eight months that this case has been stayed in aggregate, where appropriate. *See Al-Ghizzawi v. Bush*, No. 05-2378 (JDB), 2008 WL 948337, at *1 (D.D.C. Apr. 8, 2008) (explaining that, in a July 19, 2005 order, "[t]his Court previously ordered a stay in this case pending resolution of related appeals in the D.C. Circuit" and (nearly three years later) "the Court is now awaiting the Supreme Court's decision in *Boumediene v. Bush*"); *Duncan v. Wash. Metro. Area Transit Auth.*, 425 F. Supp. 2d 121, 125 (D.D.C. 2006) (explaining that "[o]n April 15, 2003, the Court stayed all proceedings pending the D.C. Circuit's resolution of" a related case and "lifted its stay on March 9, 2005," roughly two years later).

The Committee suggests that this case warrants special treatment because the current Congress expires on January 3, 2020, so that "unless the Court lifts the stay, it may become

---

[3] *See also Ass'n of Am. Physicians & Surgeons, Inc. v. Sebelius*, 901 F. Supp. 2d 19, 27 (D.D.C. 2012) (court granted motion "to stay this case pending decisions in two cases before the D.C. Circuit, and later, one case before the United States Supreme Court"); *Dome Patent L.P. v. Kappos*, No. 07-1695 (PLF), 2011 WL 13247565, at *2 (D.D.C. June 29, 2011) (staying case where a "question now before the Supreme Court is directly relevant to a central issue before this Court"); *Allina Health Servs. v. Sebelius*, 756 F. Supp. 2d 61, 71 (D.D.C. 2010) (finding good cause to stay where "the resolution of [related case] by the D.C. Circuit will be dispositive of the Plaintiffs' arguments here"); *see also, e.g.*, *Al-Shareef v. Bush*, No. 05-2458 RWR, 2006 WL 3544736, at *1 (D.D.C. Dec. 8, 2006) (staying on similar grounds); *Lardner v. U.S. Dep't of Justice*, No. 03-0180 (JDB), 2005 WL 758267, at *2 (D.D.C. Mar. 31, 2005) (same); *In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 6 (D.D.C. 2002) (same).

impossible for the Committee to discharge its constitutional obligations." Pl.'s Mot. to Lift Stay at 6. The Committee made the same argument to the Supreme Court in *Mazars* to no avail. *See Mazars*, No. 19-715, Application (20A15) of Committees of U.S. House of Reps. for an order to issue the judgment forthwith (July 13, 2020) at 3-4 & order denying the application (July 20, 2020). Nor can the argument be reconciled with the deliberative and incremental approach the D.C. Circuit has thus far taken in *McGahn*—deciding first the Article III issues and now remanding for decision of the remaining issues. Furthermore, accepting the argument that courts must grant the House special treatment to accommodate its two-year term would simply encourage the House to abandon the accommodation process in favor of litigation, as it has done here, thus conflicting with the Supreme Court's admonition that courts "not needlessly disturb" the tradition of negotiation and mutual accommodation between the political branches. *Mazars*, 140 S. Ct. at 2031 (citation omitted).

In any event, even if the Court were to grant the Committee's motion, the possibility that a final decision could be reached, all avenues of review exhausted, and documents produced (if any) before the current House expires on January 3 is infinitesimally small. That fact suggests not that Defendants have "obstruct[ed] the Committee's inquiries through delay," Pl.'s Mot. to Lift Stay at 6, but simply that "[l]itigation takes a long time," *McGahn*, 951 F.3d at 530. While the Committee could have pursued the traditional "give-and-take of the political process between the legislative and the executive," *Mazars*, 140 S. Ct. at 2029, it has rebuffed Defendants' invitation to reopen that process, maintaining that no "set of substitute information [other than the President's tax return information] . . . would serve" its alleged purposes of fashioning tax legislation. *See* Ex. A (emails among counsel).[4] The Committee may have believed that prematurely ending the

---

[4] The Committee's refusal to even consider substitute information that might be obtained through the accommodation process is at odds with the reality that legislative efforts do not require "every

accommodation process would strengthen the case for judicial intervention, but that error may not be laid at Defendants' feet.

