IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, *et al.*<br><br>*Defendants*,<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendant-Intervenors.* | No. 1:19-cv-1974 (TNM) |

# EXHIBIT A

**Orloff, Serena M (CIV)**

| | |
|---|---|
| **From:** | Orloff, Serena M (CIV) |
| **Sent:** | Friday, March 13, 2020 9:54 AM |
| **To:** | Letter, Douglas; Myers, Steven A. (CIV); Handley, Cristen (CIV); Gilligan, Jim (CIV); Shapiro, Elizabeth (CIV); Morrell, David M. (CIV) |
| **Cc:** | Barbero, Megan; Morse, Jodie; Havemann, Will; Grogg, Adam; Tatelman, Todd |
| **Subject:** | RE: Tax returns case |

Doug,

Thank you for your email of February 28.  As we've stated before, Treasury and IRS remain willing to provide the Committee with information relevant to the issues described in your email, including information regarding the "functioning of the mandatory audit program," the existence of "safeguards to protect against improper influence," and the "procedures . . . [that] are actually followed" in the program.  We note that our clients have already expended substantial time and resources to provide the Committee with such information and to explore the universe of additional information that could be provided consistent with their obligations under section 6103, such as information on program mechanics and scope.  Treasury and IRS are also happy to provide the Committee with information about the fairness of the program, proposals to codify the program, and the Committee's expressed concerns about improper influence.

Nevertheless, you state below that the Committee "cannot conceive of any set of substitute information that would serve" its alleged purposes, which we understand to mean that the Committee will not be satisfied by any information other than this President's personal tax information and audit files.  While we dispute that any legitimate Committee investigation "cannot possibly be completed without" such information, if that is the Committee's position, we reluctantly agree that further discussions are not likely to be fruitful at this time—not because an accommodation that would meet the stated needs of both parties is impossible, but because the House is unwilling to engage in the constitutionally mandated accommodation process.  We emphasize, however, that our clients remain open to further efforts to find common ground should the Committee change its mind.

Best,
Serena

---

**From:** Letter, Douglas <Douglas.Letter@mail.house.gov>
**Sent:** Friday, February 28, 2020 7:01 PM
**To:** Myers, Steven A. (CIV) <stmyers@CIV.USDOJ.GOV>; Handley, Cristen (CIV) <chandley@CIV.USDOJ.GOV>; Orloff, Serena M (CIV) <sorloff@CIV.USDOJ.GOV>; Gilligan, Jim (CIV) <JGilliga@CIV.USDOJ.GOV>; Shapiro, Elizabeth (CIV) <EShapiro@CIV.USDOJ.GOV>; Morrell, David M. (CIV) <dmorrell@CIV.USDOJ.GOV>
**Cc:** Barbero, Megan <Megan.Barbero@mail.house.gov>; Morse, Jodie <Jodie.Morse@mail.house.gov>; Havemann, Will <Will.Havemann@mail.house.gov>; Grogg, Adam <Adam.Grogg@mail.house.gov>; Tatelman, Todd <Todd.Tatelman@mail.house.gov>
**Subject:** RE: Tax returns case

DOJ friends:

   Thank you for your February 14, 2020 email.  I sense that it may be helpful for me to explain again why the Committee requires President Trump's tax returns and related administrative files in order to meet its view of its

1

constitutionally established responsibilities. I do so even though you have made clear that the Department of Justice and the Department of the Treasury believe that they cannot as a matter of law provide these materials to the Committee. As long as your clients maintain that absolutist position, there can be no doubt that we are at an impasse that cannot be resolved except through legal rulings by the courts.

As you know, the Committee has legislative and oversight jurisdiction over the federal tax laws and it is examining, among other issues, the extent to which the IRS audits and enforces those laws as applied to Presidents. From what it has been able to learn, the Committee has grave concerns about the day-to-day functioning of the mandatory audit program for Presidential and Vice-Presidential returns. Serious questions have been raised about the program, including questions about the lack of adequate safeguards to protect against improper influence. Moreover, President Trump himself has said that the mandatory audit program is "extremely unfair." Based on these factors, as well as the complex nature of President Trump's returns, the Committee must examine how the current mandatory audit program is operating with respect to him in order to analyze whether legislation is necessary (whether in the form of amending existing law or enacting new law).

The relevant tax returns and audit files that the Committee requested and subpoenaed—which plainly constitute Section 6103 information—are indispensable to the Committee's work. The Committee is unable to conduct its investigation based on generalized, publicly available information along the lines of what Treasury provided at the June 2019 briefing. Treasury officials have admitted that, in many instances, those materials are out of date and the procedures they described are not actually followed. The June briefing therefore only heightened the Committee's concerns that existing procedures do not provide adequate protection against improper influence. To understand this issue—and whether remedial legislation is needed—the Committee must examine how IRS agents have conducted President Trump's audits and whether they have been able to operate free from improper interference by the President or his representatives under the procedures currently in place.

