```
               UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA


COMMITTEE ON WAYS AND MEANS, :
UNITED STATES HOUSE OF       :
REPRESENTATIVES,             :        Docket No. CV 19-1974
                             :
            Plaintiff,       :        Washington, D.C.
        v.                   :      Friday, January 22, 2021
                             :            3:00 p.m.
UNITED STATES DEPARTMENT     :
OF THE TREASURY, ET AL       :
                             :
            Defendants.      :
----------------------------x
```


```
          TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
         BEFORE THE HONORABLE TREVOR N. MCFADDEN
               UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:   DOUGLAS N. LETTER, Esquire
                     MEGAN BARBERO, Esquire
                     United States House of Representatives
                     Office of General Counsel
                     219 Canon House Office Building
                     Washington, DC  20515

For the Defendant:   JAMES J. GILLIGAN, Esquire
                     ELIZABETH SHAPIRO, Esquire
                     CRISTEN C. HANDLEY, Esquire
                     STEVEN A. MYERS, Esquire
                     SERENA M. SCHULZ ORLOFF, Esquire
                     United States Department of Justice
                     Federal Programs Branch
                     1100 L Street, NW
                     Washington, DC  20005

For the Intervenor   PATRICK N. STRAWBRIDGE, Esquire
Defendants:          Consovoy McCarthy PLLC
                     Ten Post Office Square
                     8th Floor South PMB #706
                     Boston, MA  02109
```

```
Appearances continued:

For the Intervenor    CAMERON T. NORRIS, Esquire
Defendants:           Consovoy McCarthy PLLC
                      1600 Wilson Blvd.
                      Suite 700
                      Arlington, VA  22209

Court Reporter:       CRYSTAL M. PILGRIM, FCRR, RMR
                      United States District Court
                      District of Columbia
                      333 Constitution Avenue, NW
                      Washington, DC  20001
```

```
1                        P-R-O-C-E-E-D-I-N-G-S

2           THE DEPUTY CLERK:  This is civil case 19-1974.

3    Committee on Ways and Means United States House Representatives

4    versus United States Department of the Treasury, et al.

5       Counsel please introduce yourselves for the record

6    starting with the Plaintiff.

7           MR. LETTER: This is Douglas Letter, General Counsel

8    of the U.S. House of Representatives.  Good afternoon, Your

9    Honor, with me today is Deputy General Counsel Megan Barbero.

10          THE COURT:  Good afternoon folks.

11       Mr. Letter good to hear you again.

12          MR. LETTER: Thank you very much, Your Honor, same.

13          THE COURT:  Anyone from the government on the line?

14          MR. GILLIGAN:  Yes, Your Honor, for the Defendants

15   this is James Gilligan with the Federal Programs Branch of the

16   Civil Division.  With me on the line is Elizabeth Shapiro also

17   Federal Programs and listening in on the public line are

18   colleagues Serena Orloff, Steven Myers, and Cristen Handley.

19          THE COURT:  Good afternoon folks.

20          MR. STRAWBRIDGE:  Good afternoon, Your Honor, Patrick

21   Strawbridge for the Intervenor Defendants.  My colleague

22   Cameron Norris is also listening in on the public line.

23          THE COURT:  Good afternoon folks.

24       We're having a status conference at the Intervenor's

25   request.  The Intervenor has laid out a few concerns that boil
```

1   down to whether the tax returns may now be turned over quickly

2   to the Plaintiff without Intervenor having an opportunity to

3   object.

4        Mr. Letter, I don't know if you or Ms. Barbero are going

5   to speak, but I'd be interested in hearing from you all first

6   if the prior subpoenas are still live.  My impression is that

7   they're not.  And if that's the case, is this case still live

8   and where do you see this going from here?

9        MR. LETTER:  Judge, this is -- does the court

10  reporter need us to identify ourselves every time we speak or

11  is that not necessary?

12       THE COURT:  I think we'll be able to make it clear

13  from my questions.  Thank you, sir.

14       MR. LETTER:  Sure, thank you, thank you.  I did one

15  of these the other day and the Judge wanted us to say who we

16  were each time we spoke, anyway this is Mr. Letter.  I'll be

17  doing the talking, although Ms. Barbero, as always, will be

18  here to correct anything that I say wrong which happens often.

