# EXHIBIT D

RICHARD E. NEAL,
MASSACHUSETTS,
CHAIRMAN

JOHN LEWIS, GEORGIA
LLOYD DOGGETT, TEXAS
MIKE THOMPSON, CALIFORNIA
JOHN B. LARSON, CONNECTICUT
EARL BLUMENAUER, OREGON
RON KIND, WISCONSIN
BILL PASCRELL JR., NEW JERSEY
DANNY K. DAVIS, ILLINOIS
LINDA T. SÁNCHEZ, CALIFORNIA
BRIAN HIGGINS, NEW YORK
TERRI A. SEWELL, ALABAMA
SUZAN DELBENE, WASHINGTON
JUDY CHU, CALIFORNIA
GWEN MOORE, WISCONSIN
DAN KILDEE, MICHIGAN
BRENDAN BOYLE, PENNSYLVANIA
DON BEYER, VIRGINIA
DWIGHT EVANS, PENNSYLVANIA
BRAD SCHNEIDER, ILLINOIS
TOM SUOZZI, NEW YORK
JIMMY PANETTA, CALIFORNIA
STEPHANIE MURPHY, FLORIDA
JIMMY GOMEZ, CALIFORNIA
STEVEN HORSFORD, NEVADA

BRANDON CASEY,
MAJORITY STAFF DIRECTOR

# Congress of the United States
## U.S. House of Representatives
COMMITTEE ON WAYS AND MEANS
1102 LONGWORTH HOUSE OFFICE BUILDING
(202) 225-3625

Washington, DC 20515-0348

http://waysandmeans.house.gov

KEVIN BRADY,
TEXAS,
RANKING MEMBER

DEVIN NUNES, CALIFORNIA
VERN BUCHANAN, FLORIDA
ADRIAN SMITH, NEBRASKA
KENNY MARCHANT, TEXAS
TOM REED, NEW YORK
MIKE KELLY, PENNSYLVANIA
GEORGE HOLDING, NORTH CAROLINA
JASON SMITH, MISSOURI
TOM RICE, SOUTH CAROLINA
DAVID SCHWEIKERT, ARIZONA
JACKIE WALORSKI, INDIANA
DARIN LAHOOD, ILLINOIS
BRAD R. WENSTRUP, OHIO
JODEY ARRINGTON, TEXAS
DREW FERGUSON, GEORGIA
RON ESTES, KANSAS

GARY ANDRES,
MINORITY STAFF DIRECTOR

May 10, 2019

The Honorable Charles P. Rettig
Commissioner
Internal Revenue Service
1111 Constitution Avenue, NW
Washington, D.C. 20224

The Honorable Steven T. Mnuchin
Secretary
Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

Dear Commissioner Rettig and Secretary Mnuchin,

To date, the Internal Revenue Service ("IRS") has failed to provide the return and return information requested by my April 3, 2019 letter, despite an unambiguous legal obligation to do so. Such information originally was due by April 10, 2019. In a letter dated April 23, 2019, I was notified that the Department of the Treasury ("Treasury") was consulting with the Department of Justice ("Justice") in connection with this request. The letter advised that Treasury, and not the IRS, expected to provide the Committee on Ways and Means ("Committee") a final decision by May 6, 2019, after it had received Justice's legal guidance. On May 6, relying on advice from Justice, Treasury notified me by letter of its determination that it is not authorized to disclose the requested tax returns and return information because the Committee's request "lacks a legitimate legislative purpose."

As stated in my prior correspondence, the IRS is under a mandatory obligation to provide the information requested under section 6103(f)(1) of the Internal Revenue Code, which states that "[u]pon written request from the chairman of the Committee on Ways and Means of the House of Representatives, the chairman of the Committee on Finance of the Senate, or the chairman of the Joint Committee on Taxation, the Secretary *shall* furnish such committee with any return or return information specified in such request" (emphasis added). Section 6103 has long been regarded as clear and unambiguous. Compliance is not discretionary under any circumstance, even if the taxpayer is under audit. The Committee never has been denied a request made under section 6103(f). Although the Committee is not required to provide a reason for requests under section 6103(f), I am responding to your letters out of respect for the IRS, Treasury, and their responsibility to fairly and impartially administer the Federal tax laws.

