# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:19−cv−01974−TNM

COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES v. UNITED STATES DEPARTMENT OF THE TREASURY et al
Assigned to: Judge Trevor N. McFadden
Cause: 05:0706 Judicial Review of Agency Actions

Date Filed: 07/02/2019
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Plaintiff

**Plaintiff**

| | | |
|---|---|---|
| **COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES** | represented by | **Andres C. Salinas**<br>WILMER CUTLER HALE AND DORR LLP<br>1875 Pennsylvania Avenue NW<br>Washington, DC 20006<br>202−663−6289<br>Email: andres.salinas@wilmerhale.com<br>*ATTORNEY TO BE NOTICED* |
| | | **Brooks McKinly Hanner**<br>OFFICE OF GENERAL COUNSEL FOR U.S. HOUSE OF REPRESENTATIVES<br>219 Cannon House Office Building<br>Washington, DC 20515<br>(202) 225−9700<br>Email: brooks.hanner@mail.house.gov<br>*ATTORNEY TO BE NOTICED* |
| | | **David Mark Lehn**<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>1875 Pennsylvania Avenue NW<br>Washington, DC 20006<br>202−663−6910<br>Email: david.lehn@wilmerhale.com<br>*ATTORNEY TO BE NOTICED* |
| | | **Josephine T. Morse**<br>U.S. HOUSE OF REPRESENTATIVES<br>Office of General Counsel<br>219 Cannon House Office Building<br>Washington, DC 20515<br>(202) 225−9700<br>Email: jodie.morse@mail.house.gov<br>*TERMINATED: 02/04/2021* |
| | | **Katie Kelsh**<br>WILMER CUTLER PICKERING HALE |

AND DORR LLP
60 State Street
Boston, MA 02109
617−526−6009
Email: katie.kelsh@wilmerhale.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kelly P. Dunbar**
WILMER CUTLER PICKERING HALE
AND DORR
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 663−6262
Fax: (202) 663−6363
Email: kelly.dunbar@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**Megan Barbero**
U.S. HOUSE OF REPRESENTATIVES
Office of General Counsel
219 Canon House Office Building
Washington, DC 20515
(202) 225−9700
Email: megan.barbero@mail.house.gov
*TERMINATED: 07/09/2021*

**Sarah Edith Clouse**
U.S. HOUSE OF REPRESENTATIVES
Office of General Counsel
219 Cannon House Office Building
Washington, DC 20515
(202) 225−9700
Fax: (202) 226−1360
Email: sarah.clouse@mail.house.gov
*ATTORNEY TO BE NOTICED*

**Seth Paul Waxman**
WILMER CUTLER PICKERING HALE
& DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663−6000
Fax: (202) 663−6363
Email: seth.waxman@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**Stacie Marion Fahsel**
UNITED STATES HOUSE OF
REPRESENTATIVES
Office of General Counsel
5140 O'Neill House Office Building

Washington, DC 20515
202−590−0585
Email: stacie.fahsel@mail.house.gov
*ATTORNEY TO BE NOTICED*

**Todd Barry Tatelman**
U.S. HOUSE OF REPRESENTATIVES
Office of General Counsel
219 Cannon House Office Building
Washington, DC 20515
(202) 225−9700
Fax: (202) 226−1360
Email: todd.tatelman@mail.house.gov
*ATTORNEY TO BE NOTICED*

**Douglas N. Letter**
U.S. HOUSE OF REPRESENTATIVES
Office of General Counsel
219 Cannon House Office Building
Washington, DC 20515
(202) 225−9700
Email: douglas.letter@mail.house.gov
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

| | | |
|---|---|---|
| **UNITED STATES DEPARTMENT OF THE TREASURY** | represented by | **Cristen Cori Handley** |

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
202−305−2677
Email: Cristen.Handley@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
(202) 514−5302
Fax: (202) 616−8470
Email: Elizabeth.Shapiro@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Mahoney Burnham**
U.S. DEPARTMENT OF JUSTICE
Civil Division

950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 353−5049
Email: james.burnham@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Gilligan**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Room 11200
Washington, DC 20005
(202) 514−3358
Fax: (202) 616−8470
Email: james.gilligan@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 305−8648
Fax: (202) 616−8470
Email: steven.a.myers@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Marshall Bernie**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
950 Pennsylvania Avenue NW
Washington, DC 20530
202−514−4010
Email: andrew.m.bernie@usdoj.gov
*ATTORNEY TO BE NOTICED*

**David Michael Morrell**
Jones Day − Washington
51 Louisiana Ave., N.W.
Unit 3
20001−2113
Washington, DC 20002
202−879−3636
Email: david.m.morrell@usdoj.gov
*TERMINATED: 09/11/2020*

**Julia Alexandra Heiman**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch

Poc Agostinho, Jean
1100 L St., N.W.
Washington, DC 20530
202−616−8480
Email: julia.heiman@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Serena Maya Schulz Orloff**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 305−0167
Fax: (202) 616−8470
Email: serena.m.orloff@usdoj.gov
*TERMINATED: 11/10/2021*
*ATTORNEY TO BE NOTICED*

**Defendant**

**INTERNAL REVENUE SERVICE**          represented by   **Cristen Cori Handley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Mahoney Burnham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Gilligan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Marshall Bernie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Michael Morrell**
(See above for address)
*TERMINATED: 09/11/2020*

**Julia Alexandra Heiman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Serena Maya Schulz Orloff**
(See above for address)
*TERMINATED: 11/10/2021*
*ATTORNEY TO BE NOTICED*

**Defendant**

**STEVEN T. MNUCHIN**                    represented by  **Cristen Cori Handley**
*in his official capacity as Secretary of the*           (See above for address)
*United States Department of the Treasury*               *LEAD ATTORNEY*
*TERMINATED: 09/28/2021*                                 *ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Mahoney Burnham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Gilligan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Marshall Bernie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Michael Morrell**
(See above for address)
*TERMINATED: 09/11/2020*

**Julia Alexandra Heiman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Serena Maya Schulz Orloff**
(See above for address)
*TERMINATED: 11/10/2021*
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHARLES P. RETTIG**
*in his official capacity as Commissioner*
*of the Internal Revenue Service*

represented by **Cristen Cori Handley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Mahoney Burnham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Gilligan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Marshall Bernie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Michael Morrell**
(See above for address)
*TERMINATED: 09/11/2020*

**Julia Alexandra Heiman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Serena Maya Schulz Orloff**
(See above for address)
*TERMINATED: 11/10/2021*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JANET YELLEN**
*in her official capacity as Secretary of the*
*United States Department of the Treasury*

represented by **James J. Gilligan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Intervenor Defendant**

**DONALD J. TRUMP**

represented by **Patrick Neilson Strawbridge**
CONSOVOY MCCARTHY PLLC
Ten Post Office Square

8th Floor South PMB #706
Boston, MA 02109
617−227−0548
Email: patrick@consovoymccarthy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd
Suite 700
Arlington, VA 22209
703−423−9423
Email: will@consovoymccarthy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd.
Suite 700
Arlington, VA 22209
(703) 243−9423
Email: cam@consovoymccarthy.com
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**DONALD J. TRUMP REVOCABLE TRUST**     represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**DJT HOLDINGS LLC**     represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**DJT HOLDINGS MANAGING MEMBER, LLC**

represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**DTTM OPERATIONS LLC**

represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**DTTM OPERATIONS MANAGING MEMBER CORP.**

represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**LFB ACQUISITION LLC**                    represented by   **Patrick Neilson Strawbridge**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **William S. Consovoy**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Cameron Thomas Norris**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**LFB ACQUISITION MEMBER**                 represented by   **Patrick Neilson Strawbridge**
**CORP.**                                                   (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **William S. Consovoy**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Cameron Thomas Norris**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**LAMINGTON FARM CLUB, LLC**               represented by   **Patrick Neilson Strawbridge**
*doing business as*                                         (See above for address)
TRUMP NATIONAL GOLF                                         *LEAD ATTORNEY*
CLUB−BEDMINSTER                                             *ATTORNEY TO BE NOTICED*

                                                            **William S. Consovoy**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Cameron Thomas Norris**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Cross Defendant**

**JANET YELLEN**                           represented by   **James J. Gilligan**
*in her official capacity as Secretary of the*             (See above for address)
*United States Department of the Treasury*                 *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Julia Alexandra Heiman**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**DUANE MORLEY COX**                  represented by  **DUANE MORLEY COX**
                                                      1199 Cliffside Dr.
                                                      Logan, UT 84321
                                                      (801) 755−3578
                                                      PRO SE

**Amicus**

**GERALDINE R. GENNET**               represented by  **Lawrence Saul Robbins**
                                                      ROBBINS, RUSSELL, ENGLERT,
                                                      ORSECK, UNTEREINER LLP
                                                      2000 K Street NW
                                                      Suite 4th Floor
                                                      Washington, DC 20006
                                                      202−775−4501
                                                      Email: lrobbins@robbinsrussell.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **David Hunter Smith**
                                                      DOJ−CRM
                                                      1400 New York Avenue NW
                                                      Washington, DC 20005
                                                      202−355−5705
                                                      Fax: 202−775−4510
                                                      Email: hsmith@robbinsrussell.com
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Wendy Liu**
                                                      Public Citizen Litigation Group
                                                      1600 20th Street NW
                                                      Washington, DC 20009
                                                      202−588−1000
                                                      Email: wliu@citizen.org
                                                      *TERMINATED: 01/19/2021*

**Amicus**

**KERRY W. KIRCHER**                  represented by  **Lawrence Saul Robbins**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **David Hunter Smith**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Wendy Liu**
                                                      (See above for address)

**Amicus**

**IRVIN B. NATHAN**                                    represented by  **Lawrence Saul Robbins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Hunter Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Wendy Liu**
(See above for address)
*TERMINATED: 01/19/2021*

**Amicus**

**WILLIAM PITTARD**                                   represented by  **Lawrence Saul Robbins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Hunter Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Wendy Liu**
(See above for address)
*TERMINATED: 01/19/2021*

**Amicus**

**THOMAS J. SPULAK**                                  represented by  **Lawrence Saul Robbins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Hunter Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Wendy Liu**
(See above for address)
*TERMINATED: 01/19/2021*

**Amicus**

**CHARLES TIEFER**                                    represented by  **Lawrence Saul Robbins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Hunter Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Wendy Liu**
(See above for address)
*TERMINATED: 01/19/2021*

<u>**Amicus**</u>

**CONSTITUTIONAL LAW
SCHOLARS**

represented by **Deepak Gupta**
GUPTA WESSLER PLLC
2001 K St NW
Suite 850 North
Washington, DC 20006
202−888−1741
Fax: 202−888−7792
Email: deepak@guptawessler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Adam Matz**
KAPLAN HECKER & FINK LLP
350 Fifth Avenue
Suite 7110
New York, NY 10118
(212) 763−0883
Email: jmatz@kaplanhecker.com
*TERMINATED: 10/17/2019*
*LEAD ATTORNEY*

**Laurence H. Tribe**
HARVARD UNIVERSITY
1575 Massachusetts Avenue
Hauser Hall 420
Cambridge, MA 02138
(617) 495−4621
Email: larry@tribelaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**CONSTITUTIONAL
ACCOUNTABILITY CENTER**

represented by **Brianne Jenna Gorod**
CONSTITUTIONAL
ACCOUNTABILITY CENTER
1200 18th Street, NW
Suite 501
Washington, DC 20036
(202) 296−6889 ext. 304
Email: brianne@theusconstitution.org
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**DONALD J. TRUMP**    represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**LAMINGTON FARM CLUB, LLC**    represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**DTTM OPERATIONS MANAGING MEMBER CORP.**    represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**LFB ACQUISITION MEMBER CORP.**    represented by **Patrick Neilson Strawbridge**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**LFB ACQUISITION LLC**                represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**DTTM OPERATIONS LLC**                represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**DJT HOLDINGS LLC**                represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**DJT HOLDINGS MANAGING**
**MEMBER, LLC**                      represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**DONALD J. TRUMP REVOCABLE**
**TRUST**                            represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**UNITED STATES DEPARTMENT**
**OF THE TREASURY**                  represented by   **Cristen Cori Handley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Mahoney Burnham**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Gilligan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Marshall Bernie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Michael Morrell**
(See above for address)
*TERMINATED: 09/11/2020*

**Julia Alexandra Heiman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Serena Maya Schulz Orloff**
(See above for address)
*TERMINATED: 11/10/2021*
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**INTERNAL REVENUE SERVICE**          represented by   **Cristen Cori Handley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Mahoney Burnham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Gilligan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Marshall Bernie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Michael Morrell**
(See above for address)
*TERMINATED: 09/11/2020*

**Serena Maya Schulz Orloff**
(See above for address)
*TERMINATED: 11/10/2021*
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**STEVEN T. MNUCHIN**
*in his official capacity as Secretary of the*
*United States Department of the Treasury*
*TERMINATED: 09/28/2021*

represented by **Cristen Cori Handley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Mahoney Burnham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Gilligan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Marshall Bernie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Michael Morrell**
(See above for address)
*TERMINATED: 09/11/2020*

Serena Maya Schulz Orloff
(See above for address)
*TERMINATED: 11/10/2021*
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

| | | |
|---|---|---|
| **CHARLES P. RETTIG**<br>*in his official capacity as Commissioner*<br>*of the Internal Revenue Service* | represented by | **Cristen Cori Handley**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **James Mahoney Burnham**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **James J. Gilligan**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Steven A. Myers**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Andrew Marshall Bernie**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **David Michael Morrell**<br>(See above for address)<br>*TERMINATED: 09/11/2020* |
| | | **Julia Alexandra Heiman**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Serena Maya Schulz Orloff**<br>(See above for address)<br>*TERMINATED: 11/10/2021*<br>*ATTORNEY TO BE NOTICED* |

**Counter Claimant**

| | | |
|---|---|---|
| **DONALD J. TRUMP** | represented by | **Patrick Neilson Strawbridge**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **William S. Consovoy**<br>(See above for address) |

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**LAMINGTON FARM CLUB, LLC**     represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DTTM OPERATIONS MANAGING MEMBER CORP.**     represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**LFB ACQUISITION MEMBER CORP.**     represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**LFB ACQUISITION LLC**                      represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DTTM OPERATIONS LLC**                      represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DJT HOLDINGS LLC**                      represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DJT HOLDINGS MANAGING
MEMBER, LLC**                      represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DONALD J. TRUMP REVOCABLE TRUST**

represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES**

represented by **Andres C. Salinas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brooks McKinly Hanner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Mark Lehn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Josephine T. Morse**
(See above for address)
*TERMINATED: 02/04/2021*

**Katie Kelsh**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Megan Barbero**
(See above for address)

*TERMINATED: 07/09/2021*

**Sarah Edith Clouse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stacie Marion Fahsel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd Barry Tatelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas N. Letter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**LFB ACQUISITION MEMBER CORP.**                    represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**DONALD J. TRUMP**                    represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**DONALD J. TRUMP REVOCABLE TRUST**                    represented by **Patrick Neilson Strawbridge**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**DJT HOLDINGS MANAGING**
**MEMBER, LLC**

represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**LFB ACQUISITION LLC**

represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**DTTM OPERATIONS LLC**

represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**DJT HOLDINGS LLC**       represented by    **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**LAMINGTON FARM CLUB, LLC**    represented by    **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**DTTM OPERATIONS MANAGING MEMBER CORP.**    represented by    **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**UNITED STATES DEPARTMENT**                   represented by   **Cristen Cori Handley**
**OF THE TREASURY**                                                            (See above for address)
                                                                                            *LEAD ATTORNEY*
                                                                                            *ATTORNEY TO BE NOTICED*

                                                                                            **Elizabeth J. Shapiro**
                                                                                            (See above for address)
                                                                                            *LEAD ATTORNEY*
                                                                                            *ATTORNEY TO BE NOTICED*

                                                                                            **James Mahoney Burnham**
                                                                                            (See above for address)
                                                                                            *LEAD ATTORNEY*
                                                                                            *ATTORNEY TO BE NOTICED*

                                                                                            **James J. Gilligan**
                                                                                            (See above for address)
                                                                                            *LEAD ATTORNEY*
                                                                                            *ATTORNEY TO BE NOTICED*

                                                                                            **Steven A. Myers**
                                                                                            (See above for address)
                                                                                            *LEAD ATTORNEY*
                                                                                            *ATTORNEY TO BE NOTICED*

                                                                                            **Andrew Marshall Bernie**
                                                                                            (See above for address)
                                                                                            *ATTORNEY TO BE NOTICED*

                                                                                            **David Michael Morrell**
                                                                                            (See above for address)
                                                                                            *TERMINATED: 09/11/2020*

                                                                                            **Julia Alexandra Heiman**
                                                                                            (See above for address)
                                                                                            *ATTORNEY TO BE NOTICED*

                                                                                            **Serena Maya Schulz Orloff**
                                                                                            (See above for address)
                                                                                            *TERMINATED: 11/10/2021*
                                                                                            *ATTORNEY TO BE NOTICED*

**Cross Defendant**

**STEVEN T. MNUCHIN**                           represented by   **Cristen Cori Handley**
*in his official capacity as Secretary of the*                          (See above for address)
*United States Department of the Treasury*                        *LEAD ATTORNEY*
*TERMINATED: 09/28/2021*                                             *ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Mahoney Burnham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Gilligan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Marshall Bernie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Michael Morrell**
(See above for address)
*TERMINATED: 09/11/2020*

**Serena Maya Schulz Orloff**
(See above for address)
*TERMINATED: 11/10/2021*
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**CHARLES P. RETTIG**
*in his official capacity as Commissioner*
*of the Internal Revenue Service*

represented by **Cristen Cori Handley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Mahoney Burnham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Gilligan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Marshall Bernie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Michael Morrell**
(See above for address)
*TERMINATED: 09/11/2020*

**Serena Maya Schulz Orloff**
(See above for address)
*TERMINATED: 11/10/2021*
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**INTERNAL REVENUE SERVICE**          represented by  **Cristen Cori Handley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Mahoney Burnham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Gilligan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Marshall Bernie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Michael Morrell**
(See above for address)
*TERMINATED: 09/11/2020*

**Julia Alexandra Heiman**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Serena Maya Schulz Orloff**
(See above for address)
*TERMINATED: 11/10/2021*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**LFB ACQUISITION MEMBER CORP.**                    represented by    **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DONALD J. TRUMP**                    represented by    **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DONALD J. TRUMP REVOCABLE TRUST**                    represented by    **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DJT HOLDINGS MANAGING
MEMBER, LLC**

represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**LFB ACQUISITION LLC**

represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DTTM OPERATIONS LLC**

represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DJT HOLDINGS LLC**

represented by **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**LAMINGTON FARM CLUB, LLC**          represented by   **Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DTTM OPERATIONS MANAGING**          represented by   **Patrick Neilson Strawbridge**
**MEMBER CORP.**                                        (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. Consovoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Thomas Norris**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**COMMITTEE ON WAYS AND**          represented by   **Andres C. Salinas**
**MEANS, UNITED STATES HOUSE**                       (See above for address)
**OF REPRESENTATIVES**                               *ATTORNEY TO BE NOTICED*

**Brooks McKinly Hanner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Mark Lehn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Josephine T. Morse**
(See above for address)
*TERMINATED: 02/04/2021*

**Katie Kelsh**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kelly P. Dunbar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Barbero**
(See above for address)
*TERMINATED: 07/09/2021*

