**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COMMITTEE ON WAYS AND MEANS,
UNITED STATES HOUSE OF REPRESENT-
ATIVES,

           Plaintiff-Counterdefendant,

     v.

UNITED STATES DEPARTMENT OF
THE TREASURY; et al.,

           Defendants-Crossdefendants,

     and

DONALD J. TRUMP; et al.,

           Intervenors-Counterclaimants-
                 Crossclaimants.

No. 1:19-cv-1974-TNM

**<u>EMERGENCY</u> MOTION TO CONTINUE THIS
COURT'S DECEMBER 14 ORDER PENDING APPEAL**

Last Tuesday, after dismissing all of Intervenors' claims, this Court entered the following

order:

> The Court has granted the motions to dismiss the operative pleading in this case.
> Under Fed. R. Civ. P. 62(c)(1), the Court hereby STAYS execution of that judg-
> ment for 14 days. This will allow the parties to confer regarding next steps in this
> litigation and the effect of those steps on Intervenors' tax documents. If they do not
> reach a mutually agreeable schedule, Intervenors may seek interim relief with the
> Court of Appeals. The Court directs the Executive Branch Defendants not to dis-
> close any of Intervenors' tax documents during this 14-day period. *See* Nov. 16,
> 2021 Hr'g Tr. at 118.

Doc. 150.

Per the Court's instructions, the parties have conferred and were able to come to an agree-

ment last Friday. Under the parties' agreement, Intervenors accept an expedited schedule on ap-

peal—specifically, the parties will jointly propose to the D.C. Circuit that Intervenors file their

opening brief by January 10, 2022; that the Committee and the Government respond by January

31, 2022; that Intervenors reply by February 7, 2022; and that oral argument be scheduled as soon

as practicable. In exchange, the Committee and the Government agree that they will take no position on this motion.

This motion asks the Court to extend its December 14 order—which currently lasts for only 14 days—to last throughout the entire appeal in the D.C. Circuit. (The Court could do this by issuing the same order but replacing "for 14 days" with "pending appeal" and "during this 14-day period" with "pending appeal.") This Court is not only best positioned to continue its order, but the rules require Intervenors to ask this Court for that relief before they can ask the D.C. Circuit. *See* Fed. R. App. P. 8(a)(1). Intervenors respectfully ask the Court to grant this motion **by Tuesday, December 21, 2021**. That way, if Intervenors must file a similar motion in the D.C. Circuit, the court of appeals will have at least seven days to consider their motion before the expiration of this Court's existing order. *See* D.C. Circuit Handbook of Practice & Internal Procedures 32 (Mar. 16, 2021) (generally requiring emergency motions to be filed "at least 7 days before the date on which court action is necessary").

\*     \*     \*

To decide a motion like this one, the Court should consider "four factors":

1. The likelihood that Intervenors will prevail on the merits.
2. The prospect of irreparable injury to Intervenors if relief is withheld.
3. The possibility of substantial harm to other parties if relief is granted.
4. The public interest.

*Id.* at 33 (citing *WMATC v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977); and *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921 (D.C. Cir. 1958)).

Courts "analyze the[se] factors 'on a sliding scale whereby a strong showing on one factor could make up for a weaker showing on another.'" *Ala. Ass'n of Realtors v. HHS*, No. 20-cv-3377-DLF, 2021 WL 1946376, at \*1 (D.D.C. May 14, 2021). For example, if the "'other factors strongly favor'" Intervenors, then the first factor requires Intervenors to "'only raise a serious legal question

on the merits.'" *Id.* This serious-questions standard is compelled by "binding precedent" from the D.C. Circuit. *Cigar Ass'n of Am. v. FDA*, 317 F. Supp. 3d 555, 560 (D.D.C. 2018). It prevents "unnecessarily harsh results" and achieves "substantial equity." *Holiday Tours*, 559 F.2d at 843-44. And it avoids putting litigants in the impossible position of convincing a court that just ruled against them to hold that its own ruling will likely be reversed on appeal. *See id.* at 844-45; *Cigar Ass'n*, 317 F. Supp. 3d at 561 n.4; *Shapiro v. DOJ*, No. 13-cv-555-RDM, 2016 WL 3023980, at *8 (D.D.C. May 25, 2016).