As Judge Griffith noted in his dissent from the *en banc* opinion in *McGahn*, "Congress has never successfully obtained information from an executive-branch official in a lawsuit." *McGahn*, 2020 WL 4556761, at *27 (Griffith, J., dissenting). One reason why is that when the Executive Branch has appealed from lower court orders to produce information to Congress, higher courts have consistently stayed those orders to permit appropriate consideration of the weighty separation of powers issues at stake, and the disputes have subsequently been resolved through the interbranch accommodation process. *See, e.g.*, *Comm. on the Judiciary of the U.S. House of Reps. v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (per curiam) (staying order requiring former White House Counsel to testify before Committee, and produce documents, after which parties resolved their disputes); *Comm. on Oversight and Gov't Reform, U.S. House of Reps. v. Sessions*, 344 F. Supp. 3d 1, 2 (D.D.C. 2018) (noting negotiated resolution following stay). Indeed, the stay that was issued in *McGahn*, *see Comm. on the Judiciary v. McGahn*, No. 19-5331, Doc. 1818063 (D.C. Cir. Nov. 27, 2019), remains in effect to this day. *See also* Order, *Dep't of Justice v. House Comm. on Judiciary*, No. 19A1035 (U.S. May 20, 2020) (staying D.C. Circuit order requiring production of unredacted grand jury materials relating to Mueller investigation).[5] The chances of the Committee actually receiving the President's tax return information pursuant to an order from this Court before (at least) the completion of D.C. Circuit litigation in *McGahn* are infinitesimally small,

---

scrap of potentially relevant evidence" or "justify access to the President's personal papers when other sources could provide Congress the information it needs." *Mazars*, 140 S. Ct. at 2036.

[5] In *Comm. Oversight & Gov't Reform v. Lynch*, 156 F. Supp. 3d 101 (D.D.C. 2016), the Department of Justice produced to the Committee, pursuant to court order, documents containing deliberative material (but from which all other privileged information had been withheld), because in that case the Executive Branch did not seek appellate review of the district court's order.

underscoring why the Court should await further guidance from the D.C. Circuit instead of trying to speed ahead of that Court while it considers identical issues.

## II.    Even if the Court Lifts the Stay, There Is No Basis to Proceed Directly to Summary Judgment.

Regardless of whether the Court lifts the stay, it should reject the Committee's renewed request to proceed directly to summary judgment.  *See* Pl.'s Mot. to Lift Stay 1-2.  This is the fourth time the Committee has asked the Court to entertain merits briefing during the pendency of Defendants' and Defendant-Intervenors' motion to dismiss.  *See* ECF No. 30 (Mot. to Expedite) at 2-4; Tel. Conf. Tr., ECF No. 78 at 11-12 (Jan. 14, 2020); Pl.'s [First] Mot. to Lift Stay at 12-13, ECF No. 79.  Yet despite repeating its request again (and again), the Committee continues to ignore "[t]he requirement that a federal court assure itself of jurisdiction to hear a case before proceeding to the merits," and that this Court has already determined it appropriate to "address threshold matters [under Rule 12(b)(1) and (6)] before burdening the parties with the costs of discovery and briefing on the merits proceeding."  Aug. 29 Order at 3-4.

Adhering to that practice is especially warranted in light of the "novel and complex questions about the privileges and authority of all three branches of the federal government" presented by this case, *id.* at 3, and Defendant-Intervenors' intent to seek discovery in the event that the motion to dismiss is denied.  *See* Jan. 14 Tr. at 12:13-15; Defs.' Mot. to Hold in Abeyance at 12-14, ECF No. 33.  *Cf. Packwood v. Senate Select Comm. on Ethics*, 510 U.S. 1319, 1320-21 (1994) (noting that resolution of a challenge to a congressional subpoena "would entail a factbound determination of the nature and scope of [the committee's] investigation" because "relevancy and adequacy or excess in the breadth of [a] subpoena are matters variable in relation to the nature, purposes, and scope of the inquiry").  Although the Committee opposes discovery, and although the federal Defendants have not yet taken a position on this question, the Court cannot proceed to the merits without resolving whether discovery is appropriate and, if so, permitting that discovery

to take place.  *See* Aug. 29 Order at 5; Jan. 14 Tr. at 12:16-19.  Again, a final decision in *McGahn*, or—at a minimum—this Court's resolution of Defendant and Defendant-Intervenors' motion to dismiss may eliminate the need to decide the issue.

The Committee's suggestion that the parties proceed directly to summary judgment also again overlooks that the Court's resolution of the motion to dismiss will dramatically affect how the parties brief the merits.  The Committee has brought a panoply of claims: some arise directly under Article I, some invoke the APA, some allege *ultra vires* agency action, and some sound in mandamus.  Until this Court resolves Defendants' and Defendants-Intervenors' motion to dismiss, the parties will not know which of those claims survive, if any.  And because the legal standards applicable to such claims vary widely—a party that is entitled to relief under the APA, for example, might not be entitled to the extraordinary remedy of mandamus—the parties would not know what standard to apply in briefing the merits.