In addition, during the examination of a President's or Vice-President's tax return, it is the Committee's understanding (based, in large part, on information provided at the briefing) that an IRS agent has substantial discretion to determine the scope and depth of the audit. After conducting the examination, the IRS agent recommends the proper disposition of any issues identified. The Committee needs to understand how the IRS agent applies his or her substantial discretion to shape the audit in practice and whether IRS employees are protected in the course of their work.

You have previously stated that the Committee should be able to carry out its responsibilities without looking at any Section 6103 information. We have listened to you and have given this point considerable thought. Given what the Committee believes it must do, we cannot conceive of any set of substitute information that would serve the Committee's legislative and oversight purposes, and you have not identified any. The bottom line is that your clients are certainly free to disagree with what sort of oversight the Committee believes it must do, but I am confident that you must agree that the investigation being conducted by the Committee cannot possibly be completed without receiving Section 6103 information.

I note that in DOJ's opposition to our motion to lift the stay in district court, you referred cryptically to "exploring whether [you] could provide certain information identified by the Committee in a way that would not implicate individual taxpayer information," but you have never explained what that information is or how it could satisfy the Committee's legitimate need to understand how the audit program has performed in its handling of President Trump's returns.

In sum, our position is that, as a matter of law, Section 6103 grants the Committee the right to receive the tax returns, return information, and related administrative information that the Committee has sought, and that this material is necessary for the Committee to conduct the work I have described. You maintain that your clients cannot lawfully provide the Committee with any such information. Under these circumstances, unless you are ready to recede from your clients' absolutist position, I do not understand how you can legitimately contend that we are not at an impasse. Because that absolutist position has not changed at all from the outset of this litigation, your clients have

provided us with no room for further negotiations.  It is therefore obviously time for us to report to the district court that no productive negotiation is possible, and that the court therefore must carry out its responsibility to decide the legal issues (both jurisdictional and substantive) about which we completely disagree.

*Douglas N. Letter*
*General Counsel*
*Office of General Counsel*
*U.S. House of Representatives*
*219 Cannon House Office Building*
*Washington, DC  20515*
*Douglas.Letter@mail.house.gov*
*(202) 225-9700*

---

**From:** Myers, Steven A. (CIV) <Steven.A.Myers@usdoj.gov>
**Sent:** Friday, February 14, 2020 10:10 AM
**To:** Letter, Douglas <Douglas.Letter@mail.house.gov>; Handley, Cristen (CIV) <Cristen.Handley@usdoj.gov>; Orloff, Serena M (CIV) <serena.m.schulz-orloff@usdoj.gov>; Gilligan, Jim (CIV) <James.Gilligan@usdoj.gov>; Shapiro, Elizabeth (CIV) <Elizabeth.Shapiro@usdoj.gov>; Morrell, David M. (CIV) <David.M.Morrell@usdoj.gov>
**Cc:** Barbero, Megan <Megan.Barbero@mail.house.gov>; Morse, Jodie <Jodie.Morse@mail.house.gov>; Havemann, Will <Will.Havemann@mail.house.gov>; Grogg, Adam <Adam.Grogg@mail.house.gov>; Tatelman, Todd <Todd.Tatelman@mail.house.gov>
**Subject:** RE: Tax returns case

Dear Doug,

This is in response to your email of January 25.  As we have explained previously, and as again set out in our opposition to the Committee's motion to lift the stay, *see* ECF No. 81, Treasury remains glad to discuss ways of accommodating the Committee's asserted legislative needs in a manner consistent with its legal obligations.

Given the Committee's position that it will accept nothing other than the President's tax returns and return information that it has demanded, it may be that further discussions between the parties would not be productive at this time.  To be clear, however, Defendants' position is that the Committee's refusal to seriously explore alternative ways by which its asserted legislative interest could be satisfied means either that the Committee only seeks the President's tax returns for their own sake, or that the Committee has failed to satisfy its obligation to work with the Executive Branch to find a mutually acceptable accommodation, or both.  Either way, the Committee cannot avoid its constitutional obligation to exhaust the negotiation and accommodation process merely by observing that the Executive Branch has not provided the precise materials the Committee initially demanded.  *See, e.g.*, *AT&T II*, 567 F.2d at 131 ("We are not required to say whether the Subcommittee is entitled to all that it seeks when time and experience may confirm that it does not need, in any genuine and substantial sense, more than is provided by our approach.").

We remain happy to discuss ways in which the Committee's asserted legislative needs could be satisfied consistent with Treasury's legal obligations.  Alternatively, if the Committee remains of the view that it will accept nothing other than the President's tax returns, then the Court may simply need to decide, at an appropriate time, what that means for this suit.