19       Your Honor, the case is still live because one, the Ways

20  and Means Committee still does want to obtain the tax return

21  material that is requested.  It's live because we have a

22  request that was made under section 6103 and in our view that

23  request is still there before the Treasury Department.  It does

24  not expire.

25       We have a history of the Committee making 6103 requests

1    and they carry over from one Congress to the next.  So that's

2    the tradition of practice that the Committees who are covered

3    by 6103 and Treasury has followed in the past.

4         The chairman of the Committee has been authorized by the

5    Rules package that is passed by the 117th Congress.  The

6    beginning of the Congress he's been authorized to reissue the

7    subpoena if that is necessary.

8         Just as a reminder, Your Honor, we have a 6103 request and

9    then subpoenas serve as belts and suspenders approach.  So the

10   chairman has not yet reissued the subpoena, but he is

11   authorized to do so and whether he does so or not will heavily

12   depend on -- it may well be there's no need for the subpoena

13   because the Treasury Department will follow what we believe is

14   the clear legal obligation for the Treasury Department to

15   respond to the request under Section 6103.

16            THE COURT:  Okay, that's very helpful.

17            MR. LETTER:  Yes.

18            THE COURT:  So I would be interested in your response

19   to the Intervenor's request.  I think their request really

20   would not run against your client directly, but be that as it

21   may, I would be interested in your view on this idea of kind of

22   pausing things to ensure that the case doesn't become ripe and

23   moot all at once.  And then also their desire to potentially

24   amend their complaint or to amend their answer to file counter

25   claims.

1          MR. LETTER:  Right, Your Honor.  And thank you for

2  asking for our views.  As you said, they wouldn't probably run

3  against us.

4          So here's our view.  Taking them in order as I understood

5  Mr. Strawbridge's questions.  Would there be consent to former

6  President Trump asserting claims against the Committee and the

7  Treasury Department?

8          We don't consent to asserting claims to the Committee

9  because we don't think that there's any authority to do that in

10  light of the Speech or Debate Clause.  We don't have a position

11  on whether Mr. Trump should be able to realign in this case so

12  that he can now go against the Treasury Department.

13          As to whether or not the parties agree not to disclose

14  President Trump's returns until after this Court and the D.C.

15  Circuit rule.  Again, we say no because we don't have the

16  returns.  So obviously there should be no order against us, so

17  any order wouldn't be directed at us.

18          If for some reason there were a request that it be

19  directed against us, it too would be improper for two reasons.

20  One is the D.C. Circuit's decision under Hertz v. Barak that

21  says courts have no authority to issue this kind of order

22  involving what Congress does or doesn't do with documents.  So

23  if we have the material, there would be no authority to issue

24  an order against the Committee anyway in addition to the Speech

25  or Debate Clause.

1        Third, the question is should the Court issue an interim

2   order?  And again under some provisions I just said, no such

3   order could be issued against the Committee.  And again so we

4   would not be asked would we agree not to disclose until after

5   this Court -- oh, I'm sorry, the interim.  I was just talking

6   about the last one.

7        The interim would be should we be pursuant to the inherent

8   powers, et cetera.  We think no one, no such order can be

9   issued against the Committee as I just said a moment ago.

10       Two, I do feel it's necessary to point out this is an

11  emergency styled as an emergency, but it's of their own making.

12  Obviously President Trump knew way before January 19th that he

13  was no longer going to be the President on the afternoon of

14  January 20th.  So this should have been filed a long time ago

15  at a minimum after January 6th when Congress confirmed the

16  electoral college vote.  So this request is made way too late.

17       But in addition, we just don't think that that kind of

18  order should be issued because we've been -- Congress has been

19  House has been stymied for these long periods by court orders

20  of this type and as a result numerous investigations have been

21  obstructed and our feeling is enough is enough.  The statute

22  here is clear.  Shall means shall, and therefore the Treasury

23  Department should turn over the material to the House under the

24  statute and that really should be the end of it is our view.