*The Committee Has a Legitimate Legislative Purpose*

The April 23 letter alleges that the Committee's asserted purpose is a pretext, but this claim is false. As stated in my April 3 letter, the Committee requested the return and return information

because it is considering legislative proposals and conducting oversight related to our Federal tax laws, including, but not limited to, the extent to which the IRS audits and enforces the Federal tax laws against a President. Earlier this Congress, compliance and disclosure related to the Federal tax returns of the President and Vice President were included in the scope of a Committee hearing. As you know, the mandatory examination of the President and Vice President is set forth in the Internal Revenue Manual ("IRM") but is not codified. Legislation may therefore be necessary. It cannot be denied that legislation related to IRS examination and enforcement is within the Committee's jurisdiction, and the Committee has a responsibility to inform itself in the course of legislating.

The President is the most powerful public official in this country. No other single American has the power to sign bills into law and direct an entire branch of government. The Committee believes this fact calls for concordant scrutiny into the President's ability to influence, even indirectly, the administration of the Federal tax laws. The purpose underlying inclusion of the mandatory audit in the IRM was so that no IRS employee would have to make the decision to audit a sitting President.[1] However, there is more to an audit than just the decision to initiate it. Among other considerations, the Committee wants to be sure that IRS employees who determine the scope of the President's audit, or who determine whether to continue previously-initiated audits, are protected in the course of their work.

As the Supreme Court has stated: "A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change; and where the legislative body does not itself possess the requisite information—which not infrequently is true—recourse must be had to others who do possess it."[2] With respect to the Committee's consideration of legislative proposals concerning mandatory examination, the President's tax returns and return information are necessary to guide that legislative action.

Treasury takes issue with the fact that the Committee seeks tax information related to only the current President. This concern is misplaced and ignores the fact that the tax issues raised by the current President are unique. The President has stated repeatedly that his returns are under routine audit,[3] and, in 2016, his tax attorneys reported that his returns have been under continuous examination since 2002 and involve transactions and activities reported on returns in 2008 and earlier.[4] The continuous audit and activities from 2008 and before, the use by the President of a grantor trust controlling hundreds of businesses, and the volume of his tax returns[5] make this President markedly different from previous Presidents or Vice Presidents examined under the IRS's mandatory audit procedures.

---

[1] JCX-3-19, *Background Regarding the Confidentiality and Disclosure of Federal Tax Returns* (Feb. 4, 2019), at 21 (quoting IRS spokesperson).
[2] *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927).
[3] *See, e.g.*, Donald J. Trump (@realDonaldTrump), Twitter (May 11, 2016, 1:51 PM), https://twitter.com/realDonaldTrump/status/730500562022760448.
[4] Letter from Sheri A. Dillon and William F. Nelson to Mr. Donald J. Trump, *Re: Status of U.S. federal income tax returns* (Mar. 7, 2016).
[5] *See, e.g.*, Donald J. Trump (@realDonaldTrump), Twitter (Oct. 15, 2015, 10:13 AM), https://twitter.com/realDonaldTrump/status/654706635663773696.

*Case Law Supports the Committee*

The April 23 letter relies heavily on a single quotation from *Watkins v. United States* about exposure "for the sake of exposure."[6] In *Watkins*, the facts at hand and the nature of the investigation were wholly different from the Committee's current oversight efforts. The Committee's efforts to understand the IRS's mandatory audit of the President, the head of the Executive Branch, bear no similarity to the House Un-American Activities Committee's efforts to uncover members of the Communist Party. Moreover, the Court's objection in *Watkins* was that the witness was not informed adequately of the scope of the Committee's investigation, a defect that certainly cannot be claimed here. In this instance, the Committee clearly has defined the scope of its investigation, and your letters evidence that you are fully aware of and have spent much time pondering the Committee's legislative purpose.

Furthermore, selectively quoting from *Watkins* does not erase the remainder of the Court's opinion. Importantly, the Court lays out the IRS's obligation here: "It is unquestionably the duty of all citizens to cooperate with the Congress in its efforts to obtain the facts needed for intelligent legislative action. It is their unremitting obligation . . . to respect the dignity of the Congress and its committees."[7] *Watkins* also undermines Treasury's efforts to second-guess why the Committee requested certain tax returns instead of others: "The legislature is free to determine the kinds of data that should be collected."[8] Clearly, the Supreme Court agrees that Congress is in the best position to determine what information it requires to perform its own legislative work.

In closing, I appreciate Treasury's offer for a briefing. A briefing, however, is not a substitute for the requested tax returns and return information. In total, the IRS has had more than four weeks to comply with the Committee's straightforward request. Therefore, please see the enclosed subpoena. The return date is May 17, 2019. Thank you for your prompt attention to this matter.

Sincerely,

*[signature]*

The Honorable Richard E. Neal, *Chairman*
Committee on Ways and Means

Enclosure

---

[6] 354 U.S. 178, 200 (1957).
[7] *Id.* at 187.
[8] *Id.* at 215.