**Sarah Edith Clouse**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Seth Paul Waxman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stacie Marion Fahsel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd Barry Tatelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas N. Letter**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/02/2019 | 1 | | COMPLAINT against CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY (Fee Status:Filing Fee Waived) filed by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Civil Cover Sheet, # 18 |

| | | |
|---|---|---|
| | | Summons, # 19 Summons, # 20 Summons, # 21 Summons, # 22 Summons, # 23 Summons)(Letter, Douglas) (Entered: 07/02/2019) |
| 07/03/2019 | | Case Assigned to Judge Trevor N. McFadden. (zsb) (Entered: 07/03/2019) |
| 07/03/2019 | 2 | STANDING ORDER Establishing Procedures for Cases Before Judge Trevor N. McFadden. The parties are hereby ORDERED to read and comply with the directives in the attached standing order. Signed by Judge Trevor N. McFadden on 07/03/2019. (lctnm2) (Entered: 07/03/2019) |
| 07/08/2019 | 3 | SUMMONS (6) Issued Electronically as to CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zsb) (Entered: 07/08/2019) |
| 07/08/2019 | 4 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 7/8/2019. Answer due for ALL FEDERAL DEFENDANTS by 9/6/2019. (Letter, Douglas) (Entered: 07/08/2019) |
| 07/11/2019 | 10 | MOTION to Intervene by DUANE MORLEY COX. (Attachments: # 1 Exhibit − Answer in Intervention, # 2 Exhibit − Notice of Appearance, # 3 Text of Proposed Order) (tth) (Entered: 07/16/2019) |
| 07/16/2019 | 5 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 07/10/2019. (Letter, Douglas) (Entered: 07/16/2019) |
| 07/16/2019 | 6 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. INTERNAL REVENUE SERVICE served on 7/9/2019 (Letter, Douglas) (Entered: 07/16/2019) |
| 07/16/2019 | 7 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. STEVEN T. MNUCHIN served on 7/10/2019 (Letter, Douglas) (Entered: 07/16/2019) |
| 07/16/2019 | 8 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. CHARLES P. RETTIG served on 7/9/2019 (Letter, Douglas) (Entered: 07/16/2019) |
| 07/16/2019 | 9 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES DEPARTMENT OF THE TREASURY served on 7/10/2019 (Letter, Douglas) (Entered: 07/16/2019) |
| 07/17/2019 | 11 | NOTICE of Appearance by William S. Consovoy on behalf of DONALD J. TRUMP, THE DONALD J. TRUMP REVOCABLE TRUST, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER, LLC, DTTM OPERATIONS LLC, DTTM OPERATIONS MANAGING MEMBER CORP., LFB ACQUISITION LLC, LFB ACQUISITION MEMBER CORP., LAMINGTON FARM CLUB, LLC D/B/A TRUMP NATIONAL GOLF CLUB−BEDMINSTER (Consovoy, William) (Entered: 07/17/2019) |
| 07/17/2019 | 12 | Unopposed MOTION to Intervene by DTTM OPERATIONS LLC, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER, LLC, DTTM OPERATIONS MANAGING MEMBER CORP., LAMINGTON FARM |

| | | | |
|---|---|---|---|
| | | | CLUB, LLC D/B/A TRUMP NATIONAL GOLF CLUB−BEDMINSTER, LFB ACQUISITION LLC, LFB ACQUISITION MEMBER CORP., THE DONALD J. TRUMP REVOCABLE TRUST, DONALD J. TRUMP (Attachments: # 1 Text of Proposed Order)(Consovoy, William) (Entered: 07/17/2019) |
| 07/18/2019 | 13 | | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by DTTM OPERATIONS LLC, DJT HOLDINGS MANAGING MEMBER, LLC, DTTM OPERATIONS MANAGING MEMBER CORP., LAMINGTON FARM CLUB, LLC D/B/A TRUMP NATIONAL GOLF CLUB−BEDMINSTER, LFB ACQUISITION LLC, LFB ACQUISITION MEMBER CORP. (Consovoy, William) (Entered: 07/18/2019) |
| 07/18/2019 | 14 | | ORDER granting 12 Unopposed Motion to Intervene. Upon consideration of the Proposed Defendant−Intervenors' 12 Motion to Intervene, it is hereby ordered that the motion is granted. The Clerk of Court shall add the movants as Intervenor−Defendants to the case. See attached Order for further details. Signed by Judge Trevor N. McFadden on 07/18/2019. (lctnm2) (Entered: 07/18/2019) |
| 07/25/2019 | 15 | | NOTICE of Appearance by Steven A. Myers on behalf of CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY (Myers, Steven) (Entered: 07/25/2019) |
| 07/25/2019 | 16 | | Memorandum in opposition to re 10 MOTION to Intervene *filed by Duane Morley Cox* filed by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Attachments: # 1 Text of Proposed Order)(Myers, Steven) (Entered: 07/25/2019) |
| 07/25/2019 | 17 | | NOTICE of Appearance by Serena Maya Schulz Orloff on behalf of All Defendants (Orloff, Serena) (Entered: 07/25/2019) |
| 07/25/2019 | 18 | | NOTICE of Appearance by Cristen Cori Handley on behalf of CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY (Handley, Cristen) (Entered: 07/25/2019) |
| 08/06/2019 | 25 | | AMENDED REPLY to opposition to motion re 10 MOTION to Intervene filed by DUANE MORLEY COX. (tth) Modified event title on 8/14/2019 (znmw). (Entered: 08/12/2019) |
| 08/06/2019 | 26 | | NOTICE by DUANE MORLEY COX re 10 MOTION to Intervene. (tth) (Entered: 08/12/2019) |
| 08/09/2019 | 19 | | NOTICE of Appearance by Brooks McKinly Hanner on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Hanner, Brooks) (Entered: 08/09/2019) |
| 08/09/2019 | 20 | | NOTICE of Appearance by Douglas N. Letter on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Letter, Douglas) (Entered: 08/09/2019) |
| 08/09/2019 | 21 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Appearance by Josephine T. Morse on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Morse, Josephine) (Entered: 08/09/2019) |
| 08/09/2019 | 22 | | NOTICE of Appearance by Megan Barbero on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Barbero, Megan) (Entered: 08/09/2019) |
| 08/09/2019 | 23 | | NOTICE of Appearance by Sarah Edith Clouse on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Clouse, Sarah) (Entered: 08/09/2019) |
| 08/09/2019 | 24 | | NOTICE of Appearance by Todd Barry Tatelman on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Tatelman, Todd) (Entered: 08/09/2019) |
| 08/09/2019 | 27 | | REPLY to opposition to motion re 10 MOTION to Intervene filed by DUANE MORLEY COX. (ztd) (Entered: 08/13/2019) |
| 08/15/2019 | 28 | | Consent MOTION for Leave to File Excess Pages by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Attachments: # 1 Text of Proposed Order)(Letter, Douglas) (Entered: 08/15/2019) |
| 08/16/2019 | | | MINUTE ORDER. Upon consideration of the Plaintiff's 28 Motion for Leave to Exceed Page Limit, it is hereby ordered that the Plaintiff's motion is granted. It is further ordered that the Plaintiff's forthcoming Memorandum of Law in support of its Motion for Summary Judgment may be up to 55 pages in length. SO ORDERED. Signed by Judge Trevor N. McFadden on 8/16/2019. (lctnm2) (Entered: 08/16/2019) |
| 08/20/2019 | 29 | | MOTION for Summary Judgment by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Attachments: # 1 Statement of Facts, # 2 Memorandum in Support, # 3 Declaration of Todd B. Tatelman, # 4 Exhibit A to Decl., # 5 Exhibit B to Decl., # 6 Exhibit C to Decl., # 7 Exhibit D to Decl., # 8 Exhibit E to Decl., # 9 Exhibit F to Decl., # 10 Exhibit G to Decl., # 11 Exhibit H to Decl., # 12 Exhibit I to Decl., # 13 Exhibit J to Decl., # 14 Exhibit K to Decl., # 15 Exhibit L to Decl., # 16 Exhibit M to Decl., # 17 Exhibit N to Decl., # 18 Exhibit O to Decl., # 19 Exhibit P to Decl., # 20 Exhibit Q to Decl., # 21 Exhibit R to Decl., # 22 Exhibit S to Decl., # 23 Exhibit T to Decl., # 24 Exhibit U to Decl., # 25 Exhibit V to Decl., # 26 Exhibit W to Decl., # 27 Exhibit X to Decl., # 28 Exhibit Y to Decl., # 29 Exhibit Z to Decl., # 30 Exhibit AA to Decl., # 31 Exhibit BB to Decl., # 32 Exhibit CC to Decl., # 33 Exhibit DD to Decl., # 34 Exhibit EE to Decl., # 35 Exhibit FF to Decl., # 36 Exhibit GG to Decl., # 37 Exhibit HH to Decl., # 38 Exhibit II to Decl., # 39 Exhibit JJ to Decl., # 40 Exhibit KK to Decl., # 41 Exhibit LL to Decl., # 42 Exhibit MM to Decl., # 43 Exhibit NN to Decl., # 44 Exhibit OO to Decl., # 45 Exhibit PP to Decl., # 46 Exhibit QQ to Decl., # 47 Exhibit RR to Decl., # 48 Exhibit SS to Decl., # 49 Exhibit TT to Decl., # 50 Exhibit UU to Decl., # 51 Exhibit VV to Decl., # 52 Exhibit WW to Decl., # 53 Exhibit XX to Decl., # 54 Text of Proposed Order)(Letter, Douglas) (Entered: 08/20/2019) |
| 08/20/2019 | 30 | | MOTION to Expedite *Consideration of this Case*, MOTION for Briefing Schedule by COMMITTEE ON WAYS AND MEANS, UNITED STATES |

| | | | HOUSE OF REPRESENTATIVES (Attachments: # 1 Text of Proposed Order)(Letter, Douglas) (Entered: 08/20/2019) |
|---|---|---|---|
| 08/20/2019 | 31 | | NOTICE of Appearance by James Mahoney Burnham on behalf of All Defendants (Burnham, James) (Entered: 08/20/2019) |
| 08/20/2019 | 32 | | NOTICE of Appearance by James J. Gilligan on behalf of All Defendants (Gilligan, James) (Entered: 08/20/2019) |
| 08/20/2019 | 33 | | MOTION to Hold in Abeyance re 29 MOTION for Summary Judgment *(Defendants' and Defendant−Intervenors' Consolidated Motion to Hold Plaintiff's Motion for Summary Judgment in Abeyance Pending Resolution of Defendants' and Defendant−Intervenors' Forthcoming Motion(s) To Dismiss and Opposition to Plaintiff's Motion for Concurrent Briefing)* by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY (Attachments: # 1 Text of Proposed Order)(Gilligan, James) (Entered: 08/20/2019) |
| 08/20/2019 | 34 | | Memorandum in opposition to re 30 MOTION to Expedite *Consideration of this Case* MOTION for Briefing Schedule *(Defendants' and Defendant−Intervenors' Consolidated Motion to Hold Plaintiff's Motion for Summary Judgment in Abeyance Pending Resolution of Defendants' and Defendant−Intervenors' Forthcoming Motion(s) To Dismiss and Opposition to Plaintiff's Motion for Concurrent Briefing)* filed by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Attachments: # 1 Text of Proposed Order)(Gilligan, James) (Entered: 08/20/2019) |
| 08/21/2019 | | | MINUTE ORDER. It is hereby ordered that the Plaintiff's 29 Motion for Summary Judgment is held in abeyance pending the Court's ruling on the 30 Motion to Expedite Consideration of this Case. Signed by Judge Trevor N. McFadden on 08/21/2019. (lctnm2) (Entered: 08/21/2019) |
| 08/26/2019 | 35 | | Memorandum in opposition to re 33 MOTION to Hold in Abeyance re 29 MOTION for Summary Judgment *(Defendants' and Defendant−Intervenors' Consolidated Motion to Hold Plaintiff's Motion for Summary Judgment in Abeyance Pending Resolution of Defendants)* filed by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. (Letter, Douglas) (Entered: 08/26/2019) |
| 08/26/2019 | 36 | | REPLY to opposition to motion re 29 MOTION for Summary Judgment , 30 MOTION to Expedite *Consideration of this Case* MOTION for Briefing Schedule filed by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. (See Docket Entry 35 to view document). (ztth) (Entered: 08/27/2019) |
| 08/27/2019 | 37 | | NOTICE by DUANE MORLEY COX. (ztth) (Entered: 08/29/2019) |
| 08/29/2019 | 38 | | ORDER denying 29 Motion for Summary Judgment as premature; denying 30 Motion to Expedite; denying 33 Motion to Hold Motion for Summary Judgment in Abeyance as moot. See attached order for details. Signed by Judge Trevor N. McFadden on 08/29/2019. (lctnm2) (Entered: 08/29/2019) |
| 08/30/2019 | | | Set/Reset Deadlines: Any responsive pleading(s) to the Complaint, by the Administration and President Trump, is due by 9/6/2019. (hmc) (Entered: |

| | | | |
|---|---|---|---|
| | | | 08/30/2019) |
| 09/03/2019 | 42 | | MOTION to Amend/Correct by DUANE MORLEY COX. (ztth) (Entered: 09/05/2019) |
| 09/04/2019 | 39 | | ORDER denying 10 Motion to Intervene. See attached Order for details. Signed by Judge Trevor N. McFadden on 9/4/2019. (lctnm1) (Entered: 09/04/2019) |
| 09/04/2019 | 40 | | NOTICE of Appearance by Andrew Marshall Bernie on behalf of All Defendants (Bernie, Andrew) (Entered: 09/04/2019) |
| 09/04/2019 | | | MINUTE ORDER. Any amicus brief in support of the Administration or President Trump shall be filed on or before September 6, 2019. Any amicus brief in support of the Committee shall be filed on or before September 20, 2019. Any amicus brief shall include a statement certifying that the amicus has attempted not to duplicate arguments presented in a party's brief and shall be no longer than 15 pages. Signed by Judge Trevor N. McFadden on 9/4/2019. (lctnm1) (Entered: 09/04/2019) |
| 09/04/2019 | 41 | | Consent MOTION for Leave to File Excess Pages by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY (Attachments: # 1 Text of Proposed Order)(Bernie, Andrew) (Entered: 09/04/2019) |
| 09/04/2019 | | | MINUTE ORDER. Upon consideration of the Defendants' and Defendant−Intervenors' 41 Motion for Leave to Exceed Page Limit, it is hereby ordered that the motion is granted. It is further ordered that the Defendants' and Defendant−Intervenors' forthcoming consolidated Memorandum of Law in support of their Motion to Dismiss may be up to 60 pages in length. Signed by Judge Trevor N. McFadden on 09/04/2019. (lctnm2) (Entered: 09/04/2019) |
| 09/05/2019 | | | Set/Reset Deadlines: Amicus brief in support of the Administration or President Trump due by 9/6/2019. Amicus brief in support of the Committee due by 9/20/2019. (hmc) (Entered: 09/05/2019) |
| 09/06/2019 | | | MINUTE ORDER. The Court denied Duane Morley Cox's 10 Motion to Intervene. *See* Order, ECF No. 39 . Mr. Cox's 42 Motion to Amend his proposed Answer in Intervention therefore is denied as moot. Mr. Cox may, however, file an amicus brief, which shall not exceed fifteen pages. Signed by Judge Trevor N. McFadden on 09/06/2019. (lctnm2) (Entered: 09/06/2019) |
| 09/06/2019 | 43 | | MOTION to excuse filing of certified list of contents of administrative record by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY (Attachments: # 1 Text of Proposed Order)(Myers, Steven) (Entered: 09/06/2019) |
| 09/06/2019 | 44 | | MOTION to Dismiss *(joint motion of Defendants and Defendant−Intervenors)* by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY (Attachments: # 1 Exhibit A. 1960 House Memo, # 2 Exhibit B. Transcript of Trump v. Committee on Ways and Means, # 3 Declaration of Frederick Vaughan and Exhibits, # 4 Declaration of Sunita Lough and Exhibits, # 5 Text of Proposed Order)(Myers, Steven); Modified event and text on 9/9/2019 |

| | | | |
|---|---|---|---|
| | | | (ztth). (Entered: 09/06/2019) |
| 09/09/2019 | | | MINUTE ORDER. Upon consideration of the Defendants' 43 Motion to Excuse Filing of a Certified List of Contents of the Administrative Record, it is hereby ordered that the motion is granted. The Defendant is directed to file the certified index with the Court within 7 days of a ruling on the 44 Motion to Dismiss. This Order is without prejudice to the Defendant−Intervenors' ability to file a motion for discovery after the Court's decision on the Motion to Dismiss. Signed by Judge Trevor N. McFadden on 09/09/2019. (lctnm2) (Entered: 09/09/2019) |
| 09/09/2019 | 45 | | AMICUS BRIEF by DUANE MORLEY COX. (ztth) (Entered: 09/12/2019) |
| 09/12/2019 | | | MINUTE ORDER. Any amicus brief shall be filed on or before September 20, 2019. Any amicus brief shall include a statement certifying that the amicus has attempted not to duplicate arguments presented in a party's brief and shall be no longer than 15 pages. Signed by Judge Trevor N. McFadden on 9/12/19. (lctnm1) (Entered: 09/12/2019) |
| 09/12/2019 | | | Set/Reset Deadlines: Amicus Brief due by 9/20/2019. (hmc) (Entered: 09/12/2019) |
| 09/18/2019 | 46 | | Joint MOTION to Modify *Scheduling Order* by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Attachments: # 1 Text of Proposed Order)(Letter, Douglas) Modified event on 9/19/2019 (znmw). (Entered: 09/18/2019) |
| 09/18/2019 | 47 | | NOTICE *of filing of Supplemental Declaration of Frederick W. Vaughan* by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY (Attachments: # 1 Declaration (Supplemental) of Frederick W. Vaughan)(Myers, Steven) (Entered: 09/18/2019) |
| 09/19/2019 | 48 | | Consent MOTION for Leave to File Excess Pages by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Letter, Douglas) (Entered: 09/19/2019) |
| 09/19/2019 | | | MINUTE ORDER. Upon consideration of the parties' 46 Joint Motion for Scheduling Order and the Plaintiff's 48 Consent Motion for Leave to File Excess Pages, it is hereby ordered that both motions are granted. It is further ordered that the Plaintiff's opposition to the 44 Motion to Dismiss is due on or before September 23, 2019. It is further ordered that the Plaintiff's forthcoming opposition may be up to 65 pages in length. It is further ordered that the Defendants' and Defendant−Intervenors' replies are due on or before September 30, 2019. Signed by Judge Trevor N. McFadden on 09/19/2019. (lctnm2) (Entered: 09/19/2019) |
| 09/19/2019 | | | Set/Reset Deadlines: Plaintiff's opposition to the Motion to Dismiss due by 9/23/2019. Defendants' and Defendant−Intervenors' replies due by 9/30/2019. (hmc) (Entered: 09/19/2019) |
| 09/20/2019 | 49 | | NOTICE of Appearance by Lawrence Saul Robbins on behalf of Geraldine R. Gennet, Kerry W. Kircher, Irvin B. Nathan, William Pittard, Thomas J. Spulak, Charles Tiefer (Robbins, Lawrence) (Entered: 09/20/2019) |
| 09/20/2019 | 50 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Appearance by Wendy Liu on behalf of Geraldine R. Gennet, Kerry W. Kircher, Irvin B. Nathan, William Pittard, Thomas J. Spulak, Charles Tiefer (Liu, Wendy) (Entered: 09/20/2019) |
| 09/20/2019 | 51 | | NOTICE of Appearance by David Hunter Smith on behalf of Geraldine R. Gennet, Kerry W. Kircher, Irvin B. Nathan, William Pittard, Thomas J. Spulak, Charles Tiefer (Smith, David) (Entered: 09/20/2019) |
| 09/20/2019 | 52 | | MOTION for Leave to File *Brief as Amici Curiae* by Geraldine R. Gennet, Kerry W. Kircher, Irvin B. Nathan, William Pittard, Thomas J. Spulak, Charles Tiefer (Attachments: # 1 Brief of Amici Curiae, # 2 Text of Proposed Order)(Robbins, Lawrence) (Entered: 09/20/2019) |
| 09/20/2019 | 53 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Laurence H. Tribe, :Firm− Harvard Law School, :Address− 1575 Massachussetts Avenue, Cambridge, MA 2138. Phone No. − 617−495−1767. Fax No. − 617−496−4947 Filing fee $ 100, receipt number 0090−6391192. Fee Status: Fee Paid. by Constitutional Law Scholars (Attachments: # 1 Declaration of Laurence H. Tribe, # 2 Text of Proposed Order)(Matz, Joshua) (Entered: 09/20/2019) |
| 09/20/2019 | 54 | | MOTION for Leave to File *Amicus Brief* by Constitutional Law Scholars (Attachments: # 1 Exhibit A − Amicus Brief, # 2 Exhibit B − Proposed Order)(Matz, Joshua) (Entered: 09/20/2019) |
| 09/23/2019 | | | MINUTE ORDER granting 53 Motion for Leave to Appear Pro Hac Vice. Laurence H. Tribe shall promptly register for this Court's CM/ECF system. Signed by Judge Trevor N. McFadden on 09/23/2019. (lctnm2) (Entered: 09/23/2019) |
| 09/23/2019 | | | MINUTE ORDER granting the 52 Motion for Leave to File Amicus Brief. Signed by Judge Trevor N. McFadden on 09/23/2019. (lctnm2) (Entered: 09/23/2019) |
| 09/23/2019 | | | MINUTE ORDER granting 54 Motion for Leave to File Amicus Brief. Signed by Judge Trevor N. McFadden on 09/23/2019. (lctnm2) (Entered: 09/23/2019) |
| 09/23/2019 | 55 | | Memorandum in opposition to re 44 MOTION to Dismiss *(joint motion of Defendants and Defendant−Intervenors)* filed by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. (Letter, Douglas) (Entered: 09/23/2019) |
| 09/23/2019 | 56 | | AMICUS BRIEF by GERALDINE R. GENNET, KERRY W. KIRCHER, IRVIN B. NATHAN, WILLIAM PITTARD, THOMAS J. SPULAK, CHARLES TIEFER. (ztd) (Entered: 09/24/2019) |
| 09/23/2019 | 57 | | AMICUS BRIEF by CONSTITUTIONAL LAW SCHOLARS. (ztd) (Entered: 09/24/2019) |
| 09/27/2019 | 58 | | Consent MOTION for Leave to File Excess Pages *for Consolidated Reply Memorandum on behalf of Defendants and Defendant−Intervenors due September 30* by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY (Attachments: # 1 Text of Proposed Order)(Myers, Steven) (Entered: 09/27/2019) |