All four factors, both individually and collectively, weigh in favor of Intervenors. And because the non-merits factors heavily favor Intervenors, this Court need only conclude that Intervenors have raised serious questions that warrant further litigation. That conclusion should be simple here. Tellingly, in every similar case that Intervenors are aware of, courts have either entered stays pending appeal or the requesting party agreed to voluntarily forbear during the appeal. *E.g.*, *Trump v. Mazars USA, LLP*, 140 S. Ct. 581 (2019) (granting stay pending certiorari); *Trump v. Deutsche Bank AG*, 140 S. Ct. 660 (2019) (same); *Trump v. Thompson*, 2021 WL 5832713, at *31 n.20 (D.C. Cir. Dec. 9, 2021) (explaining that the Court had granted an administrative injunction pending appeal and granting another one pending the filing of a motion with the Supreme Court); *Trump v. Mazars USA, LLP*, Doc. #1910381, No. 21-5176 (D.C. Cir. Aug. 16, 2021) (explaining that the House had agreed to voluntarily forbear during the appeal); *Trump v. Vance*, Doc. 83, No. 20-2766 (2d Cir. Sept. 1, 2020) (granting stay pending appeal).

**Irreparable Injury**: Unless this motion is granted, Intervenors face "'perhaps the most compelling'" form of irreparable injury: their appeal will likely be dismissed as "moot." *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers); *accord Garrison v. Hudson*, 468 U.S. 1301, 1302 (1984) (Burger, C.J., in chambers). The Committee and the

Government will not agree to voluntarily forbear while Intervenors appeal; they are forcing Intervenors to obtain a court order. Absent that order, the Government will comply with the Committee's §6103(f) request and turn over Intervenors' tax documents. The Government's compliance will moot Intervenors' ability to secure an order barring compliance. *Off. of Thrift Supervision Dep't of Treasury v. Dobbs*, 931 F.2d 956, 957 (D.C. Cir. 1991). And the Committee will argue that the Government's compliance moots the entire appeal because this Court cannot order Congress to return, destroy, or refrain from publishing Intervenors' documents. *See Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1086 (D.C. Cir. 2017). Courts "routinely … stay the status quo when" in this situation, where events might "moot the losing party's right to appeal." *John Doe Co. v. CFPB*, 235 F. Supp. 3d 194, 206 (D.D.C. 2017); *accord Ctr. For Int'l Envtl. Law v. Office of U.S. Trade Rep.*, 240 F. Supp. 2d 21, 22-23 (D.D.C. 2003) (explaining that movants make "a strong showing of irreparable harm" where disclosure would moot any appeal).

Even if Intervenors could survive a mootness challenge, they still need a court order to avoid "'the quintessential type of irreparable harm'": the "disclosure of [their] private, confidential information" to a branch of government. *Airbnb, Inc. v. City of N.Y.*, 373 F. Supp. 3d 467, 499 (S.D.N.Y. 2019). Once Intervenors' tax information is given to Congress, public disclosure is virtually guaranteed. But even absent public disclosure, no court could "return the parties to the status quo ante—there is nothing a court can do to withdraw all knowledge or information" from Chairwoman Maloney or the Committee. *Church of Scientology of Calif. v. United States*, 506 U.S. 9, 12 (1992). "Once the documents are surrendered," in other words, "confidentiality will be lost for all time." *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979); *accord Maness v. Meyers*, 419 U.S. 449, 460 (1975); *Becker v. United States*, 451 U.S. 1306, 1311 (1981) (Rehnquist, J., in chambers).

**Harm to Others/Public Interest**: Neither the Committee, the Government, nor the public will suffer any comparable harm. The generic interest in "having legal questions decided … as … expeditiously as possible" is not enough to "preclud[e] maintaining the status quo while the merits are being decided on appeal." *Holiday Tours*, 559 F.2d at 843. And the Committee's supposed interest in studying legislation to increase IRS staffing or funding, *see* MTD Op. 15, is theoretical, remote, and something that can wait until the conclusion of Intervenors' expedited appeal. *See John Doe Agency*, 488 U.S. at 1309; *Cigar Ass'n*, 317 F. Supp. 3d at 563; *EPIC v. DOJ*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014). While *Eastland* instructs courts to go fast when Congress demands information about purely *private* parties, *see* MTD Op. (Doc. 148) 8, this case concerns a President and all agree that the Committee's request implicates the separation of powers, *id.* at 32. When the separation of powers is at stake, courts consider "delay" a *benefit* because it can facilitate compromise and potentially avoid a momentous ruling that will forever alter the balance of interbranch power. *See United States v. AT&T Co.*, 567 F.2d 121, 133 (D.C. Cir. 1977); *Comm. on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008).