Defendants and Defendant-Intervenors therefore respectfully request that if the Court grants the Committee's request to lift the stay, the Court nevertheless adhere to the sequence it adopted at the outset of this case and decide their pending motion to dismiss prior to taking any further action in the case.  If the Court adopts that approach, Defendants and Defendant-Intervenors also respectfully request an opportunity to brief the impact of the Supreme Court's intervening decision in *Mazars* and the D.C. Circuit's *en banc* decision in *McGahn* on the remaining threshold issues in this case.  That incremental and deliberative approach is consistent with the Supreme Court's treatment in *Mazars* and the D.C. Circuit's approach in *McGahn*, as well as with this Court's prior rulings.  Again, however, the far more efficient course would be to maintain the stay pending the resolution of *McGahn* by the D.C. Circuit.

## CONCLUSION

For the foregoing reasons, the Court should deny the Committee's motion to lift the stay in full or, at a minimum, deny the Committee's motion to proceed directly to expedited summary judgment briefing.

Dated:  August 28, 2020

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

JAMES J. GILLIGAN
Special Litigation Counsel

/s/ Serena M. Orloff
STEVEN A. MYERS (NY Bar No. 4823043)
SERENA M. ORLOFF (CA Bar No. 260888)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O.  Box 883
Washington, D.C.  20044
Tel: (202) 305-0167
Fax: (202) 305-8470
Email: serena.m.orloff@usdoj.gov

*Attorneys for Defendants*

 /s/ William S. Consovoy

William S. Consovoy (D.C. Bar #493423)
Cameron T. Norris
Steven C. Begakis
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com

Patrick Strawbridge

16

Consovoy McCarthy PLLC
Ten Post Office Square, 8th Floor
South PMB #706
Boston, Massachusetts 02109
(617) 227-0548

*Attorneys for Defendant-Intervenors*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

COMMITTEE ON WAYS AND                    )
MEANS, UNITED STATES HOUSE               )
OF REPRESENTATIVES,                      )
                                         )
*Plaintiff,*                             )
                                         )
            v.                           )
                                         )   No. 1:19-cv-1974 (TNM)
UNITED STATES DEPARTMENT                 )
OF THE TREASURY, *et al.*                )
                                         )
*Defendants,*                            )
                                         )
DONALD J. TRUMP, *et al.*,               )
                                         )
            *Defendant-Intervenors.*     )
_____    )

## [PROPOSED] ORDER

Upon consideration of Plaintiff's Motion to Lift Stay, Defendants' and Defendant-Intervenors' opposition to that motion, and the entire record herein, it is hereby:

ORDERED that the motion is DENIED.  This case shall continue to be stayed pending further decision in *Comm. on the Judiciary, U.S. House of Reps. v. McGahn*, No. 19-5331 (D.C. Cir.).

**SO ORDERED.**

Date: _____          _____
                               HON. TREVOR N. MCFADDEN
                               United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, | ) ) ) ) |  |
| *Plaintiff*, | ) ) ) |  |
| v. | ) ) ) | No. 1:19-cv-1974 (TNM) |
| UNITED STATES DEPARTMENT OF THE TREASURY, *et al.* | ) ) ) |  |
| *Defendants*, | ) ) ) |  |
| DONALD J.  TRUMP, *et al.*, | ) ) ) |  |
| *Defendant-Intervenors.* | ) ) |  |

_____

# EXHIBIT A

**Orloff, Serena M (CIV)**

| | |
|---|---|
| **From:** | Orloff, Serena M (CIV) |
| **Sent:** | Friday, March 13, 2020 9:54 AM |
| **To:** | Letter, Douglas; Myers, Steven A. (CIV); Handley, Cristen (CIV); Gilligan, Jim (CIV); Shapiro, Elizabeth (CIV); Morrell, David M. (CIV) |
| **Cc:** | Barbero, Megan; Morse, Jodie; Havemann, Will; Grogg, Adam; Tatelman, Todd |
| **Subject:** | RE: Tax returns case |

Doug,

Thank you for your email of February 28.  As we've stated before, Treasury and IRS remain willing to provide the Committee with information relevant to the issues described in your email, including information regarding the "functioning of the mandatory audit program," the existence of "safeguards to protect against improper influence," and the "procedures . . . [that] are actually followed" in the program.  We note that our clients have already expended substantial time and resources to provide the Committee with such information and to explore the universe of additional information that could be provided consistent with their obligations under section 6103, such as information on program mechanics and scope.  Treasury and IRS are also happy to provide the Committee with information about the fairness of the program, proposals to codify the program, and the Committee's expressed concerns about improper influence.