Thanks,
Steve

**Steven A. Myers**
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division

3

1100 L St. NW, Washington DC 20005
Tel: (202) 305-8648  Fax: (202) 616-8470

---

**From:** Letter, Douglas <Douglas.Letter@mail.house.gov>
**Sent:** Saturday, January 25, 2020 4:38 PM
**To:** Handley, Cristen (CIV) <chandley@CIV.USDOJ.GOV>; Orloff, Serena M (CIV) <sorloff@CIV.USDOJ.GOV>; Myers, Steven A. (CIV) <stmyers@CIV.USDOJ.GOV>; Gilligan, Jim (CIV) <JGilliga@CIV.USDOJ.GOV>; Burnham, James M. (CIV) <jburnham@CIV.USDOJ.GOV>; Shapiro, Elizabeth (CIV) <EShapiro@CIV.USDOJ.GOV>
**Cc:** Barbero, Megan <Megan.Barbero@mail.house.gov>; Morse, Jodie <Jodie.Morse@mail.house.gov>; Havemann, Will <Will.Havemann@mail.house.gov>; Grogg, Adam <Adam.Grogg@mail.house.gov>; Tatelman, Todd <Todd.Tatelman@mail.house.gov>
**Subject:** Tax returns case


Steve:

    Thank you for your email, which restates your clients' belief that they are prohibited by law from providing any of the information requested by the Committee pursuant to Section 6103(f).  Given your clients' absolutist position regarding their asserted lack of authority to disclose the material sought by the Committee, no accommodation is possible here and the parties therefore remain at an impasse.  As the Committee has explained from the date of its initial Section 6103 request, it has a specific need for the President's returns and related administrative files pursuant to its legitimate legislative and oversight interests.

    The Committee has made clear that it is seeking the President's returns and related administrative files not simply to assess the mandatory audit program in general, but to understand and evaluate the thoroughness of the audit of the President's returns, whether and how the publicly available materials on the mandatory audit program (which Treasury staff admitted at the briefing were outdated) diverge from current practices, whether the auditing of this President's returns has been subject to improper political influence, and whether codification of the audit program or other revisions to the tax code are needed.  *See, e.g.*, Exs. A, E, K, P, QQ; Compl. ¶¶ 58-61, 79.

    Neither the briefing that you referenced nor the publicly-available IRM provisions that your clients provided at the briefing are a substitute for the actual returns and related administrative files.  As Chairman Neal wrote in his June 28, 2019 letter, generalized information is "not a replacement for the actual return and return information that the Committee requested under section 6103(f) and now has subpoenaed" because "[w]ithout studying the returns and the documentation of the agent's decisions that were requested, the Committee cannot evaluate the accuracy of the President's claims about the audit system, assess the fairness and effectiveness of the audit program and the scope of the audits being performed on the President's returns, or understand how particular provisions of the Code are being enforced as part of the IRS's review."  Ex. P.

    Furthermore, the briefing "only reinforced the Committee's need to review the actual return information as part of our oversight duties."  *Id.*  That is because the information communicated at the briefing "rais[ed] serious concerns about the absence of safeguards protecting both the individual auditor as well as the entire audit process from improper influence" and "also raised concerns uniquely and directly relevant to the thoroughness of the Presidential audit process as applied to this President."  *Id.*

    Also, the briefing highlighted the fact that, without 6103 authorization, the Committee cannot obtain any useful information about the actual operations of the mandatory audit program—past or present.  Because Treasury officials at the briefing refused to recognize the Chairman's Section 6103 authority, they "declined to answer *any* questions asked by Committee staff related to the actual audits of multiple prior Presidents across both political parties, including basic questions about whether Presidential returns have ever been filed electronically, how long Presidential audits generally take, whether there ever have been any assessments made to Presidential returns, or whether any President-taxpayers have ever gone to IRS Appeals from a mandatory audit."  *Id.*  The notion that the Committee could satisfy its legislative

and oversight interests with records that, in your words, "would not contain or reveal Section 6103 information" is wrong.

Nothing has changed from the Committee's standpoint.  The Committee's concerns over the administration of the audit program have only been exacerbated by the long delay and refusal to turn over the requested materials despite Section 6103's clear and unambiguous mandate and the legally binding subpoenas.  In addition, your email confirms the Administration's position that it will make **none** of the requested Section 6103 materials available to the Committee.  This defiance of the statutory mandate and further departure from nearly a century of practice raises even deeper concerns about the Administration's approach to the Committee's investigation.

Given that, on the one hand, the Committee needs, and is by statute entitled to, President Trump's tax returns and related administrative files (which are obviously covered by Section 6103), and that, on the other hand, DOJ asserts that it is barred by law from providing any information to the Committee covered by Section 6103, it is clear that no accommodation is possible.


*Douglas N. Letter*
*General Counsel*
*Office of General Counsel*
*U.S. House of Representatives*
*219 Cannon House Office Building*
*Washington, DC  20515*
*Douglas.Letter@mail.house.gov*
*(202) 225-9700*