25  And we, therefore, hope that the Justice Department on behalf

1  of the Treasury Department would oppose any such order because

2  we just, we just can't have these kinds of delays that drag on

3  for month after month after month.

4          THE COURT: So a couple of follow up questions on

5  that Mr. Letter.

6      First, as we both know I think the proposed remedy would

7  not run against the House here.  It would just run against the

8  Executive Branch, but even if it did run against the House, I

9  read Judge Nichols' opinion in Trump v. Committee on Ways and

10 Means.  I got to tell you I thought it was pretty persuasive;

11 obviously, it's not binding.  But do you see, can we

12 distinguish that case or do you just disagree with it?

13     My final question for you kind of on a slightly different

14 topic.  I know at various points you've objected and then

15 consented to this case being stayed largely based on what's

16 happening in the circuit as far as I can tell.  Whether the

17 circuit believes that you have, could proceed with this type of

18 case.

19     At this point, are you desirous of us now moving forward

20 or do you think we should keep this case stayed while similar

21 cases are percolating through the upper courts?

22          MR. LETTER: Yes, Your Honor, you packed a fair

23 amount in there.  Let me try to take each one and if I forget

24 any, please remind me.

25     So with regard to Judge Nichols, obviously Judge Nichols

1   is a splendid judge.  In this particular situation I think the

2   phrase is (indiscernible) so we think his ruling in the New

3   York State Tax case is wrong.  But more important, I think for

4   your purposes, it is clearly distinguishable because there

5   Judge Nichols ruled that he granted the motion dismissed by the

6   State of New York.  So New York was out.  He made clear it was

7   out of his jurisdiction.  And therefore he chose, we think,

8   incorrectly but he chose to issue an order against the House.

9        Here we don't think you should issue an order against

10  Treasury, but you have jurisdiction over Treasury as far as

11  we're aware.  And, therefore, clearly there still should be no

12  order whatsoever against the House since the situation that

13  Judge Nichols was facing just is not present here.

14       As far as what we've done in the past other cases,

15  remember none of those other cases actually have this separate

16  situation.  We have a statute that says that, as I said, shall

17  means shall.  The materials should be turned over.  Obviously,

18  the Treasury Department was taking a different view before.

19       We hope that under the current administration, the

20  Treasury Department will recognize what the law says and the

21  Treasury Department will simply disclose the material as

22  required by law and that there should not be any need for

23  delay.  Frankly, it's very difficult to figure out that it

24  would be wrong for the Treasury Department to follow the order

25  of the statute.  I think I said before I'll remind Your Honor,

1   to our knowledge no such request under this statute has ever

2   been denied by Treasury before when even the Senate, the House

3   or the Joint Committee on Taxation made the requests.

4           THE COURT:  And then on the status of the case Mr.

5   Letter, should we lift the stay at this point?

6           MR. LETTER:  In shortness that would be fine, because

7   obviously at this point there's really nothing for the House

8   directly to do.  We would hope that the Treasury Department

9   will recognize what its statutory obligations are and they will

10  provide the material.

11      If the Treasury Department indicates that it is not going

12  to do that, then certainly the case could move forward and we

13  can go from there.  In the interim, what you had is the D.C.

14  Circuit has made clear that there is Article III jurisdiction

15  to enforce subpoenas by the House and that a panel, the Court

16  held will be of no cause of action to enforce a subpoena.  The

17  D.C. Circuit has vacated that ruling and scheduled a hearing en

18  banc argument in February.

19      But again, those cases do not involve, those search and

20  subpoena cases do not involve a clear statutory direction that

21  material should be turned over.

22          THE COURT:  Okay.  Mr. Gilligan, I know it might be

23  hard to imagine things could be changing a fair amount in the

24  department, but what can you tell me about the government's

25  position at this point?

1      MR. GILLIGAN:  Not much more, Your Honor, then what's

2  said on our behalf in President Trump's motion.