| 09/27/2019 | | | MINUTE ORDER. Upon consideration of the Defendants' and Defendant−Intervenors' 58 Consent Motion for Leave to File Excess Pages, it is hereby ordered that the motion is granted. It is further ordered that the Defendants' and Defendant−Intervenors' forthcoming consolidated Reply Memorandum in support of their Motion to Dismiss may be up to 40 pages in length. Signed by Judge Trevor N. McFadden on 09/27/2019. (lctnm2) (Entered: 09/27/2019) |
|---|---|---|---|
| 09/30/2019 | 59 | | REPLY to opposition to motion re 44 MOTION to Dismiss *(joint motion of Defendants and Defendant−Intervenors)* filed by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Myers, Steven) (Entered: 09/30/2019) |
| 10/01/2019 | | | MINUTE ORDER. It is hereby ORDERED that the parties shall appear for a hearing on the 44 Joint Motion to Dismiss filed by Defendants and Defendant−Intervenors, on November 6, 2019, at 10:00 a.m. in Courtroom 2, before Judge Trevor N. McFadden. Signed by Judge Trevor N. McFadden on 10/1/2019. (lctnm2) (Entered: 10/01/2019) |
| 10/02/2019 | | | Set/Reset Hearings: Motion Hearing set for 11/6/2019 at 10:00 AM in Courtroom 2 before Judge Trevor N. McFadden. (hmc) (Entered: 10/02/2019) |
| 10/03/2019 | 60 | | Memorandum in opposition to re 44 MOTION to Dismiss *(joint motion of Defendants and Defendant−Intervenors)* filed by DUANE MORLEY COX. "Leave to file GRANTED" by Judge Trevor N. McFadden on 10/3/2019. (ztth) (Entered: 10/04/2019) |
| 10/03/2019 | 61 | | RESPONSE re 57 Amicus Brief, 56 Amicus Brief filed by DUANE MORLEY COX. (See Docket Entry 60 to view document). (ztth) (Entered: 10/04/2019) |
| 10/15/2019 | | | MINUTE ORDER. The parties are hereby invited to file supplemental briefing on the 44 Motion to Dismiss, in light of the D.C. Circuit's recent decision in *Trump v. Mazars USA, LLP*, No. 19−5142, 2019 WL 5089748 (D.C. Cir. Oct. 11, 2019). Defendants and Defendant−Intervenors shall file on or before October 22, 2019. If Defendants and Defendant−Intervenors file separately, their briefs shall not exceed ten pages each. If Defendants and Defendant−Intervenors file jointly, their brief shall not exceed 15 pages. Plaintiff shall file its brief on or before October 29, 2019. Plaintiff's brief shall not exceed 15 pages. SO ORDERED. Signed by Judge Trevor N. McFadden on 10/15/2019. (lctnm2) (Entered: 10/15/2019) |
| 10/15/2019 | | | Set/Reset Deadlines: Defendants and Defendant−Intervenors' supplemental brief due by 10/22/2019. Plaintiff's supplemental brief due by 10/29/2019. (hmc) (Entered: 10/15/2019) |
| 10/15/2019 | 62 | | MOTION to Withdraw as Attorney , *by Joshua Matz* by CONSTITUTIONAL LAW SCHOLARS (Matz, Joshua) (Entered: 10/15/2019) |
| 10/17/2019 | | | MINUTE ORDER granting the 62 Motion to Withdraw Appearance. Joshua Matz is hereby granted leave to withdraw as counsel for Amici Curiae, Constitutional Law Scholars. The Court directs amici's attention to Local Civil Rule 83.2(c)(1): "An attorney who is a member in good standing of the bar of any United States Court or of the highest court of any State, but who is not a member of the Bar of this Court, may file papers in this Court only if such |

| | | | |
|---|---|---|---|
| | | | attorney joins of record a member in good standing of the Bar of this Court. All papers submitted by non−members of the Bar of this Court must be signed by such counsel and by a member of the Bar of this Court joined in compliance with this Rule." SO ORDERED. Signed by Judge Trevor N. McFadden on 10/17/2019. (lctnm2) (Entered: 10/17/2019) |
| 10/18/2019 | 64 | | MOTION for Leave to File by DUANE MORLEY COX. (Attachment: # 1 Exhibit) (ztth) (Entered: 10/22/2019) |
| 10/22/2019 | 63 | | SUPPLEMENTAL MEMORANDUM by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Bernie, Andrew); Modified event and text on 10/23/2019 (ztth). (Entered: 10/22/2019) |
| 10/23/2019 | | | MINUTE ORDER granting Mr. Cox's 64 Motion for Leave to File Brief. SO ORDERED. Signed by Judge Trevor N. McFadden on 10/23/2019. (lctnm2) (Entered: 10/23/2019) |
| 10/23/2019 | 65 | | AMICUS BRIEF by DUANE MORLEY COX. (ztth) (Entered: 10/24/2019) |
| 10/29/2019 | 66 | | SUPPLEMENTAL MEMORANDUM re Order by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. (Letter, Douglas); Modified event and text on 10/31/2019 (ztth). (Entered: 10/29/2019) |
| 10/31/2019 | 68 | | MOTION for Leave to File by DUANE MORLEY COX. (Attachment: # 1 Exhibit − Supplement to Amicus Pleadings) (ztth) (Entered: 11/05/2019) |
| 11/01/2019 | 67 | | NOTICE of Appearance by Deepak Gupta on behalf of CONSTITUTIONAL LAW SCHOLARS (Gupta, Deepak) (Entered: 11/01/2019) |
| 11/06/2019 | | | Minute Entry for proceedings held before Judge Trevor N. McFadden: Motion Hearing held on 11/6/2019 re 44 MOTION to Dismiss *(joint motion of Defendants and Defendant−Intervenors)* filed by INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY, CHARLES P. RETTIG. Arguments heard and taken under advisement. (Court Reporter: Lisa Edwards.) (hmc) (Entered: 11/06/2019) |
| 11/06/2019 | | | MINUTE ORDER granting Mr. Cox's 68 Motion for Leave to File. SO ORDERED. Signed by Judge Trevor N. McFadden on 11/6/2019. (lctnm2) (Entered: 11/06/2019) |
| 11/06/2019 | 69 | | SUPPLEMENTAL MEMORANDUM to re 65 Amicus Brief, 45 Amicus Brief filed by DUANE MORLEY COX. (ztth) (Entered: 11/07/2019) |
| 11/12/2019 | 70 | | TRANSCRIPT OF MOTION HEARING before Judge Trevor N. McFadden held on November 6, 2019; Page Numbers: 1−151. Date of Issuance: November 12, 2019. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354−3269. Transcripts may be ordered by submitting the Transcript Order Form |
| | | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court rep orter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |

| | | | |
|---|---|---|---|
| | | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 12/3/2019. Redacted Transcript Deadline set for 12/13/2019. Release of Transcript Restriction set for 2/10/2020.(Edwards, Lisa) (Entered: 11/12/2019) |
| 11/12/2019 | 71 | | SUPPLEMENTAL MEMORANDUM by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. (Letter, Douglas); Modified text and event on 11/13/2019 (ztth). (Entered: 11/12/2019) |
| 11/12/2019 | 73 | | MOTION for Leave to File by DUANE MORLEY COX. (Attachment: # 1 Exhibit − Recommendations from Hearing) (ztth) (Entered: 11/15/2019) |
| 11/13/2019 | 72 | | NOTICE *of intent to respond* by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY re 71 Memorandum (Myers, Steven) (Entered: 11/13/2019) |
| 11/18/2019 | | | MINUTE ORDER denying Mr. Cox's 73 Motion for Leave to File. The time for filing an amicus brief has long since passed. *See* 9/12/19 Minute Order. While the Court has been liberal in allowing Mr. Cox to supplement his 45 Amicus Brief, the Court believes that yet additional supplements are unnecessary at this time. There shall be no further briefing from Mr. Cox or any other amici in this matter unless otherwise invited by the Court. *See* LCvR 7(o)(2). SO ORDERED. Signed by Judge Trevor N. McFadden on 11/18/2019. (lctnm2) (Entered: 11/18/2019) |
| 11/19/2019 | 74 | | RESPONSE re 71 Memorandum *(Defendants' and Defendant−Intervenors' Response to Plaintiff's Supplemental Memorandum)* filed by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Myers, Steven) (Entered: 11/19/2019) |
| 11/26/2019 | 75 | | NOTICE OF SUPPLEMENTAL AUTHORITY by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Letter, Douglas) (Entered: 11/26/2019) |
| 12/02/2019 | 77 | | MOTION for Reconsideration re Minute Order filed on 9/12/2019, by DUANE MORLEY COX. (Attachment: # 1 Exhibit − Attachments) (ztth) (Entered: 12/05/2019) |
| 12/03/2019 | 76 | | RESPONSE re 75 NOTICE OF SUPPLEMENTAL AUTHORITY *(Defendants' and Defendant−Intervenors')* filed by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Attachments: # 1 Exhibit A − D.C. Circuit Order)(Myers, Steven) (Entered: 12/03/2019) |
| 12/09/2019 | | | MINUTE ORDER. Mr. Cox's 77 Motion for Reconsideration is DENIED. SO ORDERED. Signed by Judge Trevor N. McFadden on 12/9/2019. (lctnm2) (Entered: 12/09/2019) |

| | | | |
|---|---|---|---|
| 01/14/2020 | | | MINUTE ORDER setting a telephone conference for January 14, 2020, at 3:00 p.m. in Chambers before Judge Trevor N. McFadden. Dial−in information will be emailed to counsel. SO ORDERED. Signed by Judge Trevor N. McFadden on 1/14/2020. (lctnm2) (Entered: 01/14/2020) |
| 01/14/2020 | | | MINUTE ORDER. For the reasons stated on the record during the Telephone Conference on January 14, 2020, this case is hereby STAYED pending a decision in *Committee on the Judiciary, U.S. House of Representatives v. McGahn*, No. 19−5331 (D.C. Cir.). SO ORDERED. Signed by Judge Trevor N. McFadden on 1/14/2020. (lctnm2) (Entered: 01/14/2020) |
| 01/14/2020 | | | Minute Entry for proceedings held before Judge Trevor N. McFadden: Telephone Conference held on 1/14/2020. (Court Reporter: Tim Miller.) (hmc) (Entered: 01/14/2020) |
| 01/14/2020 | | | Case Stayed. (hmc) (Entered: 01/14/2020) |
| 01/17/2020 | 78 | | TRANSCRIPT OF TELEPHONE CONFERENCE before Judge Trevor N. McFadden held on 1−14−20; Page Numbers: 1−15; Date of Issuance: 1−17−20; Court Reporter: Timothy R. Miller, Telephone number (202) 354−3111. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced ab ove. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 2/7/2020. Redacted Transcript Deadline set for 2/17/2020. Release of Transcript Restriction set for 4/16/2020.(Miller, Timothy) (Entered: 01/17/2020) |
| 01/28/2020 | 79 | | MOTION to Lift Stay by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Attachments: # 1 Text of Proposed Order)(Letter, Douglas) (Entered: 01/28/2020) |
| 02/04/2020 | 80 | | MOTION to Withdraw as Attorney by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY (Burnham, James) (Entered: 02/04/2020) |
| 02/05/2020 | | | MINUTE ORDER granting the 80 Motion to Withdraw Appearance. James Burnham is hereby granted leave to withdraw as counsel for Defendants. SO ORDERED. Signed by Judge Trevor N. McFadden on 2/5/2020. (lctnm2) (Entered: 02/05/2020) |
| 02/11/2020 | 81 | | |

| | | | RESPONSE re 79 MOTION to Lift Stay *of Defendants and Defendant−Intervenors* filed by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Attachments: # 1 Exhibit A (status conference transcript), # 2 Exhibit B (correspondence of counsel), # 3 Proposed Order)(Orloff, Serena) (Entered: 02/11/2020) |
|---|---|---|---|
| 02/15/2020 | 82 | | REPLY to opposition to motion re 79 MOTION to Lift Stay filed by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. (Letter, Douglas) (Entered: 02/15/2020) |
| 02/28/2020 | | | MINUTE ORDER. It is hereby ORDERED that the parties shall appear for a hearing on the Plaintiff's 79 Motion to Lift Stay, on March 5, 2020, at 11:00 a.m. in Courtroom 2, before Judge Trevor N. McFadden. SO ORDERED. Signed by Judge Trevor N. McFadden on 2/28/2020. (lctnm2) (Entered: 02/28/2020) |
| 02/29/2020 | 83 | | NOTICE of Appearance by Cameron Thomas Norris on behalf of DTTM OPERATIONS LLC, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER, LLC, DONALD J. TRUMP REVOCABLE TRUST, DTTM OPERATIONS MANAGING MEMBER CORP., LAMINGTON FARM CLUB, LLC, LFB ACQUISITION LLC, LFB ACQUISITION MEMBER CORP., DONALD J. TRUMP (Norris, Cameron) (Entered: 02/29/2020) |
| 03/02/2020 | | | Set/Reset Hearings: Motion Hearing set for 3/5/2020 at 11:00 AM in Courtroom 2 before Judge Trevor N. McFadden. (hmc) (Entered: 03/02/2020) |
| 03/02/2020 | 84 | | NOTICE OF SUPPLEMENTAL AUTHORITY by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY (Attachments: # 1 Exhibit A − Committee on the Judiciary v. McGahn)(Myers, Steven) (Entered: 03/02/2020) |
| 03/02/2020 | 85 | | NOTICE of Appearance by David Michael Morrell on behalf of All Defendants (Morrell, David) (Entered: 03/02/2020) |
| 03/04/2020 | 86 | | MOTION to Vacate *Hearing* by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Attachments: # 1 Proposed Order)(Letter, Douglas). Added MOTION for Leave to File on 3/12/2020 (znmw). (Entered: 03/04/2020) |
| 03/04/2020 | 87 | | Memorandum in opposition to re 86 MOTION to Vacate *Hearing (Joint Opposition of Defendants and Defendant−Intervenors)* filed by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Attachments: # 1 Text of Proposed Order)(Myers, Steven) (Entered: 03/04/2020) |
| 03/04/2020 | | | MINUTE ORDER denying Plaintiff's 86 Motion to Vacate Hearing. The hearing remains scheduled for March 5, 2020, at 11:00 a.m. in Courtroom 2, before Judge Trevor N. McFadden. SO ORDERED. Signed by Judge Trevor N. McFadden on 3/4/2020. (lctnm2) (Entered: 03/04/2020) |
| 03/05/2020 | | | Minute entry for proceedings held before Judge Trevor N. McFadden: Motion Hearing held on 3/5/2020. Plaintiff's 79 Motion to Lift Stay, denied as moot. Stay is lifted. Joint Status Report due in one week. (Court Reporter: Crystal |

| | | | |
|---|---|---|---|
| | | | Pilgrim.) (hmc) (Entered: 03/05/2020) |
| 03/12/2020 | 88 | | Joint STATUS REPORT by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Myers, Steven) (Entered: 03/12/2020) |
| 03/16/2020 | 89 | | NOTICE OF SUPPLEMENTAL AUTHORITY by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Attachments: # 1 Exhibit)(Letter, Douglas) (Entered: 03/16/2020) |
| 03/17/2020 | 90 | | NOTICE of Appearance by Joshua Adam Matz on behalf of CONSTITUTIONAL LAW SCHOLARS (Matz, Joshua) (Entered: 03/17/2020) |
| 03/20/2020 | 91 | | ORDER. This matter is STAYED pending further order of the Court. See attached Order for details. Signed by Judge Trevor N. McFadden on 3/20/2020. (lctnm2) (Entered: 03/20/2020) |
| 03/20/2020 | | | Case Stayed. (hmc) (Entered: 03/20/2020) |
| 06/05/2020 | 92 | | TRANSCRIPT OF PROCEEDINGS before Judge Trevor N. McFadden held on 03/05/2020; Page Numbers: 1−24. Date of Issuance:06/05/2020. Court Reporter/Transcriber Crystal M. Pilgrim, Telephone number 202.354.3127, Transcripts may be ordered by submitting the Transcript Order Form <br><br> For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenc ed above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. <br><br> Redaction Request due 6/26/2020. Redacted Transcript Deadline set for 7/6/2020. Release of Transcript Restriction set for 9/3/2020.(Pilgrim, Crystal) (Entered: 06/05/2020) |
| 08/14/2020 | 93 | | WITHDRAWN PURSUANT TO NOTICE FILED 09/04/2020.....MOTION to Lift Stay by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Attachments: # 1 Text of Proposed Order)(Letter, Douglas) Modified on 9/10/2020 (eg). (Entered: 08/14/2020) |
| 08/28/2020 | 94 | | Memorandum in opposition to re 93 MOTION to Lift Stay filed by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A (correspondence among counsel regarding accommodation))(Orloff, Serena) Modified docket event/text on 8/31/2020 (eg). (Entered: 08/28/2020) |
| 09/01/2020 | 95 | | |

| | | |
|---|---|---|
| | | NOTICE OF SUPPLEMENTAL AUTHORITY by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY (Attachments: # 1 McGahn Opinion)(Myers, Steven) (Entered: 09/01/2020) |
| 09/04/2020 | 96 | NOTICE *and Withdrawal of Motion to Lift Stay* re 93 by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Letter, Douglas) Modified to add link on 9/10/2020 (znmw). (Entered: 09/04/2020) |
| 09/11/2020 | 97 | NOTICE OF WITHDRAWAL OF APPEARANCE as to CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. Attorney David Michael Morrell terminated. (Morrell, David) (Entered: 09/11/2020) |
| 01/19/2021 | 98 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Patrick Strawbridge, Filing fee $ 100, receipt number ADCDC−8095166. Fee Status: Fee Paid. by DTTM OPERATIONS LLC, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER, LLC, DONALD J. TRUMP REVOCABLE TRUST, DTTM OPERATIONS MANAGING MEMBER CORP., LAMINGTON FARM CLUB, LLC, LFB ACQUISITION LLC, LFB ACQUISITION MEMBER CORP., DONALD J. TRUMP. (Attachments: # 1 Declaration Strawbridge, # 2 Text of Proposed Order)(Norris, Cameron) (Entered: 01/19/2021) |
| 01/19/2021 | | MINUTE ORDER granting 98 Motion for Leave to Appear Pro Hac Vice. Attorney Patrick Strawbridge is hereby admitted to appear pro hac vice in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. Signed by Judge Trevor N. McFadden on 1/19/2021. (lctnm2) (Entered: 01/19/2021) |
| 01/19/2021 | 99 | NOTICE of Appearance by Patrick Neilson Strawbridge on behalf of DTTM OPERATIONS LLC, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER, LLC, DONALD J. TRUMP REVOCABLE TRUST, DTTM OPERATIONS MANAGING MEMBER CORP., LAMINGTON FARM CLUB, LLC, LFB ACQUISITION LLC, LFB ACQUISITION MEMBER CORP., DONALD J. TRUMP (Strawbridge, Patrick) (Entered: 01/19/2021) |
| 01/19/2021 | 100 | MOTION for Telephone Conference by DTTM OPERATIONS LLC, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER, LLC, DONALD J. TRUMP REVOCABLE TRUST, DTTM OPERATIONS MANAGING MEMBER CORP., LAMINGTON FARM CLUB, LLC, LFB ACQUISITION LLC, LFB ACQUISITION MEMBER CORP., DONALD J. TRUMP. (Consovoy, William) (Entered: 01/19/2021) |
| 01/19/2021 | 101 | NOTICE OF WITHDRAWAL OF APPEARANCE as to GERALDINE R. GENNET, KERRY W. KIRCHER, IRVIN B. NATHAN, WILLIAM PITTARD, THOMAS J. SPULAK, CHARLES TIEFER. Attorney Wendy Liu terminated. (Liu, Wendy) (Entered: 01/19/2021) |
| 01/19/2021 | | MINUTE ORDER granting the Intervenor−Defendants' 100 Motion for Telephone Conference. The parties shall appear for a telephonic status conference on January 22, 2021 at 3:00 p.m., before Judge Trevor N. McFadden and be prepared to discuss the issues raised in the Intervenor−Defendants' 100 Motion. Dial−in information will be emailed to the |

| | | | |
|---|---|---|---|
| | | | parties. SO ORDERED. Signed by Judge Trevor N. McFadden on 1/19/2021. (lctnm2) (Entered: 01/19/2021) |
| 01/21/2021 | | | Set/Reset Hearings: Telephonic Status Conference set for 1/22/2021 at 3:00 PM before Judge Trevor N. McFadden. (hmc) (Entered: 01/21/2021) |
| 01/22/2021 | | | Minute Entry for proceedings held before Judge Trevor N. McFadden: Telephonic Status Conference held on 1/22/2021. Joint Status Report due by 2/3/2021. (Court Reporter: Crystal Pilgrim.) (hmc) (Entered: 01/22/2021) |
| 01/22/2021 | | | MINUTE ORDER. As stated at the status conference, it is hereby ORDERED that, until February 5, 2021, the Defendants shall provide 72 hours' notice to counsel for the Intervenor−Defendants before a release of President Trump's tax returns. It is further ORDERED that the parties shall file a joint status report on or before February 3, 2021. SO ORDERED. Signed by Judge Trevor N. McFadden on 1/22/2021. (lctnm2) (Entered: 01/22/2021) |
| 02/03/2021 | 102 | | Joint STATUS REPORT by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Gilligan, James) (Entered: 02/03/2021) |
| 02/03/2021 | | | MINUTE ORDER. Upon consideration of the parties' 102 Joint Status Report, it is hereby ordered that the parties shall file a further joint status report on or before March 3, 2021. It is further ordered that the notice requirement set forth in the Court's 1/22/2021 Minute Order shall be extended until March 3, 2021. SO ORDERED. Signed by Judge Trevor N. McFadden on 2/3/2021. (lctnm2) (Entered: 02/03/2021) |
| 02/04/2021 | | | Set/Reset Deadlines: Joint Status Report due by 3/3/2021. (hmc) (Entered: 02/04/2021) |
| 02/04/2021 | 103 | | NOTICE OF WITHDRAWAL OF APPEARANCE as to COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. Attorney Josephine T. Morse terminated. (Morse, Josephine) (Entered: 02/04/2021) |
| 02/24/2021 | 104 | | TRANSCRIPT OF PROCEEDINGS before Judge Trevor N. McFadden held on 01/22/2021; Page Numbers: 1−21. Date of Issuance:02/24/2021. Court Reporter/Transcriber Crystal M. Pilgrim, Telephone number 202.354.3127, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenc ed above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |

| | | | |
|---|---|---|---|
| | | | Redaction Request due 3/17/2021. Redacted Transcript Deadline set for 3/27/2021. Release of Transcript Restriction set for 5/25/2021.(Pilgrim, Crystal) (Entered: 02/24/2021) |
| 03/03/2021 | 105 | | Joint STATUS REPORT by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Gilligan, James) (Entered: 03/03/2021) |
| 03/03/2021 | | | MINUTE ORDER. Upon consideration of the parties' 105 Joint Status Report, it is hereby ordered that the parties shall file a further joint status report on or before March 31, 2021. It is further ordered that the notice requirement set forth in the Court's 1/22/2021 Minute Order shall be extended until April 1, 2021. In light of the concerns articulated by Plaintiff, it is further ordered that the parties shall appear for a telephonic status conference on April 1, 2021 at 10 a.m. before Judge McFadden. Dial−in details will be emailed to counsel. SO ORDERED. Signed by Judge Trevor N. McFadden on 3/3/2021. (lctnm2) (Entered: 03/03/2021) |
| 03/04/2021 | | | Set/Reset Deadlines/Hearings: Joint Status Report due by 3/31/2021. Notice requirement extended until 4/1/2021. Telephonic Status Conference set for 4/1/2021 at 10:00 AM before Judge Trevor N. McFadden. (hmc) (Entered: 03/04/2021) |
| 03/31/2021 | 106 | | Joint STATUS REPORT by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Gilligan, James) (Entered: 03/31/2021) |
| 03/31/2021 | | | MINUTE ORDER. Upon consideration of the parties' 106 Joint Status Report, the status conference previously scheduled for April 1, 2021 is hereby VACATED. The parties shall file a further joint status report on or before April 30, 2021. It is further ordered that the parties shall appear for a telephonic status conference on May 3, 2021 at 10:00 a.m. Dial−in details will be emailed to counsel. Given the unopposed request of the Intervenor−Defendants, the notice requirement set forth in the Court's 1/22/2021 Minute Order shall be extended until May 3, 2021. SO ORDERED. Signed by Judge Trevor N. McFadden on 3/31/2021. (lctnm2) (Entered: 03/31/2021) |
| 04/01/2021 | | | Set/Reset Deadlines/Hearings: Joint Status Report due by 4/30/2021. Telephonic Status Conference set for 5/3/2021 at 10:00 AM before Judge Trevor N. McFadden. (hmc) (Entered: 04/01/2021) |
| 04/30/2021 | 107 | | Joint STATUS REPORT by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Gilligan, James) (Entered: 04/30/2021) |
| 05/03/2021 | | | MINUTE ORDER. Upon consideration of the parties' 107 Joint Status Report and as stated at the status conference held today, it is hereby ordered that the parties shall file a joint status report on or before May 28, 2021. Given the unopposed request of the Intervenor−Defendants, it is further ordered that the notice requirement set forth in the Court's 1/22/2021 Minute Order shall be extended until June 4, 2021. SO ORDERED. Signed by Judge Trevor N. McFadden on 5/3/2021. (lctnm2) (Entered: 05/03/2021) |
| 05/03/2021 | | | Minute Entry for proceedings held before Judge Trevor N. McFadden: Telephonic Status Conference held on 5/3/2021. Joint Status Report due by |

| | | | |
|---|---|---|---|
| | | | 5/28/2021. (Court Reporter: Crystal Pilgrim.) (hmc) (Entered: 05/03/2021) |
| 05/28/2021 | 108 | | Joint STATUS REPORT by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Gilligan, James) (Entered: 05/28/2021) |
| 05/28/2021 | | | MINUTE ORDER. Upon consideration of the parties' 108 Joint Status Report, it is hereby ordered that the parties shall file a joint status report on or before July 2, 2021. Given the unopposed request of the Intervenor−Defendants, it is further ordered that the notice requirement set forth in the Court's 1/22/2021 Minute Order shall be extended until July 9, 2021. SO ORDERED. Signed by Judge Trevor N. McFadden on 5/28/2021. (lctnm2) (Entered: 05/28/2021) |
| 06/01/2021 | | | Set/Reset Deadlines: Joint Status Report due by 7/2/2021. Notice requirement due by 7/9/2021. (hmc) (Entered: 06/01/2021) |
| 07/02/2021 | 109 | | Joint STATUS REPORT by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Gilligan, James) (Entered: 07/02/2021) |
| 07/03/2021 | | | MINUTE ORDER. Upon consideration of the parties' 109 Joint Status Report, it is hereby ordered that the parties shall file a joint status report on or before July 30, 2021. Given the unopposed request of the Intervenor−Defendants, it is further ordered that the notice requirement set forth in the Court's 1/22/2021 Minute Order shall be extended until August 3, 2021. SO ORDERED. Signed by Judge Trevor N. McFadden on 7/3/2021. (lctnm2) (Entered: 07/03/2021) |
| 07/06/2021 | | | Set/Reset Deadlines: Joint Status Report due by 7/30/2021. (hmc) (Entered: 07/06/2021) |
| 07/09/2021 | 110 | | NOTICE OF WITHDRAWAL OF APPEARANCE as to COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. Attorney Megan Barbero terminated. (Barbero, Megan) (Entered: 07/09/2021) |
| 07/30/2021 | 111 | | Joint STATUS REPORT by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Gilligan, James) (Entered: 07/30/2021) |
| 07/30/2021 | | | MINUTE ORDER. Upon consideration of the parties' 111 Joint Status Report, it is hereby ordered that on or before August 4, 2021, the parties shall file a joint status report proposing a schedule for further proceedings. Pending resolution of those proceedings, and in light of the Administration's agreement, Defendants shall provide 72 hours' notice to counsel for the Intervenor−Defendants before any release of the tax return information at issue. SO ORDERED. Signed by Judge Trevor N. McFadden on 7/30/2021. (lctnm1) (Entered: 07/30/2021) |
| 07/31/2021 | 112 | | ERRATA *((Joint Status Report (Corrected))* by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY re 111 Status Report filed by INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY, CHARLES P. RETTIG. (Gilligan, James) (Entered: 07/31/2021) |
| 08/02/2021 | | | |

| | | | |
|---|---|---|---|
| | | | Set/Reset Deadlines: Joint Status Report due by 8/4/2021. (hmc) (Entered: 08/02/2021) |
| 08/04/2021 | 113 | | ANSWER to Complaint , CROSSCLAIM against UNITED STATES DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES P. RETTIG, COUNTERCLAIM against COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES by DONALD J. TRUMP, LAMINGTON FARM CLUB, LLC, DTTM OPERATIONS MANAGING MEMBER CORP., LFB ACQUISITION MEMBER CORP., LFB ACQUISITION LLC, DTTM OPERATIONS LLC, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER, LLC, DONALD J. TRUMP REVOCABLE TRUST.(Strawbridge, Patrick) (Entered: 08/04/2021) |
| 08/04/2021 | 114 | | Joint STATUS REPORT by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. (Letter, Douglas) (Entered: 08/04/2021) |
| 08/04/2021 | 115 | | MOTION to Dismiss by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. (Letter, Douglas) (Entered: 08/04/2021) |
| 08/05/2021 | | | MINUTE ORDER granting the 115 Motion to Dismiss. The claims by the Committee on Ways and Means against the executive branch are hereby DISMISSED without prejudice. *See* Fed. R. Civ. P. 41(a)(2). Signed by Judge Trevor N. McFadden on 8/5/2021. (lctnm1) (Entered: 08/05/2021) |
| 08/05/2021 | | | MINUTE ORDER. Upon consideration of the 114 Joint Status Report, the parties are hereby ORDERED to appear for a telephonic status conference at 3:00 p.m. on August 9, 2021. Dial in details will be emailed to counsel. SO ORDERED. Signed by Judge Trevor N. McFadden on 8/5/2021. (lctnm1) (Entered: 08/05/2021) |
| 08/05/2021 | | | Set/Reset Hearings: Telephonic Status Conference set for 8/9/2021 at 3:00 PM before Judge Trevor N. McFadden. (hmc) (Entered: 08/05/2021) |
| 08/05/2021 | 116 | | NOTICE of Appearance by Seth Paul Waxman on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Waxman, Seth) (Entered: 08/05/2021) |
| 08/05/2021 | 117 | | NOTICE of Appearance by Kelly P. Dunbar on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Dunbar, Kelly) (Entered: 08/05/2021) |
| 08/06/2021 | 118 | | NOTICE of Appearance by Elizabeth J. Shapiro on behalf of INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY (Shapiro, Elizabeth) (Entered: 08/06/2021) |
| 08/06/2021 | 119 | | NOTICE of Appearance by David Mark Lehn on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Lehn, David) (Entered: 08/06/2021) |
| 08/09/2021 | 120 | | NOTICE of Appearance by Julia Alexandra Heiman on behalf of CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY (Heiman, Julia) |

| | | | |
|---|---|---|---|
| | | | (Entered: 08/09/2021) |
| 08/09/2021 | | | Minute Entry for proceedings held before Judge Trevor N. McFadden: Telephonic Status Conference held on 8/9/2021. Government's response to the Intervenors' Cross−Claim and Counterclaim due by 9/9/2021. Intervenors' opposition due by 10/7/2021. Government's reply due by 10/21/2021. Motion Hearing set for 11/8/2021 at 10:00 AM in Courtroom 2− In Person before Judge Trevor N. McFadden. (Court Reporter: Lisa Bankins.) (hmc) Modified on 8/9/2021 to correct dates (hmc). (Entered: 08/09/2021) |
| 08/16/2021 | 121 | | NOTICE of Appearance by Stacie Marion Fahsel on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Fahsel, Stacie) (Entered: 08/16/2021) |
| 09/01/2021 | | | MINUTE ORDER. 44 Motion to Dismiss denied as moot in light of the dismissal of the Complaint to which it referred. Signed by Judge Trevor N. McFadden on 9/1/2021. (hmc) (Entered: 09/01/2021) |
| 09/09/2021 | 122 | | NOTICE of Appearance by Andres C. Salinas on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Salinas, Andres) (Entered: 09/09/2021) |
| 09/09/2021 | 123 | | MOTION to Dismiss by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Text of Proposed Order)(Letter, Douglas) (Entered: 09/09/2021) |
| 09/09/2021 | 124 | | MOTION to Dismiss *(Cross−Defendants' Motion To Dismiss)* by CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, UNITED STATES DEPARTMENT OF THE TREASURY. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Gilligan, James) (Entered: 09/09/2021) |
| 09/10/2021 | 125 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Katherine V. Kelsh, Filing fee $ 100, receipt number ADCDC−8723854. Fee Status: Fee Paid. by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. (Attachments: # 1 Declaration of Katherine V. Kelsh, # 2 Text of Proposed Order)(Lehn, David) (Entered: 09/10/2021) |
| 09/13/2021 | | | MINUTE ORDER granting 125 Motion for Leave to Appear *Pro Hac Vice*. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click here for instructions. Signed by Judge Trevor N. McFadden on 9/13/2021. (lctnm2) (Entered: 09/13/2021) |
| 09/15/2021 | 126 | | MOTION for Leave to File *Amicus Curiae Brief in Support of Counter−Defendant and Cross−Defendants* by CONSTITUTIONAL ACCOUNTABILITY CENTER. (Attachments: # 1 Exhibit Brief of Constitutional Accountability Center as Amicus Curiae in Support of Counter−Defendant and Cross−Defendants, # 2 Text of Proposed Order)(Gorod, Brianne) (Entered: 09/15/2021) |
| 09/15/2021 | | | MINUTE ORDER granting 126 Motion for Leave to File Amicus Brief. Signed by Judge Trevor N. McFadden on 9/15/2021. (lctnm2) (Entered: 09/15/2021) |
| 09/15/2021 | 127 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Appearance by Katie Kelsh on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Kelsh, Katie) (Entered: 09/15/2021) |
| 09/15/2021 | 128 | | AMICUS BRIEF by CONSTITUTIONAL ACCOUNTABILITY CENTER. (eg) (Entered: 09/17/2021) |
| 09/28/2021 | 129 | | ANSWER to Complaint , Amended CROSSCLAIM against UNITED STATES DEPARTMENT OF THE TREASURY, STEVEN T. MNUCHIN, CHARLES P. RETTIG, INTERNAL REVENUE SERVICE, Amended COUNTERCLAIM against COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES by LFB ACQUISITION MEMBER CORP., DONALD J. TRUMP, DONALD J. TRUMP REVOCABLE TRUST, DJT HOLDINGS MANAGING MEMBER, LLC, LFB ACQUISITION LLC, DTTM OPERATIONS LLC, DJT HOLDINGS LLC, LAMINGTON FARM CLUB, LLC, DTTM OPERATIONS MANAGING MEMBER CORP.. (Attachments: # 1 Redline)(Strawbridge, Patrick) (Entered: 09/28/2021) |
| 09/28/2021 | | | MINUTE ORDER. The Trump Parties have filed an 129 Amended Crossclaim and Counterclaim within the time period allowed as a matter of course under the federal rules. *See* Fed. R. Civ. P. 15(a)(1)(B). The Court accordingly denies as moot the 123 , 124 Motions to Dismiss the previous Crossclaim and Counterclaim. The new briefing schedule is as follows: the Committee on Ways and Means and the Executive Branch Defendants shall file their motions to dismiss the 129 Amended Crossclaim and Counterclaim on or before October 12, 2021; the Trump Parties shall file their opposition on or before October 26, 2021; and any replies from the Committee on Ways and Means and the Executive Branch Defendants shall be filed on or before November 2, 2021. The hearing on those motions will remain scheduled for November 8, 2021 at 10:00 a.m. in Courtroom 2 before Judge Trevor N. McFadden. SO ORDERED. Signed by Judge Trevor N. McFadden on 9/28/21. (lctnm2) (Entered: 09/28/2021) |
| 09/28/2021 | | | Set/Reset Deadlines: Motions to dismiss Amended Crossclaim and Counterclaim due by 10/12/2021. Opposition due by 10/26/2021. Replies due by 11/2/2021. (hmc) (Entered: 09/28/2021) |
| 10/04/2021 | 130 | | NOTICE *of withdrawal of counsel* by GERALDINE R. GENNET, KERRY W. KIRCHER, IRVIN B. NATHAN, WILLIAM PITTARD, THOMAS J. SPULAK, CHARLES TIEFER (Smith, David) (Entered: 10/04/2021) |
| 10/04/2021 | 131 | | ENTERED IN ERROR.....NOTICE *of withdrawal of counsel* by COMMITTEE ON OVERSIGHT AND REFORM OF THE U.S. HOUSE OF REPRESENTATIVES (Smith, David) Modified on 10/6/2021 (zeg). (Entered: 10/04/2021) |
| 10/04/2021 | 132 | | ENTERED IN ERROR.....NOTICE *of withdrawal of counsel* by DAVID TOREN (Smith, David) Modified on 10/5/2021 (zjf). (Entered: 10/04/2021) |
| 10/05/2021 | | | NOTICE OF CORRECTED DOCKET ENTRY: Document Nos. re 131 Notice (Other), 132 Notice (Other) was entered in error and counsel was instructed to refile said pleading in the correct case. (zjf) (Entered: 10/05/2021) |
| 10/12/2021 | 133 | | |

| | | | |
|---|---|---|---|
| | | | MOTION to Dismiss *amended counterclaims* by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Text of Proposed Order)(Letter, Douglas) (Entered: 10/12/2021) |
| 10/12/2021 | 134 | | Unopposed MOTION for Leave to File Excess Pages *(Unopposed Motion for Leave to Exceed Page Limit)* by CHARLES P. RETTIG(in his official capacity as Commissioner of the Internal Revenue Service), INTERNAL REVENUE SERVICE, UNITED STATES DEPARTMENT OF THE TREASURY, JANET YELLEN. (Attachments: # 1 Text of Proposed Order)(Gilligan, James) (Entered: 10/12/2021) |
| 10/12/2021 | 135 | | MOTION to Dismiss *(Cross−Defendants Motion to Dismiss Amended Cross−Claims)* by CHARLES P. RETTIG(in his official capacity as Commissioner of the Internal Revenue Service), INTERNAL REVENUE SERVICE, UNITED STATES DEPARTMENT OF THE TREASURY, JANET YELLEN. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Gilligan, James) (Entered: 10/12/2021) |
| 10/13/2021 | | | MINUTE ORDER granting 134 Unopposed Motion for Leave to File Excess Pages. The Executive Branch Defendants' 135 Motion to Dismiss shall remain on the docket. SO ORDERED. Signed by Judge Trevor N. McFadden on 10/13/21. (lctnm2) (Entered: 10/13/2021) |
| 10/18/2021 | 136 | | MOTION for Leave to File *Amicus Curiae Brief in Support of Counterdefendant and Crossdefendants* by CONSTITUTIONAL ACCOUNTABILITY CENTER. (Attachments: # 1 Exhibit Brief of Constitutional Accountability Center as Amicus Curiae in Support of Counterdefendant and Crossdefendants, # 2 Text of Proposed Order)(Gorod, Brianne) (Entered: 10/18/2021) |
| 10/18/2021 | | | MINUTE ORDER granting 136 Motion for Leave to File Amicus Brief. Signed by Judge Trevor N. McFadden on 10/18/2021. (lctnm2) (Entered: 10/18/2021) |
| 10/18/2021 | 138 | | AMICUS BRIEF by CONSTITUTIONAL ACCOUNTABILITY CENTER. (eg) (Entered: 10/21/2021) |
| 10/21/2021 | 137 | | Unopposed MOTION to file a consolidated opposition to the motions to dismiss of no more than 90 pages by DTTM OPERATIONS LLC, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER, LLC, DONALD J. TRUMP REVOCABLE TRUST, DTTM OPERATIONS MANAGING MEMBER CORP., LAMINGTON FARM CLUB, LLC, LFB ACQUISITION LLC, LFB ACQUISITION MEMBER CORP., DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Strawbridge, Patrick) Modified event title on 10/25/2021 (znmw). (Entered: 10/21/2021) |
| 10/21/2021 | | | MINUTE ORDER granting 137 Unopposed Motion to File a Consolidated Opposition. The Trump Parties shall file a combined opposition, not to exceed 90 pages, to the pending 133 , 135 Motions to Dismiss. SO ORDERED. Signed by Judge Trevor N. McFadden on 10/21/21. (lctnm2) (Entered: 10/21/2021) |
| 10/25/2021 | | | MINUTE ORDER. The Motion Hearing previously scheduled for November 8, 2021, is hereby RESCHEDULED to November 16, 2021, at 2:00 p.m. in Courtroom 2 before Judge Trevor N. McFadden. SO ORDERED. Signed by |

| | | | |
|---|---|---|---|
| | | | Judge Trevor N. McFadden on 10/25/21. (lctnm2) (Entered: 10/25/2021) |
| 10/25/2021 | | | Set/Reset Hearings: Motion Hearing rescheduled to 11/16/2021 at 02:00 PM in Courtroom 2– In Person before Judge Trevor N. McFadden. (hmc) (Entered: 10/25/2021) |
| 10/25/2021 | 139 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 133 MOTION to Dismiss *amended counterclaims*, 135 MOTION to Dismiss *(Cross–Defendants Motion to Dismiss Amended Cross–Claims)* by DTTM OPERATIONS LLC, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER, LLC, DONALD J. TRUMP REVOCABLE TRUST, DTTM OPERATIONS MANAGING MEMBER CORP., LAMINGTON FARM CLUB, LLC, LFB ACQUISITION LLC, LFB ACQUISITION MEMBER CORP., DONALD J. TRUMP. (Strawbridge, Patrick) (Entered: 10/25/2021) |
| 10/25/2021 | | | MINUTE ORDER denying 139 Motion for Extension of Time. The parties will adhere to the Court's previous briefing schedule, as set out in the Minute Order dated September 28, 2021. SO ORDERED. Signed by Judge Trevor N. McFadden on 10/25/21. (lctnm2) (Entered: 10/25/2021) |
| 10/26/2021 | 140 | | Memorandum in opposition to re 133 MOTION to Dismiss *amended counterclaims*, 135 MOTION to Dismiss *(Cross–Defendants Motion to Dismiss Amended Cross–Claims)* filed by DTTM OPERATIONS LLC, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER, LLC, DONALD J. TRUMP REVOCABLE TRUST, DTTM OPERATIONS MANAGING MEMBER CORP., LAMINGTON FARM CLUB, LLC, LFB ACQUISITION LLC, LFB ACQUISITION MEMBER CORP., DONALD J. TRUMP. (Strawbridge, Patrick) (Entered: 10/26/2021) |
| 10/30/2021 | 141 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 135 MOTION to Dismiss *(Cross–Defendants Motion to Dismiss Amended Cross–Claims) Unopposed Motion for a Two–Day Extension of Time to File Their Reply* by CHARLES P. RETTIG(in his official capacity as Commissioner of the Internal Revenue Service), INTERNAL REVENUE SERVICE, UNITED STATES DEPARTMENT OF THE TREASURY, JANET YELLEN. (Attachments: # 1 Text of Proposed Order)(Heiman, Julia) (Entered: 10/30/2021) |
| 10/30/2021 | | | MINUTE ORDER granting 141 Motion for Extension of Time. The Executive Branch Defendants reply is due on November 4, 2021. SO ORDERED. Signed by Judge Trevor N. McFadden on 10/31/21. (lctnm2) (Entered: 10/30/2021) |
| 11/01/2021 | | | Set/Reset Deadlines: Executive Branch's reply due by 11/4/2021. (hmc) (Entered: 11/01/2021) |
| 11/02/2021 | 142 | | REPLY to opposition to motion re 133 MOTION to Dismiss *amended counterclaims* filed by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. (Letter, Douglas) (Entered: 11/02/2021) |
| 11/04/2021 | 143 | | REPLY to opposition to motion re 124 MOTION to Dismiss *(Cross–Defendants' Motion To Dismiss) (Reply in Support of Cross–Defendants' Motion to Dismiss Intervenor–Defendants' Amended Cross–Claims)* filed by CHARLES P. RETTIG(in his official capacity as Commissioner of the Internal Revenue Service), INTERNAL REVENUE |