The Committee and the Government must agree that they have weak countervailing interests, because they are taking no position on this motion. *See PFAW v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007) (finding no "countervailing interests" weighing against a stay pending appeal "[g]iven that both Parties agree that a stay is warranted"). And their prior willingness to delay this case proves that they have no pressing need for Intervenors' tax information: The Committee waited three months in the 116th Congress before making its request; the Committee waited another four months to file a dispositive motion; the Government successfully stayed this case for another seventeen months; the Committee waited another six months in the 117th Congress before deciding how to proceed; and the Government voluntarily forbore compliance for

another five months. *See* Doc. 114 at 3-4. The Committee's need for Intervenors' tax information did not somehow become pressing now, right as Intervenors are trying to exercise their right to appeal. *See Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (agreeing that a self-imposed "eight-week delay … undermines [the nonapplicant's] allegation of irreparable harm"). And the Government has no interest at stake to begin with.

**Merits**: Intervenors believe they are likely to succeed on appeal. While Intervenors know they are unlikely to convince this Court of that proposition given its ruling on the motions to dismiss, "the fact that the Court has thus far been unpersuaded … does not preclude the issuance of a stay." *NAACP v. Trump*, 321 F. Supp. 3d 143, 147 (D.D.C. 2018); *accord Ala. Ass'n of Realtors*, 2021 WL 1946376, at \*4; *Cigar Ass'n*, 317 F. Supp. 3d at 561. Given the massive harm to Intervenors and nonexistent harm to everyone else, the Court can grant this motion based on the realization that Intervenors have raised serious questions that are "'a fair ground for litigation and thus for more deliberative investigation.'" *Holiday Tours*, 559 F.2d at 844.

This Court has already recognized that Intervenors raise serious questions. Because this case involves the first "request under §6103(f) for the tax information of a former or sitting President," this Court rightly noted that "[w]e are in uncharted territory." MTD Op. 4. This Court has similarly observed that "'[t]his case presents novel and complex questions about the privileges and authority of all three branches of the federal government,'" a proposition that the Government recently endorsed. Doc. 134 at 2 (quoting Doc. 38 at 3); *see also* Doc. 146 at 41 (Government observing that "the frontier of the law is where we find ourselves"); Doc. 33 at 6 (Government describing Intervenors' objections as "serious," "difficult," and "weighty").

The Government must agree because it was once on the other side of this case. In 2019, it concluded that the Committee's request sought exposure for the sake of exposure—a conclusion

that would invalidate even a subpoena to a purely private party. A claim is surely serious if, at one time, the United States Government adopted it as correct. For the Committee's part, it must agree that this case presents serious questions because, on appeal, it will surely argue that parts of this Court's decision are *in*correct. *E.g.*, MTD Op. 14 n.5 (rejecting the Committee's distinction between §6103(f) requests and subpoenas); *id.* at 15 (holding that the primary legislation that the Committee claims to be considering would be unconstitutional); *id.* at 23 (explaining that the Committee's request was likely invalid in 2019); *id.* at 34 n.15 (holding that the Biden administration's acquiescence is not decisive).

Intervenors will also challenge parts of this Court's decision, and those challenges will raise serious questions that merit further litigation. To name a few:

- This Court held that the Committee's request is governed by *Nixon v. GSA*, not *Mazars* or *Mazars* lite. MTD Op. 26. That conclusion contradicts the Government's position in this case, *id.*, as well as Judge Mehta's decision in *Trump v. Mazars USA LLP*, No. 19-cv-01136-APM, 2021 WL 3602683, at *13 (D.D.C. Aug. 11, 2021). The D.C. Circuit might soon choose a different test in *Mazars*—a question that its decision in *Thompson* addressed only in dicta. 2021 WL 5832713, at *24.