Nevertheless, you state below that the Committee "cannot conceive of any set of substitute information that would serve" its alleged purposes, which we understand to mean that the Committee will not be satisfied by any information other than this President's personal tax information and audit files.  While we dispute that any legitimate Committee investigation "cannot possibly be completed without" such information, if that is the Committee's position, we reluctantly agree that further discussions are not likely to be fruitful at this time—not because an accommodation that would meet the stated needs of both parties is impossible, but because the House is unwilling to engage in the constitutionally mandated accommodation process.  We emphasize, however, that our clients remain open to further efforts to find common ground should the Committee change its mind.

Best,
Serena

---

**From:** Letter, Douglas <Douglas.Letter@mail.house.gov>
**Sent:** Friday, February 28, 2020 7:01 PM
**To:** Myers, Steven A. (CIV) <stmyers@CIV.USDOJ.GOV>; Handley, Cristen (CIV) <chandley@CIV.USDOJ.GOV>; Orloff, Serena M (CIV) <sorloff@CIV.USDOJ.GOV>; Gilligan, Jim (CIV) <JGilliga@CIV.USDOJ.GOV>; Shapiro, Elizabeth (CIV) <EShapiro@CIV.USDOJ.GOV>; Morrell, David M. (CIV) <dmorrell@CIV.USDOJ.GOV>
**Cc:** Barbero, Megan <Megan.Barbero@mail.house.gov>; Morse, Jodie <Jodie.Morse@mail.house.gov>; Havemann, Will <Will.Havemann@mail.house.gov>; Grogg, Adam <Adam.Grogg@mail.house.gov>; Tatelman, Todd <Todd.Tatelman@mail.house.gov>
**Subject:** RE: Tax returns case

DOJ friends:

	Thank you for your February 14, 2020 email.  I sense that it may be helpful for me to explain again why the Committee requires President Trump's tax returns and related administrative files in order to meet its view of its

constitutionally established responsibilities.  I do so even though you have made clear that the Department of Justice and the Department of the Treasury believe that they cannot as a matter of law provide these materials to the Committee.  As long as your clients maintain that absolutist position, there can be no doubt that we are at an impasse that cannot be resolved except through legal rulings by the courts.

As you know, the Committee has legislative and oversight jurisdiction over the federal tax laws and it is examining, among other issues, the extent to which the IRS audits and enforces those laws as applied to Presidents.  From what it has been able to learn, the Committee has grave concerns about the day-to-day functioning of the mandatory audit program for Presidential and Vice-Presidential returns.  Serious questions have been raised about the program, including questions about the lack of adequate safeguards to protect against improper influence.  Moreover, President Trump himself has said that the mandatory audit program is "extremely unfair."  Based on these factors, as well as the complex nature of President Trump's returns, the Committee must examine how the current mandatory audit program is operating with respect to him in order to analyze whether legislation is necessary (whether in the form of amending existing law or enacting new law).

The relevant tax returns and audit files that the Committee requested and subpoenaed—which plainly constitute Section 6103 information—are indispensable to the Committee's work.  The Committee is unable to conduct its investigation based on generalized, publicly available information along the lines of what Treasury provided at the June 2019 briefing.  Treasury officials have admitted that, in many instances, those materials are out of date and the procedures they described are not actually followed.  The June briefing therefore only heightened the Committee's concerns that existing procedures do not provide adequate protection against improper influence.  To understand this issue—and whether remedial legislation is needed—the Committee must examine how IRS agents have conducted President Trump's audits and whether they have been able to operate free from improper interference by the President or his representatives under the procedures currently in place.

In addition, during the examination of a President's or Vice-President's tax return, it is the Committee's understanding (based, in large part, on information provided at the briefing) that an IRS agent has substantial discretion to determine the scope and depth of the audit.  After conducting the examination, the IRS agent recommends the proper disposition of any issues identified.  The Committee needs to understand how the IRS agent applies his or her substantial discretion to shape the audit in practice and whether IRS employees are protected in the course of their work.