3      We have had a chance to confer briefly with our new

4  leadership at DOJ.  We have not been able to touch base on this

5  matter with the new leadership at Treasury.  So in terms of the

6  position of the Treasury Department or the Executive Branch on

7  releasing as in Trump's tax return information to the

8  Committee.  We still have no idea whether any decision has been

9  reached by the new administration on that issue.  We don't know

10  whether any sort of position is imminent.  We don't even know

11  whether it's under active consideration by any of the new

12  leadership who are, to speak quite figuratively, in the

13  building at this point.

14      The new administration is -- this has only been the second

15  full day in office.  Most of our leadership at DOJ and the

16  leadership of Treasury are not yet in place and there are a lot

17  of complaints.  So that is why we proposed that to maintain the

18  status quo for a short period while the new administration gets

19  in place, sort to speak, that we for a couple weeks time, two

20  weeks or so, put an order in place that would require us to

21  provide 72 hours notice to President's counsel if any decision

22  is reached to release President Trump's tax return information

23  to the Committee and that would then permit President's counsel

24  to take whatever action it would deem appropriate at that time.

25      The two week period will hopefully give us more of an

1   opportunity to speak with our principal and to give them an

2   opportunity to chew on some of these issues that they haven't

3   had so far.  I can't guarantee that within two weeks that there

4   will be a determination either to release or not to release tax

5   return information.

6       It may be that we'll need to come back to the Court and

7   ask for some additional time to consider the matter.  There are

8   a lot of legal and institutional interests that are implicated

9   by both the personal questions and the merits of these cases as

10  Your Honor knows from the briefing.  So it may not be possible

11  within two weeks to resolve it all, but at least if we keep

12  things at a standstill for the moment with the notice

13  requirement to address the concerns of President's counsel,

14  President Trump's counsel, I should say, then we think that's

15  the way to balance all of the respective interests at this

16  time.

17      With respect to lifting the stay, we don't think that

18  would be appropriate, I think it's fair to say.  The threshold

19  issues in this case are still to be resolved by the D.C.

20  Circuit en banc in the McGahn case, so moving forward to

21  resolve the issues here would not make sense while they're

22  still under consideration by the en banc Court of Appeals and

23  unless and until they're in the position; on the other hand, by

24  the new administration to release tax return information,

25  there's no reason to go forward for the purpose of, we submit,

1  amending the Intervenor Defendant's answer.  It's premature to

2  talk about cross claims, it seems to us, when we don't know

3  whether the Committee is going to issue a new subpoena or not.

4      We don't know what the Treasury Department's position

5  would be in the face of a new subpoena or even the 6103

6  request, parenthetically we're not so sure that that request

7  remains any more alive at this time than the subpoena itself;

8  6103 requests like the subpoena is an instrument of the

9  committees or being inspired with the adjournment of the 116th

10  Congress.  That's not an issue that we've looked very closely

11  at, but it's an issue that we have questions about.

12      So given all of the, all of the unanswered questions at

13  this moment, it doesn't seem to us to make sense to lift the

14  stay or for the Intervenor Defendants to amend their answer to

15  stop raising highly speculative cross claims and then putting

16  the defendant's name in the burden of either responding to or

17  perhaps moving to dismiss those cross claims when it's still to

18  be determined what the tax and the position of the parties in

19  alignment what those claims would be.

20          THE COURT:  Yes, so Mr. Gilligan a lot of that makes

21  sense to me.  I certainly understand the need for a couple of

22  weeks to figure out where things are and I would be inclined to

23  do that.

24      I don't know that we need to figure this out today, but

25  I'll just tell you the idea of continuing the stay and not

1    allowing counter claims, in my mind, only makes sense as long

2    as it's clear that you're not turning over the documents.

3        If two weeks from now your client is saying that they feel

4    free to turn over the documents, it would be odd to be in a

5    situation where we're saying we're going to stay this case and

6    not allowing for counter claims.  I don't know why we would do

7    that.  And also obviously depending on your client's change of

8    heart, I think that a lot of the issues that the D.C. Circuit

9    is considering may kind of fall out.

10       This may end up being a much more straightforward case if

11   it's a former President who's trying to stop the transfer of

12   documents between a couple, the political branches of the

13   government rather than one branch of the government suing

14   another.  That's just, that's my instinct.  Tell me if I'm

15   missing something here.