| | | | SERVICE, UNITED STATES DEPARTMENT OF THE TREASURY, JANET YELLEN. (Gilligan, James) (Entered: 11/04/2021) |
|---|---|---|---|
| 11/10/2021 | 144 | | NOTICE OF WITHDRAWAL OF APPEARANCE as to CHARLES P. RETTIG(in his official capacity as Commissioner of the Internal Revenue Service), INTERNAL REVENUE SERVICE, UNITED STATES DEPARTMENT OF THE TREASURY, JANET YELLEN. Attorney Serena Maya Schulz Orloff terminated. (Orloff, Serena) (Entered: 11/10/2021) |
| 11/13/2021 | 145 | | NOTICE OF SUPPLEMENTAL AUTHORITY by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Attachments: # 1 Exhibit)(Letter, Douglas) (Entered: 11/13/2021) |
| 11/16/2021 | | | NOTICE. The November 16, 2021 Motion Hearing will be audio streamed on: https://www.dcd.uscourts.gov/national−audio−streaming−pilot−program (hmc) (Entered: 11/16/2021) |
| 11/16/2021 | | | Minute Entry for proceedings held before Judge Trevor N. McFadden: Motion Hearing held on 11/16/2021 re 133 MOTION to Dismiss *amended counterclaims*, 135 MOTION to Dismiss *(Cross−Defendants Motion to Dismiss Amended Cross−Claims)*. Held under advisement. (Court Reporter: Lisa Griffith.) (hmc) (Entered: 11/16/2021) |
| 12/10/2021 | 146 | | TRANSCRIPT OF PROCEEDINGS before Judge Trevor N. McFadden held on 11−16−2021; Page Numbers: 1−120. Date of Issuance:12−10−2021. Court Reporter/Transcriber Lisa W Griffith, Telephone number 202−354−3247, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 12/31/2021. Redacted Transcript Deadline set for 1/10/2022. Release of Transcript Restriction set for 3/10/2022.(Griffith, Lisa) (Entered: 12/10/2021) |
| 12/14/2021 | 147 | | NOTICE OF SUPPLEMENTAL AUTHORITY by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Letter, Douglas) (Entered: 12/14/2021) |
| 12/14/2021 | 148 | | MEMORANDUM OPINION re Counterdefendant's 133 Motion to Dismiss and Cross−Defendants' 135 Motion to Dismiss. Signed by Judge Trevor N. McFadden on 12/14/21. (lctnm2) (Entered: 12/14/2021) |
| 12/14/2021 | 149 | | ORDER. For the reasons stated in the 148 Memorandum Opinion, Counterdefendant's 133 Motion to Dismiss and Cross−Defendants' 135 Motion |

| | | | |
|---|---|---|---|
| | | | to Dismiss are GRANTED. See attached Order for details. Signed by Judge Trevor N. McFadden on 12/14/2021. (lctnm2) (Entered: 12/14/2021) |
| 12/14/2021 | 150 | | ORDER staying the Court's judgment, as discussed in the 149 Order, for 14 days. See attached Order for details. Signed by Judge Trevor N. McFadden on 12/14/21. (lctnm2) (Entered: 12/14/2021) |
| 12/14/2021 | 151 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 149 Order on Motion to Dismiss,,, 148 Memorandum & Opinion by DTTM OPERATIONS LLC, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER, LLC, DONALD J. TRUMP REVOCABLE TRUST, DTTM OPERATIONS MANAGING MEMBER CORP., LAMINGTON FARM CLUB, LLC, LFB ACQUISITION LLC, LFB ACQUISITION MEMBER CORP., DONALD J. TRUMP. Filing fee $ 505, receipt number ADCDC−8929739. Fee Status: Fee Paid. Parties have been notified. (Strawbridge, Patrick) (Entered: 12/14/2021) |
| 12/14/2021 | 152 | | Amended NOTICE OF APPEAL re appeal 151 by DTTM OPERATIONS LLC, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER, LLC, DONALD J. TRUMP REVOCABLE TRUST, DTTM OPERATIONS MANAGING MEMBER CORP., LAMINGTON FARM CLUB, LLC, LFB ACQUISITION LLC, LFB ACQUISITION MEMBER CORP., DONALD J. TRUMP. (Strawbridge, Patrick) (Entered: 12/14/2021) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENT-ATIVES, | |
| Plaintiff-Counterdefendant, | No. 1:19-cv-1974-TNM |
| v. | |
| UNITED STATES DEPARTMENT OF THE TREASURY; et al., | |
| Defendants-Crossdefendants, | |
| and | |
| DONALD J. TRUMP; et al., | |
| Intervenors-Counterclaimants-Crossclaimants. | |

### NOTICE OF APPEAL

Intervenors (Donald J. Trump; The Donald J. Trump Revocable Trust; DJT Holdings LLC; DJT Holdings Managing Member LLC; DTTM Operations LLC; DTTM Operations Managing Member Corp.; LFB Acquisition Member Corp.; LFB Acquisition LLC; Lamington Farm Club, LLC d/b/a Trump National Golf Club-Bedminster) hereby appeal to the U.S. Court of Appeals for the D.C. Circuit this Court's memorandum opinion and order dated December 14, 2021. *See* Docs. 148; 149.

Respectfully submitted,

Dated: December 14, 2021

_/s/ Patrick Strawbridge_____
Patrick Strawbridge (pro hac vice)
CONSOVOY MCCARTHY PLLC
Ten Post Office Square, 8th Floor
South PMB #706
Boston, MA 02109
(617) 227-0548
patrick@consovoymccarthy.com

William S. Consovoy (D.C. Bar #493423)
Cameron T. Norris
James P. McGlone*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
cam@consovoymccarthy.com
jim@consovoymccarthy.com

*Barred in MA, but not yet VA.
Work supervised by principals of the firm.

## CERTIFICATE OF SERVICE

I filed this notice of appeal with the Court via ECF, which will email everyone requiring

notice.

Dated: December 14, 2021

_/s/ Patrick Strawbridge_____

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENT-ATIVES, | |
| Plaintiff-Counterdefendant, | |
| v. | No. 1:19-cv-1974-TNM |
| UNITED STATES DEPARTMENT OF THE TREASURY; et al., | |
| Defendants-Crossdefendants, | |
| and | |
| DONALD J. TRUMP; et al., | |
| Intervenors-Counterclaimants-Crossclaimants. | |

**NOTICE OF APPEAL**

Intervenors (Donald J. Trump; The Donald J. Trump Revocable Trust; DJT Holdings LLC; DJT Holdings Managing Member LLC; DTTM Operations LLC; DTTM Operations Managing Member Corp.; LFB Acquisition Member Corp.; LFB Acquisition LLC; Lamington Farm Club, LLC d/b/a Trump National Golf Club-Bedminster) hereby appeal to the U.S. Court of Appeals for the D.C. Circuit this Court's memorandum opinion and order dated December 14, 2021. *See* Docs. 148; 1149.

1

Respectfully submitted,

Dated: December 14, 2021     _/s/ Patrick Strawbridge_____
Patrick Strawbridge (pro hac vice)
CONSOVOY MCCARTHY PLLC
Ten Post Office Square, 8th Floor
South PMB #706
Boston, MA 02109
(617) 227-0548
patrick@consovoymccarthy.com

William S. Consovoy (D.C. Bar #493423)
Cameron T. Norris
James P. McGlone*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
cam@consovoymccarthy.com
jim@consovoymccarthy.com

*Barred in MA, but not yet VA.
Work supervised by principals of the firm.

## CERTIFICATE OF SERVICE

I filed this notice of appeal with the Court via ECF, which will email everyone requiring notice.

Dated: December 14, 2021     _/s/ Patrick Strawbridge_____

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **COMMITTEE ON WAYS AND MEANS, U.S. HOUSE OF REPRESENTATIVES**, <br><br> Plaintiff, <br><br> v. <br><br> **U.S. DEPARTMENT OF THE TREASURY**, *et al.*, <br><br> Defendants, <br><br> **DONALD J. TRUMP**, *et al.*, <br><br> Defendant-Intervenors. | Case No. 1:19-cv-01974 (TNM) |

## <u>ORDER</u>

For the reasons set forth in the accompanying Memorandum Opinion and upon consideration of the law and the briefs and arguments of the parties, it is hereby

**ORDERED** that Counterdefendant's [133] Motion to Dismiss is GRANTED.  It is also

**ORDERED** that Cross-Defendants' [135] Motion to Dismiss is GRANTED, and the Amended Counterclaims and Cross-claims are dismissed.

**SO ORDERED**.

This is a final, appealable Order.  The Clerk of Court is requested to close this case.

2021.12.14
17:10:50 -05'00'

Dated: December 14, 2021

TREVOR N. McFADDEN
United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **COMMITTEE ON WAYS AND MEANS,<br>U.S. HOUSE OF REPRESENTATIVES**, |
| Plaintiff, |
| v. |
| **U.S. DEPARTMENT OF THE<br>TREASURY**, *et al.*, |
| Defendants, |
| **DONALD J. TRUMP**, *et al.*, |
| Defendant-Intervenors. |

Case No. 1:19-cv-01974 (TNM)

## MEMORANDUM OPINION

Former President Donald J. Trump sues to keep the Treasury from giving his tax returns to the House Committee on Ways and Means, which can publish them. He marshals an array of evidence suggesting the Committee's purported interest in the Presidential Audit Program, an IRS policy that requires audits of the sitting President, is a subterfuge for improper motives—like exposing his returns. He also raises legal arguments against the statute on which the Committee relies.

But even if the former President is right on the facts, he is wrong on the law. A long line of Supreme Court cases requires great deference to facially valid congressional inquiries. Even the special solicitude accorded former Presidents does not alter the outcome. The Court will therefore dismiss this case.

Congress first levied an income tax in 1862, at the height of the Civil War.  *See* Act of July 1, 1862, § 6, 12 Stat. 432, 434.  Under that law, the public could access and inspect any tax return.  *See id.* §§ 14-16, 18-19.  Many criticized such liberal access, causing Congress to let the law lapse a decade later.  *See* Office of Tax Policy, Dep't of Treasury, *Report to the Congress on Scope and Use of Taxpayer Confidentiality and Disclosure Provisions* 16 (2000) ("Tax Policy Report").[1]  Congress returned to an income-tax model several years later but needed a constitutional amendment to enact it.  *See* U.S. Const. amend. XVI.  The first post-Amendment tax law denied public inspection of tax returns, providing instead that returns submitted to the IRS would be "open to inspection only upon the order of the President, under rules and regulations to be prescribed by the Secretary of the Treasury."  Tariff Act of 1913, Pub. L. No. 63-16, § II.G(d), 38 Stat. 114, 177.

In the Revenue Act of 1926, Congress first allowed its committees to access tax returns. *See* Pub. L. No. 69-20, § 257(b)(1), 44 Stat. 9, 51.  The relevant provision directed that the Secretary of the Treasury "shall furnish" the House Ways and Means Committee and the Senate Finance Committee with "any data of any character contained in or shown by any return."  *Id.* The committees then could submit that information to the full Senate or House.  *Id.* § 257(b)(3).

These provisions remained largely unchanged until the mid-1970s, when the Nixon Administration returned taxpayer privacy to the fore.  In 1973, President Nixon issued two executive orders authorizing the Department of Agriculture to inspect "for statistical purposes"

---

[1]  Available at https://home.treasury.gov/system/files/131/Report-Taxpayer-Confidentiality-2010.pdf.

the tax returns of all farmers.  *See* Exec. Order 11697, 38 Fed. Reg. 1723 (Jan. 17, 1973); Exec. Order 11709, 38 Fed. Reg. 8131, 38 Fed. Reg. 8131 (Mar. 27, 1973).  Congress objected, and the President revoked the orders.  *See* Exec. Order 11733, 39 Fed. Reg. 10,881 (Mar. 22, 1974).

More concerning to Congress, however, was that members of the Nixon White House obtained IRS records, including tax returns, for many of Nixon's political opponents.  *See* Tax Policy Report at 21.  The Senate Watergate Committee also learned that the White House had often requested the tax returns and audit information of certain taxpayers.  *See id.*  And the House Judiciary Committee heard evidence that President Nixon himself had improperly accessed IRS tax records.  *See id.*  These revelations worried the House committee enough that it proposed an article of impeachment alleging that Nixon had violated the constitutional rights of taxpayers.  *See Report on the Impeachment of Richard M. Nixon*, H.R. Rep. No. 93-1305, at 3 (1974).

Congress addressed these concerns in the Tax Reform Act of 1976.  *See* Pub. L. No. 94-455, 90 Stat. 1520.  That Act established a comprehensive statutory scheme, codified at 26 U.S.C. § 6103, for disclosing tax records.  In general, tax returns and return information "shall be confidential" unless they fall into one of thirteen narrow exceptions.  26 U.S.C. § 6103(a), (c)-(o).  Indeed, unauthorized disclosure of tax returns is a felony.  *See* 26 U.S.C. § 7213.

Of relevance here, § 6103(f) allows congressional committees—in language like the original 1926 provision—to request tax returns from the Treasury.  Specifically, "[u]pon written request from the chairman" of the Ways and Means Committee or the Senate Finance Committee, the Treasury "shall furnish such committee with any return or return information specified in such request."  26 U.S.C. § 6103(f)(1).  For any information associated with a particular taxpayer, the Committee must sit in closed executive session to receive it.  *See id.*

Congressional requests under § 6103(f) rarely reach the public eye.  Committees usually request returns for statistical data purposes.  *See* Congressional Committee's Request for the President's Tax Returns Under 26 U.S.C. § 6103(f), 2019 WL 2563046 at *4 (O.L.C. Jun. 13, 2019).  The statute allows three committees, however, to "submit[ ]" the received information to the full House or Senate, placing it in the congressional record.  *See* 26 U.S.C. § 6103(f)(4)(A).  But committees hardly ever do so.  In fact, a committee has published tax information only once under the current iteration of § 6103(f)—in 2014 after an investigation into the IRS's discriminatory treatment of conservative organizations.  *See generally* George Yin, *Preventing Congressional Violations of Taxpayer Privacy*, 69 Tax Lawyer 103, 108–113 (2015).  No party has identified a previous request under § 6103(f) for the tax information of a former or sitting President.  We are in uncharted territory.

With this historical and statutory background in mind, the Court turns to the congressional request here.

**B.**

As Donald Trump campaigned for the 2016 Republican presidential nomination, he refused to publicly release his tax returns.  *See* Amended Answer and Counterclaims/Crossclaims (ACCC) ¶ 6, ECF No. 129.  That refusal led many—including his eventual opponent, Hilary Clinton, and then-Vice President Joe Biden—to demand that he release his returns.  *See id.* ¶¶ 13–15.  He did not oblige.  Trump won the nomination and the election without ever releasing his tax returns.  Republicans also won a majority in both the House and the Senate.  *See id.* ¶ 20.

Representative Richard Neal was the Committee's Ranking Member at the time.  *See id.*  Within months of President Trump's inauguration, he and other Democratic lawmakers

suggested that the Committee should invoke § 6103(f) to request President Trump's tax returns. Ninety-two House Democrats, including Neal, sponsored a resolution to require the Treasury to provide Trump's returns to the House. *See* H. Res. 186, 115th Congress; ACCC ¶ 25. The Committee's Republican majority rejected it. *See* ACCC ¶ 27. Despite this setback, congressional Democrats tried to obtain President Trump's tax returns "through letters, resolutions, draft legislation, proposed amendments, and more" throughout the 115th Congress. *Id.* ¶ 30. They were unsuccessful.

Voters in the 2018 elections gave Democrats control of the House and thus of the Committee. *See id.* ¶ 74. Ranking Member Neal became chairman and announced that the Committee "would pursue the public release of President Trump's tax returns." *Id.* ¶¶ 74, 83.

In April 2019, Chairman Neal officially requested the tax returns through a two-page letter to the IRS. *See id.* ¶ 123; *see also* Counterdefendant's Motion to Dismiss, Ex. A (2019 Request), ECF No. 133-1. That letter said the Committee was considering "the extent to which the IRS audits and enforces the Federal tax laws against a President." 2019 Request at 1.[2] Chairman Neal noted that IRS policy—called the Presidential Audit Program (Program)— required a mandatory examination of the President's tax returns. *See id.* The Chairman then wrote that the Committee needed "to determine the scope of any such examination" and whether it reviewed all "underlying business activities required to be reported." *Id.*

To that end, Chairman Neal requested under § 6103(f) the tax returns from 2013–2018 for President Trump and for eight business organizations controlled by him. *See id.* at 1–2. Chairman Neal also requested any administrative files for those returns, as well as a statement by

---

[2]  All page citations refer to the pagination generated by the Court's CM/ECF system and all exhibit numbers refer to the numbered attachments to the CM/ECF filings.

the IRS on whether it had audited each taxpayer and, if so, what information each audit had examined.  *See id.*

The Treasury denied his request.  Reviewing public statements by congressional Democrats, the Treasury concluded that the request's stated purpose contradicted what Democrats had "repeatedly said was the request's intent: to publicly release the President's tax returns."  ACCC ¶ 217.  The Department of Justice agreed.  In a memorandum opinion, DOJ's Office of Legal Counsel (OLC) summarized public statements from Democrats and found that no one had previously explained an interest in the tax returns by reference to the IRS audit Program.  *See id.* ¶ 219–20.  The Committee's newly asserted rationale "blink[ed] reality" and was "pretextual."  *Id.* ¶ 220.

The Committee then sued the IRS and the Treasury (collectively, Executive Branch Defendants).  *See* Compl., ECF No. 1.  President Trump and his businesses (collectively, Intervenors) intervened on the side of the Executive Branch Defendants.  *See* Order, ECF No. 14.  During the pendency of the case, President Trump lost the 2020 election, and the incoming Biden Administration reconsidered the Executive Branch's litigating posture.

Meanwhile, in June 2021, Chairman Neal sent another letter to the Treasury requesting Intervenors' tax returns.  *See* Counterdefendant's Motion to Dismiss, Ex. C ("2021 Request"), ECF No. 133-3.  The 2021 Request asked for the same types of information as the 2019 Request, invoking various justifications.  Unlike that earlier letter, however, Chairman Neal requested Intervenors' materials from 2015–2020.  *See id.* at 6.

Shortly after Chairman Neal sent the 2021 Request, OLC released a new opinion stating that § 6103(f) required the Executive Branch to comply with the Committee's request.  *See* Ways and Means Comm.'s Request for the Former President's Tax Returns and Tax Information

6

Pursuant to 26 U.S.C. § 6103(f)(1), 2021 WL 3418600, at *25 (O.LC. July 30, 2021). Armed with the new OLC opinion, the Executive Branch Defendants announced their intention to hand over Intervenors' tax returns. *See* Joint Status Report at 2, ECF No. 111. So the Committee dismissed its claims against the Executive Branch Defendants. *See* Minute Order (Aug. 5, 2021).

Intervenors then brought counterclaims and crossclaims against the Committee and the Executive Branch Defendants (collectively, Federal Parties). *See* ACCC. Across eight claims, Intervenors allege that (1) the Committee's request for tax materials lacks a valid legislative purpose; (2) the Committee's request violates the separation of powers; (3) § 6103(f) is facially unconstitutional; (4) the Executive Branch Defendants switched position in retaliation against Intervenors based on their protected speech, in violation of the First Amendment; and (5) the request violates Intervenors' Due Process rights. The Federal Parties move to dismiss the case. *See* Counterdefendant's Motion to Dismiss ("Comm. MTD"), ECF No. 133; Cross-Defendants' Motion to Dismiss ("Gov't MTD"), ECF No. 135-1. Those motions are now ripe.[3]

## II.

The Federal Parties seek dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts the pleading's factual allegations as true and grants Intervenors "all inferences that can

---

[3] This Court has jurisdiction over these claims under 28 U.S.C. § 1331.

be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up).