- This Court acknowledged that the Committee's request presents separation-of-powers concerns. MTD Op. 32, 34. But the Court did not *use* that conclusion to inform its analysis of whether the request has a legitimate legislative purpose. Relying mostly on precedents that did not involve a President, this Court applied a highly deferential analysis. *See* MTD Op. 19-20. That analysis contradicts the D.C. Circuit's analysis in *Mazars II*, where it correctly noted that the deferential presumptions that normally apply in these cases are no longer appropriate where "separation-of-powers concerns … linger in the air." *Trump v. Mazars USA, LLP*, 940 F.3d 710, 726 (D.C. Cir. 2020).

- The only valid legislation that the Committee could be pursuing, according to this Court, were laws that helped the IRS audit Presidents but did not "*require* the IRS" to audit Presidents—like bills to increase the IRS's staffing or funding. MTD Op. 15-16. The Committee has never claimed to be studying this kind of law. For good reason, since its request is not even *pertinent* to those proposals. As the D.C. Circuit explained in *Mazars II*, a request for one President's financial information is not pertinent to a law that would "apply to ordinary Executive Branch employees." 940 F.3d at 733. The contrary logic has no stopping

point and would allow Congress to bypass the sensitive constitutional issues at stake. *See id.*

- This Court rejected Intervenors' facial challenge to the constitutionality of §6103(f), even though it agreed that the statute's "text includes no requirement that the Committee have a valid legislative purpose." MTD Op. 37. The Court reasoned that the statute would be constitutional in cases where Congress does have a legitimate legislative purpose. MTD Op. 38. That conclusion cannot be reconciled with *Gordon v. Holder*, 721 F.3d 638, 654 (D.C. Cir. 2013). There, the D.C. Circuit explained that, when a statute is missing a "constitutionally-required" element, the fact that it can be applied in cases where the missing element happens to be present does not save it from a facial invalidity. *Id.* "[A]ny legitimate application is pure happenstance," not a consequence of the statutory text. *Id.*

- This Court rejected Intervenors' First Amendment claim based on its prior conclusion that the Committee has a legitimate legislative purpose; that conclusion, the Court reasoned, severs the causal chain between the Government's retaliatory intent and Intervenors' injury. *See* MTD Op. 41-42. But even if *this Court* was correct in *December* that the Committee has a legitimate legislative purpose, this Court's conclusion could not have dictated *the Government's* decision in *June* to comply with the Committee's request. Intervenors plausibly alleged that the Government's decision was based on other, illegitimate concerns. They pleaded enough to survive the Government's motion to dismiss.

These questions, among others raised in this case, are weighty. They are largely questions of first impression, and they have already divided jurists in this circuit. *See Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*, 87 S. Ct. 1, 2 (1966) (Harlan, J., in chambers) (granting a stay because the issues could not "be regarded as lacking in substance," did not "appear to be precisely controlled by any decision of this Court," and were "highly debatable"); *Ala. Ass'n of Realtors*, 2021 WL 1946376, at *4 (finding serious questions that warranted a stay because jurists had reached different conclusions). The seriousness of these questions is augmented, as the Supreme Court explained in a case involving former President Nixon, by "the special solicitude due to claims alleging a threatened breach of essential Presidential prerogatives under the separation of powers." *Nixon v. Fitzgerald*, 457 U.S. 731, 742-43 (1982); *e.g.*, *Dellums v. Powell*, 561 F.2d

242, 245 n.7 (D.C. Cir. 1977) (explaining that a stay was granted to allow former President Nixon to litigate his claims). President Trump should get a chance to litigate these questions further.

*    *    *

This Court should grant Intervenors' motion and extend its December 14 order so that it lasts throughout Intervenors' entire appeal in the D.C. Circuit.

Respectfully submitted,

Dated: December 20, 2021          /s/ Patrick Strawbridge
Patrick Strawbridge (pro hac vice)
CONSOVOY MCCARTHY PLLC
Ten Post Office Square, 8th Floor
South PMB #706
Boston, MA 02109
(617) 227-0548
patrick@consovoymccarthy.com

William S. Consovoy (D.C. Bar #493423)
Cameron T. Norris
James P. McGlone*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
cam@consovoymccarthy.com
jim@consovoymccarthy.com

*Barred in MA, but not yet VA.
Work supervised by principals of the firm.

## CERTIFICATE OF SERVICE

I filed this motion with the Court via ECF, which will email everyone requiring notice.

Dated: December 20, 2021          /s/ Patrick Strawbridge