You have previously stated that the Committee should be able to carry out its responsibilities without looking at any Section 6103 information.  We have listened to you and have given this point considerable thought.  Given what the Committee believes it must do, we cannot conceive of any set of substitute information that would serve the Committee's legislative and oversight purposes, and you have not identified any.  The bottom line is that your clients are certainly free to disagree with what sort of oversight the Committee believes it must do, but I am confident that you must agree that the investigation being conducted by the Committee cannot possibly be completed without receiving Section 6103 information.

I note that in DOJ's opposition to our motion to lift the stay in district court, you referred cryptically to "exploring whether [you] could provide certain information identified by the Committee in a way that would not implicate individual taxpayer information," but you have never explained what that information is or how it could satisfy the Committee's legitimate need to understand how the audit program has performed in its handling of President Trump's returns.

In sum, our position is that, as a matter of law, Section 6103 grants the Committee the right to receive the tax returns, return information, and related administrative information that the Committee has sought, and that this material is necessary for the Committee to conduct the work I have described.  You maintain that your clients cannot lawfully provide the Committee with any information.  Under these circumstances, unless you are ready to recede from your clients' absolutist position, I do not understand how you can legitimately contend that we are not at an impasse.  Because that absolutist position has not changed at all from the outset of this litigation, your clients have

provided us with no room for further negotiations.  It is therefore obviously time for us to report to the district court that no productive negotiation is possible, and that the court therefore must carry out its responsibility to decide the legal issues (both jurisdictional and substantive) about which we completely disagree.

*Douglas N. Letter*
*General Counsel*
*Office of General Counsel*
*U.S. House of Representatives*
*219 Cannon House Office Building*
*Washington, DC  20515*
*Douglas.Letter@mail.house.gov*
*(202) 225-9700*

---

**From:** Myers, Steven A. (CIV) <Steven.A.Myers@usdoj.gov>
**Sent:** Friday, February 14, 2020 10:10 AM
**To:** Letter, Douglas <Douglas.Letter@mail.house.gov>; Handley, Cristen (CIV) <Cristen.Handley@usdoj.gov>; Orloff, Serena M (CIV) <serena.m.schulz-orloff@usdoj.gov>; Gilligan, Jim (CIV) <James.Gilligan@usdoj.gov>; Shapiro, Elizabeth (CIV) <Elizabeth.Shapiro@usdoj.gov>; Morrell, David M. (CIV) <David.M.Morrell@usdoj.gov>
**Cc:** Barbero, Megan <Megan.Barbero@mail.house.gov>; Morse, Jodie <Jodie.Morse@mail.house.gov>; Havemann, Will <Will.Havemann@mail.house.gov>; Grogg, Adam <Adam.Grogg@mail.house.gov>; Tatelman, Todd <Todd.Tatelman@mail.house.gov>
**Subject:** RE: Tax returns case

Dear Doug,

This is in response to your email of January 25.  As we have explained previously, and as again set out in our opposition to the Committee's motion to lift the stay, *see* ECF No. 81, Treasury remains glad to discuss ways of accommodating the Committee's asserted legislative needs in a manner consistent with its legal obligations.

Given the Committee's position that it will accept nothing other than the President's tax returns and return information that it has demanded, it may be that further discussions between the parties would not be productive at this time.  To be clear, however, Defendants' position is that the Committee's refusal to seriously explore alternative ways by which its asserted legislative interest could be satisfied means either that the Committee only seeks the President's tax returns for their own sake, or that the Committee has failed to satisfy its obligation to work with the Executive Branch to find a mutually acceptable accommodation, or both.  Either way, the Committee cannot avoid its constitutional obligation to exhaust the negotiation and accommodation process merely by observing that the Executive Branch has not provided the precise materials the Committee initially demanded.  *See, e.g., AT&T II*, 567 F.2d at 131 ("We are not required to say whether the Subcommittee is entitled to all that it seeks when time and experience may confirm that it does not need, in any genuine and substantial sense, more than is provided by our approach.").

We remain happy to discuss ways in which the Committee's asserted legislative needs could be satisfied consistent with Treasury's legal obligations.  Alternatively, if the Committee remains of the view that it will accept nothing other than the President's tax returns, then the Court may simply need to decide, at an appropriate time, what that means for this suit.