16            MR. GILLIGAN:  I agree with Your Honor that it's

17   completely hypothetically speaking because I have no

18   information one way or the other.  But if the decision were

19   made to release the President's tax return information to the

20   committee, just off the top of my head, it seems that that

21   would likely moot out a lot of the so called threshold issues

22   that are presented in this case.  Moot out all of these it

23   seems to me that the Committee claims against defendants and it

24   might be appropriate to pass.  If that were to occur, to think

25   about providing President Trump's counsel an opportunity to

1  raise some cross claims and we can litigate the merits and any

2  jurisdictional issues associated with those claims.  I think

3  that's right.  At least, you know, again I could see that path

4  that sounds right.

5       If, however, the decision is made for whatever legal or

6  institutional interests that the Treasury Department is of the

7  feeling it cannot release the tax returns to the committee,

8  then a lot of those same threshold issues remain to be resolved

9  and it would make sense to keep the case stayed until the D.C.

10 Circuit addresses the issues that are before it now.

11      THE COURT:  Mr. Strawbridge, I intend to issue the

12 temporary order that the Treasury has agreed to.  So you don't

13 need to convince me on that.  I think the main thing I'd like

14 to hear from you about is your view on the stay and what you're

15 planning to do with the amended counterclaim.  I kind of agree

16 with Mr. Letter that this doesn't seem like such an emergency

17 and that if your client wants to move in a different direction

18 then the time is now.

19      MR. STRAWBRIDGE:  Thank you, Your Honor.  I guess

20 there's a bit of a chicken in the egg scenario there and we're

21 happy moving in whatever direction the Court wants.  But until

22 DOJ changes it's position, I don't know that it makes sense for

23 us to draft and file cross claims.  They would be somewhat

24 speculative at least.  We would obviously have more information

25 once DOJ informed us, if they ever inform us, that they are

1    changing their position.  So I'm somewhat reluctant to, I think

2    that Mr. Gilligan noted, to create work or an obligation to

3    respond or even make allegations that are based on concerns

4    about what might happen.  Although that has been done before in

5    the case of third party custodians.  So we could do it.

6        But I think what makes more sense, just listening to

7    everybody's view be on the call, we can be ready.  We can

8    obviously take this period of time to be prepared to file an

9    amended cross claim if it turns out that or an amended answer

10   with cross claims or counter claims if it turns out necessary

11   so we won't need a lot of time once we know what DOJ's position

12   is.  But I prefer not have to file that because they may end up

13   not being, you know, necessary or relevant and it might just,

14   it might increase difficulties rather than decrease them.

15       I will say just briefly in response to Mr. Letter's

16   assertion that we have somehow delayed.  I think the call

17   demonstrates that we haven't.  DOJ for now has not changed its

18   position and until it does, like I said I don't want to create

19   new paper work.  Moreover, this is the first call we've heard

20   that request even though everyone seems to concede that

21   subpoenas do not survive the House which is not a continuing

22   body, somehow the request does.  It sounds like there's not

23   agreement with that among the other two parties.  So I don't

24   think that we put ourself in a position where we have somehow

25   unreasonably delayed, especially since at least at this moment

1  the parties' position have not changed. So we're happy to do

2  whatever Your Honor wants.

3      I think an order for now basically granting what DOJ

4  agreed to is sufficient.  To Your Honor's point we don't need

5  to actually bind the House.  So the concerns that Mr. Letter

6  had that again were insufficient to carry the (indiscernible)

7  case aren't present here.  That'll be fine for us and we can

8  wait to see.

9      Our overriding concern here is just simply that we have a

10  chance to raise our merits arguments.  I understand Mr. Letter

11  may have disagreement with those merits arguments.  All we want

12  is the opportunity to make sure that we get a chance to

13  litigate that.

14      I think DOJ's agreed upon relief is sufficient for now and

15  we can begin to move quickly if and when they were to ever

16  change their position.

17          THE COURT:  So here's what I want to do.  I'm going

18  to enter the order requiring 72 hours notice to the President's

19  counsel before any relief of the President's tax return

20  information is made.  This order will run against the Treasury

21  and it is going to last until Friday, February, 5th.