"A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Banneker Venture, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (cleaned up). Although the Court must draw inferences in the claimant's favor, it need not "assume the truth of legal conclusions." *Id.* The Court also need not credit "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

The Committee's dismissal motion is entitled to special consideration. "When one branch of Government is being asked to halt the functions of a coordinate branch[,]" courts must give the dispute a "most expeditious treatment." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 511 n.17 (1975). To act otherwise risks a "protracted delay" that might "frustrate[ ] a valid congressional inquiry." *Id.* *Eastland* teaches that cases seeking to stymie congressional investigations must be resolved at the earliest opportunity.

### III.

### A.

### 1.

To analyze the Committee's legislative purpose, the Court first must decide which of Chairman Neal's letters is at issue. Intervenors contend that the Chairman's 2019 letter is the operative request, and that the 2021 Request is a "retroactive rationalization" for it. *See* Intervenors' Combined Opposition to the Motions to Dismiss (Int. Opp'n) at 41, ECF No. 140. Intervenors also argue that the Court should generally analyze the request based on facts at the time of objection: 2019. Happily—for Intervenors—those facts would include Trump's position

as head of the Executive Branch, and the constitutional protections afforded that status. *See Trump v. Mazars, LLC*, 140 S. Ct. 2019, 2035 (2020) ("Congressional subpoenas for the President's personal information implicate weighty concerns regarding the separation of powers.").

Intervenors essentially ask the Court to ignore events that have occurred since 2019. This the Court cannot do. A fair reading of the 2021 Request shows that it supersedes the 2019 one. Chairman Neal said the Committee "continues to seek" the tax return materials and then requested information for years different from the ones mentioned in the 2019 Request. 2021 Request at 1, 6–7. And Chairman Neal ended the letter with "I request the following tax returns" before listing the newly requested information. *Id.* at 6. Given his language in the 2021 Request and the explicit request for different returns, the 2019 Request cannot govern. Whether Neal made one request or two, the operative one can be found in the 2021 letter. *See* Hr'g Tr. at 12. (Committee Counsel: "But overwhelmingly, [the 2019 Request] was superseded by the 2021 letter.").

Intervenors cite only criminal cases for the contention that the Court should evaluate the request at the time of objection. *See, e.g.*, *Watkins v. United States*, 354 U.S. 178, 181 (1957) (reviewing a conviction for contempt of Congress); *United States v. Rumely*, 345 U.S. 41, 42 (1953) (same). As Judge Mehta recently observed, "[t]his distinction is crucial." *Trump v. Mazars, LLP*, — F. Supp. 3d —, 2021 WL 3602683, at *12 (D.D.C. Aug. 11, 2021).

Due Process requires that a defendant charged with the offense of contempt of Congress must know the subject about which Congress is asking. *See Watkins*, 354 U.S. at 208–09. Every criminal prohibition requires such fair warning. *See Rogers v. Tennessee*, 532 U.S. 451, 457 (2001). Thus, "criminal punishment for non-compliance cannot be imposed on a witness based

on facts not yet in existence" when the witness decided not to answer questions. *Mazars*, 2021 WL 3602683, at \*12. No such concern exists in a civil proceeding like this one.

More, Intervenors seek prospective relief. Their right to that relief "must be determined as of the time of the hearing." *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 464 (1921). The Court can consider "subsequent events," such as the 2021 Request and the departure of Donald Trump from the presidency, as part of that determination. *Senate Select Comm. on Pres'l Campaign Activities v. Nixon*, 498 F.2d 725, 732 (D.C. Cir. 1974).[4]

The Court thus will analyze the 2021 Request and its contents as the operative request by the Committee.

**2.**

The next question is whether there is a valid legislative purpose for the 2021 Request.

**a.**

Several cases from the past century provide the contours of a legitimate legislative purpose. The first was *McGrain v. Daugherty*, 273 U.S. 135 (1927). There, a congressional committee investigating the Attorney General had seized his brother for questioning. *See id.* at 150–54. The brother argued that his seizure had not advanced a legislative purpose. *See id.* at 154. The Court determined that though the committee's authorizing resolution mentioned no legislation, it did mention administration of DOJ. *See id.* at 177. That interest was a subject "on which legislation could be had" and which "would be materially aided by" information from the investigation. *Id.* The committee's resolution could have more plainly avowed a legislative

---

[4] Intervenors argue that *Senate Select Committee* has no application here because that case concerned Executive privilege, not whether Congress had a legitimate legislative purpose for an action. *See* Int. Opp'n at 42. But Intervenors offer no persuasive reason why the substance of *Senate Select Committee* allowed the D.C. Circuit there to account for "subsequent events" as of the time of enforcement. For its part, this Court can discern none.

goal, but such an express statement was unnecessary "in view of the particular subject-matter." *Id.* at 178. The Court thus upheld the investigation as legitimate and concluded that the brother had wrongfully refused to testify. *See id.* at 180. *McGrain* suggests that the legitimate legislative purpose bar is a low one, and the purpose need not be clearly articulated.

The Court next analyzed legislative purpose in several cases about investigations into Communists. In *Tenney v. Brandhove*, the Court considered a civil complaint brought by a witness before a California Senate committee on Communist activities. 341 U.S. 367 (1951). The witness had circulated a pamphlet in the legislature arguing that the committee had tried to "smear" a mayoral candidate as a Communist. *Id.* at 370. The witness appeared for a hearing but refused to testify, and the State prosecuted him for contempt. *See id.* at 371. He sued the committee, arguing that it held the hearing not for a legislative purpose, but to "intimidate and silence" him. *Id.*

The Court refused to credit the witness's allegation. As the Court noted, "[i]n times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies." *Id.* at 378. To invalidate a legislative investigation, "it must be obvious that there was a usurpation of functions exclusively vested" in another branch. *Id.* The Court found no such usurpation. The witness's pamphlet had "raised serious charges" about the committee as it "investigat[ed] a problem with legislative concern." *Id.* The committee thus could require his appearance, and the Court dismissed his complaint. *See id.* at 378–79. So while Congress need clear only a low bar to establish a valid purpose, Intervenors face a formidable bar to impeach that purpose.

Next, *Watkins v. United States* considered a conviction for contempt of Congress. The defendant had appeared before a House committee and had refused to say whether certain

individuals were members of the Communist Party. *See* 354 U.S. at 185. He doubted the relevance of these questions to the committee's work and whether the committee could expose private persons based on past activities. *See id.*

The Court admitted that the defendant had "marshalled an impressive array of evidence that" exposure of Communists motivated the committee. *Id.* at 199. That evidence included official committee publications, one of which said the committee "believed itself" called "to expose people and organizations attempting to destroy this country." *Id.* at 199, n.32. But this evidence could not invalidate the committee's inquiry. *See id.* at 200. As the Court said, "a solution to our problem is not to be found in testing the motives of committee members." *Id.* "Their motives alone would not vitiate an investigation" by the House "if that assembly's legislative purpose is being served." *Id.* The Court ultimately overturned the witness's conviction but only on statutory grounds. *See id.* at 214.

Similarly, *Barenblatt v. United States* considered a conviction for contempt of Congress. 360 U.S. 109 (1959). A professor refused to answer questions before a House committee about his and others' membership in the Communist Party. *See id.* at 113, 114. The Court relied on prior cases to find that Congress's power to "legislate in the field of Communist activity" included investigations into Communists at universities. *Id.* at 127, 131–32. The witness responded that "the true objective of the [c]ommittee and of the Congress was purely exposure," not legislation. *Id.* at 132. The Court disagreed. "So long as Congress acts in pursuance of its constitutional power, the Judiciary lacks authority to intervene" based on the "motives which spurred the exercise of that power." *Id.* The Committee had a legitimate legislative purpose for its investigation and questioning of the witness. *See id.* at 134.

12

Finally, *Eastland v. U.S. Servicemen's Fund* reviewed a Senate subcommittee subpoena for records of a nonprofit that catered to servicemembers and advocated against the Vietnam War. The organization sued, arguing that the subpoena's "sole purpose" was to publicly disclose unpopular opinions and to harass the organization for its opinions. 421 U.S. at 495. Relying on *McGrain*, the Court explained that the subject of any congressional inquiry "must be one on which legislation could be had." *Id.* at 504 n.32. The Senate had charged the subcommittee to study "the administration, operation, and enforcement of the Internal Security Act of 1950." *Id.* at 506. Thus, "the investigation upon which the Subcommittee had embarked concerned a subject on which legislation could be had." *Id.* (cleaned up). More, the Court refused to credit the nonprofit's allegation about exposure. Prior cases "ma[d]e clear that in determining the legitimacy of a congressional act [the Court does] not look to the motives alleged to have prompted it." *Id.* at 508. The Court also held that a valid legislative inquiry need not have a "predictable end result." *Id.* at 509. The Court upheld the investigation.

These cases teach a few general principles directing this Court's review. Congress's power to investigate "is inherent in the legislative process" and serves as an "adjunct" to that process. *Watkins*, 354 U.S. at 187, 197. The power to investigate covers inquiries into "the administration of existing laws," "proposed or possibly needed statutes," and "surveys of defects in our social, economic or political system." *Id.* at 187. But Congress's investigatory power is not unlimited. Congress may not expose someone simply "for the sake of exposure." *Id.* at 200. Nor may Congress use its investigatory power for law enforcement purposes—an executive function. *See Mazars*, 140 S. Ct. at 2032. More fundamental than these limitations, however, any action by Congress must be "related to a valid legislative purpose." *Barenblatt*, 360 U.S. at

13

127.  The Supreme Court has identified as such a purpose "any subject on which legislation could be had." *Eastland*, 421 U.S. at 506 (quoting *McGrain*, 273 U.S. at 177).[5]

**b.**

The Federal Parties assert that the Committee has identified two valid legislative purposes behind its request.  The first is the Committee's study of the Presidential Audit Program.  The second is congressional oversight of government officials and development of legislation to prevent conflicts of interest for those officials.  *See* Comm. MTD at 28.  The Court upholds as valid the first asserted purpose and therefore need not analyze the second.

Since 1977, IRS procedures require the audit of a sitting President's tax returns.  *See* 2021 Request at 2.  But the Presidential Audit Program exists only in IRS regulations, not in any statute.  *See* Int'l Rev. Man. § 3.28.3.5.3.  According to the 2021 Request, the Committee has "serious concerns" about the IRS's ability to audit a President.  2021 Request at 2.  The Committee worries that the Program "is not advancing the purpose for which it was created." *Id.* at 2.  That might be due to "gaps" in the Program, which could "require Congress to act through legislation." *Id.* at 2–3.

According to the Committee, President Trump's information will uniquely aid its legislative efforts.  The Request suggests that President Trump's public criticisms of the IRS threatened the integrity of any audit of his tax returns during his presidency.  *See id.* at 4–5.  And

---

[5]  These principles do not change simply because this case concerns a statutory request rather than a subpoena.  Requests under § 6103(f) are compulsory.  *See* 26 U.S.C. § 6103(f)(1) ("[T]he Secretary *shall* furnish . . . .") (emphasis added).  So are congressional subpoenas.  *See McGrain*, 273 U.S. at 175 ("[S]ome means of compulsion are essential to obtain what is needed.")  Thus, precedents about the viability of congressional subpoenas apply with equal force to a § 6103(f) request.  Neither party defending the 2021 Request suggests another analytical framework that distinguishes between the two types of inquiries.  Indeed, all parties agree that the request must have a valid legislative purpose.  *See* Comm. MTD at 25; Gov't MTD at 26; Int. Opp'n at 28.

the Committee wonders whether the Program sufficiently accounts for a President who, like Trump, controls hundreds of businesses and typically files "inordinately large and complex" tax returns. *Id.* at 4.

Intervenors argue that the Committee seeks only to codify the Program and that such a statute would violate the Constitution. *See* Int. Opp'n 79–81; *see also Quinn v. United States*, 349 U.S. 155, 161 (1955) (noting that Congress's power to investigate does not "extend to an area in which Congress is forbidden to legislate"). The parties have not fully briefed the constitutionality of this hypothetical statute, but the Court assumes for now that Intervenors are correct.

After all, the power to investigate "lies at the core of the Executive's duty to see the faithful execution of the laws." *Cmty for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986). Congress could not usurp such a patently Executive power. *See Bowsher v. Synar*, 478 U.S. 714, 727 (1986). The Federal Parties at points have suggested that Congress might use the requested tax returns to inform a full codification of the Program. *See* May 10, 2019 Letter from Chairman Neal, Counterdefendants' MTD, Ex. D at 2, ECF No. 133-4; Gov't MTD at 40. A congressionally mandated presidential audit would likely commandeer the Executive's investigatory powers and thus could not serve as a valid legislative purpose for the 2021 Request. But the Federal Parties also suggest other, less suspect, legislative options that would pass constitutional muster.

For example, Congress could legislate how many staff the IRS may assign to the audit of a sitting President. Or Congress could ensure adequate funding for presidential audits if the IRS undertakes them. Such legislation would allow the IRS to decide whether to audit a sitting President. Nothing would *require* the IRS to do so. Imposing these types of "safeguards" or

15

"guardrails" on the IRS's discretionary process would be well within Congress's Article I authority. 2021 Request at 2, 3. And the Committee need not say exactly what legislation it intends to enact. *See In re Chapman*, 166 U.S. 661, 669–70 (1897) ("[I]t was certainly not necessary that the resolutions should declare in advance what the [S]enate meditated doing when the investigation was concluded."). The Committee need only show that the Program is a subject on which legislation "could be had." *Eastland*, 421 U.S. at 506. Based on those potential legislative enhancements to the IRS's discretionary audit of a sitting President, the Committee has done so.[6]

**i.**

Intervenors respond that a study of the Program is simply a pretext for the Committee's actual goal: to "obtain and expose" Donald Trump's tax information. ACCC ¶ 295.

As evidence, Intervenors include in their pleading dozens of statements by Members of the Committee and other Democrats. These statements show a years-long obsession of congressional Democrats to expose President Trump. They include:

- "We must see Trump's tax returns to know just how far and how deep the crimes go." "Americans have a right to know if their President is a crook." *Id.* ¶ 42 (Rep. Pascrell (D-NJ)).

- "We need to know if the [P]resident has illegally evaded taxes or unethically avoided them by exploiting special breaks in the law." *Id.* ¶ 102 (Rep. Pascrell (D-NJ)).

- "The only thing that matters is evidence of wrongdoing." "The public wants answers and so do I. And to get the truth, we need Trump's tax returns." *Id.* ¶ 108 (Rep. Gomez (D-Cal.)).

---

[6] For similar reasons, the Court rejects Intervenors' argument that the description of this interest is too vague and loosely worded. *See* Int. Opp'n at 55–56. Over several paragraphs, the 2021 Request identifies the Program as the focus of the Committee's study. Given this language, a reader of the Request "could reasonably deduce" the object of the Committee's interest. *Watkins*, 354 U.S. at 204.

- "Seeing Trump's business and personal taxes is the only way we'll know how far his crimes go." *Id.* ¶ 148 (Rep. Pascrell (D-NJ)).

- "The American people have a right to know whether President Trump's benefitting from the very policies that he's pushing, whether or not he's cheated on his taxes, whether or not he's paying his fair share, whether he's enriching himself and violating the public trust. All of those can be determined, I think, if we can get the tax returns." *Id.* ¶ 172 (cleaned up) (Rep. Sanchez (D-Cal.)).

- "Americans have waited long enough to know the extent of Trump's crimes and thievery." *Id.* ¶ 240 (Rep. Pascrell (D-NJ)).

These statements raise questions about the 2021 Request's purported object. Congressional Democrats speak mainly about finding "evidence of wrongdoing" in the Trump tax documents. *Id.* ¶ 108. Almost none mention the Presidential Audit Program. In fact, only one rank-and-file Member mentioned the Program. And even that statement appears motivated by exposure; the Member cited Trump's "tax avoidance schemes," not some need for legislative fixes, as the reason to study the Program. *Id.* ¶ 181 (statement of Rep. Kildee (D-Mich.)). Statements also suggest that the Committee "buil[t]" a case for the tax returns, implying that the 2021 Request's stated purpose is pretextual. *Id.* ¶ 115 (statement of Rep. Beyer (D-Va.)).

Ultimately, though, these statements are irrelevant to the Court's analysis. Section 6103(f) allows a request by "the chairman of the Committee." This distinguishes a § 6103(f) request from a subpoena authorized by committee vote. *See* Rules of the U.S. House of Reps. (117th Cong.) XI.2(m)(3)(A)(i) ("[A] subpoena may be authorized and issued by a committee . . . only when authorized by the committee or subcommittee, a majority being present."). Rank-and-file Members can fulminate all they want, but they cannot direct the

Committee to make a request under the statute.[7]  Only Chairman Neal can do that, even if

individual Members give their "input."  Int. Opp'n at 72.  Indeed, only he signed the 2019 and

2021 Requests.  *See* 2021 Request at 7; 2019 Request at 2.  Thus, the many statements from

rank-and-file Members do not factor into the Court's legislative purpose analysis.[8]

      In contrast, Chairman Neal's statements are relevant.  The Federal Parties admit as much.

*See* Hr'g Tr. at 7, 13, 39.  The Court will also consider statements made by Speaker Nancy Pelosi

about the Committee's actions.  Her statements are relevant because Intervenors allege that

Chairman Neal needed her approval for his request.  *See* ACCC ¶ 74, 122.

      Start with Chairman Neal.  Like his colleagues, Neal has long sought the Trump tax

returns.  In 2017, as Ranking Member of the Committee, he said he wanted the public to see

them and "the media to sift and sort them."  *Id.* ¶ 37.  He also wrote in a public report that the tax

returns would "provide the clearest picture" about Trump's finances and "whether he uses tax

shelters, loopholes, or other special-interest provisions to his advantage."  *Id.* ¶ 41.

      As Chairman, Neal spoke about "putting together the case" for the tax returns and

implored his Democratic colleagues not to undermine the Committee's legal case through their

rhetoric.  *Id.* ¶¶ 87–88; *see id.* ¶ 222.  He then sent the 2019 Request to the Treasury.  That

Request referenced the Program and cited the Committee's need "to determine the scope of any

---

[7]  For this reason, the Court need not decide whether statements by rank-and-file Members show
"motive" or "purpose."  *See* Int. Opp'n at 60–61.  Regardless, § 6103(f)'s terms render irrelevant
their statements.

[8]  *Shelton v. United States*, 404 F.2d 1292 (D.C. Cir. 1968) does not mandate otherwise.  True,
the D.C. Circuit there suggested courts could review the hearing statements by members of a
committee as evidence of legislative purpose.  *See id.* at 1297.  *Shelton* also said, however, that
when a committee asserts a "specific" purpose that "could be the subject[ ] of appropriate
legislation," a court cannot say the committee overstepped its authority.  *Id.*  The Program
mentioned by the 2021 Request is a specific purpose.  And despite *Shelton*'s language about
rank-and-file Members, the Circuit there considered only statements by the Chairman of the
committee.  *See id.* at 1297–98.  This Court does likewise.

such examination." 2019 Request at 1. But the Request failed to mention or detail what kind of legislation the Committee might consider.

Other of Neal's statements also undermine the alleged purpose of studying the Program. One day after the 2019 Request, Neal admitted that he had "constructed a case" for the Trump tax returns and that the Program rationale would best "stand up" in court. ACCC ¶¶ 127–28. He also said that House legal counsel had "prepared" him on what to say about the Request. *Id.* ¶ 128. Later in 2020, Neal said that "unraveling President Trump's sophisticated tax avoidance"—not the Program—"is a reason for the [P]resident to release his tax forms." *Id.* ¶ 145.

Now for Speaker Pelosi. Her statements resemble Neal's. As early as 2017, when she was Minority Leader, she said the Trump tax returns would "be useful in the investigation of what [ ] the Russians have on Donald Trump." *Id.* ¶ 36. After her elevation to Speaker, Pelosi chose to continue investigations of President Trump because she "want[ed] to see him in prison." *Id.* ¶ 144. And just before the 2020 election, she claimed that under a new President "the world will see what [President Trump] has been hiding all of this time." *Id.* ¶ 235.

As required at the motion-to-dismiss stage, the Court takes Intervenors' allegations as true. *See Iqbal*, 556 U.S. at 678. They suggest at least some mixed motives for Chairman Neal's request; specifically, that he wants to expose former President Trump.

The problem for Intervenors is the low bar that the Committee must clear. Even at this stage, courts should not "go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province." *Tenney*, 341 U.S. at 378. It is not a court's "function" to invalidate a congressional investigation that serves a legislative purpose. *Watkins*, 354 U.S. at 200.

Here, the Presidential Audit Program is a "subject on which legislation could be had." *Eastland*, 421 U.S. at 506. That conclusion all but decides the Court's analysis. True, the statements by Chairman Neal and Speaker Pelosi plausibly show mixed motives underlying the 2021 Request.