Thanks,
Steve

**Steven A. Myers**
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division

1100 L St. NW, Washington DC 20005
Tel: (202) 305-8648  Fax: (202) 616-8470

**From:** Letter, Douglas <Douglas.Letter@mail.house.gov>
**Sent:** Saturday, January 25, 2020 4:38 PM
**To:** Handley, Cristen (CIV) <chandley@CIV.USDOJ.GOV>; Orloff, Serena M (CIV) <sorloff@CIV.USDOJ.GOV>; Myers, Steven A. (CIV) <stmyers@CIV.USDOJ.GOV>; Gilligan, Jim (CIV) <JGilliga@CIV.USDOJ.GOV>; Burnham, James M. (CIV) <jburnham@CIV.USDOJ.GOV>; Shapiro, Elizabeth (CIV) <EShapiro@CIV.USDOJ.GOV>
**Cc:** Barbero, Megan <Megan.Barbero@mail.house.gov>; Morse, Jodie <Jodie.Morse@mail.house.gov>; Havemann, Will <Will.Havemann@mail.house.gov>; Grogg, Adam <Adam.Grogg@mail.house.gov>; Tatelman, Todd <Todd.Tatelman@mail.house.gov>
**Subject:** Tax returns case

Steve:

Thank you for your email, which restates your clients' belief that they are prohibited by law from providing any of the information requested by the Committee pursuant to Section 6103(f). Given your clients' absolutist position regarding their asserted lack of authority to disclose the material sought by the Committee, no accommodation is possible here and the parties therefore remain at an impasse. As the Committee has explained from the date of its initial Section 6103 request, it has a specific need for the President's returns and related administrative files pursuant to its legitimate legislative and oversight interests.

The Committee has made clear that it is seeking the President's returns and related administrative files not simply to assess the mandatory audit program in general, but to understand and evaluate the thoroughness of the audit of the President's returns, whether and how the publicly available materials on the mandatory audit program (which Treasury staff admitted at the briefing were outdated) diverge from current practices, whether the auditing of this President's returns has been subject to improper political influence, and whether codification of the audit program or other revisions to the tax code are needed. *See, e.g.*, Exs. A, E, K, P, QQ; Compl. ¶¶ 58-61, 79.

Neither the briefing that you referenced nor the publicly-available IRM provisions that your clients provided at the briefing are a substitute for the actual returns and related administrative files. As Chairman Neal wrote in his June 28, 2019 letter, generalized information is "not a replacement for the actual return and return information that the Committee requested under section 6103(f) and now has subpoenaed" because "[w]ithout studying the returns and the documentation of the agent's decisions that were requested, the Committee cannot evaluate the accuracy of the President's claims about the audit system, assess the fairness and effectiveness of the audit program and the scope of the audits being performed on the President's returns, or understand how particular provisions of the Code are being enforced as part of the IRS's review." Ex. P.

Furthermore, the briefing "only reinforced the Committee's need to review the actual return information as part of our oversight duties." *Id.* That is because the information communicated at the briefing "rais[ed] serious concerns about the absence of safeguards protecting both the individual auditor as well as the entire audit process from improper influence" and "also raised concerns uniquely and directly relevant to the thoroughness of the Presidential audit process as applied to this President." *Id.*

Also, the briefing highlighted the fact that, without 6103 authorization, the Committee cannot obtain any useful information about the actual operations of the mandatory audit program—past or present. Because Treasury officials at the briefing refused to recognize the Chairman's Section 6103 authority, they "declined to answer *any* questions asked by Committee staff related to the actual audits of multiple prior Presidents across both political parties, including basic questions about whether Presidential returns have ever been filed electronically, how long Presidential audits generally take, whether there ever have been any assessments made to Presidential returns, or whether any President-taxpayers have ever gone to IRS Appeals from a mandatory audit." *Id.* The notion that the Committee could satisfy its legislative

and oversight interests with records that, in your words, "would not contain or reveal Section 6103 information" is wrong.

Nothing has changed from the Committee's standpoint.  The Committee's concerns over the administration of the audit program have only been exacerbated by the long delay and refusal to turn over the requested materials despite Section 6103's clear and unambiguous mandate and the legally binding subpoenas.  In addition, your email confirms the Administration's position that it will make **none** of the requested Section 6103 materials available to the Committee.  This defiance of the statutory mandate and further departure from nearly a century of practice raises even deeper concerns about the Administration's approach to the Committee's investigation.

Given that, on the one hand, the Committee needs, and is by statute entitled to, President Trump's tax returns and related administrative files (which are obviously covered by Section 6103), and that, on the other hand, DOJ asserts that it is barred by law from providing any information to the Committee covered by Section 6103, it is clear that no accommodation is possible.

*Douglas N. Letter*
*General Counsel*
*Office of General Counsel*
*U.S. House of Representatives*
*219 Cannon House Office Building*
*Washington, DC  20515*
*Douglas.Letter@mail.house.gov*
*(202) 225-9700*