22      I'll ask the parties to file a joint status report no

23  later than Wednesday, February, 3rd.  And this is what I'd like

24  you all to consider before that joint status report.  I want to

25  make sure that the Treasury has an opportunity to consult

1  internally and figure out its position on the appropriate way

2  forward.  And if it needs more time to do that and wants to

3  extend that order longer, I would be inclined to grant that

4  request.

5      But it would be helpful to get us all on the same page

6  about a process forward and I think I understand the House's

7  desire to get the information and to reach a resolution here

8  and not be stayed indefinitely, and that's my desire to move

9  this case forward as well.  I don't think we can do that until

10  we know what the Treasury intends to do; what position it

11  intends to take on some of the issues.  And I think that will

12  very much inform whether or not we should continue waiting for

13  the D.C. Circuit.

14      I think we all agree that if the Treasury changes its

15  perspective on the appropriateness turning over the documents,

16  there may well no longer be a reason for waiting for the

17  Circuit.  Although there's possibly something I'm missing

18  there.

19      I am also very sympathetic toward the Intervenor's desire

20  to have their day in court before these documents make their

21  way from one branch of the government to the other.  And so I'd

22  like us to try to figure out a way to make that happen.  I'm

23  not making any ruling right now, but as I said, I thought Judge

24  Nichols' opinion in Trump v. Committee on Ways and Means made a

25  lot of sense.  I think the argument would be a lot stronger

1   here and that I would seize any ongoing order running against

2   the Treasury not the House.  So I don't think there would be

3   any Speech and Debate Clause concern.

4       I envision quite possibly entering an order along those

5   lines if there is a change in view from the Treasury, but most

6   of all I would just like us to try to agree together on a path

7   forward that we can try to get some resolution here.

8       Mr. Letter.

9           MR. LETTER:  Yes, thank you, Your Honor.  I just

10  wanted to say one thing for the record.  Something you said

11  earlier reminded me that a very strong reason why Judge

12  Nichols' opinion is distinguishable is we're not dealing with

13  the President anymore.  We're dealing with a former President.

14  Any of the arguments on separation of powers, etc. etc. are

15  either non-existent or extremely reduced.  So I understand Your

16  Honor's announced your ruling.  I just wanted to get that on

17  the record.

18          THE COURT:  Thank you.  And to be clear, I'm not

19  making a ruling on Judge Nichols' opinion or ordering it.  I'm

20  just indicating how I think this would probably go.  You raise

21  a fair point Mr. Letter.  Of course I think there's still the

22  general All Writs Act discussion and idea of avoiding a

23  situation where a live matter and potential injury to an

24  individual is mooted out before it can be decided by the Court.

25  I think that would still hold, but you raise a fair point.

1    Mr. Gilligan, anything further we should discuss today?

2         MR. GILLIGAN:  Barring any suggestions from Ms.

3 Shapiro, no, Your Honor, I don't believe there's anything more

4 from the government?

5         MS. SHAPIRO:  Nothing from me, Your Honor.

6         THE COURT:  Okay, and Mr. Strawbridge?

7         MR. STRAWBRIDGE:  No, thank you, Your Honor.

8         THE COURT:  All right, thanks folks.  I look forward

9 to hearing from you in about two weeks.

10    Have a good day.

11         MR. LETTER:  Thank you, Your Honor.

12         MR. GILLIGAN:  Thank you, Your Honor.

13         MR. STRAWBRIDGE:  Thank you, good afternoon.

14        (Telephone conference adjourned at 3:34 p.m.)

15                 -oOo-

1                            CERTIFICATE

2        I, Crystal M. Pilgrim, Official Court Reporter, certify

3   that the foregoing is a true and accurate transcript, to the

4   best of my ability, of the proceedings remotely reported in the

5   above-entitled matter.

6        **Please Note:** This hearing occurred during the COVID-19

7   pandemic and is, therefore, subject to the technological

8   limitations of court reporting remotely.

9

10  _____        _____

11  /s/ Crystal M. Pilgrim, FCRR, RMR        Date: February 2, 2021

12

13

14

15

16

17

18

19

20

21

22

23

24

25