But the Supreme Court's precedents analyze whether Congress has a valid legislative purpose, not whether that is the *only* purpose. Notably, the *Watkins* Court refused to consider a committee's explicit statements that it wanted to expose Communists. *See Watkins*, 354 U.S. at 199, n.32. The inquiry by a court into legislative purpose is therefore narrow. "So long as Congress acts in pursuance of its constitutional power" by stating a valid purpose, "the Judiciary lacks authority to intervene on the basis of the motives which spurred the exercise of that power." *Barenblatt*, 360 U.S. at 132. That limited role governs here despite the "impressive array of evidence" amassed by Intervenors to show pretext. *Watkins*, 354 U.S. at 199; *see also Eastland*, 421 U.S. at 508 ("Our cases make clear that in determining the legitimacy of a congressional act we do not look to the motives alleged to have prompted it.").

Troubling as Intervenors' evidence may be, the Committee need only state a valid legislative purpose. It has done so. A faithful application of binding precedent blocks the Court from any further analysis, whatever Intervenors might say about the motives behind the Committee's request.

Amended Counterclaim and Crossclaim I will be dismissed.

### ii.

Intervenors next allege that the Committee made its request for law enforcement, not for a valid legislative purpose. Recall that Congress's power to investigate cannot be "confused with any of the powers of law enforcement." *Quinn*, 349 U.S. at 161. Congress thus may not

"try someone before a committee for any crime or wrongdoing." *Mazars*, 140 S. Ct. at 2032 (cleaned up). According to Intervenors, the Committee attempts exactly that by using President Trump's tax information to "prov[e] his supposed criminal wrongdoing" and to conduct its own investigation. ACCC ¶¶ 301, 303.

This allegation fails for two reasons. *First*, Intervenors mainly rely on and incorporate by reference the "public statements" discussed above. *Id.* ¶ 301. We have already seen why those statements do not overcome the valid purpose stated by the Committee.

*Second*, that an investigation "might possibly disclose crime or wrongdoing on [Trump's] part" does not present a valid objection to the investigation. *McGrain*, 273 U.S. at 179–80. To be sure, the Committee might unearth some tax violations in the returns. But this Court cannot intervene on that basis so long as the Committee has asserted a valid legislative purpose for its action. *See Barenblatt*, 360 U.S. at 132; *Trump v. Thompson*, — F. 4th —, No. 21-5254, 2021 WL 5832713, at *24 (D.C. Cir. Dec. 9, 2021) ("The mere prospect that misconduct might be exposed does not make the Committee's request prosecutorial."). The Supreme Court has been clear on that. *See Hutcheson v. United States*, 369 U.S. 599, 618 (1962) ("But surely a congressional committee which is engaged in a legitimate legislative investigation need not grind to a halt whenever . . . crime or wrongdoing is disclosed."). The Committee's valid legislative purpose overcomes Intervenors' allegation that the 2021 Request was for law enforcement purposes. Thus, Amended Counterclaim and Crossclaim II will be dismissed.

### iii.

In a final effort to show that the Committee lacks a legislative purpose, Intervenors allege that the records requested are not "related to, and in furtherance of" a legislative purpose.

*Mazars*, 140 S. Ct. at 2031; *see* ACCC ¶ 306.[9]  Intervenors say that the requested documents are not "reasonably relevant to studying the IRS's audit process" because they single out only one President's records.  ACCC ¶ 309.

Intervenors have a point.  A full study of the Program would arguably involve each of the seven Presidents who have held office since it began in 1977.  One wonders how much the returns of one President can say about the Program.

But the Committee need surmount only a low threshold here.  The 2021 Request concerns a subject "on which legislation may be had."  *Eastland*, 421 U.S. at 506.  That is enough for the Court to uphold the Committee's request.  Similarly, the failure to seek records from other Presidents who controlled various businesses does not invalidate the request.  True, the tax returns from those Presidents would more fully describe how the IRS accounts for a President with vast business holdings.  *See* ACCC ¶¶ 278-81.  But it is not for this Court to prescribe the most effective vehicle for congressional inquiries.  *Cf. Eastland*, 421 U.S. at 509 ("The very nature of the investigative function—like any research—is that it takes the searchers up some blind alleys and into nonproductive enterprises.").  And perhaps the Committee will later seek information on other Presidents.  The requested information need only "materially aid[

---

[9]  Intervenors allege that the requested records are not "pertinent to" valid legislation.  ACCC ¶ 306.  Technically, a "pertinency requirement" originates not from cases about legislative purpose, but from cases about 2 U.S.C. § 192, the contempt-of-Congress statute.  It penalizes refusal to answer questions or provide documents that are "pertinent" to a congressional inquiry.  2 U.S.C. § 192; *see McPhaul v. United States*, 364 U.S. 372 (1960) (analyzing whether records called for by a subpoena were "pertinent to" a committee inquiry, not whether the committee had a legislative purpose for its inquiry).  The Government has charged no one here with contempt.  Thus, the so-called "pertinency requirement" is inapt.  But Congress may compel only disclosures "within [Congress's] legislative sphere."  *Watkins*, 354 U.S. at 206.  The Supreme Court has described this as a "jurisdictional concept of pertinency."  *Id.*  Based on that guidance, the Court reads the pleading as alleging that the Committee has not met that jurisdictional requirement.

]" an investigation into a subject "on which legislation could be had." *McGrain*, 273 U.S. at 177. As a President's tax information, the Trump returns would aid the Committee's study of the Program.

Intervenors also allege that the Committee has no valid legislative purpose to request tax returns for years when Trump did not occupy the White House. The Court agrees with Intervenors' general point—a study of the Program should focus on returns filed during the Trump presidency. For that reason, the Committee's 2019 Request likely extended too far; the Committee requested returns and audit info from tax years 2013–2018. For three of those years, Trump was not the President. The IRS thus would not have included his returns from those years in its Program.[10]

In contrast, the 2021 Request seeks material from tax years 2015–2020. That request comprises returns from all four years of Trump's presidency, plus one year on either side. The Court agrees with the Federal Parties that returns from those other years could further the Committee's study of the Program.[11] Like an audit of any other taxpayer, a presidential audit can extend beyond a current return to "related returns" from other years. Int'l Rev. Man. § 4.10.2.7.1.5. Returns from before President Trump's tenure would likely be "related," and the Committee has limited itself to only one year of those returns. As for post-presidency returns,

---

[10]  A taxpayer typically files tax documents for a tax year during the next calendar year. Donald Trump became President in 2017. He would have filed his taxes for 2013, 2014, and 2015 all before his election.

[11]  A split panel of the D.C. Circuit made a similar finding about a subpoena from the House Financial Services Committee for financial documents from 2011–2018. *See Trump v. Mazars, LLC*, 940 F.3d 710, 739–42 (D.C. Cir. 2019). But the Supreme Court vacated that ruling, *see Mazars*, 140 S. Ct. at 2036, rendering it at most persuasive, not binding, *see NRDC v. Hodel*, 865 F.2d 288, 317 n.31 (D.C. Cir. 1988). This Court declines to rely on it.

they may provide some context for the returns considered in the Program. They can serve as a control sample with which to compare the audited returns.

Lest this seem an amorphous reason to request post-presidency returns, the Supreme Court has repeatedly emphasized the narrowness of this Court's inquiry into legislative purpose. *See Eastland*, 421 U.S. at 506 ("The propriety of making [the subpoena recipient] a subject of the investigation and subpoena is a subject on which the scope of our inquiry is narrow."); *Tenney*, 341 U.S. at 378 ("To find that a committee's investigation has exceeded the bounds of legislative power it must be *obvious* that there was a usurpation of functions exclusively vested in the Judiciary or the Executive.") (emphasis added). Applying that deferential analysis, the Court finds that the records requested by the Committee will "aid" its legislative purpose. *McGrain*, 273 U.S. at 177.

Intervenors' pleading on relevance includes two other arguments, both meritless. *First*, they allege that the requested audit files would contain little information about President Trump's foreign ties. *See* ACCC ¶ 310. Those allegations do not deny, however, that the audit files would say much about the IRS audit process. And for those audit files to be remotely comprehensible, Congress would need the tax returns on which the audits relied. The Committee has therefore properly requested both tax returns and audit statements to fully study the Program. *See* 2021 Request at 6–7.

*Second*, Intervenors allege that Congress cannot require the President "to disclose particular information or divest from certain businesses." *Id.* ¶ 311. The Court cannot accept these conclusory legal statements as true. Everyone agrees that Congress can compel some information from the Executive. The Supreme Court said as much in *Mazars*, so long as courts account for the separation of powers in such disputes. *See* 140 S. Ct. at 2035–36 ("Legislative

inquiries might involve the President in appropriate cases[.]").  Thus, Intervenors' allegation in this claim must depend on the nature of this "particular" information.  ACCC ¶ 311. Unfortunately, Intervenors do not specify that nature.[12]  Without more, the Court cannot accept as true—and indeed must reject—the legal statement that Congress cannot require disclosure of "particular" information from the President.  *See Iqbal*, 556 U.S. at 678.  Regarding divestment of businesses, the Committee has not suggested that it plans to require presidential divestments of foreign businesses.  And even if it had, a study of the Program would remain a legitimate legislative purpose.

Amended Counterclaim and Crossclaim III will be dismissed.

**B.**

The next question is whether the Committee's 2021 Request, although made with a valid legislative purpose, violates the separation of powers.  It might strike one as odd that Intervenors could raise *any* separation-of-powers claim here.  After all, Donald Trump is no longer President, so any dispute between him and Congress is not an "interbranch conflict."  *Mazars*, 140 S. Ct. at 2035; *see also* The Federalist No. 69 (Alexander Hamilton) (Benediction Classics, 2017) ("The President of the United States would be an officer elected by the people for four years; the king of Great Britain is a perpetual and hereditary prince.").  Indeed, the current President seems eager to heed the Committee's request.  But the Supreme Court's precedent allows former Presidents to assert a separation-of-powers claim.  *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S.

---

[12]  The "particular information" referenced by Intervenors could be information on open investigative files.  That information is the subject of Amended Crossclaim VII, addressed below.  *See infra* III.E.

425, 439 (1977) (*Nixon v. GSA*) ("We reject the argument that only an incumbent President may assert such claims . . . .").

That leaves the question of what standard governs the separation-of-powers analysis. Intervenors say the Court should apply *Mazars*, the Executive Branch seems to agree, and the House says the Court must apply *Nixon v. GSA*. The House is correct. Applying *Nixon v. GSA*, the Committee's 2021 Request does not trench on the separation of powers.

## 1.

This is not the first clash between Congress and the President (or a former President) over an informational request. During previous disputes, the Supreme Court has articulated standards governing congressional requests for a current or former President's records. The Court begins by reviewing those cases.

Two canonical decisions arose from Watergate. A grand jury indicted officials from the Nixon White House for various offenses, including conspiracy to defraud the United States and to obstruct justice. *See United States v. Nixon*, 418 U.S. 683, 687 (1974) (*Nixon I*). To further those prosecutions, a Special Prosecutor issued a subpoena to President Nixon. *Id.* at 688. The subpoena sought documents and tapes "relating to certain precisely identified meetings between the President and others." *Id.* As relevant here, the President moved to quash the subpoena, arguing that (1) an absolute, unreviewable executive privilege covered the requested materials; and (2) even if no *absolute* privilege existed, a qualified executive privilege "prevail[ed] over the subpoena." *Id.* at 689, 703.

The Supreme Court rejected President Nixon's assertion of absolute privilege. A sweeping privilege would impede the "constitutional duty of the Judicial Branch to do justice in criminal prosecutions." *Id.* at 707. That left the Court with two competing interests. On one

hand, the President and his aides "must be free to explore alternatives in the process of shaping policies" and "to do so in a way many would be unwilling to express except privately." *Id.* at 708. On the other hand, the need to develop facts in criminal prosecutions "is both fundamental and comprehensive." *Id.* at 709.

The Supreme Court sought to accommodate these interests while "preserv[ing] the essential functions of each branch." *Id.* at 707. It thus devised the following standard: when the President's claim of privilege rests on concern for "military or diplomatic secrets," courts should not "insist[ ] upon an examination of the evidence." *Id.* at 710–11 (quoting *United States v. Reynolds*, 345 U.S. 1, 10 (1953)). But the assertion of a "general privilege of confidentiality"—disconnected from any national security concerns—"cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice." *Id.* at 713. Placing President Nixon's assertion of executive privilege into the latter category, the Court held that the Special Prosecutor had rebutted the privilege. *See id.* 713–14. The Court ordered *in camera* review of the subpoenaed material.

That would not conclude the Watergate saga. After President Nixon left office, Congress passed the Presidential Recordings and Materials Preservation Act (PRMPA or the Act). *See Nixon v. GSA*, 433 U.S. at 433. In relevant part, the Act directed the Administrator of the General Services Administration (GSA) to obtain and store tape recordings of Nixon's conversations in the White House and his White House documents. *See id.* at 433–34. The Act directed GSA to make the materials available in response to a subpoena, subject to "any rights, defenses, or privileges which the Federal Government or any person" could invoke. *Id.* at 434.

It also directed GSA to promulgate regulations governing public access, keeping in mind "the need to provide the public with the full truth" about Watergate. *Id.* at 434–35.

Former President Nixon challenged the Act in *Nixon v. GSA*. He raised two separation-of-powers arguments.[13] *First*, he argued that the Act wrought an "impermissible interference by the Legislative Branch into" Executive Branch matters by delegating to a subordinate Executive officer the authority to determine whether and how to disclose Executive materials. *Id.* at 440. *Second*, by authorizing GSA to take control of a "broad, undifferentiated" swath of presidential records, the Act "offend[ed] the presumptive confidentiality of Presidential communications recognized in [*Nixon I*]." *Id.*

The Supreme Court disagreed. Nixon's nondelegation argument rested on "an archaic view of the separation of powers" as "three airtight departments of government." *Id.* at 443. Rejecting that trichotomy, the Court applied *Nixon I*'s functionalist approach:

> [I]n determining whether the Act disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents the Executive Branch from accomplishing its constitutionally assigned functions. Only where the potential for disruption is present must we then determine whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress.

*Id.* (cleaned up). Applied to the PRMPA, the Court found minimal intrusion on the "constitutionally assigned functions" of the Executive Branch. *Id.* The Act directed *the Executive Branch itself* to take custody of the disputed materials and to regulate their disclosure. *Id.* at 444. And "abundant statutory precedent" required regulation and disclosure of documents held by the Executive Branch. *Id.* at 445 (citing, among others, Freedom of Information Act, 5

---

[13] Congress and President Ford agreed that the Act was lawful, but the Supreme Court nonetheless held a former President could raise separation-of-powers claims. *See* 433 U.S. at 439 ("We reject the argument that only an incumbent President may assert such claims and hold that appellant, as a former President, may also be heard to assert them.").

U.S.C. § 552 (1970)).  Those statutes had "never been considered invalid as an invasion of [the Executive Branch's] autonomy."  *Id.*  Accordingly, "nothing contained in the Act render[ed] it unduly disruptive of the Executive Branch."  *Id.*[14]

The final case on an interbranch dispute is *Trump v. Mazars, LLC*.  President Trump sought to enjoin his personal accounting firm from complying with House subpoenas for his personal financial information.  *See* 140 S. Ct. at 2027–28.  He argued that the "subpoenas lacked a legitimate legislative purpose and violated the separation of powers," *id.* at 2048, but he did *not* claim executive privilege over the subpoenaed information.  So *Mazars* presented a novel posture:  The case differed from *Nixon I* because the President had not asserted executive privilege over the information; and it differed from *Nixon v. GSA* because (1) Donald Trump was the sitting President, and (2) Congress, not the Executive, would take custody of the subpoenaed materials.

President Trump asked the Supreme Court to treat *Mazars* like a typical executive privilege case, requiring the House to show a "'demonstrated, specific' need for the financial information."  *Id.* at 2032 (quoting *Nixon I*, 418 U.S. at 683).  In contrast, the House wanted the Court to apply the *Eastland* standard, asking only whether the subpoenas "relate[d] to a valid legislative purpose."  *Id.* at 2033.

The Court denied both proposed frameworks.  Applying the executive privilege cases would elide key distinctions "between privileged and nonprivileged information, between official and personal information, [and] between various legislative objectives."  *Id.*  "Congress's

---

[14]  The Court also rejected Nixon's second separation-of-powers argument.  It found the "perceived need to preserve the materials for legitimate historical and governmental purposes" justified "the mere screening" of the designated materials, a "very limited intrusion." *Id.* at 451, 452.

important interests in conducting inquiries to obtain the information it needs to legislative effectively" demanded more respect. *Id.* And applying only *Eastland* would ignore that Congress sought *the President's* information, not that of an ordinary citizen. *See id.* "[C]ongressional subpoenas for the President's information unavoidably pit the political branches against one another," so *Eastland* would "leav[e] essentially no limits on the congressional power to subpoena the President's personal records." *Id.* at 2034.

The Court cut its own path reminiscent of the functionalist approach established in the Watergate cases. To account for "the significant legislative interests of Congress" *and* "the unique position of the President," *id.* at 2035, the Court identified four factors to guide review of congressional requests for the President's personal information:

1. Whether the asserted legislative purpose warrants the significant step of involving the President and his papers;
2. Whether the subpoena is no broader than necessary to support Congress's legislative objective;
3. Whether Congress has offered substantial evidence to show the subpoena furthers a valid legislative purpose; *and*
4. Whether the subpoena burdens the President as Chief Executive.

*Id.* at 2035–36. The Court remanded for reconsideration under this framework. That litigation remains pending. *See Trump v. Mazars USA, LLP*, — F. Supp. 3d —, 2021 WL 3602683 (D.D.C. Aug. 11, 2021), *appeal docketed* Nos. 21-5176, 21-5177 (D.C. Cir. Aug. 20, 2021).

*Nixon I*, *Nixon v. GSA*, and *Mazars* set forth a general framework. The separation-of-powers analysis focuses on whether one branch's action unduly interferes with the constitutionally assigned functions of another branch. *See Nixon I*, 418 U.S. at 712 (holding an unreviewable executive privilege "would . . . gravely impair the basic function of the courts"); *Nixon v. GSA*, 433 U.S. at 445 ("[N]othing contained in the Act renders it unduly disruptive of

the Executive Branch"); *Mazars*, 140 S. Ct. at 2036 (directing courts to consider the burden

complying with a subpoena imposes on Trump as President). When a "potential for disruption"

is present, the Court asks whether that disruption "is justified by an overriding need." *Nixon v.

GSA*, 433 U.S. at 443; *see also Mazars*, 140 S. Ct. at 2035 ("[C]ourts should carefully assess

whether the asserted legislative purpose warrants the significant step of involving the President

and his papers."). And as the "potential for disruption" increases, the concomitant showing

required to justify that disruption increases. *See Nixon I*, 418 U.S. at 706; *Nixon v. GSA*, 433

U.S. at 445–446; *Mazars*, 140 S. Ct. at 2036.

      Viewed this way, the trilogy forms a sliding scale. At one end is *Nixon I*—to justify

piercing a sitting President's executive privilege, the Special Prosecutor had to show a

"demonstrated, specific need for evidence in a pending criminal trial." 418 U.S. at 713. This

was a high bar indeed.

      Next is *Mazars*—the separation-of-powers concerns there were lessened relative to *Nixon

I* because the information sought was not covered by executive privilege. But an "interbranch

conflict" did not "vanish simply because the subpoenas s[ought] personal papers." *Mazars*, 140

S. Ct. at 2034. Congress would have to show "detailed and substantial" evidence of a valid

legislative purpose and that such purpose "warrants the significant step of involving the

President and his papers." *Id.* at 2035, 2036.

      Then comes *Nixon v. GSA*, a case involving a *former* President but implicating materials

potentially covered by executive privilege. Because the PRMPA directed retention of the

disputed materials within the Executive and guarded against unlawful disclosure, there was little

"potential for disruption" on the Executive *qua* Executive. *Nixon v. GSA*, 433 U.S. at 443. The

Court's review was accordingly far less searching.

And, of course, all three tests sit above the low threshold set for congressional subpoenas to private parties. Because such a request would never implicate the "constitutionally assigned functions" of another branch, *id.*, the only question is whether the request "relate[s] to a valid legislative purpose," *Barenblatt*, 360 U.S. at 127.

This case falls on the "less intrusive" side of the scale. As in *Nixon v. GSA*, the requested records implicate a *former* President, not a sitting one. That fact alone substantially lessens (but does not eliminate) any potential burden the § 6103(f) request might impose on the Executive Branch. And like in *Nixon v. GSA*, Congress and the current President stand united, not at odds. *See* 433 U.S. at 439 ("The Act was the product of joint action by Congress and the President, who signed the bill into law."). This case does not present the "clash between rival branches of government over records" that confronted the Supreme Court in *Mazars*. 140 S. Ct. at 2034. Intervenors' insistence that *Mazars* applies therefore rings hollow.

More, Congress requested tax returns and information about the IRS's mandatory audit program, not information arguably covered by executive privilege. In these respects, this case presents a weaker separation-of-powers claim than *Nixon v. GSA*. But all parties agree some separation-of-powers concerns exist, and the Committee concedes it must meet the *Nixon v. GSA* test, *see* Comm. MTD at 41, so the Court applies that test here.

The D.C. Circuit has recently taken a similar tack. In *Trump v. Thompson*, a House committee requested presidential records from the Trump White House about January 6. *See* 2021 WL 5832713, at *5. Former President Trump objected, claiming executive privilege over hundreds of requested pages. *See id.* at *6. Although the parties mainly disputed executive privilege, Trump also argued that the request violated the separation of powers. *See id.* at *23. *Thompson* doubted that *Nixon I* or *Mazars* applied because those decisions "involved requests

32

for information from a sitting President, not a former President, and called upon the courts to resolve an interbranch dispute." *Id.* at *24. It found *Nixon v. GSA* was "more closely on point[] because it specifically involved a former President's objection" over the united position of Congress and the Executive. *Id.* So too here.

**2.**

Intervenors must first allege that the 2021 Request "prevents the Executive Branch from accomplishing its constitutionally assigned functions." *Nixon v. GSA*, 433 U.S. at 443. The Court struggles to find any part of Intervenors' pleading that does so on its face. Admittedly, they have an uphill climb on this point. They no longer speak for the Executive Branch, which agrees with the Committee's request. *See Trump v. Thompson*, 2021 WL 5832713, at *26 (limiting analysis under *Nixon v. GSA* balancing to the burdens on President Biden, not former President Trump, and noting that President Biden considers as "within reasonable bounds" the efforts required to comply with a congressional request).

That does not excuse them, however, from their pleading obligations. Intervenors do allege that the request "burdens [them] by interfering with ongoing examinations, disclosing substantial amounts of sensitive financial information, providing no safeguards or accommodations, and overriding the Tax Code's purpose." ACCC ¶ 317. None of those alleged burdens involve the Executive Branch. *See United States v. Burr*, 25 F. Cas. 30, 34 (C.C.D. Va. 1807) (Marshall, Circuit Justice) ("[T]he president is elected from the mass of the people, and, on the expiration of the time for which he is elected, returns to the mass of the people again."). If anything, they burden Intervenors in their individual capacities. Intervenors make no other

facial allegation about how the request burdens "the Executive Branch." *Nixon v. GSA*, 433 U.S. at 443.

But even without a facial allegation, Intervenors' whole pleading plausibly alleges that § 6103(f) requests, even to a former President, might disrupt the Executive Branch. Intervenors allege that congressional Democrats have pursued the Trump tax returns over many years because "the information they obtain could be relevant politically." ACCC ¶ 234. And according to the pleading, congressional Democrats "believe this information will damage President Trump politically," a welcome development for Democrats. *Id.*

Those alleged facts suggest that Congress could use requests like this one to obtain derogatory information on a former President. Congress could then threaten a sitting President with a post-presidency subpoena, thereby leveraging § 6103(f) to influence the President's conduct while in office. *See* Int. Opp'n at 35. Congress thus could use a "post-Presidency pile-on" through a § 6103(f) request to "try and influence the President's conduct while in office."[15] *Trump v. Thompson*, 2021 WL 5832713, at *26.

A "potential for disruption" is therefore present.[16] *Nixon v. GSA*, 433 U.S. at 443. But that potential seems slight. Section 6103(f) is a twig, not a cudgel, against the Executive when

---

[15] The Federal Parties argue there is no impact to the presidency because President Biden now agrees to the request. He would not agree, the argument goes, if he thought the Committee's request burdened the presidency. *See* Hr'g Tr. at 28. *Nixon v. GSA* has already rejected this. *See* 433 U.S. 443. There, the current President defended the Act against President Nixon's separation-of-powers argument. If the Federal Parties were right, the Supreme Court would have stopped there. But the Court analyzed the former President's argument. This Court will do the same.

[16] The Committee sees little to no disruption because past Presidents have voluntarily released their tax returns. *See* Comm. MTD at 45; Hr'g Tr. at 21. The Court cannot agree. Any disclosure of tax returns might expose a President to ridicule or worse. That some Presidents took that risk does not signify zero disruption to the office. And here *Congress* is the one that might release returns. When wielded by another branch, such authority increases the potential for political squabbles that impose, even slightly, on a President's time. More, not all Presidents

directed at a past President. It does not by its own terms restrict the President from taking any action. *See, e.g.*, *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 495–98 (2010) (invalidating on separation of powers grounds an Act that "stripped" the President of the ability to hold subordinates accountable for their conduct). Thus, a threatened post-presidency § 6103(f) request would not bind a sitting President. Nor would it occupy a "substantial amount of" a sitting President's time. *Clinton v. Jones*, 520 U.S. 681, 702 (1997). He would understand that Congress could make good on the threat only after he left office. By then, his tax returns would be less salient, and the request would not restrict his abilities as a sitting President.

More still, a sitting President could justifiably decide to call Congress's bluff. Times change quickly in politics, and Congress might drop its threat once the President leaves office or control of Congress changes hands. In sum, a threatened post-presidency § 6103(f) request poses a limited potential to disrupt the Executive Branch. "Still, even remote threats to separation of powers must be given appropriate consideration." *Mazars*, 2021 WL 3602683, at *13.

That limited disruptive potential guides the second step under *Nixon v. GSA*. The Court must determine "whether that impact" on the Executive "is justified by an overriding need to promote objectives within the constitutional authority of Congress." *Nixon v. GSA*, 433 U.S. at 443. When that impact is low—as it is here—Congress need not show a large interest to "justif[y]" the intrusion. *Id.*; *see also Jud. Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 50 (D.D.C. 2002) (holding under *Nixon v. GSA* that "[t]he greater the intrusion into the Executive sphere, the greater the interest necessary to justify the intrusion").

---

who released tax returns released all of their returns. *See* ACCC ¶ 12. The Committee therefore overstates this historical practice.

Here, much of the Court's previous analysis on legislative purpose applies. Legislation "may be had" on the Program. *Eastland*, 421 U.S. at 506. Thus, the Request's objectives fall within "the constitutional authority of Congress." *Nixon v. GSA*, 433 U.S. at 443.

As for an "overriding need," Intervenors argue that the IRS could answer the Committee's questions without presidential tax returns and audit forms. *See* Int. Opp'n at 56. Perhaps. But much of the IRS's internal process remains hidden. The individual auditor retains significant discretion over a presidential audit, and the Internal Revenue Manual does not specify how that auditor should consider returns from business entities controlled by a sitting President. *See* Comm. MTD at 14–15.

Intervenors' audit files would show how IRS auditors use that discretion. And the tax returns themselves would allow the Committee to see how those audits materialized. True, the IRS could tell the Committee about these things. But the Committee need not accept the agency's assurances. *See McGrain*, 273 U.S. at 175 ("Experience has taught that mere requests for [ ] information often are unavailing, and also that information which is volunteered is not always accurate or complete . . . ."). The Committee can demand documentary evidence of how the IRS audit process works.

Intervenors also recycle their argument that the Committee has not shown why it needs only the records of President Trump. *See* Int. Opp'n at 57. The Court has already credited much of the Committee's explanation. President Trump routinely criticized the IRS and controlled dozens of business entities during his time in office. Those unique factors matter. President Trump or his subordinates might have expressed privately to the IRS auditor the same criticisms that the President expressed publicly. The Committee has reason to explore such a possibility and to learn how the IRS deals with such pressure from a sitting President. His information

would clarify the resiliency of IRS procedures in that situation. More, the Committee could learn from the Trump returns how the IRS includes a President's business entities in any audit. How that process incorporates a President's businesses provides a compelling reason to request Intervenors' tax materials.

These reasons justify the Committee's need for Intervenors' tax materials. And they are enough to "overrid[e]" the low "impact" on the Executive Branch. *Nixon v. GSA*, 433 U.S. at 443. That low impact largely decides this analysis. If § 6103(f) intruded more on Executive decision-making, the *Nixon v. GSA* balance would look different. But the threat to the Executive Branch from a § 6103(f) request on a former President is minimal. The Court holds that the Committee's many reasons for its request overcome that minimal intrusion.

Amended Counterclaim and Crossclaim IV will be dismissed.

## C.

Intervenors also allege that § 6103(f) is facially unconstitutional. They bear a "heavy burden" to invalidate the statute on its face. *United States v. Salerno*, 481 U.S. 739, 745 (1987). To succeed, Intervenors must show that "no set of circumstances exists under which the law would be valid." *Id.* That a statute "might operate unconstitutionally under some conceivable set of circumstances" is not enough. *Id.* The statute's operation in all circumstances is what matters. The Supreme Court has recently reiterated this standard for facial challenges. *See Ams. for Prosperity Fund v. Bonta*, 141 S. Ct. 2373, 2387 (2021).

Intervenors correctly note that § 6103(f)'s text includes no requirement that the Committee have a valid legislative purpose when it requests tax returns. Lacking such a requirement (Intervenors say), § 6103(f) allows Congress to request tax information without a

legitimate legislative purpose. Thus, they say, § 6103(f) states a rule of law incapable of constitutional application.

They are mistaken. Intervenors must allege "no set of circumstances" in which a statute can be constitutionally applied. *Salerno*, 481 U.S. at 745. Even if the statute is constitutional in "at least one scenario," the facial challenge fails. *Chem. Waste Mgmt. v. EPA*, 56 F.3d 1434, 1437 (D.C. Cir. 1995). Here, the Court need not grasp for hypotheticals in which Congress could permissibly use § 6103(f). A congressional committee with a valid legislative purpose for a § 6103(f) request acts within the scope of Article I. Section 6103(f) authorizes that request as much as one without such a valid purpose. *See City of Los Angeles v. Patel*, 576 U.S. 409, 418–19 (2015) (noting that proper focus of a facial challenge is what the statute "actually authorizes"). Thus, a committee's request premised on a valid legislative purpose represents a set of circumstances in which Congress's use of § 6130(f) would be constitutional. That dooms Intervenors' facial challenge.

Intervenors do not disagree that a committee could use § 6103(f) with a valid legislative purpose. Instead, they argue that hypothetical application is irrelevant in a facial challenge. In their view, the "no set of circumstances" language from *Salerno* is not a test but a legal conclusion in a successful facial challenge. *See* Int. Opp'n at 30–32. As Intervenors put it, when a statute states an invalid rule of law, the statute is thus invalid in all its applications. *See id.* at 30. Courts need not consider hypothetical applications of the statute. Under this argument, facial analysis simply asks whether the bare terms of the statute conflict with some rule of law.

Intervenors cite *United States v. Lopez*, 514 U.S. 549 (1995), for this approach. *Lopez* invalidated the Gun-Free School Zones Act, which criminalized gun possession near schools. *See id.* at 551. The Court held that the Act exceeded Congress's authority under the Commerce

Clause because the Act "ha[d] nothing to do with 'commerce' or any sort of economic enterprise" and "contain[ed] no jurisdictional element" to ensure that the firearm possession affected interstate commerce. *Id.* at 561.

Intervenors focus on the second holding and argue that the Court never considered various hypotheticals where a gun possessed near a school could have arrived there by interstate commerce. Instead, they say, the Court simply analyzed the statutory language, determined that it lacked a jurisdictional element, and refused to engraft one. Intervenors argue that, based on *Lopez*, this Court should not read Article I's "valid legislative purpose" limitation into § 6103(f).

Even putting aside the heightened notice requirements of a criminal statute, Intervenors misconstrue *Lopez*. The Supreme Court also held that mere possession of a gun involved no "economic activity," unlike prior cases upholding congressional statutes under the Interstate Commerce Clause. *Id.* at 560. Thus, although an express jurisdictional requirement would have provided an "Interstate" tie, the statute still would not have governed an economic activity that could be considered "Commerce." That deficiency would taint any prosecutions authorized by the statute. *See Nebraska v. EPA*, 331 F.3d 995, 998 n.2 (D.C. Cir. 2003).

More, the Supreme Court since *Lopez* has followed the same approach as this Court does now. In *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008), the Court considered a facial challenge by political parties to a state statute that permitted all primary candidates to list their party preference, even if the parties had not endorsed those candidates. *See id.* at 447–48. The top two recipients of primary votes would proceed to the general election. *See id.* The parties argued that the new law burdened their associational rights because voters would assume that candidates on the general election ballot had received endorsements from their preferred party. *See id.* at 454.

The Court acknowledged that "it [was] *possible* that voters" would misinterpret the party preference of each candidate as an endorsement by that party. *Id.* at 455 (emphasis in original). But the parties had brought a facial challenge, and the Court thus could not invalidate the law "based on the mere possibility of voter confusion." *Id.* Instead, the Court asked whether ballots "could conceivably be printed in such a way" as to eliminate problematic voter confusion. *Id.* at 456. The Court listed multiple examples to show the "variety of ways" in which ballots could be printed with minimal confusion. *Id.* That those conceivable implementations of the law would comport with the First Amendment doomed the parties' facial challenge. *See id.* at 457.

So too here. As in *Washington State Grange*, this Court can easily conceive ways in which congressional committees could use § 6103(f) with a valid legislative purpose and thus consistent with Article I.[17] Intervenors therefore have not alleged a facial challenge to § 6103(f). Amended Crossclaim V will be dismissed.

### D.

Intervenors next claim that the Executive Branch Defendants impermissibly retaliated in violation of the First Amendment when they switched positions on the Committee's request. *See* ACCC ¶¶ 336–37. According to Intervenors, the Executive flip-flopped because of former President Trump's politics. The reversal "came under President Biden, a Democrat who made

---

[17] The Supreme Court has also noted that a facial challenge will succeed when a law "lacks any plainly legitimate sweep." *Id.* at 449 (cleaned up). This is a "less stringent" standard than the "no set of circumstances" test from *Salerno*. *Id.* But Intervenors cannot meet even that lower standard. Because Article I allows requests under § 6103(f) with a valid legislative purpose, § 6103(f) has a plainly legitimate sweep. *See In re Sealed Case*, 936 F.3d 582, 589 (D.C. Cir. 2019).

the disclosure of President Trump's tax returns a campaign issue and knows that President Trump remains the most high-profile Republican and his top political rival." *Id.* ¶ 337.[18]

The First Amendment prohibits the Government from discriminating, harassing, or retaliating because of political party, association, or speech. *See Rutan v. Repub. Party of Ill.*, 497 U.S. 62, 75 (1990). To establish a First Amendment claim, Intervenors must allege that (1) they engaged in protected conduct; (2) that the Executive Branch Defendants took some retaliatory action sufficient to deter a person of ordinary firmness in Intervenors' position from speaking again; and (3) that there is a "causal link" between the two. *Scahill v. Dist. of Columbia*, 909 F.3d 1177, 1185 (D.C. Cir. 2018). To establish that causal link, a plaintiff must allege that the protected speech was "the but-for cause of the retaliatory action," *id.*, meaning that "the adverse action against the plaintiff would not have been taken absent" the defendant's "retaliatory motive," *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

The Court's previous analysis disposes of this claim. Recall that the Committee has a legislative purpose for the 2021 Request, and that the Request does not offend the separation of powers. It is thus constitutional, and the Executive Branch "shall" comply with it. *See* 26 U.S.C. § 6103(f)(1). That statutory command requires the Executive Branch Defendants to furnish the requested tax returns to the Committee. And thanks to that command, their decision to disclose Intervenors' materials "would have [occurred] anyway." *Hartman v. Moore*, 547 U.S. 250, 260 (2006). More, that command gives the Executive Branch Defendants a "legitimate basis" for their compliance with the 2021 Request. *Daugherty v. Sheer*, 891 F.3d 386, 391 (D.C. Cir. 2018).

---

[18] Although Intervenors have not brought this claim against the Committee, they also allege that the Committee wished "to retaliate against President Trump because of his policy positions" and his political speech. *Id.* ¶ 331.

Thus, Intervenors fail to allege that former President Trump's politics were "the but-for cause" of the switch by the Executive Branch Defendants. *Nieves*, 139 S. Ct. at 1722. Section 6103(f) required compliance with the 2021 Request, regardless of any alleged retaliatory motive by the Executive Branch Defendants. Intervenors therefore fail to allege a "causal link" between former President Trump's politics and the switch by the Executive Branch Defendants. Amended Crossclaim VI will be dismissed.

### E.

Intervenors next claim that the IRS continues to audit their tax returns and that "allowing the Committee to obtain files that are the subject of ongoing examinations violates the separation of powers." ACCC ¶¶ 340, 344. The Executive Branch Defendants respond that this claim is not ripe because the Committee's receipt of the tax materials will not allow the Committee to "partner in" the audits with the Executive Branch. *Id.* ¶ 342; Gov't MTD at 58–59. The Court need not decide that issue because Intervenors do not raise a plausible claim.

The Court must accept as true the factual statement that the IRS continues to audit Intervenors. *See Twombly*, 550 U.S. at 555. But the Court cannot similarly accept the conclusory legal statement that disclosure to Congress of ongoing examinations violates the separation of powers. *See Iqbal*, 556 U.S. at 678. Intervenors themselves have not adequately supported this alleged legal rule.

They cite only two OLC opinions from the 1980s. Both opinions discuss the Executive's historical unwillingness to share open investigative files with Congress. That historical practice seemingly favors Intervenors. Yet each opinion also notes that the Executive can disclose open investigative files "in extraordinary circumstances," directly contradicting Intervenors' alleged legal rule. Response to Cong. Requests for Info. Regarding Decisions Made Under the Indep.

42

Counsel Act, 10 Op. O.L.C. 68, 76 (1986); Cong. Subpoenas of DOJ Investigative Files, 8 Op. O.L.C. 252, 262 (1984). Thus, even were the Court to credit the historical practice between the branches, Intervenors' own legal sources permit the Executive to hand over open investigatory files. That is enough to make implausible, at least on this pleading, Intervenors' broad and conclusory separation-of-powers claim.

Amended Crossclaim VII will be dismissed.

### F.

Finally, Intervenors claim that congressional access to their tax materials during audits will violate their Due Process rights. They allege that because the Committee's investigation focuses on a pending adjudication, the IRS no longer has an appearance of impartiality. *See* ACCC ¶ 348. According to Intervenors, "[e]ven the most scrupulous IRS officials could not help but be influenced by" the Committee's scrutiny of their work. *Id.* ¶ 349.

At first blush, this claim appears unripe because, according to the pleading, no audit has finished. The Court therefore cannot consider "whether extraneous factors intruded into" the IRS's decision because no decision exists. *Peter Kiewit Sons' Co. v. U.S. Army Corps of Eng'rs*, 714 F.2d 163, 170 (D.C. Cir. 1983). But the Court will analyze the merits because Intervenors allege that the IRS has lost any *appearance* of impartiality, which is no less objectionable than actual bias. *See* Int. Opp'n at 96; *D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1246 (D.C. Cir. 1972).

Even under that analytical framework, the claim fails. The D.C. Circuit has held that "contemporaneous congressional proceedings do not invalidate an agency adjudication where the proceedings have no link to agency decision makers." *ATX, Inc. v. DOT*, 41 F.3d 1522, 1528 (D.C. Cir. 1994). Thus, that Congress will investigate a pending audit of Intervenors'

information does not by itself raise a Due Process problem. More, Intervenors do not allege that the Committee has ever exerted pressure on the IRS decisionmakers who conduct the audits of Intervenors' tax information.

That failure sinks this claim. Intervenors must show some "nexus between the [alleged] pressure and the actual decision maker." *Id.* at 1527. They have not shown even a tenuous one between the Committee and the IRS. For example, Intervenors never allege that Members of Congress met with any IRS decisionmaker with authority over an audit of Intervenors' tax returns. *See, e.g.*, *Connecticut v. Dep't of Int'r*, 363 F. Supp. 3d 45, 64 (D.D.C. 2019) (holding that the plaintiff had shown a sufficient nexus when the plaintiff alleged that Members of Congress had met privately with the agency's Secretary about a pending adjudication).

This claim is therefore distinguishable from *Pillsbury Co. v. FTC*, 354 F.2d 952 (5th Cir. 1966), which Intervenors invoke. There, senators asked an agency head in a public hearing why he had reached his decision on an adjudication. *See id.* at 964. Intervenors allege no similar interaction here. They instead speculate that IRS officials overseeing the audit "could not help but be influenced" by the Committee's work and public statements. ACCC ¶ 349. That is not enough to allege that the Committee's work is "targeted directly" at decisionmakers inside the IRS. *ATX*, 41 F.3d at 1528. And even if it were, Intervenors have failed to allege with any supporting facts that such pressure will "shape[ ] the [IRS's] determination of the merits" of the audit.[19] *Id.*

Amended Crossclaim VIII will be dismissed.

---

[19] Perhaps they can allege improper interference by Congress once the IRS finishes its audit process. *See, e.g.*, *Peter Kiewit Sons' Co.*, 714 F.2d at 169–70 (analyzing claim of improper congressional interference after an agency made its adjudication). They cannot make such an allegation now because they allege that the audits are ongoing.

## IV.

If Chairman Neal's true interest in the former President's tax returns is indeed to better understand the Presidential Audit Program, he will doubtless be able to accomplish this objective without publishing the returns. Public disclosure of another's tax returns is a grave offense, and prior committee chairmen have wisely resisted using § 6103(f) to publicize individuals' returns. Anyone can see that publishing confidential tax information of a political rival is the type of move that will return to plague the inventor.

It might not be right or wise to publish the returns, but it is the Chairman's right to do so. Congress has granted him this extraordinary power, and courts are loath to second guess congressional motives or duly enacted statutes. The Court will not do so here and thus must dismiss this case.

A separate Order will issue.

2021.12.14
17:08:09 -05'00'

Dated: December 14, 2021          TREVOR N. McFADDEN, U.S.D.J.